UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>        Plaintiff,<br><br>v.<br><br>ALPINE SECURITIES CORPORATION,<br><br>        Defendant. | Civil No. 1:17-CV-04179-DLC<br><br>Honorable Judge Denise L. Cote<br>Magistrate Judge Ronald L. Ellis |

**MEMORANDUM OF LAW IN SUPPORT OF ALPINE
SECURITIES CORPORATION'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE**

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. ii

TABLE OF AUTHORITIES ..................................................................................................... iii

I.      INTRODUCTION ..............................................................................................................1

II.     LEGAL STANDARD .........................................................................................................2

III.    ARGUMENT .......................................................................................................................3

     A.      THIS COURT LACKS PERSONAL JURISDICTION OVER ALPINE ….. ..............3

          1.      NEW YORK'S LONG-ARM STATUTE IS NOT SATISFIED ....................3

               a.      GENERAL, ALL-PURPOSE JURISDICTION
                    IS NOT SATISFIED .............................................................................4

               b.      SPECIFIC, CASE-LINKED JURISDICTION
                    IS NOT SATISFIED .............................................................................9

          2.      FEDERAL DUE PROCESS IS NOT SATISFIED .......................................16

               a.      MINIMUM CONTACTS IS NOT SATISFIED ................................16

                b.      REASONABLENESS ARE NOT SATISFIED ................................17

     B.      THIS DISTRICT IS AN IMPROPER VENUE FOR THIS ACTION ……………..19

IV.     CONCLUSION AND RELIEF REQUESTED ………………………………..………..25

# TABLE OF AUTHORITIES

## CASES

**U.S. Supreme Court**

*Burger King Corp. v. Rudzewicz*
    471 U.S. 462 (1985)......................................................................................4, 9, 10

*Daimler AG v. Bauman*
    134 S.Ct. 746 (2014)..................................................................... *passim*

*Goodyear Dunlop Tires Organizations, S.A. v. Brown*
    564 U.S. 915 (2011).........................................................................................4

**Second Circuit Court of Appeals**

*Best Van Lines, Inc. v. Walker*
    490 F.3d 239 (2d Cir. 2007).........................................................................10

*Brown v. Lockheed Martin Corp.*
    814 F.3d 619 (2d Cir. 2016)..................................................................5, 8, 10

*Chew v. Dietrich*
    143 F.3d 24 (2d Cir. 1998)...........................................................................10

*Gucci Am., Inc. v. Weixing Li*
    768 F.3d 122 (2d Cir. 2014)..................................................................3, 5, 6, 7

*Kernan v. Kurz-Hastings, Inc.*
    175 F.3d 236 (2d Cir. 1999).........................................................................10

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*
    673 F.3d 50 (2d Cir. 2012).......................................................... *passim*

*S.E.C. v. Unifund SAL*
    910 F.2d 1028 (2d Cir. 1990).......................................................................16

*Sonera Holding B.V. v. Cukurova Holding A.S.*
    750 F.3d 221 (2d Cir. 2014).......................................................................6, 7

**U.S. District Courts**

*7 W 57th St. Realty Co. v. Citigroup, Inc.*
    2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015) ..............................................5

*Bertolini-Meier v. Upper Valley Neurology Neurosurgery, P.C.*
    2016 WL 7174646 (D. Vt, Dec. 7, 2016) ...................................................8

*Chatwal Hotels & Resorts LLC v. Dollywood Co.*
    90 F.Supp.3d 97 (S.D.N.Y. 2015)........................................................................6, 7, 8

*Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*
    928 F.Supp.2d 735 (S.D.N.Y. 2013)........................................................................19

*In re Nematron Corp. Sec. Litg.*
    30 F.Supp.2d 397 (S.D.N.Y. 1998)........................................................................20

*In re Poseidon Concepts Securities Litigation*
    2016 WL 3017395 (S.D.N.Y. May 24, 2016) ........................................................19

*Lebron v. Encarnacion*
    2017 WL 2352856 (E.D.N.Y. May 31, 2017) ....................................................4, 16

*Lewis v. C.R.I., Inc.*
    2003 WL 1900859 (S.D.N.Y. April 17, 2003) ......................................................14

*Ravenwoods Invest. Co., L.P. v. Bishop Capital Corp.*
    2005 WL 236440 (S.D.N.Y. Feb. 1, 2005)................................................... *passim*

*Schutte Bagsclosures Inc. v. Kwik Lok Corp.*
    48 F.Supp.3d 675 (S.D.N.Y. 2014)..................................................................16, 18

*Seiden v. Schwartz, Levitsky, and Feldman LLP*
    2017 WL 2591785 (S.D.N.Y. June 14, 2017) ........................................................5

*SPV OSUS Ltd. v. UBS AG*
    114 F.Supp.3d 161 (S.D.N.Y. 2015)............................................................ *passim*

*Stillwater Mining*
    2003 WL 21087953 (S.D.N.Y. May 12, 2003) ......................................................20

*Thackurdeen v. Duke Univ.*
    130 F.Supp.3d 792 (S.D.N.Y. 2015)...........................................................3, 4, 5, 9

*Theraplant, LLC v. Makarechi*
    2016 WL 7839186 (S.D.N.Y. Dec. 23, 2016) .......................................2, 10, 11, 14

*Vera v. Republic of Cuba*
    91 F.Supp.3d 561 (S.D.N.Y. 2015)..................................................................3, 6, 9

*Weiss v. Nat'l Westminster Bank PLC*
    176 F.Supp.3d 264 (E.D.N.Y. 2016) ......................................................................5

*Wilder v. News Corp.*
    2015 WL 5853763 (S.D.N.Y. Oct. 7, 2015) ..........................................................17

**New York State Court**

*Sino Clean Energy Inc. v. Little*
    2012 WL 1849658 (NY Sup. Ct. 2012) ........................................................12, 13, 15

## STATUTES

15 U.S.C. § 78aa ........................................................................................................19

28 U.S.C. § 1404 ...........................................................................................2, 14, 19, 25

28 U.S.C. § 1406 ...........................................................................................2, 19, 24, 25

28 U.S.C. § 1391 ........................................................................................................19

31 U.S.C. §§ 5311-5330 ...............................................................................................1

N.Y. CPLR § 301 ................................................................................................ *passim*

N.Y. CPLR § 302 ................................................................................................ *passim*

## RULES

Fed. R. Civ. P. 12(b)(2) .......................................................................................... 1, 2, 3

Fed. R. Civ. P. 12(b)(3) ...............................................................................................1

Fed. R. Civ. P. 45 ......................................................................................................23

## I.   INTRODUCTION

Defendant Alpine Securities Corporation ("**Alpine**"), by and through undersigned counsel, pursuant to Rule 12(b)(2) and Rule 12(b)(3) of the Federal Rules of Civil Procedure, moves this Court to Dismiss Plaintiff United States Securities and Exchange Commission's ("**SEC**") Complaint for Lack of Personal Jurisdiction and Improper Venue.

Alpine is a registered self-clearing broker-dealer.  Alpine is incorporated and headquartered in Utah.  Alpine's business involves, among other things, clearing microcap securities that are traded in the over-the-counter marketplace.  The SEC's Complaint alleges that Alpine violated Section 17(a) of the Securities and Exchange Act, and Rule 17a-8 promulgated thereunder, by purportedly failing to implement a sufficient "BSA Compliance Program" resulting in deficient Suspicious Activity Reports ("**SARs**") filings under the Bank Secrecy Act ("**BSA**")[1] and The Financial Crimes Enforcement Network ("**FinCEN**")[2] rules, regulations and requirements.  Alpine's implementation of its BSA Compliance Program and Anti-Money Laundering ("**AML**") policies and procedures, along with the actual act of executing and filing SARs all occurred at Alpine's corporate headquarters in Utah.  The SEC's books-and-records claim under Section 17(a) and Rule 17a-8 did not arise out of any contacts between Alpine and this District.  Alpine is not alleged to, and does not, have an office or any employees in New York.  Alpine's only contact specified in the SEC's Complaint is Alpine's unrelated general use of the services provided by The Depository Trust Company ("**DTC**") and The National Securities Clearing Corporation ("**NSCC**") located in New York to deposit and clear securities transactions.

---

[1] 31 U.S.C. §§ 5311-5330, as amended by the USA PATRIOT Act.

[2] FinCEN is a bureau of the United States Department of the Treasury that collects and analyzes information about financial transactions in order to combat financial crimes.  SARs are reported to FinCEN.

The foregoing factors and alleged contacts, respectfully through either DTC or NSCC, are insufficient to establish personal jurisdiction in this District.  General jurisdiction under New York's long-arm statute and Due Process is not satisfied pursuant to the U.S. Supreme Court's ruling in *Daimler AG v. Bauman*, 134 S.Ct. 746 (2014), and its progeny, which requires the forum to be where the corporation is incorporated, principally located, or essentially "at home." Likewise, specific jurisdiction under New York's long-arm statute and Due Process is not satisfied because the SEC's claim does not arise out of any contacts between Alpine and New York, including the use of DTC and NSCC which is insufficient to confer jurisdiction.

Alpine requests dismissal of this action for lack of personal jurisdiction and/or that this Court transfer this action to the District Court of Utah pursuant to 28 U.S.C. §§ 1404(a) and 1406(a) because the allegations giving rise to the SEC's claim occurred in Utah, and almost all of the documents and witnesses are located in Utah.

## II.     LEGAL STANDARD

In response to a Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction, the "plaintiff bears the burden to make a *prima facie* showing that the Court has personal jurisdiction over a defendant."  *SPV OSUS Ltd. v. UBS AG*, 114 F.Supp.3d 161, 167 (S.D.N.Y. 2015) (citations omitted).  "Although ambiguities in the pleadings should be resolved in the plaintiff's favor, 'conclusory non-fact-specific jurisdictional allegations or a legal conclusion couched as a factual allegation will not establish a *prima facie* showing of jurisdiction.'"  *Id*. (internal citations omitted).  As a result, "'resolving all doubts in the plaintiff's favor is not the same as blindly crediting all allegations regardless of their factual support.'"  *Id*. (citations omitted).  Moreover, a court "will not draw argumentative inferences in the plaintiff's favor."  *Theraplant, LLC v. Makarechi*, 2016 WL 7839186, at *2 (S.D.N.Y. Dec. 23, 2016) (citations omitted).  Finally, "a

plaintiff may not rely on conclusory statements without any supporting facts, as such allegations would 'lack the factual specificity necessary to confer jurisdiction.'" *Id.* (citations omitted).

## III.   ARGUMENT

### A.   THIS COURT LACKS PERSONAL JURISDICTION OVER ALPINE.

The exercise of personal jurisdiction by a federal court requires the satisfaction of three primary requirements: (1) plaintiff's service of process upon the defendant was procedurally proper;[3] (2) a statutory basis for personal jurisdiction under New York's long-arm statute; and (3) the exercise of personal jurisdiction must comport with constitutional "Due Process" principles.  *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (citations omitted).[4]  In this case, the SEC cannot meet its burden to show that this Court can exercise personal jurisdiction under New York's long-arm statute or in accordance with Due Process.

### 1.   NEW YORK'S LONG-ARM STATUTE IS NOT SATISFIED.

Under New York law, a "court can exercise two categories of personal jurisdiction: general jurisdiction and specific jurisdiction."  *Vera v. Republic of Cuba*, 91 F.Supp.3d 561, 565 (S.D.N.Y. 2015) (citing *Daimler*, 134 S.Ct. at 754).  General jurisdiction is governed by N.Y. CPLR § 301 and specific jurisdiction is governed by N.Y. CPLR § 302.

"General, all-purpose jurisdiction permits a court to hear 'any and all claims' against an entity if the unrelated contacts with the forum are so continuous and systematic such that exercising jurisdiction is reasonable and just."  *Id.* (citing *Gucci Am., Inc. v. Weixing Li*, 768 F.3d

---

[3] Alpine does not claim that service of process was improper in this action.

[4] Similarly, the court for the Southern District of New York stated that "in analyzing a Fed.R.Civ.P. 12(b)(2) motion, courts in New York follow a two-step process.  First, a court will determine whether personal jurisdiction lies pursuant to New York's long-arm statute.  Second, a court must analyze whether personal jurisdiction comports with the basic requirements of due process."  *Thackurdeen v. Duke Univ.*, 130 F.Supp.3d 792, 798 (S.D.N.Y. 2015) (citations omitted).

122, 134 (2d Cir. 2014) (quoting *Daimler*)).  On the other hand, "[i]f insufficient contacts exist for a court to exercise general personal jurisdiction, it may still exercise specific jurisdiction, provided that the entity has 'purposefully directed' its activities toward the forum jurisdiction and the litigation arises out of or relates to those contacts with the forum." *Id*. at 566 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).  Neither general nor personal jurisdiction is satisfied in this District.

### a.   GENERAL, ALL-PURPOSE JURISDICTION IS NOT SATISFIED.

Under New York law, the "authority of New York courts to exercise general jurisdiction over a non-domiciliary is found in New York Civil Practice Law and Rules ("CPLR") § 301, which provides that '[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore.'" *Lebron v. Encarnacion*, 2017 WL 2352856, at *2 (E.D.N.Y. May 31, 2017) (quoting N.Y. CPLR 301).  Section 301 "has been interpreted as authorizing jurisdiction over non-domiciliaries 'when their affiliations with the State are so ***continuous and systematic*** as to render them ***essentially at home*** in the forum state.'" *Id*. (emphasis added) (quoting *Goodyear Dunlop Tires Organizations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *see also Thackurdeen v. Duke Univ.*, 130 F.Supp.3d 792, 798 (S.D.N.Y. 2015) (stating that "Section 301 preserves the common law notion that 'a court may exercise general jurisdiction over a nondomiciliary defendant if the defendant is engaged in such a ***continuous and systematic*** course of doing business here as to warrant a finding of its presence in this jurisdiction'") (emphasis added)).

The court for the Southern District of New York ruled that "[i]n the recent case of *Daimler AG v. Bauman*, the Supreme Court announced a more stringent standard for finding a corporation to be 'essentially at home' in a foreign jurisdiction." *SPV OSUS Ltd.*, 114 F.Supp.3d

at 167 (citing *Daimler*).[5]  Specifically, the court explained, the Supreme Court in *Daimler* found

that California could not exercise general jurisdiction over the defendant "Daimler" even though

it operated, through its subsidiary, it operated "multiple facilities in California, was the largest

supplier of luxury vehicles to the California market, and accounted for 2.4% of Daimler's

worldwide sales."  *Id*. at 168 (citing *Daimler*).  The Supreme Court characterized the proposed

test of whether "the corporation engages in a substantial, continuous, and systematic course of

business" as "unacceptably grasping."  *Id*. (citing *Daimler*).  Consequently, the Supreme Court

ruled that "as a matter of course, a corporation is subject to general jurisdiction only in its formal

place of incorporation or principal place of business."  *Id*. (citing *Daimler*).  Beyond the

foregoing "formal place of incorporation, principal place of business" holding, a corporation can

be subject to general jurisdiction in the event of a much more limited "exceptional case",

wherein "a corporation's operations in another forum be so substantial and of such a nature as to

render the corporation at home in that State."  *Id*. (citing *Daimler*) (internal quotations omitted).

Multiple federal courts have reviewed general, all-purpose jurisdiction challenges under

Section 301 through a Due Process analysis of general jurisdiction, including analysis under

*Daimler*.  *See e.g. Seiden v. Schwartz, Levitsky, and Feldman LLP*, 2017 WL 2591785, at *2

(S.D.N.Y. June 14, 2017) (analyzing Section 301 under Due Process and the ruling in *Daimler*)

(citing *Thackurdeen*, 130 F.Supp.3d at 799) ("finding that the court lacked general personal

jurisdiction over two defendants under Section 301 where neither defendant 'is incorporated or

has its principal place of operation in New York and Plaintiffs have failed to explain why this

---

[5] *See generally Brown v. Lockheed Martin*, 814 F.3d 619, 627 (2d Cir. 2016) (reading *Daimler* as implementing a "restrictive" test); *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135-36 (2d Cir. 2014) (articulating change in the law effected by *Daimler*); *Weiss v. Nat'l Westminster Bank PLC*, 176 F.Supp.3d 264, 274 (E.D.N.Y. 2016) (noting that *Daimler* "narrowed the law on general jurisdiction"); *7 W 57th St. Realty Co. v. Citigroup, Inc.*, 2015 WL 1514539, at 7 (S.D.N.Y. Mar. 31, 2015) ("*Daimler* effected a change in the law").

represents an exceptional case to the general rule.'"); *Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F.Supp.3d 97, 103 (S.D.N.Y. 2015) (ruling that under Section 301 and *Daimler*, general jurisdiction is not applicable because "none of the defendants is incorporated in New York, and none has its principal place of business in New York" nor does the case "qualif[y] as an 'exceptional' case for some other reason").

The court for the Southern District of New York in *Vera*, stated that "[i]n deciding *Daimler*, the Supreme Court held for the first time that a court cannot exercise general jurisdiction over a corporate entity 'in every State in which a corporation engages in a substantial, continuous, and systematic course of business.'" *Vera v. Republic of Cuba*, 91 F.Supp.3d 561, 567 (S.D.N.Y. 2015) (quoting *Daimler*).  "Home, the Supreme Court ruled, is traditionally the corporation's place of incorporation, and its principal place of business." *Id.* (citing *Daimler*).

Similarly, the Second Circuit, in the wake of *Daimler*, stated the following:

> The natural result of general jurisdiction's "at home" requirement is that only a limited set of affiliations with a forum will render a defendant amendable to all-purpose jurisdiction there.  A corporation that operates in many places can scarcely be deemed at home in all of them.  The paradigm forum for general jurisdiction over an individual is the individual's domicile, his home.  For a corporation, it is an equivalent place, with the place of incorporation and the principal place of business being the paradigm bases.  Those affiliations have the virtue of being unique – that is, each ordinarily indicates only one place – as well as easily ascertainable.

*Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014) (internal quotations and citations to *Daimler* omitted); *accord Gucci America, Inc.,* 768 F.3d at 135 (observing, after *Daimler,* "a corporation is at home (and thus subject to general jurisdiction, consistent with due process) only in a state that is the company's formal place of incorporation or

its principal place of business").[6]  Thus, "even a company's 'engage[ment] in a substantial,

continuous and systematic course of business' is alone insufficient to render it at home in a

forum."  *Sonera,* 750 F.3d  at 226 (citation omitted).

    Since *Daimler*, courts have routinely denied general jurisdiction to foreign corporations

who may have a continuous and systematic course of business in New York.  For example, the

court for the Southern District of New York disagreed with the plaintiff's argument in *SPV*

*OSUS Ltd.* that general jurisdiction applied because the defendant had "offices in New York,

conducts substantial business here, has a registered agent here, and has been the subject of many

suits in New York courts."  *SPV OSUS Ltd.*, 114 F.Supp.3d at 168.  The court ruled that, "at

most, the contacts alleged by plaintiffs amount to 'a substantial, continuous, and systematic

course of business,' which the Supreme Court expressly held to be insufficient in *Daimler*."  *Id.*

(citations omitted); *accord Gucci,* 768 F.3d at 135 (concluding that the district court could not

exercise general personal jurisdiction over a bank which had "branch offices in the forum, but is

incorporated and headquartered elsewhere.").

    In this case, Alpine is not subjected to general, all-purpose jurisdiction under Section 301

because Alpine is not incorporated in New York nor is New York Alpine's principal place of

business.  Rather, as alleged in the Complaint, "Alpine is a Utah corporation headquartered in

Salt Lake City, Utah."[7]  Accordingly, Alpine is not "at home" in this District as set forth and

---

    [6] With a focus on where a corporation is incorporated and principally doing business, "the Second Circuit noted that *Daimler* 'expressly cast doubt on previous Supreme Court and New York Court of Appeals cases that permitted general jurisdiction on the basis that a foreign corporation was doing business through a local branch office in the forum."  *SPV OSUS Ltd.*, 114 F.Supp.3d at 168 (citing *Gucci*, 768 F.3d at 135; *see also Chatwal Hotels & Resorts*, 90 F.Supp.3d at 105 ("After *Daimler*, with the Second Circuit cautioning against adopting 'an overly expansive view of general jurisdiction,' *Gucci*, 768 F.3d at 135, the mere fact of [defendant] being registered to do business is insufficient to confer general jurisdiction in a state that is neither its state of incorporation or its principal place of business.")

    [7]  *See* Complaint, ¶ 9; *see also* Nathan D. Simmons Decl., at ¶¶ 3-4.

required under *Daimler* and Second Circuit authority interpreting and applying *Daimler*.  Alpine

does not have an office or employees located in New York.[8]  Furthermore, Alpine does not

operate any other business in New York.[9]  Thus, Alpine does not even reach the less stringent

previous standard of general jurisdiction prior to *Daimler* based on substantial, continuous, and

systematic contacts, let alone the current standards applicable under *Daimler.  See, e.g., Chatwal

Hotels & Resorts*, 90 F.Supp.3d at 104 (ruling that general jurisdiction did not apply under

Section 301 or *Daimler* because none of the "defendants [are] incorporated in New York, and

none has its principal place of business in New York.  None has employees in New York, none

has a bank account or property in the state.").[10]

The SEC has made no effort in its Complaint to carry its burden to establish that Alpine

is subject to general jurisdiction in this District in accordance with the requirements enunciated

above.  Rather, the only contact alleged by the SEC in its Complaint is Alpine's use of DTC's

and NSCC's services.  This is plainly insufficient, particularly where the SEC acknowledges that

Alpine is "at home," if anywhere, in Salt Lake City, Utah.  *See* Complaint, at ¶ 9 [Dkt. 1].

Moreover, as discussed more fully below, Alpine's alleged contacts with DTC and NSCC are

legally insufficient to confer personal jurisdiction over Alpine and factually not related to the

SEC's Section 17(a) books and records claim in this matter.  Accordingly, the Court should rule

that Alpine is not subject to this District's general jurisdiction under N.Y. CPLR § 301.

---

[8] *See* Nathan D. Simmons Decl., at ¶ 5.

[9] *See id*. at ¶¶ 6-7.

[10]  *Accord Bertolini-Meier v. Upper Valley Neurology Neurosurgery, P.C.*, 2016 WL 7174646 (D. Vt. Dec. 7, 2016) (Citing the Second Circuit in *Brown v. Lockheed Martin*, and stating "applying *Daimler*, the Second Circuit concluded that Lockheed Martin – which was incorporated in Maryland and had its principal place of business there, was not subject to general jurisdiction in Connecticut" even though "Lockheed Martin had a continual 30-year presence in Connecticut, leased locations in that state, employed up to 70 workers there, and made about $160 million in revenue from its Connecticut-based work during the five years relevant to the lawsuit.").

### b.   SPECIFIC, CASE-LINKED JURISDICTION IS NOT SATISFIED.

If general, all-purpose jurisdiction is not found under N.Y. CPLR § 301, the Court "may still exercise specific jurisdiction, provided that the entity has 'purposefully directed' its activities toward the forum jurisdiction and the litigation arises out of or relates to those contacts with the forum."  *Vera*, 91 F.Supp.3d at 566 (citing *Burger King Corp.*, *supra*).  "Specific jurisdiction is governed by CPLR § 302(a), which empowers New York courts to exercise jurisdiction over non-domiciliaries when ***the causes of action in the case 'arise from' one of four specific kinds of contact*** with New York, including:

> (1) The transaction of any business within the state or contracts anywhere to supply goods or services in New York:
>
> (2) The commission of a tortious act within this state;
>
> (3) The commission of a tortious act without the state causing injury within the state so long as the tortfeasor either (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services render, in New York or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
>
> (4) The ownership, use, or possession of any real property within New York."

*Thackurdeen*, 130 F.Supp.3d at 801 (citing N.Y. CPLR § 302(a)(1)-(4)) (emphasis added). Therefore, unlike general all-purpose jurisdiction wherein the contacts are not related to the litigation, "the existence of specific jurisdiction depends on the relationship 'among the defendant, the forum, and the litigation.'"  *SPV OSUS*, 114 F.Supp.3d at 169 (citing *Walden v. Fiore*, 134 S.Ct. 1115, 1122 (2014)).

Federal courts' analysis of specific jurisdiction in order to satisfy Due Process similarly requires that the claim arises out of the defendant's contact with the forum state.  *See e.g. SPV*

*OSUS*, 114 F.Supp.3d at 169 (stating that for specific jurisdiction, the plaintiff must "demonstrate that his 'claim arises out of or relates to defendant's contacts with the forum state' and that the defendant 'purposefully availed' himself of 'the privilege of doing business in' the forum state such that he could foresee being 'haled into court there'") (quoting *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 243 (2d Cir. 1999)).

In addition to the Supreme Court's direction that specific jurisdiction requires that "the litigation arises out of or relates to [the defendant's] contacts with the forum" (*see Burger King Corp.*, *supra*), the Second Circuit has recognized that, "where a defendant's contacts with the forum are limited, it is appropriate to require the plaintiff to establish that his 'injury was **proximately caused** by those contacts.'" *SPV OSUS*, 114 F.Supp.3d at 170 -171(citing *Chew v. Dietrich*, 143 F.3d 24, 29 (2d Cir. 1998)) (emphasis added). Because of the required nexus between defendant's contacts and the underlying claims in the litigation, the Second Circuit has referred to specific jurisdiction as "case-linked jurisdiction." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016) (citations omitted).

Accordingly, when analyzing contacts under Section 302(a)(1) from New York's long-arm statute, the court "must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'arises from' such a business transaction." *Id.* (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (other citations omitted). "Section 301 is a single act statute and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities were purposeful **and there is a substantial relationship between the transaction and the claim asserted.**" *Theraplant*, 2016 WL 7839186, at *2 (citations omitted) (emphasis added).

10

A "suit arises out of a transaction in New York 'if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York.'" *Id*. (citing *Licci*, *supra*, at 66).  In *Theraplant*, the Court ruled that specific jurisdiction under Section 302(a)(1) was not found based on the defendant's contacts in New York consisting of "(1) raising capital through its agent, Ruby; (2) registering as an issuer of securities in New York; and (3) owning shares in a mortgage-backed securities fund managed in New York."  *Id*. at 3.  The Court found that the "cause of action asserted against Leafline – copyright infringement – does not arise out of any of these activities."  *Id*. at *3.

In this matter, the SEC alleges the following in relation to Alpine's contacts with New York:  "Alpine transacts business in the Southern District of New York and certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within the Southern District of New York and were effected, directly or indirectly, by making use of means or instrumentalities of transportation or communication in interstate commerce, or the mails, or the facilities of a national securities exchange."  *See* SEC's Compl., ¶ 8 [Dkt.1].  Under New York law, "conclusory non-fact-specific jurisdictional allegations or a legal conclusion couched as a factual allegation will not establish a *prima facie* showing of jurisdiction."  *SPV OSUS Ltd.*, 114 F.Supp.3d at 167 (citations omitted) (also stating that "resolving all doubts in the plaintiff's favor is not the same as blindly crediting all allegations regardless of their factual support").

The SEC does attempt to provide more detail to its vague and conclusory jurisdiction statement through the following allegation:

> For example, Alpine operates as a clearing firm and deposits securities with Depository Trust Company ("DTC"), which is headquartered in New York, New York, to clear securities transactions.  Alpine deposited securities with DTC in connection with transactions that are subjects of this Complaint.  In connection with some of the deposit transaction that are subjects of this Complaint, Alpine delivered physical stock certificates to DTC for DTC to hold in a vault located in Manhattan.

> Alpine also uses National Securities Clearing Corporation ("NSCC"), which his headquarters in New York, New York, to clear its securities transactions. Alpine used NSCC's services to clear transactions that are subject of this Complaint.

*See* SEC's Compl., ¶ 8 [Dkt.1]. The SEC does not make any other allegations referencing DTC, NSCC, or New York in its Complaint. Presumably, from this single allegation, the SEC is attempting to rely on N.Y. CPLR § 302(a)(1) to try to establish specific, case-linked jurisdiction, which requires that the Section 17(a) violation "arises from" Alpine's "transaction of any business within the state" by use of DTC or NSCC. *See* N.Y. CPLR § 302(a)(1).[11] However, the use of DTC and NSCC for other purposes does not alone subject Alpine to specific personal jurisdiction in this District because the SEC's claim in this case – a Section 17(a) books and records violation based on alleged actions occurring in Utah – does not arise out of Alpine's use of DTC's and NSCC's services.

In *Sino Clean Energy Inc. v. Little*, the New York Supreme Court outlined the background and function of DTC and NSCC in support of its ruling that "use of the DTCC, located in New York, without more, does not establish contacts with New York for purposes of conferring jurisdiction . . . ." *Sino Clean Energy Inc. v. Little*, 2012 WL 1849658, at *7 (NY Sup. Ct. 2012) (unreported disposition). "DTCC, through its wholly owned subsidiaries, DTC and NSCC" is a "major clearinghouse" and "custodian for most stock and government debt securities issued in the United States." *Id*. at *8. In fact, DTC and NSCC "provide[] more securities settlement and clearing services than any other entity in the world." *Id*. "DTC is the

---

[11] Subsections 2 through 4 of Section 302 appear to be plainly inapplicable in this case. The SEC's claim in this action consists of alleged Section 17(a) books and records violations under the Exchange Act for failure to file SARs in compliances with BSA and FinCEN requirements. Subsection 2 of Section 302 requires the commission of a tortious act within New York. Subsection 3 of Section 302 requires a tortious act outside of New York. Subsection 4 of Section 302 requires ownership, use, or possession of any real property within New York. *See* N.Y. CPLR § 302(a)(2)-(4). None of the foregoing subsections are alleged in the SEC's Complaint or applicable in this case. Thus, Alpine only addresses Subsection 1 to Section 302 in arguing its inapplicability.

nation's principal securities depository." *Id*. "NSCC provides centralized clearance, settlement, and information services for virtually all securities transactions in the Unites Stated." Consequently, the Court stated that "[w]hen a security's ownership changes hands, NSCC acts as the intermediary between buyer and seller." *Id*. Furthermore, "DTC was created to reduce costs and provide clearing and settlement efficiencies by immobilizing securities and making 'book-entry' changes to ownership." *Id*. Thus, the Court ruled that "use of the DTCC, located in New York, without more, does not establish contacts with New York for purposes of conferring jurisdiction . . ." *Id*.

The Court in *Sino Clean Energy* also noted similar reasoning in multiple cases wherein New York courts have consistently held that "a corporation is not doing business' in the State for purposes of conferring jurisdiction because its shares are listed on a stock exchange requiring the incidental maintenance of bank accounts for dividend payments, stock transfer agents and stock registrars." *Id*. at *8-9 (citations omitted). If such a tangential and peripheral contact was established sufficient contacts for jurisdictional purposes, then "almost every corporation would be subject to the jurisdiction of New York, without any other jurisdictional requirements." *Id*. at *9 (citations omitted). Likewise, the Court reasoned that the use of DTC as legally sufficient to establish contact would result in "almost every corporation [being] subject to the jurisdiction of New York." *Id*.

Additionally, in *Ravenwoods Investment Company v. Bishop Capital Corporation*, the court for the Southern District of New York ruled that although the case involved 270 shareholders with addresses in New York State and around 314,021 shares owned by DTC, the "trading and holding of stock in New York is not, however, a significant contact with the *operative* facts of this action." *Ravenwoods Invest. Co., L.P. v. Bishop Capital Corp.*, 2005 WL

13

236440, at *6 (S.D.N.Y. Feb. 1, 2005) (emphasis in the original).[12]  More specifically, the court

for the Southern District of New York did not agree with plaintiff's contention that defendant's

agreement with DTC and shares being held in DTC factored into a jurisdiction and venue

analysis because "[m]isrepresentations and omissions are deemed to 'occur' in the district where

they are transmitted or withheld, not where they are received."  *Id.* (citations omitted).  Thus, the

Court, citing previous precedent, ruled that "any connection to a nonparty [such as DTC]

performing a particular service for [Bishop Capital] is tenuous compared to the connection

between [Plaintiffs'] claims and the ongoing activities in [Wyoming] that form the basis for this

lawsuit."  *Id.* (quoting *Lewis v. C.R.I., Inc.*, 2003 WL 1900859, at 3 (S.D.N.Y. April 17, 2003)

(brackets in the original).

Alpine's use of DTC's and NSCC's service is legally insufficient to bind it to this

District.  The SEC's claim in this case does not even arise out of Alpine's connection to DTC or

NSCC.  *See e.g. Theraplant*, *supra*, at *3 (this District Court ruled that the claim of copyright

infringement did not arise out of defendant's contacts in New York consisting of "(1) raising

capital through its agent; (2) registering as an issuer of securities in New York; and (3) owning

shares in a mortgage-backed securities fund managed in New York").

The SEC brought one claim against Alpine for "Violations of Exchange Act Section

17(a) of the Exchange Act and Rule 17a-8 Thereunder."  *See* SEC's Compl., at p. 18 [Dkt. 1].  In

support of its claim, the SEC's Complaint consists of multiple pages of allegations including

subsections entitled: Alpine Has Not Meaningfully Improved the Implementation of its BSA

---

[12] *Ravenwoods Invest. Co.* involved a question of venue wherein the defendant argued that venue should be transferred based on an analysis of the convenience of the parties under 28 U.S.C. §1404(a).  In the current case, Alpine is not only arguing for a change of venue, but also that this District lacks personal jurisdiction over Alpine for this matter.  The Court's reasoning in *Ravenwoods Invest. Co.* that use of DTC services is not tied to the operative facts as similar in the current matter.

Complaint Program; Alpine Omitted Material Red Flag Information from at Least 1,950 SARs; Alpine Failed to File any SARs at All on the Liquidation of Approximately 1,900 Deposits Identified by Alpine as Suspicious; Alpine Failed to File More than 250 SARs Within the Required 30 days After the Date the Suspicious Activity was Detected; and Alpine Failed to Maintain and/or Retain Approximately 1,000 Underlying Files Supporting its SAR Filings.  *See id*.  Furthermore, in support of its claim, the SEC alleges that "Alpine failed to comply with the reporting, recordkeeping, and record retention requirements of FinCEN's regulations implementing the BSA. . ." and failed to file SARs as required by the BSA or file SARs which complied with the requirements of the BSA.  *Id*. at ¶¶ 45-46 [Dkt. 1].

The SEC's Section 17(a) books and records claim described in its Complaint does not arise out of Alpine's use of DTC's and NSCC's services in any way whatsoever.  The SEC's books and records claim arises out of allegations which, if true, would have taken place entirely within the four walls of Alpine's corporate offices in Salt Lake City, Utah.  Alpine implemented its AML policies and procedures and performed that actual act of executing and filing SARs at Alpine's corporate headquarters in Utah.  The SEC's claim for a Section 17(a) books and records violation arises out of Alpine's alleged actions or inactions in executing and filing SARs.  There is not even an allegation that the SARs are filed in New York.  As stated above, the "use" of NSCC or the DTC, located in New York, without more, does not establish contacts with New York for purposes of conferring jurisdiction . . . ."  *Sino Clean Energy*, 2012 WL 1849658, at *7. Because the SEC's claim does not arise out of Alpine's use of DTC's and NSCC's services, specific jurisdiction is not met in this District.

## 2.    FEDERAL DUE PROCESS IS NOT SATISFIED.

The SEC has cited Sections 21(d), 21(e), and 27 of the Exchange Act as its basis for jurisdiction.  *See* SEC's Compl., at ¶ 7, [Dkt. 1].  "Since the Securities Exchange Act permits the exercise of personal jurisdiction to the limit of the Due Process Clause of the Fifth Amendment, the personal jurisdiction challenge raised by [defendant] must be tested against due process standards."  *S.E.C. v. Unifund SAL*, 910 F.2d 1028, 1033 (2d Cir. 1990).

"Whether specific or general [jurisdiction], the exercise of personal jurisdiction over a defendant is informed and limited by the U.S. Constitution's guarantee of due process."  *Lebron*, 2017 WL 2352856, at *2 (quoting *Brown*, 814 F.3d at 625).  "The constitutional analysis under the Due Process Clause consists of two separate components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry."  *Licci*, 673 F.3d at 61 (citations omitted).

### a.    MINIMUM CONTACTS ARE NOT SATISFIED.

The Second Circuit has explained that "[t]he 'minimum contacts' inquiry requires us to consider 'whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction.'"  *Licci*, 673 F.3d at 61 (citations omitted).  "In determining whether minimum contacts exist, courts must examine the 'quality and nature' of the contracts under a totality of circumstances test, to determine whether the defendant has 'purposefully availed itself of the privilege of conducting activities within the forum State, thus involving the benefits and protections of its laws . . . such that the defendant should reasonably anticipate being haled into court there."  *Schutte Bagsclosures Inc. v. Kwik Lok Corp.*, 48 F.Supp.3d 675, 686-87 (S.D.N.Y. 2014) (citations and internal brackets omitted).  In determining minimum contacts, courts "should consider the relationship among the defendant, the forum, and the litigation."  *Id*. (citations omitted).  Notably, an analysis of "minimum contacts" falls under the

analysis of "two types of jurisdiction – specific and general." *Wilder v. News Corp.*, 2015 WL 5853763, at *5 (S.D.N.Y. Oct. 7, 2015) (discussing contacts with the forum state under an analysis of Due Process).

The SEC has failed to establish general and specific jurisdiction to satisfy the constitutional minimum contacts standards for the reasons and authorities cited by Alpine in Section A(1) above, which argument is incorporated fully herein by this reference.  In summary, general jurisdiction is not satisfied under the standard set forth in *Daimler*, which vests general jurisdiction on an entity where it is incorporated, has its principal place of operation, or is an exceptional case resulting in the entity being essentially "at home" in the forum.  *See* Section A(1)(a), *supra*.  Alpine is incorporated in Utah, has its principal place of operations in Utah, and does not have substantial, continuous, and systematic contacts in New York to render it at home in New York, including no office, employees, or registered agent in New York.[13]

Likewise, specific jurisdiction is not satisfied as the SEC's Section 17(a) books and records violation against Alpine does not arise under Alpine's use of DTC's and NSCC's services in New York, but through Alpine's implementation of its AML policies and procedure and the execution and filing of SARs from its headquarters in Utah.  *See* Section A(1)(b), *supra*. Accordingly, minimum contacts under the Due Process analysis have not been satisfied.

### b.      REASONABLENESS IS NOT SATISFIED.

The Second Circuit has explained that "[t]he 'reasonableness' inquiry requires us to decide 'whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice' – that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case."  *Licci*, 673 F.3d at 61 (citations omitted).

---

[13] *See* Complaint, ¶ 9 [Dkt. 1]; *see also* Nathan D. Simmons Decl., at ¶¶ 3-7.

Factors which may be considered include: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies. *See Schutte Bagsclosures Inc.*, 48 F.Supp.3d at 687 (citations omitted).

None of the reasonableness factors apply in this case. As discussed at length in this Memorandum, Alpine's only alleged contact to New York is through its use of DTC's and NSCC's services, which is legally insufficient to confer jurisdiction for the reasons stated. Moreover, all allegations in the SEC's Section 17(a) books and records claim arose out of Alpine's alleged actions or inactions in Utah regarding the filing of SARs. All of Alpine records and employees, who would comprise the great majority (if not all) of its potential defense witnesses, are located in Utah. Therefore, the burden on Alpine of defending itself in this District would be substantial. Similarly, where there is not even an alleged connection between the claims in this case and New York, this District has virtually no interest in this matter. Moreover, it is also notable that this case was filed by the SEC's Denver Regional Office, *see* Complaint, at 1 [Dkt. 1], and thus the SEC could not convincingly argue that New York is more convenient than Utah to even the plaintiff. Indeed, this District has such an attenuated and remote connection to all of the parties and issues in this action that it calls into question the real reason that SEC chose to file it here at all. To be certain, given the circumstances of this case, it is simply neither reasonable nor consistent with the notions of fair play and substantial justice for this Court to exercise personal jurisdiction over Alpine in this case. *See Licci*, 673 F.3d at 61.

**B.**      **THIS DISTRICT IS AN IMPROPER VENUE FOR THIS ACTION.**

In addition to dismissing this action for lack of personal jurisdiction, Alpine requests that this Court transfer this action to the District Court of Utah pursuant to 28 U.S.C. §§ 1404(a) and 1406(a).  *See Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F.Supp.2d 735, 741-42 (S.D.N.Y. 2013) (citations omitted) ("This Court has power to transfer the case even if there is no personal jurisdiction over the defendants, and whether or not venue is proper in the district, if a transfer would be in the interest of justice.").  Alternatively, in the event that the Court finds that personal jurisdiction does vest in this District, nonetheless, Alpine requests that this Court transfer this case to the District Court of Utah.

Venue is generally proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situation."  28 U.S.C. § 1391(b)(2) (other subsections of Section 1391 are not applicable for this matter).  "District courts are required to construe the venue statute strictly." *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F.Supp.2d 735, 742 (S.D.N.Y. 2013) (citations omitted).[14]

Courts consider the following factors in analyzing whether to transfer an action to a different District Court: (a) the convenience of witnesses; (b) the convenience of parties; (c) the locus of operative facts; (d) the location of relevant documents and relative ease of access to sources of proof; (e) the availability of process to compel the attendance of unwilling witnesses;

---

[14] "Section 27 of the Exchange Act, 15 U.S.C. § 78aa, provides for venue in any district where 'any act or transaction constituting the violation occurred' or 'wherein the defendant is found or is an inhabitant or transacts business.'"  *In re Poseidon Concepts Securities Litigation*, 2016 WL 3017395, at *8 (S.D.N.Y. May 24, 2016). However, the court for the Southern District of New York noted that "§ 1391(c)(3) is not displaced by special statutory venue statutes."  *Id.* (citing the Supreme Court and Ninth Circuit for the legal standard of "refusing to nullify general venue laws in the face of more narrow venue provisions in specific federal statutes").  Notably, in *Ravenwoods Invest. Co.*, venue was asserted under Section 27 of the Exchange Act, yet, the court for the Southern District of New York ruled that transfer of the case to the District Court of Wyoming was appropriate based on the applicable factors (discussed herein) weighing in favor of transfer.  *See Ravenwoods Invest. Co.*, *supra*, at *3.

(f) the forum's familiarity with the governing law; (g) the relative financial means of the parties; (h) the weight afforded plaintiff's choice of forum; and (i) trial efficiency and the interests of justice. *See Ravenwoods Invest. Co.*, 2005 WL 236440, at *3 (citations omitted). Each factor weighs in favor of transfer as discussed below.

### *Convenience of Witnesses*

Considerations of the convenience of witnesses "is generally considered the most important factor in deciding a venue transfer motion." *Ravenwoods Invest. Co.*, *supra*, at *3 (citations omitted). When the potential witnesses live outside the forum and the majority live in the requested new forum or nearby, then the "inconveniences to these potentially critical witnesses is obvious on its face and weighs strongly in favor of transfer." *Id.* (citing *Stillwater Mining*, 2003 WL 21087953, at *4 (S.D.N.Y. May 12, 2003) (noting that all fifteen defense witnesses lived in transferee state, Montana, or nearby states, Colorado and Arizona); (citing *In re Nematron Corp. Sec. Litg.*, 30 F.Supp.2d 397, 400-01 (S.D.N.Y. 1998) (explaining that transfer was favored where majority of defense non-party witnesses resided in transferee state).

In this matter, almost all of Alpine's witnesses reside in Utah. None of the witnesses reside in New York. Alpine's witnesses, known at this time, and based on the allegations in the SEC's Complaint, are as follows:

- Robert L. Tew, President at Alpine, resides in Utah
- Nathan D. Simmons, General Counsel at Alpine, resides in Utah
- Erin Zipprich, AML Officer at Alpine, resides in Utah
- Joshua Boyer, Director of Operations at Alpine, resides in Utah
- Christopher L. Frankel, CEO and CCO at Alpine, resides in Utah and Florida
- Randy Jones, Sales and Trading Manager at Alpine (formerly AML Officer), resides in Maine and commutes to work in Utah
- Ginnie Griffith (Baldwin), Registered Representative at Alpine, resides in Utah
- Erin Lui, Registered Representative at Alpine, resides in Utah
- Travis Standiford, former Sales Representative at Alpine, resides in Utah

- Todd Groskreutz, former CFO, AML Officer, and FINOP at Alpine, resides in Utah
- Elisha L. Werner, former AML Officer and legal counsel at Alpine, resides in Illinois
- Leia Farmer, former CCO and AML Officer at Alpine, resides in Iowa
  Holly Peck (Halpin), former legal counsel and AML Officer at Alpine, resides in Utah
- Betsy Voter, former General Counsel at Alpine, resides in Utah
- Mike Bennett, former Associate Counsel at Alpine, resides in Utah
- Russell Jones, former Associate Counsel at Alpine, resides in Utah
- Kyle Hampton, former Associate Counsel at Alpine, resides in Utah
- Doug Wawrzynski, former legal counsel at Alpine, resides in Utah
- Heather Noble, former Compliance Analyst at Alpine, resides in Utah
- David Cazier, Controller and FINOP at Alpine, resides in Utah

*See* Nathan D. Simmons Decl., at ¶ 10(a)-(t).

Based on the residency of Alpine's witnesses, and the likely assumption that the SEC will not provide meaningful or critical witnesses from New York, if any, this important factor weighs heavily in favor of transferring this case to the District Court of Utah.

### Convenience of Parties

"The convenience to the parties also weighs heavily in favor of transfer." *Ravenwoods Invest. Co.*, *supra*, at *5. In this case, the SEC admits that the one Defendant, Alpine, is incorporated and headquartered in Utah. *See* Complaint, ¶ 9 [Dkt. 1]. Moreover, the SEC also has a Regional Office in Salt Lake City, Utah and counsel for the SEC in this matter are located at the Regional Office in Denver, Colorado. Thus, New York is not convenient to any party in this case.

### Locus of Operative Facts

Courts view "[w]here the operative facts occurred [as] an obvious factor to consider." *Ravenwoods Invest. Co.*, *supra*, at *5 (citations omitted). Moreover, "where the operative facts are concentrated in a specific district other than the district in which plaintiff has sued, the action

21

should be transferred to that district, notwithstanding plaintiff's choice of forum." *Id.* (citations omitted). Also, "courts routinely transfer cases when the principal events occurred and the principal witnesses are located in another district." *Id.* (citations omitted). All the operative facts regarding the alleged books and records violations for failure to follow FinCEN and BSA compliance rules with SARs occurred at Alpine in Utah. As stated in Section A(1)(b) above, the use of DTC's and NSCC's services is legally insufficient to be considered a relevant operative fact which occurred in New York. Accordingly, this factor also weighs in favor of transferring this matter to the District Court of Utah.

### *Location of Relevant Documents*

Location of documents "is clearly an important consideration in motions to transfer." *Ravenwoods Invest. Co.*, *supra*, at *5 (citations omitted). Even through documents can be copied and shipped, it "would impose an extra costs that is unnecessary, and therefore favors transfer, even if marginally." *Ravenwoods Invest. Co.*, *supra*, at *5 (citations omitted) (internal quotations omitted). In this matter, all documents pertaining to any particular account or account activity, including account records, stock and money movements, wire transfers, stock deposit and related due diligence, order ticket and confirmations, trade blotters, and email records are located in Utah. In addition, all drafting and filing of SARs occurred at Alpine in Utah and Alpine maintains hard copies of the SARs and the SARs' inquiry files. Accordingly, this factor also weighs in favor of transferring this case to the District Court of Utah.[15]

### *Availability of Process to Compel the Attendance of Unwilling Witnesses*

In *Ravenwoods Invest. Co.*, the court noted that the "Defendants' proposed witnesses are not within the control of the Defendants and reside outside this Court's subpoena power."

---

[15] *See* Nathan D. Simmons Decl., at ¶¶ 11-12.

*Ravenwoods Invest. Co.*, *supra*, at *7.  Although the defendants "made no firm representation that these witnesses would refuse to testify in New York, if asked," the Court found that "it remains beyond dispute that at least some of the Defendants' witnesses would be subject to the subpoena power of the District Court of Wyoming" and "[t]his would 'substantially reduce' Defendants' burden in calling witnesses on their behalf."  *Id.* (citations omitted).  Likewise, Alpine's proposed witnesses listed herein lie outside the subpoena power of this District but are within the subpoena power of the District Court of Utah.[16]  Accordingly, this factor also weighs in favor of transfer.

### Forum's Familiarity with the Governing Law

The law is clear that this factor has very little weight "because federal courts are deemed capable of applying the substantive law of other states."  *Ravenwoods Invest. Co.*, *supra*, at *7 (citations omitted).  More importantly, in this matter, the District Court of Utah would be applying federal law.

### Relative Financial Means of the Parties

This factor should be considered as Alpine is a private company litigating against the SEC.  It is obvious on its face that Alpine will expend less in litigation costs by litigating this case in Utah where it is headquartered and the majority of witnesses, including current employees, reside.

---

[16] Rule 45 of the Federal Rules of Civil Procedure states that a "subpoena may command a person to attend a trial, hearing, or deposition only as follows: (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trail and would not incur substantial expense."  Fed. R. Civ. P. 45.

### Weight Afforded to Plaintiff's Choice of Forum

The default rule of applying considerable weight to the plaintiff's choice of forum is mitigated "where this is little material connection between the case and the chosen forum." *Ravenwoods Invest. Co.*, *supra*, at *7-8 (citations omitted) ("However, even assigning Plaintiffs' choice of forum substantial weight, the balance of the factors heavily favors transfer of this case to the District of Wyoming").  As stated *ad nauseam* in this Memorandum, there is no connection between the claims in the Complaint and the State of New York.  As a result, this case should be transferred to the District Court of Utah.

### Trial Efficiency and the Interests of Justice

This factor considers the interest of justice taken as a whole.  In *Ravenwoods Invest. Co.*, the Court found that the "center of gravity" of the litigation was in Wyoming, where almost all the defendants and non-party witnesses resided, where the documents were located, and where the alleged misrepresentations occurred at the company's headquarters.  *Ravenwoods Invest. Co.*, *supra*, at *9 (citations omitted).  Likewise, this case should be transferred to the District Court of Utah because it is where Alpine is incorporated and headquartered, where the majority of documents and witnesses are located, and where SARs were recorded and filed.

Based on the foregoing, and pursuant to 28 U.S.C. § 1406 which states, "The district court of a district in which it filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought" this action should have been filed in the District Court of Utah where the events occurred and the witnesses and evidence are substantially located.  Therefore, Alpine requests that this case be transferred to the District Court of Utah.

**IV.     CONCLUSION AND RELIEF REQUESTED.**

Based on the foregoing, Alpine requests that the Court dismiss the SEC's Complaint for lack of personal jurisdiction and/or transfer this case to the District Court of Utah pursuant to 28 U.S.C. §§ 1404(a) and 1406(a).

DATED this 3rd day of August, 2017.

/s/ *Brent R. Baker*
Brent R. Baker (BB 8285)
Aaron D. Lebenta (*Pro Hac Vice Pending*)
Jonathan D. Bletzacker (*Pro Hac Vice Pending*)
**CLYDE SNOW & SESSIONS**
One Utah Center, 13th Floor
201 South Main Street
Salt Lake City, Utah 84111-2216
Telephone 801.322.2516
Facsimile 801.521.6280
Email: brb@clydesnow.com
          adl@clydesnow.com
          jdb@clydesnow.com

*Counsel for Alpine Securities Corporation*