GREGORY A. KASPER
kasperg@sec.gov
ZACHARY T. CARLYLE
carlylez@sec.gov
TERRY R. MILLER
millerte@sec.gov
SECURITIES AND EXCHANGE COMMISSION
1961 Stout Street, 17th Floor
Denver, Colorado 80294
(303) 844-1000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>                              Plaintiff,<br><br>        - against -<br><br>ALPINE SECURITIES CORPORATION,<br><br>                              Defendant. | **17-cv-4179-DLC**<br><br><br>**ECF CASE** |

**PLAINTIFF UNITED STATES SECURITIES AND EXCHANGE
COMMISSION'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

Table of Authorities ......................................................................................................................iii

INTRODUCTION ........................................................................................................................1

ARGUMENT ................................................................................................................................4

I.      THE COURT HAS PERSONAL JURISDICTION OVER ALPINE ..................................4

          A.      Alpine has sufficient minimum contacts with the United
               States (and New York).............................................................................................5

          B.      The exercise of jurisdiction is not unreasonable........................................7

II.     VENUE IS PROPER IN THIS DISTRICT AND THE CASE SHOULD NOT BE
       TRANSFERRED ................................................................................................................9

          A.      Venue is proper under Section 27 of the Exchange Act ...........................9

          B.      The Commission's choice of forum outweighs any
               inconveniences under Section 1404(a) ..................................................................11

CONCLUSION...........................................................................................................................20

# TABLE OF AUTHORITIES

**CASES:**

Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.,

    457 F. Supp. 2d 474 (S.D.N.Y. 2006) ..................................................................... 18, 20

Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Lafarge N. Am., Inc. ,

    474 F. Supp. 2d 474 (S.D.N.Y. 2007) ........................................................................... 12

Chloe v. Queen Bee of Beverly Hills, L.L.C.,

    616 F.3d 158 (2d Cir. 2010) .............................................................................................. 6

SEC v. Softpoint, Inc.,

    No. 95 CIV. 2951 GEL, 2001 WL 43611 (S.D.N.Y. Jan. 18, 2001) ................................ 7

ESPN, Inc. v. Quiksilver, Inc.,

    581 F. Supp. 2d 542 (S.D.N.Y. 2008) ........................................................................... 18

Farberware Licensing Co. v. Meyer Mktg. Co.,

    No. 09 Civ. 2570 (HB), 2009 WL 1357956 (S.D.N.Y. May 14, 2009) ..................... 12, 13

Greenwood Partners v. New Frontier Media,

    No. 99 Civ. 9099 (WK), 2000 WL 278086 (S.D.N.Y. Mar. 9, 2000) ........................ 10, 11

Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.,

    104 F. Supp. 2d 279 (S.D.N.Y. 2000) .............................................................................. 8

Hummingbird USA, Inc. v. Tex. GSL Corp.,

    No. 06 Civ. 7672 (LTS)(GWG), 2007 WL 163111 (S.D.N.Y. Jan. 22, 2007) .......... 13, 20

In re Poseidon Concepts Sec. Litig.,

    No. 13CV1213 (DLC), 2016 WL 3017395 (S.D.N.Y. May 24, 2016) .............. 4, 5, 9, 12

Mariash v. Morrill,

    496 F.2d 1138 (2d Cir. 1974) ........................................................................................... 5

Matera v. Native Eyewear, Inc.,

    355 F. Supp. 2d 680 (E.D.N.Y. 2005) ........................................................................... 13

Merkur v. Wyndham Int'l, Inc.,

    No. 00 CV 5843 (ILG), 2001 WL 477268, at *3 (E.D.N.Y. Mar. 30, 2001) ................. 13

Moon Joo Yu v. Premiere Power L.L.C.,

    No. 14 Civ. 7588 (KPF), 2015 WL 4629495 (S.D.N.Y. Aug. 4, 2015) ........................... 7

Orb Factory, Ltd. v. Design Sci. Toys, Ltd.,

    6 F. Supp. 2d 203 (S.D.N.Y. 1998) ............................................................................ 12

PDK Labs, Inc. v. Friedlander,

    103 F.3d 1105 (2d Cir. 1997) ..................................................................................... 4

Ravenswood Inv. Co. v. Bishop Capital Corp.,

    No. 04 CV 9266 (KMK), 2005 WL 236440 (S.D.N.Y. Jan. 31, 2005) ........................ 6, 7

Royal & Sun All. Ins. PLC v. UPS Supply Chain Sols., Inc. ,

    No. 09 Civ. 5935 (LTS)(AJP), 2010 WL 4967984 (S.D.N.Y. Dec. 1, 2010) ................. 13

Schieffelin & Co. v. Jack Co.,

    725 F. Supp. 1314 (S.D.N.Y. 1989) ........................................................................... 13

SEC v. Jean-Pierre,

    No. 12 Civ. 8886 (LGS), 2015 WL 1054905 (S.D.N.Y. Mar. 9, 2015) ........................ 11

SEC v. KPMG, L.L.P.,

    No. 03 Civ. 671 (DLC), 2003 WL 1842871 (S.D.N.Y. Apr. 8, 2003) ........................ 4, 12

SEC v. Rust,

    No. 16 Civ. 3573 (ER), 2017 WL 239381 (S.D.N.Y. Jan. 17, 2017) ............................ 10

SEC v. Straub,

    921 F. Supp. 2d 253 (S.D.N.Y. 2013).......................................................................... 4, 5

Sino Clean Energy Inc. v. Little,

    No. 651248/2011, 2012 WL 1849658  (N.Y. Sup. Ct. May 21, 2012) ........................ 6, 7

SST Glob. Tech., L.L.C. v. Chapman,

    270 F. Supp. 2d 444 (S.D.N.Y. 2003) .......................................................................... 9

Steinberg & Lyman v. Takacs,

    690 F. Supp. 263 (S.D.N.Y. 1988) .......................................................................... 9, 10

Theraplant, L.L.C. v. Makarechi,

    No. 16CV0646 (DLC), 2016 WL 7839186 (S.D.N.Y. Dec. 23, 2016) ............................ 6

## STATUTES AND REGULATIONS:

15 U.S.C. § 78aa .................................................................................................. *passim*

28 U.S.C. § 1391 ......................................................................................................... 9

28 U.S.C. § 1404 ................................................................................................ 9, 11

28 U.S.C. § 1406 ................................................................................................... 9

31 U.S.C. § 5311 ................................................................................................... 1

N.Y. C.P.L.R. 302 ................................................................................................. 7

31 C.F.R. § 1023.320 ........................................................................................... 10

Plaintiff United States Securities and Exchange Commission (the "Commission") submits this Memorandum of Law in Opposition to Defendant's Motion to Dismiss (Doc. No. 15, "Motion").[1]

## **INTRODUCTION**

This case of first impression concerns the inadequacy of a broker-dealer's report of suspicious transactions to the United States Treasury Department's Financial Crimes Enforcement Network ("FinCEN"). The Bank Secrecy Act ("BSA") and its implementing regulations require broker-dealers like Defendant Alpine Securities Corporation ("Alpine") to file "Suspicious Activity Reports" ("SARs") with FinCEN to report suspicious transactions conducted by, at, or through the firm. These mandatory reports are tools intended serve the BSA's purpose to assist criminal, tax, and regulatory investigations as well as intelligence or counterintelligence activities. *See* 31 U.S.C. § 5311. Alpine undermined the purposes of the BSA and deprived U.S. regulators and law enforcement of key financial intelligence by systematically failing to file adequate SARs about suspicious transactions and by filing SARs that omitted critical information. *See* Complaint and Jury Demand ¶¶ 3-4 (Doc. No. 1, "Complaint").

Alpine acts as a clearing firm for many microcap over-the-counter ("OTC") stock transactions. Complaint ¶ 1. Introducing brokers, such as Scottsdale Advisors Corp. ("Scottsdale"), ask Alpine to handle the record-keeping and mechanical functions of securities transactions ordered by the introducing brokers' clients. Complaint ¶ 10. To perform these functions Alpine entered into direct participation agreements with Depository Trust Company ("DTC") in New York City and National Securities Clearing Corporation ("NSCC") in New

---

[1] Citations to the "Motion" refer to Alpine's Memorandum of Law in Support of Alpine Securities Corporation's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 16).

York City. Complaint ¶ 8. DTC and NSCC together provide for the depository of physical stock certificates and settlement services for broker-to-broker securities transactions. As a simple example, Scottsdale asks Alpine to clear a transaction ordered by Scottsdale's customer. Alpine then delivers Scottsdale's order to DTC and NSCC—money (for a purchase) or securities (for a sale)—and DTC and NSCC provide Alpine the matching securities or money to complete the transaction. DTC facilitates and enables its participants' transactions by serving as a depository of stock certificates and managing book-entry transfers, which allows Alpine to clear transactions without the need to exchange physical certificates. NSCC facilitates and enables its participants' transactions by providing a centralized platform that matches buyers with sellers and also "nets" Alpine's trades and payments at the end of each day, which reduces the amount of securities and payments that Alpine needs to exchange every day. Together, DTC and NSCC services in New York create the efficiency that allows Alpine to clear a large volume of microcap and OTC transactions. The ongoing business relationship between Alpine and DTC and NSCC entails daily transactions and monthly invoices to Alpine in the range of $45,000 to $55,000 per month.[2] In short, Alpine cannot serve its clients without accessing the OTC market in New York City and the services of DTC and NSCC provided in New York City.

The alleged violations in this case are premised on thousands of suspicious transactions Alpine directed to DTC and NSCC in New York City for which Alpine failed to file adequate SARs. Complaint ¶ 8. Moreover, a significant volume of Alpine's trades occurred on OTC market exchanges located in New York City, including thousands of trades for which Alpine did

---

[2] Examples include: $45,673.69 for June 2011; $53,764.61 for December 2011; $50,225.01 for June 2012; and $51,933.02 for November 2013.

not file a SAR and which serve as a basis for thousands of violations alleged in the Complaint. *See, e.g.*, Complaint ¶¶ 34-38.

In the Motion, Alpine bases its jurisdiction and venue arguments on two fundamental mistakes. First, Alpine misunderstands the full scope of the statutory basis for personal jurisdiction and venue here. Section 27 of the Securities Exchange Act of 1934 ("Exchange Act") provides for worldwide service of process and, as a result, the sovereign here is the United States—not New York, and the personal jurisdiction inquiry looks to Alpine's contacts with the United States—not New York. Section 27 also provides a basis for venue where any non-trivial act which helped accomplish Alpine's violations occurred or where Alpine transacts business.

Second, Alpine ignores the connection between the suspicious transactions directed to New York City and Alpine's alleged violations. A suspicious transaction is an element of the Commission's claim that Alpine failed to adequately report a suspicious transaction. There can be no liability for failure to report a suspicious transaction without a suspicious transaction. Alpine's transactions in New York City are necessary to prove liability and therefore are more than non-trivial acts that helped accomplish a violation.

Finally, Alpine's request for transfer fails to overcome the deference owed to the Commission's choice of forum. The Commission chose this forum because the injunctive relief requested in this case will guide not only Alpine's future conduct in this forum, but also the conduct of all broker-dealers doing business in the nation's financial center. A judgment from this district will provide direct guidance to the industry. Alpine failed to show that the convenience of witnesses favors transfer to Utah because Alpine simply listed a roster of current and former employees with no detail of their likely testimony or explanation why their testimony

3

is important. And, in fact, transfer would not promote convenience; it would merely shift convenience among the principal witnesses who are actually likely to testify and are scattered across several states. Alpine also failed to show how a transfer would impact discovery or the exchange of documents because witnesses will be deposed where they reside and records have already been exchanged. The request for transfer should be denied because any convenience gained by a transfer does not outweigh the Commission's policy-driven choice of forum.

## ARGUMENT

The Commission need only make a prima facie showing that the Court has personal jurisdiction over Alpine to defeat its motion to dismiss. *In re Poseidon Concepts Sec. Litig.*, No. 13CV1213 (DLC), 2016 WL 3017395, at *6 (S.D.N.Y. May 24, 2016) ("*Poseidon Concepts*"). To evaluate whether the Commission makes such a showing, pleadings and supporting materials should be construed in the light most favorable to the Commission. *Id.* Similarly, the Commission need only make a prima facie showing of venue if the Court relies solely on pleadings and affidavits. *Id.* at *8. Alpine has the burden to show that transfer is warranted. *SEC v. KPMG, LLP*, No. 03 CIV. 671 (DLC), 2003 WL 1842871, at *2 (S.D.N.Y. Apr. 9, 2003).

## I.   THE COURT HAS PERSONAL JURISDICTION OVER ALPINE.

New York's long-arm statute cited by Alpine (Motion at 3) does not apply in federal question cases where, as here, the federal statute provides for national service of process. *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997); *SEC v. Straub*, 921 F. Supp. 2d 253 (S.D.N.Y. 2013). Instead, Section 27 of the Exchange Act is the statutory basis for personal jurisdiction here. Complaint ¶ 7, 15 U.S.C. § 78aa(a). Because the Exchange Act provides for worldwide service of process, the minimum contacts and reasonableness prongs of the personal

jurisdiction inquiry concern Alpine's contacts with the entire United States—not just New York.

*Poseidon Concepts*, 2016 WL 3017395, at *6 (citing *Mariash v. Morrill*, 496 F. 2d 1138, 1143 (2d Cir. 1974)); *Straub*, 921 F. Supp. 2d 253.

### A.   Alpine has sufficient minimum contacts with the United States (and New York).

Alpine's residence in the United States alone satisfies the minimum contacts requirement. Doc. No. 17 at ¶¶ 3-4 ("Simmons Declaration"); Complaint at ¶ 9; *Mariash*, 496 F.2d at 1143("[W]here, as here, the defendants reside within the territorial boundaries of the United States, the 'minimal contacts,' required to justify the federal government's exercise of power over them are present.").

Although the Court can ignore Alpine's argument that it lacks contacts with New York, that argument also is incorrect. Alpine entered into direct participation agreements with DTC and NSCC for services provided in New York City. Alpine's business with DTC and NSCC is continuous and ongoing, and Alpine pays invoices issued monthly for these services. Alpine routinely pays DTC and NSCC to clear the transactions of Alpine's customers, including the suspicious transactions that give rise to Alpine's obligations to submit SARs under the BSA. Thousands of these suspicious transactions likewise occurred on OTC market exchanges located in New York City. The fact that Alpine directed thousands of these suspicious transactions to New York City is an element of the Commission's claim that Alpine failed to adequately report those suspicious transactions. Without suspicious transactions with DTC there would be no duty to report and no violation under the BSA and Section 17(a) of the Exchange Act. Accordingly, the Commission's claims arise out of the thousands of transactions that Alpine directed to New York, which satisfy the minimal contacts requirement even if the relevant forum were New

York. *Chloe v. Queen Bee of Beverly Hills*, LLC, 616 F.3d 158, 169 (2d Cir. 2010) (A foreign defendant need not enter New York to be subject to jurisdiction, "so long as [his] activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted.") (quotation omitted).

The authorities discussed by Defendant do not defeat personal jurisdiction for two reasons. *First*, two of the cases apply New York's long-arm statute and focus on contacts with New York only. *Theraplant, LLC v. Makarechi*, No. 16CV0646 (DLC), 2016 WL 7839186, at *2 (S.D.N.Y. Dec. 23, 2016) (cited by Motion at 10-11) (jurisdiction asserted under CPLR § 302(a)(1), (2), and (3)); *Sino Clean Energy Inc. v. Little*, No. 651248/2011, 2012 WL 1849658, at *8 (N.Y. Sup. Ct. 2012) (cited by Motion at 12-13) (jurisdiction asserted under CPLR §§ 301 and 302(a)(1) and (2)). The third case does not even discuss personal jurisdiction. *Ravenwoods Invest. Co., L.P. v. Bishop Capital Corp.*, No. 04CV9266KMK, 2005 WL 236440, at *1 (S.D.N.Y. Feb. 1, 2005) (cited by Motion at 13-14). None of these cases hold that a United States District Court lacks personal jurisdiction over a United States clearing firm in a case filed to enforce United States securities laws.

*Second*, none of the cases discussed by Alpine involved a claim arising out of a clearing firm's continuous OTC transactions and direct and ongoing business with DTC and NSCC in New York. *Theraplant* involved a claim for copyright infringement that did not arise out of securities-related activity in New York. 2016 WL 7839186, at *2. In *Sino Clean Energy*, the defendant's use of DTC was "merely incidental to his alleged short sale transactions" and did not "have *direct* contact with the DTCC[.]" 2012 WL 1849658 at *9 (emphasis in original). The court was concerned that almost every corporation would be subject to the jurisdiction of New

6

York if it accepted the plaintiff's contention. *Id.* at *8. In contrast, Alpine is a clearing firm that works directly with DTC and NSCC pursuant to contracts to which Alpine is a party. Exercising jurisdiction over a DTC and NSCC participant in a case arising from direct contacts with DTC and NSCC will not open jurisdictional floodgates to sweep up "almost every corporation" that issued stock certificates held in DTC's vault. Indeed, this case has nothing to do with securities issued by Alpine. Finally, the plaintiff in *Ravenwoods* alleged that securities fraud occurred in Wyoming and that proxy statements containing the misrepresentations were sent to shareholders, including DTC in New York. 2005 WL 236440, at *1. The defendant did not even challenge jurisdiction in *Ravenwoods*, and like *Sino Clean Energy* but unlike this Case against Alpine, *Ravenwoods* did not involve claims arising out of direct and continuous contact with DTC.

Accordingly, Alpine has sufficient contacts to confer personal jurisdiction under Section 27. Although not necessary, Alpine also has sufficient contacts with New York under CPLR § 302(a)(1).

### B.       The exercise of jurisdiction is not unreasonable.

The Court's exercise of personal jurisdiction here satisfies the reasonableness prong because "[Alpine] resides within the United States, [Alpine] conducts business within the United States, and [Alpine] should reasonably anticipate being haled into court in the United States." *Moon Joo Yu v. Premiere Power LLC*, No. 14 CIV. 7588 KPF, 2015 WL 4629495, at *5 (S.D.N.Y. Aug. 4, 2015). The analysis should end here. Alpine does not—and cannot— demonstrate that litigation in the United States will be "so gravely difficult" so as to put it at a "severe disadvantage in comparison" to the Commission. *SEC v. Softpoint, Inc.,* No. 95 CIV. 2951 GEL, 2001 WL 43611, at *5 (S.D.N.Y. Jan. 18, 2001) (The reasonableness prong "is

largely academic in non-diversity cases brought under federal law which provides for nationwide service of process.").

Even if the Court focuses solely on Alpine's relationship with New York, the exercise of personal jurisdiction is not unreasonable. Alpine elected to use DTC and NSCC in New York to process the suspicious transactions on behalf of Alpine's clients, and liquidated its clients' suspicious deposits using OTC exchanges located in New York City. The location of some Alpine witnesses in Utah does not put Alpine at a "severe disadvantage" because no travel will be required to produce documents, witnesses can be deposed where they live, and it is not unreasonable for Alpine representatives to travel to New York for a trial that concerns thousands of transactions Alpine directed to New York. *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 104 F. Supp. 2d 279, 286 (S.D.N.Y. 2000) ("This burden does not appear excessive, particularly in an age of electronic mail, facsimile transmission, videoconferencing and frequent coast to coast air service."). In fact, at least seven Alpine employees voluntarily travelled to New York City for interviews during the investigation of the conduct alleged in the Complaint. Declaration of James Lyman ¶ 5, attached hereto ("Lyman Decl."). The reasonableness prong is satisfied for the same reasons as in *Hallwood Realty*:

> [Alpine] is a business enterprise, not an individual of limited means who could not readily cope with being forced to defend a lawsuit far from home. In the last analysis, the question is whether the burden on [Alpine] of litigating this case in New York is so severe that the exercise of personal jurisdiction over it is arbitrary, shocks the conscience, or offends fundamental principles of ordered liberty, notwithstanding the strong federal interest in efficient and effective enforcement of the securities laws. [Alpine] has not even approached such a showing.

*Id.* at 286-87. The exercise of personal jurisdiction under Section 27 will not violate due process.

8

## II. VENUE IS PROPER IN THIS DISTRICT AND THE CASE SHOULD NOT BE TRANSFERRED.

Alpine argues that venue is improper and the case should be transferred to Utah under 28 U.S.C. § 1406(a), Motion at 24, and argues in the alternative that the case should be transferred to Utah under 28 U.S.C. § 1404(a), Motion at 19. Both arguments also fail to confront the full scope of Section 27 of the Exchange Act and Alpine's activity in New York.

### A.      Venue is proper under Section 27 of the Exchange Act.

Alpine misunderstands the scope of Section 27 again by relying on 28 U.S.C. § 1391(b)(2). Motion at 19. This general statute governs venue of civil actions "[e]xcept otherwise provided by law." 28 U.S.C. § 1391(a). "Section 27 of the Securities Exchange Act has a venue provision that, pursuant to § 1391, governs this case." *Steinberg & Lyman v. Takacs*, 690 F. Supp. 263, 267 (S.D.N.Y. 1988). Alpine's citation to *Poseidon Concepts* is misplaced because the court in that case held only that Section 1391(c)(3) can be the basis for venue where Section 27 is more narrow than Section 1391(c)(3). 2016 WL 3017395, at *8 (cited in Motion at 19 n.14). But this ruling does not prohibit venue where, as here, Section 27 is broader than section 1391; the ruling simply acknowledges that Section 1391(c)(3) can be an alternative source of venue. Accordingly, Section 27 is a permissible source of venue here, and venue is proper for this case in any district where (1) "any act or transaction constituting" a violation alleged in the Complaint occurred or (2) Alpine "transacts business." 15 U.S.C. § 78aa(a); *see also SST Glob. Tech., LLC v. Chapman,* 270 F. Supp. 2d 444, 452 (S.D.N.Y. 2003) ("Venue with regard to securities law claims under the Securities Exchange Act is controlled exclusively by 15 U.S.C. § 78aa, without regard to the general venue provisions of 28 U.S.C. § 1391.").

Any non-trivial act in this district which helped accomplish Alpine's violations is sufficient to establish venue—even if the act does not go to the core of the violation. *SEC v. Rust*, No. 16 CIV. 3573 (ER), 2017 WL 239381 (S.D.N.Y. Jan. 17, 2017); *Steinberg & Lyman*, 690 F. Supp. at 267. For example, conducting business with broker-dealers located in the district to facilitate trades underlying a securities violation is sufficient to establish venue. *Rust*, 2017 WL 239381. A transfer agent mailing dividends from New York City, sending press releases into a district, and phone calls or mailing into a district "have all been held sufficient to confer venue." *Greenwood Partners v. New Frontier Media Inc.*, No. 99 CIV. 9099 WK, 2000 WL 278086, at *6 (S.D.N.Y. Mar. 14, 2000).

Alpine directed suspicious transactions to New York City via DTC and NSCC and liquidated suspicious deposits on the OTC exchanges in New York City. These suspicious transactions confer venue here because they are a core element of the Commission's Section 17(a) claim. Alpine violated Section 17(a) of the Exchange Act by failing to comply with the implementing regulations of the BSA, including the requirement to file reports of "any suspicious transaction relevant to a possible violation of law or regulation." 31 C.F.R. § 1023.320(a)(1); Complaint ¶¶ 2, 11-12, 34, 39, 45. Suspicious transactions are the focus of these regulations, and there is no requirement to file a SAR without a suspicious transaction. *See* 31 C.F.R. § 1023.320(a)(2) (lengthy definition of a "transaction" that "requires reporting"). Accordingly, the nature of thousands of suspicious transactions directed to New York City is necessary to prove thousands of violations alleged in the Complaint. Complaint ¶¶ 28-33 (Alpine failed to report the "*who? what? when? where? and why?* of the suspicious transactions directed to New York); and ¶¶ 39-41. Venue is proper in this district because when compared with the

non-trivial acts that routinely confer venue under Section 27 of the Exchange Act, these suspicious transactions are more numerous and more material to the Commission's claim against Alpine. *See, e.g.*, *Greenwood Partners*, 2000 WL 278086, at *6; *see also SEC v. Jean-Pierre*, No. 12 CIV. 8886 LGS, 2015 WL 1054905, at *8 (S.D.N.Y. Mar. 9, 2015) (Venue proper in the Southern District of New York because "[T]he attorney opinion letters drafted by [the defendant] were submitted to [Pink OTC Markets, Inc.], which is headquartered in the Southern District of New York.").

Finally, Alpine transacts business in New York City with DTC and NSCC and to clear OTC trades. Complaint ¶ 8. Alpine's business in New York is an independent ground to confer venue in this district. 15 U.S.C. § 78aa(a) (venue proper "in the district wherein the defendant … transacts business").

**B.     The Commission's choice of forum outweighs any inconveniences under Section 1404(a).**

The Commission agrees that the District Court for the District of Utah would have jurisdiction over this matter and that venue would also be proper in that district. The Commission also agrees that the factors cited by Alpine are the relevant factors to consider when determining whether to transfer a case under Section 1404(a). However, these factors weigh against transfer.

**1.   The Commission's choice of forum is entitled to deference**. This case is a matter of first impression that impacts the compliance of both Alpine and all broker-dealers in the financial industry with the requirements of the BSA. The Commission seeks injunctive relief to promote the law enforcement policies of the BSA, FinCEN, and Rule 17a-8. A judgment from this district will provide the most direct precedent and clear guidance to the largest segment of broker-dealers within the Commission's regulatory purview because this district contains the nation's

financial center. The Commission's choice of forum is entitled to deference. *KPMG*, 2003 WL

1842871, at *3; *see also Poseidon Concepts*, 2016 WL 3017395, at *9 (S.D.N.Y. May 24, 2016)

("Securities litigation is regularly litigated in New York, which is the nation's financial center.

As a result, its bar and courts are well-versed in suits of this nature….[T]here is no reason to find

that this forum was selected for improper purposes and the choice will be given deference.").

Alpine's argument on the Commission's choice of forum also fails to account for the thousands

of suspicious transactions directed to New York City by Alpine that are but-for acts to Alpine's

liability. Motion at 24.

The Commission's choice should be given substantial weight and "should not be

disturbed" because, as described below, "the balance of convenience and justice" does not weigh

heavily in favor of Alpine's proposed forum. *Am. Steamship Owners Mut. Prot. & Indem. Ass'n,*

*Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 486 (S.D.N.Y. 2007).

**2. The Convenience of the witnesses is neutral**.  Alpine failed to show that a transfer

would benefit the convenience of witnesses because the Motion simply lists twenty current and

former Alpine employees and their job titles. Motion at 20-21. This not enough for the Court (or

the Commission) to understand the nature of each witness's likely testimony or determine that

the convenience of the witnesses favors transfer. *Farberware Licensing Co. LLC v. Meyer Mktg.*

*Co.*, No. 09 CIV. 2570(HB), 2009 WL 1357956, at *2 (S.D.N.Y. May 14, 2009) ("[W]hile

[defendant] has provided a list of names of potential witnesses along with their job descriptions,

they have failed to provide ... a general statement of the substance of their testimony") (quotation

omitted); *Orb Factory, Ltd. v. Design Science Toys, Ltd.,* 6 F.Supp.2d. 203, 208-209

(S.D.N.Y.1998) ("Vague generalizations and failure to clearly specify the key witnesses to be

called, along with a statement concerning the nature of their testimony, are insufficient basis

upon which to grant a change of venue under § 1404(a)."); *Royal & Sun All. Ins. PLC v. UPS*

*Supply Chain Sols., Inc.*, No. 09 CIV 5935 LTS AJP, 2010 WL 4967984, at *1 (S.D.N.Y. Dec. 1,

2010) ("Defendant's list of witnesses lacks detailed information as to their necessity at trial and

is therefore an insufficient basis upon which to grant a change of venue."); *see also Schieffelin &*

*Co. v. Jack Co. of Boca,* 725 F. Supp. 1314, 1321 (S.D.N.Y. 1989).

Alpine has thus failed to make the requisite showing on this factor, *Farberware*

*Licensing*, 2009 WL 1357956, at *2; and the Court should not permit Alpine to cure this defect

in its reply papers. *Hummingbird USA, Inc. v. Texas Guaranteed Student Loan Corp.*, No. 06

CIV. 7672(LTS)(GWG), 2007 WL 163111, at *2 (S.D.N.Y. Jan. 22, 2007) ("[A]lthough

Defendant has provided a declaration identifying the witnesses in its reply papers, the Court will

not consider this, as arguments cannot be made for the first time in reply papers."); *Matera v.*

*Native Eyewear, Inc.*, 355 F. Supp. 2d 680, 687 (E.D.N.Y. 2005) ("[T]he Court will not consider

the affidavits submitted in with its Reply brief.").

Moreover, this is a records case—not a fraud case like the case cited by Alpine where the

convenience of the witnesses can be gleaned from the location of misrepresentations. This case

involves two sets of evidence: (1) records, namely the contents of SARs and the SARs

supporting files that can be presented by stipulations and expert witnesses; and (2) testimony on

the basic practices of Alpine during the relevant time period, which can be presented by the few

witnesses discussed below. The Complaint presents no apparent need for the Motion's roster of

twenty current and former employees with similar job titles, and Alpine provides none. The sheer

number of witnesses does not help because at best most of the witnesses listed by Alpine would

provide cumulative testimony; at worst irrelevant testimony. *Merkur v. Wyndham Int'l, Inc.,* No. 00 CV 5843 (ILG), 2001 WL 477268, at *3 (E.D.N.Y. Mar. 30, 2001) ("[I]t is not the number of prospective witnesses that determines the appropriateness of a transfer but, rather, the materiality of their anticipated testimony.").

In any event, the convenience of the witnesses is a neutral factor here because both non-party and party witnesses are scattered in different states. The witnesses reside in Iowa, Utah, Maine, and the New York area.

Leia Farmer will be the most important fact witness. Ms. Farmer was Alpine's Chief Compliance Officer from May 2012 through September 2015—the majority of the time period relevant to the Complaint—and Alpine's AML Officer from July 2013 to January 2015.  Lyman Decl. ¶ 6. Ms. Farmer currently resides in Iowa, but she has agreed to make herself available in New York to testify in this matter. She would likely testify that she was aware of the problems with Alpine's SARs, that she believes Alpine's Anti-Money Laundering ("AML") department was fundamentally flawed and that the cause of the flaws was Alpine's actual practice, as opposed to its procedures. Lyman Decl. ¶ 6.

Secondary witnesses Todd Groskruetz, Betsy Voter, Randall Jones, Doug Wawrzynski, and Erin Zipprich will supplement the testimony of Ms. Farmer by providing details during the relevant time period during which Ms. Farmer did not work at Alpine and additional details to corroborate Ms. Farmer's testimony that Alpine's actual practice caused a systemic violations of the BSA:

- Todd Groskreutz can provide testimony about the relevant time before Ms. Farmer worked at Alpine. Mr. Groskreutz was Alpine's Chief Compliance Officer

14

from May 2011 through May 2012. He currently resides in Utah. If called to testify at trial in this matter, Mr. Groskreutz would likely testify that he agreed with FINRA's findings in September 2012 that Alpine's SAR narratives were substantively inadequate because they did not contain sufficient information about why the transactions were suspicious. Mr. Groskreutz would also likely testify that he discussed his concerns with Alpine's management and owner. Lyman Decl. ¶ 7.

- Betsy Voter was Alpine's General Counsel from August 2012 to February 2014. She currently resides in Utah. If called to testify at trial in this matter, Ms. Voter would likely testify that she became involved in advising Alpine's compliance department regarding SAR narratives following inquiries from FINRA in the summer of 2012, and that she agreed with FINRA's finding that the SAR narratives did not contain sufficient information. Ms. Voter would also likely testify that it was her expectation that any red flags identified by Alpine should have been included in the SAR narratives. Ms. Voter would likely testify that Alpine's owner would pressure her to allow trading in securities in which she believed trading should be halted due to numerous red flags, and would tell her in words or substance to "let it go through and file a SAR." Lyman Decl. ¶ 8.

- Randall Jones was Alpine's AML Officer from January 2012 through September 2012 and is currently an Alpine employee living and working in Maine. If called to testify at trial in this matter, Mr. Jones would likely testify that Alpine had no controls in place to determine if SARs were or were not filed. In response to a

15

FINRA inquiry in early 2012 that indicated that Alpine had filed no SARs for several months, Mr. Jones filed retroactive SARs that should have previously been filed but were not filed due to a breakdown of Alpine's SAR filing process and procedures. For some of these SARs, Mr. Jones included in the narratives misleading information about the dates on which the suspicious activity occurred. This misinformation was intended to obscure from regulators that the SARs were filed late. Mr. Jones will also likely testify that he was aware that prior regulatory history was a red flag that should be included in a SAR, but that—although he was Alpine's AML Officer—he received no formal training regarding filing SARs and received no quality control supervision from Alpine's Chief Compliance Officer. Lyman Decl. ¶ 9.

- <u>Doug Wawrzynski</u> was Alpine's AML Officer from September 2012 to July 2013. He is a resident of Utah. If called to testify at trial in this matter, Mr. Wawrzynski would likely testify that he did not receive adequate training on how to draft a SAR narrative. Although he understood that FINRA had identified deficiencies in Alpine's SAR narratives, Wawrzynski felt that due to the volume of SARs there was not time to do a complete review of a transaction and related documents. Wawrzynski spent only a few minutes preparing each SAR; he did not feel he was adequately prepared or trained for his job; and he was not comfortable in his role. Wawrzynski believes the lack of information in Alpine's SAR narratives was due to lack of manpower, resources, and training, and the

       lack of quality control review to make sure SAR narratives contained the required information. Lyman Decl. ¶ 10.

- <u>Erin Zipprich</u> is the current AML Officer at Alpine. She resides in Utah. If called to testify at trial in this matter, Ms. Zipprich would likely testify that Alpine's AML compliance department is understaffed and has limited resources. Although Zipprich understood that SAR narratives should contain the "who, what, when, where, why, and how" that cause Alpine to file a SAR, Alpine continued throughout the relevant time period to file SARs that contained narratives that were not as substantive as they should have been. Lyman Decl. ¶ 11.

<u>HSI agents who reside in the New York area</u>. Nine of the witnesses identified in the Motion were interviewed by the staff during its investigation of the conduct alleged in the Complaint. Each of these nine witnesses was interviewed in proffers conducted in parallel with criminal authorities from the United States Attorney's Office for the Southern District of New York and Homeland Security Investigations ("HSI"). Because the HSI agents took the only notes of each interview, the agents will be essential to trial preparation. The HSI agents will need to attend the trial, and may be called as witnesses themselves, should any of these nine witnesses identified by Alpine testify. Each of the relevant HSI agents lives and works in the New York area. Lyman Decl. ¶ 4.

       Thus, transfer to Utah would trade the convenience of some witnesses for others, and the inconvenience of trial in New York to the few Utah residents is slight. The fact that at least seven current and former Alpine officers and employees voluntarily traveled to New York for interviews, including Ms. Farmer, Mr. Groskreutz, Mr. Jones, and Ms. Zipprich, shows that the

inconvenience of travel to New York is slight. Lyman Decl. ¶ 5. And the fact that Mr. Jones works for Alpine while residing in Maine further shows the minimal burden travel imposes on Alpine. Simmons Decl. ¶ 10(f). At bottom, Alpine is a broker-dealer in the financial industry and is not seriously inconvenienced by travel to the nation's financial center to testify about compliance with banking and securities regulations.

3. **Location and access to documents**.  This factor is neutral. The Commission and Alpine already have copies of nearly all relevant documents known to the Commission at this stage and, in any event, transfer to Utah would have no impact on access to documents or the cost to exchange any remaining documents. *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 548 (S.D.N.Y. 2008) ("In an era of electronic documents, easy copying and overnight shipping, this factor assumes much less importance than it did formerly."). Moreover, the only relevant records located in Utah are in the custody of Alpine. It makes no sense for Alpine to argue that transfer to Utah will enhance Alpine's access to its own documents. Motion at 22.

4. **The convenience of parties.**  This factor is duplicative of the convenience to the witnesses and is neutral here. "Given the likelihood, based on past experience, that the principal expenditure of time in this action will be in the discovery phase, the inconvenience for parties and witnesses can be minimized by a determination that the parties and witnesses will be deposed in their principal place of business …. In addition, the availability of air transportation and document transmittal minimizes the inconvenience for all concerned." *Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 478 (S.D.N.Y. 2006). Alpine is a sophisticated business enterprise in the financial industry, the center of which is New York City. Alpine's claim of inconvenience of travel to New York City for trial is undermined further by the fact that

18

seven of the witnesses identified by Alpine voluntarily appeared in New York City for interviews. Lyman Decl. ¶ 5.

    **5.  The locus of operative facts.**  Alpine does not explain why the locus of facts in Utah would impact trial apart from the convenience of witnesses, which it has failed to describe in the Motion. Further, any weight toward Utah here is mitigated by the thousands of transactions Alpine directed to New York that were suspicious due to events and actions of Alpine's clients outside of Utah. Because all witnesses will be deposed where they reside regardless of venue and no party will need to conduct physical inspections or examinations for records, the locus of facts in Utah, even if operative, cannot impact discovery. Thus, this factor is cumulative of other factors discussed above and is therefore neutral.

    **6.  The availability of process to compel the attendance of witnesses.**  Alpine again misunderstands Section 27 of the Exchange Act by arguing that its ability to compel attendance of witnesses favors transfer to Utah. Motion at 22-23. Alpine cites the geographical limits in Rule 45(c), but Section 27 of the Exchange Act expressly provides that a subpoena issued to compel the attendance of a witness at a hearing or trial may be served at any place within the United States and that the geographical limitations in Rule 45(c) do not apply to such a subpoena. 15 U.S.C. § 78aa(a). Alpine can compel any Utah resident to attend trial in this district, and it makes no sense for Alpine to suggest that it cannot obtain the voluntary attendance of its own employees. Motion at 22-23.

    **7.  The relative means of the parties.** Alpine offers no documentation showing inadequate means such that any cost increase attributable to trial in New York would be unduly burdensome to Alpine, which is a corporation. Alpine has thus failed to make the requisite

showing for this factor. *Hummingbird USA*, 2007 WL 163111, at *3 ("[A]ny party arguing for a transfer on the basis of the relative means of the parties must offer documentation showing that granting or denying the transfer would be unduly burdensome, which Defendant has failed to do."); *cf. Am. Eagle Outfitters*, 457 F. Supp. 2d at 478 ("This factor is not entitled to great weight where plaintiff and defendant are both corporations.").

**8. Trial efficiency and the interests of justice**. Alpine argues this factor weighs in favor of transfer by repeating the facts pertinent to other factors already discussed, including the irrelevant point that documents that have already been exchanged still exist in Utah. Motion at 24. Because both this district and the District of Utah are equally capable of handling this case, this factor is neutral.

**9. Familiarity with governing law**. The Commission agrees that both this Court and the District of Utah are equally capable of applying governing law. Motion at 23. This factor is neutral.

In sum, the Commission has a compelling reason to file this action in the Southern District of New York. The remaining factors do not overcome the Commission's choice because (1) Alpine failed to meet its burden to show inconvenience of witnesses and, in any event, key witnesses reside in multiple states, (2) Alpine is a sophisticated business in the financial industry with employees that frequently travel outside of Utah, and (3) venue has no impact on discovery or the ability to compel attendance of witnesses at trial. All other factors are either cumulative of these points or neutral. The request for transfer should be denied.

## CONCLUSION

For the reasons above, the Motion should be denied in its entirety.

Respectfully submitted this 25th day of August, 2017.

> /s/ Terry R. Miller
> Gregory A. Kasper
> Zachary T. Carlyle (*pro hac*)
> Terry R. Miller (*pro hac*)
> Attorneys for Plaintiff
> UNITED STATES SECURITIES AND
> EXCHANGE COMMISSION
> 1961 Stout Street, 17th Floor
> Denver, Colorado 80294
> (303) 844-1000

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 25, 2017, a copy of the foregoing document was served via ECF

upon the following:

Brent R. Baker
Aaron D. Lebenta
Jonathan D. Bletzacker
CLYDE SNOW & SESSIONS
One Utah Center, 13th Floor
201 South Main Street
Salt Lake City, Utah 84111-2216

*Counsel for Alpine Securities Corporation*

*/s/ Elinor E. Blomgren*
Elinor E. Blomgren
