GREGORY A. KASPER
kasperg@sec.gov
ZACHARY T. CARLYLE
carlylez@sec.gov
TERRY R. MILLER
millerte@sec.gov
SECURITIES AND EXCHANGE COMMISSION
1961 Stout Street, 17th Floor
Denver, Colorado 80294
(303) 844-1000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>- against -<br><br>ALPINE SECURITIES CORPORATION,<br><br>　　　　　　　　　　　　Defendant. | 17-cv-4179-DLC<br><br>**DECLARATION OF L. JAMES LYMAN IN SUPPORT OF OPPOSITION TO MOTION TO DISMISS**<br><br>ECF CASE |

I, L. James Lyman, do hereby declare under penalty of perjury, in accordance with 28 U.S.C. § 1746, that the following is true and correct, that I am over 18 years of age and I am competent to testify to the matters stated herein:

　　　　1.　　　I am an attorney in the Division of Enforcement in the Denver Regional Office of the Securities and Exchange Commission (the "SEC"). As part of my job duties, I am responsible for investigating securities laws violations.

　　　　2.　　　My investigations generally include sending subpoenas, taking testimony, and conducting other investigative activities, as well as drafting internal legal analyses and preparing cases for litigation. I was assigned to investigate the above captioned matter.

　　　　3.　　　I learned the following facts through the course of my investigation.

4. Nine of the witnesses identified in Alpine's Memorandum in support of its Motion to Dismiss [Doc. 16] were interviewed by the staff during its investigation of the conduct alleged in the Complaint. Each of these nine witnesses was interviewed in proffers conducted in parallel with criminal authorities from the United States Attorney's Office for the Southern District of New York and Homeland Security Investigations ("HSI"). Because the HSI agents took the only notes of each interview, the agents will be essential to trial preparation. The HSI agents will need to attend the trial, and may be called as witnesses themselves, should any of these nine witnesses identified by Alpine testify. Each of the relevant HSI agents lives and works in the New York area. These nine witnesses are:

    a. Robert Tew

    b. Erin Zipprich

    c. Randall Jones

    d. Todd Groskreutz

    e. Elisha Werner

    f. Leia Farmer

    g. Holly Peck

    h. Betsy Voter

    i. Doug Wawrzynski

5. Seven of the witnesses identified in Alpine's Memorandum in support of its Motion to Dismiss [Doc. 16] voluntarily traveled to New York City for interviews conducted during the investigation of the conduct alleged in the Complaint in this matter. These seven witnesses are:

    a. Leia Farmer

      b.   Todd Groskreutz

      c.   Holly Peck

      d.   Robert Tew

      e.   Elisha Werner

      f.   Erin Zipprich

      g.   Randall Jones

6.     Leia Farmer was Alpine's Chief Compliance Officer from May 2012 through September 2015—the majority of the time period relevant to the Complaint—and Alpine's AML Officer from July 2013 to January 2015. Ms. Farmer currently resides in Iowa, but she has agreed to make herself available in New York to testify in this matter. If called to testify at trial in this matter, Ms. Farmer would likely testify that:

      a.   Ms. Farmer became Alpine's CCO in May 2012. There were a number of AML issues at that time, including with Alpine's SARs. Ms. Farmer did not look at the SAR narratives until July or August 2012, and she did so in response to FINRA's inquiry, but she was aware of Alpine's problems with its SARs—and that FINRA had concerns about Alpine's SAR narratives and Alpine's AML program generally—prior to joining Alpine.

      b.   Ms. Farmer agrees with FINRA's finding in September 2012 that Alpine's AML department was fundamentally flawed and that all of Alpine's SARs reviewed by FINRA were substantively inadequate because the narratives did not identify the suspicious activity that led Alpine to file each SAR. The issues identified by FINRA in its September 2012 letter continued throughout her tenure as Chief Compliance Officer.

c. One of the first steps Ms. Farmer took when she joined Alpine was to train employees in order to correct the SAR problems. She conducted an assessment of the staff to determine their training and skills. As part of this assessment, Ms. Farmer reviewed a sample of approximately 100 SARs and the SAR narratives, and she found them all to be insufficient because they did not include the "who, what, when, where, why, and how" of the suspicious activity. Ms. Farmer felt that the issue was less about Alpine's written SARs policies, but more about how the policies were practiced. Despite the initial training, SARs remained inadequate throughout her tenure due to high turnover, the lack of quality employees, the lack of training for new employees, and a lack of quality control and oversight.

d. Throughout her tenure at Alpine, Ms. Farmer was aware of FinCEN's guidance regarding the content of a SAR narrative and believed this guidance indicated what was required to be in a SAR filed by Alpine. Alpine's SAR narratives did not meet FinCEN's guidance and its SARs did not contain enough information to be useful for law enforcement.

e. Ms. Farmer does not dispute any of the SEC's findings with regard to Alpine's SARs that were set forth in the SEC's April 9, 2015 deficiency letter. Ms. Farmer agrees that the SEC's findings with regard to the exclusion of "red flags" within the SARs was accurate; that items Alpine knew to be red flags and identified as red flags in its WSPs were not included in the SAR narratives; that Alpine should have included a description of when a security was the subject of an online promotion if

>Alpine was aware of such a promotion; that, consistent with the SEC's finding, Alpine's continued filing of deficient SARs was recidivist activity; and that Alpine should have filed a SAR on the liquidation of a deposit if it had identified the deposit as suspicious.

7.     Todd Groskreutz was Alpine's Chief Compliance Officer from May 2011 through May 2012. He currently resides in Utah. If called to testify at trial in this matter, Mr. Groskreutz would likely testify that he agreed with FINRA's findings in September 2012 that Alpine's SAR narratives were substantively inadequate because they did not contain sufficient information about why the transactions were suspicious. Mr. Groskreutz would also likely testify that he discussed his concerns with Alpine's management and owner.

8.     Betsy Voter was Alpine's General Counsel from August 2012 to February 2014. She currently resides in Utah. If called to testify at trial in this matter, Ms. Voter would likely testify that she became involved in advising Alpine's compliance department regarding SAR narratives following inquiries from FINRA in the summer of 2012, and that she agreed with FINRA's finding that the SAR narratives did not contain sufficient information. Ms. Voter would also likely testify that it was her expectation that any red flags identified by Alpine should have been included in the SAR narratives. Ms. Voter would likely testify that Alpine's owner would pressure her to allow trading in securities in which she believed trading should be halted due to numerous red flags, and would tell her in words or substance to "let it go through and file a SAR."

9.     Randall Jones was Alpine's AML Officer from January 2012 through September 2012 and is currently an Alpine employee living and working in Maine. If called to testify at trial in this matter, Mr. Jones would likely testify that Alpine had no controls in place to determine if

SARs were or were not filed. In response to a FINRA inquiry in early 2012 that indicated that Alpine had filed no SARs for several months, Mr. Jones filed retroactive SARs that should have previously been filed but were not filed due to a breakdown of Alpine's SAR filing process and procedures. For some of these SARs, Mr. Jones included in the narratives misleading information about the dates on which the suspicious activity occurred. This misinformation was intended to obscure from regulators that the SARs were filed late. Mr. Jones will also likely testify that he was aware that prior regulatory history was a red flag that should be included in a SAR, but that—although he was Alpine's AML Officer—he received no formal training regarding filing SARs and received no quality control supervision from Alpine's Chief Compliance Officer.

10. Doug Wawrzynski was Alpine's AML Officer from September 2012 to July 2013. He is a resident of Utah. If called to testify at trial in this matter, Mr. Wawrzynski would likely testify that he did not receive adequate training on how to draft a SAR narrative. Although he understood that FINRA had identified deficiencies in Alpine's SAR narratives, Wawrzynski felt that due to the volume of SARs there was not time to do a complete review of a transaction and related documents. Wawrzynski spent only a few minutes preparing each SAR; he did not feel he was adequately prepared or trained for his job; and he was not comfortable in his role. Wawrzynski believes the lack of information in Alpine's SAR narratives was due to lack of manpower, resources, and training, and the lack of quality control review to make sure SAR narratives contained the required information.

11. Erin Zipprich is the current AML Officer at Alpine. She resides in Utah. If called to testify at trial in this matter, Ms. Zipprich would likely testify that Alpine's AML compliance department is understaffed and has limited resources. Although Zipprich understood that SAR

narratives should contain the "who, what, when, where, why, and how" that cause Alpine to file a SAR, Alpine continued throughout the relevant time period to file SARs that contained narratives that were not as substantive as they should have been.

I declare under the penalty of perjury that the foregoing is true and correct.

Dated: August 25, 2017

L. James Lyman