UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>ALPINE SECURITIES CORPORATION,<br><br>    Defendant. | Civil No. 1:17-CV-04179-DLC<br><br>Honorable Judge Denise L. Cote<br>Magistrate Judge Ronald L. Ellis |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF ALPINE
SECURITIES CORPORATION'S MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ........................................................................................................ iii

I.      INTRODUCTION .................................................................................................................1

II.     ARGUMENT ........................................................................................................................1

      A.     THIS MATTER SHOULD BE TRANSFERRED TO THE DISTRICT
             COURT OF UTAH PURSUANT TO 28 U.S.C. § 1404(a) ….. ....................................1

      B.     VENUE IS IMPROPER IN THIS DISTRICT UNDER SECTION 27 ……………....8

      C.     THE ASSERTION OF PERSONAL JURISDICTION OVER ALPINE IS
             INCONSISTENT WITH DUE PROCESS ..................................................................9

III.    CONCLUSION AND RELIEF REQUESTED ………………………………..……….. 10

# TABLE OF AUTHORITIES

## CASES

### U.S. Supreme Court

*Daimler AG v. Bauman*
    134 S.Ct. 746 (2014) ...............................................................................................10

### Second Circuit Court of Appeals

*S.E.C. v. Unifund SAL*
    910 F.2d 1028 (2d Cir. 1990)....................................................................................10

*Mariash v. Morrill*
    496 F.2d 1138 (2d Cir. 1974) ...................................................................................10

### U.S. District Courts

*Aguiar v. Natbony*
    2011 WL 1873590 (S.D.N.Y. May 16, 2011) .............................................................2

*Alexander & Alexander, Inc. v. Donald F. Muldoon & Co.*
    685 F.Supp. 346 (S.D.N.Y. 1988) ..............................................................................2

*Chrome Hearts, Inc. v. Montana St. Wear, Inc.*
    1996 WL 306368 (S.D.N.Y. June 7, 1996) ................................................................4

*Citibank, v. Transcontinental Products & Srvc., Inc.*
    1999 WL 595658 (S.D.N.Y. August 9, 1999) ............................................................4

*Gilson v. Pittsburgh Forgings Co.*
    284 F.Supp. 569 (S.D.N.Y. 1968) ..............................................................................9

*Greenwood Partners v. New Frontier Media Inc.*
    2000 WL 278086 (S.D.N.Y. Mar. 12, 2000) .....................................................2, 3, 7

*Hadron, Inc. v. Vukcevic*
    1983 WL 1281 (S.D.N.Y. Feb. 18, 1983) ..................................................................8

*In re Global Cash Access Holding, Inc. Sec. Litig.*
    2008 WL 4344531 (S.D.N.Y. Sept. 18, 2008) ...........................................................5

*In re Poseidon Concepts Sec. Litig.*
    2016 WL 3017395 ......................................................................................................8

*MBCP Peerlogic LLC v. Critical Path, Inc.*
   2002 WL 31729626 (S.D.N.Y. Dec. 5, 2002) ................................................................. 2, 4

*Pan Intern. Gaming, Inc. v. Tropical Intern. Sports, Inc.*
   2000 WL 60191 (S.D.N.Y. Jan. 25, 2000) ........................................................................ 8

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*
   446 F. Supp. 2d 163 (S.D.N.Y. 2006) ............................................................................... 7

*Posven, C.A. v. Liberty Mut. Ins. Co.*
   303 F.Supp.2d 391 (S.D.N.Y. 2004) ................................................................................ 2

*Prete v. Lepore*
   125 F.R.D. 572 (D. Conn. 1989) ....................................................................................... 9

*Purcell Graham, Inc. v. National Bank of Detroit*
   1994 WL 584550 (S.D.N.Y. Oct. 24, 1994) ................................................................. 3, 7

*Ravenwoods Invest. Co., L.P. v. Bishop Capital Corp.*
   2005 WL 236440 (S.D.N.Y. Feb. 1, 2005) ................................................................... 7, 9

*S.E.C. v. Rust*
   2017 WL 239381 (S.D.N.Y. Jan. 17, 2017) ..................................................................... 8

*S.E.C. v. Softpoint, Inc.*
   2001 WL 43611 (S.D.N.Y. Jan. 18, 2001) ..................................................................... 10

*Ten West Apparel, Inc. v. Menard, Inc.*
   2000 WL 791921 (S.D.N.Y. June 9, 2000) ...................................................................... 2

*Truk Intern. Fund, LP v. Wehlmann*
   2009 WL 1456650 (May 20, 2009) ............................................................................... 5, 7

**New York State Court**

*Sino Clean Energy Inc. v. Little*
   2012 WL 1849658 (NY Sup. Ct. 2012) ............................................................................ 9

**STATUTES**

15 U.S.C. § 78aa (Sec. 27) ....................................................................................... *passim*
28 U.S.C. § 1404 ....................................................................................................... *passim*
28 U.S.C. § 1406 ............................................................................................................... 2

**RULES**

Fed. R. Civ. P. 12(b)(2) .................................................................................................... 2

Fed. R. Civ. P. 12(b)(3)..................................................................................................................2

## REGULATIONS

17 CFR § 240.15c6-1 ..................................................................................................................6

31 C.F.R. § 1023.320 ..................................................................................................................6

Defendant Alpine Securities Corp. ("**Alpine**") files its Reply Memorandum in Support of its Motion to Dismiss and/or transfer of this matter to the District Court of Utah.

## I.     INTRODUCTION

The Securities and Exchange Commission's ("**SEC**") Opposition confirms this District has no connection to issues in this case.  Specifically, it is undisputed that no events connected to the alleged violation occurred in this District, that no parties are found in this District, including the SEC's Office bringing suit, and no witnesses reside in this District.  Indeed, the only alleged connection between Alpine and this District is Alpine's use of DTC and NSCC to settle trades – an allegation that is so inconsequential to the actual issues in this case that neither DTC nor NSCC is mentioned in the SEC's Complaint a single time outside of the venue allegation, and not a single representative of DTC or NSCC is identified as a potential witness.  In fact, the SEC admits that its decision to file in this District has nothing to do with Alpine's alleged acts in this District, but was motivated by improper forum shopping – to send a message to *other* broker-dealers.  This matter should therefore be transferred pursuant to 28 U.S.C. § 1404(a) to the District of Utah, where Alpine is located, the vast majority of the witnesses reside, and where the events giving rise to the alleged violation occurred.

Furthermore, the Court also has grounds to dismiss this action on venue or jurisdictional grounds, given the constitutional due-process concerns raised by forcing a defendant to litigate in a remote forum with no connection to the dispute.

## II.     ARGUMENT

### A.     THIS MATTER SHOULD BE TRANSFERRED TO THE DISTRICT OF UTAH PURSUANT TO 28 U.S.C. § 1404(a).

In its Motion, Alpine requested multiple remedies for the substantial and unjustified burden of defending in this remote district, including dismissal of the SEC's Complaint for lack

1

of personal jurisdiction and improper venue, and/or transfer of this case to the District of Utah pursuant to 28 U.S.C. §§ 1404(a) and 1406(a).[1]  The SEC agrees that venue would be proper in the District of Utah.  *See* SEC's Mem. in Opp., at p. 11.  Given this, and because the balance of relevant factors under § 1404(a) so strongly supports transfer of this matter to the District of Utah, in the interests of efficiency the Court should address the transfer issue first.[2]

"The purpose of § 1404(a) is to prevent waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Aguiar v. Natbony*, 2011 WL 1873590, at *2 (S.D.N.Y. May 16, 2011) (quotations and citations omitted). Although the parties agree that there are nine relevant factors that courts balance in a Section 1404(a) analysis, not all of the factors need to favor transfer.[3]  Rather,"'[t]he core determination under § 1404(a) is the ***center of gravity of the litigation***, a key test of which is the convenience of witnesses. Courts routinely transfer cases where the principal events occurred, and the principal witnesses are located in another district.'" *MBCP Peerlogic LLC v. Critical Path, Inc.*, 2002 WL 31729626, at *3 (S.D.N.Y. Dec. 5, 2002) (emphasis added) (citation omitted). Here, the balance of the factors overwhelmingly demonstrates that this case should be transferred to the District of Utah, for it is undeniably the "center of gravity of th[is] litigation." *Id.*

### *Convenience of the Parties and the Witnesses*

"Convenience of both the party and non-party witnesses is probably the single-most

---

[1] The Court may transfer under either 1404(a) or 1406(a), as the two sections can be read together and both may reach the same outcome.  *See Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F.Supp.2d 391, 400 at n. 3 (S.D.N.Y. 2004).

[2] *See, e.g., Alexander & Alexander, Inc. v. Donald F. Muldoon & Co.*, 685 F.Supp. 346, 348 (S.D.N.Y. 1988) (reviewing a motion to transfer first because "[a] district court has the power to transfer a case to another judicial district pursuant to 28 U.S.C. §§ 1404(a) and 1406(a) whether or not the transferor court has personal jurisdiction over the defendants, or venue is proper."); *Ten West Apparel, Inc. v. Menard, Inc.*, 2000 WL 791921, at *3 (S.D.N.Y. June 9, 2000) (noting "[t]he court may transfer this action regardless of whether it has personal jurisdiction over defendant or whether venue is proper in this district").

[3] *See Greenwood Partners v. New Frontier Media Inc.*, 2000 WL 278086, at ** 1-2 (S.D.N.Y. Mar. 12, 2000) (stating that the "balance" of the factors must weigh heavily in favor of transfer and that "several of the factors significantly favor the defendants and therefore that they have met their burden of proof").

important factor in the analysis of whether transfer should be granted." *Id.*[4]  Remarkably, the SEC claims this factor is "neutral," SEC's Mem. in Opp., at p. 12, 14, even though its Opposition confirms that **not a single party is located in this district.**  Alpine is a Utah corporation headquartered in Utah and does not have an office or any employees in New York.  *See* Alpine's Mem. in Support, at p. 17.  Moreover, this case was filed by the SEC's Denver Regional Office.  Utah would clearly be a more convenient forum for the parties.

Similarly, it is readily apparent that Utah is substantially more convenient than New York to the proposed witnesses.  The SEC's Opposition confirms that **not a single witness** expected to provide substantive testimony is located in New York, let alone in the Southern District of New York.  Indeed, the sole "witnesses" identified by the SEC in the "New York area" – a vague designation – are agents from Homeland Security Investigations ("**HSI**").  However, the HSI agents are not fact witnesses.  Rather, their sole *potential* utility is for impeachment, meaning they may never be called to testify, at all.  Their convenience should be given no weight.

By contrast, both Alpine's and the SEC's filings confirm that the vast majority of party and nonparty witnesses are located in or near Salt Lake City, Utah, where the United States District Court for the District of Utah is located. *See Purcell Graham, Inc. v. National Bank of Detroit*, 1994 WL 584550, at *5 (S.D.N.Y. Oct. 24, 1994) ("[T]he balance of conveniences tips in favor of transfer when the number of proposed party witnesses is taken into consideration.").  While a few former Alpine employees and one current employee are located outside of Utah, the SEC misses the point:  none of them are located in New York.[5]

---

[4] *Accord Greenwood,* 2000 WL 278086, at *3) ("Although no single factor is determinative in deciding a motion to transfer, it is well-settled that 'the convenience of the parties and the convenience of the witnesses are generally considered the most important factors.'" (citations omitted)).

[5]  The SEC asks the Court to disregard the convenience factor because Alpine failed to provide the substance of the testimony of its proposed witnesses.  This hypertechnical argument should be rejected based on the allegations in the Complaint and the witness list provided by Alpine.  The SEC did not identify any specific transactions at issue in their Complaint, but rather included only general allegations about Alpine's AML program, compliance, and filing

The SEC also argues that New York is convenient because some of Alpine's witnesses previously traveled to New York for interviews with governmental agents.  But, the question is not whether a witness can travel but what is more convenient.  As a matter of logic, it is more convenient for the witnesses residing in Utah to conduct trial in their own State.

The SEC also claims this is a "records" case, and thus that Alpine does not need all of the witnesses it identified.  But, the SEC's "books and records" claim is based on an allegation that Alpine's implementation of its BSA compliance program was inadequate.  *See* SEC Compl., at ¶¶ 3-5.  Alpine identified as potential witnesses current and former employees responsible for BSA compliance.  Indeed, the "decision to file a SAR is an inherently subjective judgment," and "examiners should focus on whether the [entity] has an effective decision making process, not individual SAR decisions."[6]  As such, the testimony of those involved in preparing the SARs and implementing Alpine's BSA compliance program is critical to Alpine's defense.

The SEC acknowledges the importance of witness testimony in this case by identifying, as key evidence, "testimony on basic practices of Alpine during the relevant time period," but insinuates that only those witnesses it identified should count. SEC's Mem. in Opp., at 13-14.

---

of SARs.  In response to these vague allegations, Alpine provided a Declaration identifying as potential witnesses current and former employees involved in Alpine's BSA Compliance program, including their job titles, and residencies.  Their expected testimonies –Alpine compliance with the BSA – is apparent from their job titles.  This is also sufficient here because this case does not involve a balancing of substantive testimony between those in the forum State and those outside the forum State.  No proposed fact witnesses reside in New York, making the need to compare witness materiality inconsequential.  *See MBCP Peerlogic,* 2002 WL 31729626, at *3-4 (disregarding defendants' failure to provide a witness list because "[e]ven though defendants have not provided a list that identifies potential witnesses expected to be called to testify, the events giving rise to this action demonstrate that the vast majority of material witnesses are in Northern California and would therefore find it more convenient to testify in California than in New York."); *Citibank, v. Transcontinental Products & Srvc., Inc.,* 1999 WL 595658 at *2 (S.D.N.Y. August 9, 1999) (although party seeking transfer did not identify potential principal witnesses, the allegations of the complaint indicated that a substantial number of witnesses are located in the proposed transferee court); *Chrome Hearts, Inc. v. Montana St. Wear, Inc.,* 1996 WL 306368, *2 (S.D.N.Y. June 7, 1996) (same).

Nevertheless, to the extent necessary, Alpine has provide a supplemental declaration stating the expected testimony of its disclosed witnesses.  *See* Nathan D. Simmons Supp. Decl., at ¶ 11(a)-(t).

[6] *See Online Manual BSA Infobase, Federal Financial Institutions Examination Council,* at 6, found at https://www.ffiec.gov/bsa_aml_infobase/pages_manual/OLM_015.htm.

The SEC's one-sided approach is unsupported; the SEC cannot limit or inconvenience Alpine's witnesses so it can forum-shop. More important, a review of the SEC's "material" witnesses shows that the majority of *the SEC's witnesses* are located in Utah, and none in New York.

Finally, Alpine wishes to make clear that it does not expect the witnesses identified by the SEC to testify in the manner represented by the SEC. The SEC offers no testimony from the actual witnesses and no discovery has yet been done. But, based on Alpine's own investigation, it anticipates that the witnesses will testify in a very different manner than the SEC represents.

### *Locus of Operative Facts*

The locus of operative facts is unassailably in Utah. This is a Section 17(a) books and records case focused on Alpine's BSA compliance program, including Alpine's preparation and filing of SARs and retention of records with respect to its BSA compliance. All of the relevant facts occurred within the four walls of Alpine's headquarters in Utah.[7]

The SEC contends this fact is neutral, however, because "any weight toward Utah here is mitigated by the thousands of transactions Alpine directed to New York that were suspicious due to events and actions of Alpine's clients outside of Utah." SEC Mem. in Opp., at 19. This argument is fatally flawed. The alleged unidentified "transactions" purportedly directed to DTC or NSCC in New York have nothing to do with the alleged violation at issue.

As indicated, this case involves the SEC's allegations that Alpine "systematically fail[ed] to file adequate SARs about suspicious transactions and by filing SARs that omitted critical information." *Id.* at 1; *see also* SEC's Compl., at ¶¶ 3-5. The SEC further confirmed the scope of

---

[7] *See e.g. Truk Intern. Fund, LP v. Wehlmann*, 2009 WL 1456650, at *6, 9 (May 20, 2009) (the Court transferred the case to the District of Texas on the basis that, among other things, "the prospectus and prospectus supplement were prepared in the Northern District of Texas, and the due diligence also mostly took place in Texas"); *In re Global Cash Access Holding, Inc. Sec. Litig.*, 2008 WL 4344531, at *6 (S.D.N.Y. Sept. 18, 2008) ("transferring a securities litigation to the District of Nevada – despite plaintiff's argument that certain aspects of the IPO and the secondary offering occurred in New York – because the registration statement and prospectus were prepared in Nevada.")

5

its allegations by claiming "this case involves two sets of evidence": (1) the contents of SARs and SARs supporting files; and (2) the testimony of current and former Alpine employees "on its basic practices" during the relevant period. *Id.* at 13. No stock transaction cleared through DTC or NSCC is mentioned. There is also no reference to DTC or NSCC in the Complaint outside of the venue allegation, and the SEC does not include as potential witnesses any member of DTC or NSCC, or any of Alpine's customers. In fact, once this motion is decided, Alpine strongly suspects that neither DTC nor NSCC will be mentioned again because they are not relevant.

This makes sense. Alpine's duty under the BSA is to "report" a transaction it determines is suspicious by preparing and filing a SAR within 30 days after the date "of the initial detection . . . of facts that may constitute a basis for filing a SAR." 31 C.F.R. §1023.320(a)(1), (b)(3). The monitoring, decision making and preparation of a SAR occurs at Alpine's offices, in Utah. The SARs themselves are not alleged to go to New York. Critically, if Alpine complied with its SAR reporting requirements, and Alpine contends it did, then there is no actionable violation under the claim alleged by the SEC in this case, *regardless of whether an underlying "suspicious" transaction was cleared through DTC or NSCC in New York.* Furthermore, the obligation to settle a trade occurs on a much more expedited time frame – generally within 3 days of the transaction date ("T+3") – than the obligation to report a suspicious transaction.[8] The settlement cycle is thus independent from Alpine's compliance with the SAR requirements of the BSA.

### *Weight Afforded to Plaintiff's Choice of Forum*

The SEC's decision to file in this district should be given no weight as it is blatant forum shopping. As has been routinely observed, "courts' reliance upon plaintiff's choice 'diminishes where . . . the facts giving rise to the litigation bear little material connection to the chosen

---

[8] *Compare* 17 CFR § 240.15c6-1 (establishing, during the relevant period at issue in the Complaint, T+3 as the standard settlement cycle for broker-dealer transactions) *with* 31 C.F.R. 1023.320(b)(3) (requiring a broker dealer to file a SAR within 30 days of detection of suspicious activity).

forum.'" *Greenwood Partners, supra*, at *2 (citations omitted).[9]

The SEC's main argument for its choice of forum has nothing to do with this litigation, the facts of this case, or even Alpine. Instead, the SEC claims it selected this forum because "[a] judgment from this district will provide the most direct precedent and clear guidance to the largest segment of broker-dealers within the Commission's regulatory purview because this district contains the nation's financial center." SEC's Mem. in Opp., at p. 11. Thus, rather than bringing an action against a broker-dealer actually located in this district, the SEC asks this Court to allow it to haul a broker-dealer across the county to try to send a message to Wall Street.

This is not a legitimate reason for this Court to defer to the SEC's choice of forum. Rather, it smacks of forum shopping, further diminishing any deference owed to the SEC's choice of forum.[10] New York simply would not be a convenient forum for either party, including the SEC office that brought this action, which is located in Denver. Moreover, the notion that this Court could provide more "clear guidance" than the Utah District Court is nonsensical. This matter deals with federal law, which can be equally applied by a Utah federal court.[11]

In sum, the balance of the relevant factors substantially favor transfer to the District of Utah.[12] Nothing of consequence to the parties, the witnesses or any portion of this litigation occurred in New York. The center of gravity of this litigation is inescapably in Utah.

---

[9] *See also Purcell Graham, supra*, at *4 ("[W]here as here, the events underlying the claim have no material connection to the transferor forum, the weight accorded to plaintiff's selection is substantially diminished.").

[10] *Cf. Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 177 (S.D.N.Y. 2006) ("Deference towards a plaintiff's choice of forum extends even to foreign plaintiffs, where those plaintiffs are not forum shopping, but rather have selected the forum for valid reasons, such as convenience.")

[11] *See Ravenwoods Invest. Co., L.P. v. Bishop Capital Corp.*, 2005 WL 236440, at *4 (S.D.N.Y. Feb. 1, 2005) ("This Court and the District of Wyoming are equally capable of applying federal securities law to this case.").

[12] The remaining factors are addressed in Alpine's initial Memorandum. Although Alpine contends those factors favor transfer, even if they were neutral, the weight of the factors discussed here favor transfer. *See Truk, supra*, at *8 ("While most of the interest of justice factors are neutral, consideration of the convenience of critical non-party witnesses and the locus of operative facts, as noted above, indicates that this case should be transferred to the Northern District of Texas.").

## B. VENUE IS IMPROPER IN THIS DISTRICT UNDER SECTION 27.

"Once an objection to venue has been raised, plaintiff bears the burden of establishing that venue is proper." *Pan Intern. Gaming, Inc. v. Tropical Intern. Sports, Inc.*, 2000 WL 60191, at *1 (S.D.N.Y. Jan. 25, 2000). "Section 27 of the Exchange Act, 15 U.S.C. § 78aa, provides for venue in any district where 'any act or transaction constituting the violation occurred' or 'wherein the defendant is found or is an inhabitant or transacts business.'" *In re Poseidon Concepts Sec. Litig.*, 2016 WL 3017395, at *8 (S.D.N.Y. May 24, 2016) (quoting 15 U.S.C. § 78aa). "As the courts interpret this provision, 'any non-trivial act in the forum district which helps to accomplish a securities law violation is sufficient to establish venue.'" *S.E.C. v. Rust*, 2017 WL 239381, at *1 (S.D.N.Y. Jan. 17, 2017) (citations omitted)).

The SEC has failed to carry its burden under this statute for the simple reason that none of the acts or transactions allegedly constituting the violation occurred in this District. "The act or transaction committed within the district need not constitute the core of the violation, ***but should be an important step*** in the [securities violations]." *Id*. (citations omitted) (emphasis added). Alpine is a Utah corporation headquartered in Salt Lake City, Utah, with no office or employees in this District. Lacking this traditional tie for venue, the SEC relies entirely upon Alpine's use of DTC's and NSCC's services in New York. However, as stated above, the SEC has failed to demonstrate that Alpine's use of DTC's and NSCC's services has any relation to the alleged violation at issue. This is fatal to its argument that venue is proper in this District.[13]

Even if this Court departs from prior decisions from this District (identified above) and considers the "transacts business" language of Section 27 independently from the rest of the venue language in that statute, the SEC's argument should still be rejected as it would result in

---

[13] *See Hadron, Inc. v. Vukcevic*, 1983 WL 1281, at *2-3 (S.D.N.Y. Feb. 18, 1983) ("acts [various communications] did not relate to the alleged false representations and therefore did not constitute important steps in the consummation of the allegedly illegal scheme" and other acts were not considered a "material step").

8

an unfairly overbroad reading of the statute. The decision of *Gilson v. Pittsburgh Forgings Co.*, 284 F.Supp. 569 (S.D.N.Y. 1968) is instructive.  In *Gilson*, the court held that venue was not laid under Section 27 based on defendant's trading of its shares on the New York Stock Exchange. *Id*. at 571.  The *Gilson* court relied on New York State court decisions holding that a corporation is not "'doing business' in the State . . . because its shares of stock are listed on a stock exchange requiring the incidental maintenance of bank accounts, stock transfer agents and stock registrars." *Id.*  Otherwise, "almost every corporation would be subject to" suit in New York. *Id.*

Similarly, the court in *Ravenwoods, supra,* rejected plaintiff's argument that defendant's use of DTC factored into a jurisdiction and venue analysis.  *See* 2005 WL 236440 at *6.  The Court ruled that "any connection to a nonparty [such as DTC] performing a particular service for [Bishop Capital] is tenuous compared to the connection between [Plaintiffs'] claims and the ongoing activities in [Wyoming] that form the basis for this lawsuit."  *Id*. (citation omitted).[14]

Accordingly, Alpine's use of DTC's or NSCC's services, wholly unconnected to the SEC's claim, is insufficient to establish venue.  To hold otherwise would open the flood gates to securities litigation in this District against any security professionals, solely because they utilize the services of DTC or NSCC in some fashion.  Such a ruling would have market-wide implications and broaden the venue analysis to a degree that offends due process.[15]

### C. THE ASSERTION OF PERSONAL JURISDICTION OVER ALPINE IS INCONSISTENT WITH DUE PROCESS.

Alpine recognizes that Section 27 has been interpreted to allow for personal jurisdiction

---

[14] The New York Supreme Court in *Sino Clean Energy Inc. v. Little*, 2012 WL 1849658 (NY Sup. Ct. 2012) (citing *Gilson*), similarly ruled that the use of DTC was akin to the use of exchanges and would alone be insufficient to confer jurisdiction.  *Id.* at *8.  Similar to *Gilson*, the *Sino* court reasoned that if the use of DTC were legally sufficient, "almost every corporation" would be subject to suit in New York. *Id.*

[15] *See Prete v. Lepore,* 125 F.R.D. 572, 577 (D. Conn. 1989) (observing, "'contacts of a nature similar to those required by Due Process are necessary to establish that venue has been properly laid," including for the "transacts business" language of Section 27).

over a defendant in a claim brought under the Exchange Act in any judicial district in the United States, provided that the exercise of such jurisdiction complies with Due Process. *See S.E.C. v. Unifund SAL*, 910 F.2d 1028, 1033 (2d Cir. 1990).  Further, while the SEC is correct that the Second Circuit's opinion in *Mariash v. Morrill,* 496 F.2d 1138 (2d Cir. 1974) generally supports the assertion of personal jurisdiction over Alpine under Section 27, it has been observed that:

> It is unclear whether *Mariash's* focus on the defendant's presence within the territorial borders of the United States has been undermined by the line of cases supplementing concepts of territorial sovereignty with principles of fairness and convenience.

*S.E.C. v. Softpoint, Inc.*, 2001 WL 43611, at *6 (S.D.N.Y. Jan. 18, 2001). The question become murkier yet when factoring in the Supreme Court's recent decision in *Daimler AG v. Bauman*, 134 S.Ct. 746 (2014), which limited courts' ability to exercise general personal jurisdiction over corporations.  The question of whether the exercise of personal jurisdiction over Alpine in this case is constitutionally reasonable should be evaluated under the recent trend of Supreme Court decisions, not simply the potentially outdated standards from *Mariash.*

Given the page limitations in this Reply Memorandum, Alpine has focused here primarily upon its arguments under Section 1404(a) and improper venue, as either provides a more simplified route of moving this matter to the District of Utah, without requiring the Court to wade too deeply into constitutional issues.  However, if the Court undertakes a personal jurisdiction analysis, Alpine reiterates its argument from its Motion that the exercise of personal jurisdiction over Alpine does not satisfy the due-process reasonableness inquiry.

## III.     CONCLUSION.

Based on the foregoing, Alpine's Motion should be granted.

DATED this 6th day of September, 2017.

                                    /s/ *Brent R. Baker*
                                    Brent R. Baker (BB 8285)
                                    Aaron D. Lebenta (*Pro Hac Vice*)
                                    Jonathan D. Bletzacker (*Pro Hac Vice*)
                                    **CLYDE SNOW & SESSIONS**
                                    One Utah Center, 13th Floor
                                    201 South Main Street
                                    Salt Lake City, Utah 84111-2216
                                    Telephone 801.322.2516
                                    Facsimile 801.521.6280
                                    Email: brb@clydesnow.com
                                                  adl@clydesnow.com
                                                  jdb@clydesnow.com

                                  *Counsel for Alpine Securities Corporation*