UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>        Plaintiff,<br><br>v.<br><br>ALPINE SECURITIES CORPORATION,<br><br>        Defendant. | Civil No. 1:17-CV-04179-DLC<br><br>Honorable Judge Denise L. Cote<br>Magistrate Judge Ronald L. Ellis<br><br>**ALPINE SECURITIES CORPORATION'S MEMORANDUM IN OPPOSITION TO SEC'S MOTION TO STRIKE** |

i

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................... ii

TABLE OF AUTHORITIES ................................................................................... iii

I.      INTRODUCTION ......................................................................................1

II.     LEGAL STANDARD ...............................................................................2

III.    ARGUMENT .............................................................................................4

       A.      ALPINE'S NINETEENTH DEFENSE IS LEGALLY VALID AND RAISES ISSUES OF FACT AND LAW FOR TRIAL ........................................................4

            1.      Unclean Hands is a Valid Legal Defense against the Government ...........4

            2.      Alpine's Nineteenth Defense is Supported by Sufficient Factual Allegations to Survive a Disfavored Motion to Strike ...............................6

       B.      ALPINE'S SIXTEENTH DEFENSE IS LEGALLY VALID AND PRESENTS QUESTIONS OF FACT ...................................................................14

            1.      Legal Requirements of Waiver and Estoppel ...........................................14

            2.      Estoppel and Waiver Are Valid Legal Defenses Against the Government ........................................................................15

            3.      Alpine's Estoppel and Waiver Defenses Are Supported by Sufficient Factual Allegations ...............................................................16

       C.      THE PREJUDICE PRONG IS NOT APPLICABLE IN THIS MATTER BECAUSE ALPINE'S AFFIRMATIVE DEFENSES ARE LEGALLY AND FACTUALLY VALID AND SUFFICIENT ........................................................21

IV.     CONCLUSION .......................................................................................23

## TABLE OF AUTHORITIES

### CASES

**U.S. Supreme Court**

*ABF Freight Sys., Inc. v. NLRB*

    510 U.S. 317, 329 (1994) .......................................................................................5, 6

*F.C.C. v. Fox Television Stations, Inc.*

    567 U.S. 239 (2012) ...............................................................................................20

*Heckler v. Community Health Services of Crawford County, Inc.*

    467 U.S. 51 (1984) ............................................................................................14, 15

*Pan American Petroleum & Transp. Co. v. United States*

    273 U.S. 456 (1927) .................................................................................................5

*U.S. v. Detroit Timber & Lumber Co.*

    200 U.S. 321 (1906) .................................................................................................5


**Circuit Courts of Appeals**

*D.O. Haynes & Co. v. Druggists' Circular*

    32 F.2d 215 (2d Cir. 1929) .......................................................................................5

*FSK Drug Corp.*

    960 F.2d 6 (2d Cir. 1992) .......................................................................................11

*S.E.C. v. Brigadoon Scotch Distributing Co.*

    480 F.2d 1047 (2d Cir. 1973) ................................................................................12

*S.E.C. v. Sirianni*

    334 F. App'x 386 (2d Cir. 2009) ...........................................................................11

*Thompson v. Spear*

    91 F. 2d 430 (5th Cir. 1937) ..................................................................................11

*U.S. v. Wilson*

    707 F.2d 304 (8th Cir. 1982) ............................................................................5, 16

*William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*

    744 F.2d 935 (2d Cir. 1984) ................................................................................3, 4

**U.S. District Courts**

*Ayers v. S.E.C.*
   482 F. Supp. 747 (D. Mont. 1980) ……………………………………………………… 12, 13

*City of New York v. Fedex Ground Package System, Inc.*
   314 F.R.D. 348 (S.D.N.Y. 2016) ……………………………………………… 2, 3, 16, 18, 22

*Coach, Inc. v. Kmart Corps.*
   756 F. Supp. 2d 421 (S.D.N.Y. 2010) ……………………………………………………… 3, 18

*Colon ex rel. Molina v. BIC USA, Inc.*
   136 F. Supp. 2d 196 (S.D.N.Y. 2000) ……………………………………………………… 3, 9

*County Vanlines Inc. v. Experian Information Solutions, Inc.*
   205 F.R.D. 148 (S.D.N.Y. 2002) ……………………………………………………………… 22

*EEOC v. UPS*
   2017 WL 2829513 (E.D.N.Y. Jun. 29, 2017) ……………………………….........14, 16, 19

*Granite Partners, L.P. v. Bear, Sterns & Co. Inc.*
   17 F. Supp. 2d 275 (S.D.N.Y. 1998) ……………………………………………………… 5, 16

*Jordan v. Can You Imagine, Inc.*
   485 F. Supp. 2d 493 (S.D.N.Y. 2007) ……………………………………………………… 14, 19

*Keystone Global LLC v. Décor Essentials Ltd.*
   2014 WL 888336 (S.D.N.Y. Mar. 6, 2014) ……………………………………………………1, 2

*Perez v. De Domenico Pizza & Restaurant, Inc.*
   2016 WL 3774389 (E.D.N.Y. May 31, 2016) ……………………………………………….. 9

*Reymond Weil, S.A. v. Theron*
   585 F. Supp. 2d 473 (S.D.N.Y. 2008) ……………………………………………………….. 2

*S.E.C. v. American Growth Funding II, LLC*
   2016 WL 8314623 (S.D.N.Y., Dec. 30, 2016) …………………………………..... 6, 15, 16

*S.E.C. v. Caledonian Bank Ltd.*
   145 F. Supp. 3d 290 (S.D.N.Y. 2015) …………………………………………………………11

*S.E.C. v. Downe*
   1994 WL 67826 (S.D.N.Y., March 3, 1994) ……………………………………………… 4, 5, 9

*S.E.C. v. KPMG LLP*
   2003 WL 21976733 (S.D.N.Y. Aug. 20, 2003) ……………………………………………4, 19, 21

iv

*S.E.C. v. McCasky*
    56 F. Supp. 2d 323 (S.D.N.Y. 1999) ……………………………………………… 2, 9, 22

*S.E.C. v. Nacchio*
    No. 2006 WL 2793149 (D. Colo. Sept. 27, 2006) ………………………………………..5, 13

*S.E.C. v. PacketPort.com*
    2006 WL 2798804 (D. Conn. Sep. 27, 2006) …………………………………………... 16, 19

*S.E.C. v. Thrasher*
    1995 WL 456402 (S.D.N.Y. Aug. 2, 1995) …………………………………………………… 2

*S.E.C. v. Toomey*
    866 F. Supp. 719 (S.D.N.Y. 1992) …………………………………………………………… 22

*Tardif v. City of New York*
    302 F.R.D. 31 (S.D.N.Y. 2014) ………………………………………………………………… 3

*U.S. Commodity Futures Trading Comm'n v. U.S. Bank, N.A.*
    2014 WL 294219 (N.D. Iowa, Jan. 27, 2014) ………………………………………………… 6

*U.S. ex rel. Boone v. Fay*
    231 F. Supp. 387 (S.D.N.Y. 1964) …………………………………………………………..10

*Wellman v. Dickinson*
    79 F.R.D. 341 (S.D.N.Y. 1978) ……………………………………………………………… 5

*Wyeth v. King Pharm., Inc.*
    369 F. Supp. 2d 280 (E.D.N.Y. 2005) ………………………………………………………..4

**RULES**

Fed. R. Civ. P. 12(f)...........................................................................................................2

Fed. R. Civ. P. 8(c) ...........................................................................................................3

**REGULATIONS**

17 C.F.R. § 200.66............................................................................................... 11, 12

Defendant Alpine Securities Corporation ("**Alpine**"), by and through undersigned counsel, hereby files its Memorandum in Opposition to Plaintiff United States Securities and Exchange Commission's ("**SEC**") Motion to Strike.

## I.    INTRODUCTION

By this motion, the SEC asks this Court to grant the extraordinary remedy of striking Alpine's equitable defenses of estoppel and waiver (16th Defense) and unclean hands (19th Defense). Both the Second Circuit and this Court have recognized that such motions are disfavored, rarely granted, and are "never" an appropriate vehicle "for the determination of disputed and substantial questions of law." *Keystone Global LLC v. Décor Essentials Ltd.*, 2014 WL 888336, at *2 (S.D.N.Y. Mar. 6, 2014) (Cote, J.) (Court denied the Plaintiff's Motion to Strike) (citations omitted).

To support that request for relief, the SEC takes the expansive position that equitable defenses are improper against the Government and should be dismissed as a matter of law. As discussed below, the Government is subject to principles of equity, including defending against affirmative defenses of estoppel, waiver, and unclean hands. Thus, Alpine's equitable defenses are legally valid.

The SEC also fails in its burden to show that the affirmative defenses do not present any question of fact which would allow the defense to succeed. Alpine's equitable defenses are supported by extensive and specific allegations, all of which are considered true for purposes of the SEC's Motion to Strike. As such, Alpine's equitable defenses present questions of fact that are not properly resolved on a motion to strike, and Alpine should be afforded the opportunity to develop these defenses in discovery.

1

## II.    LEGAL STANDARD

Rule 12(f) of the Federal Rules of Civil Procedure states that the "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f).   "Motions to strike defenses are generally not favored."   *S.E.C. v. McCasky*, 56 F. Supp. 2d 323, 326 (S.D.N.Y. 1999) (citation omitted); *see S.E.C. v. Thrasher*, 1995 WL 456402, at *5 (S.D.N.Y. Aug. 2, 1995) ("Motions to strike, however, remain disfavored ***and should generally not be granted***." (emphasis added)); *accord Reymond Weil, S.A. v. Theron*, 585 F. Supp. 2d 473, 489-90 (S.D.N.Y. 2008) ("There is nothing dumber than a motion to strike boilerplate affirmative defenses; it wastes the client's money and the court's time.").  Thus, "courts should not tamper with the pleadings unless there is a strong reason for so doing."   *City of New York v. Fedex Ground Package System, Inc.*, 314 F.R.D. 348, 354 (S.D.N.Y. 2016) (citation omitted); *see also Keystone Global LLC*, *supra*, at *2 (a motion to strike an affirmative defense "will not be granted unless it appears *to a certainty* that plaintiffs would succeed despite *any state of the facts* which could be proved in support of the defense.") (emphasis added) (citation omitted) (Cote, J.).

"In order to prevail on a motion to strike, a plaintiff must show that: (1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense." *McCaskey*, 56 F. Supp. 2d at 326.  "In considering the first and second prongs, courts apply the same legal standard as that applicable to a motion to dismiss under rule 12(b)(6)."  *City of New York*, 314 F.R.D. at 355 (citation omitted).

Accordingly, "the Court construes the pleadings liberally to give the defendant a full

2

opportunity to support its claims at trial, after full discovery has been made." *Id.* (citations omitted). "The 'sufficiency of a defense is to be determined solely upon the face of the pleading,' and the Court 'accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the [non-moving party's] favor.'" *City of New York*, 314 F.R.D. at 355 (quoting *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 425 (S.D.N.Y. 2010)).

In pleading an affirmative defense, a defendant is required by Rule 8(c) of the Federal Rules of Civil Procedure to state the defense "in short and plain terms." *See Colon ex rel. Molina v. BIC USA, Inc.*, 136 F. Supp. 2d 196, 200 (S.D.N.Y. 2000); *accord* Fed. R. Civ. P. 8(c). The purpose of this Rule is to protect a plaintiff from "unfair surprise." *Colon,* 136 F. Supp. 2d at 200.   Further, numerous courts in this Circuit have "declined to apply the *Twombly/Iqbal* standard [applicable to plaintiffs] to affirmative defenses." *Tardif v. City of New York,* 302 F.R.D. 31, 33-34 (S.D.N.Y. 2014) (identifying cases and summarizing the reasons why courts refuse to apply *Twombly/Iqbal* standards to defenses).

A Motion to Strike is not the appropriate mechanism to resolve issues concerning the legal efficacy of a defense: "when the defense presents a purely legal question, the courts are very reluctant to determine disputed or substantial issues of law on a motion to strike; these questions quite properly are viewed as determinable only after discovery and a hearing on the merits." *William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984) (citation omitted) (vacated on other grounds).   The Second Circuit emphasizes that resolving factual and legal issues is particularly disfavored on a Motion to Strike when "there has been no significant discovery" because "[t]o do otherwise would be to run the risk of offering an advisory opinion on an abstract and hypothetical set of facts." *Id*. (citations omitted).   Thus, to

strike a defense, "the court must be convinced . . . that any questions of law are clear and not in dispute, and that under no set of circumstances could the [defenses] succeed." *Wyeth v. King Pharm., Inc.*, 369 F. Supp. 2d 280, 293 (E.D.N.Y. 2005) (citation omitted).

## III.   ARGUMENT

### A.   ALPINE'S NINETEENTH DEFENSE IS LEGALLY VALID AND RAISES ISSUES OF FACT AND LAW FOR TRIAL.

#### 1.   *Unclean Hands is a Valid Legal Defense against the Government.*

Alpine's Nineteenth Affirmative Defense alleges that the "[SEC's] claim and any remedies sought are barred or reduced, in whole or in part, because the [SEC] has acted outrageously, inequitably, unconstitutionally, in bad faith, with an ulterior purpose, with an improper motive, and/or with unclean hands, in initiating and conducting its investigation of Alpine and in bringing this enforcement action."  Alpine's Am. Answer, pp. 20-23, Dkt. No. 48. That defense is supported by several pages of detailed factual allegations, discussed in detail below, in Section 2.

Contrary to the assertions of the SEC, it is well established that "unclean hands" defenses similar to Alpine's are permitted even in governmental enforcement actions.  "The doctrine of unclean hands, like other equitable defenses, may be raised against the Government where 'the agency's misconduct [was] egregious and the resulting prejudice to the defendant r[o]se to a constitutional level.'"  *S.E.C. v. KPMG LLP*, 2003 WL 21976733, at *3 (S.D.N.Y. Aug. 20, 2003) (alterations in original). Several courts have denied motions to strike similar defenses, even while expressing skepticism about the defense, on the basis that motions to strike are disfavored and the alleged insufficiency of a defense should not be considered at the pleading stage absent a full factual record. *See, e.g., S.E.C. v. Downe,* 1994 WL 67826 at *2 (S.D.N.Y.,

4

March 3, 1994) (denying SEC's motion to strike unclean hands defense predicated on the SEC's refusal to seek disgorgement from other similarly situated parties and to the SEC's failure "to follow its own rules, regulations and procedures," on the basis that "these issues would be better addressed in a concrete factual setting");  *Wellman v. Dickinson,* 79 F.R.D. 341, 351 (S.D.N.Y. 1978) (expressing doubt as to availability of the defense, but declining to strike it at the pleading stage in favor of development of a full factual record); *S.E.C. v. Nacchio*, No. 2006 WL 2793149, at *1, 5 (D. Colo. Sept. 27, 2006) (refusing to strike affirmative defense that SEC's suit "is motivated by an ulterior motive" and to "send a message to the accounting community," because the "Court cannot say that the defense is impossible to establish" at the pleading stage).

Alpine's right to maintain this defense, as well as its other equitable defenses, is further supported by the fact that the SEC seeks equitable relief against Alpine, including a permanent injunction.  The Eighth Circuit Court of Appeals, citing multiple U.S. Supreme Court cases, has stated that "[i]t is well established that the United States is subject to general principles of equity when seeking an equitable remedy."  *U.S. v. Wilson*, 707 F.2d 304, 312 (8th Cir. 1982) (citing, *inter alia*, *Pan American Petroleum & Transp. Co. v. United States*, 273 U.S. 456, 506 (1927); *U.S. v. Detroit Timber & Lumber Co.*, 200 U.S. 321, 339 (1906)). Such decisions comport with the common maxim that "he who seeks equity must do equity." *D.O. Haynes & Co. v. Druggists' Circular*, 32 F.2d 215, 217 (2d Cir. 1929); *accord Granite Partners, L.P. v. Bear, Sterns & Co. Inc.*, 17 F. Supp. 2d 275, 310 (S.D.N.Y. 1998) (same).

The unclean hands doctrine furthers this principle by "'clos[ing] the door of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant.'" *ABF Freight Sys., Inc.*

5

*v. NLRB,* 510 U.S. 317, 329, (1994) (citation omitted); *see also S.E.C. v. American Growth Funding II, LLC*, 2016 WL 8314623, at *3 (S.D.N.Y., Dec. 30, 2016) ("[r]ecognizing the need to deter governmental abuses, courts do allow the defense of government misconduct to be invoked."); *U.S. Commodity Futures Trading Comm'n v. U.S. Bank, N.A.*, 2014 WL 294219, at *7 (N.D. Iowa, Jan. 27, 2014) (stating that "[i]f one comes to court 'tainted with inequitableness or bad faith relative to the matter in which he [or she] seeks relief, however improper may have been the behavior of the defendant,' the court may decline to provide relief."). Therefore, Alpine's equitable Nineteenth Defense is not foreclosed as a matter of law, and should not be struck, simply because it is asserted against a government defendant, particularly where injunctive relief is sought.

>    **2.    *Alpine's Nineteenth Defense is Supported by Sufficient Factual Allegations to Survive a Disfavored Motion to Strike.***

The SEC's Motion to Strike Alpine's Nineteenth Defense is further undermined by the detailed factual allegations Alpine provided in support of its Nineteenth Defense:

- Alpine alleged that the SEC commenced its investigation and this enforcement action against Alpine for, *inter alia,* the following purposes:

> (a) "in retaliation for Alpine's participation as a clearing firm in the microcap over-the-counter ("OTC") stock market, which is looked upon with disfavor by the SEC even though OTC stock transactions are a legal segment of the market, with the purpose of trying to make an example of Alpine to send a message to other participants in the OTC stock market through enforcement rather than regulation";

> (b) "in retaliation for formal and informal statements or complaints made by Alpine and/or certain affiliated entities or individuals regarding FINRA[1] and/or Plaintiff, including a lawsuit commenced against FINRA, and/or in retaliation for efforts by individuals affiliated with Alpine to set up a self-regulatory

---

[1] "**FINRA**" refers to the Financial Industry Regulatory Authority.

organization ("SRO") that would compete with FINRA"; and

(c) "to try to force Alpine out of business through excessive regulatory inquiries in general and through this action, including by pursuing this action in a remote and unduly expensive forum for Alpine, and by seeking excessive penalties in this non-scienter based books and records case, thereby restricting the public's access to the OTC market segment and violating Alpine's right to conduct a lawful business."

- Although discovery is still in the early stages, Alpine alleged on information and

  belief that the SEC's improper and ulterior motives, unclean hands, and outrageous

  and unconstitutional activity are indicated by, *inter alia*, the following conduct:

  (a) "Plaintiff has injected false, inflammatory and irrelevant allegations in its Complaint that Alpine facilitates fraud and criminal behavior by third parties";

  (b) "Plaintiff has injected false, inflammatory and irrelevant allegations in its Complaint regarding Scottsdale Capital Advisors Corp., an entity that is affiliated with Alpine";

  (c) "[U]pon information and belief, Plaintiff pursued its investigation of Alpine and brought this action in retaliation for Alpine's formal and informal complaints and other actions regarding Plaintiff's and/or FINRA's conduct set forth above";

  (d) "Plaintiff is seeking excessive penalties and/or other remedies that are not supported by its own allegations, and which Plaintiff has not sought against other similarly situated broker dealers in the industry, for the purpose of trying to force Alpine out of business";

  (e) "Plaintiff pursued its investigation of Alpine and filed this enforcement action against Alpine for alleged violations of the BSA, even though Plaintiff knows or should know it lacks authority to file enforcement actions or recover penalties for alleged violations of the BSA";

  (f) "Plaintiff involved the DOJ during Plaintiff's investigation, including conducting joint witness interviews, and attempted to persuade the DOJ to pursue a parallel criminal investigation to try to induce Alpine to agree to a resolution with the SEC";

  (g) "Plaintiff filed a declaration with the Court from L. James Lyman that proffers purported proposed testimony from several witnesses allegedly gathered during Plaintiff's joint investigation with the Department of Justice that, upon information and belief, Plaintiff knows or should have known is not accurate";

(h) "Plaintiff brought this action in a forum that is inconvenient and highly costly and prejudicial to Alpine for the stated purpose of making the biggest media splash in the industry by making an example of Alpine";

(i) "Plaintiff is trying to make an example of Alpine to send a message to the industry through enforcement, rather than through regulation,"[2];

(j) "Plaintiff has intentionally and unreasonably singled out Alpine and has not pursued enforcement actions against other similarly situated broker dealers in the industry based on the nature or type of allegations at issue here, sought penalties of this nature or severity against other similarly situated broker dealers in the industry, or otherwise sought to apply the laws and regulations at issue in this action in the same manner against other similarly situated broker-dealers in the industry"; and

(k) "the conduct more particularly set forth in Alpine's Sixteenth Defense, which is incorporated herein by reference in its entirety.  Upon information and belief, additional facts supporting this defense will be uncovered during discovery."

- Alpine further alleged that the SEC's conduct "has caused, and will continue to cause, significant prejudice to Alpine, including, *inter alia,* Alpine's good will and continued operation of its lawful business that serves an important and entirely legal OTC segment of the market and to Alpine's ability to adequately and sufficiently defend itself against Plaintiff's allegations in this action. The prejudice to Alpine from Plaintiff's conduct as described herein rises to a constitutional magnitude, including but not limited to, Plaintiff's constitutional rights to due process and equal protection of law, to be free from arbitrary, selective, retaliatory and discriminatory enforcement of the law."

Alpine's Am. Answer, pp. 20-23, Dkt. No. 48.

These detailed allegations are far more comprehensive than were the allegations in the cases discussed above, and are more than sufficient to satisfy Alpine's burden under Rule 8(c) of

_____

[2]  The SEC admitted as much in its Opposition Memorandum to Alpine's Motion to Dismiss or Transfer (*See* SEC's Memorandum of Law in Opposition To Defendant's Motion to Dismiss, at 3, Dkt. No. 30.)

the Federal Rules of Civil Procedure.  *See Colon,* 136 F. Supp. 2d at 200.  This is not a situation in which Alpine simply pled the words "unclean hands" or "ulterior motives."  It has laid bare a protracted sequence of events that support the view that the SEC is pursuing that it is not even authorized to bring, asserting unprecedented and insupportable interpretations of Bank Secrecy Act provisions, in retaliation against Alpine, and to penalize and/or intimidate a disfavored segment of the OTC market.  As indicated above, at this juncture of the case, it is premature to make a factual determination of Alpine's allegations.  *See, e.g., Downe,* 1994 WL 67826 at *2. The Court is also charged with construing Alpine's allegations liberally "to give [Alpine] a full opportunity to support its claims *at trial*, after *full discovery has been made*."  *McCaskey*, 56 F. Supp. 2d at 326 (emphasis added).

Nevertheless, the SEC argues throughout its Memorandum in Support that Alpine's allegations are conclusory and speculative.  *See* SEC's Mem., pp. 4-5, 7, 9 (Dkt. No. 55).  This argument is baseless.  Not only are detailed factual allegations not necessary to sufficiently plead an affirmative defense, *see Colon,* 136 F. Supp. 2d at 200, but Alpine's supporting factual allegations are far from conclusory.  Moreover, the SEC's arguments that the allegations are conclusory or speculative would not defeat or invalidate the factual issues raised in Alpine's defenses.  *See Perez v. De Domenico Pizza & Restaurant, Inc.*, 2016 WL 3774389, at *2 (E.D.N.Y. May 31, 2016) ("Although the plaintiffs correctly point out that the sixth affirmative defense was pled in conclusory terms, unsupported by any factual allegations, in the opposition papers, . . . there are disputed issues of fact that may entitle the defendants to pursue this standard affirmative defense.").

Notably, this case is unique in that Alpine has previously brought suit against FINRA.

Alpine believes, and has thus alleged, that the SEC's motive in pursuing this action, at least in part, is in retaliation of Alpine's action against FINRA and past statements made by Alpine that were critical of FINRA and the SEC.[3]  Alpine also believes and has alleged that the SEC is attempting to put Alpine out of business by pursuing this action in a remote and more expensive forum, by seeking excessive penalties, and by trying to send a message to the industry through enforcement rather than regulation, for the purposes of both retaliating against Alpine for its criticisms of the SEC's and FINRA's conduct in the industry and in order to try to restrict the public's access to the entirely legal OTC market.  Additional factual allegations from Alpine's Amended Answer that support the SEC's ulterior motive and unclean hands are detailed above.

Alpine has a right to conduct discovery to gather proof to support these allegations.  If proven true, they establish not only the SEC's unclean hands, which provides a defense to the SEC's request for injunctive relief, but also that its conduct has caused prejudice to Alpine that rises to a constitutional level, depriving Alpine of its constitutional rights to due process and equal protection of law.  *See U.S. ex rel. Boone v. Fay*, 231 F. Supp. 387, 390 (S.D.N.Y. 1964) (observing that when government "action or inaction offends basic principles of fundamental fairness a violation of defendant's right to due process or equal protection under the Fourteenth Amendment results.").   In fact, the SEC's inclusion of false, irrelevant and inflammatory allegations in its Complaint, e.g., that Alpine "facilitates and enables illicit financial activity,"[4] has already strained Alpine's and Scottsdale relationships with its customers, banks and other third parties upon which they rely to conduct business.[5]

---

[3] *See John J. Hurry et al. v. Financial Industry Regulatory Authority, Inc. et al.*, 2:14-cv-02490-ROS (D. Ariz.) (action brought by multiple parties including those affiliated with Alpine during the relevant time period).
[4] *See* SEC's Complaint, at ¶¶ 4, 15, 16, 27, Dkt. No. 1.
[5] This is not the first time that the SEC has made spurious and inflammatory allegations in a proceeding without

In addition to the issues of retaliation and improper purpose, Alpine also alleges, as part of its Nineteenth Defense, a selective enforcement argument which requires a showing *at trial* "that laws were not applied to [it] as they were applied to similarly situated individuals and that the difference was intentional and unreasonable." *S.E.C. v. Sirianni*, 334 F. App'x 386, 389 (2d Cir. 2009). In response, the SEC first argues that selective enforcement cannot be asserted as an affirmative defense against it. However, the authority the SEC relies upon in support of this argument, *FSK Drug Corp.*, 960 F.2d 6, 10 (2d Cir. 1992), does not support that sweeping proposition, and Alpine is aware of no authority precluding the defense that a governmental entity has engaged in an impermissible selective enforcement of its rules and regulations. Moreover, the SEC's selective enforcement is evidence of its unclean hands and bias in its pursuit of this Action against Alpine in violation of Alpine's equal protection under the law. *See Thompson v. Spear*, 91 F. 2d 430, 434 (5th Cir. 1937) ("It is only where the enforcement agency is vested with a discretionary power and exercises its discretion arbitrarily and unjustly that enforcement of a valid regulation becomes violative of the equal protection clause.").

The SEC also claims that Alpine "failed to allege facts to support a selective enforcement claim." SEC's Mem., p. 6 (Dkt. No. 55). To the contrary, Alpine has provided detailed factual assertions that support every element of a claim of selective enforcement as set forth above, and as follows:

> [T]he [SEC's] improper and ulterior motives, unclean hands, and outrageous and unconstitutional activity are indicated by, *inter alia,* the following conduct: (a) the

---

regard to the negative impact on the market and market participants. *See e.g. S.E.C. v. Caledonian Bank Ltd.*, 145 F. Supp. 3d 290, 310-11 (S.D.N.Y. 2015) ("[t]he SEC is imbued with enormous powers to protect the investing public. It can halt securities trades and seek to freeze – through its representations to a court – the assets of any institution. However, the SEC's canon of ethics cautions: 'The power to investigate carries with it the power to defame and destroy. . . This case reveals the dire consequences that flow when the SEC fails to live up to its mandate and litigants yield to the Government's onslaught") (quoting 17 C.F.R. § 200.66).

> SEC improperly commenced its investigation and this action in conjunction with a parallel criminal investigation and demands by the United States Department of Justice ("DOJ") for the improper purpose of trying to gather evidence for a parallel criminal proceeding; and/or (b) Plaintiff arbitrarily, selectively and discriminatorily pursued an investigation and this enforcement action against Alpine, in violation of Alpine's constitutional rights to equal protection and due process of law, where it has not pursued similar investigations and enforcement actions, sought to apply the laws or regulations in the same manner, or sought penalties of this nature or severity against other similarly situated broker dealers who filed allegedly "deficient" SARs.

Alpine's Am. Answer, pp. 20-23, Dkt. No. 48. Alpine is entitled to discovery that, the defendant believes, will establish that the SEC embarked on a deliberate campaign to curtail or crush Alpine's entirely lawful business involving microcap securities – including using its joint investigation with the DOJ, and the threat of criminal prosecution, in order to put pressure on Alpine – seeking to both retaliate against and make an example of Alpine, and choke the microcap markets. *See* 17 C.F.R. § 200.66 (SEC's Code of Ethics, stating that a member should never "participate in an investigation aimed at a particular individual for reasons of animus, prejudice or vindictiveness."); *see also S.E.C. v. Brigadoon Scotch Distributing Co.*, 480 F.2d 1047, 1056 (2d Cir. 1973) (observing that during a investigation "if a subpoena were not issued in good faith but to harass or pressure the subject of an investigation, or for any other improper purposes, then the court would be bound not to enforce the subpoena as issued."); *c.f. Ayers v. S.E.C.*, 482 F. Supp. 747, 753 (D. Mon. 1980) (the Court, responding to allegations that the SEC's decision to investigate was "motivated not by a desire to protect investors" but was "motivated merely by SEC's vindictiveness" against the subject, held that the allegations "raised sufficient doubt as to SEC investigatory motives").

In *S.E.C. v. Nacchio*, the Court for the District of Colorado refused to strike a "defense of unclean hands" that was "based on the claim that the SEC improperly comingled its investigation

into this case with a criminal investigation being conducted by the Department of Justice." *Nacchio*, 438 F. Supp. 2d at 1287.  The court "was not prepared to say" that a defense based on such grounds "cannot be maintained under any circumstance," as is required to strike a defense. *Id.*  The Court reasoned that, "[w]hether this case presents such a circumstance" to justify a defense of unclean hands based upon a "jointly-conducted civil and criminal investigation" is "a matter that cannot be adjudicated on the face of the pleadings, and must therefore await development of a more complete factual record."  *Id.*

Alpine's allegations in this case are far more compelling than the defense in *Nacchio*. Here, not only has the SEC conducted a joint investigation with criminal authorities from the DOJ, but the SEC has also selectively enforced its authority against Alpine through a novel enforcement claim, based on new and unsupported interpretations of the relevant statutes and regulations, and by seeking an unprecedented award of penalties predicated on an ostensible books and records claim.  It is both unreasonable and unconstitutional, as both a deprivation of due process and equal protection, for the SEC to intentionally treat Alpine different than other similarly situated broker dealers, particularly where such treatment follows and appears to be motived by the SEC's displeasure with Alpine's role in the OTC market and Alpine's clashes with the SEC and FINRA in other matters.  As in *Nacchio* and the other authorities cited above, it is not appropriate to resolve these issues of fact and law at the pleading stage, where all allegations must be accepted as true.

In summary, Alpine's Nineteenth Defense is legally valid and supported by substantial and sufficient factual allegations.  Accordingly, this Court should deny the SEC's Motion to Strike Alpine's Nineteenth Defense.

**B.    ALPINE'S SIXTEENTH DEFENSE IS LEGALLY VALID AND PRESENTS QUESTIONS OF FACT.**

1.    *Legal Requirements of Waiver and Estoppel*

Alpine's Sixteenth Affirmative Defense alleges equitable defenses of estoppel and waiver.  Both defenses are predicated on similar grounds, set forth in Alpine's Amended Answer and detailed in Section 3, below.

"Estoppel is an equitable doctrine invoked to avoid injustice in particular cases." *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 59 (1984).  To establish the defense of estoppel, "the party claiming the estoppel must have relied on its adversary's conduct 'in such a manner as to change his position for the worse' and that reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading." *Id.* (citations omitted).  "[E]stoppel applies 'when a party, by its conduct, including language, acts or silence, knowingly makes a representation or conceals material facts which it intends or expects will be acted upon by the other party." *EEOC v. UPS*, 2017 WL 2829513, at *11 (E.D.N.Y. Jun. 29, 2017) (quotations and citation omitted).

"Waiver requires the voluntary and intentional abandonment of a known right which, but for the waiver, would have been enforceable." *Jordan v. Can You Imagine, Inc.*, 485 F. Supp. 2d 493, 499 (S.D.N.Y. 2007) (citation omitted).  Moreover, "[w]aiver may be established by affirmative conduct or by a failure to act that evinces the intent to abandon the right." *Id.* (citations omitted).  Notably, "[w]here the intention to relinquish a right is proved through declarations, acts and nonfeasance which permit different inferences to be drawn and do not directly, unmistakably or unequivocally establish a waiver, the determination of whether a right has been relinquished is to be made by the finder of fact." *Id.* (citations and internal quotations

14

omitted).

        2.     ***Estoppel and Waiver Are Valid Legal Defenses Against the Government.***

Contrary to the SEC's position, equitable defenses of estoppel and waiver are not foreclosed as a matter of law simply because they are asserted against the government.  In *Heckler*, the Supreme Court was asked to proclaim a "flat rule that estoppel may not in any circumstances run against the Government."  *Heckler*, 467 U.S. at 60.  The Supreme Court declined to do so, stating, "[w]e have left the issue open in the past, and do so again today. . . . to say that there are no cases in which the public interest in ensuring that the Government can enforce the law free from estoppel might be outweighed by the countervailing interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with their Government."  *Id*.  Likewise, a Court in this district observed that "[t]here is . . . no absolute bar to a defendant raising such a defense in a governmental enforcement action." *American Growth Funding II, LLC*, *supra*, at *3.[6]

Neither is Alpine legally barred from asserting the equitable defense of waiver against the SEC.  *See City of New York*, 314 F.R.D. at 357 (stating that "no case endorses wholesale 'the sweeping proposition that there is no set of facts pursuant to which an equitable defense might be asserted against a governmental entity'"); *see also EEOC*, *supra*, at *4-5 (denying motion to strike waiver defense); *S.E.C. v. PacketPort.com*, 2006 WL 2798804, at *4 (D. Conn. Sep. 27, 2006) ("The SEC points to no legal authority which absolutely prevents the defendants from

---

[6] *See also Heckler*, 467 U.S. at 61 n. 13 ("Our Government should not by picayunish haggling over the scope of its promise, permit one of its arms to do that which, by any fair construction, the Government has given its word that no arm will do. It is no less good morals and good law that the Government should turn square corners in dealing with the people than that the people should turn square corners in dealing with their government. To say to these appellants, 'The joke is on you.  You shouldn't have trusted us,' is hardly worthy of our great government.") (citations omitted).

asserting waiver against the government.").

Alpine's right to maintain its equitable defenses against the SEC in this case is further supported by the fact that the SEC seeks equitable relief against Alpine, including a permanent injunction. As indicated above, where one seeks equity, he must do equity. *Wilson*, 707 F.2d at 312; *Granite Partners,* 17 F. Supp. 2d at 310; *American Growth,* 2016 WL 8314623 at *3.

Therefore, Alpine's equitable defenses of waiver and estoppel are not unavailable simply because Alpine asserts them against a governmental plaintiff, particularly where an injunction is sought.

> 3.    ***Alpine's Estoppel and Waiver Defenses Are Supported by Sufficient Factual Allegations.***

Alpine has alleged sufficient facts in support of its estoppel and waiver defenses to defeat the SEC's Motion to Strike. Specifically, Alpine's estoppel and waiver defenses are based on the following specific allegations regarding the SEC's misleading and inappropriate conduct prior to this action being filed:

- "Alpine was informed during prior regulatory examinations by OCIE[7] and/or FINRA that Alpine was filing 'too many SARs'";

- "Plaintiff is attempting to apply the relevant laws, rules or regulations at issue in this action in a new manner, and/or by attempting to graft or impose, through the fiat of interpretation, new obligations and requirements into such laws, rules or regulations that are not found in the text thereof, without providing Alpine fair notice of such purported requirements or obligations at the time of the conduct at issue";

- "Plaintiff failed to notify Alpine of the alleged deficiencies in its SAR filings and/or

---

[7] "**OCIE**" refers to the Office of Compliance Inspections and Examinations.

in the design and implementation of Alpine's AML[8] compliance program, including but not limited to, during regulatory examinations, or give Alpine an opportunity to correct any such deficiencies, prior to commencing this action";

- "Alpine used and relied on guidance and rules issued by Plaintiff and FINRA, including FINRA's small firm template, in designing and implementing its AML compliance program, with which Plaintiff now takes issue";

- "Plaintiff and FINRA reviewed Alpine's AML compliance program and Alpine's SARs filings during the relevant period, including during regulatory examinations, but did not identify the alleged deficiencies in the general design or implementation of Alpine's AML compliance program or in certain of Alpine's SAR filings that may now be at issue in this action, and thereby misled Alpine into concluding that its AML compliance program was adequate in the eyes of the federal regulators";

- "Plaintiff is pursuing this action based on alleged conduct that occurred as much as six years ago, which adversely affects and prejudices Alpine's ability to summon witnesses and produce relevant testimony and/or records in its defense";

- "Plaintiff's misconduct as described herein, and in Alpine's Nineteenth Defense below, is evidence of severe circumstances and governmental abuses which rise to a constitutional magnitude, including but not limited to, Alpine's constitutional rights to due process and equal protection under the law."

*See* Alpine's Am. Answer, pp. 18-19, Dkt. No. 48.

These factual allegations, which are taken as true and construed liberally in favor of

---

[8] "**AML**" refers to Anti-Money Laundering.

Alpine at this stage, raise sufficient questions of law and fact to allow Alpine to proceed on its estoppel and waiver defenses. *See City of New York*, 314 F.R.D. at 355 ("The 'sufficiency of a defense is to be determined solely upon the face of the pleading,' and the Court 'accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the [non-moving party's] favor.'") (quoting *Coach, Inc.*, 756 F. Supp. 2d at 425)).  Stated otherwise, the SEC has not established, based on these allegations, that there is "no question" of fact or law that could be developed in discovery that "might allow the defense to succeed." *Id.* at 354.

The above-described factual allegations, together with the additional facts alleged in support of Alpine's Nineteenth Defense (incorporated into Alpine's Sixteenth Defense), raise very real issues as to both estoppel and waiver.  For example, the statements by the SEC and FINRA to  Alpine that it was filing "too many SARs," alone, is one on which Alpine could rely, and is directly at odds with the SEC's current position in Paragraphs 35-38 of its Complaint that Alpine failed to file SARs when required.  In the context of estoppel, for the SEC and its self-regulatory organization to complain about too many SARs filings in one breath, thereby cause Alpine to question whether to file a SAR, and then in the next breath allege that Alpine failed to file enough SARs is "inconsistent with the 'minimum standard of decency, honor, and reliability' which citizens have a right to expect from their Government."  *KPMG*, *supra*, at *2 (citation omitted) ); *see also EEOC*, *supra*, at *11 (denying motion to strike estoppel and waiver defenses and observing that "estoppel applies 'when a party, by its conduct, including language, acts or silence, knowingly makes a representation or conceals material facts which it intends or expects will be acted upon by the other party.").

Similarly, by informing Alpine that it was filing too many SARs, the SEC may have

waived the right to maintain a claim based upon Alpine's failure to file enough SARs.  *See Jordan*, 485 F. Supp. 2d at 499 ("Waiver may be established by affirmative conduct or by a failure to act that evinces the intent to abandon the right.") (citations omitted).

Alpine's waiver and estoppel defenses are also supported by the SEC's years-long delay in bringing this action, particularly when combined with the SEC's failure to provide notice or guidance during the relevant period at issue in the Complaint (2011-2015) that reflects the SEC's current positon on the SAR filing requirements.

In *SEC v. PacketPort.com*, 2006 WL 2798804 at *4, the Court refused to strike defenses of waiver or estoppel based on "the passage of time alone" because the "court will not resolve this factual dispute on a motion to strike."   Here, the SEC's allegations include allegedly deficient SARs filed as many as six years before the SEC brought this action.  This delay prejudices Alpine in defending the SEC's claim in this Action, by denying Alpine its constitutional right to have a fair trial, including its ability to locate and marshal witnesses who can remember the events in question and provide competent testimony in its defense.  Such prejudice supports a finding that the SEC has waived, or is estopped, from maintaining allegations based on such stale claims.

Furthermore, not only has the SEC acted inequitably in delaying its enforcement action, but it has also failed to provide Alpine with consistent and timely guidance regarding the standards that the SEC now claims governs the preparation and decision to file a SAR.  Although Alpine disputes that the SEC has the authority to impose requirements regarding the contents of a SAR or to dictate when a SAR must be filed, to the extent the SEC has any such authority, it must provide notice as to what it believes the law requires before bringing an enforcement action

19

against a broker dealer for failure to comply with heretofore unknown requirements.  Neither equity, nor the constitution, allows the SEC to stay silent while Alpine continues to prepare SARs that the SEC secretly believes are deficient, thereby increasing the number of potentially deficient SARs at issue over a period of years, and then bring an enforcement action claiming that thousands of Alpine's SARs are deficient and warrant penalties on a per-SAR or per-transaction basis.   The doctrines of waiver and estoppel preclude such conduct, as do constitutional principles of due process, which require, *inter alia,* fair notice of what the law requires.  *See, e.g., F.C.C. v. Fox Television Stations, Inc*., 567 U.S. 239, 253 (2012) (observing a "fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required," and that this requirement is essential to the protections provided by the due process clause of the constitution).[9]

The allegations Alpine provided in support of its equitable defenses take this case outside of the *KPMG* decision upon which the SEC relies.  In that case, KPMG's equitable defenses of estoppel, waiver, and unclean hands were based on one conversation with auditors.  *See KPMG*, *supra*, at *3 ("The three equitable defenses rest on a conversation in May 2001, and therefore, to the extent reliance is properly part of any analysis, are available solely as to those claims addressed to the 2000 audit, the only KPMG audit of Xerox that was completed, executed and filed after that conversation.").  Alpine's allegations stated in its Sixteenth and Nineteenth Defenses are much more extensive and involve multiple interactions, statements and conduct, including during and through examinations, guidance on AML programs, deficiencies letters,

---

[9] By way of an additional example, as set forth in Alpine's Nineteenth Defense, the SEC included false, irrelevant and inflammatory allegations in its Complaint that Alpine facilitates criminal conduct.  The SEC now concedes that these allegations are irrelevant by objecting to Alpine's efforts to conduct discovery on these allegations on the basis that the discovery requests seek irrelevant information.

and correspondence with regulators and examiners.  Alpine's defenses also include the issue of selective enforcement and ulterior and improper motives for the SEC's action, including retaliation for Alpine's lawsuit commenced against FINRA.  *See* Alpine's Nineteenth Defense, incorporated into Alpine's Sixteenth Defense.  KPMG is not factually analogous to the present case.

Accordingly, the SEC's disfavored motion to strike Alpine's estoppel and waiver defense should be denied.  Alpine's estoppel defense is a legally valid defense that Alpine may assert against the SEC, and Alpine has provided sufficient factual allegations to support the defense and allow Alpine the opportunity to present its defense at trial after full discovery.

### C.     THE PREJUDICE PRONG IS NOT APPLICABLE IN THIS MATTER BECAUSE ALPINE'S AFFIRMATIVE DEFENSES ARE LEGALLY AND FACTUALLY VALID AND SUFFICIENT.

In order to prevail on a motion to strike, a plaintiff must show not only that there is no question of fact or law which might allow the defense to succeed but also that "the plaintiff would be prejudiced by inclusion of the defense." *McCaskey*, 56 F. Supp. 2d at 326.  Where, as here, the affirmative defenses at issue raise questions of fact and law upon which they could succeed, the SEC cannot establish prejudice and the Court need not reach this prong. *See  S.E.C. v. Toomey*, 866 F. Supp. 719, 725 (S.D.N.Y. 1992) (analyzing the prejudice to the SEC in time and expense in defending against statute of limitations defense only after finding that the defense failed as a matter of law).

In addition, the SEC has failed to demonstrate that it would be prejudiced by the inclusion of Alpine's Sixteenth and Nineteenth Defenses.  Even if a party is able to satisfy the first two prongs of the motion to strike test, the party still must show what prejudice it will suffer

and cannot simply point to extra time and expense. *See County Vanlines Inc. v. Experian Information Solutions, Inc.*, 205 F.R.D. 148, 153 (S.D.N.Y. 2002) (stating that "absent a showing of prejudice, the motion to strike must be denied" and that although "increased time and expense of trial may constitute sufficient prejudice to warrant granting a motion to strike, mere assertions by the moving party that he is prejudiced are insufficient") (internal quotations, citations, and brackets omitted).

The SEC's alleged prejudice includes its desire to only focus on its own claim against Alpine in this case. *See* SEC's Mem., at p. 9 ("Without the defenses, discovery will focus on Alpine's records . . ."). As argued above, Alpine has a right to develop its defenses to the SEC's claim in this matter. Moreover, the SEC's claim that discovery into Alpine's defenses will "intrude into the Commission's investigative process and be fraught with disputes over privileged communications and attorney work product" is plainly premature. The Motion to Strike must be evaluated on the face of the pleadings. *City of New York*, 314 F.R.D. at 355. Although Alpine has propounded discovery requests to which the SEC has objected on the basis of privilege, the SEC's objection is not a basis to strike Alpine's defenses. The SEC can at any times seek to limit discovery and cannot rely on its concerns about possible discovery issues as a basis for depriving Alpine of the ability to present and to prove a legally valid defense.

## IV.    CONCLUSION

Based on the foregoing, the SEC's Motion to Strike should be denied because Alpine's affirmative defenses of estoppel, waiver, and unclean hands are legally valid defenses against the Government and Alpine presented numerous questions of fact that support these defenses.

DATED this 8th day of December, 2017.

/s/ *Brent R. Baker*
Brent R. Baker (BB 8285)
Aaron D. Lebenta (*Pro Hac Vice*)
Jonathan D. Bletzacker (*Pro Hac Vice*)
**CLYDE SNOW & SESSIONS**
One Utah Center
201 South Main Street, Suite 1300
Salt Lake City, Utah 84111-2216
Telephone 801.322.2516
Facsimile 801.521.6280
Email: brb@clydesnow.com
       adl@clydesnow.com
       jdb@clydesnow.com

Maranda E. Fritz
**THOMPSON HINE**
335 Madison Avenue, 12th Floor
New York, New York 10017-4611
Tel. 212.344.5680
Fax 212.344.6101
Email: Maranda.Fritz@thompsonhine.com

*Attorneys for Defendant*
*Alpine Securities Corporation*