ZACHARY T. CARLYLE
carlylez@sec.gov
TERRY R. MILLER
millerte@sec.gov
SECURITIES AND EXCHANGE COMMISSION
1961 Stout Street, 17th Floor
Denver, Colorado 80294
(303) 844-1000

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>      Plaintiff,<br><br> - against -<br><br>ALPINE SECURITIES CORPORATION,<br><br>      Defendant. | **17-cv-4179-DLC**<br><br><br><br>**ECF CASE** |

## PLAINTIFF UNITED STATES SECURITIES AND EXCHANGE COMMISSION'S RULE 56.1 STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

## Index of Exhibits

1. FinCEN, *Guidance on Preparing a Complete & Sufficient Suspicious Activity Report Narrative* (November 2003) ("*Preparing a Complete & Sufficient SAR Narrative*")

2. FinCEN, *The SAR Activity Review, Trends Tips & Issues, Issue 22* (October 2012) ("*SAR Activity Review Issue 22*")

3. FinCEN, *The SAR Activity Review: Trends Tips & Issues, Issue 15* (May 2009) ("*SAR Activity Review Issue 15*")

4. Excerpts of WSP Manual, Alpine Securities Corporation (Jan. 05, 2012) ("WSP Manual")

5. Email from Leia Farmer dated August 30, 2012, with two attachments titled "Compliance Training – Minimum Items for SAR Inclusion" and "Keys to Writing a Complete & Sufficient SAR Narrative".

6. FINRA Report of Examination of Alpine Securities Corporation dated September 28, 2012

7. *In re Wells Fargo Advisors, LLC*, Rel No. 82054 (Nov. 13, 2017) (settled order)

8. FinCEN, Form 101-Suspisious Activity Report by the Securities and Futures Industries, effective May 2004 ("Form 101").

9. FinCEN, Suspicious Activity Report (FinCEN SAR) Electronic Filing Requirements (October 2012) ("Electronic Filing Requirements")

10. FinCEN, *Suggestions for Addressing Common Errors Noted in Suspicious Activity Reporting* (Oct. 10, 2007) ("*Suggestions for Addressing Common Errors*")

11. NASD, Special Notice to Members 02-21, *NASD Provides Guidance to Member Firms Concerning Anti-Money Laundering Compliance Programs Required by Federal Law* (April 2002) ("Notice 02-21")

12. FINRA, Regulatory Notice 09-05, *Unregistered Resale of Restricted Securities* (January 2009) ("Notice 09-05")

13. *Updated Small Firm Template Anti-Money Laundering (AML) Program* at 34-35 (updated as of January 1, 2010) ("*Small Firm Template*")

14. Sample SAR A

15. Sample SAR B

16. Sample SAR C

17. Sample SAR D

18. SAR D Support File

19. Sample SAR E

20. SAR E Support File

21. Sample SAR F

22. SAR F Support File

23. FIN-2006-G014, *Potential Money Laundering Risks Related to Shell Companies* (Nov. 9, 2006) ("*Potential Money Laundering Risks*")

24. SAR C Support File

25. SAR A Support File

26. Sample SAR G

27. SAR G Support File

28. Sample SAR H

29. SAR H Support File

30. Sample SAR J

31. SAR J Support File

32. Sample SAR K

33. SAR K Support File

34. Sample SAR L

35. SAR L Support File

36. *Letter of Acceptance, Waiver, and Consent, In re Brown Brothers Harriman & Co.*, No. 2013035821401, (Feb. 4, 2014)

37. Sample SAR M

38. SAR M Support File

39. Sample SAR N

40. SAR N Support File

41. Sample SAR P

42. SAR P Support File

43. Customer A Liquidations

44. Customer A SAR 1

45. Customer A SAR 2

46. Customer A SAR 3

47. Customer A SAR 4

48. Customer A SAR 5

49. Customer B Liquidations

50. Customer B SAR 1

51. Customer B SAR 2

52. Customer B SAR 3

53. Customer B SAR 4]

54. Customer B SAR 5

55. Customer C Liquidations

56. Customer C SAR 1

57. Customer C SAR 2

58. Late SAR 1

59. Late SAR 2

60. Late SAR 3

61. Late SAR 4

62. Late SAR 5

63. Missing File SAR 1

64. Missing File SAR 2

65. Missing File SAR 3

66. Missing File SAR 4

67. Missing File SAR 5

Plaintiff United States Securities and Exchange Commission (the "Commission") submits this statement of material facts pursuant to Rule 56.1 and in support of the Commission's Motion for Partial Summary Judgment.

1.  SARs have been instrumental in the investigations of major money laundering or terrorist financing and other criminal cases. FinCEN, *Guidance on Preparing a Complete & Sufficient Suspicious Activity Report Narrative* at 1 (November 2003) ("*Preparing a Complete & Sufficient SAR Narrative*"); attached as Ex 1. SARs are also used to investigate fraud, embezzlement, and tax violations. FinCEN, *The SAR Activity Review, Trends Tips & Issues, Issue 22* at 13-15 (October 2012) ("*SAR Activity Review Issue 22*"), attached as Ex. 2.

2.  SARs also play a critical role in the investigation of securities law violations. FinCEN, *The SAR Activity Review: Trends Tips & Issues, Issue 15* at 26-30 (May 2009) ("*SAR Activity Review Issue 15*"), attached as Ex. 3.

3.  According to FinCEN, the "failure to adequately describe the factors making the transaction or activity suspicious undermines the very purpose of the SAR and lessens its usefulness to law enforcement." Ex. 1 at 1 (*Preparing a Complete & Sufficient SAR Narrative*); *see also* Ex. 9 at 110 (FinCEN Suspicious Activity Report (FinCEN SAR) Electronic Filing Requirements (October 2012) ("Electronic Filing Requirements").

4.  Alpine's written procedures and written training materials incorporated the robust body of guidance published by FinCEN and FINRA that clarifies the requirement that SAR filers provide complete descriptions of suspicious transactions. *See* Ex. 4 at 40 (excerpts from Alpine's "WSP Manual"); Ex. 5 (Alpine training material that incorporates a presentation published by FinCEN titled *Keys to Writing a Complete and Sufficient SAR Narrative*). Alpine's training

materials incorporate FinCEN guidance on the five essential elements published by FinCEN. Ex. 5 at SEC-ALPINE-E-0687773 ("The 5 'W's' of Information").

5.        In September 2012, FINRA advised Alpine of its findings that the narratives for all 823 SARs reviewed by FINRA were substantively inadequate because they failed to fully describe why the activity was suspicious. Ex. 6 at 3-5 (FINRA Report of Examination of Alpine Securities Corporation dated September 28, 2012).

6.        Attached as Exhibit 7 is a copy of a settled order in *In re Wells Fargo Advisors, LLC*, Rel No. 82054 (Nov. 13, 2017) (settled order).

7.        Attached as Exhibit 8 is a copy of FinCEN Form 101-Suspisious Activity Report by the Securities and Futures Industries, effective May 2004 ("Form 101"). Attached as Exhibit 9 is a copy of FinCEN Suspicious Activity Report (FinCEN SAR) Electronic Filing Requirements (October 2012) ("Electronic Filing Requirements"), which applies to FinCEN's electronic SAR form. Both documents state that the narrative section of the report is "critical" and must be completed with care so investigators can understand the described activity and its possible criminal nature. Ex. 8 at part VI (Form 101); Ex. 9 at 110 (Electronic Filing Requirements).

8.        Form 101, which was required during the relevant period until 2013, required the filer to provide in the narrative section a "clear" and "complete" description of the suspicious activity, including what is "unusual, irregular, or suspicious about the transaction(s), using the checklist below as a guide…." Ex. 8 at part VI (Form 101). The form also directed filers to a FinCEN website with tips on SAR form preparation and filing. *Id.* "Form 111," which was required from 2013 through the end of the relevant period, provided similar instructions and a similar checklist. Ex. 9 at 110-112 (Electronic Filing Requirements).

9.      The checklists in the required SAR form instructions directed Alpine to describe in the SAR narrative the conduct that raised suspicion, indicate whether any information has been excluded from the report, indicate whether there is any related litigation, and describe foreign banks, foreign nationals and the transfer of funds to or from a foreign country involved in the transaction. Ex. 8 at Part VI (Form 101); Ex. 9 at 110 (Electronic Filing Requirements).

10.     FinCEN's guidance instructs broker-dealers like Alpine to "identify the five essential elements of information—*who? what? when? where? and why?*—of the suspicious activity being reported" and to include "a summary of the 'red flags' and suspicious patterns of activity that initiated the SAR." *Suggestions for Addressing Common Errors Noted in Suspicious Activity Reporting* (Oct. 10, 2007) at p. 2 & n.3 (citing *Preparing a Complete & Sufficient SAR Narrative* at 3) ("*Suggestions for Addressing Common Errors*"), attached hereto as Ex. 10. According to FinCEN, the "why?" element requires broker-dealers to answer the question "*Why does the filer think the activity is suspicious?*" Ex. 1 at 4 (*Preparing a Complete & Sufficient SAR Narrative*); *see also* Ex. 2 at 40 (*SAR Activity Review Issue 22*).

11.     In 2002, NASD published examples of red flags relevant to broker-dealers. NASD Special Notice to Members 02-21, *NASD Provides Guidance to Member Firms Concerning Anti-Money Laundering Compliance Programs Required by Federal Law* at 10-11 (April 2002) ("Notice 02-21"), attached as Ex. 11.

12.     In January 2009, FINRA published a set of red flags for broker-dealers that included shell companies and issuers without current or complete SEC filings. FINRA Regulatory Notice 09-05, *Unregistered Resale of Restricted Securities* at 3-4 (January 2009) ("Notice 09-05"), attached as Ex. 12.

13.     In 2010, FINRA published a template for AML programs that identified red flags for broker dealers, including red flags associated with transactions involving penny stock companies in FINRA's *Updated Small Firm Template Anti-Money Laundering (AML) Program* at 34-35 (updated as of January 1, 2010) ("*Small Firm Template*"), attached as Ex. 13.

14.     In May 2009, FinCEN published a set of red flags relevant to potentially suspicious transactions involving low-priced securities known as "penny stocks" that included large deposits and transfers of thinly-traded securities. Ex. 3 at 24 (*SAR Activity Review Issue 15*).

15.     Alpine's Written Supervisory Procedures contains a list of red flags that mirrors the lists published by FinCEN and FINRA. Ex 4 at 40 (WSP).

16.     Alpine filed Sample SAR A and prepared the content that appears in the narrative section of the SAR. Ex. 14 at 4 ("Sample SAR A").

17.     Alpine filed Sample SAR B and prepared the content that appears in the narrative section of the SAR. Ex. 15 at 8 ("Sample SAR B").

18.     Alpine filed Sample SAR C and prepared the content that appears in the narrative section of the SAR. Ex. 16 at 4 ("Sample SAR C").

19.     NASD published a notice to members stating that the fact that a customer or person associated with the customer has a questionable background or is the subject criminal, civil, or regulatory violations is a recognized red flag of suspicious activity. Ex. 11 at 10 (Notice 02-21).

20.     FinCEN published guidance stating that, once potentially suspicious activity is identified, a broker-dealer must "use readily available public information about a customer's

criminal or regulatory history when evaluating potentially suspicious activity" for the SAR form required for broker-dealers. Ex. 3 at 24 (*SAR Activity Review Issue 15*).

21.     Alpine incorporated a customer's criminal and regulatory history as a red flag into its own written procedures. Ex. 4 at 40 ("WSP Manual"). Alpine submits SARs with a narrative section stating that "the authorized signer for [the customer] is currently the subject of an ongoing SEC investigation" or that the "authorized signer for [the customer] has been the subject of recent regulatory action(s). For this reason this deposit may also be suspicious." Ex. 57 at 8; Ex. 52 at 8.

22.     Alpine filed Sample SAR D and prepared the content that appears in the narrative section of the SAR. Ex. 17 at 4 ("Sample SAR D").

23.     The support file for Sample SAR D contains screenshots of Alpine's searches on the SEC website dated September 29, 2011, which reveal ongoing litigation. Ex. 18 at ALPINE00165141-42 ("SAR D Support File").

24.     Alpine filed Sample SAR E and prepared the content that appears in the narrative section of the SAR. Ex. 19 at 4 ("Sample SAR E").

25.     Alpine received a letter dated July 23, 2012 that the customer in SAR E had a criminal background involving bank fraud, mail fraud, and wire fraud. Ex. 20 at SEC-ALPINE-E-1338380 ("SAR E Support File").

26.     Alpine filed Sample SAR F and prepared the content that appears in the narrative section of the SAR. Ex. 21 at 8 ("Sample SAR F").

27.     Alpine's records show that the customer in SAR F had regulatory history with the SEC for misrepresentation and misappropriation of client funds. Ex. 22 at ALPINE_SUPP_PROD_SEC 00027703 ("SAR F Support File").

28.     Shell companies are common tools for money laundering and other financial crimes. FIN-2006-G014, *Potential Money Laundering Risks Related to Shell Companies* at 2 (Nov. 9, 2006) ("*Potential Money Laundering Risks*"), attached as Ex. 23. The term shell company "refers to non-publicly traded corporations, limited liability companies (LLCs), and trusts that typically have no physical presence (other than a mailing address) and generate little to no independent economic value." *Id.* at 1.

29.     FinCEN guidance states that "[e]xamples of common patterns of suspicious activity are … suspected shell entities." Ex. 1 at 5 (*Preparing a Complete & Sufficient SAR Narrative*). FinCEN also directs financial institutions to include identification of shell companies in SARs. Ex. 23 at 5 (*Potential Money Laundering Risks*). FINRA states that that a red flag for broker-dealers exists in stock transactions where the issuer was a shell company when it issued the shares. Ex. 12 at 3 (Notice 09-05).

30.     Chapter 9 of Alpine WSP, which concerns Alpine's Anti-Money Laundering (AML) Program, includes a subchapter on shell companies that cites FinCEN's *Potential Money Laundering Risks* and reproduces a portion of the text. Ex. 4 at 172.

31.     Alpine uses standardized "Deposited Securities Checklist," which is included in many of the SAR support files created by Alpine. These forms contain a section titled "Shell Company" that requires verification of whether an issuer of the deposited stock is or ever was a shell company. *E.g.* Ex. 18 at ALPINE00165090 ("SAR D Support File").

32.     FinCEN instructs that a red flag exists where the "issuer's SEC filings are not current, are incomplete, or nonexistent." Ex. 12 at 4 (Notice 09-05).

33.     The support file for Sample SAR C contains a handwritten note stating that the issuer of the deposited stock was a shell company "w/in last year." Ex. 24 at ALPINE00220209 ("SAR C Support File").

34.     The support file for Sample SAR A states that the issuer of the deposited stock was a shell company. Ex. 25 at SEC-ALPINE-E-1690740 ("SAR A Support File").

35.     Alpine filed Sample SAR G and prepared the content that appears in the narrative section of the SAR. Ex. 26 at 4 ("Sample SAR G").

36.     The support file for Sample SAR G states that with respect to the issuer, "SEC reporting, not current in filings – no form 10 information filed since period ending …, no company website found." Ex. 27 at ALPINE0243435 ("SAR G Support File"). The SAR G Support File also contains a screenshot of the OTC Markets website for the issuer that contains a stop sign signal. *Id.* at ALPINE00243460.

37.     NASD states in Notice 02-21 that transactions in penny stocks with no apparent reason or in conjunction with other red flags are suspicious because they have been used in connection with fraudulent schemes. Ex. 11 at 11 (Notice 02-21). Alpine's WSP Manual includes the same language in a list of red flags. Ex. 4 at 41 (WSP Manual).

38.     Alpine filed Sample SAR H and prepared the content that appears in the narrative section of the SAR. Ex. 28 at 8 ("Sample SAR H").

39.     The support file for SAR H contains a Deposited Securities Checklist, which contains a section titled "Current Information Available" that pertains to the issuer. This section

states: "latest PR as of 07/09/12 per company website (Company secured potable water supply. 1 newsletter on 07/30/13 – per stokpromoters.com [sic] – does not appear to be related to client."). Ex 29 at ALPINE0229540 ("SAR H Support File"). The SAR H Support File also contains one page of a four page printed copy of a stock promotion search that stock promoter "Sizzling Stock Picks" received compensation to advertise the stock. *Id.* at ALPINE00229634 (SAR H Support File).

40.     Alpine filed Sample SAR J and prepared the content that appears in the narrative section of the SAR. Ex. 30 at 4 ("Sample SAR J").

41.     The support file for SAR J contains a Deposited Securities Checklist, which contains a section titled "Current Information Available" that pertains to the issuer. This section states that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex 31 at ALPINE00180431 ("SAR J Support File"). The SAR J Support File also contains a copy of ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at ALPINE00180538 (SAR J Support File).

42.     The SAR G Support File contains a printed version of a Google search results, the second of which links to an article promoting the issuer. Ex. 27 at ALPINE00243476 (SAR G Support File).

43.     In the *Small Firm Template*, FINRA provides a list of red flags, one of which is where a customer "[p]rovides unusual or suspicious identification documents that cannot be readily verified." Ex. 13 at 33 (*Small Firm Template*). In Notice 09-05, FINRA includes in the list of red flags the facts that an issuer name changes or has nonexistent SEC filings. Ex. 12 at 4 (09-05 Notice).

44.     Alpine filed Sample SAR K and prepared the content that appears in the narrative section of the SAR. Ex. 32 at 8 ("Sample SAR K").

45.     The support file for Sample SAR K states that issuer's website "is not currently functioning." Ex. 33 at ALPINE00235733 ("SAR K Support File").

46.     Alpine filed Sample SAR L and prepared the content that appears in the narrative section of the SAR. Ex. 34 at 8 ("Sample SAR L").

47.     The support file for Sample SAR L contains a document showing that issuer corporation was in default status in its state of incorporation at the time of the deposit. Ex. 35 at ALPINE00243156-57 ("SAR L Support File").

48.     A letter of acceptance made available by FINRA states a red flag indicating potential manipulation of a penny stock is where trading activity represents a significant percentage of the overall trading volume in a stock on a given day. Such activity could signify manipulative measures such as wash trades or pre-arranged trades to create the appearance of unrealistic demand for securities. Ex. 36 at 8, *Letter of Acceptance, Waiver, and Consent, In re Brown Brothers Harriman & Co.*, No. 2013035821401 (Feb. 4, 2014).

49.     In *SAR Activity Review Issue 15*, FinCEN provides a list of red flags associated with penny-stocks, which includes a "substantial deposit, transfer or journal of very low-priced and thinly traded securities." Ex. 3 at 24 (emphasis added) (*SAR Activity Review Issue 15*).

50.     Alpine filed Sample SAR M and prepared the content that appears in the narrative section of the SAR. Ex. 37 at 8 ("Sample SAR M"). The SAR reports a deposit of 5,954,252 shares. *Id.* In the support file for Sample SAR M contains a "Deposited Securities Request

Form" indicating that the average trading volume over the last three months was 59,108 shares per day. Ex. 38 at ALPINE00246293 ("SAR M Support File").

51.     Alpine filed Sample SAR N and prepared the content that appears in the narrative section of the SAR. Ex. 39 at 8 ("Sample SAR N"). The SAR reports a deposit of 65,000,000 shares. *Id.* The support file for Sample SAR N contains multiple pages with handwritten notes of "Low Volume" and states that the volume of the deposited stock was 101,100 per day. Ex. 40 at ALPINE00267609 (Volume of 101,100 and note of "low volume"), ALPINE00267656 ("low volume"); ALPINE00267657 ("low volume") ("SAR N Support File").

52.     Alpine filed Sample SAR P and prepared the content that appears in the narrative section of the SAR. Ex. 41 at 8 ("Sample SAR P"). The SAR reports a deposit of 500,000 shares. *Id.* The support file for Sample SAR P states that the daily volume for the stock described in SAR P is 10,971. Ex. 42 at ALPINE00265096 ("SAR P Support File")

53.     FinCEN's required SAR forms instruct broker-dealers to indicate whether the suspicious transaction involves foreign nationals, foreign currency, foreign accounts, and transfer of funds to a foreign country together with related information for each of these facts. Ex. 8 (Instructions to Narrative items l, o, p, and q); Ex. 9 at 111-112 (Electronic Filing Requirements).

54.     SAR guidance also instructs Alpine to indicate involvement of foreign individuals or entities: "Filers should also specify whether the activity involved a foreign jurisdiction, such as funds wired overseas, and the foreign jurisdiction and/or financial institution involved, as well as any account numbers associated with the subject of the suspect transaction(s)." Ex. 2 at 40 (*SAR Activity Review Issue 22*).

55.     FinCEN directs broker-dealers to use the SAR narrative to "[s]pecify if the suspected activity or transaction(s) involved a foreign jurisdiction. If so, provide the name of the foreign jurisdiction, financial institution, address and any account numbers involved in, or affiliated with the suspected activity or transaction(s)." Ex. 1 at 4 (*Preparing a Complete & Sufficient SAR Narrative*); *see also id.* at 5 ("Examples of common patterns of suspicious activity are … beneficiaries maintaining accounts at foreign banks that have been subjects of previous SAR filings.").

56.     Alpine stated in its training materials that, at a minimum, "if [a transaction] involves a foreign jurisdiction, note this (including any identifiers concerning the transaction, name of jurisdiction, financial institution, address, account numbers, etc.)." Ex. 5 at SEC-ALPINE-E-0667765.

57.     Alpine reported in Sample SAR N the fact that a customer is a foreign broker-dealer. Ex. 39 at 8 (Sample SAR N).

58.     Throughout the relevant period, the Bahamas was by identified by the United States Department of State as a Jurisdiction of Primary Concern for Money Laundering and Financial Crimes. *See* Bureau Of International Narcotics And Law Enforcement Affairs, 2011 International Narcotics Control Strategy Report (INCSR) (Mar.3, 2011) https://www.state.gov/j/inl/rls/nrcrpt/2011/vol2/156374.htm#bahamas.

59.     Throughout the relevant period, Belize was by identified by the United States Department of State as a Jurisdiction of Primary Concern for Money Laundering and Financial Crimes. *See* Bureau Of International Narcotics And Law Enforcement Affairs, 2012

International Narcotics Control Strategy Report (INCSR) (Mar. 7, 2012)

https://www.state.gov/j/inl/rls/nrcrpt/2012/vol2/184115.htm#Belize

60.     The SAR A Support File states that one beneficial owner has and address in

Belize and that Belize is its jurisdiction of incorporation, Ex. 25 at SEC-ALPINE-E-1690753

(SAR A Support File); one beneficial owner has an address in China and Belize is its jurisdiction

of incorporation, *id.* at SEC-ALPINE-E-1690755; and another beneficial owner has an address in

Belize and Belize is its jurisdiction of incorporation, *id.* at SEC-ALPINE-E-1690757.

61.     The support file for Sample SAR H indicates that Alpine's customer acquired the

underlying shares from a Bermuda entity by transferring funds to a Bermuda bank account.

Ex. 29 at ALPINE00229540 (customer acquired shares from Whalehaven); ALPINE 00229572

(Whalehaven received payment in a Bermuda bank account) (SAR H Support File).

62.     FinCEN guidance identified transactions involving penny stocks that raise red

flags of suspicious activity, including the "systematic sale of . . . low priced securities shortly

after being deposited, transferred or journaled into [an] account." Ex. 3 at 24 (*SAR Activity

Review Issue 15*). FinCEN instructions direct that a suspicious liquidation following the filing of

a SAR triggers an obligation to file a new SAR and/or a continuing report. Ex. 9 at 84 ("A

continuing report should be filed on suspicious activity that continues after an initial FinCEN

SAR is filed.").

63.     The following table shows transactions involving Customer A and the securities

of Company A:

| Date | Deposited Shares | Deposit Value | SAR Filed on Deposit | Liquidated Shares | Liquidation Value | Exhibit |
|------|------------------|---------------|----------------------|-------------------|-------------------|---------|
| 2/07/12 | 6,200,000 | $58,900 | | | | 44 |

| Date | Deposited Shares | Deposit Value | SAR Filed on Deposit | Liquidated Shares | Liquidation Value | Exhibit |
|---|---|---|---|---|---|---|
| 2/24/12 | | | | 90,000 | $10,179.00 | 44 |
| 2/27/12 | 6,200,000 | $62,000 | | | | 45 |
| 2/27/12 | | | | 394,601 | $6,731.89 | 43 |
| 2/28/12 | | | | 400,000 | $5,940.00 | 43 |
| 2/29/12 | | | | 1,403,000 | $22,602.33 | 43 |
| 3/01/12 | | | | 651,000 | $10,448.55 | 43 |
| 3/01/12 | | | SAR filed on 2/7 deposit | | | 44 |
| 3/02/12 | | | | 746,749 | $12,172.01 | 43 |
| 3/05/12 | | | | 2,600,000 | $57,122.00 | 43 |
| 3/06/12 | | | | 1,334,183 | $36,970.21 | 43 |
| 3/06/12 | | | | 1,000,000 | $25,640.00 | 43 |
| 3/09/12 | | | | 709,151 | $10,630.17 | 43 |
| 3/14/12 | | | | 268,561 | $5,586.07 | 43 |
| 3/19/12 | | | | 449,226 | $10,493.92 | 43 |
| 3/29/12 | | | SAR filed on 2/27 deposit | | | 45 |
| 4/02/12 | 8,000,000 | $180,000 | | | | 46 |
| 4/16/12 | | | SAR filed on 4/2 deposit | | | 46 |
| 4/19/12 | | | | 519,243 | $9,472.03 | 43 |
| 4/20/12 | | | | 347,382 | $6,687.10 | 43 |
| 4/26/12 | 6,200,000 | $117,800 | | | | 47 |
| 5/17/12 | | | | 2,876,100 | $48,260.96 | 43 |
| 5/25/12 | | | SAR filed on 4/26 deposit | | | 47 |
| 6/8/12 | | | | 800,000 | $7,920.00 | 43 |
| 7/27/12 | | | | 920,000 | $6,256.00 | 43 |
| 8/6/12 | | | | 1,300,000 | $6,565.00 | 43 |
| 8/17/12 | | | | 1,865,700 | $16,753.99 | 43 |
| 9/11/12 | 11,120,000 | $88,960 | SAR filed on 9/11 deposit | | | 48 |
| 9/20/12 | | | | 571,000 | $5,595.80 | 43 |

64.     The following table shows transactions involving Customer B and the securities

of Company B:

| Date | Deposited Shares | Deposit Value | SAR Filed on Deposit | Liquidated Shares | Liquidation Value | Exhibit |
|---|---|---|---|---|---|---|
| 4/25/14 | 802,139 | $21,577.54 | | | | 50 |
| 5/15/14 | | | SAR filed on 4/25 deposit | | | 50 |
| 6/12/14 | 2,679,245 | $23,041.00 | | | | 51 |
| 6/18/14 | 4,081,633 | $32,653.00 | | | | 52 |
| 7/07/14 | | | SAR filed on 6/12 deposit | | | 51 |
| 7/14/14 | | | SAR filed on 6/18 deposit | | | 52 |
| 7/14/14 | 6,333,333 | $63,966.00 | | | | 53 |
| 7/15/14 | 5,090,476 | $23,925.00 | | | | 54 |
| 7/15/14 | | | | 6,333,333 | $30,210.00 | 49 |
| 7/17/14 | | | | 1,283,000 | $5,132.00 | 49 |
| 7/18/14 | | | | 2,090,500 | $7,588.52 | 49 |
| 8/08/14 | | | SAR filed on 7/14 deposit | | | 53 |
| 8/12/14 | | | SAR filed on 7/15 deposit | | | 54 |
| 8/13/14 | | | | 6,056,250 | $10,901.25 | 49 |
| 8/18/14 | | | | 6,187,400 | $8,352.99 | 49 |

65.     The following table shows transactions involving Customer C and the securities

of Company C:

| Date | Deposited Shares | Deposit Value | SAR Filed on Deposit | Liquidated Shares | Liquidation Value | Exhibit |
|---|---|---|---|---|---|---|
| 9/18/13 | 14,553,571 | $59,669.00 | | | | 56 |
| 9/19/13 | | | | 2,791,300 | $6,450.69 | 55 |
| 9/23/13 | | | | 4,914,460 | $7,322.55 | 55 |
| 9/24/13 | | | | 5,960,311 | $8,284.83 | 55 |
| 9/27/13 | 10,915,179 | $19,647.00 | | | | 57 |

14

| Date | Deposited Shares | Deposit Value | SAR Filed on Deposit | Liquidated Shares | Liquidation Value | Exhibit |
|------|------------------|---------------|----------------------|-------------------|-------------------|---------|
| 9/28/13 | | | SAR filed on 9/18 deposit | | | 56 |
| 10/5/13 | | | SAR filed on 9/27 deposit | | | 57 |
| 10/16/13 | | | | 5,627,472 | $6,173.34 | 55 |

66.    The following table shows illustrative Late SARs:

| Sample Late SAR | Transaction Date | 30 Calendar Days from Transaction | SAR Date | Days Late | Exhibit |
|-----------------|------------------|-----------------------------------|----------|-----------|---------|
| 1 | 9/02/11 | 10/02/11 | 4/30/12 | 211 | 58 |
| 2 | 9/07/11 | 10/07/11 | 4/30/12 | 206 | 59 |
| 3 | 9/13/11 | 10/13/11 | 5/07/12 | 207 | 60 |
| 4 | 9/15/11 | 10/15/11 | 5/07/12 | 205 | 61 |
| 5 | 9/28/11 | 10/28/11 | 5/04/12 | 189 | 62 |

67.    Five samples of SARs for which Alpine failed to maintain supporting documentation that are dated within the previous five years include: Exs. 63 (SAR date 10/30/13); 64 (SAR date 4/30/15); 65 (SAR date 3/08/14); 66 (SAR date 4/10/15); and 67 (SAR date 9/15/14).

Respectfully submitted this 6th day of December, 2017.

_/s/ Terry R. Miller_
Zachary T. Carlyle (_pro hac_)
Terry R. Miller (_pro hac_)
Attorneys for Plaintiff
UNITED STATES SECURITIES AND
EXCHANGE COMMISSION
1961 Stout Street, 17th Floor
Denver, Colorado 80294
(303) 844-1000

15

## CERTIFICATE OF SERVICE

I certify that on December 6, 2017, a copy of the foregoing document was served via

email upon the following:

Brent R. Baker
Aaron D. Lebenta
Jonathan D. Bletzacker
CLYDE SNOW & SESSIONS
One Utah Center, 13th Floor
201 South Main Street
Salt Lake City, Utah 84111-2216

Maranda E. Fritz
Thompson Hine LLP (NYC)
335 Madison Avenue, 12th Floor
New York, NY 10017

*Counsel for Alpine Securities Corporation*

*/s/ Marla J. Pinkston*