**EXHIBIT 7**

UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION

SECURITIES EXCHANGE ACT OF 1934
Release No. 82054 / November 13, 2017

ADMINISTRATIVE PROCEEDING
File No. 3-18279

| | |
|---|---|
| **In the Matter of**<br><br>   Wells Fargo Advisors, LLC,<br><br>**Respondent.** | ORDER INSTITUTING ADMINISTRATIVE AND CEASE-AND-DESIST PROCEEDINGS PURSUANT TO SECTIONS 15(b) AND 21C OF THE SECURITIES EXCHANGE ACT OF 1934, MAKING FINDINGS, AND IMPOSING REMEDIAL SANCTIONS AND A CEASE-AND-DESIST ORDER |

**I.**

The Securities and Exchange Commission ("Commission") deems it appropriate and in the public interest that public administrative and cease-and-desist proceedings be, and hereby are, instituted pursuant to Sections 15(b) and 21C of the Securities Exchange Act of 1934 ("Exchange Act") against Wells Fargo Advisors, LLC ("Wells Fargo Advisors" or "Respondent").

**II.**

In anticipation of the institution of these proceedings, Respondent has submitted an Offer of Settlement (the "Offer") which the Commission has determined to accept. Solely for the purpose of these proceedings and any other proceedings brought by or on behalf of the Commission, or to which the Commission is a party, and without admitting or denying the findings herein, except as to the Commission's jurisdiction over it and the subject matter of these proceedings, which are admitted, Respondent consents to the entry of this Order Instituting Administrative and Cease-and-Desist Proceedings Pursuant to Sections 15(b) and 21C of the Securities Exchange Act of 1934, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order ("Order"), as set forth below.

**III.**

On the basis of this Order and Respondent's Offer, the Commission finds that

## Summary

These proceedings arise out of Wells Fargo Advisors' failure to file or timely file a number of Suspicious Activity Reports ("SARs") from approximately March 2012 through June 2013.  The majority of these failures involved the failure to timely file SARs on ongoing suspicious activity that continued after an initial SAR filing by Wells Fargo Advisors on related suspicious activity. At the time, Wells Fargo Advisors' anti-money laundering ("AML") policies and procedures required the filing of SARs pursuant to the requirements of the Bank Secrecy Act ("BSA"), including the filing of SARs related to continuing suspicious activity.  Despite these requirements, Wells Fargo Advisors failed to file or timely file at least 50 SARs, a majority of which related to continuing suspicious activity occurring in accounts held at Wells Fargo Advisors' U.S. branch offices that focused on international customers.  By failing to file or timely file SARs as required, Wells Fargo Advisors willfully violated Section 17(a) of the Exchange Act and Rule 17a-8 thereunder.

## Respondent

1.      <u>Wells Fargo Advisors, LLC</u>, is a Delaware limited liability company with its headquarters offices located in St. Louis, Missouri.  It is a wholly-owned subsidiary of Wells Fargo & Company, a publicly traded company whose stock trades on the NYSE under the ticker symbol WFC.  Wells Fargo Advisors has been registered with Commission as a broker-dealer since 1987 and as an investment adviser since 1990.  Wells Fargo Advisors provides securities brokerage, investment advisory and other financial services to its customers and advisory clients, the majority of whom are individuals.  Wells Fargo Advisors has more than 15,000 registered representatives and advisory personnel and administers more than $1.5 trillion in customer assets.

## Background

2.      The Bank Secrecy Act ("BSA") requires broker-dealers such as Wells Fargo Advisors to file SARs with the U.S. Treasury Department's Financial Crimes Enforcement Network ("FinCEN") to report, among other things, transactions or patterns of transactions involving or aggregating to at least $5,000 or more that the broker-dealer either knows, suspects or has reason to suspect:  involve funds derived from illegal activity or were conducted to disguise funds derived from illegal activities; were designed to evade any requirement of the BSA; had no business or apparent lawful purpose and the broker-dealer knows of no reasonable explanation for the transaction after examining the available facts; or involved the use of the broker-dealer to facilitate criminal activity.  The BSA and FinCEN require the filing of a SAR within 30 days after a broker-dealer determines the activity is "suspicious" within the meaning of the SAR regulation.

3.      FinCEN provides a form of administrative relief from the SAR filing deadline to financial institutions, including broker-dealers, for SARs identifying continuing activity of a

previously-filed SAR.  Under this administrative relief, instead of filing a new SAR for each instance of ongoing suspicious activity, broker-dealers are allowed to file SARs for continuing activity after a 90-day review with the filing deadline being 120 calendar days after the date of the previously-related SAR filing.  Broker-dealers also may file SARs on continuing activity earlier than the 120-day deadline if the broker-dealer believes the activity warrants earlier review by law enforcement.

4.      During the relevant time period, Wells Fargo Advisors' written AML policies and procedures mirrored the BSA and FinCEN's requirements.  This included a requirement that Wells Fargo Advisors perform a review for continuing activity after an initial SAR was filed and the account was not closed.  The purpose of performing such a review was, among other things, for Wells Fargo Advisors to file continuing activity SARs to timely notify law enforcement of ongoing suspicious transactions.

5.      Wells Fargo Advisors' policies and procedures further required that all investigative case notes and SAR-related decisions be memorialized and maintained in the firm's internal systems and that the manager of the AML Surveillance and Investigations group or his or her designee make the final determination of whether to file a SAR.

6.      Employees in Wells Fargo Advisors' Surveillance and Investigations group were responsible for investigating cases that appeared to have indications of suspicious activity in order to determine whether to recommend filing a SAR.  As part of their duties, these employees also conducted reviews for continuing suspicious activity.  If the previously-reported activity continued and they were unable to determine a business or apparent lawful purpose for the transactions or find a reasonable explanation for the transaction after thoroughly examining the available facts, they were to recommend filing a continuing activity SAR.

7.      Prior to March 2012, Wells Fargo Advisors recognized members of the Surveillance and Investigations group for the quality and increased numbers of SARs (including continuing activity SARs) filed by the group.

### Changes to Wells Fargo Advisors' AML Management

8.      Starting in approximately March 2012, Wells Fargo Advisors began making changes to the management over its AML program, including the management over the Surveillance and Investigations group.

9.      In March 2012, Wells Fargo Advisors installed a new senior manager within the compliance department, including the AML program.

10.     In July 2012, Wells Fargo Advisors installed a new manager to directly supervise the Surveillance and Investigations group on what was intended to be a short-term, interim basis.

11.     Shortly after the arrival of new management, the Surveillance and Investigations group began receiving conflicting and confusing directions on when and whether to file certain SARs, especially regarding when and whether to file continuing activity SARs.

12.     Among other things, the new AML management created confusion by communicating to the Surveillance and Investigations group that:

- they were filing too many SARs;
- continuing activity SAR reviews were not a regulatory requirement;
- they were to take steps to eliminate further continuing activity reviews; and
- filing a SAR required "proof" of illegal activity.

13.     The new AML management also instructed the investigators not to document any disagreements with management's decisions not to file SARs in Wells Fargo Advisors' internal case management system, but instead to use the system to record only facts and management's final decision.

14.     All of these statements by the new AML management, many of which were communicated more than once to the Surveillance and Investigations group, created an environment in which the Surveillance and Investigations group experienced difficulty in recommending and filing SARs, especially continuing activity SARs.

15.     Wells Fargo Advisors' new AML management further stated that one of their goals was to decrease the number of continuing activity SAR filings by the firm by having the clients cease the activity or by closing the accounts and to retrain the Surveillance and Investigations group on what constituted "red flags" of suspicious transactions and activity within the firm's brokerage accounts.

16.     Despite these statements, no new formal training or guidance was offered to the Surveillance and Investigations group during the relevant time period, and investigators in the Surveillance and Investigations group had limited ability to influence the closing of accounts.

17.     Between approximately July 2012 and June 2013, the total number of SARs filed by Wells Fargo Advisors dropped by approximately 60% from an average of 57 SARs filed per month to an average of 22 SARs filed per month.

18.     Moreover, the interim manager of the Surveillance and Investigations group temporarily suspended certain continuing activity investigations and cleared them (that is, decided not to file SARs) without speaking directly to the investigators assigned to work on the investigations. Notwithstanding the firm's policies and procedures to document all SAR decisioning, the interim manager did not enter his decisions within the firm's internal case management system himself.

19.     Ultimately, these activities led to missed and late SAR filings, in particular continuing activity SARs.

**Wells Fargo Advisors' Untimely and Missed SAR Filings**

20. Because of the activities described above, Wells Fargo Advisors failed to file and timely file continuing activity SARs on previously-filed activity, as required by the BSA. For example:

    a. After filing a continuing activity SAR on August 8, 2012 concerning significant unexplained wire activity that appeared to be an attempt to evade the requirements of the BSA, the interim manager of the Surveillance and Investigations group suspended the continuing activity review and assigned it to another group because the account was under review to be closed. However, the account was not closed and Wells Fargo Advisors never filed a continuing activity SAR, even though the unexplained wire activity continued after the date the initial SAR was filed.

    b. After filing a continuing activity SAR on October 8, 2012 concerning unexplained wire activity that appeared to be an attempt to evade the requirements of the BSA, Wells Fargo Advisors failed to timely file a continuing activity SAR within the 120-day filing window even though the activity continued. Eventually, Wells Fargo Advisors filed a continuing activity SAR on July 10, 2013, approximately 155 days beyond the 120-day filing deadline.

    c. After filing a continuing activity SAR on August 3, 2012 concerning significant unexplained wire activity that appeared to be an attempt to avoid the requirements of the BSA, Wells Fargo Advisors failed to timely file a continuing activity SAR within the 120-day filing window even though the activity continued. Eventually, Wells Fargo Advisors filed a continuing activity SAR on February 11, 2013, approximately 72 days beyond the 120-day filing deadline.

21. Ultimately, Wells Fargo Advisors failed to file or timely file at least 50 SARs during the relevant time period. 45 of the missed SARs related to continuing activity that occurred after a prior SAR filing and 5 of the missed SARs involved the failure to timely file an initial SAR related to suspicious activity involving accounts held at Wells Fargo Advisors.

22. Of the at least 50 unreported or untimely SAR filings, Wells Fargo Advisors filed 8 continuing activity SARs beyond the 120-day filing period.

23. After receiving an employee complaint in 2013 and conducting an internal investigation with assistance from an outside law firm, Wells Fargo Advisors retained a third-party AML compliance firm in the summer of 2014 to review no-SAR cases from January 2012 through August 2013. As a result of this review, Wells Fargo Advisors filed 24 additional continuing activity SARs and 5 initial SARs. These SARs, which are included in the figures discussed above,

were filed over one year after some of the reportable activity occurred and the initial 120-day filing deadlines expired.

## Violation

24. As a result of the conduct described above, Wells Fargo Advisors willfully[1] violated Section 17(a) of the Exchange Act and Rule 17a-8 thereunder, which require broker-dealers to comply with the reporting, record keeping, and record retention requirements of the BSA, including filing SARs as required by the BSA SAR Rule, 31 C.F.R. § 1023.320(a)(2).

## Wells Fargo Advisors' Remedial Efforts

25. In determining to accept Wells Fargo Advisors' Offer, the Commission considered voluntary remedial acts promptly undertaken by Respondent, including the firm's retaining a third-party AML compliance firm to review certain of its SAR investigations during the summer of 2014.

## Undertakings

26. Respondent has voluntarily undertaken to, within one year of the entry of the Order:

    (a) Conduct, or cause to be conducted, a review of the policies, procedures and practices for the identification, evaluation, and reporting of suspicious activity related to accounts of Wells Fargo Advisors, as conducted by the designated AML financial crimes investigations unit ("FCI") to determine whether AML investigative staff have sufficient time and resources to research account activity, formulate conclusions and timely file SARs;

    (b) As a result of the review, update the internal policies, procedures and practices relating to the identification, evaluation and reporting of suspicious activity related to accounts at Wells Fargo Advisors;

    (c) Provide additional training with respect to the appropriate determination of when to file SARs on suspicious activity to AML investigations staff within FCI who are responsible for conducting suspicious activity investigations and filing SARs relating to accounts at Wells Fargo Advisors; and

    (d) Certify, in writing to the Commission staff its compliance with the undertakings set forth above. The certification and any supporting material Respondent elects to provide shall be submitted to Anne C. McKinley,

---

[1] A willful violation of the securities laws means merely "'that the person charged with the duty knows what he is doing.'" *Wonsover v. SEC*, 205 F.3d 408, 414 (D.C. Cir. 2000) (quoting *Hughes v. SEC*, 174 F.2d 969, 977 (D.C. Cir. 1949)). There is no requirement that the actor "'also be aware that he is violating one of the Rules or Acts.'" *Id.* (quoting *Gearhart & Otis, Inc. v. SEC*, 348 F.2d 798, 803 (D.C. Cir. 1965)).

6

>Assistant Director, Division of Enforcement, Securities and Exchange Commission, 175 West Jackson Blvd., Suite 1450, Chicago, Illinois 60604, no later than sixty (60) days from the date of the completion of the one-year period described above in paragraph 26.

In determining whether to accept the Offer, the Commission has considered these undertakings.

## IV.

In view of the foregoing, the Commission deems it appropriate and in the public interest to impose the sanctions agreed to in Respondent Wells Fargo Advisors' Offer.

Accordingly, pursuant to Sections 15(b) and 21C of the Exchange Act it is hereby ORDERED that:

A. Respondent Wells Fargo Advisors cease and desist from committing or causing any violations and any future violations of Section 17(a) of the Exchange Act and Rule 17a-8 promulgated thereunder.

B. Respondent Wells Fargo Advisors is censured.

C. Respondent Wells Fargo Advisors shall, within 30 days of the entry of this Order, pay a civil money penalty in the amount of $3,500,000.00 to the Securities and Exchange Commission for transfer to the general fund of the United States Treasury, subject to Exchange Act Section 21F(g)(3). If timely payment is not made, additional interest shall accrue pursuant to 31 U.S.C. §3717.

Payment must be made in one of the following ways:

(1) Respondent may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request;

(2) Respondent may make direct payment from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm; or

(3) Respondent may pay by certified check, bank cashier's check, or United States postal money order, made payable to the Securities and Exchange Commission and hand-delivered or mailed to:

>Enterprise Services Center
>Accounts Receivable Branch
>HQ Bldg., Room 181, AMZ-341
>6500 South MacArthur Boulevard
>Oklahoma City, OK 73169

Payments by check or money order must be accompanied by a cover letter identifying Wells Fargo Advisors as a Respondent in these proceedings, and the file number of these proceedings; a copy of the cover letter and check or money order must be sent to Anne C. McKinley, Assistant Director, Division of Enforcement, Securities and Exchange Commission, 175 West Jackson Boulevard, Suite 1450, Chicago, IL 60604.

D.    Amounts ordered to be paid as civil money penalties pursuant to this Order shall be treated as penalties paid to the government for all purposes, including all tax purposes. To preserve the deterrent effect of the civil penalty, Respondent agrees that in any Related Investor Action, it shall not argue that it is entitled to, nor shall it benefit by, offset or reduction of any award of compensatory damages by the amount of any part of Respondent's payment of a civil penalty in this action ("Penalty Offset"). If the court in any Related Investor Action grants such a Penalty Offset, Respondent agrees that it shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the Securities and Exchange Commission. Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this proceeding. For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against Respondent by or on behalf of one or more investors based on substantially the same facts as alleged in the Order instituted by the Commission in this proceeding.

By the Commission.

                                        Brent J. Fields
                                        Secretary