ZACHARY T. CARLYLE
carlylez@sec.gov
TERRY R. MILLER
millerte@sec.gov
SECURITIES AND EXCHANGE COMMISSION
1961 Stout Street, 17th Floor
Denver, Colorado 80294
(303) 844-1000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>- against -<br><br>ALPINE SECURITIES CORPORATION,<br><br>Defendant. | 17-cv-4179-DLC<br><br>ECF CASE |

**PLAINTIFF UNITED STATES SECURITIES AND
EXCHANGE COMMISSION'S REPLY MEMORANDUM IN
SUPPORT OF ITS MOTION TO STRIKE**

i

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................................1

ARGUMENT.........................................................................................................................................2

I.    ALPINE FAILS TO ALLEGE ACTUAL PREJUDICE OR THE ELEMENTS OF ESTOPPEL AND WAIVER..................................................................................................2

II.   ALPINE FAILS TO ALLEGE ACTUAL PREJUDICE OR THE ELEMENTS OF UNCLEAN HANDS...............................................................................................................6

CONCLUSION....................................................................................................................................10

Plaintiff United States Securities and Exchange Commission (the "Commission") submits this Reply in Support of its Motion to Strike (Doc No. 54 "Motion").[1]

## INTRODUCTION

The Commission's Motion explains that the allegations in Alpine's Amended Answer do not fit within the narrow exception to the general rule barring equitable defenses against the government. Motion at 3. This narrow exception rarely applies and requires a defendant to allege misconduct that prejudices its ability to defend the lawsuit and also rises to a constitutional level. *SEC v. KPMG LLP*, 2003 WL 21976733, at *2 (S.D.N.Y. Aug. 20, 2003) (Cote, J.). Alpine does not dispute that the exception to the general bar is narrow and rarely applied in its opposition to the Motion ("Opposition" or "Opp."). Indeed, Alpine ignores the exception entirely and fails to explain any actual prejudice to its defense caused by a constitutional violation. Rather than prejudice to its ability to defend this action, Alpine rests its equitable defenses on the prejudice that will result if the Commission prevails in this action—payment of monetary penalties.

Alpine also fails to allege a constitutional violation or even the elements of each defense. The Opposition is littered with Alpine's (erroneous) beliefs about the Commission's motives and Alpine's speculation of what it might find in discovery. These beliefs and speculation are not enough to get past the rule against equitable defenses. Alpine must allege facts of Commission conduct that supports those beliefs, and the only conduct alleged is that the Commission participated in joint proffer sessions with the DOJ (which is proper and not unusual), filed this action in a venue approved by Congress and the Court within the time allowed by Congress, and seeks remedies approved by Congress. Stripped of the repetitive statements of Alpine's beliefs

---

[1] Citations to the "Motion" refer to the Commission's Memorandum of Law in Support of the Motion (Doc. No. 55).

about motive and its speculation of what it might find in the fishing expedition Alpine seeks in discovery, the allegations in the Amended Answer fail to distinguish Alpine from any other subject of a typical government investigation and enforcement action. These equitable defenses therefore cannot fit within the narrow exception that applies here and should be stricken.

## ARGUMENT

### I. ALPINE FAILS TO ALLEGE ACTUAL PREJUDICE OR THE ELEMENTS OF ESTOPPEL AND WAIVER.

The Opposition misstates the Motion and ignores the narrow window in which it can assert estoppel and waiver defenses against the Commission. Opp. at 15-16. As set forth in the Motion, equitable defenses against the government are available in limited circumstances:

> Where courts have permitted equitable defenses to be raised against the government, they have required that the agency's misconduct be egregious and the resulting prejudice to the defendant rise to a constitutional level.

*SEC v. Elecs. Warehouse, Inc.*, 689 F. Supp. 53, 73 (D. Conn. 1988), *aff'd sub nom. SEC v. Calvo*, 891 F.2d 457 (2d Cir. 1989). Alpine must allege outrageous or unconstitutional conduct during the investigation that prejudiced Alpine's ability to defend the action. *Id.*; *see* Motion at 3; *KPMG LLP*, 2003 WL 21976733, at *2; *see also SEC v. Rosenfeld,* No. 97 CIV. 1467 (RPP), 1997 WL 400131, at *2 (S.D.N.Y. July 16, 1997) ("Without more concrete and specific allegations in the Amended Answer of how defendant's ability to defend himself or defendant's access to witnesses or evidence which would aid in his defense have been compromised by the SEC's actions, defendant will not be permitted to use the affirmative defense to engage in a "fishing expedition" to discover any potential prejudice.").

Accordingly, the Opposition's lengthy analysis about the general availability of equitable defenses and its citations to cases that do not involve defenses asserted against a government entity are beside the point. Opp. at 4-6, 14-16. The fact that Alpine ignores the "narrow window" in which these defenses can be asserted is significant because the Opposition fails to identify any prejudice to Alpine's ability to defend this lawsuit, let alone prejudice caused by a constitutional violation. Instead, the Opposition argues (many times) that the Commission induced Alpine to commit the violations alleged in the Complaint and then delayed filing this lawsuit. Opp. at 16-21. Both of these allegations fail to establish the prejudice required for equitable defenses and the Opposition fails to rebut the Motion's point that Alpine did not (and cannot) adequately allege the elements of the estoppel and waiver defenses. Motion at 4.

First, the Opposition fails because it relies on a misstatement of the Complaint. The Opposition's theory is that the Commission induced Alpine into the misconduct alleged in the Complaint through statements made during an exam by the Commission's Office of Compliance Inspections and Examinations ("OCIE") and also by failing to notify Alpine of the guidance used to interpret the BSA in the Complaint. Opp. at 16-18. The defense therefore necessarily depends on a Complaint claiming that Alpine violated the BSA regulations by following Commission advice based on interpretative guidance kept hidden from Alpine.

No such Complaint exists. Instead, the Complaint claims that Alpine failed to comply with applicable regulations and heed warnings from OCIE and FINRA. Complaint ¶ 22 (FINRA Disposition Letter warned Alpine that its SARS were "substantively inadequate"); ¶ 24 ("OCIE issued Alpine an examination deficiency letter, finding that "the Firm failed to disclose in the SAR narrative … material information that was contained in the Firm's investigative files."); ¶

3

27 ("Despite these repeated warnings, Alpine has failed to adequately remedy the defects in the implementation of its BSA Compliance Program."). Alpine admits that FINRA and OCIE issued the formal letters alleged in the Complaint. Amended Answer ¶ 22 ("...Alpine admits that FINRA conducted an examination of Alpine beginning in about May of 2012 and that FINRA provided an Examination Disposition Letter to Alpine on September 28, 2012...."); ¶ 24 ("…Alpine admits that OCIE issued Alpine a letter….").

Alpine's allegation that an unnamed staff member from OCIE "informed" an unnamed Alpine employee that Alpine was "filing too many SARs" on an unspecified date "during prior regulatory examinations by OCIE" is materially indistinguishable from the statement relied upon by the defendant in *KPMG*. *See* 2003 WL 21976733, at *4, *see* Opp. at 16. Like the alleged statement that Alpine was "filing too many SARs," the statement in *KPMG* that the defendant's accounting methodology covered all necessary issues, *i.e.* the defendant "hit them all," was issued outside of a mechanism available to the defendant through which the defendant could learn the SEC's formal position on a matter. *Id.* Here, the examination deficiency letter was the clear mechanism through which Alpine could reasonably understand the Commission's position. It is also significant here that Alpine identifies no SARs or groups of SARs that (a) the Commission alleges should have been filed; and which (b) Alpine would have filed but for the alleged comment that Alpine was filing "too many SARs." This is especially significant because the only allegations that Alpine failed to file SARs are based on the fact that Alpine *did file* SARs on related deposits. Like the accountants in *KMPG*, Alpine has legal duties that "do not cease once the SEC begins an investigation….[T]he SEC must be able to conduct reasonable

4

investigations without the risk that oral communications such as those alleged here will create a bar to the agency's pursuit of claims." *Id.*

Further, far from the claimed "secret" guidance unknown to Alpine, the Complaint expressly relies on (and often cites) the text of the Bank Secrecy Act ("BSA"), BSA regulations, instructions on SAR forms that Alpine used thousands of times, and publicly available guidance published by FinCEN,[2] which Alpine incorporated into its own BSA Compliance Program. Complaint ¶¶ 2, 3, 11-13, 17-21, 29, 34, 39, 42, 45-47. The Commission could not possibly have concealed these authorities and Alpine even admits that it had access to the same authorities it claims were kept hidden. *See* Amended Answer ¶ 29 ("Alpine admits that it has incorporated guidance from FinCEN into its BSA compliance program."). Although Alpine is entitled to reasonable inferences that can be drawn from factual allegations, Alpine is not entitled to misstate the Complaint to manufacture an estoppel and waiver theory.

Finally, Alpine's argument about delay also fails. Opp. at 19. Delay has nothing to do with the elements necessary to show estoppel or waiver. Motion at 4. Laches is the equitable defense based on delay and is not available against the government in an enforcement action. *SEC v. Toomey*, 866 F. Supp. 719, 725 (S.D.N.Y. 1992) ("A defense of laches has been stricken when the SEC brings an action, as here, to enjoin the defendant from further violations of the securities trading laws."); *see United States v. Angell*, 292 F.3d 333, 338 (2d Cir. 2002) ("[L]aches is not available against the federal government when it undertakes to enforce a public right or protect the public interest."). Alpine cannot evade the rule against equitable defenses

---

[2] *See* https://www.fincen.gov/resources/statutes-regulations/guidance. Exhibit B, attached hereto, describes FinCEN's regulatory releases, including regulations, regulatory interpretations and guidance, advisories, and enforcement assessments and consent assessments, and is available at https://www.fincen.gov/sites/default/files/shared/regrelease.pdf.

based on delay by labeling the defense "estoppel" or "waiver." *See Graham v. S.E.C.*, 222 F.3d 994, 1008 (D.C. Cir. 2000) ("[T]he SEC's failure to prosecute at an earlier stage does not estop the agency from proceeding once it finally accumulated sufficient evidence to do so.").

There is no question of fact or law that would allow the defenses of estoppel and waiver to succeed. They should be stricken.

## II. ALPINE FAILS TO ALLEGE ACTUAL PREJUDICE OR THE ELEMENTS OF UNCLEAN HANDS.

In an attempt to salvage its Nineteenth Defense, Alpine first sets up a strawman by misstating the Motion. Contrary to the Opposition, the Commission does not argue that "unclean hands" defenses can never be asserted against the Government. *See* Opp. at 6 (Alpine's unclean hands defense "is not foreclosed as a matter of law, and should not be struck, simply because it is asserted against a government defendant"). As explained above and in the Motion, the narrow exception to the rule against equitable defenses applies only if Alpine can allege that the Commission engaged in outrageous or unconstitutional activity during the investigation that prejudiced Alpine's ability to defend the action. Motion at 3; Section I, *supra*. With respect to its unclean hands defense, Alpine has failed to satisfy any of these requirements.

The Opposition does nothing to refute the Commission's position that Alpine's factual allegations regarding the "conduct" of the Commission are insufficient to support a finding that the conduct was in any way improper, much less "outrageous or unconstitutional." As an initial matter, Alpine's factual allegations regarding the Commission's conduct primarily focus on actions by the Commission in this action. *See, e.g.*, Amended Answer at 20-23 (the Commission alleged that Alpine facilitated fraud in the Complaint filed *in this action*, Alpine believes the Commission is seeking excessive penalties *in this action*, the Commission selected venue in this

6

district *for this action*.) As set forth in the Motion, even if the Commission engaged in improper conduct in this action (it did not) this conduct could not form the basis for an unclean hands defense as a matter of law. *Elecs. Warehouse, Inc.*, 689 F. Supp. at 73 ("Conduct which occurs during the litigation of a lawsuit, rather than during the accrual of the action, cannot form the basis of an equitable defense."). Alpine does not dispute this point with any contrary authority or argument in its Opposition and fails to explain how the Commission's alleged conduct in this action could support an unclean hands defense. Accordingly, Alpine's allegations regarding the Commission's conduct *in this action* cannot support an unclean hands defense.

Instead of allegations of actual conduct during the investigation, Alpine fills much of its Amended Answer and Opposition with what Alpine (mistakenly) believes is the Commission's intent or motivation in filing this action. Alpine bases these allegations on "information and belief" rather than on allegations of fact. *See, e.g.*, Amended Answer at 20 (Doc. No. 48) (alleging "[u]pon information and belief" that the Commission commenced its enforcement action "in retaliation for" Alpine's involvement in the microcap market, and to "try to force Alpine out of business through excessive regulatory inquiries."); Opp. 9-10 ("Alpine believes, and has thus alleged….Alpine also believes and has alleged…."). Alpine has not alleged any facts indicating that the Commission's motivation in bringing this action is anything other than to enforce the federal securities laws, which cannot be an improper motive. *Bizzarro v. Miranda*, 394 F.3d 82, 87 (2d Cir. 2005). These conclusory allegations, based on speculation, are insufficient to survive a motion to strike. Further, Alpine does not explain in its Opposition how allegations regarding the Commission's purported motivation in bringing this action prejudiced Alpine's ability to defend itself.

7

Alpine's related claim that the Commission engaged in "selective" enforcement also fails. Once again, Alpine misstates the Motion. The Commission does not argue that a claim for selective enforcement can never be asserted against the government,[3] but rather that Alpine has failed to allege facts necessary to support such a claim. *See* Motion at 6 ("Alpine failed to allege facts to support a selective enforcement claim."). A claim of selective application of Section 17(a) requires a showing that

> (1) Alpine "compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person."

*FSK Drug Corp. v. Perales*, 960 F.2d 6, 10 (2d Cir. 1992). Alpine's allegations do not satisfy either element for the reasons set forth in the Motion, and nothing in Alpine's Opposition can save its claim. In its Opposition, Alpine was unable to point to factual allegations that any firm was "similarly situated" but treated differently, *see* Opposition at 11-12, likely for the good reason that the Commission does file actions for violations of Section 17(a) based on SARs. *E.g.*, *In re Wells Fargo Advisors, LLC,* Rel No. 82054 (Nov. 13, 2017). Further, Alpine's argument in its Opposition regarding the second element (intent to harm) is merely a restatement of the conclusory allegations regarding the Commission's alleged intent and fail for the same reasons addressed in the preceding paragraph. In sum, Alpine's allegations are insufficient to support a selective enforcement claim because they fail to meet the required elements.

---

[3] However, a claim based on selective enforcement is one for affirmative relief, rather than an affirmative defense, and cannot be properly asserted in this lawsuit. *See* Motion at 7; *FSK Drug*, 960 F.2d at 10; 15 U.S.C. § 78u(g) (no other actions may be consolidated with an action for equitable relief instituted by the Commission without the Commission's consent).

8

Alpine's unclean hands defense also fails because Alpine has not alleged specific harm to Alpine's ability to defend this action. Alpine identifies two types of purported prejudice: (1) harm to "Alpine's good will and continued operation of its lawful business"; and (2) harm to "Alpine's ability to adequately and sufficiently defend itself against Plaintiff's allegations in this action." Amended Answer at 22. As explained in the Motion, alleged loss of goodwill is "not the kind of 'prejudice' which may be pleaded as an equitable defense to a SEC injunctive action" and mere recitation of the pleading standard is not enough to save the affirmative defense from being stricken. *Elec. Warehouse*, 689 F.Supp 53 at 73. The Opposition does not even attempt to rebut this point. Nor does the Opposition provide any additional argument in support of Alpine's rote recitation of prejudice. It merely insists that Alpine "has a right to conduct discovery" regarding its allegations that will show purported prejudice. Opp. at 10. However, "in an enforcement action like this one, a defendant's pure speculation about potential prejudice is not enough to permit an equitable defense against the SEC to go forward, even at the pleading stage." *SEC v. Am. Growth Funding II, LLC*, No. 16CV00828 (KMW) (DF), 2016 WL 8314623, at *7 (S.D.N.Y. Dec. 30, 2016). Alpine's failure to allege any facts supporting its claim of prejudice is alone dispositive.

Finally, the argument that the Commission and criminal authorities pursued parallel investigations is internally inconsistent and conclusory. Alpine argues based on "information and belief" that (1) the Commission improperly commenced its investigation to help criminal authorities; <u>and</u> (2) improperly attempted to persuade criminal authorities "to pursue a parallel criminal investigation" to help the Commission's case. Opp. at 11-12, 7. The contradictory arguments are unsupported by any actual facts that would support inferences of improper

9

motives. The only actual fact alleged is the existence of parallel investigations. Under Alpine's reasoning, any defendant in an SEC enforcement action involving a parallel criminal investigation could successfully plead an unclean hands defense without alleging any facts indicating improper conduct. This reasoning cannot be reconciled with the narrow exception to the rule barring the defense and established law that it is entirely appropriate for the Commission to conduct parallel investigations with criminal authorities. *See*, e.g., *United States v. Kordel*, 397 U.S. 1, 11 (1970).

This case is distinguishable from *SEC v. Nacchio*, where the defendant asserted specific violations of Fed.R.Crim.Pro. 6(e), which concerned improper disclosures to the SEC of "information and documents in possession of the United States Attorney's Office." 438 F.Supp.2d. 1266, 1287 n.13 (D. Colo. 2006). In contrast, Alpine does not allege specific conduct during the parallel investigations that was both improper and that prejudiced Alpine's ability to defend the action. The allegations in the Amended Answer do not distinguish the instant case from a typical investigation and subsequent enforcement action and, as a result, the unclean hands defense cannot fit into the narrow exception to the rule against equitable defenses.

## CONCLUSION

For the reasons above and those stated in the Motion, the Court should strike Alpine's Sixteenth Defense and Nineteenth Defense without leave to amend.

Respectfully submitted this 22nd day of December, 2017.

/s/ *Terry R. Miller*
Zachary T. Carlyle (*pro hac*)
Terry R. Miller (*pro hac*)
Attorneys for Plaintiff
UNITED STATES SECURITIES AND
EXCHANGE COMMISSION
1961 Stout Street, 17th Floor
Denver, Colorado 80294
(303) 844-1000

**CERTIFICATE OF SERVICE**

I certify that on December 22, 2017, a copy of the foregoing document was served via ECF upon the following:

Brent R. Baker
Aaron D. Lebenta
Jonathan D. Bletzacker
CLYDE SNOW & SESSIONS
One Utah Center, 13th Floor
201 South Main Street
Salt Lake City, Utah 84111-2216

Maranda E. Fritz
Thompson Hine LLP (NYC)
335 Madison Avenue, 12th Floor
New York, NY 10017

*Counsel for Alpine Securities Corporation*

/s/ Marla J. Pinkston
Marla J. Pinkston