# EXHIBIT 6

Remarks by Peter Alvarado, Dep. Dir. of

FinCEN, Sep. 25, 2012



**PREPARED REMARKS OF PETER ALVARADO**
**DEPUTY DIRECTOR**
**FINANCIAL CRIMES ENFORCEMENT NETWORK**

**Federal Financial Institutions Examination Council**
**Advanced BSA/AML Specialists Conference**

ARLINGTON, VA
SEPTEMBER 25, 2012

Today I would like to discuss the purpose and conduct of FinCEN's enforcement program, and how we work with the Federal banking agencies (FBAs) to conduct joint and concurrent enforcement actions, when possible, which in turn ensures a more consistent and uniform approach to Bank Secrecy Act (BSA) enforcement.

Effective enforcement is based on the just and consistent application of the rules and enforcement penalties. Misperceptions about these matters will erode the trust and confidence in our financial system that the BSA seeks to protect. In this regard, FinCEN's general policy is to reserve civil money penalties for significant and/or systemic violations of the BSA. This is a view that I believe the banking industry shares. However, FinCEN also has to look at penalties beyond the banking industry. Increasingly, as FinCEN expands its anti-money laundering/counter-terrorist financing (AML/CFT) regulations to new types of entities that are not historically as highly regulated as banks, I expect that enforcement actions will increasingly become a part of the regulatory framework.

My objective today is to go behind the penalty actions and provide a better understanding of FinCEN's enforcement program. I will outline the statutory and policy basis of our enforcement program and the procedures we follow in determining whether a particular case warrants an enforcement action. I will also discuss global enforcement actions with other stakeholder government agencies. In so doing, I hope to give you a better understanding of FinCEN's future in terms of compliance and enforcement.

FinCEN's primary purpose is to collect, analyze, and disseminate relevant financial information with a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings or in the conduct of intelligence or counterintelligence activities related to terrorism. Our enforcement responsibilities are invoked when a financial institution exhibits a systemic breakdown in BSA compliance that results in a vulnerability to abuse and/or failures to provide law enforcement and regulatory authorities with valuable information by way of currency transaction, suspicious activity, and other reports and records required by the BSA.

The overarching goal of FinCEN in the conduct of its enforcement program is to ensure BSA compliance, on a national basis, to make financial institutions hostile to abuse by criminal actors and to preserve the flow of valuable information to appropriate authorities and assist in the detection, investigation, and prosecution of money laundering, terrorist financing, and other financial crimes. While financial institutions that violate the law should be held accountable, as appropriate and warranted, we do not pursue enforcement actions against financial institutions for minor technical, isolated failures to comply with the BSA.

To determine whether to impose a monetary penalty, FinCEN's Office of Enforcement evaluates many factors including the volume, severity, types, time span, repetitiveness and nature of the violations. We also consider the comprehensive nature and timeliness of any corrective action undertaken by the institution, and whether the violations were self-discovered, or discovered by regulatory examination or law enforcement investigation.

Whether the institution is subject to other supervisory or law enforcement actions may also influence our final disposition of a case.

For example, in global proceedings with the FBAs and/or U.S. Department of Justice, FinCEN views the case in an aggregate context incorporating other penalties and mandates for remedial actions into our final penalty calculations. In addition, we consider the likely economic consequences of our enforcement action. In assessing these factors, the Office of Enforcement weighs the full body of evidence to arrive at a reasonable, fair and equitable resolution of the case.

Monetary penalties are necessary and justified when a financial institution violates the BSA in ways that enable abuse of the financial system. Under the risk-based approach to BSA compliance, FinCEN does not expect that banks will develop anti-money laundering programs meeting an unnecessary and arbitrarily high standard.

Nonetheless, we must continue to ensure that anti-money laundering programs are designed and implemented in a manner to avoid facilitation of illicit financial activity. An effective enforcement program, applied justly and consistently, will deter actions or omissions in contravention of law, and thereby promote more consistent compliance across financial institutions that is necessary to safeguard the integrity of the financial system as a whole.

FinCEN fully recognizes that anti-money laundering programs should be tailored to the unique risk profiles of individual banks, and that even a reasonably designed compliance program will occasionally suffer from minor and isolated compliance deficiencies. Good faith efforts to establish, implement, and maintain a sound BSA compliance program and to prevent money laundering and terrorist financing are considered as to whether penalties will be assessed.

The process begins when the Office of Enforcement issues a charging letter describing in detail the facts of the case and the nature of the BSA violations. The letter also invites a response from the financial institution with any information relevant to whether a civil money penalty is warranted for the alleged violations. The Office of Enforcement will review the institution's response, engage in settlement negotiations, and determine whether a penalty is warranted.

In matters involving joint or concurrent enforcement actions, the civil money penalties are assessed by FinCEN, the primary Federal regulatory agency, and any state regulatory agencies involved in the enforcement action. FinCEN's share of the civil money penalties are deposited into the Department of the Treasury's General Fund and not retained by FinCEN for any purposes.

Civil money penalties assessed by the FBAs, under Title 12 for BSA based violations, are also sent to the General Fund at Treasury. As evidenced by our past cases, FinCEN can deem its portion of the penalty as satisfied by penalties imposed by other Federal or state regulatory agencies, or penalties and forfeitures by the U.S. Department of Justice. As stated previously, this approach allows FinCEN to view the final disposition of matters in an aggregate and complete context.

### *Partnership with the Federal Banking Agencies*

Whenever possible, FinCEN and the regulators seek to conduct joint and concurrent enforcement actions, as warranted, against financial institutions that violate the BSA. FinCEN retains authority to take enforcement actions for violations of the BSA found by the regulatory agencies acting under delegated authority. As you know, the FBAs retain separate authority to conduct enforcement actions, such as cease and desist proceedings for unsafe or unsound practices or violations of law, rule, or regulation.

While FinCEN and the FBAs operate under distinct jurisdictional authorities, we have built an infrastructure that fosters close collaboration on BSA enforcement matters. As a result, we are normally able to proceed jointly and concurrently, as warranted, to better ensure a consistent and uniform approach to BSA enforcement.

Since January 1, 2005, 58 percent of civil money penalty cases undertaken at FinCEN have involved joint or concurrent penalty actions with other stakeholder Federal or state agencies, including the U.S. Department of Justice. A vast majority of the penalty actions not concluded jointly involved non-bank financial institutions, particularly casinos and money services businesses, for which FinCEN retains exclusive regulatory penalty authority. This will increase as we have taken on new industries and existing non-bank industries continue to expand.

The conduct of interagency collaboration and information sharing in addressing violations of the BSA is initially the responsibility of FinCEN's Office of Compliance. Congress amended the BSA to mandate the formation of the Office of Compliance. The Office of Compliance was established in the later part of 2004, and continues to strengthen relationships and communication with our Federal and state regulatory partners under the MOUs.

Moreover, the Office of Compliance conducts the initial review of BSA violations, in collaboration with your agencies. Under the terms of the MOUs, when an agency determines through the examination process that a financial institution has exhibited significant BSA violations or deficiencies, it will refer the case to FinCEN for parallel review. The Office of Compliance may also develop cases through self-disclosure by an institution or through review of BSA data. In each instance, the Office of Compliance will use the information provided by your agencies and from other sources to assess the severity of the unique noncompliance issues in each case.

I'd now like to take a few minutes to provide some examples of how we've collaborated on an interagency basis by discussing concurrent enforcement actions we've taken with various Federal banking agencies.

*Federal Deposit Insurance Corporation (FDIC)*

Along with the FDIC and Florida's Office of Financial Regulation (OFR), in August 2011, FinCEN assessed concurrent civil money penalties of $10.9 million against Ocean Bank, Miami, Florida, for violations of Federal and state BSA/AML laws and regulations. Ocean Bank, without admitting or denying the allegations, consented to payment of the civil money penalties, satisfied by a single payment to the U.S. Government. FinCEN, the FDIC, and the OFR determined that the bank failed to implement an effective BSA/AML compliance program with internal controls reasonably designed to detect and report money laundering and other suspicious activity in a timely manner. The bank failed to conduct adequate independent testing, particularly with respect to SAR requirements. In addition, the bank failed to sufficiently staff the BSA compliance function with appropriately trained staff to ensure compliance with BSA requirements.

*Office of the Comptroller of the Currency (OCC)*

In March 2010, FinCEN announced the assessment of a civil money penalty in the amount of $110 million against Wachovia Bank. The action represents the largest penalty action to date against a financial institution by FinCEN for violations of the BSA. The investigation and resulting civil money penalty was part of a coordinated effort with the U.S. Attorney's Office for the Southern District of Florida, the OCC, the Drug Enforcement Administration (DEA), and the Internal Revenue Service-Criminal Investigation division (IRS-CI). A joint investigation determined that from 2004 to 2008, Wachovia violated AML program requirements, suspicious activity reporting requirements, and Section 312 of the USA PATRIOT Act. Wachovia failed to implement an effective AML program reasonably designed to identify and report transactions that exhibited indicia of money laundering or other suspicious activity, considering the types of products and services offered by the Bank, the volume and scope of its business, and the nature of its customers. As a result, Wachovia failed to timely file thousands of SARs and CTRs, thus greatly diminishing the value of the reports to law enforcement and regulatory agencies.

*Federal Reserve Board*

In 2007, FinCEN and the Board of Governors of the Federal Reserve System concurrently assessed $20 million in civil money penalties against American Express Bank International (AEBI) of Miami, Florida, for repeated failure, over the course of several years, to adequately respond to certain supervisory findings with respect to the effectiveness of the account monitoring controls to ensure compliance with the Bank Secrecy Act. FinCEN also determined that AEBI failed to implement adequate internal controls, failed to conduct adequate independent testing and failed to designate compliance personnel to ensure compliance with the Bank Secrecy Act. FinCEN imposed a separate $5 million civil money penalty against American Express Travel Related Services, Inc., a money services business located in Salt Lake City, Utah, for its violations of the Bank Secrecy Act. The orders were part of action coordinated with the U.S. Department of Justice.

**Concluding Remarks**

Historically, most BSA enforcement actions have been civil in nature. More recently, as I just discussed, several significant cases have involved concurrent civil and criminal actions by FinCEN, the FBAs, and the U.S. Department of Justice. The U.S. financial system remains an attractive vehicle for money launderers and other illicit actors, and when financial institutions willfully violate the BSA, a combination of civil and criminal enforcement actions may be the appropriate response by the government. Whenever possible, we strive to coordinate civil and criminal enforcement actions to avoid multiple government actions against the same financial institution at different times for the same or related conduct.

While the decision and the responsibility to institute criminal actions for BSA violations rest exclusively with the U.S. Department of Justice, when concurrent civil and criminal actions against a financial institution are contemplated, the U.S. Department of Justice, FinCEN, and the appropriate FBA will collaborate on potential civil or criminal charges under our respective jurisdictions, including the collateral consequences of a prosecution and the appropriateness of civil and/or criminal remedies by the U.S. Government.

In the conduct of our enforcement program, FinCEN seeks to strike an important balance. We view BSA compliance as a matter of national security in the context of combating money laundering and terrorist financing. FinCEN strives to never lose sight of the broader goal that Congress intended – the co-dependent and value added nature of the partnership between the government and the financial industry to fight crime. Neither of us can afford to let the other partner down. However, it is incumbent upon us to ensure the financial industry remains vigilant and complies with the government's expectations when it comes to BSA/AML and related obligations.

###