# Exhibit 13

# Notice to Members

**AUGUST 2002**

SUGGESTED ROUTING

Legal and Compliance
Operations
Registration
Senior Management

KEY TOPICS

Money Laundering
Suspicious Activity Reporting

INFORMATIONAL

## Anti-Money Laundering

Treasury Issues Final Suspicious Activity Reporting Rule for Broker/Dealers; **Effective Date: Transactions After December 30, 2002**

Draft Form SAR-SF; **Comments Requested by October 4, 2002**

### Executive Summary

On October 26, 2001, President Bush signed into law the USA PATRIOT Act (Patriot Act).[1] Title III of the Patriot Act, entitled "International Money Laundering Abatement and Anti-Terrorist Financing Act of 2001," added new provisions to the Bank Secrecy Act (BSA).[2]

Section 356 of Title III of the Patriot Act required the Department of the Treasury (Treasury), in consultation with the Securities and Exchange Commission (SEC) and the Board of Governors of the Federal Reserve System, to issue rules requiring broker/dealers to file suspicious activity reports (SARs) with the Financial Crimes Enforcement Network (FinCEN), a bureau of Treasury. On July 1, 2002, Treasury published in the *Federal Register* its final rules requiring broker/dealers in securities to file reports that identify and describe transactions that raise suspicions of illegal activity.[3] The requirement to file SARs applies to transactions occurring after December 30, 2002.[4]

Specifically, the final rule requires broker/dealers to report to FinCEN any transaction that, alone or in the aggregate, involves at least $5,000 in funds or other assets, if the broker/dealer knows, suspects, or has reason to suspect that it falls within one of four classes: (1) the transaction involves funds derived from illegal activity or is intended or conducted to hide or disguise funds or assets derived from illegal activity; (2) the transaction is designed, whether through structuring or other means, to evade the requirements of the BSA; (3) the transaction appears to serve no business or apparent lawful purpose or is not the sort of transaction in which the particular customer would be expected to engage and

for which the broker/dealer knows of no reasonable explanation after examining the available facts; or (4) the transaction involves the use of the broker/dealer to facilitate criminal activity.

This *Notice to Members* provides a brief overview of the key provisions of the rule.

Treasury also published, in draft, a new form, "Suspicious Activity Report by the Securities and Futures Industry" (SAR-SF).[5] While Treasury's final SAR rule indicated that it was developing a suspicious activity reporting form for broker/dealers entitled "Suspicious Activity Report – Brokers or Dealers in Securities" (SAR-BD), Treasury has indicated that the Form could also be used by futures commission merchants (FCMs) registered with the Commodity Futures Trading Commission (CFTC). Accordingly, the draft Form has been revised from SAR-BD to SAR-SF and several fields have been provided on the Form for use by FCMs. Treasury requests comment on draft Form SAR-SF by October 4, 2002.

## Questions/Further Information

Questions regarding this *Notice* may be directed to Vicky Berberi-Doumar, Department of Member Regulation, NASD Regulatory Policy and Oversight, at (202) 728-8905, or to Grace Yeh, Office of General Counsel, NASD Regulatory Policy and Oversight, at (202) 728-6939.

## Discussion

### Background

The Patriot Act was enacted to, among other things, deter and punish terrorist acts in the United States and around the world, and to enhance law enforcement investigatory tools. Title III of the Patriot Act — The Money Laundering Abatement Act — imposes significant new obligations on broker/dealers through new anti-money laundering (AML) provisions and amendments to the existing provisions of the BSA.

Among these obligations, broker/dealers are required to have in place as of April 24, 2002, an AML compliance program. NASD Rule 3011, which was approved by the SEC on April 22, 2002, requires that each member develop and implement, by April 24, 2002, a written AML program reasonably designed to achieve and monitor the member's compliance with the requirements of the BSA and the implementing regulations promulgated thereunder by the Treasury, including the obligation to report suspicious activities as set forth in the final SAR Rule. In addition to this *Notice*, members may also refer to *Notice to Members 02-21* (April 2002), which provides guidance to members regarding the development of AML programs and the requirement to report suspicious transactions.

### Suspicious Activities Reporting Requirements

Pursuant to the final rule,[6] a broker/dealer must report a transaction on Form SAR-SF if (a) the transaction is conducted or attempted by, at, or through a broker/dealer, (b) it involves or aggregates funds or other assets of at least $5,000, and (c) the broker/dealer knows, suspects, or has reason to suspect that the transaction (or a pattern of transactions of which the transaction is a part):

1. involves funds derived from illegal activity or is intended or conducted to hide or disguise funds or assets derived from illegal activity;

2. is designed, whether through structuring or other means, to evade the requirements of the BSA;

3. appears to serve no business or apparent lawful purpose or is not the sort of transactions in which the particular customer would be expected to engage and for which the broker/dealer knows of no reasonable explanation after examining the available facts; or

4. involves use of the broker/dealer to facilitate criminal activity.

FinCEN's rule is not limited only to individual transactions, but extends to patterns of transactions. In its release adopting the final rule, FinCEN explicitly clarifies that "if a broker/dealer determines that a series of transactions that would not independently trigger the suspicion of the broker/dealer, but that taken together, form a suspicious pattern of activity, the broker/dealer must file a suspicious transaction report."[7]

The release refers to the "red flags" section of *NASD Notice to Members (NtM) 02-21*[8] to help determine whether a transaction "appears to serve no business or apparent lawful purpose or is not the sort of transactions in which the particular customer would be expected to engage and for which the broker/dealer knows of no reasonable explanation after examining the available facts."[9] The release states that broker/dealers should determine whether activities vary substantially from normal practice as to raise suspicions of possible illegality by looking for red flags such as those enumerated in *NtM 02-21*.

Finally, as noted above, the rule requires broker/dealers to disclose transactions that "involves use of the broker/dealer to facilitate criminal activity."[10] The release notes that disclosure under this provision is intended to detect activities that appear to have a criminal purpose but apparently involve legally derived funds.

Disclosure protects broker/dealers from being potential or actual victims of criminal violations, or being used to facilitate criminal transactions.

**Exceptions from Reporting**

The rule contains exceptions from reporting violations otherwise reported to various law enforcement authorities, such as: (1) a robbery or burglary that is reported by the broker/dealer to appropriate law enforcement authorities; (2) lost, missing, counterfeit, or stolen securities that are reported by the broker/dealer pursuant to Rule 17f-1 under the Securities Exchange Act of 1934 (Exchange Act); and (3) a violation of the federal securities laws or rules of a self-regulatory organization (SRO) by the broker/dealer, its officers, directors, employees, or registered representatives, that are reported appropriately to the SEC or an SRO, except for a violation of Exchange Act Rule 17a-8, which must be reported on Form SAR-SF.[11]

**Who Must File**

Each broker/dealer involved in a transaction has an independent obligation to monitor for, identify and report suspicious activities. When more than one broker/dealer is involved in a transaction, only one Form SAR-SF is required to be filed, provided the report includes all relevant information. The release uses as an example an introducing and clearing broker, and clarifies that the two broker/dealers may provide each other with copies of the Form SAR-SF that was filed, as well as the underlying documentation.

It is important to note that the release specifies that if the Form SAR-SF relates to the other broker/dealer, then the broker/dealer making the filing is prohibited

from notifying the other broker/dealer that a Form SAR-SF has been filed.

In response to several commenters requesting clarification on the application of the rule to certain types of broker/dealers, the final rule provides that the broker/dealer SAR requirements will not apply to dual registrants (persons registered both with the CFTC as an FCM and with the SEC as a broker/dealer) to the extent their activities are subject to the exclusive jurisdiction of the CFTC, or to broker/dealers registered with the SEC but located outside the United States. However, the final rule will apply to persons registered as a broker/dealer solely to sell variable annuity contracts issued by life insurance companies.

### Confidentiality of SAR-SF Filings

The rule also requires that the filing of a Form SAR-SF report must remain confidential. The person involved in the transaction that is subject of the report must not be notified of the Form SAR-SF. In other words, if subpoenaed, the broker/dealer must refuse to provide the information and notify FinCEN of the request, unless the disclosure is required by FinCEN, the SEC, an SRO or other law enforcement authority. Where two or more broker/dealers are filing one Form SAR-SF, the confidentiality provisions apply equally to each broker/dealer participating in a transaction, and not only the broker/dealer that filed the Form SAR-SF.

### Filing Procedures

Broker/dealers must file Form SAR-SF within 30 days of becoming aware of the suspicious transaction. If the broker/dealer is unable to identify a suspect, the rule provides an extra 30 days for filing the Form SAR-SF. The Form SAR-SF must be filed within 60 calendar days of initial detection, whether or not the broker/dealer can identify the suspect.

In addition, the rule requires broker/dealers to immediately notify by telephone an appropriate law enforcement authority in situations that require immediate attention, such as terrorist financing or ongoing money laundering schemes, and reminds brokers that they can also report suspicious transactions that may relate to terrorist activity to FinCEN's Financial Institutions Hotline (1-866-556-3974). In both cases, broker/dealers are still required to file a timely Form SAR-SF.

### Record Keeping

Broker/dealers must maintain copies of filed Form SAR-SFs and the original related documentation for five years from the date of the filing. Broker/dealers must make the records available to FinCEN as well as to other appropriate law enforcement agencies, federal or state securities regulators, and SROs registered with the SEC.

The rule also requires a broker/dealer to keep records when relying on the rule's exception from reporting, in case FinCEN requests such information.

### Form SAR-SF: Request for Comments

As mentioned above, Treasury published draft Form SAR-SF for comments. Treasury has specifically requested that the form not be used until a final version is made available. The draft form contains detailed instructions and guidelines on how to present the information and what to include in order to maximize the benefits of the information to the authorities. Treasury requests comments

on, among other things, whether the collection of information is necessary for the proper performance of the functions of the Treasury, and ways to enhance the quality, utility, and clarity of the information to be collected. Treasury also requests comments on the estimated burden of collecting the information, ways to minimize the burden, and estimates of start-up costs and costs of operation, maintenance, and purchase of services to provide information. Comments should be submitted to FinCEN by October 4, 2002.

## Endnotes

1. Public Law 107-56.
2. 31 U.S.C. 5311, et seq.
3. 67 Fed. Reg. 44048 (July 1, 2002) (http://www.treas.gov/fincen/brokersdealersarjuly2002.pdf).
4. Broker/dealers that are affiliates or subsidiaries of banks or bank holding companies must continue to file SARs with FinCEN pursuant to existing BSA reporting and recordkeeping requirements until December 30, 2002. After December 30, 2002, these broker/dealers will have to use the new Form SAR-SF.
5. 67 Fed. Reg. 50751 (Aug. 5, 2002) (http://www.treas.gov/fincen/fedreg08052002.pdf).
6. 31 CFR 103.19(a)(2).
7. The release also clarifies that the rule is not intended to require broker/dealers to review every transaction that exceeds the reporting threshold. The rule is intended to encourage broker/dealers to evaluate customer activities and relationships and design an appropriate monitoring program; the release suggests that firms use a "risk-based approach" in monitoring for suspicious transactions.
8. NtM 02-21, NASD Provides Guidance To Member Firms Concerning Anti-Money Laundering Compliance Programs Required By Federal Law.
9. 31 C.F.R. 103.19(a)(2)(iii).
10. 31 C.F.R. 103.19(a)(2)(iv).
11. The release clarifies that if a broker/dealer does not report a securities violation to the SEC or an SRO because the SEC regulations or SRO rules do not require reporting of such violation, the broker/dealer must nevertheless file a Form SAR-BD to report the violation if otherwise required to be reported under the final SAR Rule.

© 2002. NASD. All rights reserved. Notices to Members attempt to present information to readers in a format that is easily understandable. However, please be aware that, in case of any misunderstanding, the rule language prevails.