# Exhibit 19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　Plaintiff,<br><br>v.<br><br>ALPINE SECURITIES CORPORATION,<br><br>　　　　Defendant. | Civil No. 1:17-CV-04179-DLC<br><br>Honorable Judge Denise L. Cote<br>Magistrate Judge Ronald L. Ellis |

## DECLARATION OF RANDALL D. JONES

I, Randall D. Jones, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury under the laws of the United States of America that the following statements are true and correct:

1. My name is Randall D. Jones and I am a resident of the State of Maine, am over 18 years of age, and make the statements herein based on my personal knowledge.

2. I am currently employed at Alpine Securities Corporation ("**Alpine**"), the Defendant in the above-entitled matter, as the Sales and Trading Manager.

3. Previously, I was employed at Alpine as the anti-money laundering ("**AML**") officer from March 2012 until around July of 2012.

4. I am familiar with Alpine's AML policies and procedures as specified in Alpine's Written Supervisory Procedures Manuals ("**WSPs**").

5. I am familiar with AML rules, laws, regulations, and industry guidance.

6. I am familiar with the above-entitled action and the Securities and Exchange Commission's ("**SEC**") allegations against Alpine regarding Alpine's AML program, including its AML policies and procedures regarding record keeping and reporting requirements in

1

compliance with the Bank Secrecy Act ("**BSA**").

### *SEC's Claim of Late Filed SARs*

7. Specifically, I have reviewed the SEC's submission of five Suspicious Activity Reports ("**SARs**"), identified as Exhibits 58-62 ("**Subject SARs**"), in the SEC's Motion for Partial Summary Judgment. *See* SEC's SOF, No. 66, Dkt. 75 (each SAR is attached to the SEC's SOF and not reattached to this Declaration in order to not duplicate the production of these highly sensitive and confidential documents filed under seal by the SEC). The SEC alleges that the subject SARs were filed untimely.

8. My name is listed as the "Contact for Assistance" on Part V of each of the Subject SARs.

9. The Subject SARs involved transactions which occurred at Alpine during September of 2011, and SARs were filed on each of the transactions between April 30, 2012 and May 7, 2012.

10. During the period in question (September, 2011), and through March, 2012, Elisha Werner was the AML Officer for Alpine and was responsible for the filing of SARs, including the Subject SARs.

11. Elisha Werner left Alpine in March of 2012 and I became the AML Officer at that time.

12. In light of Ms. Werner's exit from Alpine, and because she was the AML Officer for a very brief period of time, Alpine decided to review transactions which occurred during her time as the AML Officer. Alpine employees engaged in a "look-back" of the transactions during Ms. Werner tenure as the AML Officer, including the five sample transactions at issue in the SEC's Motion for Partial Summary Judgment, to determine whether any of those transactions

2

warranted the filing of a SAR filing.

13. Around this time (early 2012), FINRA communicated to Alpine that the firm should provide additional scrutiny and file SARs on large transactions involving low-priced securities.

14. Based on Alpine's review of the transactions that had occurred during Ms. Werner tenure as the AML Officer, Alpine did not find any transactions that Ms. Werner had identified as suspicious or earmarked for a SAR filing.

15. Although I did not necessarily agree that the transactions involving large deposits of low-priced securities were suspicious within the meaning of the regulation, in light of FINRA's comments, I specifically focused on transactions involving large deposits of low-priced securities. Because of the communication from FINRA, I determined to file SARs on transactions involving large deposits of low-priced securities.

16. Each of the Subject SARs states in the narrative that the deposit included a large quantity of a low-priced security. In addition, the Subject SARs state that "[d]ue to the activity within this account, it has been placed on a Heightened Supervisory list. It is policy of Alpine to file a SAR[] related to each deposit of securities into accounts of this nature." *See* SEC's SOF, No. 66, Exs. 58-59 and 62, Dkt. 75 (Ex. 58 omits the phrase "of this nature" after the foregoing cited language).

17. Each of the Subject SARs was filed within 30 days of when I determined to file in accordance with FINRA's communications that a SAR should be filed on transactions involving low-priced securities.

*18.* I did not conclude that the transactions were "suspicious" within the meaning of the BSA and so did not include in the narrative a reason for that conclusion.

3

### *SEC's Claim that SARs Filed on Deposits Must also be Filed on Later Liquidations*

19. I have reviewed the SEC's charts showing deposits and liquidations for "Customer A", "Customer B" and "Customer C" listed as SEC's Statement of Facts, Numbers 63-65, which was submitted with the SEC's Motion for Partial Summary Judgment. I have also reviewed the SARs referenced in the SEC's charts identified as Exhibits 43-57.

20. The SEC's charts for "Customer A", "Customer B", and "Customer C" purport to show multiple deposits of stocks and multiple liquidations of that same stock from the same customer.

21. The SEC's cited charts were not prepared by Alpine.

22. As a clearing firm, Alpine aggregates deposits, by journal entry, by stock-type (ticker symbol) within each introduced brokerage account. Alpine does, however, keep records of each stock deposit, and can determine the date and number of shares deposited into a particular introduced account.

23. As a result of its aggregation, however, where there are multiple deposits into the same introduced account of the same stock-symbol, one cannot determine which sales transactions relate to which stock deposit solely by looking at the sales-transaction history. For example, if there are three deposits of 1,000 shares each of stock symbol XYZ into account for "introduced client A," they would be aggregated within the account as 3,000 shares of stock symbol XYZ. If introduced client A thereafter sells 1,500 shares of XYZ, Alpine cannot determine the specific deposit to which those shares relate, particularly by looking only at sales or trade data for the customer.

4

5

WHEREFORE, I declare under penalty of perjury that the foregoing is true and correct.

DATED this 19th day of January, 2018.


                                          /s / Randall D. Jones
                                          Randall D. Jones
                                          *[electronically signed with permission]*