# Exhibit 22



FINRA
Financial Industry Regulatory Authority

Examination Number: 20120302314
September 28, 2012

**Report on the Examination of**

**ALPINE SECURITIES CORPORATION**

**SALT LAKE CITY, UTAH**

We have recently completed the Financial/Operational and Sales Practice examination of your firm. Our examination is not an audit and is not designed to be a substitute for management's responsibility to comply with appropriate securities rules and regulations.

The examination included reviews of the following regulatory areas:

- Net Capital
- Operations
- Organization and Internal Controls
- Reserve Formula
- Sales Practice
- Underwriting

## Exceptions:

### 1. Exception:

The member organization was not in compliance with SEA Rule 15c3-3 (Exhibit A - Item 10) (Customer Debit Balances) as elaborated in NASD Notice to Members 98-99 (Proprietary Accounts of Introducing Broker/Dealers).

**Detail:**

A review of the firm's PAIB computation as of November 30, 2011 disclosed that the firm improperly included a $53,219 debit for the allocation of its NSCC clearing deposit to its correspondents. Further review of this debit disclosed that the firm based its allocation methodology of its clearing deposit on both the proprietary and customer activity of its correspondents. The firm should have only allocated the deposit based on the proprietary activity of its correspondents. Excluding this erroneous debit from the firm's PAIB computation resulted in nine hindsight deficiencies for the period January 1, 2011 through December 31, 2011 in

**Financial Industry Regulatory Authority**

amounts ranging from approximately $11,000 to $65,450. The firm filed a PAIB deficiency notice with the SEC and FINRA on May 9th, 2012.

2. <u>**Exception:**</u>

The member organization was not in compliance with FINRA Rule 11810(i)(4) ("Close-Out" Under Uniform Practice Code Committee Rulings) and NASD Rule 3010(a) (Supervisory System).

<u>**Detail:**</u>

A review of the firm's processes for delivering customer securities sold ex-CNS disclosed that in certain instances, the firm will reestablish a position in the customer's account where it failed to deliver the security and was subsequently "bought in". Specifically, the firm will on occasion, based on the expertise of the broker, intentionally fail to deliver customer securities sold broker-to-broker until the entire position is sold to save the customer transfer fees. However, if the contra-broker "buys in" the firm, the firm places the position back in the customer's account, subjecting the customer to the gains or losses incurred during the settlement period.

3. <u>**Exception:**</u>

The member organization was not in compliance with NASD Rule 3010 (Supervision) and FINRA Rule 2010 (Standards of Commercial Honor and Principles of Trade), as elaborated in FINRA Regulatory Notice 10-57 (Funding and Liquidity Risk Management Practices).

<u>**Detail:**</u>

A review of the firm's funding and liquidity processes noted instances in which the firm may be unable to meet its funding needs, specifically its NSCC deposit requirement, with its present funding resources. Currently, the firm does not maintain any available lines of credit and solely relies upon cash deposits from the owner, John Hurry, for contingent funding purposes, although a formal lending agreement is not maintained. When the owner deposits funds they are classified as a non-customer payable. The monies are utilized for the firm's funding needs however they are not classified as capital contributions.

Deposits from Hurry:
- Deposited $2 Million on September 2nd, 2011. Funds withdrawn on September 7th, 2011. The funds were held for two business days and utilized as a cushion for a large NSCC deposit requirement that occurred prior to the withdrawal of funds.

- Deposited $1 Million on October 3rd, 2011. Funds withdrawn on October 10th, 2011. The funds were held for six business days and utilized as a cushion for a large NSCC deposit requirement and a reserve formula cushion.

Confidential

ALPINE_LIT167427



FINRA™
Financial Industry Regulatory Authority

4.  **Exception:**

The member organization was not in compliance with SEA Rule 15c3-3 (Exhibit A - Item 10) (Customer Debit Balances) and NASD Rule 3010(a) (Supervisory System).

**Detail:**

A review of the firm's Customer Reserve Formula Computations for the period September 1, 2011 through November 30, 2011 disclosed that the firm failed to review customer debits for appropriateness, when it is required to compute weekly computations. The firm maintains month-end controls to ensure that certain types of potentially disallowable debits, specifically prepayments to money market sweep customers and pre-settlement withdrawals, would be excluded in its monthly reserve computation. However, since the firm does engage in prepayments to money market sweep customers and pre-settlement withdrawals intra-month, it includes all of these debits when it is required to perform weekly computations. A review of four debits in the firm's customer reserve formula computation as of October 7, 2012 disclosed that two of them stemmed from pre-settlement withdrawals.

5.  **Exception:**

The member organization was not in compliance with NASD Rule 3010(b) (Written Procedures).

**Detail:**

The firm failed to maintain written supervisory procedures for vetting and performing periodic reviews of its correspondents. A review of the firm's processes for reviewing the financial strength of its correspondents disclosed that the firm's procedures were adequate. These included but were not limited to a review of each correspondent's annual audit report and at least a quarterly review of financial statements. However, the firm failed to maintain these procedures in writing.

6.  **Exception:**

The member organization was not in compliance with FINRA Rule 3310 (a) (Suspicious Activity Reporting Compliance), 31 CFR 1023.320(a), and 31 CFR 1023. 320(b)(3) (Reports by B-Ds in Securities of Suspicious Transaction).

**Detail:**

The firm filed 823 Suspicious Activity Reports (SARS) during the review period (March 7, 2011 – January 22, 2012). However, it did not file any such reports for the two month period, March 1, 2011 through May 10, 2011 and for the four month period, August 16, 2011 – December 19,

ALPINE_LIT167428



**FINRA**
Financial Industry Regulatory Authority

2011. During this time frame, the firm's business model was consistent, therefore it would appear that the firm did not follow its procedures or otherwise comply with the Rules.

James Walker was the person responsible for filing SARS until April 30, 2011. As stated by the firm in an email, Todd Groskreutz (CCO) noted that Walker had numerous conversations with different regulators and all indicated that Alpine Securities was filing too many SARS. Consequently, he reexamined the thresholds that the firm established and more closely examined the criteria outlined on the SARS report to determine what he felt should be filed. If none were filed during March 1, 2011 – May 10, 2011, it would have been because his review indicated that nothing needed to be filed based on his analysis and criteria.

Based upon customer activity of the firm and subsequent SAR filings, it appears that the thresholds established by Walker were inadequate:

For the four month period, August 16, 2011 – December 19, 2011, Staff was informed by Groskreutz that he was unaware at the time that no SARS were being filed by the person responsible for the filings, Elisha Werner. When he became aware of this fact, Werner informed him that these filings were discretionary and subjective and therefore she did not file any.

Once Groskreutz became aware of the fact of Werner not filing any SARS, the firm subsequently made the filings. However, the person responsible for filing the SARS had previously been aware of thee activity, but had determined not to make any filings. Therefore, these filings were all late filings as the SAR should have to be filed no later than 30 calendar days after the initial detection of the suspicious activity.

Based on the foregoing, it appears that the firm failed to establish and enforce procedures reasonably designed to detect and report suspicious activity.

7. **Exception:**

The member organization was not in compliance with 31 CFR 1023.320 (a)(1) (Reports by B-Ds in securities of suspicious transactions - When to file).

**Detail:**

During the period of March 7, 2011 through January 22, 2012, the firm's Suspicious Activity Report ("SAR") log had approximately 823 entries.

The narratives for all SARs reviewed were substantively inadequate as they failed to fully describe why the activity was suspicious. For the SARs reviewed, the narrative just described isolated events of activity without any detail or support of why the firm actually considered the activity to be suspicious and therefore failing to justify at the basic core the legitimacy of the SAR filing.

ALPINE_LIT167429



Financial Industry Regulatory Authority

The two basic formats or templates used by the firm, neither of which were substantively adequate as they failed to fully describe why the activity was suspicious:

1. On or around December 09, 2011 ABC LLC deposited a large quantity (40,000,000 shares) of XYZ Corp, a low-priced ($0.0001/share) security. (This format was utilized in 559 instances)

2. ABC Inc. is a client of ACAP Financial, a firm for which Alpine Securities provides securities clearing services. Due to the activity within this account, it has been placed on a Heightened Supervisory list. It is policy of Alpine to file a SARs related to each deposit of securities into accounts of this nature. On or around 12/23/2011, ABC Inc. deposited a large quantity (5,097,312) of XYZ Corp, a low-priced ($.0045 /share) security. This transaction amounted to approximately $22,938.00. (This format was utilized in 264 instances)

8. **Exception:**

The member organization was not in compliance with 31 CFR 1010.520 (Information sharing between Federal law enforcement agencies and financial institutions).

**Detail:**

The firm did not review any 314(a) requests from FinCEN during the time period May 16, 2011 – January 19, 2012. (16 weeks). Additionally, from April 19, 2011 – May 3, 2011, the reviews were not verified. (Two weeks)

9. **Exception:**

The member organization was not in compliance with FINRA Rule 3310(c) (Testing of AML Compliance Program).

**Detail:**

The 2011 AML audit conducted by Jensen & Keddington, P.C .did not appear adequate as it failed to identify the firm lapses noted above with respect to reviewing the 314(a) requests from FinCEN, and failed to identify inadequacies in the firm's detection and reporting of suspicious activity.

10. **Exception:**

The member organization was not in compliance with NASD Rule 3010(b)(1) (Written Procedures).

**Detail:**

ALPINE_LIT167430



**FINra**™

Financial Industry Regulatory Authority

The firm failed to enforce its written supervisory procedures with respect to the following:

1. When a written complaint is received, a copy should be forwarded immediately to Compliance for follow-up (WSP Manual page 94, Section 7.7.2)

2. If the Firm decides to file a SAR with FinCEN, the AML Compliance Officer will file within 30 days of becoming aware of the suspicious transaction (WSP Manual page 158, Section 9.11.3)

3. Requests for information from FinCEN must be forwarded to the AML Compliance Officer for response. The firm must conduct a search of the required records and, if a match is found, submit the Subject Information Form to FinCEN (WSP Manual page 159, Section 9.12.2)

The contents of this report and the examination process were reviewed during an Exit Meeting on Monday, July 23, 2012 with the following participants:

**MEMBER ORGANIZATION PERSONNEL:**

| | |
|---|---|
| Robert Tew | Chief Executive Officer |
| Todd Groskreutz | Chief Financial Officer |

**FINRA PERSONNEL:**

| | |
|---|---|
| Gerald Dougherty | Deputy Director |
| Melanie Chan | Surveillance Director |
| Rebecca Kramer | Examination Manager |
| Eric Citrin | Principal Regulatory Coordinator |
| Cynthia Ponikvar | Principal Regulatory Coordinator |
| Steven Bender | Principal Examiner |
| James Herth | Principal Examiner |
| Sean O'Connor | Associate Principal Examiner |
| Yuliana Landers | Examiner |
| Lawrence Shikerman | Examiner |

The following FINRA staff members participated in the examination, but were not present at the Exit Meeting:

| | |
|---|---|
| Kathleen Nagel | Examination Director |
| Charles Miller | Examiner |

*This form does not in any way constitute a waiver of the notification prohibitions set forth in 31 U.S.C. 5318(g) with respect to any suspicious activity report discussed herein. Consequently, any references in this letter to a suspicious activity report or its existence are confidential, and*

Confidential

Page 6 of 7

ALPINE_LIT167431



Financial Industry Regulatory Authority

may not be disclosed by you to the subject of the report, or otherwise disclosed in a manner outside your firm that would lead to the subject of the report being notified.  The improper disclosure of a suspicious activity report, either in contravention of section 5318(g) or of a related rule implementing that authority, is punishable by criminal and civil penalties. See 31 U.S.C. 5321 and 5322.

Confidential

Page 7 of 7

ALPINE_LIT167432