ZACHARY T. CARLYLE
carlylez@sec.gov
TERRY R. MILLER
millerte@sec.gov
SECURITIES AND EXCHANGE COMMISSION
1961 Stout Street, 17th Floor
Denver, Colorado 80294
(303) 844-1000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>         Plaintiff,<br><br> - against -<br><br>ALPINE SECURITIES CORPORATION,<br><br>         Defendant. | 17-cv-4179-DLC<br><br>ECF CASE |

**PLAINTIFF UNITED STATES SECURITIES AND EXCHANGE COMMISSION'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................2

I.   THE SAR RULE IMPOSES BOTH OBJECTIVE AND SUBJECTIVE
     STANDARDS................................................................................................................2

     A.   The phrase "has reason to suspect" imposes an objective standard for each
          SAR decision ...................................................................................................2

     B.   The SAR forms and interpretive guidance support the Commission's
          interpretation of BSA reporting obligations ............................................................5

II.  THE COMMISSION IS ENTITLED TO PARTIAL SUMMARY JUDGMENT
     ON THE SAMPLE SARS AND SAMPLE LIQUIDATIONS ...........................................7

     A.   Alpine's erroneous constructions of Section 1023.320 do not defeat
          summary judgment...............................................................................................7

          1.   Section 1023.320 does not require proof of willfulness or negligence........7

          2.   Section 1023.320 required Alpine to file the Sample SARs and to
               report the Sample Liquidations...................................................................8

          3.   Section 1023.320 does not permit a fortuitous coincidence to discharge
               a broker dealer's independent reporting obligation ..................................10

     B.   Alpine created no genuine dispute of material fact ..............................................12

III. THE COMMISSION IS ENTITLED TO PARTIAL SUMMARY JUDGMENT
     ON THE LATE SARS AND ON ALPINE'S FAILURE TO MAINTAIN RECORDS...15

CONCLUSION....................................................................................................................16

## Table of Authorities

**Federal Cases**

*Curtis v. Cenlar F.S.B.*, No. 13cv3007 (DLC), 2014 WL 5778046
  (S.D.N.Y. Nov. 5, 2014) ................................................................................ 9-10, 12, 14, 16

*Salahuddin v. Goord*, 467 F.3d 263 (2d Cir. 2006) ...................................................................... 15

*Williams v. Taylor*, 529 U.S. 362 (2000) ........................................................................................ 3


**Other Statutes**

31 C.F.R. § 1023.320 .............................................................................................................. passim

67 Fed. Reg. 44,015 (July 1, 2002) ................................................................................. 3, 5, 10, 11

Plaintiff United States Securities and Exchange Commission (the "Commission") submits this Reply Memorandum of Law in Support of its Motion for Partial Summary Judgment (Doc. No. 68, "Motion")[1] and in response to Alpine Securities Corporation's ("Alpine") opposition to the Motion (Doc. No. 87, "Opposition").

## INTRODUCTION

The Motion presented samples of Alpine's systematic failure to comply with BSA reporting requirements. Alpine does not seriously dispute these samples on the merits. Instead, Alpine advances an array of arguments to limit the scope of its reporting obligations with the incredible upshot that only Alpine can decide whether it had an obligation to report any of the thousands of transactions it actually did report, or whether it had an obligation to report liquidations closely related to thousands of deposits Alpine actually did report. Alpine argues that it had no such obligations because the Commission did not prove that Alpine subjectively believed that each underlying transaction was reportable and did not prove that red flags missing from the Sample SARs were actually connected to illegal activity.

But proof of Alpine's subjective belief about a transaction is sufficient but not necessary to establish a violation. In addition to a subjective standard imposed by the language "knows, suspects," the SAR rule also imposes an objective standard through the language "or has reason to suspect," which FinCEN included because enforcement would not be adequate without an objective standard. Moreover, the SARs filed by Alpine are evidence that Alpine had a subjective belief of suspicious and reportable activity. Each SAR contains a narrative prepared by Alpine pursuant to directions that Alpine describe a "suspicious" transaction, and even the

---

[1] Citations to the Motion refer to the Commission's memorandum of law in support of the Motion (Doc. No. 74).

1

title of a SAR contains the word "suspicious." Alpine presented no evidence about the underlying transactions to dispute that it subjectively believed the transactions were suspicious and reportable under the SAR rule. There is no triable issue of fact under either the subjective or objective standards.

The BSA requires Alpine to collect and report information known to Alpine about suspicious transactions relevant to a possible violation of law or regulation. The BSA does not permit Alpine to file thousands of useless SARs with no indication that Alpine thought the reports were "voluntary" and, when confronted, claim that it failed to describe the transactions because it must not have subjectively believed the transactions were suspicious. The BSA does not permit Alpine to bury its head in the sand when it learns of suspicious red flags identified by law enforcement and Alpine's own written procedures and, when confronted, claim that it must not have subjectively believed the red flags were relevant to law enforcement. The BSA does not permit Alpine to report one side of a suspicious pattern of transactions (deposits) but not the other (liquidations) involving the same parties and same stock and, when confronted, suggest that another firm may have reported the transactions instead. Alpine's circular logic cannot insulate it from summary judgment.

## ARGUMENT

I. **THE SAR RULE IMPOSES BOTH OBJECTIVE AND SUBJECTIVE STANDARDS.**

   A. **The phrase "has reason to suspect" imposes an objective standard for each SAR decision.**

The broker-dealer SAR rule, Section 1023.320(a)(2), requires reporting when a broker-dealer "knows, suspects, or has reason to suspect" that a transaction fits within one of the four

categories of reportable transactions. This disjunctive language requires reporting in three separate circumstances, including when Alpine "has a reason to suspect" that a transaction fits into a reportable category. This objective standard is satisfied with evidence Alpine's records, which reveal that it had possession of facts that created a reason to suspect a transaction is reportable. This standard does not require proof that Alpine actually knew or in fact suspected that a transaction was reportable. Alpine's argument that the rule requires reporting only "if the broker-dealer knows or suspects that the transaction involves criminal activity or lacks any business or lawful purpose" (Opp. at 9) gives no meaning to the phrase "has reason to suspect" and thus violates the "cardinal principle" of construction that every word or phrase must be given effect if possible. *See Williams v. Taylor*, 529 U.S. 362, 404 (2000).

Alpine also argues that the Court should focus on the "firm's process," *i.e.*, Alpine's AML compliance program (Opp. at 13), "rather than on individual SAR decisions[.]" Opp. at 11. This argument has no basis in Section 1023.320 and was rejected by FinCEN when adopting the rule. The adopting release for the rule cited a commenter who requested that FinCEN remove the "has reason to suspect" language because, like Alpine, the commenter argued that the "issue of due diligence should be addressed as a matter of assessing the adequacy of a broker-dealer's anti-money laundering compliance program." 67 Fed. Reg. 44048, 44053 (cited in Opp. at 9). FinCEN rejected that argument because enforcement of the rule would be inadequate without the objective standard imposed by the "reason to suspect" language:

> FinCEN believes that compliance with the rule cannot be adequately enforced without an objective standard…. This is a flexible standard that adequately takes into account the differences in operating realities among various types of broker-dealers, and is the standard contained in the existing SAR rules for depository institutions and money services businesses.

3

*Id.* Thus, contrary to the Opposition, FinCEN does not consistently state that the determination of when to file a SAR must be based on the firms' subjective assessment. Opp. at 9-10.

The other sources cited in the Opposition do not support the argument that Section 1023.320 imposes only a subjective standard. The statements that broker-dealers must make subjective determinations to comply with the BSA reporting requirements are correct, because Section 1023.320 contains both subjective and objective components. But statements that broker-dealers must comply with one component do not mean that broker-dealers can ignore another. *See* Opp. at 10-13. These statements do not conflict with application of an objective standard.

Nor does the examination guidance cited by Alpine conflict with an objective standard applied to individual SAR decisions. The guidance by the Federal Financial Institution Examination Counsel ("FFIEC") states that individual SAR decisions can be reviewed to test the filer's process. Alpine Ex. 7 at 8-9. This guidance does not help Alpine here because the Commission is using noncompliant filing decisions to show that Alpine's SAR process was systematically flawed. Alpine's flawed process, in turn, is evidence that each of the SARs challenged by the Commission failed to include information of which Alpine was aware and that Alpine knew, suspected, or had reason to suspect that each of the liquidations alleged in the Complaint should have been reported under Section 1023.320

Alpine's quotation of a FINRA decision fails for similar reasons. Opp. at 11-12. The FINRA decision quoted by Alpine (Opp. at 11-12) states that inquiries into individual filing decisions are proper: "This is not to say that the failure to file a SAR cannot be questioned, and FINRA has settled matters involving the failure to file SARs." *In re Sterne, Agee & Leach, Inc.*, No. E052005007501 at 32. Further, the claims in that matter are different from the

4

Commission's claims here. In the FINRA decision, the claimant challenged the firm's process and pointed to individual reporting failures as evidence of a flawed process. Here, in contrast, the Commission alleges thousands of individual violations and points to a flawed system as additional evidence of these violations. *See* 67 Fed. Reg. 44048, 44053 ("[R]eview of the adequacy of a broker-dealer's anti-money laundering compliance program is not a substitute for, although it could be relevant to, an inquiry into the failure of a broker-dealer to report a particular suspicious transaction."). The fact that two late filings were deemed insufficient to establish a flawed process in the *Sterne* matter does not impair the Court's power to review Alpine's individual SAR decisions against an objective standard.

In short, the plain language of Section 1023.320(a)(2) imposes an objective standard in addition to subjective standards. Alpine offers no construction of this section that gives effect to the "has reason to suspect" language, and the authorities cited by Alpine confirm that an inquiry into individual decisions against an objective standard is necessary for adequate enforcement of Section 1023.320(a)(2). *See, e.g.*, 67 Fed. Reg. 44048, 44053 ("FinCEN believes that compliance with the rule cannot be adequately enforced without an objective standard.").

**B.     The SAR forms and interpretive guidance support the Commission's interpretation of BSA reporting obligations.**

Alpine argues that the SAR forms promulgated by FinCEN exclude an objective standard because they only require "an account of what *the broker-dealer determined* was suspicious about the transaction." Opp. at 14. Alpine is correct that language in the forms require a filer to report facts it subjectively determines are suspicious. But the language does not excuse the filer from the objective standard. The SAR forms require filers to provide a complete description of "the activity," which refers to suspicious activity mentioned in the preceding sentences,

5

"including what is unusual or irregular that caused suspicion." SOF 8. Alpine's argument based on this phrase (Opp. at 13) is wrong because the word "including" means that the facts the broker-dealer determined were suspicious are necessary but not sufficient to comply with reporting obligations.

Alpine's argument that interpretative guidance does not carry the force of law overstates the Commission's use of the guidance in the Motion. Opp. at 14-15. The Commission did not argue that Section 1023.320(a)(2) is ambiguous or that the interpretative guidance has "the force of law." Opp. at 15. Instead, the Motion showed that binding rules and SAR forms adopted by FinCEN are unambiguous, but the interpretative guidance issued by FinCEN is helpful to interpret rules promulgated by FinCEN "wherever an ambiguity arises." Motion at 7. Thus, to the extent there is any rational construction of FinCEN's rules that would not require Alpine to include the red flags described in the Motion (there is not), the interpretative guidance is helpful to show that the Commission's construction of the rules is correct.

Alpine's argument that guidance issued by FINRA (and its predecessor) is not relevant fails because FinCEN incorporates and cites FINRA's guidance many times. *E.g.* SEC Ex. 3 at 39 & n.36. Guidance issued by FINRA, especially FINRA guidance incorporated into Alpine's Written Supervisory Procedures and training materials, are evidence of what violations of law Alpine had reason to suspect and what facts Alpine knew law enforcement deemed relevant. *E.g.* SEC Ex. 4 at 40 (Alpine's WSPs incorporating "FIRNA Regulatory Notice 09-05").

Finally, Alpine's argument that enforcement of Section 1023.320 would violate its constitutional right to due process (Opp. at 23) should be rejected because the Commission's application of Rule 17a-8 and Section 1023.320 is consistent with plain language of the rules,

warnings Alpine received from FINRA, and is supported by guidance that, collectively, gave Alpine ample notice of its BSA reporting obligations.

## II. THE COMMISSION IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON THE SAMPLE SARS AND SAMPLE LIQUIDATIONS.

### A. Alpine's erroneous constructions of Section 1023.320 do not defeat summary judgment.

Alpine advances three arguments construing Section 1023.320 to manufacture issues of fact. Opp. at 25-32. These arguments should be rejected because they conflict with the plain language and purpose of Section 1023.320.

#### 1. Section 1023.320 does not require proof of willfulness or negligence.

Alpine's argument that the Commission must present proof of willfulness or negligence required by BSA remedy provisions fails because the plain text of Section 1023.320 contains no such requirement and, in any event, the Motion contains evidence of willfulness and negligence.

The relief requested in the Motion—a finding that Alpine violated Rule 17a-8 by failing to comply with reporting requirements of 31 C.F.R. § 1023.320—does not require a showing of willfulness or negligence under BSA remedy provisions because Rule 17a-8 and Section 1023.320 contain no willfulness or negligence requirement, and Alpine points to none. Instead, Alpine cites remedy provisions in the BSA that the Commission does not pursue in this action, and certainly not in the Motion because the Motion seeks no remedies—only a judgment of liability. The Court can grant the relief requested in the Motion without a finding of willfulness and without resolving Alpine's argument that the Commission lacks authority to seek remedies under Section 17(a). In any event, that argument is wrong for the reasons explained in the Commission's Memorandum in Opposition to Alpine's Cross-Motion for Summary Judgment.

7

The Commission nevertheless presented ample evidence that Alpine's failures to comply with reporting requirements were willful and negligent. The SARs attached to Motion were deliberately prepared and signed under penalty of perjury. Alpine did not inadvertently prepare or file them. Alpine did not inadvertently clear the Sample Liquidations, and the deliberate SAR filings surrounding those deposits are evidence that Alpine made a conscious decision to not report the Sample Liquidations—indeed Alpine insists that its AML program makes a determination whether to report each transaction. The sheer volume of similar violations also is evidence that the individual violations were no accident. The publicly available guidance, Alpine's own Written Supervisory Procedures and training materials, and warnings from FINRA attached to the Motion are further evidence that Alpine understood and deliberately violated BSA requirements. In response, Alpine presented no evidence that Alpine (1) inadvertently prepared the deficient narratives in the Sample SARs, (2) inadvertently failed to report the Sample Liquidations, or (3) did not know of the BSA regulations. Even if proof of willfulness and negligence were required (it is not), Alpine failed to meet its burden on summary judgment to establish a genuine issue of fact.

        **2.    Section 1023.320 required Alpine to file the Sample SARs and to report the Sample Liquidations.**

Alpine argues that a dispute of fact exists because it may have voluntarily filed the Sample SARs. Opp. at 27-30. This argument fails for at least two reasons. *First*, the plain language of Section 1023.320 and its purpose defeat Alpine's interpretation that a broker-dealer can file a SAR even if it does not believe that a suspicious transaction is relevant to a possible violation of law or regulation. To the contrary, the "voluntary filing" provision cited by Alpine requires that the broker-dealer believe a suspicious transaction is relevant to a possible violation

8

of law: "A broker-dealer may also file with FinCEN a report of any suspicious transaction that it believes is relevant to the possible violation of any law or regulation but whose reporting is not required by this section." 31 C.F.R. 1023.320 (a)(1). This provision encourages filers to report transactions they believe are relevant to a possible violation of law even if, for example, the suspicious transaction does not meet the $5,000 threshold, or the suspicious transaction is conducted by, at, or through another firm. No provision in Section 1023.320 permits filers to report transactions they do not believe are suspicious and relevant to a violation of law or regulation, and no provision permits a filer to provide incomplete descriptions of a transaction.

*Second*, the Commission did present evidence that both the transactions underlying the Sample SARs and the Sample Liquidations fell into one or more of the four reportable categories in Section 1023.320(a)(2). The Sample SARs themselves are evidence that Alpine subjectively suspected each transaction was reportable and had reason to suspect the transactions were reportable. The Sample SARs required a complete description of the transactions, Alpine declared under penalty of perjury that each form was complete, and none of the Sample SARs indicate that Alpine believed the transaction was not reportable—they certainly do not describe how the suspected law or violation is not reportable. The red flags that appear in the support files but were omitted from the Sample SARs, together with the SARs themselves, are additional evidence that Alpine suspected or had reason to suspect the transactions were reportable. Alpine presented no additional evidence about the transactions or about what Alpine believed to create a genuine dispute of material fact on this issue. *Curtis v. Cenlar FSB*, No. 13-CV-3007-DLC, 2014 WL 5778046, at *3 (S.D.N.Y. Nov. 6, 2014) ("[C]onclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment."). Similarly, the SARs filed

9

on deposits are evidence that Alpine suspected or had reasons to suspect that the liquidations of the same stock by the same customer shortly after the deposits (and often before Alpine even filed the SAR) were reportable.

### 3. Section 1023.320 does not permit a fortuitous coincidence to discharge a broker-dealer's independent reporting obligation.

Alpine argues that a triable issue of fact may exist because another broker-dealer may have filed sufficient SARs to report the suspicious transactions. Opp. at 30-32 (citing 31 C.F.R. § 1023.320(a)(3)). Alpine effectively concedes that its records contain no evidence that another broker-dealer filed SARs on the underlying transactions by arguing that the Commission must conduct a search for them. Opp. at 32; Alpine Ex. 24 ¶¶ 8-10. This concession is fatal to the defense because the only way Alpine can take advantage of Section 1023.320(a)(3) is if another firm filed a joint report on Alpine's behalf, and Alpine would have records of a joint report. Section 1023.320(a)(3) specifically refers to "one report" filed by "the broker-dealers involved in a particular transaction…." *e.g.* the introducing and clearing brokers working together to file one report. 31 C.F.R. § 1023.320(a)(3). It does not say "one report" filed by "any broker-dealer" and does not allow Alpine to excuse its independent reporting obligation with a fortuitous event unbeknownst to Alpine.

The Opposition is correct that FinCEN's final rule adoption acknowledged the introducing broker and clearing broker relationship when adopting Section 1023.320(a)(3), Opp. at 30 (citing 67 Fed. Reg. 44048), but Alpine omits that a clearing broker must communicate with an introducing broker and know that the introduction broker filed a report in order to take advantage of Section 1023.320(a)(3):

> It is FinCEN's expectation that introducing and clearing broker-dealers wishing to take advantage of this provision with respect to a particular transaction will communicate with each other about the transaction for purposes of sharing information about the transaction, and determining which broker-dealer will file the SAR.

67 Fed. Reg. 44048, 44051-52.

Further, the statement in Alpine's "Rule 56(d) Declaration" that "Alpine cannot obtain SARs directly from other broker-dealers" is not correct. Alpine Ex. 24 ¶ 6. Section 1023.320(e)(ii)(A)(2) permits Alpine to share information about the underlying transaction and the SAR filing with its introducing broker, including a jointly filed SAR. *See also* 67 Fed. Reg. 44048, 44054 (Paragraph (e) "does not prohibit an introducing broker and a clearing broker from discussing with each other, for purposes of paragraph (a)(3), suspicious activity involving a transaction with respect to which both broker-dealers have been involved, and the determination which broker-dealer will file the SAR in such a case."). FinCEN's SAR filing instructions state that a "FinCEN SAR may be jointly filed when two or more distinct financial institutions collaborate in filing a single FinCEN SAR…" and a "filing institution cannot designate another institution as a joint filer unless the designated joint filer is aware of and approves the FinCEN SAR filing in its entirety." SEC Ex. 9 at 84. At least two other exhibits submitted by Alpine explain the joint filing process that not only permits but requires Alpine to know about and keep records of joint reports. Alpine Ex. 10 at 5 ("each institution [filing a joint report] should maintain a copy of the Suspicious Activity Report filed and any supporting documentation"); Alpine Ex. 7 at 9 ("The underlying facts, transactions, and supporting documents of a SAR may be disclosed to another financial institution for the preparation of a joint SAR[.]").

11

Alpine's construction of Section 1023.320(a)(3) also makes no sense. No purpose of the SAR rule is served if Alpine could file a deficient and misleading SAR, or file no SAR at all, yet still discharge its reporting obligation with the speculative hope that another firm might file a complete report on the same transaction. A fortuitous event unknown to Alpine cannot discharge Alpine's independent reporting obligation.

### B.  Alpine created no genuine dispute of material fact.

Alpine's common argument that the Commission did not prove how omitted facts were tied to actual illegal activity misstates the reporting requirement. Opp. at 33-35. The duty to report encompasses a complete set of facts and red flags about a suspicious transaction "relevant to a *possible* violation of law or regulation," 31 C.F.R. § 1023.320(a)(1) (emphasis added), not just facts known to be tied to an actual violation of law or regulation. After learning of a red flag connected to a suspicious transaction, a filer cannot both (1) omit the red flag from the SAR; and (2) bury its head in the sand about the red flag's connection to possible criminal activity. It must report the red flag or discover a reasonable explanation to omit the red flag. Here, the Motion contains evidence that Alpine knew of red flags and did not report them. Alpine had the burden to present evidence (not just argument) to show that Alpine discovered a reasonable explanation for the red flags that justified their omission, but produced no evidence about any of the suspicious transactions reported in the Sample SARs. Opp. at 33; *Curtis*, 2014 WL 5778046, at *3 ("[C]onclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment."). Absent such evidence there is no genuine dispute as to any material fact and summary judgment should be granted. Alpine's arguments about specific categories of red flags fail for the following reasons:

- Ongoing SEC Litigation. Alpine's suggestion that it need not include a red flag because law enforcement agencies could learn the information from other means would defeat the BSA's core purpose to collect information for use in a quick, reliable manner by different agencies, not just the SEC. Law enforcement's ability to learn information from other sources never excuses a filer's obligation to provide a complete description of a suspicious transaction. The fact that Alpine did not bother to understand the precise nature of the ongoing litigation means that it had no basis to omit the fact of litigation from the SAR narrative.

- Criminal or Regulatory History. Again, the argument that Alpine need not report red flags that are available through other means has no basis in the text or purpose of the BSA regulations. Alpine's own process requires identification of criminal history and Alpine does, at times, report criminal history in a SAR narrative without explaining how the nature of the history relates to the transaction. When preparing Sample SARs D, E, and F, Alpine was aware of criminal or regulatory history of a subject, omitted the history from the SAR, and presented no evidence to explain the omission in the Opposition. There is no genuine dispute of fact that the omissions violated the SAR rule.

- Shell Companies. Alpine's argument that an issuer's status of a shell company by itself is not suspicious illustrates the incorrect standard it uses for red flags throughout the Opposition. Alpine need not know exactly why a red flag relates to criminal activity. But it must report recognized red flags in order to provide a complete description of the transaction, and the status of a shell company helps law enforcement understand the transaction. Alpine's own checklist requires the identification of shell companies, as does guidance from FinCEN and FINRA. There is no genuine dispute of fact that the omission of the shell company status in Sample SARs A and C violated Alpine's reporting requirement because Alpine presented no evidence to justify the omission.

- Stock Promotion. Alpine's argument that stock promotion by itself is not necessarily suspicious misses the point here that stock promotion is relevant in conjunction with a large, suspicious deposit of low-priced securities. Sample SARs H, J, and G each described a large deposit of low priced securities, and two of them (G and H) stated that Alpine believed the transaction was suspicious because the account historically made large deposits of low-priced securities. A large deposit of low-priced securities is one element of common manipulation schemes, and evidence of stock promotion is another common element related to similar schemes and certainly relevant to law enforcement's understanding of the possible criminal nature of large deposit of low-priced securities; especially to law enforcement agencies not fully versed in stock manipulation schemes.

- Unverifiable users.  Alpine's argument that the inability to verify a user is not suspicious "as a matter of law" exaggerates the Commission's burden. Opp. at 34. The Commission need not prove that the inability to verify issuers is always a reportable red flag, only that there is no genuine dispute of fact that Alpine had no explanation for the omission in Sample SARs G, K, and L. Alpine did not come forward with evidence explaining why

13

- Alpine had a basis to omit these red flags, which all indicated that the reported transactions lacked a legitimate business purpose.

- Low Trading Volume.  Alpine again misstates the Commission's burden by arguing that the Commission must show that stock manipulation actually occurred to prove that evidence of low-trading volume should have been reported in Sample SARs M, N, and P. The fact of low-trading volume in relation to the size of the underlying transactions indicates the existence of illegal stock manipulation. The BSA does not require Alpine to be certain illegal activity is occurring; rather it requires that Alpine provide a complete description of facts known to Alpine that would help law enforcement make that determination.

- Foreign Individual or Entity. The fortuitous filing by another firm cannot discharge Alpine's independent duty to file adequate SARs. Opp. at 35. For the same reasons above, the Commission need not prove actual illegal activity to show that Alpine failed to comply with its obligation to report suspicious transactions that could be relevant to possible violations of law.

Finally, Alpine's three arguments about the Sample Liquidations fail to defeat summary judgment. Opp. at 35-37. *First*, the Commission need not present evidence of subjective belief about the Sample Liquidations because Alpine had reason to suspect the transactions were reportable, which is evidenced by the fact that Alpine filed SARs on closely related deposits of the same stock by the same party, many times *after* the stock was liquidated. These failures deprived law enforcement of a link to the outgoing funds. In any event, the SAR filings also serve as evidence of Alpine's subjective belief that the Sample Liquidations were suspicious, and Alpine presented no evidence to dispute this point. *Curtis*, 2014 WL 5778046, at *3.

*Second*, Alpine misses the point of FinCEN's instructions about continuing reports. The point of this guidance is that Alpine is not relieved of its obligation to report suspicious activity because it reported other related activity. The obligation arises for each separate transaction.

*Third*, Alpine's tracing argument fails because the fact that a customer deposits and liquidates different volumes of shares of the same stock does not negate suspicion of stock

14

manipulation. Alpine knows or should know that the existence of a manipulation scheme is not made more likely by an exact match of stock certificates flowing in and out of an account. The argument that the Commission did not authenticate the tables showing the Sample Liquidations fails because the Commission submitted a declaration explaining that the tables were prepared from data produced by Alpine. Declaration of Terry R. Miller ¶ 5, Doc. No. 75-68.

### III.  THE COMMISSION IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON THE LATE SARS AND ON ALPINE'S FAILURE TO MAINTAIN RECORDS

Alpine's response to the late SARs (Opp. at 37) fails because it relies on the flawed argument that Section 1023.320 imposes only a subjective standard. Even if Alpine's explanation that it did not subjectively decide to report the underlying transactions until months after the transactions was credible, the explanation would still fail to dispute the evidence that Alpine had reason to suspect the transactions were reportable at the time Alpine cleared them. The SARs indicate no new facts of the transactions learned by Alpine in the intervening months and Alpine presents none in the Opposition. The SARs were late as a matter of law. *Salahuddin v. Goord,* 467 F.3d 263, 272-73 (2d Cir. 2006) (Alpine must set forth specific facts showing a genuine issue for trial).

Alpine's response to the missing support files (Opp. at 39) fails because Alpine produces no evidence that Alpine maintained the missing files and produced them upon request by appropriate law enforcement. 31 C.F.R. § 1023.320(d) ("A broker-dealer shall make all supporting documentation available to any Federal … law enforcement agency, or any Federal regulatory authority that examines the broker-dealer for compliance with the Bank Secrecy Act, upon request…."). The Commission requested the documents for years, including in written discovery requests served in October. Alpine produced documents on January 19, 2018, the day

15

it filed the Opposition, and submitted a declaration that an Alpine employee "believes" the documents were produced earlier. The declarant attaches no cover letter and cites no labels so show that the records were previously produced upon request, and her declaration contains no evidence that she has personal knowledge that Alpine's lawyers actually produced these records. The Opposition therefore contains no admissible evidence that any records were produced upon request. *Curtis*, 2014 WL 5778046, at *3 ("[C]onclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment.").

## **CONCLUSION**

For the reasons above and those stated in the Motion the Commission respectfully requests partial summary judgment that Alpine violated Section 17(a) of the Exchange Act and Rule 17a-8 for each of the sample violations raised in the Motion.

Respectfully submitted this 9th day of February, 2018.

>   */s/ Terry R. Miller*
>   Zachary T. Carlyle (*pro hac*)
>   Terry R. Miller (*pro hac*)
>   Attorneys for Plaintiff
>   UNITED STATES SECURITIES AND
>   EXCHANGE COMMISSION

## CERTIFICATE OF SERVICE

I certify that on February 9, 2018, a copy of the foregoing document was served by ECF upon the following:

Brent R. Baker
Aaron D. Lebenta
Jonathan D. Bletzacker
CLYDE SNOW & SESSIONS
One Utah Center, 13th Floor
201 South Main Street
Salt Lake City, Utah 84111-2216

Maranda E. Fritz
Thompson Hine LLP (NYC)
335 Madison Avenue, 12th Floor
New York, NY 10017

*Counsel for Alpine Securities Corporation*

                                                 */s/ Marla J. Pinkston*
                                                 Marla J. Pinkston