ZACHARY T. CARLYLE
carlylez@sec.gov
TERRY R. MILLER
millerte@sec.gov
SECURITIES AND EXCHANGE COMMISSION
1961 Stout Street, 17th Floor
Denver, Colorado 80294
(303) 844-1000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>                              Plaintiff,<br><br>      - against -<br><br>ALPINE SECURITIES CORPORATION,<br><br>                              Defendant. | **17-cv-4179-DLC**<br><br><br>**ECF CASE** |

**PLAINTIFF UNITED STATES SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND MOTION FOR JUDGMENT ON THE PLEADINGS**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

LEGAL STANDARD............................................................................................................2

ARGUMENT ........................................................................................................................3

I.    ALPINE'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED
      BECAUSE THE COMMISSION HAS AUTHORITY UNDER THE EXCHANGE
      ACT TO REQUIRE BROKER-DEALERS TO REPORT SUSPICIOUS ACTIVITY
      AND TO ENFORCE THOSE REQUIREMENTS............................................................3

      A.    The Commission Brought this Case Based on Its Authority Under the
            Exchange Act, Not the BSA ..............................................................................3

      B.    The Commission has Authority Under Exchange Act Sections 17(a) and
            Rule 17a-8 to Require Broker Dealers to Report Suspicious Activity
            and to Enforce Those Requirements ...................................................................4

            1.    The Commission has Broad Authority Under Section 17(a) to
                  Require Broker-Dealers to Comply with Reporting and
                  Recordkeeping Obligations.........................................................................4

            2.    The Commission's Enforcement of SAR Reporting and
                  Recordkeeping Violations by Broker-Dealers is Consistent
                  with the Text and Purpose of Section 17(a) and Rule 17a-8 ......................6

            3.    The Commission Acted Within its Authority in Promulgating
                  and Enforcing Rule 17a-8 .........................................................................10

      C.    Alpine's Arguments Regarding the Preclusive Effect of the BSA
            Are Meritless..................................................................................................13

            1.    The BSA Does Not Preclude the Commission From Requiring
                  Broker-Dealers to Comply with SAR Requirements Under the
                  Exchange Act ...........................................................................................13

            2.    There Is No Merit to Alpine's Argument That the Commission
                  Has Encroached On FinCEN's Authority...................................................16

            3.    The Second Circuit's Decision in *Lissack* Is Irrelevant............................19

i

II.     ALPINE'S MOTION FOR JUDGMENT ON THE PLEADINGS SHOULD BE
DENIED BECAUSE THE COMMISSION IS NOT REQUIRED TO ESTABLISH
WILLFUL OR NEGLIGENT VIOLATIONS OF THE BSA TO PROVE
VIOLATIONS OF SECTION 17(A) AND RULE 17a-8.................................................22

CONCLUSION............................................................................................................................23

**Table of Authorities**

**Federal Cases**

*Arista Records L.L.C. v. Lime Grp., L.L.C.*, 2011 WL 1793310 (S.D.N.Y. Mar. 14, 2011) ......... 2

*Bloomfield v. U.S. SEC*, 649 F. App'x 546 (9th Cir. 2016) ...................................................8, 9

*Boruski v. SEC*, 340 F.2d 991 (2d Cir. 1965) ............................................................. 12

*Carcieri v. Salazar*, 555 U.S. 379 (2009) .................................................................. 13

*Dickerson v. Napolitano*, 604 F.3d 732 (2d Cir. 2010) ................................................. 2

*GAF Corp. v. Milstein*, 453 F.2d 709 (2d Cir. 1971) .................................................... 9

*Massachusetts v. EPA*, 549 U.S. 497 (2007) ............................................................. 20

*POM Wonderful L.L.C. v. Coca-Cola Co.*, 134 S. Ct. 2228 (2014) ............................... 14, 15, 16

*Radzanower v. Touche Ross & Co.*, 426 U.S. 148 (1976) ........................................... 15

*SEC v. Drexel Burnham Lambert, Inc.*, 837 F. Supp. 587 (S.D.N.Y. 1993) ................... 10

*SEC v. Jensen*, 835 F.3d 1100 (9th Cir. 2016) ........................................................... 9

*SEC v. Savoy Indus., Inc.*, 587 F.2d 1149 (D.C. Cir. 1978) ......................................... 9

*Touche Ross & Co. v. Redington*, 442 U.S. 560 (1979) ......................................... 5, 9, 15

*United States v. Batchelder*, 442 U.S. 114 (1979) .................................................... 15

*United States ex rel. Lissack v. Sakura Glob. Capital Mkts., Inc.*, 377 F.3d 145 (2d Cir. 2004) ............................................................................................................. 19, 20

*Williams v. Taylor*, 529 U.S. 362 (2000) .................................................................. 12

*Wonsover v. SEC*, 205 F.3d 408 (D.C. Cir. 2000) ....................................................... 10

*World Trade Fin. Corp. v. U.S. SEC*, 739 F.3d 1243 (9th Cir. 2014) ......................... 5, 8

**Administrative Proceedings**

*Albert Fried & Co.,* Exch. Act Release No. 77971, 2016 WL 3072175 (June 1, 2016) ............ 18

*Biremis Corp.*, Exch. Act Release No.68456, 2012 WL 6587520 (Dec. 18, 2012) ..............13, 18

*Dean Witter Reynolds, Inc.*, Exch. Act Release No. 24143, 1987 WL 757596 (Feb. 27, 1987) . 17

*Dev. Corp. for Isr.*, Exch. Act Release No. 20434, 1983 WL 403061 (Dec. 1, 1983) ............... 17

*Ferris, Baker, Watts, Inc.*, Exch. Act Release No. 59372, 2009 WL 321327 (Feb. 10, 2009) .... 18

*Hold Bros. On-Line Inv. Servs., L.L.C.*, Exch. Act Release No. 67924, 2012 WL 4359224 (Sept. 25, 2012) ............................................................................................................. 18

*Merrill Lynch, Pierce, Fenner & Smith, Inc.*, Exch. Act Release No. 82382, 2017 WL 6554178 (Dec. 21, 2017) ............................................................................................................. 18

*Oppenheimer & Co.*, Exch. Act Release No. 74141, 2015 WL 331117 (Jan. 27, 2015) ............ 18

*Park Fin. Grp., Inc.*, Exch. Act Release No. 56902, 2007 WL 4258182 (Dec. 5, 2007) ............ 18

*Pinnacle Capital Mkts., L.L.C. & Michael A. Paciorek*, Exch. Act Release No. 62811, 2010 WL 3437456 (Sept. 1, 2010) ...................................................................................... 18-19

*Ronald S. Bloomfield, et al.*, Exch. Act Release No.71, 632, 2014 WL 768828 (Feb. 27, 2014) ................................................................................................ 8, 9, 11

*Thomas D. Pixley*, Exch. Act Release No. 27316, 1989 WL 992388 (Sept. 29, 1989) ......... 17, 18

*Wells Fargo Advisors, L.L.C.*, Exch. Act Release No. 82054, 2017 WL 5248280 (Nov. 13, 2017) ............................................................................................................. 18

*NASD Notice to Members 02-21*, 2002 WL 544766 (Apr. 10, 2002) ................................... 4-5, 8

*Guidance on Obtaining & Retaining Beneficial Ownership, Joint Release*, Exch. Act Release No. 61651, 2010 WL 750752 (Mar. 5, 2010) ...................................................................... 19

## Federal Statutes, Rules and Regulations

15 U.S.C. § 17(a) ..................................................................................................... passim

15 U.S.C. § 21(d) .................................................................................................3, 9, 22

15 U.S.C. § 78b ............................................................................................................ 6

15 U.S.C. § 78o(b) ....................................................................................................... 4

15 U.S.C. § 78q(a) ......................................................................................... 4, 5, 11, 14

15 U.S.C. § 78u(d) ...................................................................................................... 23

31 U.S.C. § 310 ............................................................................................................ 7

31 U.S.C. §§ 5311-5330 ........................................................................................ 6, 7, 22

17 C.F.R. § 240.17a-3 ................................................................................................... 5

17 C.F.R. § 240.17a-4 ................................................................................................... 5

17 C.F.R. § 240.17a-5 ................................................................................................... 5

17 C.F.R. § 240.17a-8 ............................................................................................ passim

31 C.F.R. § 1023.210 .................................................................................................. 12

31 C.F.R. § 1023.320 .................................................................................................... 7

31 C.F.R. § 1023.320(d) .............................................................................................. 12

31 C.F.R. § 1023.320(b)(3) ........................................................................................... 7

46 Fed. Reg. 61,454 (Dec. 17, 1981) ................................................................ 7, 9, 11, 12, 15

66 Fed. Reg. 67,670 (Dec. 31, 2001) ........................................................................... 8, 16

67 Fed. Reg. 44,015 (July 1, 2002) ........................................................................... 4, 16, 17

67 Fed. Reg. 44048 (July 1, 2002) .............................................................................4, 16

68 Fed. Reg. 25,113 (May 9, 2003) ........................................................................... 19


Treasury Order, 180-01.1 ................................................................................................7


Fed. R. Civ. P. 12(c) ................................................................................................... 2

Fed. R. Civ. P. 56(a) ................................................................................................... 2

Plaintiff United States Securities and Exchange Commission (the "Commission") submits this Memorandum of Law in Opposition to Defendant's Cross-Motion for Summary Judgment and Motion for Judgment on the Pleadings (the "Motion").

## **INTRODUCTION**

Alpine is charged with violating the federal securities laws thousands of times through widespread and pervasive failures to comply with Bank Secrecy Act ("BSA") reporting and recordkeeping requirements. Broker-dealers like Alpine are required by the Securities Exchange Act of 1934 ("Exchange Act") to file suspicious activity reports, or "SARs," to report suspicious transactions executed at or through their firms in compliance with the BSA. The Commission alleges that Alpine systematically failed to file SARs, filed SARs that insufficiently described suspicious activity, untimely filed SARs, and failed to maintain required supporting records for SARs, for thousands of suspicious transactions over more than four years.

Alpine offers no evidence to show that it did not commit these violations. Instead, Alpine seeks to escape accountability based on a series of arguments that misconstrue both the Commission's case and the law. Alpine argues that the Commission improperly brought this case under the BSA, despite the fact that the complaint expressly states that the Commission filed this enforcement action based on its authority conferred by the Exchange Act. Alpine also claims that it had no obligation under the Exchange Act to comply with its SAR reporting obligations, but ignores the applicable statute and rule that plainly require it to do so. Alpine contends that the Commission cannot hold it accountable because its SAR failures violated the BSA. However, Alpine's SAR failures also violated the Exchange Act and the BSA does not preclude the Commission's authority to enforce its broker-dealer reporting and recordkeeping requirements.

Finally, Alpine contends that the Commission was required to specifically state in its complaint that Alpine committed its violations "willfully" or "negligently." Alpine's argument fails because these are not elements of the Commission's claim. Alpine's cross-motion and motion should be denied.

## **LEGAL STANDARD**

Summary judgment is only appropriate if a movant shows, based on admissible evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must "construe all evidence in the light most favorable to the nonmoving party," – here the Commission – "drawing all inferences and resolving all ambiguities in its favor." *Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010) (citations omitted). For the purpose of this motion, Alpine does not dispute the factual allegations in the Commission's Complaint. *See* Motion, Doc. No. 84. Under this standard, Alpine has failed to show that it is entitled to summary judgment. Rather, as explained in the Commission's brief in support of its motion for partial summary judgment, Doc. No. 74, partial summary judgment should be entered in the Commission's favor on Alpine's liability.

In deciding a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), the Court must "apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." *Arista Records LLC v. Lime Grp., LLC*, 2011 WL 1793310, at *1 (S.D.N.Y. Mar. 14, 2011) (citations omitted). A motion pursuant to Rule 12(c) "should be denied unless 'it appears beyond doubt that the nonmoving party can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* (citations omitted).

## ARGUMENT

I.   **ALPINE'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE THE COMMISSION HAS AUTHORITY UNDER THE EXCHANGE ACT TO REQUIRE BROKER-DEALERS TO REPORT SUSPICIOUS ACTIVITY AND TO ENFORCE THOSE REQUIRMENTS.**

A.   **The Commission Brought this Case Based on Its Authority Under the Exchange Act, Not the BSA.**

Alpine first argues that the Commission lacks authority to bring enforcement actions under the BSA. *See* Motion at 4-13. However, the Commission's authority to bring enforcement actions under the BSA is irrelevant because the Commission brought this case under the Exchange Act. Accordingly, the Court should deny Alpine's request for summary judgment on this basis.

As spelled out clearly in the Complaint, the Commission filed this action for violations of Section 17(a) of the Exchange Act and Rule 17a-8 thereunder, based on the authority conferred upon it by the Exchange Act. *See* Complaint, Doc. No. 1. The Complaint states that the Commission brought this action for violations of Section 17(a) of the Exchange Act and Rule 17a-8 thereunder pursuant to "the authority conferred upon it by Section 21(d) of the Exchange Act," that the Commission seeks penalties pursuant to Section 21(d)(3) of the Exchange Act, and the Court has jurisdiction over this action pursuant to Sections 21(d), 21(e) and 27 of the Exchange Act. Complaint at ¶¶ 6, 7, 44-47. As discussed in detail below in Section I.B., the Commission has authority under Section 17(a) and Rule 17a-8 to require registered broker-dealers such as Alpine to comply with the reporting, recordkeeping, and record retention requirements of the BSA and its implementing regulations.

Conversely, the Commission does not (and need not) cite to a single provision of the BSA in its Complaint for the Commission's authority to bring this action and seek penalties or for the Court's jurisdiction. *See generally*, Complaint. The reason for this is obvious and dispositive — the Commission filed this action under the Exchange Act. Accordingly, Section I.A. of Alpine's brief is irrelevant. Motion at 4-13. Put simply, this case is incontrovertibly an enforcement action brought by the Commission under the Exchange Act, not the BSA. The only proper question before the Court is whether the Commission brought an appropriate claim under the Exchange Act. Accordingly, the Court should reject Alpine's arguments for summary judgment misdirected at the Commission's enforcement authority under the BSA.

    **B.**   **The Commission has Authority Under Exchange Act Section 17(a) and Rule 17a-8 to Require Broker-Dealers to File Reports and Make and Keep Records Regarding Suspicious Activity and to Enforce Those Requirements.**

        **1.**   **The Commission has Broad Authority Under Section 17(a) to Require Broker-Dealers to Comply with Reporting and Recordkeeping Obligations.**

Congress empowered the Commission through the Exchange Act to register, regulate and oversee broker-dealers. *See* 15 U.S.C. § 78q(a); 15 U.S.C. § 78o(b). Because of their important role in the securities markets and their unique vantage point, broker-dealers are heavily regulated entities that have long been subject to reporting obligations promulgated and enforced by the Commission. *See, e.g.*, *Amendment to the Bank Secrecy Act Regulations—Requirement that Brokers or Dealers in Securities Report Suspicious Transactions*, 67 Fed. Reg. 44,048, 44,049, 44,051 & n.12 (July 1, 2002) (discussing history of regulation and broker-dealers' "experience[]" in reviewing transactions "for the purpose of identifying securities law violations"); *Anti-Money Laundering*, NASD Notice to Members 02-21 (Apr. 10, 2002), 2002 WL 544766, at *2-3, 7

(describing prior regulation and broker-dealers' longstanding obligation to "know [their] customer[s]"), attached as Ex. 11 to the Commission's Motion for Partial Summary Judgment; *World Trade Fin. Corp. v. SEC*, 739 F.3d 1243, 1248-49 (9th Cir. 2014) (explaining that broker-dealers are not "mere order-taker[s]" and discussing brokers' duty to investigate red flags raised by their customers' trading). Alpine is a self-clearing broker-dealer and has been registered with the Commission since 1984 and is therefore subject to the Commission's broker-dealer regulations. *See* Complaint, at ¶ 9; Amended Answer, Doc. No. 48, at ¶ 9.

Congress granted the Commission authority through Section 17(a) of the Exchange Act to require registered broker-dealers to:

> "[M]ake and keep for prescribed periods such records, furnish copies thereof, and make and disseminate such reports as the Commission, by rule, prescribes as necessary or appropriate in the public interest, for the protection of investors or otherwise in furtherance of the purposes of this chapter."

15 U.S.C. § 78q(a). In other words, Section 17(a) "requires broker-dealers and others to keep such records and file such reports as the Commission may prescribe." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 569 (1979). Accordingly, the Commission has promulgated various rules under the Exchange Act that require broker-dealers to make, keep, and preserve books and records and to file reports. *See, e.g.*, 17 C.F.R. § 240.17a-3 ("Records to be made by…brokers, and dealers"); 17 C.F.R. § 240.17a-4 ("Records to be preserved by…brokers, and dealers"); 17 C.F.R. § 240.17a-5 ("Reports to be made by…brokers, and dealers"); 17 C.F.R. § 240.17a-8 ("Financial recordkeeping and reporting of currency and foreign transactions").

Reporting and recordkeeping provisions like Section 17(a) are critically important because they "enable the relevant governmental authorities to perform their regulatory function." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 569 (1979). These required reports and records

"provide the regulatory authorities with the necessary information to oversee compliance with and enforce the various statutes and regulations with which they are concerned." *Id*. "The information contained in" reports broker-dealers must file pursuant to Section 17(a) "is intended to provide the Commission, the [securities exchanges], and other authorities with a sufficiently early warning to enable them to take appropriate action to protect investors" and the integrity of the markets. *Id*. at 570. Thus, the Commission's authority under Section 17(a) to require broker-dealers to "make and disseminate…reports" is central to its mission to protect the integrity of the markets and investors.

2. **The Commission's Enforcement of SAR Reporting and Recordkeeping Violations by Broker-Dealers is Consistent with the Text and Purpose of Section 17(a) and Rule 17a-8.**

The Commission adopted Rule 17a-8 to require registered broker-dealers to comply with the "reporting, recordkeeping and record retention requirements of chapter X of title 31 of the Code of Federal Regulations," which includes what is commonly referred to as the Bank Secrecy Act or "BSA." *See* 17 C.F.R. § 240.17a-8; Currency and Financial Transactions Reporting Act of 1970, 31 U.S.C. §§ 5311-5330, as amended by the USA PATRIOT Act (Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, Pub. L. No. 107-56, 115 Stat. 296 (2001)). When the Commission adopted Rule 17a-8, it determined that it was "consistent with the purposes of the Exchange Act"—which include the "the maintenance of fair and honest markets" and the "protect[ion] [of] interstate commerce," 15 U.S.C. § 78b—to require broker-dealers "to make the records and reports required by" the Department of Treasury under the BSA. *Recordkeeping by Brokers and*

*Dealers*, Release No. 34-18321, 46 Fed. Reg. 61,454, 61,455 (Dec. 17, 1981) ("...both the SEC and SROs will address broker-dealer compliance with this rule.").

Congress enacted the BSA to require reports useful in criminal, tax, or regulatory investigations or in the conduct of intelligence activities to protect against international terrorism. *See* 31 U.S.C. § 5311. In 2002, Congress amended the BSA to require broker-dealers like Alpine to file reports on certain suspicious transactions executed at or through their firms. *See* USA PATRIOT Act (Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, Pub. L. No. 107-56, 115 Stat. 296 (2001).

The Financial Crimes Enforcement Network ("FinCEN") is a bureau within the Treasury Department, 31 U.S.C. § 310, which has been delegated the authority to implement the BSA. *See* Treasury Order 180-01.1.[1] FinCEN requires broker-dealers like Alpine to file Suspicious Activity Reports or "SARs" on certain suspicious transactions. 31 C.F.R. § 1023.320. Broker-dealers must file reports on standard SAR forms, which require the filer to provide a complete description of the suspicious transaction. FinCEN rules under the BSA also require that a SAR be filed within "30 calendar days after the date of the initial detection by the reporting broker-dealer of facts that may constitute a basis of filing" and require broker-dealers to maintain SAR supporting documentation. *See* 31 C.F.R. § 1023.320(b)(3), 31 C.F.R. 1023.320(d).

The Commission had good reason to require broker-dealers to comply with these reporting obligations under Section 17(a). As the Commission has explained, the information provided by broker-dealers in SARs "provide invaluable leads" and have resulted in

---

[1] Available at https://www.treasury.gov/about/role-of-treasury/orders-directives/Pages/to180-01.aspx.

investigations of securities law violations "such as 'insider trading, offering frauds, market manipulation, [and] embezzlement of client funds." *Ronald S. Bloomfield et al.*, Exchange Act Release No.71,632, 2014 WL 768828, at *22 (Feb. 27, 2014), *aff'd, Bloomfield v. SEC*, 649 F. App'x 546 (9th Cir. 2016); *see also, Proposed Amendment to the Bank Secrecy Act Regulations—Requirement of Brokers or Dealers in Securities to Report Suspicious Transactions*, 66 Fed. Reg. 67670, 67671-72 (Dec. 31, 2001) (discussing "global role" played by broker-dealers and explaining that suspicious transaction reporting by broker-dealers "can provide significant information for criminal law enforcement, tax and regulatory authorities about potential criminal activity); *World Trade Fin. Corp.*, 739 F.3d at 1248 ("[V]iolations of the antifraud and other provisions of the securities laws frequently depend for their consummation on the activities of broker-dealers who fail to make diligent inquiry" regarding trades they execute.") (internal quotation marks omitted); *Money-Laundering:  It's on the SEC's Radar Screen*, Remarks at the Conference on Anti-Money Laundering Compliance for Broker-Dealers Securities Industry Association (May 8, 2001)[2] ("The use of the U.S. financial system by criminals to facilitate fraud could well taint our vibrant capital markets-which fuel our economy and hold the savings of our nation's investors.").

Clearing brokers like Alpine are particularly well-positioned "to monitor customer transaction activity, including but not limited to, trading, wire transfers, and the deposit and withdrawal into and out of accounts of different financial institutions." NASD Notice to Members 02-21, 2002 WL 544766 at *17. They are therefore particularly well-suited to assist law enforcement in detecting money laundering and other illegal activity, including securities

---

[2]   Available at http://www.sec.gov/news/speech/spch486.htm.

law violations. *Bloomfield*, 649 F. App'x at 549 (broker-dealers are "undoubtedly the front line in the detection and screening of suspicious transactions").

Pursuant to Congress's statutory grant of authority under Section 17(a), the Commission could have promulgated a rule that required broker-dealers to file reports similar to SARs with the Commission. But for the sake of regulatory efficiency and to avoid any conflicts with FinCEN, it instead cross-referenced FinCEN's reporting requirements. *See* 46 Fed. Reg. at 61,455.

The Commission can establish a violation of Section 17(a) and Rule 17a-8 by showing that a broker-dealer failed to comply with the SAR "reporting, recordkeeping and record retention requirements" promulgated by FinCEN to implement the BSA. 17 C.F.R. § 240.17a-8. A broker-dealer violates Rule 17a-8 when it fails to file a SAR, fails to include information in a SAR as required by FinCEN's rules, fails to timely file a SAR, or otherwise violates FinCEN's rules. *See Bloomfield*, 2014 WL 768828, at *16, 22. A failure to file a report or to provide the information required in a report is a failure to "provide the regulatory authorities with the necessary information" to detect problems and, accordingly, is a violation of Section 17(a). *Touche-Ross*, 442 U.S. at 560; *see also GAF Corp v. Milstein*, 453 F.2d 709, 720 (2d Cir. 1971) ("the obligation to file truthful statements is implicit in the obligation to file"); *SEC v. Savoy Indus., Inc.*, 587 F.2d 1149, 1165 (D.C. Cir. 1978) (reporting rules "undoubtedly create the duty to file truthfully and completely"); *SEC v. Jensen*, 835 F.3d 1100, 1112-13 (9th Cir. 2016) (same).

Under Section 21(d) of the Exchange Act, the Commission can seek, and the Court has the authority to impose, an injunction or monetary penalties for each violation. *See Touche Ross*,

442 U.S. at 570 n.10 ("A number of provisions of the 1934 Act," including Section 21, "provide the Commission with the authority needed to enforce the reporting requirements of § 17(a) and the rules adopted thereunder.") The Commission need not prove scienter, *SEC v. Drexel Burnham Lambert, Inc.*, 837 F. Supp. 587, 610 (S.D.N.Y. 1993) ("Scienter need not be shown to prove a violation of section 17(a)(1) of the Exchange Act and the rules thereunder."), and need not show that the broker-dealer was aware that its conduct violated the BSA regulations or the Exchange Act. *Wonsover v. SEC*, 205 F.3d 408, 414 (D.C. Cir. 2000). The Commission's Complaint and Motion for Partial Summary Judgment illustrate Alpine's violations. *See* Doc. Nos. 1, 74.

### 3.   The Commission Acted Within its Authority in Promulgating and Enforcing Rule 17a-8.

Alpine makes a series of arguments claiming that the Commission exceeded its authority under Section 17(a) when it issued Rule 17a-8 or that the Commission exceeds its authority under Rule 17a-8 when it enforces the rule to require broker-dealers to comply with SAR reporting requirements. Motion at 17-20. None of these agreements have merit.

First, Alpine claims that because Section 17(a) does not contain specific references to the BSA or SAR filing requirements, Rule 17a-8 exceeds the scope of the Commission's authority under the statute. *See* Motion at 17-18. But Section 17(a) does not purport to define the types of reports the Commission can require. Section 17(a) empowers the Commission to determine the specific records and reporting requirements broker-dealers such as Alpine must follow without reference to any specific records or reporting requirements. In other words, the fact that Section 17(a) does not reference the BSA or SAR filing requirements is no accident — through the plain language of the statute Congress expressly delegated to the Commission rulemaking authority to

10

determine what specific reporting and the recordkeeping obligations are "necessary or appropriate in the public interest, for the protection of investors." 15 U.S.C. § 78q(a). This is precisely what the Commission did when it promulgated Rule 17a-8.

Second, Alpine argues that Rule 17a-8 does not require broker-dealers to comply with the SAR-related rules under the BSA because the rule was enacted before the BSA's SAR filing requirements applied to broker-dealers. Motion at 19-20. However, when the Commission adopted Rule 17a-8, it purposefully declined to "specify the required reports and records so as to allow for any revisions the Treasury may adopt in the future." 46 Fed. Reg. at 61,455.[3] Accordingly, there was no need for the Commission to revisit Rule 17a-8 to extend its reach to broker-dealer SAR obligations, which FinCEN adopted pursuant to a formal rulemaking process. Rule 17a-8, by design, incorporated these requirements.

Third, Alpine erroneously claims that the Commission cannot pursue "substantive violations of reporting obligations" because the scope of Section 17(a) and Rule 17a-8 is limited to "record-keeping" and "record retention." *See* Motion at 3, 18-22. This argument is contrary to the plain language of the statute and the rule. Section 17(a) specifically requires broker-dealers to "*make* and disseminate such *reports* as the Commission, by rule prescribes…" 15 U.S.C. § 78q(a) (emphasis added). Further, Rule 17a-8 is titled "Financial recordkeeping *and reporting* of currency and foreign transactions" (emphasis added) and states that broker-dealers "shall comply with the *reporting*…requirements" (emphasis added) of the relevant Treasury regulations. 17 C.F.R. § 240.17a-8. Alpine selectively quotes from the Commission's adopting release for Rule

---

[3] The SEC received no comments on the rule proposal. *Id*. at 61,454. And since FinCEN adopted the SAR requirements, the Commission has confirmed that Rule 17a-8 mandates compliance with those reporting obligations. *See Bloomfield,* 2014 WL 768828, at *16, 22 (imposing penalties under Section 17(a) and Rule 17a-8 for failure to file SARs).

17a-8, 6 Fed. Reg. 61,454 (Dec. 19, 1981), to suggest that the Commission intended for the rule to be limited to "recordkeeping and retention requirements," Motion at 19, but a full reading of the release confirms that the "rule requires brokers and dealers to *file reports* and make and retain the records specified in the Treasury regulations." 46 Fed. Reg. at 61,455 (emphasis added). In *Boruski v. SEC,* a case cited by Alpine to suggest that Congress did not grant the Commission authority to promulgate reporting requirements through Section 17(a), Motion at 18, the Second Circuit instead found that Section 17(a) "empowers the Commission to require of broker dealers financial records <u>and reports</u> as may be necessary and appropriate in the public interest or for the protection of investors." *Boruski v. SEC*, 340 F.2d 991, 992 (2nd Cir. 1965) (emphasis added). Alpine's argument that Rule 17a-8 "at most" requires "broker-dealers to make and keep records required by the Treasury Regulations" cannot be reconciled with the plain language of the rule and underlying statute and should be rejected by the Court. *See Williams v. Taylor*, 529 U.S. 362, 404 (2000) ("It is … a cardinal principle of statutory construction that we must give effect, if possible, to every clause and word of a statute.").

Even if Alpine's argument was correct, which it is not, it would not support summary judgment in this case because the Commission has alleged that Alpine engaged in conduct that violated the "recordkeeping and record retention requirements" of the BSA and therefore Section 17(a) and Rule 17a-8. These unrebutted allegations alone defeat Alpine's Motion.[4]

---

[4] For example, the Commission alleges that Alpine failed to maintain and/or retain approximately 1,000 underlying files supporting its SAR filings in violation of 31 C.F.R. 1023.320(d), Section 17(a) and Rule 17a-8. *See, e.g.*, Complaint at ¶¶ 42-47. As another example, as set forth in the Complaint, "Alpine's written BSA Compliance Program did not accurately reflect what the firm did in practice. Alpine's day to day BSA Compliance Program fell short of what was actually prescribed by its policies and procedures." Complaint, at ¶ 5; *see also* Complaint, at ¶¶ 3, 17-19, 45. The SEC has alleged – and Alpine has not disputed – that Alpine's written supervisory procedures and other written BSA Compliance Program documentation were inaccurate. Alpine's inaccurate documentation of its BSA Compliance Program also violates the recordkeeping and record retention provisions of Section 17(a) of the

### C. Alpine's Arguments Regarding the Preclusive Effect of the BSA Are Meritless.

#### 1. The BSA Does Not Preclude the Commission From Requiring Broker-Dealers to Comply with SAR Requirements Under the Exchange Act.

Alpine suggests that the BSA precludes the Commission's enforcement of suspicious activity reporting requirements under the Exchange Act because Rule 17a-8 impermissibly "collides" with the BSA. *See* Motion at 16. It offers no legal authority to support its claim. In fact, nothing in the BSA precludes the Commission from issuing and enforcing its own rule promulgated under Section 17(a) to require the broker-dealers it regulates to file reports related to money laundering and suspicious activity. "[A]bsent a clearly expressed congressional intention," courts should give full effect to overlapping statutes unless they are "in 'irreconcilable conflict,' or where the latter Act covers the whole subject of the earlier one and is 'clearly intended as a substitute.'" *Carcieri v. Salazar*, 555 U.S. 379, 395 (2009). None of those three conditions are present here.

<u>First</u>, Congress expressed no clear intention – or intention of any kind – that the BSA preclude the Commission from requiring broker-dealers to report suspicious activity pursuant to the Exchange Act. No provision of the BSA "purports to govern the relevant interaction"

---

Exchange Act and Rule 17a-8 thereunder. *See* Complaint, at ¶¶ 3, 5, 17-19, 45; 17 C.F.R. § 240.17a-8 (Rule 17a-8 requires registered broker-dealers to comply with the "reporting, recordkeeping and record retention requirements" of the BSA and its implementing regulations); 31 C.F.R. 1023.210 (rule implemented under the BSA that requires broker-dealers to "implement[] and maintain[] an anti-money laundering program that complies with the rules, regulations, or requirements of its self-regulatory organization governing such programs"); FINRA Rule 3310 (a self-regulatory organization rule that requires member broker-dealers, like Alpine, to "develop and implement a written anti-money laundering program reasonably designed to achieve and monitor the member's compliance with the requirements of the [BSA], and the implementing regulations promulgated thereunder by the Department of the Treasury."); *see also Biremis Corporation*, Exchange Act Release No.68456, 2012 WL 6587520, at *14 (Dec. 18, 2012) (settled Commission administrative proceeding) ("Moreover, Biremis' 'Anti-Money Laundering Compliance Program,'…called for Biremis to 'monitor account activity for unusual size, volume, pattern or type of transactions' and to file a SAR for any suspicious activity…[b]y failing to do so Biremis failed to document accurately its Anti-Money Laundering Compliance Program in violation of Exchange Act Section 17(a) and Rule 17a-8 thereunder.")

between that statute and the Exchange Act, and the BSA "by its terms, do[es] not preclude" the Commission from requiring broker-dealers to file reports or keep records related to SARs or any other subject. *Pom Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228, 2237 (2014). Alpine's argument that enforcement authority under the BSA is not delegated to the Commission misses the point. *See* Motion at 16, 8-13. Congress granted authority to the Commission under Section 17(a), long before the passage of the BSA, to promulgate rules regarding broker-dealer reporting and record keeping obligations. 15 U.S.C. § 78q(a). Alpine identifies no provision of the BSA that limits the Commission's independent and pre-existing authority under the Exchange Act to issue rules regarding records and reports of broker-dealers, much less any evidence of a "clearly expressed congressional intention" to do so.

Moreover, Congress is well aware that the Commission requires broker-dealers to comply with anti-money laundering reporting requirements under the Exchange Act and has received numerous reports detailing the Commission's enforcement efforts related to those requirements. *See Bank Secrecy Act: Federal Agencies Should Take Action To Further Improve Coordination and Information-Sharing Efforts*, GAO Report No. 09-227, at 13-17, 33-39, 56 (February 2009);[5] *Anti-Money Laundering: Efforts in the Securities Industry*, GAO Report No. 02-111, 22-23 (October 2011);[6] *Money Laundering: Oversight of Suspicious Activity Reporting at Bank-Affiliated Broker-Dealers*, GAO Report No. 01-474, at 12-13 (March 2001).[7] "[I]f Congress had concluded, in light of experience," that the Commission's efforts "could interfere" with FinCEN's enforcement program under the BSA, "it might well have enacted a provision

---

[5]  Available at https://www.gao.gov/new.items/d09227.pdf.
[6]  Available at https://www.gao.gov/assets/240/232842.pdf.
[7]   Available at https://www.gao.gov/assets/240/231170.pdf.

addressing the issue" sometime in the last 37 years. *Pom Wonderful*, 134 S. Ct. at 2237.  That it has not "is powerful evidence that Congress did not intend [FinCEN] oversight to be the exclusive means of ensuring" that broker-dealers comply with anti-money laundering reporting requirements. *Id*. (citations omitted).

Second, there is no "irreconcilable conflict" between the suspicious activity reporting requirements of the BSA and the Exchange Act. As discussed below in Section I.C.2, the BSA and the Exchange Act—along with FinCEN's and the Commission's enforcement programs— "have coexisted since the passage" of the BSA in 1970 and the PATRIOT Act in 2001. *Pom Wonderful*, 134 S. Ct. at 2237. The anti-money laundering reporting and recordkeeping requirements under the Exchange Act are identical to those under the BSA. Indeed, as noted above, the Commission cross-referenced Treasury's reporting requirements, rather than promulgating separate anti-money laundering reporting requirements, to avoid any such conflict. 46 Fed. Reg. at 61,455.

Contrary to Alpine's suggestion, *see* Motion at 20-22, differences in the penalty provisions of the BSA and the Exchange Act do not establish an "irreconcilable conflict" between the statutes. The Supreme Court held in *United States v. Batchelder*, 442 U.S. 114, 118, 122 (1979), that even criminal statutes imposing different maximum terms of imprisonment for nearly identical conduct were "fully capable of coexisting." *See also Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 155 (1976) ("It is not enough to show that the two statutes produce differing results when applied to the same factual situation."). The Commission's authority to seek penalties under the Exchange Act for violations of Section 17(a) does not conflict with FinCEN's independent authority to seek penalties under the BSA. Similarly, the statements in

exhibits attached to the Motion indicating that FinCEN retains authority to enforce the BSA do not conflict with the Commission's concurrent authority under Section 17(a).

Finally, Congress did not intend for the BSA to "substitute" the Commission's authority to mandate reporting and recordkeeping requirements for broker-dealers under Section 17(a). The BSA does not even cover the entire universe of broker-dealer reporting requirements, let alone the "whole subject" of the Exchange Act. Quite the opposite, the BSA covers a small fraction of broker-dealer reporting obligations "with greater specificity" than the Exchange Act. *Pom Wonderful*, 134 S. Ct. at 2240. But that is no basis for finding that the BSA has preclusive effect where, as here, there is no indication that "there will be any difficulty in fully enforcing each statute according to its terms." *Id*.

### 2. There Is No Merit to Alpine's Argument That the Commission Has Encroached On FinCEN's Authority.

Alpine argues that the Commission is usurping or encroaching on FinCEN's enforcement authority under the BSA by adopting and enforcing Rule 17a-8. *See* Motion at 9-13, 14-17. This argument disregards not only the Commission's independent statutory authority under Section 17(a) to regulate broker-dealers, but also the long history of complementary regulation and enforcement by the Commission and FinCEN.

When FinCEN amended its SAR regulations in 2002 to apply to registered broker-dealers, it recognized that "both the SEC and SROs will address broker-dealer compliance with this rule" pursuant to Rule 17a-8, "which enables the SROs, subject to SEC oversight, to examine for BSA compliance." 67 Fed. Reg. 44,048, 44,049 (July 1, 2002); *see also* 66 Fed. Reg. at 67671 (FinCEN statement at proposal stage that "[a]ny effective system of suspicious transaction reporting needs to consider the existing broker-dealer regulatory structure"). It further

16

noted that "BSA compliance with non-suspicious activity reporting related provisions has been

included in the SEC examination *and enforcement* programs since the 1970s." 67 Fed. Reg. at

44,049, n.4 (emphasis added) (citing *Money-Laundering:  It's on the SEC's Radar Screen*,

Remarks at the Conference on Anti-Money Laundering Compliance for Broker-Dealers

Securities Industry Association (May 8, 2001));[8] *see also, e.g.*, *Development Corporation for

Israel*, Exchange Act Release No. 20434, 1983 WL 403061 (December 1, 1983) (SEC

enforcement action under Section 17(a) and Rule 17a-8 for failure to file reports required by the

BSA); *Dean Witter Reynolds, Inc.*, Exchange Act Release No. 24143, 1987 WL 757596 (Feb.

27, 1987) (same); *Thomas D. Pixley*, Exchange Act Release No. 27316, 1989 WL 992388 (Sept.

29, 1989) (same). There was no need for FinCEN to delegate enforcement authority under the

BSA to the Commission because the Commission was not enforcing the BSA. Rather, the

Commission was exercising its enforcement authority under the Exchange Act.

Since 2002, the Commission and FinCEN have worked together to ensure that broker-

dealers comply with their SAR obligations. The agencies share "examination and enforcement

information relating to SEC-regulated firms' compliance with the Bank Secrecy Act" pursuant to

a Memorandum of Understanding ("MOU"). *SEC and FinCEN Sign Information Sharing

Agreement*, Joint Release 2006-217 (Dec. 21, 2006).[9] FinCEN and the Commission stated that

the "SEC will provide FinCEN with detailed information on a quarterly basis regarding the

SEC's and the securities self-regulatory organizations' anti-money laundering examination *and

enforcement activities*." *Id.* (emphasis added). They further noted that "[t]he SEC and the self-

regulatory organizations (SROs) it oversees conduct examinations of the anti-money laundering

---

[8]  Available at http://www.sec.gov/news/speech/spch486.htm.
[9]  Available at https://www.sec.gov/news/press/2006/2006-217.htm.

obligations of securities firms *and enforce compliance with the relevant SEC and SRO rules*." *Id.* (emphasis added).

The Commission has regularly brought enforcement actions for SAR violations under the Exchange Act and Rule 17a-8,[10] including actions brought in parallel with FinCEN. For example, in 2015 the Commission and FinCEN filed parallel enforcement actions against Oppenheimer & Co., Inc. ("Oppenheimer") in which the Commission charged Oppenheimer for violating Section 17(a) of the Exchange Act and Rule 17a-8 and FinCEN charged Oppenheimer for violating provisions under the BSA. *Oppenheimer & Co., Inc.*, Exchange Act Release No. 74141, 2015 WL 331117 (Jan. 27, 2015) (settled administrative proceeding); *Oppenheimer & Co., Inc.*, Financial Crimes Enforcement Network, Assessment of Civil Money Penalty, No. 2015-01 ("*Oppenheimer FinCEN Order*") (settled order).[11] In its order, FinCEN again noted the Commission's authority to hold Oppenheimer liable for "failing to report a customer's suspicious activities" based on Oppenheimer's "violation of the Exchange Act § 17(a) and Rule 17a-8 thereunder." *Oppenheimer FinCEN Order* at 2. The Director of FinCEN further "expressed her appreciation to the SEC and FINRA for their contributions to the investigation…and their strong partnership with FinCEN." FinCEN, *FinCEN Fines Oppenheimer & Co. Inc. $20 Million for Continued Anti-Money Laundering Shortfalls*, (Jan. 27, 2015);[12] *see also, e.g.*, *Pinnacle Capital Markets, LLC and Michael A. Paciorek*, Exchange Act Release No. 62811, 2010 WL 3437456

---

[10] *See, e.g.*, *Park Financial Group, Inc.*, Exchange Act Release No. 56902 2007 WL 4258182 (Dec. 5, 2007); *Ferris, Baker, Watts, Inc.*, Exchange Act Release No. 59372, 2009 WL 321327 (Feb. 10, 2009); *Hold Brothers On-Line Investment Services, LLC*, 2012 WL 4359224 (Sept. 25, 2012); *Biremis Corporation*, Exchange Act Release No.68456, 2012 WL 6587520, at *14 (Dec. 18, 2012); *Albert Fried & Company, LLC*, Exchange Act Release No. 77971, 2016 WL 3072175 (June 1, 2016); *Wells Fargo Advisors, LLC*, Exchange Act Release No. 82054, 2017 WL 5248280 (Nov. 13, 2017); *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, Exchange Act Release No. 82382, 2017 WL 6554178 (Dec. 21, 2017).

[11]  Available at https://www.fincen.gov/sites/default/files/enforcement_action/Oppenheimer_Assessment_20150126.pdf.

[12] Available at https://www.fincen.gov/sites/default/files/news_release/20150127.pdf.

(Sept. 1, 2010); *Pinnacle Capital Markets, L.L.C. Raleigh, NC*, Department of the Treasury

Financial Crimes Enforcement Network, Assessment of Civil Money Penalty, No. 2010-4[13]

(FinCEN charged Pinnacle for violating the BSA and the SEC charged Pinnacle for violating

Section 17(a) and Rule 17a-8).

      The agencies' cooperation is also evident from joint guidance they have provided and

rulemakings they have issued. *See, e.g.*, *Guidance on Obtaining and Retaining Beneficial*

*Ownership*, Joint Release, Exchange Act Release No. 61651, 2010 WL 750752, (Mar. 5, 2010);

*Customer Identification Programs for Broker-Dealers*, 68 Fed. Reg. 25113 (May 9, 2003); *see*

*also* FinCEN, *Guidance on Sharing of Suspicious Activity Reports by Securities Broker-Dealers,*

*Futures Commission Merchants, and Introducing Brokers in Commodities*[14] (FinCEN guidance

issued "after consulting with staff of the U.S. Securities and Exchange Commission").

      In sum, FinCEN and the Commission have coordinated their efforts to hold broker-

dealers accountable for SAR violations for many years. The Commission's authority under the

Exchange Act is complementary to FinCEN's authority under the BSA, not in conflict with it.

Further, the long history of coordination between the agencies alleviates any concerns regarding

the consistent application of SAR requirements or interference with FinCEN's prerogatives.

### 3.   The Second Circuit's Decision in *Lissack* Is Irrelevant.

      Alpine erroneously claims that *U.S. ex rel. Lissack v. Sakura Global Capital Mkts., Inc.*,

377 F.3d 145 (2d Cir. 2004), precludes the Commission from enforcing SAR violations pursuant

to the Exchange Act and Rule 17a-8. Motion at 14-15. In *Lissack*, the court held that a claim by a

---

[13]   Available at https://www.fincen.gov/sites/default/files/enforcement_action/Final%20Pinnacle%20Assessment%20for%20FinCEN%20Internet%20with%20Date%20and%20No%20Signature.pdf.

[14]   Available at https://www.fincen.gov/resources/statutes-regulations/guidance/guidance-sharing-suspicious-activity-reports-securities.

*private party* acting on behalf of the U.S. government under the False Claims Act ("FCA") could not base its claims on violations of the tax code because of the "Tax Bar" provision in the FCA. *Id*. at 152, 155. That provision states that the FCA "does not apply to claims, records, or statements made under the Internal Revenue Code of 1986." *Id.* at 155. The court stated that the fact that the IRS has the "jurisdiction to remedy" the underlying tax law violations at issue in the case implicates "the evident purpose of the Tax Bar, which is to prevent *private litigants* from interfering with the IRS' efforts to enforce the tax laws." *Id*. at 156 (citations omitted) (emphasis added).

Unlike the FCA, there is no statutory provision in the BSA precluding the enforcement of SAR requirements by the Commission—a government entity—under the Exchange Act, or otherwise limiting the Commission's preexisting authority to require its registrants to create reports and keep records. While Congress was concerned that private litigants' FCA claims could interfere with IRS enforcement of the tax code, it is generally assumed that agencies are capable of "administering their [overlapping] obligations and yet avoid[ing] inconsistency." *Massachusetts v. EPA*, 549 U.S. 497, 532 (2007). Indeed, in *Lissack* itself, the underlying misconduct implicated both the tax laws and the securities laws; tellingly, the court recounted that the case was therefore investigated by the Commission, the IRS, and the Department of Justice, leading to a $200 million settlement with "the Government" and gave no hint that such joint activity posed any problem under the FCA or otherwise. *Lissack*, 377 F.3d at 151. As the discussion in Section I.C.2 above demonstrates, the Commission and FinCEN likewise have demonstrated the capability to administer their respective obligations in a complementary fashion.

20

## II.   ALPINE'S MOTION FOR JUDGMENT ON THE PLEADINGS SHOULD BE DENIED BECAUSE THE COMMISSION IS NOT REQUIRED TO ESTABLISH WILLFUL OR NEGLIGENT VIOLATIONS OF THE BSA TO PROVE VIOLATIONS OF SECTION 17(a) AND RULE 17a-8.

Alpine's argument that the Commission was required "to allege that Alpine 'willfully' or 'negligently' violated the BSA" fails because it misstates the Commission's claim and the elements it is required to plead. *See* Motion at 22-25. As discussed in detail in Section I.A., the Commission brought this case under Section 17(a) of the Exchange Act and Rule 17a-8, not the BSA. Section 17(a) and Rule 17a-8 do not require the Commission to show that Alpine willfully or negligently violated the statute or the rule, or the BSA, to establish a violation. Indeed, Alpine does not offer any authority to support its argument that the Commission has to make such a showing. Accordingly, Alpine's assertion that the BSA remedy provisions require evidence of willfulness or negligence is irrelevant. Alpine's argument that the Commission is required to plead purported elements of a claim that it did not bring should be rejected.

Moreover, Alpine violates not only the Exchange Act and Rule 17a-8, but also the BSA and its rules, when it fails to comply with SAR requirements, regardless of whether it did so negligently or willfully within the meaning of the BSA remedy provisions. The regulations that Alpine relies on to claim that the BSA requires a showing of negligence or willfulness govern remedies for violations of the BSA, not whether a broker-dealer violated the BSA by failing to comply with its reporting or recordkeeping provisions. *See* 31 U.S.C. § 5321. The BSA, like the Exchange Act, does not require an additional showing that the broker-dealer willfully or negligently violated the underlying rule to establish that it was in fact violated.

While negligence and willfulness are not elements of Section 17(a) and Rule 17a-8 violations, Section 21(d) of the Exchange Act allows the Court to consider these factors when

21

determining to impose an injunction and penalties. 15 U.S.C. § 78u(d). Section 21(d) provides

for three tiers of penalties. 15 U.S.C. § 78u(d)(3). First tier penalties can be imposed by the court

in an amount to be determined by the court "in light of the facts and circumstances." *Id.* at §

78u(d)(3)(B)(i). Second tier penalties can be imposed if the violation "involved fraud, deceit,

manipulation, or deliberate or reckless disregard of a regulatory requirement." *Id.* at §

78u(d)(3)(B)(ii). Third tier penalties can be imposed if the violation "involved fraud, deceit,

manipulation, or deliberate or reckless disregard of a regulatory requirement" and the violation

"resulted in substantial losses or created a significant risk of substantial losses to other persons."

*Id.* at § 78u(d)(3)(B)(iii). Willfulness and negligence are not necessary to show that Alpine

violated the Exchange Act, but will be relevant to the Court's determination of the appropriate

relief to grant the Commission for Alpine's violations.

Although the Commission is not required to allege negligence or willfulness under BSA

remedy provisions to state its claim for violations of the Exchange Act and Rule 17a-8, the

Commission alleged ample facts to meet these standards. Indeed, the Commission alleged facts

that are more than sufficient to show Alpine acted with at least a "deliberate or reckless disregard

of a regulatory requirement." 15 U.S.C. § 78u(d)(3)(b)(ii). For example, the Commission alleges

that Alpine committed systematic and widespread SAR failures resulting in its filing of nearly

2,000 insufficient SARs, and failure to file SARs on suspicious liquidation transactions related to

over 1,000 suspicious deposits. *See, e.g*., Complaint, at ¶ 3. The sheer volume of the violations is

sufficient to show that they were no accident. Additionally, the Commission alleges that Alpine

committed these violations despite publicly available guidance that was incorporated into its own

BSA compliance program and that Alpine continued its violations even after regulators

repeatedly cited it for its SAR filing deficiencies. *See, e.g.*, Complaint at ¶¶ 3-5, 22-27. Even

though the Commission was not required to plead "willfulness" or "negligence" these alleged

facts more than meet these standards.

## **CONCLUSION**

For the reasons above the Commission respectfully requests that the Court deny Alpine's

Cross-Motion for Summary Judgment and Motion for Judgment on the Pleadings.

Respectfully submitted this 9th day of February, 2018.

> */s/ Zachary T. Carlyle*
> Zachary T. Carlyle (*pro hac*)
> Terry R. Miller (*pro hac*)
> Attorneys for Plaintiff
> UNITED STATES SECURITIES AND
> EXCHANGE COMMISSION
> 1961 Stout Street, 17th Floor
> Denver, Colorado 80294
> (303) 844-1000

23

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 9, 2018, a copy of the foregoing document was served via ECF

upon the following:

Brent R. Baker
Aaron D. Lebenta
Jonathan D. Bletzacker
CLYDE SNOW & SESSIONS
One Utah Center, 13th Floor
201 South Main Street
Salt Lake City, Utah 84111-2216

Maranda E. Fritz
Thompson Hine LLP (NYC)
335 Madison Avenue, 12th Floor
New York, NY 10017

*Counsel for Alpine Securities Corporation*

*/s/ Marla J. Pinkston*
Marla J. Pinkston