UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | Civil No. 1:17-CV-04179-DLC |
| Plaintiff, | |
| v. | Honorable Judge Denise L. Cote<br>Magistrate Judge Ronald L. Ellis |
| ALPINE SECURITIES CORPORATION, | **ECF CASE** |
| Defendant. | |

**ALPINE SECURITIES CORP.'S REPLY MEMORANDUM OF LAW IN
SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT AND
MOTION FOR JUDGMENT ON THE PLEADINGS**



335 Madison Avenue, 12th Floor
New York, New York 10017
(212) 344-5680



One Utah Center
201 South Main Street, Suite 1300
Salt Lake City, Utah 84111-2216
(801) 322-2516

*Attorneys for Alpine Securities Corp.*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 2

POINT I.  THE ABSENCE OF A DELEGATION OF AUTHORITY TO THE SEC TO
ADMINISTER OR ENFORCE THE BSA AND THE SEC'S FAILURE TO
FOLLOW THE PROCEDURAL REQUIREMENTS OF THE A.P.A. IS
DISPOSITIVE OF THE SEC'S INABILITY TO PURSUE ITS CLAIM IN THIS
CASE. ........................................................................................................... 2

    A.  Congress's Express Delegation of Authority to the Treasury Department to
Administer and Enforce the BSA is Both Relevant and Controlling of the SEC's
Lack of Authority ................................................................................................ 2

    B.  The Commission Does Not Have Authority Under Section 17 or Rule 17a-8 to
Re-Enact or Enforce SAR Filing Requirements. ................................................ 6

        1.  Section 17(a) Does Not Empower the SEC to Re-Enact and Enforce the
SAR Filing Requirement ........................................................................ 7

        2.  The SEC's Position Conflicts with the BSA and Its Implementing Rules.
..................................................................................................... 10

        3.  The 1981 Issuance of Rule 17a-8 Did Not Include the
SAR Requirements .............................................................................. 11

POINT II. THE SEC'S COMPLAINT IS FATALLY DEFECTIVE FOR FAILING TO
ALLEGE THAT ALPINE WILLFULLY OR NEGLIGENTLY VIOLATED THE
BSA ........................................................................................................... 14

CONCLUSION ................................................................................................................ 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*American Bankers Ass'n v. S.E.C.*,
    804 F.2d 739 (D.C. Cir. 1986) ..................................................................................7

*Bayou Lawn & Landscape Servs. v. Sec'y of Labor*,
    713 F.3d 1080 (11th Cir. 2013) ...............................................................................4, 5

*California v. Klepp*,
    604 F.2d 1187 (9th Cir. 1979) .............................................................................5, 9, 10

*Chrysler Corp. v. Brown*,
    441 U.S. 281 (1979)..................................................................................................13

*City of Idaho Falls v. F.E.R.C.*,
    629 F.3d 222 (D.C. Cir. 2011) ................................................................................14

*City of New York v. Diamond*,
    379 F. Supp. 503 (S.D.N.Y. 1974) .........................................................................13

*F.D.A. v. Brown & Williamson Tobacco Corp.*,
    529 U.S. 120 (2000)...................................................................................................8

*Haitian Ctrs. Council, Inc. v. Sale*,
    823 F. Supp. 1028 (E.D.N.Y. 1993) .........................................................................3

*Halverson v. Slater*,
    129 F.3d 180 (D.C. Cir. 1997) .................................................................................4

*Judulang v. Holder*,
    565 U.S. 42 (2011)......................................................................................................8

*U.S. ex rel. Lissack v. Sakura Global Capital Mkts., Inc.*,
    377 F.3d 145 (2d Cir. 2004).......................................................................................3

*Louisiana Pub. Serv. Comm'n v. F.C.C.*,
    476 U.S. 355 (1986)....................................................................................................3

*Nutritional Health Alliance v. F.D.A.*,
    318 F.3d 92 (2d Cir. 2003).....................................................................................5, 8, 9

*POM Wonderful, LLC v. Coca-Cola Co.*,
    134 S. Ct. 2228 (2014)................................................................................................5

*Porter v. Nussle,*
    534 U.S. 516 (2002) .................................................................................................12

*Pratt & Whitney Aircraft, Div. of United Techs. Corp. v. Donovan,*
    715 F.2d 57 (2d Cir. 1983) ......................................................................................7

*Rapanos v. U.S.,*
    547 U.S. 715 (2006) .................................................................................................6

*S.E.C. v. Collins & Aikman Corp.,*
    256 F.R.D. 403 (S.D.N.Y. 2009) ...........................................................................15

*S.E.C. v. Sloan,*
    436 U.S. 103 (1978) ..............................................................................................6, 7

*Sprint Corp. v. F.C.C.,*
    315 F.3d 369 (D.C. Cir. 2003) ..............................................................................13

*United States v. Giordano,*
    416 U.S. 505 (1974) .........................................................................................3, 4, 5

*United States v. Picciotto,*
    875 F.2d 345 (D.C. Cir. 1989) ..........................................................................13, 14

*United States v. Pomerantz,*
    No. C16-0689JLR, 2017 WL 2483213 (W.D. Wash. June 8, 2017) .....................15

*Westport Ins. Corp. v. Napoli, Kaiser & Bern,*
    746 F. Supp. 2d 502 (S.D.N.Y. 2010) ....................................................................3

*Zuber v. Allen,*
    396 U.S. 168 (1969) .................................................................................................6

**Statutes & Rules**

1 C.F.R. § 51.1(f) .........................................................................................................14

5 U.S.C § 552 ..............................................................................................................13

5 U.S.C. § 706(2)(c) ......................................................................................................3

31 U.S.C. § 5318(g) .......................................................................................................9

31 U.S.C. § 5321 ..........................................................................................................15

46 Fed. Reg. 61,454, 61,455 (Dec. 17, 1981) ............................................................12

Administrative Procedures Act, 5 U.S.C. § 553 ....................................................13, 14

Bank Secrecy Act, 31 U.S.C. §§ 5311-5332........................................................................... *passim*

Securities Exchange Act
   § 17(a) .................................................................................................................... *passim*

Defendant Alpine Securities Corporation ("Alpine"), files this Reply Memorandum in Support of its Cross-Motion for Summary Judgment and its Motion for Judgment on the Pleadings ("Cross-Motions") against the Securities and Exchange Commission ("SEC").

## INTRODUCTION

Given the positions taken by the SEC in its Opposition, the questions confronting this Court are now clear.  Was the Commission empowered under Section 17(a) of the Exchange Act to issue a rule "re-enacting" a separate statutory scheme under the Bank Secrecy Act ("BSA") and thereby confer on the SEC the authority to administer, regulate and enforce the suspicious activity reporting ("SAR") requirements of the BSA that were expressly entrusted by Congress to a different department of the government? Secondly, even if it could have lawfully accomplished that feat, did the Commission ever properly promulgate a rule that incorporated the 2002 SAR reporting requirements or that addressed enforcement authority?  The answer to both questions is plainly no.

The SEC continues to propound its unprecedented and industry-altering positions without addressing the extensive authority that supports each aspect of Alpine's argument, and without citing to any substantial authority to support its own position.  The SEC does not refute the consistent and clear delegation of authority solely to Treasury and to FinCEN in relation to the BSA. Time and again, FinCEN has reinforced its retention of rulemaking, interpretive and enforcement authority.  The SEC has not identified any decision that has reached the conclusion that is the predicate for this case: that the SEC has managed by rule to subsume and therefore can enforce the BSA.  This Court would be the first to endorse the SEC's convoluted and deficient arrogation of that authority, and enable the SEC to deploy, as it sees fit and without coordination with FinCEN, a stripped-down version of the BSA that creates an actionable violation without consideration of the elements of scienter embedded in the BSA by Congress.

1

Equally deficient is the SEC's assertion that it possesses some kind of concurrent authority by virtue of the Commission's passage of Rule 17a-8. The SEC does not possess the power to override clear Congressional delegations of authority. Further, the issuance of Rule 17a-8 *in 1981* did not confer on the Commission the ability to pursue claims under provisions that were enacted decades later and that were never the subject of any proper agency action.

## ARGUMENT

### POINT I.

### THE ABSENCE OF A DELEGATION OF AUTHORITY TO THE SEC TO ADMINISTER OR ENFORCE THE BSA AND THE SEC'S FAILURE TO FOLLOW THE PROCEDURAL REQUIREMENTS OF THE A.P.A. IS DISPOSITIVE OF THE SEC'S INABILITY TO PURSUE ITS CLAIM IN THIS CASE.

### A.    Congress's Express Delegation of Authority to the Treasury Department to Administer and Enforce the BSA is Both Relevant and Controlling of the SEC's Lack of Authority.

Alpine has previously detailed both the law governing the exercise of authority by an administrative agency and the specific statutory and regulatory provisions of the BSA which grant the authority to administer the BSA, enforce the BSA, and issue rules under the BSA to Treasury – specifically to the Secretary of the Treasury ("Treasury Secretary") and to FinCEN – and *not* the SEC. (Alpine's Br. Summ. J. 4-13.) In response, the SEC makes no attempt to rebut Alpine's authorities or claim that it has been delegated authority to pursue an alleged violation of the BSA. Instead, the SEC brushes aside the statutes, regulations and case law cited by Alpine, claiming that specific Congressional delegation of authority is "irrelevant." (SEC Opp. Br. 3-4.)

As an initial matter, the Court must address the SEC's attempt to characterize this case as something other than an action for violations of the BSA. Alpine demonstrated in its opening brief that, regardless of the SEC's invocation of the books and records provisions of Section 17(a), this action is, in substance, one for violation of the SAR requirements of the BSA, and

2

well-established principles establish that it is the substance, rather than the label, of allegations that controls.[1]  The SEC does not contest the applicability of these principles, or that its claims rise or fall based on its allegations that Alpine violated the SAR requirements of the BSA.

Nevertheless, the SEC attempts to distinguish *Lissack* on the basis that it involved a claim by a "private party" rather than a governmental entity.  (SEC Opp. Br. 19-20).  That distinction does not, however, alter or undermine the holding and reasoning of the case, *i.e.,* that the claim there hinged on purported violations of the tax laws and so was precluded by the delegation of authority for enforcement of those laws.  The same principle applies here: the SEC's action is predicated solely upon a violation of SAR requirements of the BSA and its implementing regulations.  *Lissack* demonstrates that the SEC's effort to recast this case as something other than a claim for violations of the BSA should be rejected. 377 F.3d at 153-54.

Regardless of the verbiage used by the SEC to describe its claim, the undisputed facts and law demonstrate that the SEC has not been delegated authority to administer the BSA or pursue an enforcement action predicated on an alleged violation of the BSA.  That the authority instead resides in FinCEN not only is relevant, it is dispositive.  As discussed in Alpine's opening brief, a federal agency "literally has no power to act" absent a proper conferral of authority, *see, e.g., Louisiana Pub. Serv. Comm'n v. F.C.C.,* 476 U.S. 355, 374 (1986), and courts routinely invalidate agency actions that are contrary to Congressional delegations.[2]  Here, Congress's decision to delegate authority to administer and enforce the BSA to the Treasury Department, combined with the absence of such a delegation to the SEC, deprives the SEC of the power to bring an enforcement action predicated on a violation of the BSA.

---

[1] *See* Alpine's Br. Summ. J. 14-15 (citing *Westport Ins. Corp. v. Napoli, Kaiser & Bern*, 746 F. Supp. 2d 502, 508 (S.D.N.Y. 2010) and *U.S. ex rel. Lissack v. Sakura Global Capital Mkts., Inc.*, 377 F.3d 145, 152-53, 157 (2d Cir. 2004)).

[2] *See* Alpine's Br. Summ. J. 5-6 , 16 and fn.1 for discussion of authorities invalidating improper exercise of authority by agencies without, or contrary to, congressional delegations of authority, including, *e.g., Haitian Ctrs. Council, Inc. v. Sale*, 823 F. Supp. 1028, 1046 (E.D.N.Y. 1993); 5 U.S.C. § 706(2)(c); *United States v. Giordano*, 416 U.S. 505, 508 (1974).

3

The SEC attempts to upend these principles concerning delegation of authority, claiming that there is no provision in the BSA that *precludes* the SEC from enforcing the SAR requirements.  (SEC Opp. Br. 13-20.)  The argument is both misguided and baseless. Contrary to the SEC's claim, Congress's express delegation of an enumerated "power" in one body *does* preclude the exercise of such power by any other body that lacks such a delegation.  *See, e.g., Giordano,* 416 U.S. at 508 (where statute "conferr[ed] power on the 'Attorney General, or any Assistant Attorney General specially designated by the Attorney General'" to authorize wiretap applications, the court held that power could not "be exercised by any individuals other than the Attorney General or an Assistant Attorney General specially designated by him" and "precise language forbidding delegation" was not necessary).

Further, courts will not presume a delegation from silence. "'Were courts to *presume* a delegation of power absent an express *withholding* of such power, agencies would enjoy virtually limitless hegemony, a result plainly out of keeping with *Chevron* [*v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984)] and quite likely with the Constitution as well.'"  *Halverson v. Slater,* 129 F.3d 180, 187 (D.C. Cir. 1997) (emphasis in original); *accord Bayou Lawn & Landscape Servs. v. Sec'y of Labor*, 713 F.3d 1080, 1085 (11th Cir. 2013) (same).

The Eleventh Circuit's decision in *Bayou Lawn* illustrates the flaws in the SEC's reasoning. There, the Department of Labor ("DOL") issued rules for a program where rulemaking authority for that program had been granted to the Department of Homeland Security ("DHS").  *Bayou Lawn*, 713 F.3d at 1084.  DOL attempted to defend its rulemaking by arguing that because DHS was required to "consult" with DOL, this "empowered [DOL] to engage in rulemaking, even *without* the DHS."  *Id.* The Court rejected "this interpretation of 'consultation'" as "an absurd reading of the statute," finding DOL "cannot bootstrap that

supporting role into a co-equal one." *Id.* The Court also rejected DOL's claim that the "'text, structure and object' of the statute evinces a congressional intent that DOL should exercise rulemaking authority." *Id.* The Court held that "congressional silence" is not a "sufficient basis upon which an agency may build rulemaking authority," and that it "would be hard-pressed to locate that power in one agency where it had been specifically delegated by Congress to a different agency." *Id.* at 1084-85.

The Supreme Court's decision in *POM Wonderful, LLC v. Coca-Cola Co.,* 134 S. Ct. 2228 (2014), heavily relied upon by the SEC, does not change this conclusion. Rather, this decision is notable primarily for its distinctions. *POM Wonderful* did not involve one agency's attempt to enforce the requirements of a statutory scheme entrusted solely to another agency, or the validity of a *rule* issued by one agency that conflicts with an express Congressional delegation of authority to another agency. Rather, *POM Wonderful* addressed only whether the Food, Drug and Cosmetics Act ("FDCA") precluded a claim by a private party under the Lanham Act. *See id.* at 2233. In holding the FDCA did not preempt Lanham Act claims, the Supreme Court noted that the two acts of Congress were "complementary," and provide "distinct functional aspects" with "separate scopes and purposes" and "different requirements and protections." *Id.* at 2239-40. The decision in no way suggests the Supreme Court intended to displace the well-honed precedent that limits an agency's exercise of authority to Congress's specific delegations.[3] In fact, the Supreme Court reaffirmed these limitations by stating that "[a]n agency may not reorder federal statutory rights without congressional authorization." *POM Wonderful*, 134 S. Ct. at 2241. Thus, the clear and express delegation of authority to the Treasury

---

[3] *See* authorities discussed in Alpine's Br. Summ. J. 5-6 , 16 and fn.1; *see also Giordano* and *Bayou Lawn,* discussed *supra; see also Nutritional Health Alliance v. F.D.A.,* 318 F.3d 92 (2d Cir. 2003) *and California v. Klepp,* 604 F.2d 1187 (9th Cir. 1979), discussed *infra.*

Department precludes the SEC from bringing an enforcement action for an alleged violation of SAR requirements of the BSA.[4]

### B.    The Commission Does Not Have Authority Under Section 17 or Rule 17a-8 to Re-Enact or Enforce SAR Filing Requirements.

The SEC does not dispute that it lacks authority to implement, enforce, or promulgate rules under the BSA but maintains that the alleged SAR failures "also violated the Exchange Act." (SEC Opp. Br. 1, 3.)   It thus insists that, notwithstanding the express delegation of authority to the Treasury Department, it possessed the ability under the Exchange Act to simply incorporate *via* rule the reporting requirements set forth in the Treasury's BSA regulations and thereby confer on itself the authority to enforce them.

Because the BSA was eventually revised to include broker-dealers among the great many financial institutions subject to its requirements, and the SEC is the agency that deals directly with broker-dealers, the SEC's claim that it is permitted to enforce the BSA requirements may have some superficial appeal.   But careful consideration of the SEC's claim reveals that it is startling, unprecedented and as baseless as if it had claimed it could incorporate – and then enforce – tax filing requirements under Section 17(a) because those tax filings constitute a form of "report" that is required of broker-dealers.

As demonstrated below, the SEC's contentions contravene fundamental legal requisites. First, Section 17 of the Exchange Act, in essence a books and records provision, could not and

---

[4] The SEC also claims that Congress received GAO reports noting SEC enforcement efforts relating to "anti-money laundering reporting requirements," and argues that if Congress thought this could interfere with FinCEN's enforcement program it would have enacted legislation addressing the issue.  (SEC Opp. Br. 14.)  Courts routinely reject arguments that congressional inaction or silence constitutes approval.  *See Zuber v. Allen*, 396 U.S. 168, 185 (1969) (describing congressional silence as a "poor beacon to follow"); *Rapanos v. U.S.*, 547 U.S. 715, 750 (2006) (refusing to rely on Congress's inaction because "Congress takes no government action except by legislation," and to rely on congressional acquiescence there must be "evidence that Congress considered and rejected the '*precise issue*' presented before the Court."); *S.E.C. v. Sloan*, 436 U.S. 103, 121 (1978) ("We are extremely hesitant to presume general congressional awareness of the Commission's construction based only upon a few isolated statements in the thousands of pages of legislative documents," for "its invocation would result in a construction of the statute which . . . is extremely far reaching in terms of the virtually untrammeled and unreviewable power it would vest in a regulatory agency.")

did not authorize the SEC to usurp another agency's entire substantive and subjective reporting regime and confer enforcement authority on itself.   In addition, and beyond cavil, Rule 17a-8, promulgated in 1981, could not properly address or incorporate SAR filing requirements that did not exist until 2002, and the Commission never took the necessary steps in 2002 to adopt or appropriate to itself enforcement authority relating to those new SARs filing requirements.

### 1.  Section 17(a) Does Not Empower the SEC to Re-Enact and Enforce the SAR Filing Requirement

On the threshold issue of the scope of Section 17(a), the SEC insists that, because that provision includes the word "reports," Congress empowered the Commission to promulgate rules requiring the filing of any kind of report *and* to penalize the filing of allegedly "inadequate" reports under a strict liability standard.  (SEC Opp. Br. 5-7).  Aside from its reference to the word "reports" in Section 17(a), the SEC offers no authority to support an interpretation of the scope of Section 17(a) that authorizes the SEC to expand its jurisdiction.  Indeed, as discussed in Alpine's opening Memorandum and *ignored* by the SEC, the D.C. Circuit rejected an analogous attempt by the SEC to expand its jurisdiction in *American Bankers Ass'n v. S.E.C.,* 804 F.2d 739 (D.C. Cir. 1986), which held:  "[t]he SEC cannot use its definitional authority to expand its own jurisdiction and to invade the jurisdiction of other agencies, including the Board of Governors" of the Federal Reserve Board.  *Id.* at 755.

Where the SEC puts forth the claim that the Commission has the authority to reiterate and enforce the BSA obligations, it cites the decision in *Bloomfield v. SEC*.[5]  (SEC Opp. Br. 8).

---

[5]   The SEC also cites settled SEC administrative decisions where the SEC's authority was neither raised nor litigated.  (*See* SEC's Opp. Br. 18 and fn.10.)  These settled administrative decisions are not even persuasive authority and should be summarily disregarded. *Cf.  Pratt & Whitney Aircraft, Div. of United Techs. Corp. v. Donovan*, 715 F.2d 57, 62 (2d Cir. 1983) ("Neither the Secretary by regulation nor the Commission by decision can extend the scope of [a statute] beyond the boundaries defined by Congress" and noting in support that "'[a]n agency may not bootstrap itself into an area in which it has no jurisdiction by repeatedly violating its statutory mandate.'" (citations omitted)); *Sloan*, 436 U.S. at 117-18  (holding "prior administrative practice," even a "consistent and longstanding one" does not "relieve" court of "responsibility to determine whether that practice is consistent with

*Bloomfield* provides no support for the SEC's position because in *Bloomfield* there was

absolutely no consideration of the issue; the SEC advanced its claims and the respondent did not

object. In fact, the SEC is asking *this* Court to rule, for the first time, that it managed to imbue

itself with the authority to enforce the SAR filing requirements of the BSA.

Perhaps more importantly, whatever authority Section 17(a) granted to the SEC cannot be

determined by examining that statute in isolation.  Rather, the extent of the authority that exists

under Section 17(a) is constrained both by its terms and by subsequent specific legislation:

> The 'classic judicial task of reconciling many laws enacted over time, and getting
> them to make sense in combination, necessarily assumes that the implications of a
> statute may be altered by the implications of a later statute.' ***This is particularly
> so where the scope of the earlier statute is broad but the subsequent statutes
> more specifically address the topic at hand . . . . '[A] specific policy embodied in
> a later federal statute should control our construction of the [earlier] statute,
> even though it ha[s] not been expressly amended.'***

*F.D.A. v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 143 (2000) (citations omitted)

(emphasis added).

In *Nutritional Health Alliance*, the Second Circuit relied on these principles to hold that

the FDA had not been delegated authority by Congress to regulate "packaging" of drugs and

dietary supplements for "poison prevention purposes," 318 F.3d at 95, despite the FDA's "broad

authority" under the FDCA to regulate "food and drugs in order to protect public health." *Id.* at

98. The Court noted that later-enacted statutes specifically targeted poison-prevention packaging

and transferred the regulation of poison-prevention packaging from the FDA to another agency,

the Consumer Product Safety Commission ("CPSC"). *See id.* at 94, 102-03.  The Court observed

that, under *Brown & Williamson,* it would not defer to, or adopt an interpretation of, the FDCA

proffered by the FDA that allowed it to "circumvent the detailed regulatory scheme" put in place

the agency's statutory authority," particularly where it is "not apparent from the record that . . . the Commission
actually addressed in any detail the statutory authorization under which it took that action"); *Judulang v. Holder*,
565 U.S. 42, 61 (2011) ("Arbitrary agency action becomes no less so by simple dint of repetition.").

by Congress for poison-prevention packaging because of the specificity of the subsequent legislation granting the authority to another agency and the "discordant tone" struck by the FDA's claim of "concurrent jurisdiction."  529 U.S. at 104.

Similarly, in *California v. Klepp,* 604 F.2d 1187(9th Cir. 1979), the Court held that the Environmental Protection Agency ("EPA") could not exercise control over air quality in the outer continental shelf under the Clean Air Act because a more specific statute, the Outer Continental Shelf Lands Act ("OCSLA"), granted such authority to the Secretary of the Interior ("Interior Secretary").  *Id.* at 1192-94.  The Court noted that the OSCLA delegated that authority to administer the statute and promulgate air quality restrictions to the Interior Secretary, and "the plain meaning [of the statute] provides no suggestion that such authority is to be shared."  *Id.* at 1193-94.  "[S]imultaneous jurisdiction by the EPA . . . would impair or frustrate the authority [the OSCLA] grants to the Secretary."  *Id.* at 1194.

So it is here. The BSA was enacted decades after the Exchange Act and expressly delegated rulemaking, administration and enforcement authority with respect to the BSA solely in the Treasury Department.  Congress could have elected to split this authority with the SEC, but did not.  *See* 31 U.S.C. § 5318(g).  The BSA and its implementing regulations "specifically and unambiguously" cover the subject matter of SAR reporting and recordkeeping requirements. As in *Klepp* and *Nutritional Health,* the SEC's assertion of "concurrent jurisdiction" to enforce the SAR requirements of the BSA under Section 17(a) of the Exchange Act "rings a discordant tone with the regulatory structure created by Congress." 318 F.3d at 104.  The SEC's claim that the language of Section 17(a) empowered the Commission to assert enforcement authority in relation to the BSA is therefore misplaced.

2.      **The SEC's Position Conflicts with the BSA and Its Implementing Rules.**

The SEC acknowledges that its attempt to enforce the SAR requirements of the BSA under Rule 17a-8 would be impermissible if it conflicts with BSA, and even propounds the supposed need for coordination between agencies, notwithstanding its admittedly complete failure to coordinate with FinCEN in relation to this case.  (SEC Opp. Br. 13, 15-16; *see also* SOF 1-2 to Alpine Br. Summ. J.).  The SEC fails to acknowledge the clear conflict between the existing rulemaking and enforcement of the BSA as opposed to the SEC's interpretation of the provisions of the BSA and attempts to impose the Exchange Act's remedial scheme.

First, and at the most basic level, the SEC's substantive interpretations of the SAR requirements conflict with FinCEN's interpretations.[6]  The SEC seeks to impose bright-line or automatic SAR reporting requirements that are materially different from the "facts and circumstances" analysis that FinCEN has repeatedly stated governs SAR reporting.  If the SEC is permitted to proceed on this theory, broker-dealers will be subject to different standards and interpretation of the same exact rules that apply to other financial institutions.  The conflict and confusion that would result from the SEC's attempts to graft new and different requirements onto the BSA is manifest.  *See Klepp,* 604 F.2d at 1194.

The SEC's reliance on guidance to support the alleged violations of the BSA is also inconsistent with restrictions placed on FinCEN.  Both the Attorney General and Department of Justice have recently issued memoranda expressly prohibiting the use of guidance documents as a basis for proving violations of applicable law.[7]  To the extent the SEC claims it is not bound by these policy memoranda, its reliance on guidance to try to create obligations under the BSA

---

[6] *See* Alpine's Memorandum in Opposition to the SEC's Motion for Partial Summary Judgment, at pp. 9-13, 22-24.

[7] *See* Department of Justice, *Memorandum for Civil Litigating Components*, January 25, 2018, attached as Ex. A; *see also* Office of the Attorney General, *Memorandum for All Components,* November 16, 2017, attached as Ex. B.

further conflicts with FinCEN's own authority under the BSA.  Conflicting applications of the same SAR requirements, particularly by an outside agency who has been delegated no authority to act in this sphere, cannot be permitted.

Finally, the SEC's argument that it can pursue enormous penalties for purported violations of the SAR requirements without showing scienter or negligence is also plainly contrary to the BSA.[8]  Notably, the SEC does not dispute that pursuing alleged violations of the BSA's SAR requirements under Rule 17a-8 would establish a new and different penalty scheme that would apply only when the SEC brings an action. (SEC Opp. Br. 15). In fact, it would create a new and highly impactful strict-liability violation where none was ever enacted.  The SEC cites no authority that would support its attempt to obtain different remedies, under a different standard, than FinCEN could for the same alleged BSA violation, simply because the SEC issued a 1981 rule that referenced the then-reporting requirements of the BSA.[9]  The SEC's position not only demonstrates the irreconcilable conflict that arises from attempting to pursue a purported violation of the SAR requirements of the BSA under the Exchange Act, it violates Alpine's Due Process rights under the Constitution for the reasons stated on pages 24-25 of Alpine's opening Memorandum of Law, *which the SEC did not even address.*

### 3.  The 1981 Issuance of Rule 17a-8 Did Not Include the SAR Requirements.

Assuming for the sake of argument that the Commission would have been able to simply parrot the SAR filing requirement in a rule, and thereby give itself enforcement authority, it has not done so, at least not through any properly promulgated rule.  The SEC's position rests

---

[8]  *See* Alpine's Br. Summ. J. 21-22 for relevant statutory cites.

[9]  The cases cited by the SEC in its Opposition do not address this situation.  *See* SEC Opp. Br. 15.  This is not a case where certain conduct arguably violates two separate statutes enacted by Congress.  The SEC alleges violations of the SAR requirements of the BSA under a regulation the SEC issued that purports to incorporate those requirements. Prosecuting the purported violations under the distinct remedy provisions of the Exchange Act creates the very irreconcilable conflict that precludes the action.

entirely on the Commission's issuance of Rule 17a-8, one of a series of books and records provisions titled "Preservation of Records and Reports of Certain Stabilizing Activities." *See* 17 C.F.R. §§ 240.17a-1 - 17a-25. Rule 17a-8, promulgated in 1981, was titled "Recordkeeping by Broker-Dealers,"[10] and the text associated with the issuance confirms the recordkeeping purpose of the rule as enacted:

> The Commission believes that the rule is consistent with the purposes of the Exchange Act and the Commission's obligation to enforce *broker dealer recordkeeping requirements.* Adoption of this rule by the Commission will clarify the authority of the SROs to assure compliance by brokers and dealers with *the recordkeeping and retention requirements* of the Currency Act.

46 Fed. Reg. 61,454, 61,455 (Dec. 17, 1981) (emphasis added). That publication reiterates the fact that Treasury retained authority over the administration of Currency Act while the SEC was given examination authority. *Id.* at 61,454. The SEC's issuance also sets out the *specific* reports that were the subject of the proposed rule, *i.e*., reports of certain currency transactions as well as transactions involving foreign accounts – reports that are ministerial and objective in nature in contrast to the subjective SAR filing. *Id.* at 61,455.[11] Notably, that 1981 adopting release is the only substantive publication with respect to Rule 17a-8 in the Federal Register.[12]

Here, the SEC goes a sizable step beyond the actual passage and purpose of Rule 17a-8, claiming that the rule not only incorporates the reports and records referenced in the 1981 adopting release, but also adopts and permits enforcement of SAR requirements of the BSA that were enacted decades later. According to the SEC, "there was no need for the Commission to revisit Rule 17a-8 to extend its reach to broker-dealer SAR obligations" because the rule was

---

[10] *Cf. Porter v. Nussle*, 534 U.S. 516, 527–28 (2002) ("'The title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute.'") (citation and alteration omitted)).

[11] Notably, even the issue of whether Rule 17a-8 empowered the SEC to enforce the earlier CTR requirements has apparently never been litigated.

[12] The SEC does not dispute that *only* publication of Rule 17a-8 in the Federal Register, after its original adoption in 1981, occurred in 2011 and addressed the technical change in the numbering of BSA regulations from Title 3 part 103 to Title 31 chapter X.

broadly worded "to allow for any revisions the Treasury may adopt in the future."  (SEC Opp.
Br. 11.)  Its position is incorrect as a matter of law and must be rejected.

First and foremost, the SEC's position – that the 1981 version of Rule 17a-8,
automatically updated to include FinCEN's new substantive SAR requirements – ignores the
procedures that the Commission is required to follow under the Administrative Procedures Act
("APA").[13]  *Chrysler Corp. v. Brown*, 441 U.S. 281, 303 (1979) (agency discretion is limited not
only by substantive, statutory grants of authority, but also by the procedural requirements of the
APA which "assure fairness and mature consideration of rules of general application.") (internal
quotations and citation omitted).  Where an agency fails to adhere to the APA, its purported rule
is patently invalid. *Id.* at 313 (regulations that fail to comply with APA do not have force of law)
*City of New York v. Diamond,* 379 F. Supp. 503, 516 (S.D.N.Y. 1974) ("A ***plethora*** of cases hold
that an administrative rule which is not promulgated in accordance with these procedures is
***void***." (emphasis added).

Because the SARs requirements did not exist in 1981, they were not, and could not be,
discussed, referenced or contemplated at that time.  To adopt the 2002 SAR filing requirement,
and create a strict liability offense that it would be permitted to enforce, the SEC was required to
comply with the publication, notice and comment requirements of the APA. *See* 5 U.S.C §§ 552-
553; *see also United States v. Picciotto,* 875 F.2d 345, 346 (D.C. Cir. 1989) (rejecting Park
Service's argument that because its original regulation "went through notice and comment, the

---

[13] Section 553 of the APA requires that "[g]eneral notice of proposed rule making shall be published in the Federal Registrar,"
and that the "agency shall give interested persons an opportunity to participate in the rule making through submission of written
data, views or arguments . . . ." 5 U.S.C. § 553(b)-(c).  Section 552(a)(1) of the APA also requires an agency to, inter alia,
"separately state and currently publish in the Federal Register for guidance of the public . . . substantive rules of general
applicability," and "each ***amendment,*** revision, or repeal of the foregoing."  5 U.S.C. § 552(a)(1)(D)-(E).  "[A]n agency's
imposition of requirements that 'affect subsequent [agency] acts' and have a 'future effect' on a party before the agency triggers
the APA notice requirement."  *Sprint Corp. v. F.C.C.,* 315 F.3d 369, 373 (D.C. Cir. 2003) (citation omitted) (alterations in
original).

new restrictions [purportedly imposed under that regulation] do not need to.");[14] *City of Idaho Falls v. F.E.R.C.*, 629 F.3d 222, 227-29 (D.C. Cir. 2011) (holding FERC violated APA by attempting to adopt, without additional notice and comment, updated Forest Service fee schedules, after a previous version of the fee schedule was incorporated by reference in FERC's regulations).[15]

The regulations of the Office of the Federal Register also confirm that the SEC was not permitted to sweep into its rules any and all future amendments of the BSA and Treasury regulations without the need for notice and comment. Those regulations expressly state that "[i]ncorporation by reference of a publication is limited to the edition of the publication that is approved. ***Future amendments or revisions of the publication are not included.***" 1 C.F.R. § 51.1(f) (emphasis added); *see also id.* at § 51.1(a) (providing unambiguous instructions to agencies regarding the formal procedure necessary to amend or update material incorporated by reference, including publishing notice of the change in the Federal Register). Thus, Rule 17a-8 does not address or grant enforcement authority to the SEC in relation to the SAR requirements.

### POINT II.

### THE SEC'S COMPLAINT IS FATALLY DEFECTIVE FOR FAILING TO ALLEGE THAT ALPINE WILLFULLY OR NEGLIGENTLY VIOLATED THE BSA

The SEC's does not dispute that the terms "willfully" or "negligently" are not in its Complaint. This is fatal. For the reasons stated in Alpine's opening brief, even assuming

---

[14] As support for its holding, the *Picciotto* Court reasoned: "In essence, the Park Service is claiming that an agency can grant itself a valid exemption to the APA for all future regulations, and be free of APA's troublesome rulemaking procedures forever after, simply by announcing its independence in a general rule. That is not the law. Such agency-generated exemptions would frustrate Congress' underlying policy in enacting the APA by rendering compliance optional. The statute's direct mandate requires notice and comment procedures for any rule that does not fall within certain express exceptions." *Id.* at 346-47 (citing 5 U.S.C. §§ 553(b)–(e).)

[15] The SEC ignores a more fundamental problem with its argument: it would constitute an improper delegation to FinCEN of rulemaking authority under Section 17(a) of the Exchange Act. If the requirements of Rule 17a-8 automatically change every time FinCEN amends its BSA regulations, then it is FinCEN and not the SEC that controls the obligations under Rule 17a-8, and by extension allows FinCEN (without a proper delegation of authority) to effectively impose regulations under Section 17(a). *See City of Idaho Falls*, 629 F.3d at 229-30 (describing this problem as a "second fatal defect" to FERC's use of updated Forest Service fee schedules).

14

*arguendo* the SEC can pursue an enforcement action predicated on a violation of the SAR requirements of the BSA under Rule 17a-8, the SEC cannot disregard the scienter and fault requirements put into the BSA by Congress and establish a violation on the basis of strict liability.  Furthermore, the Constitution does not allow the SEC – and the SEC alone – to punish broker dealers under a different and lesser standard than every other person or entity subject to the BSA. (Alpine's Br. Summ. J. 24-25.)

"Like any ordinary litigant, the Government must abide by the Federal Rules of Civil Procedure." *S.E.C. v. Collins & Aikman Corp.,* 256 F.R.D. 403, 414 (S.D.N.Y. 2009).  This includes meeting the pleading standards required by the federal law.  To obtain remedies on a claim predicated on a violation of the BSA, it is necessary to plead and prove willfulness or negligence. 31 U.S.C. § 5321; *United States v. Pomerantz,* No. C16-0689JLR, 2017 WL 2483213 (W.D. Wash. June 8, 2017). Failure to do so requires dismissal.  *Id.*  Importantly, the SEC cites no authority to the contrary, or to support its arguments that willfulness or negligence can be pled by implication from other allegations in the Complaint.  *See id.* (dismissing complaint for only including "threadbare" allegations of willfulness).

The SEC also fails to note that each of the settled administrative decisions it relies on to support its argument that it has the authority to bring this action contains a recitation that the defendant "willfully" violated Rule 17a-8.[16]  Thus, here, the SEC seeks to impose a different standard not only from FinCEN, but also from its own prior practices. This is impermissible.

## CONCLUSION

For the foregoing reasons, and those set forth in Alpine's opening Memorandum of Law, the Court should grant Alpine's Cross-Motions and dismiss the SEC's complaint with prejudice.

---

[16] *See* SEC Opp. Br. 18 and fn.10 (administrative actions).

Dated: New York, New York                    Respectfully submitted,
February 26, 2018

                                        By:   /s/ *Maranda E. Fritz*
                                              Maranda E. Fritz
                                              THOMPSON HINE LLP
                                              335 Madison Avenue, 12th Floor
                                              New York, New York 10017-4611
                                              Tel. (212) 344-5680
                                              Fax (212) 344-6101
                                              Maranda.Fritz@thompsonhine.com

                                              Brent R. Baker (BB 8285)
                                              Aaron D. Lebenta (*Pro Hac Vice*)
                                              Jonathan D. Bletzacker (*Pro Hac Vice*)
                                              CLYDE SNOW & SESSIONS
                                              One Utah Center
                                              201 South Main Street, Suite 1300
                                              Salt Lake City, Utah 84111-2216
                                              Telephone 801.322.2516
                                              Facsimile 801.521.6280
                                              brb@clydesnow.com
                                              adl@clydesnow.com
                                              jdb@clydesnow.com

                                              *Attorneys for Defendant*
                                              *Alpine Securities Corporation*