I3UTSECC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

                Plaintiff,

          v.                             17 CV 4179 (DLC)

ALPINE SECURITIES CORPORATION,

                Defendant.
------------------------------x
                                         New York, N.Y.
                                         March 30, 2018
                                         2:00 p.m.

Before:

                    HON. DENISE L. COTE,

                                         District Judge

                  APPEARANCES (Telephonic)

SECURITIES AND EXCHANGE COMMISSION
     Attorneys for Plaintiff
BY:  TERRY MILLER
     ZACHARY CARYLE

CLYDE, SNOW & SESSIONS
     Attorneys for Defendant
BY:  BRENT BAKER
     JONATHAN BLETZACKER

THOMPSON HINE
     Attorneys for Defendant
BY:  MARANDA FRITZ
```

1         (In chambers)

2         THE COURT: I have you on the speaker phone because my

3    law clerk is with me and a court reporter. We'll quickly take

4    appearances. For the SEC?

5         MR. MILLER: Good afternoon, your Honor, Terry Miller

6    and Zachary Caryle for the SEC.

7         THE COURT: And for Alpine?

8         MS. FRITZ: Maranda Fritz of Thompson Hine.

9         MR. BAKER: Brent Baker and John Bletzacker of Clyde

10   Snow, also for Alpine.

11        THE COURT: Thank you.

12        I have letters of March 23rd and March 27 in this

13   case. I want to remind counsel that letters to the Court with

14   respect to discovery disputes may not exceed two pages. If I

15   don't find the letters sufficient, I get folks on the phone.

16   So I don't want letters in the future longer than two pages

17   with respect to any discovery disputes. Thanks so much.

18        So we have a dispute here with respect to a request by

19   Alpine with respect to a 30(b)(6) deposition of the SEC, and I

20   have as an attachment to the SEC's letter the deposition

21   notice. And I'm wondering if we should approach this by going

22   through the categories or -- well, let's see if we can proceed

23   that way, and we'll start with category one. And it concerns

24   all matters and issues discussed and asserted in the SEC's

25   declaration of a Mr. Lyman, and I have a copy of Mr. Lyman's

1 declaration in front of me and have reviewed it.

2 And so let me turn first to you, Mr. Miller.

3 MR. MILLER: Sure. With respect to this topic, it
4 runs into a couple of problems as to the gist of the letter,
5 trying to avoid the cost or burden of preparing a witness to
6 talk about things that are either protected by work product or
7 not helpful or relevant to the case. This one is not relevant
8 to the case. The things that Mr. Lyman talked about in his
9 declaration that are then carried over into the notice are what
10 he thought witnesses would likely testify to.

11 Obviously, Mr. Lyman is not going to get up on the
12 stand at trial and talk about what he thinks people will
13 testify to, it was relevant only to the venue motion that was
14 filed by Alpine, and all of the statements that Alpine is
15 interested in obtaining on this topic are I think more readily
16 available from the folks who made the statements in the first
17 place, many of whom are current or former Alpine employees.

18 So with respect to this topic, it's just something
19 that gets into a lot of relevance grounds, and it's just not
20 the most effective way for Alpine to get -- if they need
21 something, it's not most effective way to get it.

22 THE COURT: Mr. Baker or Ms. Fritz, who is responding
23 on this conference call for Alpine?

24 MS. FRITZ: With respect to what was discussed in
25 Mr. Lyman's declaration, he really does lay out not just the

1    fact of these interviews, he also lays out in his paragraph
2    four very specific information regarding how the interviews
3    were conducted, who was present, and who possessed certain
4    notes.
5            Since then we have learned, as we dealt with these
6    various issues, that these interviews are being presented as
7    the way in which these witnesses are going to be challenged.
8    And as the Court notes, we have already been going through
9    depositions.
10           So we're understanding already that what Mr. -- that
11   what Mr. Lyman has put forth in this declaration, including how
12   it was done, what was done, and what records or documents exist
13   with respect to those interviews, that those are going to be
14   very important, because they're key to the SEC challenging each
15   of those witnesses.
16           THE COURT:  Okay.  So the declaration is from an
17   attorney for the SEC.  He's an attorney with the Division of
18   Enforcement in the Denver Regional Office.  He put in a
19   declaration, as SEC counsel indicated, in connection with a
20   venue motion.
21           Paragraph four merely recites his understanding of the
22   way in which interviews were conducted of a series of
23   witnesses, nine witnesses, and identifies where the agents who
24   were involved with those interviews of the nine agents lives
25   and works.  In each case, the agents, the Homeland Security

agents who were involved in the investigation and prepared the only notes of the interviews, as reported in paragraph four, indicate that each of those agents lives and works in the New York area.

So your request to take a 30(b)(6) deposition of the SEC, because of paragraph four in the Lyman declaration, is denied, and the motion to quash is granted.

Let's turn to paragraph two. It reads: The SEC's communications with FinCEN, FINRA, and any other third parties, including former employees of Alpine or their counsel, regarding the allegations in and the filing of the complaint.

Mr. Miller.

MR. MILLER: Your Honor, these communications, to the extent they are regarding the allegations in our complaint, if they exist, these communications would be covered by the law enforcement privilege, at least with FinCEN and FINRA.

Then with respect to other third parties, I don't know how -- exactly who they're thinking of. Perhaps Alpine was thinking of, again, the witnesses that were interviewed that have been identified, and Alpine has the same access to them that the SEC does.

So number two is a good illustration of what happens in preparation, which is a designated witness from the SEC would have go through different divisions and parts of the agency to track down all of the both written and oral

1   communications with these folks, spend the time to take the
2   organizational knowledge and put the knowledge into one person
3   and then show up at a deposition and be instructed not to
4   answer any of the questions.
5           So again, the request is for protection from that
6   burden and expense of preparing for something that is going to
7   be fraught with privilege and objections and instructions to
8   not answer.
9           THE COURT:  Perhaps before I turn to you, Ms. Fritz, I
10  should just state, because this is going to drive my rulings
11  here, what I understand this case to be about.
12          Alpine is a broker-dealer.  It is required to file
13  SARs for suspicious transactions.  The SEC has alleged in this
14  lawsuit that the SARs that were filed with respect to thousands
15  of transactions were deficient in a variety of ways, that they
16  did not disclose information about the transactions that the
17  regulations required the SARs to include and report.  And in
18  additional instances, the SEC is indicating or alleging that
19  Alpine had a duty to file a SAR and did not.
20          So at the trial, the SEC will have the burden to show
21  that a SAR had to be filed, and if it was, that it was
22  deficient in omitting certain information that the law required
23  it to include.  The SEC will carry this burden, as I understand
24  it, to the extent it's able to, by looking at the information
25  that is contained in Alpine's own files and by presenting

1   testimony from Alpine witnesses, either current or former

2   employees, and potentially, I know that you folks aren't there

3   yet, through the development of expert testimony.

4          Have I correctly summarized the case in like a

5   10,000-foot level of summary, Mr. Miller?

6          MR. MILLER:  Yes, your Honor.

7          THE COURT:  Okay.

8          MR. MILLER:  It was a good summary.  Thank you.

9          THE COURT:  So the issue is, to defend against this

10  allegation, what discovery does Alpine need?  And in connection

11  with this application addressed in today's phone call, does it

12  need any discovery in the nature of a 30(b)(6) witness from the

13  SEC?

14         The most critical information in this case is what

15  information is in Alpine's own files, and the documentary

16  record will drive most of the analysis in this case; that, and

17  the law's requirements.  The SEC is or is not able to carry its

18  burden with respect to a particular SAR, but it will have to

19  march through it SAR by SAR, or transaction by transaction if

20  no SAR was filed, to maintain its case.

21         So necessarily taking the deposition of the SEC

22  doesn't seem very pertinent here, and so I need to understand

23  in particular with respect to any paragraph why the defendants

24  need this in order to prepare their defense at trial.

25         So let's turn to item number two, Ms. Fritz.

MS. FRITZ: Absolutely. And I appreciate that. I would note, first of all, that the SEC in its letter did not object to items number two, three or nine, their 17 and 18 is incorrect, and I think they misread four and 13. So two is one of the ones that the SEC does not identify in their letter as being improper.

Having said that, I think what your Honor just described is a perfectly good description of the way that the SEC is presenting this case, but it's a far cry from what the defense is going to be presenting, and it disregards some very critical aspects of the complaint. And here's why I say that:

In this instance, the SEC stands as essentially the complaining witness in the case. It puts forth its own interpretations of the rules and guidance that it claims in its complaint were presented to Alpine over the course of years. It presents itself as a critical witness on the issue of notice. It says that in 2015 it was the entity that came in and examined and interacted. And so that, according to the SEC, becomes the critical component of notice.

But then it goes the next step, not only is it the witness, not only is it the notice, it's also the purported victim. In other words, throughout the complaint, it says that Alpine's conduct misled it as it received the SARs. So instead of a normal securities fraud case where you have something that's being directed out to investors or that deals with third

1  parties, the SEC is, in every aspect of the case, the witness
2  against us.
3          That's why we have put together these things, to try
4  to cover each of those topics that I just mentioned.  We start,
5  for example, back in 2015, because according to the SEC's
6  complaint, the SEC came in in 2015 and made certain assertions
7  that, according to the SEC, put us on notice, and are therefore
8  part of their complaint and certainly part of their claim going
9  forward that there's any sort of willfulness in connection with
10 these -- with their allegations.
11         The SEC also says that when it came in in 2015 it took
12 certain positions with respect to the SAR requirements and what
13 needed to be in there.  In 2015 the general counsel for Alpine
14 and others responded, and there were dialogues that went back
15 and forth with the SEC.  So it was these precise issues.  It
16 was not a one-way street.  And heaven knows, if your Honor has
17 seen the papers at this point, a critical issue here is are the
18 requirements that the SEC is propounding, the sort of automatic
19 requirements, do these even exist?
20         So these issues go back to the 2012 examination, back
21 to the 2015 examination where Alpine has been interacting with
22 its regulators.  In each instance, those are issues of fact
23 that the SEC has embedded in its complaint that it fully
24 intends to prove as components of the case against Alpine.  And
25 that's before we ever get to these two SEC attorneys on the

phone who are not trying to depose, who do not have anything to do with all of the background that is going to be used against us. And all we are looking for is the opportunity to simply depose the plaintiff, who stands as complainant, victim, and almost in the sense that you have a contract, for example, they are the ones that are putting forth interpretations that they want to impose on us. All of these are factual issues that we are entitled to explore.

And I will tell you, your Honor, we asked for things like the training manuals for the examiners who came in to examine us. And the reason is this: The SEC is going to come in and say these are automatic requirements that Alpine didn't do.

And we are going to be able to demonstrate that they are not automatic requirements. This is not what the examiners were looking for. This is not the material that the examiners had. These were not the examiners' marching orders, and these are not the communications that we received when we were examined. Because if anybody ever told us these are automatic requirements and you have to do them, we would have done them.

All of that is what the SEC is really going to be presenting as the case against us. There's no other witness against us except the SEC.

THE COURT: Well, thank you, Ms. Fritz, that's very, very helpful. I have a few questions for the SEC, but let me

1    make a few preliminary observations.

2           The law gives notice to a broker-dealer of what it is
3    required to do.  If there had been no communication with the
4    SEC in 2015 or at any other date, this lawsuit could still be
5    filed if there were a violation of the law.  Well, it could be
6    filed with an allegation there was a violation of law and there
7    could be a verdict against Alpine for a violation of the law.
8    So you did not need any personal notice as a broker-dealer, and
9    you were required to comply with the law.

10          Secondly, there is no victim here other than the
11   American public and the law.  There's no reliance element.
12   It's a strict liability statute.  There's no knowledge or
13   willfulness component.  Well, there's a knowledge component,
14   obviously, but no willfulness component.  So whether the SEC
15   was misled or not in a communication or by a particular SAR is
16   not an element of 17(a)(8) claims.

17          With respect to whether the requirements under the law
18   exist, that isn't a fact issue, that's a legal issue.  The
19   parties have what I will call a preliminary summary judgment
20   motion before me, and I will be laying out what I understand
21   the law is and was at the relevant period of time.  And I
22   expect the parties will read what I file with care, and to the
23   extent that they have further authority to provide to me on
24   these issues, they'll feel free to do so, but you did not need
25   a personal visit -- Alpine, a broker-dealer, did not need a

personal visit from any regulator to advise them of what the requirements of the law was. And a personal visit couldn't change the requirements of the law. The law is what it is.

So let me inquire of the SEC, are you planning to rely at trial, Mr. Miller, on the SEC's interaction with Alpine, as I understand it here from Ms. Fritz's comment, in 2015?

Mr. Miller, are you there?

MR. MILLER: Yes, your Honor, I'm sorry.

Yes, the SEC does intend to use notices that Alpine received from both FINRA and SEC, but in a very limited way, and not in the way that Alpine has asserted. And it really is going to be consistent with the way that you just -- what your Honor just explained, the way that notice works. The law is what your Honor said the law is.

And if it turns out that the SEC is -- for example, the 2015 letter that was the final determination of the examination that Ms. Fritz referenced, if the legal positions in that letter are consistent with what your Honor says the law is, we would use that letter only to show that Alpine in fact did have even more notice than the law generally provides in the absence of the letter.

And we would use the letter for FINRA the same way, those are the two letters referenced in the complaint, and reality is that with both those letters, the analysis behind it and the work that was done to generate the letters is not

relevant to what the law is, it really is going to be relevant to the issue in the SAR rule about what Alpine had reason to suspect was considered a suspicious transaction under the SAR rule.

And we have letters explaining what their deficiencies were under those grounds, and if it turns out the letters are not consistent with the law, as your Honor lays out, I don't think they would be helpful or even relevant.  And to the extent they are relevant, it's only for notice.  We wouldn't put those letters up and tell the jury that the SEC is determining in these letter what the law is, we would obviously defer to the Court for instructions on what the law is.

THE COURT:  Well, that's interesting with respect to admissibility issues.  Obviously, anything we discuss today isn't a decision about admissibility.  And there's also an issue with respect to, I suppose, to some extent, a potential bifurcation issue on willfulness, which I don't want to think about either, because you don't need to have willfulness to have a violation of 17(a)(8).

As I understand it, and I haven't looked at care yet with this aspect of the law, it may be that willfulness and a finding of willfulness will dictate a level of sanctions should there be a violation of 17(a)(8).  And who that is for, whether it's for a jury or a court, I certainly haven't thought about.

But with respect then to these 2015 communications,

1    Mr. Miller, what is the SEC's position with respect to the
2    amount of discovery Alpine is entitled to with respect to those
3    communications?  Were there SEC examiners on site at Alpine?
4             MR. MILLER:  Yes, your Honor.  And our position on
5    discovery about those communications is that they're not --
6    those communications and any work that the SEC did leading up
7    to its final determination is not relevant to the issue of
8    notice.  I think everyone understands that the SEC's official
9    position was contained in the letter itself, and I think it
10   would be -- again, we would run into the same sort of problems
11   here with preparing a witness for a 30(b)(6) deposition by
12   taking the time and going through and talking to all the SEC
13   examiners, depositing all of the organizational knowledge into
14   one person, then showing up at a deposition.  And to the extent
15   these are communications among the SEC examiners themselves,
16   those would be protected by the deliberative process privilege
17   because they're pre-decisional communications.  And to the
18   extent they were communications with Alpine, then Alpine -- the
19   much more efficient way to do it if is Alpine could talk to its
20   own employees.  You don't even need discovery for that.
21            So I think there is, again, a very high burden for
22   very minimal benefit of any deposition that would get into
23   communications and discussions that led to the final work
24   product of the SEC's 2015 letter.
25            THE COURT:  Well, this is not the end of the

1    discussion, but I have a few more questions here.
2             Mr. Miller, is the SEC planning to call an SEC witness
3    about the examination?
4             MR. MILLER:  No, your Honor.  If it is admissible, the
5    way it would come in is we would simply ask an Alpine witness:
6    Is it in fact true that Alpine received this letter?
7             And perhaps there would be follow-up questions about
8    what was done in response to that letter, but again, the only
9    relevance of that letter is what Alpine did in response to it
10   and what Alpine understood from it.
11            THE COURT:  Okay.
12            MR. MILLER:  So there's no need for an SEC witness to
13   explain really any letter or any of the work that went into the
14   letter.
15            THE COURT:  And Ms. Fritz, has Alpine taken any
16   depositions of the SEC examiners, or sought to?
17            MS. FRITZ:  We have not yet noticed the deposition of
18   the examiner.  We had sought instead to do it through the
19   30(b)(6).
20            THE COURT:  And what do you want on this topic of the
21   2015 letter?
22            MS. FRITZ:  What do we want?
23            THE COURT:  Yes, from the SEC.
24            MS. FRITZ:  Here's what we're looking for:  Your Honor
25   has expressed the view that the law on this issue is clear.

1    The view that we have taken, and we think we have established

2    it, is that the law is what is stated in the PSA, and nobody is

3    questioning whether we violated the PSA.  We filed the

4    purported transactions that were suspicious.  This case is

5    unusual for the fact that except in the instance of certain

6    liquidations, we're not even alleged to have failed to file

7    SARs.

8             So the issue isn't did we follow the term of the PSA.

9    The SEC's complaint and its case -- and if you go through the

10   complaint section by section, what they try to do in the

11   complaint is to establish that there are these other kinds of

12   guidance that should be viewed as being so dispositive that to

13   fail to adhere to those kinds of industry publications should

14   be viewed as a violation of the PSA.  Obviously, our position

15   is very different, and we want to be able to establish that so

16   was the SEC's.

17            And so that's why through the request, for example,

18   for their examination modules that lay out what the examiner is

19   supposed to look at and look for, and then through the way that

20   they examine and through the way that they report, we will be

21   able to establish that this red flag concept that is being used

22   in this case does not exist, that the SEC, when it conducted

23   its examination, was looking for the basic filings regarding

24   suspicious transactions, and at times said that we needed to

25   include more information in there, but these, again, are not

the kind of red flag claims that are being made in this case.

THE COURT: Okay. I think that's very helpful, Ms. Fritz. I think very, very helpful.

So what I'm going to do is put this conversation on hold and let everyone go and enjoy this lovely weekend. I hope everybody has good plans with family and friends. And I'm not going to give you a final ruling. I think when you have my ruling on the preliminary summary judgment motion it will help enormously to crystallize these issues and make it easier for us to talk about each of these issues.

MS. FRITZ: Your Honor, we had very much hoped that we would have an opportunity to argue on that.

THE COURT: Yes, I understand that, and here's my practice with respect to oral argument: If there is any issue at all that I think argument from the parties would be of assistance to me, I will identify that for you and give you an opportunity to not only address that issue but anything else you would like to say.

I have not located such a need yet, but I'm not finished with my review of your motion. And so I appreciate very much, counsel's willingness and desire and ability to address these issues on oral argument, but I am going to reserve decision as to whether or not we'll have oral argument.

Let us talk a little bit about mediation. I know you were referred for mediation in February. This case is still

1   active.  I think you perhaps had a session in late February.
2   I'm thinking that it might be helpful, after you get my opinion
3   on the summary judgment motion, to go before a mediator once
4   more.  I know that's a little hard for you to tell, but I would
5   like to understand, Ms. Fritz, what the defendant's current
6   position is with respect to the subject matter of mediation
7   generally.
8           MS. FRITZ:  It's funny you should say that, because
9   when we were wrapping up the mediation -- it was productive to
10  a point, but as we wrapped it up, I think all of us agree that
11  we wanted to learn more from the Court in terms of what was
12  going to happen on the motions, and that we all agreed that we
13  thought another session would be productive after that.
14          So you don't have any argument from us.  I think we're
15  all -- we all agree that would be helpful.
16          THE COURT:  Great.  And let me ask, I don't know the
17  identity of your mediator, I don't want to know the identity of
18  your mediator, but was that a good forum for discussions or
19  would you like to go to a different forum?
20          Ms. Fritz?
21          MS. FRITZ:  I think we enjoyed working with him.
22          THE COURT:  Great.
23          MR. MILLER:  Yes.
24          THE COURT:  Good.  Thank you so much.
25          And again, enjoy this weekend, and we'll be in touch

I3UTSECC

1  shortly.  Thank you very much.
2          MS. FRITZ:  Thank you.
3          MR. MILLER:  Thank you.
4                          o0o