UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>     Plaintiff,<br><br>v.<br><br>ALPINE SECURITIES CORPORATION,<br><br>     Defendant. | Civil No. 1:17-CV-04179-DLC<br><br><br>Honorable Judge Denise L. Cote<br>Magistrate Judge Ronald L. Ellis<br><br>**ECF CASE** |

**DEFENDANT'S COMBINED MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S:  (1) MOTION FOR RECONSIDERATION OF THE COURT'S
MARCH 30, 2018 OPINION AND ORDER DENYING DEFENDANT'S CROSS-
MOTION FOR SUMMARY JUDGMENT; AND (2) ALTERNATIVE MOTION,
TO CERTIFY THE COURT'S ORDER DENYING DEFENDANT'S CROSS-MOTION
FOR SUMMARY JUDGMENT FOR INTERLOCUTORY APPEAL**



335 Madison Avenue, 12th Floor
New York, New York 10017
(212) 344-5680



One Utah Center
201 South Main Street, Suite 1300
Salt Lake City, Utah 84111-2216
(801) 322-2516

*Attorneys for Alpine Securities Corp.*

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 4

POINT I     RECONSIDERATION OF THE COURT'S DENIAL OF ALPINE'S CROSS-MOTION FOR SUMMARY JUDGMENT IS NECESSARY TO CORRECT CLEAR ERROR AND AVOID MANIFEST INJUSTICE ...................................... 4

    A.     The Court Erred in Ignoring the Fact and the Impact of the Express Congressional Delegation of Authority for Enforcement of the BSA ................................................. 4

    B.     The Court's Erred in Applying *Chevron* to Allow the SEC to Circumvent Congress' Express Intent to Delegate BSA Authority to Treasury ........................................... 10

    C.     The Court Ignored the Requirements of the APA ................................................ 14

POINT II     THE COURT SHOULD CERTIFY ITS RULING ON ALPINE'S CROSS-MOTION FOR SUMMARY JUDGMENT PURSUANT TO 28 U.S.C. § 1292(b) IN THE EVENT IT DOES NOT GRANT ALPINE'S MOTION TO RECONSIDER. ................................................................................................ 18

    A.     Questions for Certification ................................................................................. 18

    B.     Legal Standards for Certification under Section 1292(b). ....................................... 19

    C.     Alpine Meets the Certification Requirements under Section 1292(b) .................... 20

       1.     The Court's Ruling Denying Alpine's Cross Motion Involves a Controlling Question of Law ............................................................................................. 20

       2.     The Second Prong is Met Because Controlling Questions of Law Present Complicated Issue of First Impression and Because there is Substantial Doubt that this Court Correctly Decided these Novel Questions. .............. 20

       3.     An Immediate Appeal will Materially Advance the Ultimate Termination of the Litigation. ............................................................................................. 23

CONCLUSION ............................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 105 E. Second Street Assocs.*,
   No. M-47 (LLS), 1997 WL 311919 (S.D.N.Y. June 10, 1997)................................................23

*Adams Fruit Co. v. Barrett*,
   494 U.S. 638 (1990)..........................................................................................................10, 14

*Am. Bankers Ass'n. v. S.E.C.*,
   804 F.2d 739 (D.C. Cir. 1986) .................................................................................................10

*Am. Nat. Fire Ins. Co. v. Mirasco, Inc.*,
   265 F. Supp. 2d 240 (S.D.N.Y. May 26, 2003), *aff'd in part, vacated in part
   and remanded by*, 144 F. App'x 171 (2d Cir. 2005)..................................................................19

*American Soc'y for Testing and Materials v. Public.Resource.org, Inc.*,
   No. 13-cv-1215 (TSC), 2017 WL 473822 (D.D.C. Feb. 2, 2017)...........................................16

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*,
   426 F. Supp. 2d 125 (S.D.N.Y. 2005)......................................................................................20

*Atlantic City Elec. Co. v. FERC*,
   295 F.3d 1 (D.C. Cir. 2002) .......................................................................................................6

*Balintulo v. Daimler AG*,
   727 F.3d 174 (2d Cir. 2013)......................................................................................................19

*Bayou Lawn & Landscape Servs. v. Sec'y of Labor*,
   713 F.3d 1080 (11th Cir. 2013) ..........................................................................................10, 13

*California Bankers Ass'n v. Shultz*,
   416 U.S. 21 (1974)......................................................................................................................7

*California v. Klepp*,
   604 F.2d 1187 (9th Cir. 1979) ..................................................................................................10

*Capitol Records, LLC v. Vimeo, LLC*,
   972 F. Supp. 2d 537 (S.D.N.Y. 2013), *aff'd in part, vacated in part and
   remanded by*, 826 F.3d 78 (2d Cir. 2016)..................................................................................4

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
   467 U.S. 837 (1984)................................................................................................. *passim*

*City of Arlington v. FCC*,
   569 U.S. 290 (2013)..................................................................................................................12

*City of Idaho Falls v. F.E.R.C.*,
    629 F.3d 222 (D.C. Cir 2011) ..................................................................................15, 16

*City of New York v. Beretta U.S.A. Corp.*,
    524 F.3d 384 (2d Cir. 2008), *cert denied*, 556 U.S. 1104 (2009) ............................................18

*Cudahy Packing Co. v. Holland*,
    315 U.S. 357 (1942) ..................................................................................................8

*Digital Realty Tr., Inc. v. Somers*,
    138 S. Ct. 767 (2018) ..............................................................................................11

*F.D.A. v. Brown & Williamson Tobacco Corp.*,
    529 U.S. 120 (2000) .............................................................................................6, 9

*Halverson v. Slater*,
    129 F.3d 180 (D.C. Cir. 1997) ...............................................................................8, 13

*Hassett v. Welch*,
    303 U.S. 313 (1938) ...............................................................................................15

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in
    Amministrazione Straordinaria*,
    921 F.2d 21 (2d Cir. 1990) ...................................................................................20, 21

*Koehler v. Bank of Bermuda Ltd.*,
    101 F.3d 863 (2d Cir. 1996) ..................................................................................19, 23

*Kuzinski v. Schering Corp.*,
    614 F. Supp. 2d 247 (D. Conn. 2009) ...........................................................................23

*Lerner v. Millenco, L.P.*,
    23 F. Supp. 2d 345 (S.D.N.Y. 1998) ...........................................................................23

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    962 F. Supp. 2d 606 (S.D.N.Y. 2013) ..........................................................................13

*U.S. ex rel. Lissack v. Sakura Global Capital Mkts., Inc.*,
    377 F.3d 145 (2d Cir. 2004) .......................................................................................5

*Martin v. Occupational Safety and Health Review Comm'n*,
    499 U.S. 144 (1991) ...............................................................................................12

*N.F.L. Ins. Ltd. v. B & B Holdings, Inc.*,
    No. 91 Civ. 8580 (PKL), 1993 WL 255101 (S.D.N.Y. July 1, 1993) ...............................20, 22

*Natural Res. Def. Council v. Abraham*,
    355 F.3d 179 (2d Cir. 2004) ........................................................................................6

*New York State Office of Children & Family Servs. v. U.S. Dep't of Health & Human Servs.' Admin. for Children & Families,*
    556 F.3d 90 (2d Cir. 2009)................................................................................................15

*Nutritional Health Alliance v. F.D.A.,*
    318 F.3d 92 (2d Cir. 2003).................................................................................2, 9, 11, 12

*Reese v. BP Exploration (Alaska) Inc.,*
    643 F.3d 681 (9th Cir. 2011) ...........................................................................................22

*SEC v. Bloomfield,*
    10 F. Supp. 3d 602 (D.N.J. 2014) ....................................................................................21

*SEC v. Sloan,*
    436 U.S. 103 (1978)..........................................................................................................13

*Sec. Investor Protection Corp. v. Stratton Oakmont, Inc.,*
    234 B.R. 293 (Bankr. S.D.N.Y. 1999) .............................................................................13

*Smiley v. Citibank (South Dakota), N. A.,*
    517 U.S. 735 (1996)..........................................................................................................16

*Transp. Workers Union, Local 100 v. N.Y. City Trans. Auth.,*
    358 F. Supp. 2d 347 (S.D.N.Y. 2005)..............................................................................23

*United States v. Giordano,*
    416 U.S. 505 (1974)..........................................................................................................10

*United States v. Piccoitto,*
    875 F.2d 345 (D.C. Cir. 1988) .........................................................................................17

*Vidal v. Nielsen,*
    No. 16-CV-4756 (NGG) (JO), 2018 WL 333515 (E.D.N.Y. Jan. 8, 2018)...............21, 23

**Statutes**

5 U.S.C.
    § 552..................................................................................................................................16
    § 553(b)–(e) ................................................................................................................16, 17

18 U.S.C. § 2516....................................................................................................................10

28 U.S.C. § 1292(b) .......................................................................................................*passim*

31 U.S.C.
    § 310(b)(2)(I) ......................................................................................................................7
    § 5314..................................................................................................................................8
    § 5318(g)..............................................................................................................................7

§ 5318(h)...............................................................................................6, 7
§ 5320........................................................................................................7
§ 5321....................................................................................................7, 8
1 C.F.R.
§ 51.1(a)-(c) ...........................................................................................15
§ 51.1(f)..................................................................................................15
§ 51.5(b).................................................................................................15

17 C.F.R. § 240.17a-8 ...................................................................................5

31 C.F.R.
§ 1010.350................................................................................................8
§ 1010.420................................................................................................8
§ 1010.810(a)...........................................................................................7
§ 1010.810(b)........................................................................................6, 7
§ 1010.810(c)...........................................................................................6
§ 1010.810(d)...........................................................................................7
§ 1010.810(e)...........................................................................................8
§ 1010.810(f)............................................................................................8
§ 1010.810(g)........................................................................................6, 8
§ 1010.820................................................................................................8
§ 1023.210................................................................................................6
§ 1023.210(c).......................................................................................5, 6
§ 1023.320................................................................................................5

Administrative Procedure Act, 5 U.S.C. § 553........................................................2

Bank Secrecy Act, 31 U.S.C. §§ 5311-5332..................................................... *passim*

**Other Authorities**

Emily S. Bremer, *Incorporation by Reference in an Open-Government Age*, 36
    HARV. J.L. & PUB. POL'Y 131, 183–86 (2013) ......................................................16

Ernest Gellhorn & Paul Verkuil, *Controlling Chevron-Based Delegations*, 20
    CARDOZO L. REV. 989, 1016–17 (1999) ...............................................................12

Defendant Alpine Securities Corporation ("Alpine"), files this Combined Memorandum of Law in Support of Alpine's:  (1) Motion For Reconsideration of the Court's March 30, 2018 Opinion And Order ("Opinion") Denying Alpine's Cross-Motion for Summary Judgment; and (2) Alternative Motion for Certification of the Court's Opinion Denying Alpine's Cross-Motion for Summary Judgment for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b).

## INTRODUCTION

The Court's decision on the motions for summary judgment discussed at great length the positions taken by the Plaintiff but failed to adhere to, or even to acknowledge, abundant and binding authority cited by Alpine demonstrating that the Securities and Exchange Commission ("SEC") lacks authority to pursue this action, and confirming the actual legal requisites that govern the filing of Suspicious Activity Reports ("SARs").  On the threshold issue of the SEC's authority – unquestionably an important issue of first impression – Alpine provided a comprehensive discussion of the Congressional delegation of authority under the Bank Secrecy Act ("BSA") demonstrating that enforcement authority was conferred on, and has been clearly and consistently retained by, the Treasury Department.  It is Treasury that has the authority to interpret and administer the program, and it makes no more sense for the SEC to hijack and reinterpret those provisions than it would for Treasury to tell the SEC the meaning of the Securities Exchange Act of 1934 ("Exchange Act").

Notwithstanding the clear and purposeful Congressional delegation and retention of authority by Treasury, this Court held that the SEC, through its 1981 issuance of Rule 17a-8, automatically swept into that rule every subsequent amendment and new reporting structure added to the BSA from 1981 through present and beyond.  In order to get to this ruling, the Court disregarded the admitted fact that the SEC has never been delegated BSA enforcement authority, and instead decided the SEC's unilateral assertion of such authority was a reasonable

interpretation of its rule-making authority under Section 17(a) of the Exchange Act that was entitled to deference under *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984) ("*Chevron*") – an argument the SEC did not even make.  This ruling was clear error because the Court overlooked controlling authorities cited by Alpine in its moving papers, including *Nutritional Health Alliance v. F.D.A.,* 318 F.3d 92 (2d Cir. 2003),  demonstrating that *Chevron* deference cannot be used to circumvent Congress' clearly expressed intent that the BSA be administered and enforced by Treasury, and not the SEC.

Moreover, authorities cited by Alpine, which were also overlooked by the Court, clearly demonstrate that Rule 17a-8 did not, and could not lawfully, accomplish an automatic perpetual incorporation of all new provisions of the BSA.  Further, the incorporation by the SEC of the SAR reporting requirements, and assumption of enforcement authority, would have required compliance with the Administrative Procedure Act ("APA"), which never occurred.[1]

The Opinion should be reconsidered by the Court, and the defendant also again requests oral argument to aid the Court in its consideration of these issues given the importance of this issue within the industry and to the Defendant.  The SEC is apparently claiming that each and every alleged SAR reporting violation – each alleged inadequate narrative, non-filed SAR on a liquidation transaction, alleged late filed SAR and missing support file – constitutes a separate violation upon which it can recover a penalty.  For literally thousands of supposedly individual alleged violations, the SEC seeks to recover substantial penalties in a manner that would not be available to FinCEN for the same violations – that is, on a strict liability basis and under the higher penalty caps of the Exchange Act.  In this case, for example, the SEC's calculations of

---

[1]  Concurrently with this Motion, Alpine has also filed a separate motion to reconsider several of the Court's preliminary rulings granting, in part, the SEC's Motion for Partial Summary Judgment.  In the event that this Court declines to reconsider its denial of the cross-motion, Alpine asks that the Court certify that issue for appeal, and reserve decision on the remaining motions and hold its March 30 Opinion in abeyance pending consideration of the reconsideration on that issue so that regulatory authorities cannot rely on that decision in ongoing enforcement action.

penalties would total literally hundreds of millions of dollars, and would constitute a death knell for this Defendant and for other firms. And those massive penalties are predicated on theories of liability that have never before been articulated; in fact, the Court defines a BSA violation that does not even agree with *the SEC's* own version of the applicable and purportedly mandatory guidance. These important issues demand further consideration.

In the alternative, Alpine requests that the Court amend the Opinion to certify its rulings denying Alpine's Cross-Motion for immediate appeal pursuant to 28 U.S.C. 1292(b). Each of the requirements for certification under the statute are met in this case. First and foremost, an immediate appeal would "materially advance termination" of the litigation. This element, viewed in the Second Circuit as the most important element governing interlocutory appeal, is plainly met here because, if this Court's rulings are reversed, this case will be over. Countless additional hours and expense will be saved by the parties and the Court. Second, the issues raised in Alpine's Cross-Motion constitute "controlling issues of law" because they present pure legal issues – the SEC's authority to pursue its claim in this action. Finally, there is "substantial grounds for difference of opinion" on the correctness of the Court's rulings on Alpine's Cross-Motion for Summary Judgment. The issues presented by Alpine's Cross-Motion involve novel and complicated issues of first impression affecting the entire broker-dealer industry and, as detailed above, there is substantial doubt that the Court resolved them correctly.

## ARGUMENT

### POINT I

### RECONSIDERATION OF THE COURT'S DENIAL OF ALPINE'S CROSS-MOTION FOR SUMMARY JUDGMENT IS NECESSARY TO CORRECT CLEAR ERROR AND AVOID MANIFEST INJUSTICE[2]

This Court was confronted with a substantial issue of first impression:  while authority to implement, administer and enforce compliance with the BSA was conferred by Congress on the Treasury Department, and that enforcement authority has been clearly and unambiguously retained by FinCEN, is the SEC nonetheless empowered to circumvent those delegations and interpret and enforce the SAR provisions of the BSA?  The SEC conceded in its Opposition the consistent and clear delegation of authority solely to Treasury and to FinCEN in relation to the SAR provisions, and confirmed that no court has ever held that the SEC can ignore that allocation of authority and pursue claims for violations of the SAR filing requirements.

The SEC's only argument in support of its ability to engage in enforcement actions lies in the wording of Rule 17a-8, issued in 1981, decades prior to the passage of the SAR provisions. Each aspect of the SEC's contention was addressed by Alpine at length in its motion, but the Court overlooked the raft of relevant authority demonstrating that the SEC did not – and could not – confer enforcement authority for the BSA on itself.

### A.    The Court Erred in Ignoring the Fact and the Impact of the Express Congressional Delegation of Authority for Enforcement of the BSA

In its Opinion, the Court recognized, only in passing, that implementing regulations under the BSA are promulgated by the Treasury and FinCEN, and that "Treasury has delegated

---

[2]  The standards governing motions for reconsideration under S.D.N.Y. Local Rule 6.3 are well established.  For a motion for reconsideration to be granted, the moving party must "'point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'"  *Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 543 (S.D.N.Y. 2013) (citation omitted), *aff'd in part, vacated in part and remanded by*, 826 F.3d 78 (2d Cir. 2016).  "Courts may also grant reconsideration because of an 'intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"  *Id.* (citation omitted).

enforcement of the BSA to FinCEN." (Opinion, at 23, 26.) The Court, however, ignored the clarity, extent and impact of this delegation. Instead, the Court segued to a different issue, stating that the SEC's "principal allegation" in this case is that "Alpine's AML program failed to comply with Section 1023.320" and that "[i]n 2002, FinCEN delegated its BSA authority over broker-dealer AML programs to the SEC" (Opinion, at 6, 33 (citing 31 C.F.R. § 1023.210(c)).) Those assertions as to AML matters are factually and legally inaccurate and unavailing. First, and contrary to the Court's suggestion, this case is plainly one predicated on violations of the SAR reporting requirements of the BSA.[3] Even the Court, in its conclusion that the SEC is entitled to pursue these claims *because* Rule 17a-8 incorporated the BSA, recognized that the only salient allegations in the case are based on those BSA provisions. Further, a claim by the SEC of a deficient AML program, as articulated by the Court, could not be pursued under Rule 17a-8. That rule, even assuming *arguendo* it were a valid exercise of authority by the SEC, is limited to compliance with the "reporting, recordkeeping or record retention requirement" of the BSA. 17 C.F.R. § 240.17a-8. The implementation of an AML "program" is neither a "reporting," "recordkeeping" nor "record retention requirement" of the BSA, and would be beyond the scope of Rule 17a-8.[4]

---

[3] Alpine relied on authorities establishing that this action should be viewed as an enforcement action for alleged violations *of the BSA* because it hinges entirely on evidence and allegations that the provisions of the BSA were violated (*see* Alpine Cross Mot. Summ. J. at 15). The decision of the Second Circuit in *U.S. ex rel. Lissack v. Sakura Global Capital Mkts., Inc.*, 377 F.3d 145 (2d Cir. 2004) was cited for this precise issue, i.e., that a claim purportedly brought under a different provision, but which actually hinged on purported violations of the tax laws, arose under the Tax Code and was thus was precluded because it fell "within the IRS's jurisdiction to remedy." *Id.* at 153-54, 156. The Court overlooked this holding from *Lissack* and instead refers to it only in relation to a different discussion – whether one agency can incorporate and thereby enforce the regulations of another agency – and asserts that the decision turned on an express provision of the False Claims Act. (Opinion, at 37-38.) The Court misinterpreted *Lissack* and failed to acknowledge the various other decisions cited by Alpine on that same point, set forth here again in footnote 10, *infra*.

[4] Alpine does not believe that the SEC's "principal allegation" is an alleged AML program violation. The SEC's principal allegations are that Alpine failed to comply with the SAR reporting requirements of the BSA in 31 C.F.R. § 1023.320; all of its substantive allegations in its Complaint regarding the nature of its claim relate to alleged violations of the SAR requirements. (*See* SEC Complaint, ¶¶28-43, 46.) Moreover, the SEC appears to be seeking a separate penalty for each alleged inadequate SAR, unfiled SAR, untimely SAR, and missing support file. If these alleged SAR reporting and recordkeeping violations were simply evidence of a broader claim that Alpine violated AML program requirements, then the SEC could not get penalties on a per-SAR basis. An inadequate AML program would be a single violation. Alpine has a right to know the theory on which the

Further, FinCEN did not "delegate" authority over AML programs to the SEC. Rather, in accordance with Congress' authorization in 31 U.S.C. § 5318(h)(2), FinCEN promulgated 31 C.F.R. § 1023.210 which requires broker-dealers to "compl[y] with the rules, regulations or requirements of its self-regulatory organization governing such programs." *Id.* § 1023.210(c). This rule simply directs broker-dealers to comply with the AML program requirements set forth by FINRA; it is not a delegation of any of FinCEN's authority to either the SEC or FINRA. When FinCEN intends to delegate, it says so expressly. *See* 31 C.F.R. § 1010.810(b), (c) and (g). The proper legal analysis applicable to the issue of the SEC's authority to pursue alleged violations of the BSA's SAR regulations leads ineluctably only to one conclusion: FinCEN possesses exclusive authority to interpret and to enforce the SAR reporting requirements and the SEC has not, and cannot, usurp that authority. Analysis of agency authority begins with consideration of the parameters of agency action and recognition that an agency has "'only those authorities conferred upon it by Congress.'" *Natural Res. Def. Council v. Abraham,* 355 F.3d 179, 202 (2d Cir. 2004) (quoting *Atlantic City Elec. Co. v. FERC*, 295 F.3d 1, 8 (D.C. Cir. 2002). The court must then determine and adhere to those Congressional directives including the jurisdictional provisions of a later passed statute.

> The classic judicial task of reconciling many laws enacted over time, and getting them to make sense in combination, necessarily assumes that the implications of a statute may be altered by the implications of a later statute. *This is particularly so where the scope of the earlier statute is broad but the subsequent statutes more specifically address the topic at hand . . . . "[A] specific policy embodied in a later federal statute should control our construction of the [earlier] statute, even though it ha[s] not been expressly amended.*"

*F.D.A. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 143 (2000) (citation omitted) (emphasis added).

---

SEC is pursuing penalties in this action, and Court should order the SEC to clarify its position. Not only will this provide guidance to the parties going forward, but it would also be helpful for the upcoming court-ordered mediation.

Here, that controlling foundational question of Congressional delegation is easily answered.  Authority to issue the BSA's implementing regulations, as well as authority to bring enforcement actions to seek civil money penalties or injunctive relief for alleged violations, were expressly delegated by Congress to Secretary of the Treasury ("Treasury Secretary").[5]  With Congress's authorization, the Treasury Secretary re-delegated its authority to administer, implement and enforce the BSA to FinCEN.[6]  Consistent with Congress' delegation, FinCEN itself has repeatedly emphasized its enforcement authority and explained the limited extent and purpose of its delegation of "examination" authority.  For example, in December of 2016, FinCEN stated:

> FinCEN is responsible for the overall administration and enforcement of the BSA. Although it delegates BSA compliance examination authority to other federal regulators, FinCEN retains enforcement authority, including the authority to impose CMPs [civil monetary penalties] for violations.

(*See* Alpine's Rule 56.1 Statement of Facts in Support of Cross-Motion, SOF 4.)[7]  Treasury re-delegated a single power to the SEC with respect to the BSA:  the "[a]uthority to examine institutions to determine compliance with the requirements of this chapter."   31 C.F.R. §

---

[5]  *See, e.g.*, *California Bankers Ass'n v. Shultz,* 416 U.S. 21, 26 (1974) ("Under the [Bank Secrecy] Act, the Secretary of the Treasury is authorized to prescribe by regulation certain recordkeeping and reporting requirements for banks and other financial institutions in this country."); *see also* 31 U.S.C. §§ 5318(g) and (h), 5320, 5321.

[6]  *See* 31 U.S.C. § 310(b)(2)(I); *see also* Treasury Order 180-01(3)(a), (b) (authorizing FinCEN, *inter alia*, to "[e]xercise authority for enforcement of and compliance with the regulations at 31 CFR part 103 [since renumbered to 31 CFR chapter X] with respect to the activities of agencies exercising authority thereunder that has been redelegated to such agencies by FinCEN . . . ."); 31 C.F.R. § 1010.810(a) (stating "[o]verall authority for enforcement and compliance, including coordination and direction of procedures and activities of all other agencies exercising delegated authority under this chapter, is delegated to the Director, FinCEN.").  FinCEN also retained the exclusive "[a]uthority for the imposition of civil penalties for violations of" the BSA and its implementing regulations.  *See id.* § 1010.810(a), (d); 52 Fed. Reg. at 11,436, 11,440 cmt. 19 (April 8, 1987).

[7]  Similarly, in a Report to Congress, FinCEN stated:

> FinCEN has retained the authority to pursue civil enforcement actions against financial institutions for non-compliance with the Bank Secrecy Act and the implementing regulations.  Under the Bank Secrecy Act, FinCEN is empowered to assess civil money penalties against, or require corrective action by a financial institution committing negligent or willful violations of the Bank Secrecy Act.  Generally, FinCEN identifies potential enforcement cases through:  (1) referrals from the agencies examining for Bank Secrecy Act compliance; (2) self-disclosures by financial institutions; and, (3) FinCEN's own inquiry to the extent it becomes aware of possible violations.

(Alpine's Rule 56.1 Statement of Facts in Support of Cross-Motion SOF 3); *see also* Alpine's SOF Nos. 5-9 for additional, similar statements by FinCEN.

1010.810(b)(6).  That limited delegation of authority *to examine* for compliance with the BSA conferred on the SEC only:  (1) the power to *"examine any books, papers, records or other data of domestic financial institutions relevant to the recordkeeping or reporting requirements of this chapter,"* 31 C.F.R. § 1010.810(f); and (2) the duty to make periodic reports to the Director of FinCEN and *to submit "[e]vidence of specific violations of any of the requirements of this chapter" to the Director of FinCEN.  Id.* § 1010.810(e) (emphasis added).

That the SEC was imbued only with examination authority, not enforcement authority, is evident also from the fact that Congress did permit Treasury to re-delegate authority for other provisions of the BSA to other agencies, most importantly the banking regulators.  For example, in 31 U.S.C. § 5321(e), Congress authorized the Secretary to delegate "any authority of the Secretary to assess a civil money penalty under this section on depository institutions (as defined in section 3 of the Federal Deposit Insurance Act) to the appropriate Federal banking [] agencies . . . ."  31 U.S.C. § 5321(e)(1).  Similarly, in 31 C.F.R. § 1010.810(g), FinCEN "redelegates" the "authority to enforce" provisions of 31 U.S.C. § 5314 and 31 C.F.R. §§ 1010.350 and 1010.420 from FinCEN to the Commissioner of the IRS, including, to "assess and collect civil penalties under 31 U.S.C. § 5321 and 31 C.F.R. § 1010.820" and "investigate possible civil violations of these provisions."  31 C.F.R. § 1010.810(g).  That these provisions expressly grant certain agencies authority to enforce the BSA and seek penalties is compelling evidence that such authority was withheld from the SEC.[8]

The Court swept all of these authorities aside without discussion.  Yet, this single circumstance of the express delegation of authority under the BSA proves the error of this

---

[8]  *See, e.g., Cudahy Packing Co. v. Holland,* 315 U.S. 357, 364 (1942) ("[T]he grant of authority to delegate the power of inspection, and the omission of authority to delegate the subpoena power, shows a legislative intention to withhold the latter.").  Moreover, under the canon *expressio unius est exclusio alterius,* that FinCEN delegated only the authority to examine broker-dealers to the SEC shows an intent to prevent the SEC from exercising any other authority.  *See Halverson v. Slater,* 129 F.3d 180, 185 (D.C. Cir. 1997).

Court's conclusions.  The Second Circuit's decision in *Nutritional Health Alliance v. F.D.A.*, 318 F.3d 92 (2d Cir. 2003), discussed at length in Alpine's Reply and overlooked by the Court, is precisely on point and conclusively establishes the error in both the SEC's position and the Court's ruling.  In that case, the Court held that the FDA did not have authority to regulate "packaging" of drugs and dietary supplements for "poison prevention purposes," *id.* at 95, despite the FDA's "broad authority" under the FDCA to regulate "food and drugs in order to protect public health."  *Id.* at 98.  To determine the scope of the FDA's authority, the Court observed that, under *Brown & Williamson* and similar authorities, it was required to consider not just the FDCA, but also later-enacted statutes that specifically targeted poison-prevention packaging and transferred the regulation of poison-prevention packaging from the FDA to another agency, the Consumer Product Safety Commission ("CPSC").  *Id.* at 94, 102-03.  The Court held that the subsequent specific delegation of authority to the CPSC precluded the exercise of authority by the FDA, stating that the FDA's claim of concurrent jurisdiction struck a "discordant tone" and would "circumvent the detailed regulatory scheme" put in place by Congress.  *Id.* at 104.

So it is here.  The BSA, enacted decades after the Exchange Act, expressly stated that rulemaking, administration and enforcement authority with respect to the BSA reside solely in the Treasury Department.  The BSA and its implementing regulations "specifically and unambiguously" cover the subject matter of SAR reporting requirements.  As in *Nutritional Health,* the SEC's assertion of "concurrent jurisdiction" to enforce the SAR requirements of the BSA under Section 17(a) of the Exchange Act "rings a discordant tone with the regulatory structure created by Congress."  318 F.3d at 104.  This Court clearly erred by not adhering to this Second Circuit guidance.

Furthermore, Alpine cited numerous additional authorities in its moving papers that rejected similar attempts by agencies to act without, or contrary to, an express delegation of statutory authority, specifically in situations where Congress had delegated authority to a different agency or official.[9]  The Court addressed none of them.  This Court should have begun, and ended, its discussion of whether the SEC possessed authority to enforce the SAR provisions with the clear Congressional mandates in the BSA.   By instead ignoring those express delegations within the BSA, the Court clearly erred.

### B. The Court's Erred in Applying *Chevron* to Allow the SEC to Circumvent Congress' Express Intent to Delegate BSA Authority to Treasury

Instead of discussing or applying the statutory provisions of the BSA relating to enforcement authority, the Court relied entirely on a limited treatment of Rule 17a-8 and employed *Chevron* deference to adopt the SEC's claim that it "incorporated" the BSA (and all future amendments thereto) and thereby possesses enforcement authority over the SAR regulations.   The Court began with a *Chevron* analysis that even the SEC did not put forth, concluding that the SEC's claim that Section 17(a) empowers it to enforce BSA regulations, contrary to the precise Congressional delegation of authority in the BSA and FinCEN's statements on the issue, is "reasonable."  (Opinion, at p. 36.)  The Court also failed to address the

---

[9]  *See, e.g., Am. Bankers Ass'n. v. S.E.C.,* 804 F.2d 739, 755 (D.C. Cir. 1986) ("[t]he SEC cannot use its definitional authority to expand its own jurisdiction and to invade the jurisdiction of other agencies, including the Board of Governors" of the Federal Reserve Board); *Bayou Lawn & Landscape Servs. v. Sec'y of Labor,* 713 F.3d 1080, 1084-85 (11th Cir. 2013) (where rulemaking authority was granted to the Department of Homeland Security ("DHS"), court rejected, as an "absurd reading of the statute," the Department of Labor's ("DOL" ) argument that because DHS was required to "consult" with DOL, that this "empowered [DOL] to engage in rulemaking, even *without* the DHS," and finding that DOL "cannot bootstrap that supporting role into a co-equal one."); *California v. Klepp,* 604 F.2d 1187 (9th Cir. 1979) (holding the Environmental Protection Agency could not exercise control of air quality in the outer continental shelf ("OCS") under the Clean Air Act because it conflicted with the delegation of authority to regulate air quality in the OCS to the Secretary of the Interior ("Interior Secretary") under the later enacted amendments to the Outer Continental Shelf Lands Act); *Adams Fruit Co. v. Barrett,* 494 U.S. 638, 649–650 (1990) (holding that a delegation of authority to promulgate motor vehicle safety "standards" did not include the authority to decide the pre-emptive scope of the federal statute because "[n]o such delegation regarding [the statute's] enforcement provisions is evident in the statute" and "an agency may not bootstrap itself into an area in which it has no jurisdiction."); *United States v. Giordano,* 416 U.S. 505, 508 (1974) (where statute at issue, 18 U.S.C. § 2516, "conferr[ed] power on the 'Attorney General, or any Assistant Attorney General specially designated by the Attorney General'" to authorize wiretap applications, court held that authority could not "be exercised by any individuals other than the Attorney General or an Assistant Attorney General specially designated by him.").

actual circumstances surrounding the promulgation of Rule 17a-8, the prohibition against usurpation of authority delegated to another agency, the authorities relating to incorporation of another statute and, perhaps most importantly, the requirements of the APA.

First, the Court's invocation of *Chevron* deference to reach its conclusion was, in and of itself, error. Because "Congress has directly spoken to the precise question at issue," *Chevron* deference is not accorded "to the contrary view advanced by the SEC." *Digital Realty Tr., Inc. v. Somers*, 138 S. Ct. 767, 782 (2018) (quotations and citation omitted). As detailed above, Congress here has spoken directly and at fairly high volume regarding enforcement authority under the BSA – in the BSA itself – and it gives no enforcement authority to the SEC. The Court cannot rely on *Chevron* to sustain an interpretation of Rule 17a-8 that is inconsistent with Congressional directives.

The Court also erred in concluding that the SEC's interpretation of its authority to enforce the BSA under Section 17(a) was "reasonable," and therefore entitled to deference. The Court focused only on Section 17(a) and failed to consider the fact that even broadly articulated authority is subject to the jurisdictional constraints embodied in other more specific Congressional provisions. The Second Circuit's decision in *Nutritional Health Alliance* is right on point here too, as the Court refused to give *Chevron* deference to the FDA's assertion of authority over "poison prevention packaging." *See* 318 F.3d at 103-04. The Court noted that the FDA was given broad regulatory authority but that, "[u]nder the second prong of *Chevron,* we would find it necessary to analyze not only the FDC Act, which the FDA administers, but also the PPP Act [Poison Prevention Act] and the CPSC [Consumer Product Safety Act], both of which are administered by the CSPC and not the FDA." *Id.* at 101-02. After considering all of the statutes, the Court held "it would not defer to the FDA regarding its interpretation of

11

ambiguous language in the FDC Act where doing so would allow the FDA to circumvent the detailed regulatory scheme, including express constraints, set forth by Congress in the PPP." *Id.* at 104.[10]  This Court was required but failed to adhere to the jurisdictional provisions of the BSA in its analysis of the scope of Section 17(a).  Given Congress' express delegation of authority only to Treasury to enforce the BSA and its regulations, the SEC's unilateral assertion that Rule 17a-8 allows it to also pursue an enforcement action for purported violations of the SAR regulations is not reasonable.

The Court's citation to *City of Arlington v. FCC*, 569 U.S. 290, 297 (2013) does not change this result.  Although the Supreme Court held that *Chevron* deference can apply to an agency's interpretation of the scope of its statutory authority, that case did not involve the assertion of jurisdiction by one agency over a separate regulatory scheme that Congress expressly entrusted to a different agency.  *Id.* at 293-295.  Given the language of the BSA, the SEC's assertion of authority is not within "the bounds of reasonable interpretation."  *Id.* at 296.

The Court erred also in its adoption of the SEC's position that "neither the Exchange Act nor the BSA expressly preclude[] joint regulatory authority by FinCEN and the SEC over the reporting of potentially suspicious transactions." (Opinion, at 38.)  Notably, and for ample policy reasons, "joint" regulation is the exception not the rule.  *See Martin v. Occupational Safety and Health Review Comm'n*, 499 U.S. 144, 151 (1991) ("Under most regulatory schemes rulemaking, enforcement, and adjudicative powers are combined in a single administrative authority.").[11]

---

[10]  The reasoning of this decision further highlights the error in the SEC's position, and the Courts' determination, that this suit is not to enforce the BSA, but rather is "brought pursuant to the Exchange Act."  (Opinion, at 35.)  If that reasoning were valid, the Second Circuit would have had to sustain the FDA's authority, because it was proceeding under purported authority granted by the FDCA.  *See Nutritional Health*, 318 F.3d at 102, 104.  The Second Circuit instead looked at *what* the FDA was trying to regulate, to see whether that subject was within its delegated authority or had been delegated to another agency.  *See id.* at 102-04.

[11]  *See also* Ernest Gellhorn & Paul Verkuil, *Controlling Chevron-Based Delegations*, 20 CARDOZO L. REV. 989, 1016–17 (1999) (cited with approval by Justice Breyer in *City of Arlington,* 569 U.S. at 309) (in evaluating "an agency's assertion of regulatory authority, a central question is whether another agency also has responsibility in the

Further, the Court disregarded numerous authorities cited by Alpine in its Reply holding that courts will not presume a delegation from silence.[12]  The Court ignores the extensive authority demonstrating that the Congressional delegation regarding the BSA is patently clear, has been consistently reinforced by FinCEN, and establishes that "joint" enforcement authority in relation to the SAR provisions does not exist.

The Court's final argument in support of its conclusion consisted of citation to the SEC's own "announced view" in settled orders that it possesses enforcement authority.  (Opinion, at 39-40.).  Deference, however, is not warranted for settled administrative adjudications which do nothing more than iterate the SEC assertion that this Court is being called upon finally to adjudicate.  *See, e.g., In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 962 F. Supp. 2d 606 (S.D.N.Y. 2013) (held that "we need not defer to statements made in the Barclays settlement order" and citing additional authorities); *accord Sec. Investor Protection Corp. v. Stratton Oakmont, Inc*., 234 B.R. 293, 336 (Bankr. S.D.N.Y. 1999) ("The Second Circuit has clearly held that consent judgments . . . are not the result of actual adjudications on the merits . . ."); *see also SEC v.  Sloan,* 436 U.S. 103, 117 (1978) (refusing to give deference to SEC's "consistent and longstanding" interpretation of a statute as authorizing consecutive summary suspension orders because there is no indication that "[t]he Commission actually addressed in any detail the statutory authorization under which it took that action," and noting that "the existence of a prior

---

field, and if so, whether it is likely that Congress would have intended that more than one agency was to oversee the area.  While duplicative regulatory authority is sometimes authorized by Congress--e.g., both the Department of Justice ("DOJ") and FTC have authority to prohibit anticompetitive mergers and unreasonable restraints of trade -- that is the exception rather than the rule, and the usual presumption is that Congress does not intend to divide regulatory responsibility among two or more agencies.").

[12]   *See, e.g., Halverson*, 129 F.3d at 187 (D.C. Cir. 1997) ("'Were courts to *presume* a delegation of power absent an express *withholding* of such power, agencies would enjoy virtually limitless hegemony, a result plainly out of keeping with *Chevron* and quite likely with the Constitution as well.'") (emphasis in original) (citation omitted)); *accord Bayou Lawn*, 713 F.3d at 1085 (same).

administrative practice, even a well-explained one, does not relieve us of our responsibility to determine whether that practice is consistent with the agency's statutory authority").

This issue of allocation of authority is not complex or difficult to navigate:  it is clear. The Court's conclusion that the SEC is entitled to *Chevron* deference to sustain its attempt to grant itself authority to enforce the SAR regulations of the BSA was clearly erroneous.

### C.      The Court Ignored the Requirements of the APA

The Court also clearly erred by failing to address either the actual circumstances pertaining to the enactment of Rule 17a-8, or the statutory, regulatory and decisional authorities demonstrating that the SEC's 1981 issuance of that rule does not eliminate the need to comply with the APA to impose any new substantive obligations in the future, and does not constitute a valid conferral of authority to enforce the 2002 SAR reporting requirements.

Instead of addressing Alpine's argument and authority on this point, the Court asserts that Alpine is "arguing that the SEC may not incorporate the regulations of another agency." (Opinion at 37.)  The Court misconstrues Alpine's position.  Alpine does not contend that one agency may not incorporate the publications of another agency as a general principle.  Rather, Alpine's argument is that the SEC's attempt to do so through Rule 17a-8 was unlawful for two primary reasons.  First, as discussed above, an agency cannot incorporate another agency's regulations by reference if that incorporation would violate express Congressional delegation of authority, including, as here, to another agency.  *See, e.g., Adams Fruit*, 494 U.S. at 650 (holding "an agency may not bootstrap itself into an area in which it has no jurisdiction").

Second, an agency cannot *dynamically* incorporate another agency's presently nonexistent regulations, such that a rule would "evolve over time" (Opinion at 38), without adherence to the rigors of the APA requirements to incorporate new requirements.  Rather, the regulations of the Office of the Federal Register ("OFR"), *which are controlling authority on*

*incorporation by reference under the APA*,[13] require agencies to identify the particular version of any material incorporated by reference, and obtain formal approval to incorporate any materials by reference.[14]  More important here, the OFR regulations expressly state that "incorporation by reference of a publication is limited to the edition of the publication that is approved.  *Future amendments or revisions of the publication are not included*."  1 C.F.R. § 51.1(f) (emphasis added); *see also id.* § 51.11(a) (providing unambiguous instructions to agencies regarding the formal procedure necessary to amend or update material incorporated by reference, including publishing notice of the change in the Federal Register).[15]

These regulations, which were cited by Alpine in its Reply Memorandum and not addressed by the Court, confirm that the SEC was not permitted to sweep into its rules any and all future amendments of the BSA and Treasury regulations without the need for additional notice and comment.   Thus, the promulgation of new reporting requirements, whether accomplished expressly or through a purported incorporation mechanism, would still require compliance with the APA.  *See City of Idaho Falls v. F.E.R.C.*, 629 F.3d 222, 227-29 (D.C. Cir 2011) (holding FERC violated APA by attempting to adopt, without additional notice and comment, updated Forest Service fee schedules, after a previous version of fee schedule was incorporated by reference in FERC's regulations).

The Court also disregarded another fundamental problem with dynamic incorporation that Alpine raised in its Reply:  it would constitute an improper delegation to FinCEN of

---

[13] *See* 1 C.F.R. 51.1(a)-(c).

[14] *See* 1 C.F.R. § 51.5(b) (requiring approval of the Director of the OFR for all materials incorporated by reference), § 51.9 (requiring that any incorporation by reference "state[] the title, date, edition, author, publisher and identification number of the publication to be incorporated.").

[15] A similar principle applies for statutes, as a matter of statutory construction.  *See, e.g.*, *New York State Office of Children & Family Servs. v. U.S. Dep't of Health & Human Servs.' Admin. for Children & Families*, 556 F.3d 90, 98–99 (2d Cir. 2009) ("'Where one statute adopts the particular provisions of another by a specific and descriptive reference to the statute or provisions adopted . . . [s]uch adoption takes the statute as it exists at the time of adoption and does not include subsequent additions or modifications by the statute so taken unless it does so by express intent.'") (quoting *Hassett v. Welch*, 303 U.S. 313-14 (1938)).

rulemaking authority under Section 17(a) of the Exchange Act.  As noted by the Court, Section 17(a) provides that broker-dealers must make and keep records "*as the Commission, by rule, prescribes* as necessary and appropriate."  (Opinion at 36 (emphasis added) (quoting Section 17(a)).)  If the requirements of Rule 17a-8 automatically change every time FinCEN amends its BSA regulations, then it is FinCEN, not the SEC, that is engaging in rulemaking under Section 17(a).  The SEC would have abdicated its responsibility to "prescribe" rules, and FinCEN would be effectively imposing regulations under Section 17(a), regardless of whether those rules have any rational application to broker-dealers.  *See City of Idaho Falls,* 629 F.3d at 229-30 (describing abdication of rulemaking as a "second fatal defect" to FERC's use of updated Forest Service fee schedules).[16]

Under these various principles, had the SEC wanted to expand Rule 17a-8 beyond its purpose and even its title ("Reporting of *Currency and Foreign Transactions*") to incorporate a new and distinct regime of suspicious activity reporting, it had to comply with the APA, and it did not.  The Commission did not prescribe or properly publish and promulgate any such rule relating to SARs.[17]  It did not consider the implications, the costs or the industry's concerns regarding a wholesale incorporation, in a strict liability books and records provision, of a sweeping set of requirements.  *See* 5 U.S.C §§ 552-553.  It did not assess the wisdom or drawbacks of duplication of enforcement efforts.  The Rule was never amended, revised or

---

[16] *See also* Emily S. Bremer, *Incorporation by Reference in an Open-Government Age*, 36 HARV. J.L. & PUB. POL'Y 131, 183–86 (2013) (noting one of the "challenge[s] of incorporation by reference is updating regulations to reflect revised versions of incorporated materials" and observing that "[a]lthough dynamic incorporation is an obvious way to avoid the updating conundrum it is prohibited," and citing authorities that prohibit dynamic incorporation including the APA, the OFR regulations, and the constitutional "nondelegation doctrine").  This article was cited as authoritative in *American Society for Testing and Materials v. Public.Resource.org, Inc.,* No. 13-cv-1215 (TSC), 2017 WL 473822, at *3 (D.D.C. Feb. 2, 2017); *see also* OSHA, Standards Improvement Project--Phase III, 76 Fed. Reg. 33,590, 33,593 (2011) ("The Agency notes that it cannot incorporate by reference the latest editions of consensus standards without undertaking new rulemaking because such action would delegate the government's regulatory authority to consensus standards developing organizations, as well as deprive the public of the notice-and-comment period required by law.")

[17] *Smiley v. Citibank (South Dakota), N. A.,* 517 U.S. 735, 741 (1996) (APA notice and comment "designed to assure due deliberation").

reconsidered; the Commission has never even issued a statement suggesting that the rule incorporated (and permitted enforcement of) SAR requirements, and the Rule cannot be "interpreted" to encompass that kind of substantive and deeply impactful change.

The court in *United States v. Piccoitto*, 875 F.2d 345, 346 (D.C. Cir. 1988), cited in Alpine's Reply and not addressed by the Court, rejected an identical attempt by the Park Service, which argued that because its original regulation "went through notice and comment, the new restrictions [purportedly imposed under that regulation] do not need to." The Court reasoned:

> In essence, the Park Service is claiming that an agency can grant itself a valid exemption to the APA for all future regulations, and be free of APA's troublesome rulemaking procedures forever after, simply by announcing its independence in a general rule. That is not the law. Such agency-generated exemptions would frustrate Congress' underlying policy in enacting the APA by rendering compliance optional. The statute's direct mandate requires notice and comment procedures for any rule that does not fall within certain express exceptions. See § 553(b)–(e).

*Id.* at 346-47.

Instead of applying the "rigors" of the APA, the Court seized on the use of the word "revisions" in the notice of final rule and decided that it would be "more efficient" for the SEC to simply incorporate "the obligations that had been and would be imposed by the Treasury." (Opinion, at 38-39.) That phrase regarding "revisions" in the notice of publication is a strikingly tenuous basis on which to subsume any and all subsequent provisions of the BSA, well beyond the discussion of CTRs contained in the publication, in contravention of the law relating to incorporation.

Regardless, automatic absorption of the BSA may well be more "efficient," but it is not lawful. The SEC remains subject to the provisions of the APA, and even if its initial incorporation by reference of the BSA was permissible, its rule on its face considered only the CTR obligations that existed at the time.

For all of the foregoing reasons, the Court should reconsider and reverse its decision denying Alpine's Cross-Motion for Summary Judgment.

**POINT II**

**THE COURT SHOULD CERTIFY ITS RULING ON ALPINE'S CROSS-MOTION FOR SUMMARY JUDGMENT PURSUANT TO 28 U.S.C. § 1292(b) IN THE EVENT IT DOES NOT GRANT ALPINE'S MOTION TO RECONSIDER.**

**A.      Questions for Certification.**

In the alternative, Alpine moves the Court to certify its rulings in the Opinion denying Alpine's Cross-Motion for Summary Judgment for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).[18]  Specifically, Alpine seeks certification of the following controlling questions of law:

1.      Whether the Court erred in ruling that the SEC has authority under Section 17(a) of the Exchange Act to enact Rule 17a-8 to give itself jurisdiction to pursue an enforcement action based on alleged violations of the SAR requirements of the Bank Secrecy Act ("BSA"), where it is indisputable that such authority has been delegated exclusively to the Treasury Department by Congress, and where the Treasury Department has not re-delegated such authority to the SEC.

2.      Whether the Court erred in applying the *Chevron* doctrine to give deference to the SEC's position that it is entitled to pursue an enforcement action for violation of the SAR regulations of the BSA under Section 17(a) and Rule 17a-8, in derogation of Congress' express intent in the later, more specific provisions of the BSA to delegate BSA enforcement authority to the Treasury Department.

3.      Whether Rule 17a-8, even if properly promulgated in the first place in 1981, could lawfully incorporate FinCEN's later-promulgated SAR regulations of the BSA where the

---

[18] "When a district court certifies, pursuant to 28 U.S.C. § 1292(b), a question of controlling law, the entire order is certified and we may assume jurisdiction over the entire order, not merely over the question as framed by the district court." *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 391–92 (2d Cir. 2008), *cert denied*, 556 U.S. 1104 (2009).

SEC did not follow the notice, comment and publication requirements of the APA or the Federal Register Act to amend Rule 17a-8 to include FinCEN's SAR regulations.

### B.      Legal Standards for Certification under Section 1292(b).

"A district court may certify an interlocutory order for appeal pursuant to § 1292 if it is of the opinion that (1) the order 'involves a controlling question of law'; (2) 'as to which there is substantial ground for difference of opinion,' and (3) an immediate appeal 'may materially advance the ultimate termination of the litigation.'" *Am. Nat. Fire Ins. Co. v. Mirasco, Inc.*, 265 F. Supp. 2d 240, 249 (S.D.N.Y. May 26, 2003) (quoting 28 U.S.C. § 1292(b)), *aff'd in part, vacated in part and remanded by*, 144 F. App'x 171 (2d Cir. 2005).   As detailed below, certification is warranted here because Alpine meets each of the Section 1292(b) criteria, this case involves an important and novel legal question of special consequence – a federal agency acting *ultra vires* and/or in violation of the APA – and it would avoid "fruitless litigation."  *See Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 866 (2d Cir. 1996) (stating, "one of the types of cases . . . appropriate for interlocutory appeals" was "where a long trial was envisioned to determine liability over a defense disputing the right to maintain the action," because "avoiding fruitless litigation" is the main goal "Congress aimed to vindicate" through the statute); *see also Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013) ("When a ruling satisfies [the Section 1292(b) ] criteria and 'involves a new legal question or is of special consequence,' then the district court 'should not hesitate to certify an interlocutory appeal'" (citation omitted)).   Alpine meets each of these requirements.

**C.**     **Alpine Meets the Certification Requirements under Section 1292(b)**

**1.**     **The Court's Ruling Denying Alpine's Cross Motion Involves a Controlling Question of Law.**

"In regard to the first prong [of the 1292(b) analysis], the 'question of law' must refer to a 'pure' question of law that the reviewing court 'could decide quickly and cleanly without having to study the record.'" *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 426 F. Supp. 2d 125, 129 (S.D.N.Y. 2005) (citation omitted).  A question of law is "controlling" if "reversal of the district court's order would terminate the action." *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990).

This standard is easily met here.  Alpine's Cross-Motion presented pure questions of law regarding the SEC's lack of authority to maintain its claim in this action for violation of the SAR requirements of the BSA and the SEC's failure to comply with the APA, and other authorities detailed above, in attempting to bring the 2002 SAR requirements into Rule 17a-8.  The questions is also clearly controlling as a reversal of this Court's Opinion on the issue would terminate the SEC's claim – the sole claim in the case – and thus terminate the action.

**2.**     **The Second Prong is Met Because Controlling Questions of Law Present Complicated Issue of First Impression and Because there is Substantial Doubt that this Court Correctly Decided these Novel Questions.**

The second certification prong requires a "substantial ground for difference of opinion" on the controlling question of law.  28 U.S.C. § 1292(b).  "A mere claim that a district court's decision was incorrect does not suffice to establish substantial ground for a difference of opinion." *Aristocrat Leisure*, 426 F. Supp. 2d at 129 (citations omitted).  Rather, "there must be 'substantial doubt' that the district court's order was correct." *N.F.L. Ins. Ltd. v. B & B Holdings, Inc.*, No. 91 Civ. 8580 (PKL), 1993 WL 255101, at *2 (S.D.N.Y. July 1, 1993).  Additionally,

"an order may furnish a 'substantial ground for a difference of opinion' when it presents issues that are 'difficult and of first impression.'"  *Vidal v. Nielsen*, 2018 WL 333515, at *2 (E.D.N.Y. Jan. 8, 2018) (quoting *Klinghoffer,* 921 F.2d at 25).

This element is met here for at least two reasons.  First, the controlling questions upon which Alpine seeks certification present difficult issues of first impression, not only in this Circuit but nationwide, and because there is "substantial doubt" that this Court correctly decided this issue of first impression.

As indicated in Alpine's underlying summary judgment briefing, there is no court or administrative decision in any jurisdiction that has analyzed or considered whether the SEC has the authority under Rule 17a-8 to bring an enforcement action for alleged violations of the SAR regulations of the BSA.  Simply put, the issue has never been raised and subjected to the adjudicative process.  The decisions cited by the SEC in its Opposition to Alpine's Cross-Motion and relied upon by the Court in its Opinion are primarily settled matters that were never litigated at all.  In the lone litigated action cited by both the SEC and this Court in its Opinion, *SEC v. Bloomfield*, the issue of the SEC's authority to pursue violations of the BSA's SAR regulations under Rule 17a-8 was never raised and considered by the Court.  This is thus a novel issue upon which reasonable jurists may disagree, warranting certification.  *See F.T.C. Wyndham Worldwide Corp.*, 10 F. Supp. 3d 602, 634-35 (D. N.J. 2014) (granting certification and holding the second prong of Section 1292(b) was met for defendant's challenge that "the FTC either lacks authority to promulgate a 'legal standard' governing corporate data security in the first place, or (at the very least) has failed to provide fair notice of that 'legal standard'" because, while the court rejected defendant's challenges, they "confront this Court with novel, complex statutory

interpretation issues" and "'reasonable jurists might disagree on [the] issue's resolution.'") (quoting *Reese v. BP Exploration (Alaska) Inc.,* 643 F.3d 681, 688 (9th Cir. 2011)).

Second, there is "substantial doubt" that this Court decided the questions posed for certification correctly.  *See N.F.L. Ins. Ltd.,* 1993 WL 255101, at *2.  As detailed above, there is compelling authority demonstrating that this Court erred in applying an analysis that, *inter alia*: (a) disregarded or found irrelevant Congress' express delegations of the authority to administer, implement and enforce the BSA to the Treasury Department and the undisputed and acknowledged fact that the SEC has no received no delegation of such authority from either Congress or the Treasury Department; (b) relied on the *Chevron* doctrine to condone the SEC's attempt, without any delegation of authority from Congress, to grant to itself the authority to bring an enforcement action for alleged violations of SAR regulations promulgated by and entrusted to a different agency; (c) disregarded the requirements of the APA, and authorities interpreting the APA, in concluding that the SEC's enactment in 1981 of Rule 17a-8 caused the 2002 SAR regulations of the BSA to be automatically swept within the SEC's regulatory sphere without complying with notice, comment and other procedural requirements of the APA to amend or update Rule 17a-8 to encompass the SAR regulations; and (d) held that Rule 17a-8 incorporates any subsequent changes to FinCEN's regulations, where dynamic incorporation is prohibited.

As each of these issues was addressed in detail above, in the interests of efficiency, Alpine will not repeat those arguments here.  Therefore, this element is plainly met because there is at least a "substantial ground for difference of opinion" on the controlling questions of law.

### 3. An Immediate Appeal will Materially Advance the Ultimate Termination of the Litigation.

"Courts place particular weight on . . . whether immediate appeal will materially advance the ultimate termination of the litigation." *Transp. Workers Union, Local 100 v. N.Y. City Trans. Auth.*, 358 F. Supp. 2d 347, 350 (S.D.N.Y. 2005); *see also Lerner v. Millenco, L.P.*, 23 F. Supp. 2d 345, 347 (S.D.N.Y. 1998) ("The Court of Appeals has emphasized the importance of the third consideration in determining the propriety of an interlocutory appeal."); *accord Koehler*, 101 F.3d at 865–66.

Here, as indicated, Alpine's Summary Judgment Motion sought dismissal of this case in its entirety. Thus, "[t]here is no doubt that a ruling by the Second Circuit as to the question [Alpine] seeks to appeal could materially advance the end of [a] litigation," because a reversal of this Court's decision "would terminate the litigation." *Kuzinski v. Schering Corp.*, 614 F. Supp. 2d 247, 250–51 (D. Conn. 2009); *Batalla Vidal v. Nielsen*, No. 16-CV-4756 (NGG) (JO), 2018 WL 333515, at *3 (E.D.N.Y. Jan. 8, 2018) (granting motion for certification of APA issue would advance termination of litigation because it would "eliminate issues thus making discovery much easier and less costly," even where it would not entirely dispose of the case); *cf. In re 105 E. Second Street Assocs.*, No. M-47 (LLS), 1997 WL 311919, at *3 (S.D.N.Y. June 10, 1997) (appeal not likely to advance termination of litigation when it "would not result in the dismissal of any claims or defenses... [n]or would it resolve any other substantially dispositive issue in [the] proceeding.").

Accordingly, the requirements of Section 1292(b) are met for the questions presented for certification and this is an "extraordinary case" warranting an interlocutory appeal.

## CONCLUSION

For the foregoing reasons, the Court should reconsider and reverse its Opinion denying Alpine's Cross-Motion for Summary Judgment and enter judgment dismissing the SEC's claim. Alternatively, pursuant to 28 U.S.C. § 1292(b), the Court should amend its Opinion to include the required findings necessary to certify the rulings in its Opinion denying Alpine's Cross-Motion for Summary Judgment for interlocutory appeal.

DATED this 20th day of April 2018.

/s/Maranda E. Fritz
Maranda E. Fritz
THOMPSON HINE
335 Madison Avenue, 12th Floor
New York, New York 10017-4611
Tel. 212.344.5680
Fax 212.344.6101
Email: Maranda.Fritz@thompsonhine.com


Brent R. Baker (BB 8285)
Aaron D. Lebenta (*Pro Hac Vice*)
Jonathan D. Bletzacker (*Pro Hac Vice*)
CLYDE SNOW & SESSIONS
One Utah Center
201 South Main Street, Suite 1300
Salt Lake City, Utah 84111-2216
Telephone 801.322.2516
Facsimile 801.521.6280
Email: brb@clydesnow.com
      adl@clydesnow.com
      jdb@clydesnow.com

*Attorneys for Defendant*
*Alpine Securities Corporation*