ZACHARY T. CARLYLE
carlylez@sec.gov
TERRY R. MILLER
millerte@sec.gov
SECURITIES AND EXCHANGE COMMISSION
1961 Stout Street, 17th Floor
Denver, Colorado 80294
(303) 844-1000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | **17-cv-4179-DLC** |
| Plaintiff, | |
| - against - | **ECF CASE** |
| ALPINE SECURITIES CORPORATION, | |
| Defendant. | |

**PLAINTIFF UNITED STATES SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION REGARDING PARTIAL SUMMARY JUDGMENT (DOC. NO. 112)**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

ARGUMENT ........................................................................................................................2

I.     THE COURT CORRECTLY RULED THAT NARRATIVES IN THE SAMPLE SARS
       ARE DEFICIENT ........................................................................................................3

       A.     The Court did not err by applying the objection test in Section 1023.320 .............3

       B.     The Court did not err by looking to guidance issued by FinCEN to interpret rules
              promulgated by FinCEN .......................................................................................7

              1.     The Court did not give FinCEN guidance the "force of law."....................7

              2.     The Court's interpretation of guidance was correct....................................7

       C.     The Court correctly applied its interpretation of Section 1023.320 to the Sample
              SARs ..................................................................................................................10

       D.     Section 1023.320 and FinCEN Guidance gave Alpine fair notice of the law. ......13

II.    THE MOTION SHOWS NO ERROR IN THE COURT'S RULING ON LIQUIDATION
       TRANSACTIONS ...................................................................................................... 13

III.   THE COURT CORRECTLY RULED THAT ALPINE DOES NOT HAVE AN
       INDETERMINATE AMOUNT OF TIME TO FILE SARS. ...........................................15

IV.    THE COURT CORRECTLY RULED THAT ALPINE IS REQUIRED TO PRODUCE
       SAR SUPPORTING FILES ON REQUEST..................................................................15

CONCLUSION.....................................................................................................................17

# TABLE OF AUTHORITIES

**Federal Cases**

*Auer v. Robbins*, 519 U.S. 452 (1997) ................................................................................. 7, 13

*Point Prods. A.G. v. Sony Music Entm't, Inc.*, No. 93 CIV. 4001 (NRB), 2002 WL 31856951 (S.D.N.Y. Dec. 19, 2002) ....................................................................................................................... 3

*SEC v. Cope*, No. 14CV7575 (DLC), 2017 WL 519256 (S.D.N.Y. Feb. 8, 2017) ................................ 2, 3

*United States v. Clark*, 717 F.3d 790 (10th Cir. 2013) ........................................................... 12


**Other**

31 C.F.R. §  1023.320 .................................................................................................... *passim*

31 C.F.R. § 1023.320(a)(2) ............................................................................................ 1, 15

31 C.F.R. § 1023.320(b)(3) ............................................................................................ 15

31 C.F.R. § 1023.320(d) ............................................................................................ 15, 16

67 Fed. Reg. 44048 .................................................................................................... 4, 6

Plaintiff United States Securities and Exchange Commission (the "Commission") submits this Memorandum of Law in Opposition to Defendant Alpine Securities Corporation's ("Alpine") motion to reconsider (Doc. Nos. 112 & 113, together, "Motion")[1] the Court's order (Doc. No. 101, "Order") granting in part the Commission's motion for partial summary judgment (Doc. No. 68 & 74, "SEC Memo.").

## INTRODUCTION

In the Motion, Alpine asserts that the Court committed clear error on every point in the 77-page Order by repeating the same arguments Alpine made in opposition to the Commission's motion for partial summary judgment (Doc. No. 87, "Alpine Memo."). Reasserting the same arguments on every point in the Order is not the proper use of a motion for reconsideration but, rather, a vehicle to relitigate old issues and take a second bite at the apple.

The most common issue Alpine relitigates in the Motion is the impact of Alpine's subjective belief on its SAR reporting obligations. Many times in the Motion Alpine repeats the same argument made in opposition to the Commission's motion for partial summary judgment that Alpine has no SAR reporting obligation unless it actually suspects a transaction is reportable under 31 C.F.R. § 1023.320(a)(2). *See, e.g.* Motion at 7. As the Court correctly ruled, this argument cannot defeat summary judgment because Section 1023.320 imposes an objective test in addition to the subjective test continuously cited by Alpine. Order at 43-44. While it is true that a subjective suspicion triggers Alpine's reporting obligation, a separate reporting obligation is triggered when Alpine receives an objective reason to suspect a transaction is reportable even in the absence of a subjective suspicion. Thus, while it is true that some FinCEN guidance cited

---

[1] Page citations to the "Motion" refer to the memorandum of law in support of the Motion, Doc. No. 113.

by Alpine explains the subjective obligation, none of this guidance purports to strike the objective test from Section 1023.320. The Motion continues to ignore the objective test, and Alpine has never offered an interpretation of Section 1023.320 that would give meaning to the phrase "has reason to suspect" and still limit reporting obligations to situations where the filer only subjectively suspects a transaction is reportable. This argument does not warrant reconsideration especially because it refuses to confront the rationale of the Court's ruling.

The remaining points in the Motion do not warrant reconsideration, either. The Motion does not cite an intervening change of law. The Court correctly denied Alpine's request to submit additional evidence to support the Motion, all of which was available to Alpine at the time it responded to the Commission's motion for partial summary judgment, including a declaration from Alpine's expert and the facts from its own CEO and two employees who submitted declarations with Alpine's opposition brief. Thus, while the Motion was built on the denied attempt to submit additional evidence, the Motion identifies no new facts.  The Motion also attempts to identify law and facts overlooked by the Court, but as explained below Alpine points only to law and facts the Court actually did address in the Order and otherwise argues about law and facts that are neither controlling nor material to the Order. The Motion falls well short of the strict standard for reconsideration and should be denied.

## <u>ARGUMENT</u>

A motion for reconsideration is not a vehicle for relitigating old issues or taking a second bite at the apple. *SEC v. Cope,* No. 14CV7575 (DLC), 2017 WL 519256, at *1 (S.D.N.Y. Feb. 8, 2017). The standard for a motion for reconsideration is strict, and motions for reconsideration will generally be denied where, as here, the moving party fails to point to controlling decisions or

facts the court overlooked and that are of such a nature that they might reasonably be expected to alter the Court's conclusion. *Id.* (quotation omitted); *Point Prods. A.G. v. Sony Music Entm't, Inc.*, No. 93 CIV. 4001 (NRB), 2002 WL 31856951, at *2 (S.D.N.Y. Dec. 19, 2002) (quotation omitted). The Motion should be denied unless Alpine can identify (i) controlling law or facts that the Court overlooked, (ii) an intervening change of controlling law, (iii) availability of new evidence, or (iv) clear error or manifest injustice. *Cope,* No. 14CV7575 (DLC), 2017 WL 519256, at *1.

I.     **THE COURT CORRECTLY RULED THAT NARRATIVES IN THE SAMPLE SARS ARE DEFICIENT.**

    A.     **The Court did not err by applying the objective test in Section 1023.320.**

Alpine first argues that the Order did not account for the subjective reasons that Alpine filed the Sample SARs. Motion at 5-10. Alpine asserted this argument in opposition to the Motion for Partial Summary Judgement many times. Alpine Memo. at 1-2, 7, 9-12, 14, 28, 32-33, 35, 38. The Order correctly considered and rejected this argument because neither Rule 17a-8 nor Section 1023.320 require proof of what Alpine knew or suspected to establish a violation. Order at 43-44.

As repeated in the Motion, this argument continues to suffer from the same flawed circular logic that would render meaningless the phrase "reason to suspect" in Section 1023.320. The gist of Alpine's subjective red flag argument is this: (1) a filer need only file a SAR if it actually suspects criminal activity, and (2) a filer need only describe in the SAR narrative the activity it actually suspected. To complete the circular logic, Alpine then argues that the Court can determine the reason a SAR was filed by reading the SAR narrative. Motion at 4-5. In short, Alpine's argument is that the SAR narrative need only contain the information that it actually

3

contains. The adequacy of the SAR narrative can never be refuted or verified. Even worse, the

existence and quality of all SARs submitted for law enforcement's use would be at the whim of

each's filer's selective gullibility.

FinCEN anticipated and avoided this difficulty in enforcement by imposing the objective

test:

> FinCEN believes that compliance with the rule cannot be
> adequately enforced without an objective standard.

67 Fed. Reg. 44048, 44053.

Alpine's interpretation of Section 1023.320 is not compatible with the objective test and

would lead to absurd results. Among others, the language "knows, suspects, or has reason to

suspect" envisions a situation where a filer is required to report a transaction and to provide a

complete description of the activity even where the filer does not actually suspect criminal

activity. If Alpine were correct, a filer could submit a SAR because it had a reason to suspect a

transaction involved criminal activity but leave the entire narrative section blank because, in

Alpine's view, the narrative only requires reasons why the filer actually suspected criminal

activity. This would render the objective test meaningless. It would also lead to absurd results: if

support documentation for a large deposit showed terrorist activity, Alpine could file a SAR with

its generic template description of a large deposit (*i.e.* the reason Alpine filed SAR) and omit

information about the terrorist activity because, in Alpine's view, nothing "require[s] the filer to

include in the narrative anything that was not relevant to the firm's decision to file the SAR or

that did not cause the firm suspicion." Motion at 7.

The authorities cited by Alpine do not compel this result. Motion at 6. The authorities

cited on page six of the Motion, all of which were cited in Alpine's Memo at pages 10-11,

describe the requirement that a filer exercise its subjective judgment. But these statements about the subjective requirement in Section 1023.320 do not mean that the filer has no obligation to also satisfy the objective requirement.

Alpine's reliance on the SAR forms also fails. As it did in Alpine's Memo at pages 13-14, Alpine quotes the provision in the 2012 SAR Form (SEC Ex. 9) that requires filers to "provide a clear, complete, and concise description of the activity, including what was unusual or irregular that caused suspicion." Motion at 6-7. Alpine then focuses on the language following the word "including," but ignores the effect of the word "including," which means that a complete description of the activity requires more than just the facts that caused suspicion.

Alpine's citation to the 2002 SAR Form instruction to "[d]escribe conduct that raised suspicion" is even less helpful. Motion at 7. The form actually says the following:

> **Explanation/description of suspicious activity(ies).** This section of the report is **<u>critical.</u>** <u>The care with which it is completed may determine whether or not the described activity and its possible criminal nature are clearly understood by investigators.</u> Provide a clear, complete and chronological description (not exceeding this page and the next page) of the activity, including what is unusual, irregular or suspicious about the transaction(s), using the checklist below as a guide, as you prepare your account.
>
> a. Describe conduct that raised suspicion.
>
> [b. through v.]

SEC Ex. 8 at Part IV (emphasis in original). The phrase "[d]escribe conduct that raised suspicion" is just one of 21 different categories of information to consider when preparing a "clear, complete and chronological description…." and therefore does not purport to convey the entirety of what is required in a SAR narrative. Further, these additional categories describe objective facts that exist regardless of the filer's subjective suspicion, including facts like

supporting documentation (VI(c)), who benefited from the transaction (VI(d)), involvement of foreign currency and foreign nationals (VI(l), (p)), the type of securities involved (VI(s)), and the type of institution filing the report (VI(t)). There would be no reason to include a lengthy checklist if the first item on the list constituted the entire reporting obligation.

In the Motion, Alpine relies on the same FINRA decision cited in Alpine's Memo at pages 11-12, and that reliance is misplaced. Motion at 8. As the Commission explained in its reply brief (Doc. No. 94 at 4-5 ("SEC Reply")), the cited FINRA decision actually states that inquiries into individual filing decisions are proper: "This is not to say that the failure to file a SAR cannot be questioned, and FINRA has settled matters involving the failure to file SARs." *In re Sterne, Agee & Leach, Inc.*, No. E052005007501 at 32. Further, the claims in *Sterne Agee* are different from the Commission's claims here. In that matter, the claimant challenged the firm's AML process and pointed to individual reporting failures as evidence of a flawed process. Here, in contrast, the Commission alleges thousands of individual violations and points to a flawed system as additional evidence of these violations. *See* 67 Fed. Reg. 44048, 44053 ("[R]eview of the adequacy of a broker-dealer's anti-money laundering compliance program is not a substitute for, although it could be relevant to, an inquiry into the failure of a broker-dealer to report a particular suspicious transaction."). The fact that two late filings were deemed insufficient to establish a flawed process in the *Sterne Agee* matter does not amount to clear error in the Order.

Accordingly, Alpine has shown no clear error in the Court's application of Section 1023.320 to require that the red flags set forth in the Order be reported regardless of whether Alpine knew or suspected that the transaction at issue was criminal.

**B.** **The Court did not err by looking to guidance issued by FinCEN to interpret rules promulgated by FinCEN.**

Alpine asserts two arguments challenging the Court's citations to guidance issued by FinCEN when interpreting rules promulgated by FinCEN. Motion at 10. Neither argument meets Alpine's burden for reconsideration.

**1.** **The Court did not give FinCEN guidance the "force of law."**

Like the first time Alpine raised it (Alpine Memo. 15-16) Alpine's argument that the Court gave interpretive guidance the "force of law" (Motion at 12) fails because the Commission never asked the Court to give guidance the "force of law" and the Court only gave the guidance appropriate deference. Order at 24-25; *see also id.* at 20 (citing *Auer v. Robbins*, 519 U.S. 452 (1997); SEC Memo. at 7-8 (same). Courts apply *Auer* deference to informal guidance issued by an agency when interpreting that agency's regulation. Order at 20. FinCEN's guidance is entitled to *Auer* deference when interpreting Section 1023.320 so long as the guidance is "reasonable and is consistent with earlier and later pronouncements." Order at 24-25. Alpine has never shown or even argued that FinCEN's guidance was unreasonable or inconsistent with its own pronouncements and, in any event, the guidance is reasonable and consistent: Alpine incorporates the guidance into its own procedures. Order at 4-5. The Court did not clearly err by affording FinCEN guidance *Auer* deference.

**2.** **The Court's interpretation of guidance was correct.**

Repeating an argument made in its summary judgment brief (Alpine Memo. at 14-23), Alpine next argues that the Court misinterpreted FinCEN guidance by adopting an "automatic" reporting requirement. Motion at 12. The Court did not adopt an "automatic" filing requirement. Instead, the Court concluded that, under the facts presented on summary judgment, Alpine had a

7

duty to report red flags connected to large deposits of low-priced securities assuming that Alpine had a duty to report the underlying transactions. This interpretation was correct.

Alpine argues that the Court improperly relied first on checklists in the SAR form instructions. Motion at 12-13. But this was not the Court's starting point. Before referencing the checklists, the Court emphasized the mandatory direction in the forms that filers "[p]rovide a clear, complete and chronological description … of the activity, including what is unusual, irregular or suspicious about the transaction(s), using the checklist below as a guide." Order at 28-29 (citation omitted); *see also* SEC Memo. at 7. The plain meaning of this provision introducing the checklist requires Alpine to use the checklist as a guide when providing a complete description of the activity. *See* Order at 29. Moreover, Alpine's argument that it had the option to omit all of the information in the checklist has no basis in the text of the forms or the purposes of Section 1023.320 or the BSA.

Alpine next argues that the guidance cited by the Court does not require a filer to "reflexively" report red flags "concerning something else the firm found potentially suspicious." Motion at 13. This argument again is based on Alpine's refusal to acknowledge the objective component of Section 1023.320. The guidance cited by the Court presents information that filers are required to both identify and report. As an example, the Court cites *SAR Review Activity*, Issue 15, which explains that filers must evaluate a customer's criminal or regulatory history after identification of potentially suspicious activity. Order at 47. This guidance means that a filer must continue to evaluate a transaction for criminal or regulatory history even after the filer identifies potentially suspicious activity. Therefore, Alpine must continue to evaluate a deposit even after it decides to file a SAR because of a high volume of shares, and one type of

information it must continue to evaluate is criminal and regulatory history. The guidance also means a filer then has a duty to report the criminal or regulatory history it actually finds regardless of the reason the filer initially identified potentially suspicious activity. It was not clear error for the Court to conclude that a duty to detect red flags even after the identification of suspicious activity naturally includes the duty to report those red flags.

 Finally, without citation—and especially without the type of controlling law or data required for reconsideration—Alpine argues that the reporting requirements enforced in the Order are unduly burdensome and unworkable. Motion at 14-15. Alpine's own written procedures and practice defeats this argument because Alpine often did include the red flags discussed in the Order. *See, e.g.*, SEC Memo. at 11, 15. The problem was that Alpine was unable to present a coherent explanation on a transaction specific level why it included red flags in some SARs but not others, and it failed to do so again in the Motion.

Alpine's argument that the Court's ruling is too burdensome also makes little sense in context of Alpine's explanation for the content of its SAR narratives. As Alpine explains it (without evidence), Alpine's AML group reviewed each SAR supporting file, was aware of all red flags in the file, and made conscious decisions to omit the red flags because Alpine deemed the red flag unrelated to the narrow reason why the SAR was filed. After an AML employee has decided to file a SAR, prepared a SAR narrative, and detected an additional red flag in the supporting file, it would take that employee just as much effort to include the red flag as it would to omit it. Alpine has never explained how it would be unduly burdensome to type red flag information into a draft of a SAR narrative that has already been prepared.

Accordingly, Alpine has failed to meet the strict burden for reconsideration on its argument that the Court misapplied FinCEN guidance in the Order.

    **C.    The Court correctly applied its interpretation of Section 1023.320 to the Sample SARs.**

Alpine also argues that the Court erred when applying the SAR rule to each of the Sample SARs. Motion at 16-20. Alpine again repeats many times the argument that it was not required to include red flags unrelated to the reason why it filed the Sample SARs, which should be rejected for the reasons above. Each of Alpine's arguments applied to groups of Sample SARs fail to establish clear error for the following reasons.

1.  Facially Deficient Narratives.  Alpine's argument that the Court overlooked the fact that the Sample SARs named the introducing broker and its customer when finding that the SARs did not sufficiently satisfy the "who" element is wrong. The Court correctly determined that the SARs failed to adequately describe the "who" element because Sample SARs A-C do not describe the nature of the customers' businesses. Order at 42. As to the "why" element, Alpine's argument that the Court overlooked the text of the Sample SARs fails because the Court quoted the SARs and found them insufficient. The SARs do not explain why a large deposit of low priced securities is suspicious and they do not explain why the inclusion of an account on Alpine's unique supervisory lists made transactions suspicious. Neither fact is self-evidently suspicious, and none of the SARs indicated that it was "being filed voluntarily and not because of any legal duty to make a filing." Order at 45. The Court did not err by determining that these SARs failed to explain why the reported activity was suspicious.

2.  Criminal or Regulatory History. Again without controlling law, Alpine repeats its argument that it did not need to include the red flag of criminal or regulatory history if, in

Alpine's subjective judgment, Alpine deemed the history not sufficiently related to the reported transaction. Motion at 17. The Court did not err by rejecting this argument. Alpine has never presented evidence that it actually made such a determination – those determinations are not memorialized in any of Alpine's records and Alpine presented no affidavit from an employee with specific knowledge of such a determination. Moreover, nothing in FinCEN's guidance or the purpose of Section 1023.320 suggests that a filer should ever consider and then omit a red flag connected to a transaction it has already decided to report. Doing so serves no purpose and deprives law enforcement from the ability to make connections that may not be apparent to Alpine.

    3.  Shell Company Involvement. Alpine argues that the Court clearly erred because it quibbles with the Court's definition of "customer," and argues that it only omitted the fact that issuers had shell company status. Motion at 18. This argument fails because the guidance cited by the Court applies to any company participating in a transaction and does not state that shell company status of an issuer is irrelevant.  SEC Ex. 23. Alpine's own checklist requires that it identify shell companies and Alpine has never presented evidence to justify the omission of this red flag. The Court did not err by ruling that Alpine failed to report shell company status.

    4.  Derogatory History of Stock. Alpine's reliance on deposition testimony to show clear error in the Court's rulings on derogatory history of stock fails because all of the deposition testimony was available to Alpine when it filed its opposition to the Commission's motion, including testimony from Alpine's CEO, Alpine's expert witness, and the two witnesses who submitted declarations in opposition to the Commission's motion for partial summary judgment.

11

The Court has correctly rejected Alpine's attempt at a second bite at the apple by denying its request to submit this "new" evidence.

5.  Stock Promotion. Alpine repeats the same arguments about red flags and deference to guidance when attacking the Court's rulings on SARs with omitted information about stock promotion. Motion at 19. These arguments should be denied for the same reasons set forth above. Alpine's argument that other legitimate businesses promote stock misses the point that stock promotion *in conjunction with* large deposits of low priced securities creates a reason to suspect stock manipulation. *United States v. Clark*, 717 F.3d 790, 796 n.1 (10th Cir. 2013) ("A pump and dump scheme involves the artificial manipulation of the price and volume of a particular stock…. The pump also usually involves disseminating false and misleading promotional materials.").

6. Unverified Users. Alpine again repeats the same arguments about what it subjectively believes is relevant to the reasons why it filed the Sample SARs with unverified issuers, which should be rejected for the same reasons set forth above. Motion at 19. Alpine's argument that the guidance cited by the Court does not specifically refer to issuers fails because the guidance refers more broadly to all parties to a transaction. SAR Narrative Guidance at 5 ("parties and businesses that do not meet the standards of routinely initiated due diligence…."); Order at 56. This guidance about "parties and businesses" obviously includes issuers involved in a large deposit of low priced securities.

7.  Low Trading Volume. Alpine's only argument for clear error with respect to the Court's ruling on SARs that omitted a low trading volume is the repetitive and flawed argument

12

that Alpine need not report red flags so long as it decided to file a SAR for some other reason. Motion at 19. This argument fails for the same reasons as set forth above.

8. Foreign Involvement. Challenging the Court's ruling on SARs that omitted information about foreign involvement, Motion at 20, Alpine first argues that because one item in the SAR form checklists involves the transfer of funds to or from a foreign country (SEC Ex. 8, Part VI(q)), a filer need not report any other foreign involvement. But even Alpine cites the other portions of the checklist that require additional information of foreign involvement (SEC Ex. 8 Part VI(l) and (p)), which include the involvement of foreign currency and foreign nationals. Alpine also repeats its erroneous argument that it need not report foreign involvement so long as it made a subjective decision that the foreign involvement was not relevant to the reason that it filed a SAR.

**D.    Section 1023.320 and FinCEN Guidance gave Alpine fair notice of the law.**

Alpine's last argument about deficient SAR narratives is that the Court did not address its fair notice argument. Motion at 20. This is not correct: the Court rejected this argument by noting that its ruling is a plain application of the text of Rule 17a-8 and the Exchange Act. Order at 41 n.17. The Court's interpretation of Section 1023.320 is a straightforward application of well-established principles, *e.g. Auer*, 519 U.S. 452, to rules and guidance that have been in place since 2003. In addition, the fair notice argument should be denied for same reasons that the Court denied Alpine's cross motion for summary judgment in the Order.

**II.    THE MOTION SHOWS NO ERROR IN THE COURT'S RULING ON LIQUIDATION TRANSACTIONS.**

The Commission presented groups of sales cleared by Alpine related to deposits for which Alpine filed SARs. SEC Memo. at 18-21. The Court correctly ruled that the Commission

is entitled to summary judgment on its claim that Alpine failed to file SARs on the sales so long

as the Commission can prove "the existence of the deposit-and-sales patterns on which it relies."

Order at 66. Alpine first criticizes this ruling by arguing for the first time that the "term 'pattern'

is not used by the SEC with respect to this argument a single time in its moving papers." Motion

at 22. Even if the SEC had not used the term "pattern" in its papers—it did—the organization of

deposits and transactions in the tables presented by the SEC shows a recognizable sequence of

related events, which is the common meaning of a "pattern." In any event, contrary to the

Motion, the Commission's moving papers did refer to these sequences as patterns. SEC Memo.

at 18 ("The 'Sample Liquidations' described below illustrate the larger pattern of violations.");

19 ("The pattern continued."); SEC Reply at 2 ("The BSA does not permit Alpine to report one

side of a suspicious pattern of transactions (deposits) but not the other (liquidations) involving

the same parties and same stock and, when confronted, suggest that another firm may have

reported the transactions instead."). The Court correctly applied the plain meaning of the term

"pattern" to obvious deposits-and-sales patterns.

Alpine's second challenge to the Court's ruling on liquidation transactions repeats its

argument that the Court did not have sufficient evidence of Alpine's subjective belief about each

of the transactions. Motion at 22-23. This argument fails for several reasons. First, Alpine had an

opportunity to present evidence of its subjective belief about each transaction but failed to do so.

In fact, Alpine's procedures were not set up to systematically review liquidations related to

SARs it filed on deposits, so there is no evidence that Alpine's AML group exercised its

subjective judgement on these liquidations. Second, evidence of Alpine's subjective belief about

a specific transaction is not material to the Court's ruling because the ruling is based on the

14

objective test in Section 1023.320. Alpine had a reason to suspect the liquidations were
reportable under the rule regardless of its actual subjective belief.

Accordingly, Alpine has presented no controlling law or facts that warrant
reconsideration of the Court's ruling on liquidation transactions.

## III.   THE COURT CORRECTLY RULED THAT ALPINE DOES NOT HAVE AN INDETERMINATE AMOUNT OF TIME TO FILE SARS.

Alpine concedes that it had reason to suspect that the late SARs were reportable when
admitting that it filed the SARs because FINRA indicated that the SARs should be filed. Motion
at 24. Alpine nevertheless challenges the Court's ruling on late SARs by arguing that (1) Alpine
never subjectively believed the underlying transactions were suspicious; and (2) Alpine
effectively had an indeterminate amount of time to file the SARs because the clock never started
to run until Alpine decided to pick up the file on the underlying transaction—in these cases five
or six months after the transaction. The first argument fails because Alpine's subjective belief is
not material to a ruling based on the objective test in Section 1023.320(a)(2). The second
argument fails because it has no basis in the text of Section 1023.320(b)(3). The Court correctly
ruled that "Alpine was not entitled to an indeterminate amount of time to initiate review of a
transaction," Order at 73, and that "negligence provides no defense to a violation of Rule 17a-8,"
Order at 75.

## IV.   THE COURT CORRECTLY RULED THAT ALPINE IS REQUIRED TO PRODUCE SAR SUPPORTING FILES ON REQUEST.

The Court correctly ruled that 31 C.F.R. 1023.320(d) requires broker-dealers like Alpine
to maintain and produce a SAR's supporting documentation at the request of the SEC. Order at
76. Alpine does not dispute this ruling in the Motion. Instead, Alpine argues that the Court

should ignore the production prong of Section 1023.320(d) because the Commission did not allege a violation of that specific prong in the Complaint. Motion at 25. This argument fails to show error for at least two reasons.

First, the Complaint did allege a violation of Section 1023.320(d). Because Alpine had failed to produce the documents to the SEC, the SEC alleged that the files either never existed or were lost by Alpine. Complaint ¶ 43. The Complaint alleges that "Alpine violated Exchange Act 17(a) and Rule 17a-8 by: … failing to maintain and/or retain SAR documentation as required by the BSA and its implementing regulations." Complaint ¶ 46 (emphasis added). There can be no dispute that the production prong of Section 1023.320(d) is contained within an implementing regulation of the BSA.

Second, notwithstanding the fact that the Commission identified each of the SARs with missing files on September 29, 2017, and again requested these documents through written discovery served on October 12, 2017, Alpine asserted for the first time on January 19, 2018, when it responded to the Commission's motion for partial summary judgment that Alpine had actually collected the files and sent them to Alpine's counsel sometime in 2016. Alpine Memo. at 39-40. Alpine produced a large batch of files on January 19, 2018, but Alpine has refused to correlate any of the these files to any of the SARs identified by the Commission as lacking a support file. Alpine has also refused to produce a cover letter or other written evidence showing that the same files were produced in 2016, and neither Alpine's AML Officer who submitted a declaration about the purported production (*see* Doc. No. 88-1) nor Alpine's Rule 30(b)(6) representative could say under oath whether Alpine's counsel actually produced the documents to the Commission at any point prior to its response to the Commission's motion for partial

summary judgment. To the extent Alpine ever maintained the missing files, the Court was correct to rule that Alpine cannot escape liability under Section 1023.320(d) by taking an indeterminate amount of time to produce them Commission. That rule does not require the Commission to initiate a lawsuit and move for summary judgment in order to review support files and does not allow Alpine to comply with the rule by dumping thousands of uncorrelated records in response to a motion for summary judgment.

## **CONCLUSION**

For the reasons above, the Motion should be denied in all respects.

Respectfully submitted this 11th day of May, 2018.

_/s/ Terry R. Miller_____
Zachary T. Carlyle (_pro hac_)
Terry R. Miller (_pro hac_)
Attorneys for Plaintiff
UNITED STATES SECURITIES AND
EXCHANGE COMMISSION
1961 Stout Street, 17th Floor
Denver, Colorado 80294
(303) 844-1000

## **CERTIFICATE OF SERVICE**

I certify that on May 11, 2018, a copy of the foregoing document was served via email

upon the following:

Brent R. Baker
Aaron D. Lebenta
Jonathan D. Bletzacker
CLYDE SNOW & SESSIONS
One Utah Center, 13th Floor
201 South Main Street
Salt Lake City, Utah 84111-2216

Maranda E. Fritz
Thompson Hine LLP (NYC)
335 Madison Avenue, 12th Floor
New York, NY 10017

*Counsel for Alpine Securities Corporation*

/s/ *Scott Wesley*
Scott Wesley,
Contract Paralegal

18