ZACHARY T. CARLYLE
carlylez@sec.gov
TERRY R. MILLER
millerte@sec.gov
SECURITIES AND EXCHANGE COMMISSION
1961 Stout Street, 17th Floor
Denver, Colorado 80294
(303) 844-1000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>                              Plaintiff,<br><br>    - against -<br><br>ALPINE SECURITIES CORPORATION,<br><br>                              Defendant. | **17-cv-4179-DLC**<br><br><br>**ECF CASE** |

**PLAINTIFF UNITED STATES SECURITIES AND EXCHANGE
COMMISSION'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR RECONSIDERATION OF THE
COURT'S MARCH 30, 2018 OPINION AND ORDER DENYING
DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT;
AND (2) ALTERNATIVE MOTION TO CERTIFY THE COURT'S
ORDER DENYING DEFENDANT'S CROSS-MOTION FOR
SUMMARY JUDGMENT FOR INTERLOCUTORY APPEAL**

## TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................1

ARGUMENT .................................................................................................................2

I.      THE COURT SHOULD NOT RECONSIDER ITS DENIAL OF ALPINE'S
        SUMMARY JUDGMENT MOTION BASED ON ARGUMENTS IT HAS ALREADY
        CONSIDERED AND REJECTED…………………………………………………..2

        A.      The Commission Has Authority Under the Exchange Act to Require Broker
                Dealers to Report Suspicious Activity....................................................................4

        B.      The Commission Properly Promulgated Rule 17a—8 and It Validly Encompasses
                Suspicious Activity Reporting Obligations ........................................................17

II.     THE COURT SHOULD NOT CERTIFY ITS DENIAL OF ALPINE'S SUMMARY
        JUDGMENT MOTION FOR INTERLOCUTORY APPEAL BECAUSE THERE ARE
        NO "EXCEPTIONAL CIRCUMSTANCES" WARRANTING DEPARTURE FROM
        THE FINAL JUDGMENT RULE ................................................................. 15

        A.      There is No Substantial Ground for Difference of Opinion ..................................16

        B.      Interlocutory Review Would Not Materially Advance Termination of the
                Litigation..............................................................................................................17

CONCLUSION...............................................................................................................19

i

**TABLE OF AUTHORITIES**

**Federal Cases**

*American Soc'y for Testing and Materials v. Public.Resource.org, Inc.,* No. 13-CV-1215, 2017 WL 473822 (D.D.C. Feb. 2, 2017) ................................................................................. 12-13

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas,* 426 F.Supp.2d 125, (S.D.N.Y. 2005) .... 16

*Casey v. Long Island R.R. Co.,* 406 F.3d 142 (2d Cir. 2005)……………………………………….15

*Century Pacific, Inc. v. Hilton Hotels Corp.,* 574 F. Supp. 2d 369 (S.D.N.Y. 2008)…………..……..16, 17

*City of Idaho Falls v. FERC,* 629 F.3d 222 (D.C. Cir. 2011) ............................................. 13, 14, 15

*Digital Realty Tr., Inc. v. Somers,* 138 S. Ct. 767 (2018) .............................................. 3, 9

*FDA v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120 (2000) .................................... 6, 7

*Fed. Hous. Fin. Agency v. HSBC N. Am.Holding Inc.,* Nos. 11-CV-6189(DLC), 11-CV-6201 (DLC), 2014 WL 4276420 (S.D.N.Y. Aug. 28, 2014) ........................................................... 17-18

*Frierson-Harris v. Hough,* No. 05-CV-3077 (DLC), 2007 WL 1343843 (S.D.N.Y. May 8, 2007) .......... 4

*In re Bear Stearns Cos., Inc., Sec., Derivative, and ERISA Litig.,* No. 08-MDL-1963, 2014 WL 4443458 (S.D.N.Y. Sept. 9, 2014) ............................................................................... 3, 4

*In re Flor,* 79 F.3d 281 (2d Cir. 1996) .......................................................... 16, 17

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.,* MDL NO. 1358 (SAS), 2008 WL 2511038, (S.D.N.Y. June 18, 2008) .................................................................. 17

*In re Oxford Health Plans,* 182 F.R.D. 51 (S.D.N.Y.1998) ............................................ 18

*In re World Trade Ctr. Disaster Site Litig.,* 469 F.Supp.2d 134 (S.D.N.Y.2007) .................... 16, 17

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria,* 921 F.2d 21 (2d Cir. 1990)……………………………….………..………… 15-16

*Koehler v. Bank of Bermuda Ltd.,* 101 F.3d 863 (2d Cir. 1996) ....................................... 16

*Memorial Hosp. v. Burwell,* 812 F.3d 257 (2d Cir. 2016) ............................................... 5

*Nutritional Health Alliance v. FDA,* 318 F.3d 92 (2d Cir. 2003) ...................................... 7, 8, 9

*Point Prods. A.G., v. Sony Music Entm't, Inc.,* No. 93-CV-4001 (NRB), 2002 WL 31856951 (S.D.N.Y. Dec. 19, 2002) ........................................................................................ 3, 8-9

*Pom Wonderful LLC v. Coca-Cola Co.,* 134 S.Ct. 2228 (2014) ......................................... 7

*Rafter v. Liddle,* 288 F. App'x 768 (2d Cir. 2008) ..................................................... 4

*Ratner v. Chemical Bank New York Trust Co.,* 309 F. Supp. 983 (S.D.N.Y. 1969) .................... 18

*Reynolds v. Hearst Commc'ns, Inc.,* No. 17-CV-6720 (DLC), 2018 WL 1602867 (S.D.N.Y. Mar. 29, 2018) .......................................................................................................... 3

*SEC v. Cope,* No. 14-CV-7575 (DLC), 2017 WL 519256 (S.D.N.Y. Feb. 8, 2017) ...................... 2, 3

*SEC v. Gruss,* No. 11-CV-2420, 2012 WL 3306166, (S.D.N.Y. Aug. 13, 2012)…………………..…...15

*United States v. Picciotto*, 875 F.2d 345 (D.C. Cir. 1989) ........................................................ 14

*Westwood Pharm., Inc. v. Nat'l Fuel Gas Distrib. Corp.*, 964 F.2d 85 (2d Cir. 1992) ............................ 16

## Federal Statutes

1 C.F.R. § 51.1 ...................................................................................................................... 12

1 C.F.R. § 51.7(c) .................................................................................................................. 12

15 U.S.C. § 78q(a)(1) ....................................................................................................... 5, 8, 10

5 U.S.C. § 552 ....................................................................................................................... 11

## Other

28 U.S.C. § 1292(b) ........................................................................................................... 15, 16

46 Fed. Reg. 61,454 (Dec. 17, 1981) ................................................................................... 13, 14

47 Fed. Reg. 34,107 (Aug. 6, 1982) ..................................................................................... 11, 12

76 Fed. Reg. 33,590 .............................................................................................................. 13

78 Fed. Reg. 60, 784 (Oct. 2, 2013) ........................................................................................ 12

*Freedom of Information Act Source Book, Legislative Materials, Cases, Articles* 86, 93 (Comm. Print 1974) ...................................................................................................................................... 12

Incorporation by Reference in an Open-Government Age, 36 Harv. J.L. & Pub. Pol'y 131, 145 (2013).. 12

S. Rep. No. 88-1219 (1964) ..................................................................................................... 12

Plaintiff Securities and Exchange Commission ("Commission") hereby submits this Memorandum of Law in Opposition to Defendant Alpine Securities Corporation's ("Alpine") Motion for Reconsideration of the Court's March 30, 2018 Opinion and Order Denying Defendant's Cross-Motion for Summary Judgment; and Alternative Motion to Certify the Court's Order Denying Defendant's Cross Motion for Summary Judgment for Interlocutory Appeal. (Doc. Nos. 110, 111, together, "Motion").[1]

## **INTRODUCTION**

Alpine's Motion asks the Court to reconsider its Opinion and Order (Doc. No. 101, "Order") that denied Alpine's Cross-Motion for Summary Judgment but fails to identify any controlling law or facts that warrant reconsideration. Alpine does not identify new controlling law to justify reconsideration. Instead, Alpine claims that the Court must have overlooked or "ignored" nearly all of Alpine's arguments and authorities cited in support of its motion for summary judgment. Alpine's Motion simply repeats these arguments, which the Court has already considered and rejected, in a thinly veiled attempt to relitigate the merits of its summary judgment motion.

For example, throughout its Motion Alpine recycles its argument that the Commission does not have enforcement authority under the Bank Secrecy Act ("BSA") or authority under the Securities and Exchange Act of 1934 ("Exchange Act") to require broker-dealers to report suspicious activity. As the Court correctly held, the Commission brought this case based on its authority under the Exchange Act, not the BSA, and the Commission has authority under the Exchange Act to require broker-dealers to report suspicious activity. Alpine points to no

---

[1] Page citations to the "Motion" refer to the memorandum of law in support of the motion, Doc. No 111.

controlling law overlooked by the Court. Alpine also repeats its argument that Rule 17a-8 does

not encompass suspicious activity reporting by broker-dealers, which was rejected by the Court

when it decided "Rule 17a-8 is a valid interpretation of the Exchange Act, and validly

encompasses the suspicious activity reporting obligation of Section 1023.320." Opinion at 40.

The Court should deny Alpine's motion for reconsideration. The legal standard for

reconsideration is strict—for good reason—and Alpine's disagreement with the Court's well-

reasoned ruling does not come close to meeting it.

Alpine further moves the Court to certify the Order for interlocutory appeal if the Court

rejects Alpine's motion for reconsideration. The Court should deny this request. No exceptional

circumstances exist here that would justify departure from the final judgment rule and piecemeal

appeals would only serve to delay, not advance, resolution of this late-stage litigation.

## ARGUMENT

### I.    THE COURT SHOULD NOT RECONSIDER ITS DENIAL OF ALPINE'S SUMMARY JUDGMENT MOTION BASED ON ARGUMENTS IT HAS ALREADY CONSIDERED AND REJECTED.

This Court has explained repeatedly that "[t]he standard for granting a motion for

reconsideration is 'strict.'" *SEC v. Cope*, No. 14-CV-7575 (DLC), 2017 WL 519256, at *1

(S.D.N.Y. Feb. 8, 2017) (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36,

52 (2d Cir. 2012)). "'A motion for reconsideration should be granted only when the defendant

identifies an intervening change of controlling law, the availability of new evidence, or the need

to correct a clear error or prevent manifest injustice.'" *Id.* (quoting *Kolel Beth Yechiel Mechil of*

*Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013)). "'Reconsideration will

generally be denied unless the moving party can point to controlling decisions or data that the

court overlooked.'" *Id.* (quoting *Analytical Surveys*, 684 F.3d at 52). "These decisions or factual matters must be of such a nature that they 'might reasonably be expected to alter the conclusion reached by the court.'" *Point Prods. A.G., v. Sony Music Entm't, Inc.*, No. 93-CV-4001 (NRB), 2002 WL 31856951, at *2 (S.D.N.Y. Dec. 19, 2002) (quoting *Davidson v. Scully,* 172 F.Supp.2d 458, 461 (S.D.N.Y. 2001)). A motion for reconsideration "is 'not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple.'" *Cope*, 2017 WL 519256, at *1 (quoting *Analytical Surveys*, 684 F.3d at 52).

Alpine's motion for reconsideration of the Court's thorough decision denying its summary judgment motion fails to satisfy this strict standard. It "does not identify an intervening change of controlling law, nor does it present previously unavailable evidence." *Id.* at *2. Instead, it is "little more than a rehashing of [the] argument[s]" Alpine presented in its summary judgment briefing, which this Court has already rejected. *Reynolds v. Hearst Commc'ns, Inc.*, No. 17-CV-6720 (DLC), 2018 WL 1602867, at *1 (S.D.N.Y. Mar. 29, 2018). Alpine identified almost all of the authorities it now cites in support of reconsideration for the Court's consideration on summary judgment. And "[a] party seeking reconsideration may neither repeat 'arguments already briefed, considered and decided,' nor 'advance new facts, issues or arguments not previously presented to the Court.'" *In re Bear Stearns Cos., Inc., Sec., Derivative, and ERISA Litig.*, No. 08-MDL-1963, 2014 WL 4443458, at *2 (S.D.N.Y. Sept. 9, 2014) (quoting *Schonberger v. Serchuk*, 742 F.Supp. 108, 119 (S.D.N.Y.1990)).[2]

---

[2] In the rare instances where Alpine does cite authorities not already identified in its summary judgment briefing, they do not represent intervening changes in the law, but are authorities Alpine could have, but did not, bring to the Court's attention previously. Even the Supreme Court's decision in *Digital Realty Tr., Inc. v. Somers*, 138 S. Ct. 767

**A. The Commission Has Authority Under the Exchange Act to Require Broker Dealers to Report Suspicious Activity.**

Alpine argues that the Court "clearly erred" in "ignoring" its previously made argument that FinCEN has "exclusive" enforcement authority under the BSA that has not been delegated to the Commission. Motion at 4-8. Alpine is incorrect.

The Court did not overlook Alpine's argument and authorities on this point. Instead, the Court specifically considered Alpine's argument that "in the instant action the SEC is suing under the BSA, a statute it is not authorized to enforce" and that "[b]ecause the gravamen of the SEC's complaint is Alpine's alleged failure to comply with the BSA SAR regulation, this suit is not actually brought under Rule 17a-8, despite what the complaint itself says." Opinion at 34. The Court concluded that "Alpine is incorrect" and held that because "this suit is brought pursuant to the Exchange Act" and "Alpine does not contest that the SEC has enforcement authority to pursue violations of the Exchange Act" Alpine's argument that the Commission "is not authorized to enforce" the BSA "fails." Opinion at 34-35. The Court's ruling is well founded- the "complaint itself" explicitly states that this action is brought under the Exchange Act and Rule 17a-8. Opinion. at 34.

Alpine ignores the Court's holding and repeatedly advances arguments and authorities directed at the false premise that the Commission is improperly exercising authority under the

---

(2018), was issued five days before Alpine filed its reply brief in support of summary judgment (and is, for the reasons discussed below, inapposite in any event). Any new authorities identified by Alpine accordingly should not be considered. *Bear Stearns*, 2014 WL 4443458, at *2; *see also Rafter v. Liddle*, 288 F. App'x 768, 769 (2d Cir. 2008) ("[W]e do not consider facts not in the record to be facts that the court 'overlooked.'"); *Frierson-Harris v. Hough*, No. 05-CV-3077 (DLC), 2007 WL 1343843, at *1 (S.D.N.Y. May 8, 2007) ("A motion for reconsideration may not treat 'the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings.'"(quoting *Questrom v. Federated Dep't Stores, Inc.*, 192 F.R.D. 128, 131 (S.D.N.Y. 2000))).

BSA.[3] Alpine presents no new evidence or intervening change in controlling law on this issue, but seeks to rehash arguments that were squarely rejected by the Court. Alpine has failed to meet the strict requirements for reconsideration and the Court should reject Alpine's attempts to relitigate this issue throughout its Motion.

As the Court concluded, the only relevant questions are whether Rule 17a-8 is a permissible and properly promulgated interpretation of the Exchange Act. Opinion at 35. As to the first question, the Court correctly determined that the plain language of the Exchange Act unambiguously grants the Commission the authority to regulate reporting of suspicious activity by broker-dealers. As the Court noted, "'[s]tep One of *Chevron* analysis requires the court to determine whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.'" Opinion at 19 (quoting *Lawrence + Memorial Hosp. v. Burwell*, 812 F.3d 257, 264 (2d Cir. 2016)). The Exchange Act grants the Commission authority to require entities, including broker-dealers, to "make and keep…such records…and make and disseminate such reports as the Commission by rule, prescribes as necessary or appropriate in the public interest, for the protection of investors, or otherwise in furtherance of the purposes" of the Exchange Act. 15 U.S.C. § 78q(a)(1). Based on that plain language, the Court correctly held, "[u]nder *Chevron* step one," Section 17(a)(1) of the Exchange Act "expressly commits to the SEC discretion to determine which reports are 'necessary or

---

[3] *See, e.g.*, Motion at 4-8; Motion at 11 ("Congress has spoken directly and at fairly high volume regarding enforcement authority under the BSA…and it gives no enforcement authority to the SEC."); Motion at 12 ("that case did not involve the assertion of jurisdiction by one agency over a separate regulatory scheme that Congress expressly entrusted to a different agency."); Motion at 13 ("the Court disregarded numerous authorities cited by Alpine…holding that courts will not presume delegation from silence.")

appropriate' to further the goals of the Exchange Act, and empowers the SEC to promulgate rules defining recordkeeping and reporting obligations of broker-dealers." Opinion at 36.

Alpine argues that Congress's passage of the BSA altered the plain meaning of the Exchange Act and implies that the authorities it recites on that point were "overlooked" because the Court did not rely on them. The more plausible explanation is that the Court considered all of the authorities Alpine identified but did not find any of them to be "controlling"—and for good reason.

For example, contrary to Alpine's suggestion (Motion at 6), the Supreme Court's decision in *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000), does not establish that the Commission lacks authority under the Exchange Act to require broker-dealers to report on suspicious activity. In *Brown & Williamson*, the Court determined that "considering the FDCA as a whole, it is clear that Congress intended to exclude tobacco products from the FDA's jurisdiction." *Id*. at 143. The Court reached the decision because the FDA's conclusion that those products were "'unsafe' and 'dangerous' when used" to "deliver[ ] certain pharmacological effects" would "require the FDA to remove them from the market entirely." *Id*. at 142. And the Court concluded that such a ban "would contradict Congress' clear intent as expressed in its more recent, tobacco-specific legislation," *id*., including provisions that "foreclose[ ] the removal of tobacco products from the market," *id*. at 137. Moreover, the Court explained, Congress enacted those subsequent provisions "against the backdrop of the FDA's consistent and repeated statements that it lacked authority under the FDCA to regulate tobacco absent claims of therapeutic benefit by the manufacturer," *id*. at 144, which meant that its "tobacco-specific

legislation has effectively ratified the FDA's previous position that it lacks jurisdiction to regulate tobacco," *id*. at 156.

Those circumstances are not present here. As the Court noted (Opinion at 22), "[b]ecause of their importance to the national markets, broker-dealers" have long been "subject to a number of regulations … administered by a variety of organizations," including the Commission as the "primary federal regulator of broker-dealers." The Commission promulgated Rule 17a-8 in 1981 and has since then consistently taken the position that it "encompasses" all relevant BSA regulations, including "the post-2002 … regulations." Opinion at 39. In addition, as the Court found (Opinion at 37), no conflict exists between the Exchange Act and the BSA—"[i]t is reasonable to conclude that the same reports that help the Treasury target illegal securities transactions for its purposes also help protect investors by providing information to the SEC that may be relevant to whether a stock or market is being manipulated in violation of the nation's securities laws." Contrary to Alpine's assertion (Motion at 12), such concurrent jurisdiction is not "the exception." Rather, "[w]hen," as here, "two statutes complement each other, it would show disregard for the congressional design to hold that Congress nonetheless intended one federal statute to preclude the operation of the other." *Pom Wonderful LLC v. Coca-Cola Co.*, 134 S.Ct. 2228, 2238 (2014). Unless there is "evidence … which … indicates there will be any difficulty in fully enforcing each statute according to its terms"—and Alpine points to none— one does not preclude or limit the other. *Id*. at 2240.

The Second Circuit's decision in *Nutritional Health Alliance v. FDA*, 318 F.3d 92 (2d Cir. 2003), likewise does not suggest that Congress's passage of the BSA curtailed the Commission's authority to require broker-dealers to file reports on suspicious activity pursuant

to the Exchange Act. *See* Motion at 9. In that case, the FDA attempted to regulate the packaging of dietary supplements and drugs for purposes of poison prevention pursuant to its authority to "regulate conditions" under which a drug or dietary supplement product is deemed *adulterated*." *Id*. at 99 (emphasis in original). The Court decided the case under *Chevron* step one, holding that "the plain language … of the FDC Act unambiguously fail[s] to delegate to the FDA authority to require manufacturers of iron-containing products to use unit-dose packaging in the absence of any showing by the FDA that iron-containing product[s] may be adulterated without such packaging." *Id*. at 101. Here, by contrast, the Exchange Act expressly grants the Commission the authority to require entities, including broker-dealers, to "make and keep…such records…and make and disseminate such reports as the Commission by rule, prescribes as necessary or appropriate in the public interest, for the protection of investors, or otherwise in furtherance of the purposes" of the Exchange Act. 15 U.S.C. § 78q(a)(1).

"Even if" the Exchange Act were ambiguous on this point and it was therefore "necessary to proceed to *Chevron*'s step two," the Court correctly concluded that the Commission's "interpretation of Section 17(a) of the Exchange Act" was "reasonable." Opinion at 36. Contrary to Alpine's suggestion (Motion at 10), that analysis was not the "entire[ ]" basis of the Court's ruling; rather, as discussed above, the Court decided this question on *Chevron* step one. For that reason alone, none of the authority Alpine cites regarding *Chevron* deference could "reasonably be expected to alter the conclusion reached by the court" and meet the strict standard for reconsideration. *Point Prods. A.G., v. Sony Music Entm't, Inc.*, No. 93-CV-4001 (NRB), 2002 WL 31856951, at *2 (S.D.N.Y. Dec. 19, 2002) (quoting *Davidson v. Scully,* 172 F.Supp.2d 458,

461 (S.D.N.Y. 2001). But the authority Alpine cites also does not establish or even suggest that the Court's reasoning on *Chevron* step two was incorrect.

Alpine again relies heavily on the Second Circuit's decision in *Nutritional Health*. Motion at 11-12. And again, that decision is inapposite. As noted above, *Nutritional Health*, like this case, was decided on *Chevron* step one. But the Second Circuit went on to say that if it had been necessary to proceed to *Chevron* step two, it was unreasonable for the FDA to conclude that its authority to regulate adulterated products extended to poison prevention packaging. *Nutritional Health Alliance*, 318 F.3d at 101-02. The court explained that although Congress had at one point "conferred authority to the FDA" to regulate "poison prevention packaging" under the Poison Prevention Packaging (PPP) Act, *id*. at 103, it subsequently explicitly "stripped" the FDA of the "authority to administer and enforce the PPP Act" and "transferred" it to the Consumer Product Safety Commission, *id*. at 104. But here, the BSA does not strip the Commission of any of its authority to administer or enforce the Exchange Act. As the Court found, "neither the Exchange Act nor the BSA expressly precludes joint regulatory authority by FinCEN and the SEC over the reporting of potentially suspicious transactions." Opinion at 38.

Contrary to Alpine's suggestion (Motion at 11), the Supreme Court's recent decision in *Digital Realty Tr., Inc. v. Somers*, 138 S. Ct. 767 (2018), likewise does not undermine the Court's conclusion that the Commission's interpretation of its authority under Section 17(a) was reasonable. In *Digital Realty*, the Court found that no deference was warranted because Congress had "directly spoken to the precise question at issue." *Id*. at 782 (quotation and citation omitted). The relevant statute contained a "definition of 'whistleblower'" that was "clear and conclusive," and contrary to the "view advanced by the SEC" in its Rule. *Id*. Here, by contrast, in the

Exchange Act, Congress has "directly spoken to the precise question at issue" by granting the Commission broad authority under Section 17(a) to promulgate rules defining recordkeeping and reporting obligations of broker-dealers. 15 U.S.C. § 78q(a)(1). At a minimum, the Commission's conclusion that it had the authority to require broker-dealers to file suspicious activity reports was therefore reasonable. Alpine's contention that "Congress…has spoken directly…regarding enforcement authority under the BSA…and it gives no enforcement authority to the SEC" (Motion at 11) is again beside the point, because the Commission is exercising enforcement authority under the Exchange Act, not the BSA.

Alpine also erroneously contends that the Court improperly "argu[ed]" that deference was "warranted" based on "settled administrative adjudications." Motion at 13. It did no such thing. Rather, considering the text of Section 17(a), the purposes of the Exchange Act, and information provided by SARs, the Court decided (Opinion at 37) that "[i]t is reasonable to conclude that the same reports that help the Treasury target illegal securities transactions for its purposes also help protect investors by providing information to the SEC that may be relevant to whether a stock or a market is being manipulated in violation of the nation's securities laws." The Court pointed to the Commission's statements in both "a formal adjudication" and "settled orders" not as support for its conclusion that the Commission reasonably determined that it has the authority under Section 17(a) to require broker-dealers to file suspicious activity reports, but as evidence that the Commission has consistently expressed "its view that Rule 17a-8 encompasses the post-2002 BSA regulations." Opinion at 39-40.

### B. The Commission Properly Promulgated Rule 17a—8 and It Validly Encompasses Suspicious Activity Reporting Obligations.

Rehashing another argument it made in its summary judgment briefing, with nearly all of the same citations, Alpine contends that "[t]he Court clearly erred by failing to address … regulatory and decisional authorities demonstrating that the SEC's 1981 issuance of [Rule 17a-8] does not … comply with the APA." Motion at 14. Again, the Court did not address those authorities because they are not controlling and in some instances are wholly irrelevant.

Alpine erroneously reargues that regulations regarding incorporation by reference under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, "confirm that the SEC was not permitted to sweep into its rules any and all future amendments of the BSA and Treasury regulations without the need for notice and comment." Motion at 15. To the contrary, those regulations relate to publication requirements that have no bearing on this case. As the Office of the Federal Register has explained, under the Federal Register Act of 1935, "[f]ederal agencies are directed to publish in the Federal Register, and codify in the Code of Federal Regulations (CFR), regulations of general applicability and legal effect." *Approval Procedures for Incorporation by Reference*, 47 Fed. Reg. 34,107, 34,107 (Aug. 6, 1982). But "under certain limited circumstances, an agency may meet Federal Register publication requirements without publishing a regulation full text." *Id.* In particular, FOIA provides that a "matter" not actually published in the Federal Register "is deemed published in the Federal Register when incorporated by reference therein with the approval of the Director of the Federal Register." 5 U.S.C. § 552(a). FOIA thereby

> formally established incorporation by reference as a device that an agency may use to include certain regulatory material in its regulations without publishing the material full text in the Federal Register. Through incorporation by reference, an

11

agency may meet the publication requirements of the Federal Register Act and
FOIA by referring to material published ***outside*** the Federal Register system.

*Approval Procedures for Incorporation by Reference*, 47 Fed. Reg. at 34,107 (emphasis added);

*see also* S. Rep. No. 88-1219 (1964), reprinted in Staff of the Subcomm. on Admin. Practice and

Procedure of the S. Comm. on the Judiciary, 93d Cong., *Freedom of Information Act Source*

*Book, Legislative Materials, Cases, Articles* 86, 93 (Comm. Print 1974) (provision relates to the

"incorporation of ***other publications*** by reference in the Federal Register," which "may be

helpful in reducing the bulky present size of the Register" (emphasis added)).

Neither FOIA's incorporation by reference provision, nor its underlying regulations, *see*

1 C.F.R. § 51.1, *et seq*., limit the extent to which an agency can, as here, cross-reference other

regulations that are published in the Federal Register and codified in the Code of Federal

Regulations.[4] The authorities Alpine cites confirm as much. For example, as the law review

article Alpine relies on (Motion at 16, n.16) explains, the regulations regarding incorporation by

reference establish a process by which agencies can incorporate "voluntary consensus standards"

that were developed in the private sector and "published elsewhere," or "state regulations and

GPO publications," into federal government regulations without having to republish those

materials in the Federal Register. Emily S. Bremer, *Incorporation by Reference in an Open-*

*Government Age*, 36 Harv. J.L. & Pub. Pol'y 131, 133, 145 (2013); *see also id.* at 153 ("In all

cases, the practice [of incorporation by reference] requires interested parties to find material

*outside of the CFR* in order to view the entire regulation." (Emphasis added.)); *American Soc'y*

*for Testing and Materials v. Public.Resource.org, Inc.*, No. 13-CV-1215, 2017 WL 473822, at *3

---

[4] 1 C.F.R. § 51.7(c) does not suggest otherwise. That provision states that "material published previously in the
Federal Register" or "the United States Code" is "not appropriate for incorporation by reference." It applies to
"material" such as the preamble to a Notice of Proposed Rulemaking, not actually codified regulations or statutory
provisions. *See Incorporation by Reference*, 78 Fed. Reg. 60,784, 60,789, 60,795 (Oct. 2, 2013).

(D.D.C. Feb. 2, 2017) ("Pursuant to 5 U.S.C. § 552, federal agencies may incorporate *voluntary consensus standards*—as well as, for example, state regulations, government-authored documents, and product service manuals—into federal regulations by reference." (Emphasis added)); *Standards Improvement Project—Phase III*, 76 Fed. Reg. 33,590, 33,592 (2011) (OSHA "cannot incorporate by reference the latest editions of *consensus standards*" because that would "delegate the government's regulatory authority to *consensus standards developing organizations*" (emphasis added)).

Alpine also incorrectly argues (Motion at 15-16) that Rule 17a-8 "constitute[s] an improper delegation to FinCEN of rulemaking authority under Section 17(a) of the Exchange Act." None of the authorities it recites establishes that proposition. For example, the problem in *City of Idaho Falls v. FERC*, 629 F.3d 222 (D.C. Cir. 2011), was not that FERC "use[d] the schedule published by the Forest Service," another agency, "to determine rental fees" that licensees of hydropower projects must pay the federal government for the use of its land or other property. *Id*. at 223. The problem was that in "adopting the Forest Service fee schedule," FERC had endorsed the Forest Service's then-existing valuation methodology and explicitly rejected an alternative methodology. *Id*. at 224. Accordingly, the court concluded that when the Forest Service subsequently switched to a different valuation methodology, FERC's continued reliance on the Forest Service's schedule was not a "faithful[ ] implement[ation] [of] established regulations," but rather a change in methodology that "require[d] renewed notice and comment." *Id*. at 227. In this case, by contrast, the Commission decided when it adopted Rule 17a-8 that it was "consistent with the purposes of the Exchange Act" to require broker-dealers "to make the records and reports required by" the Department of Treasury under the BSA. *Recordkeeping by*

*Brokers and Dealers*, Release No. 34-18321, 46 Fed. Reg. 61,454, 61,455 (Dec. 17, 1981). And

it purposefully declined to "specify the required reports and records so as to allow for any

revisions the Treasury may adopt in the future." *Id*. The Commission's subsequent

announcement "in a formal adjudication" of "its view that Rule 17a-8 encompasses the post-

2002 BSA regulations," (Opinion at 39), was thus "in accordance with the Commission's

longstanding interpretation of that regulation," *City of Idaho*, 629 F.3d at 227, and did not

constitute any sort of shift that required renewed notice and comment proceedings.

 The D.C. Circuit's decision in *United States v. Picciotto*, 875 F.2d 345 (D.C. Cir. 1989),

likewise does not undermine the Court's conclusion (Opinion at 40) that "Rule 17a-8 … validly

encompasses the suspicious activity reporting obligation of Section 1023.320." In *Picciotto*, the

Park Service adopted an open-ended catch-all regulation providing that "'[a] permit may contain

additional reasonable conditions and additional time limitations, consistent with this section, in

the interest of protection park resources, the use of nearby areas by other persons, and other

legitimate park value concerns.'" *Id.* at 346. The Park Service cited that provision as the basis for

imposing additional conditions not only on particular permits, but "uniformly on all

demonstrators in any national capital region park." *Id*. "[N]either appellant nor the general public

was given an opportunity to comment" on those additional conditions. *Id*. Here, by contrast,

Alpine and other broker-dealers, as well as the general public, were notified of and had the

opportunity to comment on both the Commission's promulgation of Rule 17a-8—which, as the

Court noted (Opinion at 38), made explicit the Commission's "intent for the nature of the Rule

17a-8 reporting obligation to evolve over time through Treasury's regulations"—and all of

Treasury's regulations under the BSA, including the suspicious activity reporting obligations

imposed on broker-dealers in 31 C.F.R. § 1023.320. In *City of Idaho Falls*, the D.C. Circuit

rejected FERC's argument that licensees of hydropower projects could have "object[ed] to the

new BLM [Bureau of Land Management]-Forest Service methodology" for valuing land "in

rulemaking conducted by those agencies." *City of Idaho*, 629 F.3d at 230. But there, "neither

BLM nor the Forest Service had any authority to consider whether their new methodology for

valuing linear rights-of-way accurately reflected the value of land used for hydropower projects."

*Id*. Here, Treasury had the authority to consider—and did consider—all of the objections broker-

dealers raised to being subject to suspicious activity reporting requirements. The fact that Rule

17a-8 requires broker-dealers to file the same reports pursuant to the Exchange Act imposes no

new or different substantive obligations on them.

## II.     THE COURT SHOULD NOT CERTIFY ITS DENIAL OF ALPINE'S SUMMARY JUDGMENT MOTION FOR INTERLOCUTORY APPEAL BECAUSE THERE ARE NO "EXCEPTIONAL CIRCUMSTANCES" WARRANTING DEPARTURE FROM THE FINAL JUDGMENT RULE.

Section 1292(b), 28 U.S.C. § 1292(b), grants this Court the discretion to certify a non-

final order for interlocutory review by the Second Circuit only where the District Court is "of the

opinion" that three conditions are satisfied. An "immediate appeal from the order" must

"materially advance the ultimate termination of the litigation," and the order must "involve[ ] a

controlling question of law as to which there is substantial ground for difference of opinion." 28

U.S.C. § 1292(b). The proponents of an interlocutory appeal bear the burden of showing that all

three of the substantive criteria are met. *See Casey v. Long Island R.R. Co.*, 406 F.3d 142, 146

(2d Cir. 2005). The three statutory criteria "supply only the minimum standard" for movants.

*SEC v. Gruss*, No. 11-CV-2420, 2012 WL 3306166, at *2 (S.D.N.Y. Aug. 13, 2012). The Court

of Appeals has cautioned that "the power [to grant an interlocutory appeal] must be strictly

limited to the precise conditions stated in the law." *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 25 (2d Cir. 1990). "[D]istrict court judges have broad discretion to deny certification even where the statutory criteria are met. *Century Pacific, Inc. v. Hilton Hotels Corp.*, 574 F. Supp. 2d 369, 370-71 (S.D.N.Y. 2008) (citation omitted); *In re World Trade Center Disaster Site Litig.*, 469 F. Supp. 2d 134, 144 (S.D.N.Y. 2007) (district court's discretion to deny certification is "unfettered").

The standard for Section 1292(b) certification of a non-final order is extremely high. Although Section 1292(b) "was designed as a means to make an interlocutory appeal available, it is a rare exception to the final judgment rule that generally prohibits piecemeal appeals." *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 866 (2d Cir. 1996). The Second Circuit has held repeatedly that "use of this certification procedure should be strictly limited because only exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996); *see also Westwood Pharm., Inc. v. Nat'l Fuel Gas Distrib. Corp.*, 964 F.2d 85, 89 (2d Cir. 1992) ("we urge the district courts to exercise great care in making a § 1292(b) certification"). Those exceptional circumstances do not exist here.

**A.  There is No Substantial Ground for Difference of Opinion.**

A "mere claim that a district court's decision was incorrect does not suffice to establish substantial ground for a difference of opinion." *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 426 F.Supp.2d 125, 129, (S.D.N.Y. 2005). For there to be a "substantial ground for difference of opinion" under Section 1292(b), there "must be substantial doubt that the

district court's order was correct." *Century Pacific*, 574 F. Supp. 2d at 372 (quoting *SPL Shipping Ltd. v. Gujarat Cheminex Ltd.*, No. 06-CV-15375 (KMK), 2007 WL 1119753, at *2 (S.D.N.Y. Apr. 12, 2007) (in turn quoting S. Rep. No. 85-2434, at 3 (1958), reprinted in 1958 U.S.C.C.A.N. 5255, 5257)).

Alpine's assertion that this case presents "novel … issues of first impression" (Motion at 3, 21) is not a sufficient basis for departing from the final judgment rule. "[T]he mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *Flor*, 79 F.3d at 284. "Rather, 'it is the duty of the district judge ... to analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a *substantial* ground for dispute.'" *Id.* (emphasis in original).

For the reasons stated above and in the Commission's opposition to Alpine's summary judgment motion, no such ground exists here.

**B.  Interlocutory Review Would Not Materially Advance Termination of the Litigation.**

"Courts place particular weight on the last of the[] three factors [for granting interlocutory appeal]: whether immediate appeal will materially advance the ultimate termination of the litigation." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, MDL. No. 1358 (SAS), 2008 WL 2511038, at *1 (S.D.N.Y. June 18, 2008) (citations omitted). Therefore, interlocutory appeal is "'a rare exception' where, in the discretion of the district judge, it 'may avoid protracted litigation.'" *In re World Trade Ctr. Disaster Site Litig.,* 469 F.Supp.2d 134, 144 (S.D.N.Y.2007) (quoting *Koehler,* 101 F.3d at 865–66 (2d Cir.1996)); accord *Fed. Hous. Fin. Agency v. HSBC N. Am. Holding Inc.*, Nos. 11-CV-6189 (DLC), 11-CV-6201 (DLC), 2014 WL

4276420, at *7 (S.D.N.Y. Aug. 28, 2014) (quoting *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 866 (2d Cir.1996) ("Certification is thus appropriate only in the narrow class of cases in which 'an intermediate appeal may avoid protracted litigation.'").

 This case is not one of those rare exceptions. Discovery in this case is nearly complete. The deadline to file motions for summary judgment or a pre-trial order is July 13, 2018. The Court granted in part the Commission's motion for partial summary judgment and has already found, among other things, that Alpine is liable for some of the SARs at issue in this case and that other SARs are deficient. Opinion at 40-77. Under these circumstances, there is no reason to think an immediate appeal would materially advance the ultimate termination of the litigation. *See Ratner v. Chemical Bank New York Trust Co.*, 309 F. Supp. 983, 989 (S.D.N.Y. 1969) (where a case is amenable to summary judgment, "allowance of the appeal … would not 'materially advance the ultimate termination of (this) litigation'"). To the contrary, if the proceedings before this Court were stayed while an appeal proceeded (as Alpine undoubtedly would request), it "could only serve to delay" the ultimate termination of this litigation. *Id.* at 989.

 "An immediate appeal is considered to advance the ultimate termination of the litigation if that 'appeal promises to advance the time for trial or to shorten the time required for trial.'" *In re Oxford Health Plans,* 182 F.R.D. 51, 53 (S.D.N.Y.1998) (quoting 16 Charles Alan Wright, et al., Federal Practice and Procedure § 3930 (1996)). Alpine's contention that appellate review will expedite the resolution of this lawsuit not only ignores the posture of this case, but presupposes that the Second Circuit will reverse the Court's denial of Alpine's summary judgment motion. There is no reasonable basis for this assumption. If the Court's ruling were to be upheld— as it

should be— interlocutory review would have served only to delay resolution of the litigation through summary judgement or at trial.

Contrary to Alpine's suggestion (Motion at 23), the mere fact that its summary judgment motion would have been dispositive if granted is not a sufficient basis for allowing piecemeal appeals in this case. If it were, the exception would swallow the final judgment rule. Alpine will have the opportunity to present its argument for reversal to the Second Circuit. Considerations of efficiency and judicial economy dictate that, like the parties in the vast majority of cases (including those involving dispositive motions), it can wait until after the Court enters final judgment.

## **<u>CONCLUSION</u>**

For the reasons above the Commission respectfully requests that the Court deny Alpine's Motion.

Respectfully submitted this 11th day of May, 2018.

*/s/ Zachary T. Carlyle*
Zachary T. Carlyle (*pro hac*)
Terry R. Miller (*pro hac*)
Attorneys for Plaintiff
UNITED STATES SECURITIES AND
EXCHANGE COMMISSION
1961 Stout Street, 17th Floor
Denver, Colorado 80294
(303) 844-1000

19

## **CERTIFICATE OF SERVICE**

I certify that on May 11, 2018, a copy of the foregoing document was served via ECF

upon the following:

Brent R. Baker
Aaron D. Lebenta
Jonathan D. Bletzacker
CLYDE SNOW & SESSIONS
One Utah Center, 13th Floor
201 South Main Street
Salt Lake City, Utah 84111-2216

Maranda E. Fritz
Thompson Hine LLP (NYC)
335 Madison Avenue, 12th Floor
New York, NY 10017

*Counsel for Alpine Securities Corporation*

*/s/ Zachary T. Carlyle*
Zachary T. Carlyle

20