UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | Civil No. 1:17-CV-04179-DLC |
| Plaintiff, | |
| v. | Honorable Judge Denise L. Cote<br>Magistrate Judge Ronald L. Ellis |
| ALPINE SECURITIES CORPORATION, | **ECF CASE** |
| Defendant. | |

**DEFENDANT'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR RECONSIDERATION OF THE COURT'S
MARCH 30, 2018 OPINION AND ORDER GRANTING, IN PART,
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**



335 Madison Avenue, 12th Floor
New York, New York 10017
(212) 344-5680



One Utah Center
201 South Main Street, Suite 1300
Salt Lake City, Utah 84111-2216
(801) 322-2516

*Attorneys for Alpine Securities Corp.*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

POINT I.............................................................................................................................. 2
RECONSIDERATION IS WARRANTED AND APPROPRIATE TO ADDRESS
THE AUTHORITIES OVERLOOKED BY THE COURT AND THE ERRORS
UNDERLYING THE COURT'S DECISION ................................................................... 2

POINT II ............................................................................................................................ 3
THE COURT OVERLOOKED AUTHORITIES DEMONSTRATING THAT
THE "REASON TO SUSPECT" LANGUAGE IN THE BSA DOES NOT
SUPPLANT THE SUBJECTIVITY THAT IS EMBEDDED IN SAR
DETERMINATIONS AND RELATES ONLY TO THE SAR FILING
REQUIREMENT, NOT THE NARRATIVE ................................................................... 3

    1.   The Court Failed to Apply the Authorities Demonstrating That the "Reason
        to Suspect" Language in the BSA Does Not Eliminate the Need  to Consider
        all of the Facts and Circumstances of a Transaction....................................... 3

    2.   The Court Overlooked Clear and Controlling Authority Confirming that the
        Red Flags Listed in Guidance Do Not Create Objective Requirements for
        What Must be Included in a SAR Narrative .................................................. 6

    3.   The Court Clearly Erred By Relieving the SEC of its Burden on Summary
        Judgment. ...................................................................................................... 7

    4.   Imposing Liability on the SEC's Red Flag Theory Would Deprive Alpine
        of its Constitutional Right to Fair Notice ..................................................... 10

POINT II ............................................................................................................................ 11
IN PUTTING FORTH A PATTERN THEORY RELATING TO LIQUIDATIONS,
AND GRANTING SUMMARY JUDGMENT ON IT, THE COURT FAILED TO
CONSIDER CONTROLLING CONTRARY AUTHORITY ................................................. 11

POINT III ........................................................................................................................... 13
THE COURT IGNORED FACT ISSUES ON THE ALLEGEDLY UNTIMELY
SARS................................................................................................................................. 13

POINT IV ........................................................................................................................... 14
THE SEC DID NOT ASSERT A CLAIM FOR FAILURE TO PRODUCE .......................... 14

CONCLUSION.................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Auer v. Robbins*,
   519 U.S. 452 (1997) .................................................................................11

*Capitol Records, LLC v. Vimeo,*
   LLC, 972 F. Supp. 2d 537 (S.D.N.Y. 2013) ..........................................2

*Christopher v. SmithKline Beecham Corp.*,
   567 U.S. 142 (2012) .................................................................................11

*Freeport-McMoRan Oil & Gas Co. v. F.E.R.C.*,
   962 F.2d 45 (D.C. Cir. 1992) ..................................................................16

*Giannullo v. City of New York*,
   322 F.3d 139 (2d Cir. 2003)...............................................................8, 13

*Haywood v. Bureau of Immigration*,
   372 F. App'x 122 (2d Cir. 2010) ............................................................15

*In re Sterne, Agee & Leach, Inc.*,
   No. EO52005007501 ...........................................................................5, 10

*U.S. Dep't of Air Force v. F.L.R.A.*,
   952 F.2d 446 (D.C. Cir. 1991) ................................................................11

**Statutes**

31 C.F.R. § 1010.810(a)........................................................................................1

31 C.F.R. § 1023.320 ..................................................................................*passim*

31 C.F.R. § 1023.320(b) ...................................................................1, 3, 4, 13

31 C.F.R. § 1023.320(d) ....................................................................................15

66 Fed. Reg. 67,670 (Dec. 31, 2001) ..........................................................6, 7

67 Fed. Reg. 44,048 (July 1, 2002)...........................................................*passim*

73 Fed. Reg. 74,010 (Dec. 5, 2008) ...................................................................4

## INTRODUCTION

In its Opposition to Alpine's Motion for Reconsideration, the SEC embraces this Court's reference to the so-called "objective test" under 31 C.F.R. § 1023.320(b) and presents it as support for virtually every aspect of its automatic red flag requirements.[1]   The SEC argues that the "objective test" somehow supports the Court's conclusion concerning the content of a SAR narrative, although the "reason to suspect" language of the BSA actually has no bearing on the narrative.  The SEC goes farther, claiming that the "objective test" creates a SAR *filing* requirement that exists when any "red flag" is identified in the transaction (*See* Opp. at 6.)

This interpretation of the "reason to suspect" language, and the conflation of SAR *filing requirements* with narrative contents, is contrary to the consistent pronouncements of the "Administrator of the BSA," FinCEN.[2]  The "reason to suspect" language reflects precisely the same "facts and circumstances" analysis that FinCEN has consistently described, only from another perspective, looking at whether "a reasonable broker-dealer in similar circumstances would have suspected that the transaction was subject to SAR reporting."  *See* 67 Fed. Reg. 44,048, 44,053 (July 1, 2002).  That language does not transform a "red flag" into an automatic requirement that a SAR be filed or that a flag be included in a SAR narrative, without consideration of either Alpine's, or a similarly-situated "reasonable" broker-dealer's, analysis of the facts and circumstances of the transaction.

The SEC presses that simplistic distortion of the SAR analysis for an obvious reason: it is the only theory under which the Court's decision could stand.  Under a proper reading of that

---

[1]  This interpretation of the Court's opinion, argued by the SEC, appears strained at best. Although the Court referenced the "objective test" in its Opinion, it did so in connection with a different issue:  whether the SEC must establish scienter.  (Opinion at 43-44.)  However, as explained in Alpine's Motion, scienter and SAR-filer subjectivity are different concepts.

[2]  *See* 31 C.F.R. § 1010.810(a).  FinCEN's report to Congress in 2003 discussed at length its critical role as "Administrator of the BSA" and the means by which it fulfills the purpose of the BSA across various financial industry sectors including coordinating with eight different financial regulatory agencies, each of which examines for compliance and refers "noncompliant institutions … to FinCEN for enforcement."  *See* Statement of James F. Sloan, Director at FinCEN, before the Subcommittee on Oversight and Investigations Committee on Financial Services, Mar. 11, 2003, available at https://archives-financialservices.house.gov/media/pdf/031103js.pdf.

"reason to suspect" standard, however, the SEC's evidentiary showing was insufficient at least twice over. In granting summary judgment to the SEC, notwithstanding its failure to present sufficient evidence concerning the totality of the circumstances of the transaction, the workings of the microcap market, or the SAR analysis relating to alleged "red flags" in that particular market, the Court overlooked specific and clear statements of FinCEN, even the SEC itself, and misapplied the standards contained in the BSA.[3]

## ARGUMENT

### POINT I

### RECONSIDERATION IS WARRANTED AND APPROPRIATE TO ADDRESS THE AUTHORITIES OVERLOOKED BY THE COURT AND THE ERRORS UNDERLYING THE COURT'S DECISION

The SEC insists that reconsideration should be denied because Alpine has failed to present anything new. In addition to new evidence, however, reconsideration is also appropriate where the movant presents "controlling decisions or data that the court overlooked" or "the need to correct a clear error." *Capitol Records, LLC v. Vimeo*, LLC, 972 F. Supp. 2d 537, 543 (S.D.N.Y. 2013) (citation omitted). Here, all of those circumstances are present. The Court overlooked controlling decisions, resulting in clear errors. Further, the SEC's argument regarding the lack of new factual evidence is belied by the circumstances.

Because of the motion schedule set by the Court, *neither* party was able to put forth *any* expert analysis or discovery on the initial motion. The Court then issued a decision that declined to consider or misread consistent industry guidance regarding application of the BSA and took the unusual step of proceeding to grant summary judgment notwithstanding the SEC's failure to meet its threshold burden as to whether the transactions at issue required SAR filings. Confronted with that decision, and in light of the Court's own concern regarding the lack of lay

---

[3] Compounding the error, the Court also granted judgment to the SEC on claims that the SEC had never alleged, *i.e.*, that liquidations of stock constitute suspicious "patterns" as a matter of law, and that the SEC can obtain judgment based on Alpine's supposed failure to produce SAR support files during the investigation. *See* Points II and IV, *infra*.

and expert testimony on the relevant market and broker-dealer practices (Opinion at 46, n. 21) and its comment during the March 30 conference that it expected that the parties would "provide additional guidance," Alpine submitted information that it had by then developed during discovery -- both the opinion of an expert, a former FinCEN representative, and deposition testimony – to assist the Court in evaluating the underlying circumstances at Alpine and the history and complexities associated with SAR provisions and process.   Eagerly capitalizing on the Catch 22 that resulted from the unusual scheduling of the motions, and the Court's swift denial of Alpine's motion to supplement the record, the SEC aggressively argues that it should prevail because Alpine did not present information it later developed during discovery.  Given the SEC's reliance in its opposition on the repeated claim that Alpine did not present new information, the Court should grant reconsideration and consider the materials submitted by Alpine.

## POINT II

**THE COURT OVERLOOKED AUTHORITIES DEMONSTRATING THAT THE "REASON TO SUSPECT" LANGUAGE IN THE BSA DOES NOT SUPPLANT THE SUBJECTIVITY THAT IS EMBEDDED IN SAR DETERMINATIONS AND RELATES ONLY TO THE SAR FILING REQUIREMENT, NOT THE NARRATIVE**

1.   **The Court Failed to Apply the Authorities Demonstrating That the "Reason to Suspect" Language in the BSA Does Not Eliminate the Need to Consider all of the Facts and Circumstances of a Transaction**

The SEC claims that there was no "clear error in the Court's application of Section 1023.320 to require that the red flags set forth in the Order be reported regardless of whether Alpine knew or suspected that the transaction at issue was criminal."  (Opp. at 6.)  According to the SEC, the Court relied on the "reason to suspect" language in Section 1023.320(b), concluding that it creates an "objective test" and that the presence of a red flag listed in guidance constitutes an "objective" fact that automatically triggers a SAR reporting obligation.  (*Id.*)  That

conclusion, however, misinterprets the BSA provision and contravenes the plain and consistent statements of the agency entrusted with the BSA's interpretation and enforcement, FinCEN.[4]

As Alpine demonstrated, FinCEN and the Federal Financial Institutions Examination Council ("FFIEC") have repeatedly explained that the SAR analysis is fundamentally a "subjective determination" by a firm predicated on all of the "facts and circumstances" relating to its line of business and to a particular transaction, with a narrative explaining why the firm was filing the SAR.[5]  FinCEN's statement in the Federal Register, comparing the subjectivity in the SAR process to the objectivity in Currency Transaction Reports ("CTRs"), is directly on point:

> [T]he CTR, which captures information based on objective facts that determine its filing, and the SAR, which requires a financial institution to make a subjective determination of what is suspicious prior to its filing, are complementary sources of information for law enforcement.[6]

Even the SEC's own Office of Compliance Inspections and Examinations ("OCIE") has plainly confirmed that the SAR analysis does not hinge on any particular flag; it depends on the "totality of the circumstances."  In a Risk Alert that discusses "examples" of "potentially unusual or suspicious activity in connection with customers' sales of microcap securities" that were "actually known" to broker-dealers, OCIE stated:

> The Staff does not contend that the existence of any of these examples, which may indicate suspicious activity, necessarily triggers the broker-dealer's obligation to file a SAR. Whether the broker-dealer has such an obligation depends on *the totality of facts and circumstances in a particular situation.*[7]

---

[4]  FinCEN stated that the "reason to suspect" standard does not even apply to all four of the BSA categories of reportable transactions.  *See* 66 Fed. Reg. at 67,673 (stating the rule creates two categories of reporting, and that the reason to suspect language does not apply to the first category, *i.e*, a "known or suspected Federal criminal violation, committed or attempted against, or through, a broker-dealer.").   Applying that statement of FinCEN to the current language, "reason to suspect" does not apply where the transaction falls under Section 1023.320(a)(iv), *i.e.*, "involves use of a broker dealer to facilitate criminal activity."
[5]  *See* Alpine's Opposition to Summary Judgment, at 9-11; Alpine's Reconsideration Motion, at 13-15.
[6]  *See* 73 Fed. Reg. 74,010, 74,011 (Dec. 5, 2008).
[7]  OCIE, Risk Alert: *Broker-Dealer Controls Regarding Customer Sales of Microcap Securities*, at 5 n.17 (October 9, 2014) (emphasis added), available at https://www.sec.gov/about/offices/ocie/broker-dealer-controls-microcap-securities.pdf

FinCEN's definition of the "reason to suspect" standard, not acknowledged by the Court or the SEC, expressly states that the language does *not* obviate analysis of all of the facts and circumstances:

> The reason-to-suspect standard means that, on the facts existing at the time, a reasonable broker-dealer in similar circumstances would have suspected that the transaction was subject to SAR reporting. *This is a flexible standard that adequately takes into account the differences in operating realities among various types of broker-dealers . . . .*

67 Fed. Reg. at 44,053 (emphasis added). This definition preserves the subjectivity inherent in the SAR-filing decision by simply shifting the focus to whether a hypothetical similarly-situated "reasonable" broker-dealer, faced with its own "operating realities," would conclude that the transaction was indicative of criminal activity and therefore subject to reporting.[8]

FINRA has likewise rejected the SEC's theory in the *Sterne Agee* decision, discussed at length in Alpine's prior filings.[9] In response to the same arguments propounded here – that red flags create objective and mandatory reporting obligations – the hearing panel confirmed the need to focus on the firm's "subjective" process and evaluation of these red flags in the context of the transaction, and concluded that *no SAR violation* had occurred.[10]

The Court's imposition of automatic "objective" red flag requirements would entirely negate FinCEN's emphasis on the need to consider all of the facts and circumstances, in the

---

[8] Consistent authority, cited by Alpine and ignored by the Court and the SEC, underscores that the SEC's approach of focusing on the presence of a particular "red flag," and extrapolating a SAR filing obligation from it, has been consistently rejected by regulators:

- The FFIEC stated: "The following examples are red flags that, when encountered, may warrant additional scrutiny. The mere presence of a red flag is not by itself evidence of criminal activity. Closer scrutiny should help to determine whether the activity is suspicious or one for which there does not appear to be a reasonable business or legal purpose."[8]
- FinCEN stated: "The presence or absence of a red flag in any given transaction is not by itself determinative of whether a transaction is suspicious."

*See* Fin-2017-A007, at 4 (Oct. 31, 2017) Advisory to Financial Institutions Regarding Disaster – Related Fraud,   available at https://www.fincen.gov/resources/advisories/fincen-advisory-fin-2017-a007-0.

[9] *In re Sterne, Agee & Leach, Inc.,* No. EO52005007501, at 32-33 (holding the firm made "reasonable determinations" not to file SARs, despite knowledge of a customer's disciplinary history because it was not a "money laundering risk" where it "involved a matter that had been resolved several years earlier" and despite knowledge that several accounts were foreign-based, that "large blocks of stock were being deposited and liquidated," and that the "proceeds of the sale were being wired to offshore accounts" where there was a reasonable business explanation).

[10] The SEC's efforts to distinguish *Sterne Agee* by arguing that it involved a different issue – an alleged AML program violation – misses the salient point: the existence of a red flag alone is not an objective SAR reporting trigger; the totality of the facts and circumstances of transaction must be considered and may render a flag irrelevant.

context of a particular market, from the vantage point of a filer.  A firm's view and analysis of a transaction would be rendered irrelevant, since a SAR would have to be filed in every instance in which any "red flag" appeared and even then a BSA violation would *still* occur if a red flag were not discussed in the narrative.  Every filer who attempted to explain its industry particulars and its subjective judgment would be faced with the response that it does not matter, that if there is a red flag in the file, then a SAR filing was required and the red flag, however remote or irrelevant, had to be discussed in the narrative.   This has never been the law and the SEC cannot reinvent SAR requirements that can then be deployed across multiple sectors of the financial industry.[11] Because the Court's acceptance of that theory failed to consider critical authorities and constitutes error, the Court should reconsider its decision and reject the SEC's claim.

### 2.     The Court Overlooked Clear and Controlling Authority Confirming that the Red Flags Listed in Guidance Do Not Create Objective Requirements for What Must be Included in a SAR Narrative

The SEC has now tied its insufficient narrative claim to the "reason to suspect" language. (Opposition, at 6.)   However, not only has the SEC misinterpreted that "reason to suspect" standard, as discussed above, but also this language does not apply to the contents of SAR narratives.  That language only governs when a SAR must be filed, *i.e.*, to report a *transaction* that meets the requirements of Section 1023.320(a)(2).[12]  The regulation itself imposes no SAR narrative requirements.  *See* 31 C.F.R. § 1023.320.

Alpine demonstrated that, in fact, no automatic red-flag requirements for the narratives exist. The contents of the narrative are, by definition, an outgrowth of the firm's consideration of

---

[11]  *See* 66 Fed. Reg. 67,670, 67,673 (Dec. 31, 2001) (notice of broker-dealer SAR rule) ("A determination as to whether a report is required *must be based on all the facts and circumstances relating to the transaction and customer* of the broker-dealer in question. Different fact patterns will require different types of judgments . . . . [including] whether the facts and circumstances and the institution's *knowledge of its customer provide a reasonable explanation for the transaction that removes it from the suspicious category.*" (emphasis added)).

[12]  *Accord* 67 Fed. Reg. at 44,053 (stating the reason-to-suspect standard applies where a "reasonable broker-dealer under similar circumstances would have suspected the *transaction was subject to SAR reporting.*" (emphasis added)).

all of the circumstances, in the context of its market, and the particular reason that the firm filed the SAR. [13]  Of the myriad sources that support that position, the SEC addressed only the SAR Forms, raising a convoluted argument that the term "including" in the Forms somehow "means that a complete description of the activity requires more than just the facts that caused suspicion." (Opp. at 5.)  In other words, that the Forms do not mean what they say: to "includ[e] what was unusual or irregular that caused suspicion."  (*See* SEC Ex. 9, at 110.)

Notably, even if the SAR Form checklists were considered mandatory – not the "guides" that they are – those checklists do not even contain the various "red flag" categories identified by the SEC and so actually contradict the conclusions of this Court.  For instance, the checklist does not require filers to report any criminal or regulatory history, but rather only "related litigation." Similarly, the checklist does not state that any "foreign involvement" should be reported, but rather concerns the involvement of foreign currency or movement of money to or from a foreign jurisdiction.  *The SEC's other red flag categories are not even mentioned in the Forms.*  The Forms do not support the SEC's position, they support Alpine's.

**3.    The Court Clearly Erred By Relieving the SEC of its Burden on Summary Judgment.**

The Court erred not only by deciding to bypass the issue of whether the SAR filings at issue were required, but also by creating a requirement of inclusion of red flags in SAR narratives, and granting judgment to the SEC on that basis.  The SEC failed to meet its burden on that issue as well: it presented no evidence that any of the red flags at issue were actually, *in*

---

[13]  In its examination manual, FFIEC states: "[b]y their nature, *SAR narratives are subjective*, and examiners generally should not criticize the [financial institution's] interpretation of the facts." *See* FFIEC Manual, Suspicious Activity Reporting – Overview (emphasis added). Even the SAR narrative guidance issued by FinCEN, and relied upon by the Court, makes the subjectivity clear by indicating that the "why" in the narrative means "why does *the filer* think the activity is suspicious." (SEC Ex. 1, at 4 (emphasis added).)

*context*, indicative of criminal activity or material to the reason for the filing.[14]  The SEC present

no evidence regarding Alpine's decision-making process or the "penny stock market, and the

manipulation of that market, as well as various other market and broker-dealer practices,"

(Opinion, at 46 n.21) – information that would have been necessary to satisfy the "reason to

suspect" standard, even if it were applicable to SAR narrative content.   The SEC literally

presented nothing other than the mere fact of a flag.  Given the SEC's failure to satisfy its burden

to produce any evidence of the significance of the red flags in the context of the transactions and

in the preparation of SAR narratives, summary judgment should have been denied. *Giannullo v.*

*City of New York*, 322 F.3d 139, 140–41 (2d Cir. 2003) ("[W]here the movant 'fail[s] to fulfill its

initial burden' of providing admissible evidence of the material facts entitling it to summary

judgment, <u>summary judgment must be denied</u>, 'even if no opposing evidentiary matter is

presented' for the non-movant is not required to rebut an insufficient showing." (emphasis

added) (quotation and citations omitted)).[15]

     Furthermore, Alpine did raise disputes of material fact.  Among other things, Alpine

presented evidence of its written AML program requirements,[16] its SAR review process,[17] and

ongoing improvements to its AML program.[18]  In relation to the particular SARs that only

reported the fact of a deposit, Alpine confirmed that it did not consider large deposits of low-

priced securities to be suspicious, but only filed SARs on such deposits because it understood

---

[14]  This Court acknowledged that the analysis of whether a SAR is deficient is "necessarily context-specific," and that a
"fulsome" narrative would not be susceptible to summary judgment, but ruled that summary judgment was appropriate because
Alpine's SAR narratives were "woefully inadequate."  (Opinion at 65.)  In that ruling, the Court not only relieves the SEC of its
burden to show that an omitted fact was material in the context of the circumstances of the transaction but also created hard and
fast SAR narrative rules based only on SARs cherry-picked by the SEC relating to deposits of low priced securities.  Alpine
routinely filed SARs to report transactions it actually found suspicious and included the factors that created the suspicion therein.
Alpine submitted some samples of these SARs with its Motion and again asks the Court to consider them.
[15]  Had the SEC provided such evidence, Alpine would have rebutted it, and will rebut it in any future proceeding.  In fact, Alpine
already presented excerpts of witness testimony from depositions with this Motion rebutting it, and again asks the Court to
consider it.
[16]  *See* Alpine's Add'l SOF, Nos. 22-37.
[17]  *See* Alpine's Add'l SOF, Nos. 38-53.
[18]  *See* Alpine's Add'l SOF, Nos. 54-59.

that FINRA wanted SARs filed on these deposits.[19]  Additionally, as detailed in Alpine's

Motion, the support files themselves raise fact disputes on the application of the guidance to the

facts within each of the SEC's "red flag" categories.[20]  For example:

- Shell company status.  The support files for SARS A and C contain handwritten notes stating that the issuers were not shell companies at the time of the transactions, and there is no evidence that Alpine's customers were shells.  (*See* SEC Exs. 24 at ALPINE00220203, ALPINE00220210, 25 at SEC-ALPINE-E-1690741.)  The SEC does not respond to this issue, but argues that the guidance relied upon by the Court applies "to any company participating in a transaction," including issuers who were formerly shells.  (Opposition, at 11.)  This is not accurate.  The guidance clearly states that "most shell companies are created to serve legitimate business purposes," identifies only risks associated with "[p]roviding services to shell companies." (*See* SEC Ex. 23, at 4; *accord* Alpine's Add'l SOF, No. 35, citing Alpine's Written Supervisory Procedures as quoting the forgoing guidance.)  Indeed, the idea that FinCEN required financial institutions to disclose former issuer shell status, makes absolutely no sense and is completely unsupported.  The introducing-broker's Deposited Securities Checklist does *not* suggest former shell status is suspicious; it is listed for entirely different issues:  to determine whether the shares are tradeable and if they qualify for an exemption to registration requirements under Rule 144.  (*See e.g.* SEC Exs. 18 at ALPINE00165090, 29 at ALPINE0229540, 31 at ALPINE00180430.)

- Criminal or Regulatory History:  The support files for SARS D-F show that the criminal and regulatory history was not related to the transaction on which the SAR was filed.  The SEC responds by claiming that nothing in "FinCEN's guidance or the purpose of Section 1023.320 suggests that a filer should ever consider and then omit a red flag connected to a transaction it has already decided to report." (Opp. at 11.)  This is, first, a nonsensical proposition; of course the guidance is not going to tell a filer what to omit!  Further, the guidance from various sources -- FinCEN, the FFIEC and OCIE -- does make clear that red flags do not translate to SAR obligations.  The presence of a red flag is not itself evidence of criminal activity. It may, or may not, be suspicious.  And the FINRA panel in *Sterne Agee* held, consistent with the SAR Forms, that there was no violation from a failure to report unrelated regulatory history.  This is because the SAR reporting process leaves to the broker-dealers the review of the red flag and the decision whether it is indicative of criminality or presents "money laundering risks," 67 Fed. Reg. at 44,053.  The SEC's position writes-out the key component – the *analysis*. The SEC also misses the point: there is nothing in the regulation, guidance or SAR Form that requires the reporting of *unrelated* litigation.

- Stock promotion. The SEC cannot contest that stock promotion is perfectly lawful.  Nonetheless, the SEC maintains that a stock promotion in connection with low-priced securities is suspicious of a pump-and-dump scheme as a matter of law.  (Opp. at 12.)  As

---

[19]  *See* Alpine's Add'l SOF, Nos. 47, 69, 71-73, and 75.
[20]  Alpine refers the Court to its Reconsideration Motion, at pp. 16-20, for further discussion of each of the red flag categories identified by the SEC.

its support, it cites not an industry directive but a case, and that case cited by the SEC does not hold that a promotion is in every instance indicative of criminal activity. Further, there is nothing in the support files for SARs G-I identified by the SEC that suggests that any of the shares at issue were deposited by persons connected to the promotional activity, let alone that were connected to a pump-and-dump scheme, that would make stock promotion critical to a SAR narrative.

By ruling that Alpine's narratives were deficient without requiring the SEC to present evidence that a SAR filing was required and without finding, on undisputed facts, any fact specific reasons why any particular red flag was material to the SAR narrative, the Court impermissibly relieved the SEC of its burden.  This is clear error.

### 4.    Imposing Liability on the SEC's Red Flag Theory Would Deprive Alpine of its Constitutional Right to Fair Notice

The Court failed to consider Alpine's argument and extensive authorities confirming that imposing liability on the SEC's novel theory, that a red flag must automatically be included in the narrative, would deprive Alpine of its constitutional right to fair notice.  The SEC argues that the Court did consider this argument, citing only to a one-sentence footnote in the Court's Opinion.  That line actually addressed a different issue in an entirely different Motion – Alpine's argument in its Motion for Judgment on the Pleadings that imposing liability for a BSA violation without a finding of scienter or fault would deprive it of fair notice. (*See* Opp. at 13 (citing Opinion at 41 n.17.))  The Court's failure to address Alpine's fair-notice argument regarding the SEC's red-flag theory warrants reconsideration.

The SEC's claim that notice did exist also fails.  The SEC insists that the "Court's interpretation of Section 1023.320 is a straightforward application of well-established principles, *see e.g., Auer v. Robbins,* 519 U.S. 452 (1997), to rules and guidance that have been in place since 2003."  (Opp. at 13.)  The Court's interpretation of the SAR rule is actually counter to well-established principles and unsupported by the relevant authority. It has never been addressed in any litigation and the SEC has not and cannot cite to any actual iteration, even by

the SEC, of such a rule.  To the contrary, the SEC stated that red flags are not SAR triggers *per se* and that a SAR filing "obligation depends on *the totality of facts and circumstances in a particular situation*."  (*See* OCIE Risk Alert, at fn.7, *supra.*)(emphasis added).

More importantly, the SEC cannot cite to any statement by *FinCEN* condoning this theory as a reasonable interpretation of Section 1023.320, and the SEC is, of course, not entitled to *Auer* deference for its interpretation of FinCEN's regulations or guidance. *See U.S. Dep't of Air Force v. F.L.R.A.,* 952 F.2d 446, 450 (D.C. Cir. 1991).[21]

So it is here.  The SEC seeks a separate penalty for each of the over 2,000 SARs at issue under its omitted red-flag theory – a penalty that could total in the hundreds of millions of dollars and force Alpine out of business.  The SEC freely admitted at the start of this case that this is a "case of first impression,"[22] and has advanced a view that it actually at odds with all of the relevant statements of FinCEN.  Punishing Alpine under the SEC's novel theory that all red flags must be discussed in SAR narratives is not constitutional, and the Court erred by not considering this issue and the authorities cited in support of it.

## POINT II

**IN PUTTING FORTH A PATTERN THEORY RELATING TO LIQUIDATIONS, AND GRANTING SUMMARY JUDGMENT ON IT, THE COURT FAILED TO CONSIDER CONTROLLING CONTRARY AUTHORITY**

In its Motion, Alpine demonstrated that the Court's injection and use of a deposit-liquidation "pattern" theory to grant summary judgment to the SEC was a misapplication of that pattern approach and lacked any evidentiary support on this record.  In response, the SEC argues that it had previously invoked that pattern argument, but its Complaint and its Summary

---

[21] The Supreme Court refused to apply *Auer* deference to the Department of Labor's ("DOL") "interpretation of ambiguous regulations," promulgated by *the DOL,* which would "impose potentially massive liability on respondent for conduct that occurred well before that interpretation was announced" because it "would seriously undermine the principle that agencies should provide regulated parties 'fair warning of the conduct [a regulation] prohibits or requires.'" *Christopher v. SmithKline Beecham Corp.,* 567 U.S. 142 (2012) (internal citations and footnotes omitted).
[22] *See* SEC's Opposition to Alpine's Motion to Dismiss, at 1.

Judgment Motion prove otherwise.  From the outset, the SEC has claimed that the deposit and liquidation of stock were each "separate 'transactions'" – *not patterns* – and relied on the notion that the filing of a SAR on a deposit of stock created an automatic duty to also file a SAR on the liquidation of that stock. (*See* SEC's Summary Judgment Motion, at 17-18.)  The SEC further claimed that each failure to file a SAR on each "separate" liquidation transaction constituted a separate violation. (*Id.* at 18, 22.)  In fact, where the SEC did use the term "pattern" in its Motion, it did not use it to describe a pattern of *transactions*, but rather to describe *Alpine's* conduct. (*See id.* at 18-19.)   No pattern theory was alleged in the Complaint or argued by the SEC, nor did Alpine have an opportunity to address it.

The pattern theory advanced by the Court not only was new but also is at odds with the per-liquidation-transaction theory of liability the SEC actually pursued. The phrase "pattern of transactions" contemplates the filing of a <u>single</u> SAR where the "broker-dealer determines" that a series of transactions collectively forms a suspicious pattern within the meaning of the regulation.[23]  A pattern theory could neither require the filing of a separate SAR on each liquidation, nor support the SEC's theory that each failure to do so was a separate violation.

In any event, the pattern theory fails on this record.  To support that theory, the SEC would have been required to prove on undisputed facts not just the existence of a pattern, but a pattern that was indicative of criminal activity within the meaning of Section 1023.320.[24]  The SEC submitted no evidence that a reasonable clearing firm with similar "operating realities" to Alpine, under the totality of circumstances of the transaction, would view an order from an

---

[23] *See* 31 C.F.R. § 1023.320(b); *see also* 67 Fed. Reg. at 44,051 ("[I]f the "*broker-dealer determines* that a series of transactions that would not independently trigger the suspicion of the broker-dealer, but that taken together, form a suspicious pattern of activity, the broker-dealer must file a suspicious transaction report." (emphasis added).)

[24] A suspicious pattern of transactions in the broker-dealer context would generally involve market manipulation, including matched or wash trading.  Where Alpine saw indications of such activity, it conducted a review and analysis and filed SARs that contained a full description of the issue.  Alpine submitted a number of these SARs in connection with this Motion, and again implores the Court to review these SARs in its consideration of this issue.

introducing broker to process the sale of microcap stock, even shortly after a deposit, to be suspicious of unlawful activity, or even unusual, in and of itself.[25]

By granting summary judgment for the SEC on this record, the Court ignored the SEC's failure to support its own theory of liability, *i.e.*, that SAR filings on a deposit established an automatic requirement of a SAR filing on liquidation. Because the SEC failed to establish that any of the deposits actually fell within one of the categories of the BSA, such that a SAR was required, its boot-strapped claim that the liquidations had to be reported also failed. With respect to the theory put forth by the Court, that a suspicious "pattern" existed and so a filing was required, the SEC did not make that claim and the record lacks any evidence to support it.

## POINT III

## THE COURT IGNORED FACT ISSUES ON THE ALLEGEDLY UNTIMELY SARS

The SEC makes three arguments in support of the Court's rulings relating to the five allegedly untimely SARs. First, the SEC claims that Alpine conceded that the SARs were required to be filed because FINRA indicated the SARs should be filed. In fact, the SEC now articulates the insupportable proposition that was implicit in its arguments all along: that *every* large deposit of low-priced securities required a SAR filing. The SEC cites no support for this statement and, while it may be the logical extension of the SEC's red flag theory, it is absurd. Alpine introduced evidence that it filed these SARs *not* because it found that they required reporting but to try to comply with its understanding of FINRA's instructions to report any large microcap security deposit. (*See* Alpine's Motion, at 24.)

Second, the SEC agrees that there can be no liability for a "late" filing if the filing is not required, but insists *the Court determined these were required filings based on the "objective*

---

[25] Had the SEC tried to present such evidence, Alpine can and would have rebutted it, including because a sale shortly after a deposit is a normal transaction in the securities business, particularly for a microcap stock. But, Alpine is not required to rebut an insufficient showing. *See Giannullo*, 322 F.3d at 140–41.

*test.*"  (Opp. at 15.)  According to the SEC, therefore, the Court reached a conclusion that the Court expressly declined to reach: whether the filings at issue were required.  (Opinion at 46.)

The SEC also obfuscates, arguing that the Court correctly ruled that Alpine does not have an indeterminate amount of time to conduct a review of a transaction and file SARs.  That is not the issue.  The issue is the point from which the 30-day SAR filing requirement runs, and the Court erroneously calculated the start of the timeframe for filing from the date the transaction occurred.  FinCEN's guidance clearly states that the "time-period does not begin" until "*a determination is made* that the transaction under review is suspicious within the meaning of the SAR regulation."  (Opinion at 72-73 (emphasis added)).[26]  Alpine submitted evidence establishing that (a) the AML officer at the time of the transaction did not consider the transactions suspicious; (b) Alpine elected to conduct a look-back of those transactions; and (c) the SARs at issue were filed within 30 days of the date a determination was made to file a SAR.[27]  Neither the SEC nor the Court cited any contrary evidence as to when a determination was made to file the SARs.  (Opinion at 74.)  Summary judgment should have been denied.

### POINT IV
### THE SEC DID NOT ASSERT A CLAIM FOR FAILURE TO PRODUCE

The SEC argues that "[t]he Court correctly ruled that 31 C.F.R. § 1023.320(d) requires broker-dealers like Alpine to maintain and produce a SAR's supporting documentation at the request of the SEC."  (Opp. at 15-16.)  But the SEC did not assert a claim based on a failure to produce; the SEC only brought a claim for an alleged failure to "maintain and/or retain SAR documentation."  (Complaint ¶¶ 42, 43, 46.)  Counsel for the SEC confirmed *on the record* that

---

[26]   This standard, with determination as the relevant date as opposed to the transaction itself, developed because firms were concerned that they would not be able to analyze all of the transactions that generated potentially suspicious activity alerts the moment within a 30 day period.  The history of the development of this guidance, and its impact on the Court's analysis, are described by Alpine's expert, and we again urge the Court to consider Ms. Loew's declaration.
[27]   *See* Alpine's Add'l SOF, Nos. 64-75.

the scope of its claim was limited to an alleged failure to maintain support files and stated that the claim would be eliminated upon production of the files, stating: "if a supporting file is finally located and produced," then "obviously it would eliminate the one from table E." (Hr'g Tr. 20:2-17, Nov. 2, 2017.)

*The SEC does not even address its own statements in its Opposition.*  A statement by an attorney during a proceeding "binds his client," "absent egregious circumstances."  *Haywood v. Bureau of Immigration*, 372 F. App'x 122, 124 (2d Cir. 2010).[28]  The grant of summary judgment on the SEC's unpled claim was improper.

## CONCLUSION

For the foregoing reasons, and those more specifically stated in Alpine's opening Memorandum of Law, Alpine's Motion for Reconsideration should be granted.

DATED this 25th day of May 2018.

/s/Maranda E. Fritz
Maranda E. Fritz
**THOMPSON HINE**
335 Madison Avenue, 12th Floor
New York, New York 10017-4611
Tel. 212.344.5680
Fax 212.344.6101
Email: Maranda.Fritz@thompsonhine.com

Brent R. Baker (BB 8285)
Aaron D. Lebenta (Pro Hac Vice)
Jonathan D. Bletzacker (Pro Hac Vice)
**CLYDE SNOW & SESSIONS**
One Utah Center
201 South Main Street, Suite 1300
Salt Lake City, Utah 84111-2216
Telephone 801.322.2516
Facsimile 801.521.6280

---

[28] *See generally Freeport-McMoRan Oil & Gas Co. v. F.E.R.C.*, 962 F.2d 45, 47 (D.C. Cir. 1992).

Email: brb@clydesnow.com
        adl@clydesnow.com
        jdb@clydesnow.com

*Attorneys for Defendant*
*Alpine Securities Corporation*

4850-9714-3398.1