ZACHARY T. CARLYLE
carlylez@sec.gov
TERRY R. MILLER
millerte@sec.gov
SECURITIES AND EXCHANGE COMMISSION
1961 Stout Street, 17th Floor
Denver, Colorado 80294
(303) 844-1000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | **17-cv-4179-DLC** |
| Plaintiff, | |
| - against - | **ECF CASE** |
| ALPINE SECURITIES CORPORATION, | |
| Defendant. | |

**PLAINTIFF UNITED STATES SECURITIES AND EXCHANGE
COMMISSION'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT ON LIABILITY**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................1

BACKGROUND ........................................................................................................................2

A.      Alpine's Responsibilities as a Clearing Broker .................................................3

B.      Common Abuses of Penny Stocks .......................................................................3

        1.      Penny Stocks and Micro Cap Stocks ......................................................4

        2.      Unregistered Sales of Securities .............................................................4

        3.      Other Penny Stock Abuses and Suspicious Conduct ............................6

ARGUMENT .............................................................................................................................8

I.      THE DEFICIENT SARs WERE MANDATORY REPORTS AND
        OMITTED REQUIRED INFORMATION ........................................................9

        A.      The Deficient SARs were Mandatory Reports ........................................9

        B.      The Deficient SARs Omit Required Information ...................................12

        1.      Basic Customer and Suspicious Information..........................................13

        2.      Criminal or Regulator History ...............................................................13

        3.      Shell Company or Derogatory History of Stock....................................14

        4.      Stock Promotion......................................................................................14

        5.      Unverified Users .....................................................................................14

        6.      Low Trading Volume...............................................................................14

        7.      Foreign Involvement ...............................................................................15

II.     THE UNREPORTED LIQUIDATIONS WERE PART OF SUSPICIOUS
        DEPOSIT-AND-SELL PATTERNS ................................................................15

III.    EACH OF THE LATE-FILED SARs WAS UNTIMELY................................17

IV.     ALPINE FAILED TO MAINTAIN AND PRODUCE THE MISSING FILES ...............18

CONCLUSION..........................................................................................................................21

i

# TABLE OF AUTHORITIES

**Supreme Court Opinions**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ................................................................ 8

**Federal Court Opinions**

Curtis v. Cenlar F.S.B., No. 13cv3007 (DLC), 2014 WL 5778046 (S.D.N.Y. Nov. 5, 2014) ...... 8

Jeffreys v. City of N.Y., 426 F.3d 549 (2d Cir. 2005) ................................................................ 8

Salahuddin v. Goord, 467 F.3d 263 (2d Cir. 2006) ................................................................ 8

SEC v. Lyon, 605 F. Supp. 2d 531 (S.D.N.Y. 2009) ................................................................ 16

**United States Code**

15 U.S.C. § 4 (2012) ................................................................................................................ 5

15 U.S.C. § 5 (2012) ............................................................................................................ 5, 6

15 U.S.C. § 5(a) (2012) ............................................................................................................ 5

15 U.S.C. § 17(a) ................................................................................................... 9, 17, 21

15 U.S.C. § 17(a) (2012) ................................................................................... 15, 17, 19, 21

15 U.S.C. § 77d (2012) ............................................................................................................ 5

15 U.S.C. § 77e (2012) ............................................................................................................ 5

15 U.S.C. § 77e(a) (2012) ........................................................................................................ 5

15 U.S.C. § 1023.320 (2012) ............................................................................................. 9, 15

15 U.S.C. § 1023.320(a) (2012) ............................................................................................... 9

15 U.S.C. § 1023.320(a)(2) ...................................................................................................... 9

15 U.S.C. § 1023.320(a)(2)(iv) .............................................................................................. 13

15 U.S.C. § 1023.320(b)(3) .................................................................................................... 18

15 U.S.C. § 1023.320(b)(3) (2012) ........................................................................................ 17

**Rules**

Fed. R. Civ. P. 26(e)(1)(A) ..................................................................................................... 21

Fed. R. Civ. P. 26(g)(1)(A) ..................................................................................................... 21

Fed. R. Civ. P. 56(c) ................................................................................................................. 8

Fed. R. Evid. 406 .................................................................................................................... 16

**Other**

17 C.F.R. § 240.3a51-1 ................................................................................................... 4

17 C.F.R. § 240.15g-1 .................................................................................................... 6

17 C.F.R. § 240.15g-2 .................................................................................................... 4

17 C.F.R. § 240.15g-100 ................................................................................................ 4

31 C.F.R. § 1023.320 ..................................................................................................... 3

31 C.F.R. § 1023.320(a)(1) ............................................................................................ 9

31 C.F.R. § 1023.320(a)(2) ........................................................................................ 1, 2

31 C.F.R. § 1023.320(a)(3) ............................................................................................ 3

31 C.F.R. § 1023.320(b)(3) .......................................................................................... 18

31 C.F.R. § 1023.320(d) .......................................................................................... 10, 20

67 Fed. Reg. 44,048 (July 1, 2002) ............................................................................. 10

67 Fed. Reg. at 44,051 ................................................................................................. 16

Section 5 ......................................................................................................................... 5

Section 1023.320 ............................................................................................................ 3

<u>Section</u> (a ?YEAR?) .................................................................................................... 1

§ 3(a)(51)(A) .................................................................................................................. 4

§ 5 ................................................................................................................................... 5

Plaintiff United States Securities and Exchange Commission (the "Commission") submits this Memorandum of Law in Support of its Motion for Summary Judgment on Liability ("Motion").

## INTRODUCTION

Alpine violated its obligations to report suspicious activity thousands of times from May 2011 to December 2015. Alpine systematically filed deficient suspicious activity reports ("SARs") that omitted required information, failed to file SARs on suspicious liquidations, filed untimely SARs, and failed to maintain and produce required supporting documents. Each of these violations is undisputed based upon Alpine's own records.

The Commission presented examples of Defendant Alpine Securities Corporation's ("Alpine") violations of Section 17(a) of the Securities Exchange Act ("Exchange Act") and Rule 17a-8 in its Motion for Partial Summary Judgment (Doc. No. 68 "Partial Motion"). Pursuant to the legal standards set forth in the Court's Opinion and Order dated March 30, 2018 (Doc. No.101 "Order"), which granted in part the Partial Motion, the Commission now seeks summary judgment that Alpine violated Section 17(a) and Rule 17a-8 for each of the many SARs and transactions identified below.

Consistent with the Partial Motion, this Motion groups Alpine's violations into four categories: (1) SARs filed by Alpine whose narrative sections lack certain required information from one or more of seven subcategories of red flags, *see* Order at 41-65 ("Deficient SARs"); (2) Alpine's failure to file SARs in connection with liquidations of share positions, *see* Order at 65-69 ("Unreported Liquidations"); (3) untimely SARs, *see* Order at 69-75 ("Late-Filed SARs");

1

and (4) Alpine's failure to maintain and produce required supporting documents upon request, *see* Order at 75-77 ("Missing Support Documents").

The Background section below describes the penny stock market in which Alpine operates and the common manipulation schemes and suspicious conduct that involve clearing brokers like Alpine. These undisputed facts, together with other indicia of suspiciousness, demonstrate that, at a minimum, Alpine had reason to suspect that penny stock transactions cleared by Alpine described below fell within the mandatory reporting categories in 31 C.F.R. § 1023.320(a)(2). Thus, according to the principles in the Order, Alpine should have recognized and reported in the SARs it filed certain red flags associated with criminal activity in the penny stock market. The Commission is entitled to summary judgment on liability for these violations under a straightforward application of the legal standards in the Order.[1]

## BACKGROUND

This case concerns Alpine's work as a clearing broker. This Background Section explains the practices of a clearing broker and certain ways in which the penny stock market can be abused to provide the context for the assessment of Alpine's conduct under the objective standards set forth in the Order, including whether Alpine's records show that it had reason to suspect criminal activity flowing through its firm for purposes of 31 C.F.R. § 1023.320(a)(2); *see also* Order at 46 n.21.

---

[1] The legal standards set forth in the Order are law of the case notwithstanding Alpine's efforts to challenge the Order. Because the Order is law of the case, there is no need to defend or justify the rulings in the Order in this Motion and, to the extent necessary, the Commission refers to its prior briefs and papers for the legal rationale supporting the legal standards in the Order.

2

### A.      Alpine's Responsibilities as a Clearing Broker

Alpine's primary business is clearing services for microcap securities traded in over-the-counter market. Order at 3. Clearing brokers like Alpine have relationships with introducing brokers, which are firms that provide investing advice or counsel to an investor, but do not actually handle the transactions. SOF 1.[2] Clearing brokers execute the trades on the introducing broker's instructions. SOF 1. Clearing firms usually maintain records of all trading, receive and deliver funds pursuant to instructions, and issue trade confirmations and statements. SOF 2.This type of relationship allows smaller firms that may not have the resources to implement their own clearing operations to enter into and participate in the securities markets. SOF 2.

Notwithstanding their relationships with introducing brokers, clearing brokers must comply with their own obligations imposed by 31 C.F.R. § 1023.320. Clearing firms cannot delegate or allocate away its BSA responsibilities. 31 C.F.R. § 1023.320(a)(3) ("The obligation to identify and properly and timely to report a suspicious transaction rests with each broker-dealer involved in the transaction…."); Order at  44; *see also* SOF 3 As a clearing firm for many microcap securities transactions, Alpine was obligated to consider the known risks and abuses in the penny stock and microcap markets when discharging its obligations imposed by Section 1023.320. SOF 4.

### B.      Common Abuses of Penny Stocks.

The SARs in this matter mainly relate to large deposits of low-priced securities or "penny stocks." These types of deposits may involve fraud, market manipulation, and other violations of securities laws. SOF 4.

---

[2] "SOF" refers to the statement of material facts in the Commission's Rule 56.1 Statement of Material Facts in Support of Its motion for Summary Judgment on Liability

### 1.    Penny Stocks and Micro Cap Stocks.

The Exchange Act and implementing rules defines a penny stock as an equity security that is not traded on a national securities exchange and satisfies other criteria, such as price and the issuer's tangible assets. Exchange Act Rules 3a51-1, 15g-1 through 15g-6 [17 C.F.R. § 240.3a51-1, 17 C.F.R. §§ 240.15g-1 through 240.15g-6]. Penny stocks generally are those securities with low prices that are not traded on an exchange or quoted on NASDAQ; instead, they typically are quoted over-the-counter ("OTC").[3] SOF 6. As a general matter, the companies issuing these stocks typically do not meet requirements necessary to be listed on an exchange, such as meeting thresholds for the number of publicly traded shares and having those shares trade above a minimum price. SOF 7.

Penny stocks should be distinguished from small-cap, or microcap, stocks, that is, stocks with a small market capitalization. SOF 8. A penny stock is one that trades at a low price and trades over-the counter. *Id*. On the other hand, the definition of a microcap stock is based only on the company's market capitalization, that is, the total value of the company's stock. SOF 9.

### 2.    Unregistered Sales of Securities.

Section 5 of the Securities Act prohibits the offer or sale of any security unless there is a registration statement in effect as to the security unless an exemption from registration is available. Securities Act of 1933 § 5, 15 U.S.C. § 77e. These exemptions include: private offerings to a limited number of persons or institutions; offerings of limited size; intrastate

---

[3] OTC trading is basically any trading that occurs off an established marketplace. FINRA, Unraveling the Mystery of Over-the- Counter Trading, January 4, 2016. *See also* Hazen, Federal Securities Law, Third Edition, Federal Judicial Center 2011 at p168 (an "over-the-counter transaction is one that takes place through something other than the facilities of an organized securities exchange.").

offerings; and securities of municipal, state, and federal governments. Securities Act of 1933 § 4, 15 U.S.C. § 77d. Because the prohibitions of Section 5(a) apply to any person who directly or indirectly causes the prohibited sales to be carried out, Section 5 applies to Alpine with respect to transaction that Alpine clears. 15 U.S.C. § 77e(a).

Thus, before selling stock in reliance on an exemption, a firm like Alpine must take appropriate steps to ensure that the transaction qualifies for the exemption. SOF 10. Among other things, the firm must ensure that the sale does not involve an issuer, a person in control with an issuer, or an underwriter, with a view to offer or sell the securities in connection with an unregistered distribution. SOF 11. This exemption is available only if a broker is not aware, after a reasonable inquiry, of circumstances indicating that the selling customer is participating in a distribution of securities. *Id*.

Securities Act Rule 144 creates a non-exclusive "safe harbor" from a firm being deemed an underwriter if the securities are sold in compliance with its requirements. An unregistered security that is not freely transferable is considered a "restricted security" if is acquired in a private transaction or is acquired by a control person of the issuer. SOF 12. Firms like Alpine who clear large deposits of low-priced securities also must be aware that Section 5 violations are often associated with large deposits of low-priced securities. SOF 13. In fact, many of the SARs filed by Alpine involved the heightened sensitivity around accounts that historically made deposits of large volumes of low-priced securities. *Id.* Besides the fact that substantial deposits of low-priced securities might involve Section 5 violations, these substantial deposits also may be involved in fraud in the penny stock market, which has long been subject to abusive practices, which are described below.

5

3.        **Other Penny Stock Abuses and Suspicious Conduct.**

Congress enacted the Securities Enforcement Remedies and Penny Stock Reform Act of 1990 ("Penny Stock Reform Act") to help address potential abuses in the penny stock market. Penny Stock Reform Act of 1990, Pub. L. 101-429, 104 Stat. 931 (1990). The accompanying Congressional Statement of Findings stated that "unscrupulous market practices and market participants have pervaded the 'penny stock' market with an overwhelming amount of fraud and abuse." § 502, 104 Stat. at 951

Pursuant to the Penny Stock Reform Act, the SEC adopted rules requiring broker-dealers to provide their customers in penny stocks with information concerning the risks of penny stocks and the specific nature of their penny stock purchases. *See* Exchange Act Rules 3a51-1, 15g-1 through 15g-6 [17 C.F.R. § 240.3a51-1, 17 C.F.R. §§ 240.15g-1 through 240.15g-6]. Among other reasons, Penny stocks are vulnerable to abusive practices, because:

- [T]hey can be sold at a large volume, frequently to unsophisticated investors, generating enormous profits for unscrupulous broker-dealers;

- they are usually issued by smaller, little-known companies that attract little attention outside that generated by the offering broker-dealer; and

- there is no reliable quotation system for the non-NASDAQ OTC market, providing an opportunity for decreased supervision and increased abuse.

SOF 14.

One common abuse of penny stocks is the so-called "pump-and-dump" scheme. This scheme involves thinly traded stocks (penny stocks or microcap stocks). In such a scheme, promoters will tout a thinly-traded microcap stock through false and misleading statements about

the company. They purchase the stock at a low price, and then pump the stock price higher by creating the appearance of market activity. Then they dump the stock to make profits by selling it into the market at the higher price. SOF 15; *see also* Order at 54 ("In a pump-and-dump scheme, conspirators manipulate the price and volume of a particular stock through the dissemination of false and misleading promotional materials.").

Deposits of physical security certificates can also be a sign of suspicious activity. SOF 16. The stock deposits that were reported to have been deposited at Alpine occurred in either physical or electronic form. *Id.* As the clearing firm for the transactions, Alpine dealt with the Depository Trust & Clearing Corporation Company ("DTCC"), which clears and settles nearly all broker-to-broker transactions in the U.S. equities markets. *Id.* The transactions were the subject of Alpine's SARs were handled by one of the DTCC subsidiaries, the Depository Trust Company, the central securities depository subsidiary of DTCC. *Id.*

Deposits of physical certificates representing large amounts of low priced securities have been associated with illegal unregistered distributions. SOF 18. FINRA has noted that red flags involving the deposits of physical certificates include: A customer opens a new account and delivers physical certificates representing a large block of thinly traded or low-priced securities, or a customer has a pattern of depositing physical share certificates, immediately selling the shares and then wiring out the proceeds of the resale. *Id.*

Regardless of whether low-priced securities are in physical form or in electronic form, the fact that the stocks are low-priced makes them susceptible to market manipulation and fraud. SOF 19.

## ARGUMENT

Summary judgment is appropriate if the Commission shows that there is no genuine issue as to any material fact and that the Commission is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Once the Commission meets its burden, Alpine must set forth specific facts showing a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). "[C]onclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment." *Curtis v. Cenlar FSB*, No. 13-CV-3007-DLC, 2014 WL 5778046, at *3 (S.D.N.Y. Nov. 6, 2014) (quoting *Ridinger v. Dow Jones & Co. Inc.,* 651 F.3d 309, 317 (2d Cir.2011)). "The mere existence of a scintilla of evidence in support of [Alpine's] position will be insufficient." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005).

The issues below are appropriate for summary judgment because they involve application of objective standards set forth in an Order that is law of the case to Alpine's own documents and information. The claims do not involve scienter or materiality, and Alpine employees have confirmed that no transaction specific evidence exists outside of Alpine's documents that could create a genuine issue of material fact. SOF 20-23.

## I.   THE DEFICIENT SARs WERE MANDATORY REPORTS AND OMITTED REQUIRED INFORMATION.

In this Motion, the Commission requests summary judgment that for each of the 1,594 "Deficient SARs" summarized in Exhibit 10, *see* SOF 24, Alpine violated Section 17(a) of the Securities Act and Rule 17a-8 because it omitted information required in the Deficient SARs under Section 1023.320(a). The Court previously ordered that summary judgment was proper where Alpine omitted from SARs seven subcategories of required information assuming that

8

Section 1023.320 required Alpine to file the SAR. Order at 65. Under the standard set forth in the Order, summary judgment on liability is proper for each of the Deficient SARs if the Commission now shows (1) Section 1023.320 required Alpine to report the underlying transaction; and (2) the Deficient SARs omitted one or more red flags. Order at 46-47.

### A.    The Deficient SARs were Mandatory Reports

Section 1023.320 mandates that "[e]very broker or dealer in securities within the United States … shall file with FinCEN, to the extent and in the manner required by [Section 1023.320], a report of any suspicious transaction relevant to a possible violation of law or regulation." 31 C.F.R. § 1023.320(a)(1). SARs on transactions "conducted by, at, or through" a broker-dealer like Alpine are mandatory ("Mandatory Reports") if the (1) transaction involves or aggregates assets or funds of at least $5,000; and (2) the firm knows, suspects, or has reason to suspect that the transaction, or a pattern of transaction of which the transaction is a part, fits into one or more of the four categories set forth in Section 1023.320(a)(2). The first element is satisfied for each of the Deficient SARs because each of the underlying transactions involved at least $5,000. SOF 25.

As the Court explained in the Order, the second element can be satisfied under an objective standard—namely whether the broker-dealer has reason to suspect that the transaction requires reporting under the rule. *See* FinCEN, Amendment to the Bank Secrecy Act Regulations--Requirement that Brokers or Dealers in Securities Report Suspicious Transactions, 67 Fed. Reg. 44,048, 44,053 (July 1, 2002) ("FinCEN Section 1023.320 Notice") ("This reporting standard reflects a concept of due diligence in the reporting requirement."). "The reason-to-suspect standard means that, on the facts existing at the time, a reasonable broker-

dealer in similar circumstances would have suspected the transaction was subject to SAR reporting." *Id.*

The issue here of whether a reasonable broker-dealer in circumstances similar to Alpine would have suspected that the transactions underlying the Deficient SARs were subject to reporting may be resolved on summary judgment because "the facts existing at the time" of the transaction are contained in the SARs themselves and the supporting documentation. No extrinsic facts exist that are material to the issue because the SAR rules required Alpine to document facts relevant to its SAR filings, 31 C.F.R. § 1023.320(d), and no Alpine employee has an independent recollection of specific transactions sufficient to offer admissible testimony about facts existing at the time of the transactions that defused suspicion created from facts contained in Alpine's own records. SOF 20-23.

Alpine's records show that each of the Deficient SARs was a Mandatory Report because Alpine had reason to suspect that each transaction involved the use of Alpine to facilitate criminal activity. First, the transactions underlying each of the Deficient SARs involved a large deposit of low-priced securities. Because stock cannot be sold on a large scale and the price cannot be manipulated without first placing the securities into the financial system through a broker-dealer like Alpine, a large deposit of low priced securities is a necessary step to unregistered securities offerings or market manipulation. SOF 26. A large deposits of low-priced securities provides a broker-dealer a reason to suspect an unregistered offer or sale of securities SOF 27. These deposits also provide a broker-dealer a reason to suspect pump-and-dump and other manipulation schemes, SOF 28. Low-priced and thinly traded securities have long been

subject to abusive practices known to broker-dealers like Alpine. SOF 29. Alpine had actual

notice that FINRA had defined a large deposit of low-priced securities as suspicious. SOF 30.

In addition to large deposits of low-priced securities, each of the transactions reported in

the Deficient SARs involved one or more indicia of suspicious activity. Order at 46 ("It would

appear that [proving that a SAR was required to be filed] will not be an onerous task in

connection with the SARs at issue here, each of which reflected an enormous deposit of shares in

a penny stock and, as reflected in Alpine's files, had other indicia of suspicious activity."). A

common sign of suspicious activity includes the red flags described in the Order that appeared in

Alpine's support files. A vast majority of these transactions—1,302 out of the 1,594

transactions—involved one or more of the six subcategories of red flags set forth in the Order

that provided Alpine with reason to suspect criminal activity: criminal or regulatory history

(particularly history involving securities or other financial frauds), involvement a shell company

or derogatory history of stock, evidence of stock promotion history, unverifiable issuers, low

trading volume, and the involvement of foreign entities. SOF 31. As explained in the Order, each

of these facts gave Alpine reason to suspect the transactions involved criminal activity.

Another common sign of suspicious activity is the fact that many of the transactions

involved the same customers. The vast majority of the transactions—1,466 out of 1,594—were

cleared by Alpine for the accounts of just six customers, whom were connected to criminal or

regulatory history involving securities or other financial fraud. SOF 32. For instance, 702 of the

Deficient SARs described deposits made for the account of Customer A, which was tightly

connected to an individual with regulatory history. *Id.* The fact that Alpine reported so many

transactions for the same customers is an additional source of information that gave Alpine even

more reason to suspect suspicious activity in connection with large deposits of low-priced securities.

Most of the transactions involved both types of common indicia of suspicious activity in addition to a large deposit of low-priced securities, and each of them involved at least one of these signs. SOF 32-34. Finally, none of the SARs themselves suggested that Alpine believed the SARs were voluntary or that further investigation had negated the reason to suspect criminal activity. SOF 33; *see also* Order at 45 ("It is noteworthy, however, that none of the three SARs (or any of the SARs at issue on this motion) indicates that it is being filed voluntarily and not because of any legal duty to make a filing.").

In sum, a large deposit of a low-priced security coupled with either suspicious red flags or larger patterns of SARs filed on the same accounts (and often both) gave Alpine reason to suspect that the transactions reported in the Deficient SARs involved criminal activity because a reasonable broker-dealer in similar circumstances would have suspected criminal activity involving the customer depositing the stock. SOF 34. Because Alpine is unable to point to any admissible evidence extrinsic to the Deficient SARs or supporting documents to create an genuine issue of material fact, SOF 20-23, the Commission is entitled to summary judgment that the Deficient SARs were Mandatory Reports under Section 1023.320(a)(2)(iv).

**B.    The Deficient SARs Omit Required Information.**

The 1,594 Deficient SARs each omit information from at least one of the seven subcategories defined by the Court in the Order through the use of exemplars. The omission of required information from the Deficient SARs is summarized as follows.

1.      <u>Basic Customer and Suspicious Information.</u> SARs A, B, and C discussed in the Order illustrate the omission of the "Five Essential Elements" from SAR narratives, including the nature of the customer who placed the deposit orders and the reasons why Alpine believed the transaction was suspicious. Order at 42-47. The 1,105 SARs summarized in Exhibit 3 also lack Basic Customer and Suspicious Information. SOF 35. For the same reasons set forth in the Order, these SARs are deficient as a matter of law.

2.      <u>Criminal or Regulator History.</u> SARs D, E, and F discussed in the Order illustrate the omission of relevant regulatory or criminal history of the customer. Order at 47-50. The 625 SARs summarized in Exhibit 4 also omit relevant regulatory or criminal history that appears in Alpine's own records. SOF 36. For the same reasons set forth in the Order, these SARs are deficient as a matter of law. Order at 48 ("[A]ssuming that the SEC has established that Alpine had a duty to file each of these SARs, it has easily carried its burden of showing that each of them was deficient as a matter of law for its omission of the criminal or regulatory history of a related party.").

3.      <u>Shell Company or Derogatory History of Stock.</u> SARs A, C, and G discussed in the Order illustrate SARs that fail to state that a shell company was involved in a transaction or omit derogatory history of a stock. Order at 50-53. The 241 SARs summarized in Exhibit 5 also lack this information, which appears in Alpine's own records. SOF 37. For the same reasons set forth in the Order, these SARs are deficient as a matter of law. Order at 51 (Assuming the SARs are Mandatory Reports, "the SEC has carried its burden to show that the omission of the customer information from the SARs at issue here was a violation of law.").

4.      Stock Promotion. SARs G, H, and J discussed in the Order illustrate the omission of relevant stock promotion. Order at 53-55. The 55 SARs summarized in Exhibit 6 also omit evidence of stock promotion that appears in Alpine's own records. SOF 38. The Commission is entitled to summary judgment on these SARs for the same reasons the "SEC is entitled to summary judgment on SARs G, H, and J." Order at 55.

5.      Unverified Issuers. SARs G, K, and L discussed in the Order illustrate the omission of critical suspicious information about the issuers. Order at 55-57. The 42 SARs summarized in Exhibit 7 also omit critical information about issuers that appears in Alpine's own records. SOF 39. The Commission is entitled to summary judgment on these SARs for the same reasons the "SEC is entitled to summary judgment as to SARs G, K, and L with respect to the omissions regarding the issuers." Order at 57.

6.      Low Trading Volume. SARs M, N, and P discussed in the Order illustrate the omission of low trading volume in the deposited shares described in the SARs. Order at 57-60. The 707 SARs summarized in Table 8 also reported a deposit of a very large quantity of a penny stock, and Alpine's own records showed the low trading volumes. SOF 40. The Commission is entitled to summary judgment on these SARs for the same reasons the "[t]he SEC has demonstrated its entitlement to summary judgment as to SARs M, N, and P." Order at 59.

7.      Foreign Involvement. SARs A, C, and H discussed in the Order illustrate the failure to disclose the involvement of a foreign individual or entity in the reported transaction. Order at 60-64. The 298 SARs summarized in Table 9 also omitted involvement of foreign entities, facts which appeared in Alpine's own records. SOF 41. The Commission is entitled to summary judgment on these SARs for the same reasons the "the SEC is entitled to summary

14

judgment on SARs A, C, and G on the ground that Alpine failed to include information regarding the transaction's foreign connections in the SAR narrative." Order at 64.

* * * *

Accordingly, because there is no genuine issue as to any material fact that each of the Deficient SARs is a Mandatory Report and each omitted one or more of the information required by Section 1023.320, the Commission is entitled to summary judgment that Alpine committed 1,594 violations of Section 17(a) and Rule 17a-8.

## II.   THE UNREPORTED LIQUIDATIONS WERE PART OF SUSPICIOUS DEPOSIT-AND-SELL PATTERNS.

The Commission also requests summary judgment that Alpine violated Section 17(a) and Rule 17a-8 for each of the "Unreported Liquidations" summarized in Exhibit 11, *see* SOF 42, because Alpine failed to file SARs on liquidation transactions that were part of a suspicious pattern of transactions. The Court previously ordered that summary judgment was proper where the Commission could show that the suspicious deposit-and-sale patterns exist. Order at 66. These suspicious patterns consist of a customer's deposit of large number of shares followed closely by the customer's sale of a large number of shares of the same stock. Order at 66-67 (citing FinCEN Section 1023.320 Notice, 67 Fed. Reg. at 44,051 and *SAR Activity Review*, Issue 15, at 24-25). The Commission is entitled to summary judgment on each of the Unreported Liquidations "to the extent it proves that such a pattern occurred and that Alpine failed to file SARs reflecting that trading." Order at 66.

Alpine failed to file SARs on the 3,568 Unreported Liquidations, each of which were part of a pattern involving one or more large deposits of low-priced securities, a SAR filed by Alpine on the deposits, followed shortly by the Unreported Liquidations—sales by the same customer of

the same recently deposited stock. SOF 42-45. In approximately 40% of the Unreported

Liquidations, the liquidation happened so quickly that the stock was already liquidated before

Alpine even filed a SAR on the deposit. SOF 46.

These patterns are displayed in Exhibit 11 attached to the Motion. Exhibit 11 was created

by matching information from SARs filed by Alpine, which provided deposit information, with

details about sales derived from trade blotters produced by Alpine. SOF 42-43. Deposits and

sales were tracked and grouped by each specific customer, stock, and dates, with each separate

group of related transactions constituting a deposit-and-sale pattern within a discrete period of

time nearly identical to those presented previously and discussed in the Order. The pertinent

aspects of the patterns—customers, volume and value of stock deposited and sold, and dates of

transactions and SAR filings—are detailed in Exhibit 11. *Id.* For the same reasons set forth in the

Order, the SAR rule required supplemental reporting on the sales listed in Exhibit 11. Order at 68

Alpine did not file SARs on the liquidations listed in Exhibit 11. SOF 45. Alpine's

routine AML practice offers further evidence that Alpine failed to file SARs on the Unreported

Liquidations. Alpine's AML review focused on deposits. SOF 47. In contrast, Alpine routinely

cleared liquidations without a systematic AML review and did not have a system in place that

would alert the AML department when a customer ordered the liquidation of stock shortly after

Alpine either filed a SAR on a large deposit of the stock or was in the act of preparing the SAR.

SOF 47. Alpine's routine practice of clearing liquidations without systematically reviewing them

for connections to suspicious deposit patterns or for supplemental reporting is additional

evidence that Alpine did not file SARs on the Unreported Liquidations. Fed. R. Evid. 406; *SEC*

*v. Lyon*, 605 F. Supp. 2d 531, 543 (S.D.N.Y. 2009) ("Evidence of an organization's routine

practice is admissible provided the proponent of the evidence establishes that the organization acted with "regularity over substantially all occasions or with substantially all other parties with whom the [organization] has had similar business transactions.").

Because there is no genuine issue as to any material fact that the Unreported Liquidations were part of suspicious patterns described in the Order and, therefore, required supplemental reporting, and there exists no issue of fact that Alpine failed to report the liquidations in any manner, the Commission is entitled to summary judgment that Alpine committed 3,568 violations of Section 17(a) and Rule 17a-8.

## III.    EACH OF THE LATE-FILED SARS WAS UNTIMELY.

The Commission next requests summary judgment that for each of the 251 "Late-Filed SARs" summarized in Exhibit 12, *see* SOF 48, Alpine violated Section 17(a) and Rule 17a-8 because theses Late-Filed SARs were untimely under Section 1023.320(b)(3). The Court previously ruled that the 30-day time period in which broker-dealers must file SARs begins to run when the broker-dealer receives information sufficient to make a determination that a SAR must be filed. Order at 73-74; 31 C.F.R. § 1023.320(b)(3). Applying this rule to the exemplars submitted in the Partial Motion, the Court granted summary judgment on each of the exemplars because (1) they were filed around six months after the deposit described in the SAR, and (2) Alpine did not identify any recently-acquired information that converted the transaction from "one which no SAR was required to one that required a SAR." Order at 74-75. The Late-Filed SARs presented with the Motion are untimely for the same reasons and the failure is apparent on the face of the SARs and summary judgment, therefore, is appropriate. SOF 48.

Alpine submitted many of the Late-Filed SARs to FinCEN as a part of a self-described "lookback" review it conducted in April and May 2012. SOF 49-50. In the narrative section of some of these Late-Filed SARs, Alpine stated that the deposit occurred over a range of dates, with the end date of the range falling within the 30-day window allowed by Section 1023.320(b)(3). SOF 51. However, the deposit did not actually occur on this end date. No deposit occurs over the course of months. Instead, the first date of the date range was the actual date of the deposit, and the second date of the range was the date that Alpine determined the transaction was suspicious. SOF 51-52. Further, Alpine relied only on information available at the time of the deposit when determining to file the Late-Filed SARs during the lookback and Alpine has no legitimate explanation for the late filings. SOF 50.

There is no genuine issue of material fact that the Late-Filed SARs are untimely. For the same reasons the Court granted summary judgment on the late-filed SARs in the Order (at p. 75), the Commission is entitled to summary judgment on that Alpine committed 251 violations of Section 17(a) and Rule 17a-8 for each of these Late-Filed SARs.

## IV.    ALPINE FAILED TO MAINTAIN AND PRODUCE THE MISSING FILES.

Finally, the Commission requests summary judgment that for each of the 496 "Missing Support Documents" summarized in Exhibit 17, SOF 53, Alpine violated Section 17(a) and Rule 17a-8 because it failed to produce the Missing Support Documents upon request by the Commission in 2016. The Court previously ruled that Section 1023.320 requires Alpine to maintain SAR supporting documents for five years and to produce such records at the request of a federal regulatory agency including the SEC. Order at 75-76 (citing 31 C.F.R. § 1023.320(d)). According to the Order, the Commission is entitled to summary judgment on the Missing

18

Support Documents if it can show that Alpine failed to produce them upon request during the Commission's investigation in 2016. Order at 77 ("Alpine was required to produce the files when they were requested in 2016.").

The Commission subpoenaed the Missing Support Documents, among other things, in an investigatory subpoena served in June 2015, and by emails of January 14, February 19, and March 8, and August 8, 2016. SOF 55. The Commission searched for the requested documents several times and requested them several times from Alpine. SOF 56. Alpine's counsel produced some supporting documents, but failed to produce many others. SOF 57. On November 15, 2016, counsel for Alpine explained during a telephone call that some missing support documents "simply don't exist" and that Alpine was trying to gather and organize others. *Id.*

Alpine has not been able to identify evidence that it produced the Missing Support Documents in 2016 in response to the Commission's request. Alpine failed to identify any of the Missing Support Documents by Bates number or other means in its discovery responses served on November 17, 2017. SOF 58. Alpine argued in response to the Partial Motion that "Alpine … Has Produced All Support Files at Issue to the SEC," but later could not testify that the documents were actually produced to the Commission. SOF 59. Alpine could only testify that it gave its attorneys access to the files. *Id.*

The Alpine employee who stated in a declaration in support of Alpine's opposition to the Partial Motion that "I believe that these files have been previously produced to the SEC….I have again copied the supporting files of the SARs listed on Table E and made them available to Alpine's legal counsel," Doc. No. 88-1 ¶¶ 44-45, later testified that, in fact, she has no personal knowledge that the documents were produced to the Commission. SOF 59.

19

In response to Alpine's claim that it gathered the Missing Support Documents for its counsel in 2016, which was asserted for the first time in response to the Partial Motion, the Commission served an interrogatory asking Alpine to identify by Bates number each document Alpine contends is "supporting documentation" within the meaning of 31 C.F.R. § 1023.320(d) for each of the SARs identified by the Commission as Missing Support Documents. In its responses served on March 28, 2018, Alpine failed to identify any of the Missing Documents by Bates number or otherwise. SOF 60. Two days later, on March 30, the Court suggested that Alpine could eliminate this dispute by identifying the Missing Support Documents by Bates number:

> Of course, the exchange of pretrial interrogatories between the parties may eliminate this dispute with the identification by Alpine by Bates number or otherwise of the specific documents it asserts that it provided to the SEC in 2016 that support these five SARs.

Order at 77. Alpine did not do so. It made no attempt to supplement its responses to interrogatories or otherwise identify documents showing that it produced the Missing Support Documents upon request in 2016 in response to the Court's suggestion. Assuming Alpine's compliance with Fed R. Civ. P. 26(e)(1)(A) (incomplete or incorrect discovery responses must be supplemented) and Fed. R. Civ. P. 26(g)(1)(A) (certification that disclosures are complete and correct as of the time they are made), Alpine cannot identify the Missing Support Documents in the documents it produced in 2016 by Bates number or otherwise.

There is no genuine issue of material fact that Alpine failed to produce the Missing Support Documents upon request in 2016. For the same reasons stated in the Order (at p. 75), the Commission is entitled to summary judgment on that Alpine committed 496 violations of Section 17(a) and Rule 17a-8 for each of these Missing Support Documents.

## **CONCLUSION**

For the reasons above, the Commission is entitled to summary judgment that Alpine violated Section 17(a) and Rule 17a-8 as follows: 1,594 times for Deficient SARs; 3,568 times for Unreported Liquidations; 251 for Late-Filed SARs; and 496 times for Missing Support Documents.

Respectfully submitted this 13th day of July, 2018.

*/s/ Terry R. Miller*
Zachary T. Carlyle (*pro hac*)
Terry R. Miller (*pro hac*)
Attorneys for Plaintiff
UNITED STATES SECURITIES AND
EXCHANGE COMMISSION

21

## CERTIFICATE OF SERVICE

I certify that on July 13, 2018, a copy of the foregoing document was served by ECF upon the following:

Brent R. Baker
Aaron D. Lebenta
Jonathan D. Bletzacker
CLYDE SNOW & SESSIONS
One Utah Center, 13th Floor
201 South Main Street
Salt Lake City, Utah 84111-2216

Maranda E. Fritz
Thompson Hine LLP (NYC)
335 Madison Avenue, 12th Floor
New York, NY 10017

*Counsel for Alpine Securities Corporation*

/s/ Marla J. Pinkston
Marla J. Pinkston