ZACHARY T. CARLYLE
carlylez@sec.gov
TERRY R. MILLER
millerte@sec.gov
SECURITIES AND EXCHANGE COMMISSION
1961 Stout Street, 17th Floor
Denver, Colorado 80294
(303) 844-1000

## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>                                        Plaintiff,<br><br>- against -<br><br>ALPINE SECURITIES CORPORATION,<br><br>                                        Defendant. | **17-cv-4179-DLC**<br><br>**DECLARATION OF L. JAMES LYMAN IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON LIABILITY**<br><br>**ECF CASE** |

I, L. James Lyman, do hereby declare under penalty of perjury, in accordance with 28 U.S.C. § 1746, that the following is true and correct, that I am over 18 years of age and I am competent to testify to the matters stated herein:

1.      I am an attorney in the Division of Enforcement in the Denver Regional Office of the Securities and Exchange Commission (the "SEC"). As part of my job duties, I am responsible for investigating securities laws violations.

2.      My investigations generally include sending subpoenas, taking testimony, and conducting other investigative activities, as well as drafting internal legal analyses and preparing cases for litigation. I was assigned to investigate the above captioned matter.

3.      I learned the following facts through the course of my investigation.

4.      The SEC served an investigatory subpoena on Alpine Securities Corporation

("Alpine") on June 18, 2015, requesting production of, among other things: "All documents and communications relating to Suspicious Activity Reports ('SARs') filed by you during the time period, including but not limited to all SARs [and] investigative or other supporting files." ("Subpoena").  Alpine produced roughly 987,000 documents in response to the Subpoena.

5.        By emails of January 14, February 19, and March 8, 2016, I provided Alpine's counsel with specific lists of SARs for which production of supporting documents should be prioritized.  Alpine produced what was purported to be the requested supporting documents between February and May 2016.

6.        I am familiar with the spreadsheet disclosed by the Commission in this action on September 29, 2017, referred to as "Table E." Table E lists the SARs for which Alpine failed to identify and/or produce supporting documents as of the date of the Complaint in this action, as further described below.

7.        To determine the documents on Table E, between May 2016 and November 2016, I—and individuals working under my direction and supervision—undertook the following steps:

     a. Each SAR produced by Alpine contained a "Filing Name" that included the customer name, the date of the deposit, and the ticker symbol.

     b. A search was electronically conducted of the documents produced by Alpine using the same Filing Name.  For many documents, this search would find the supporting document file.

     c. If this search did not find the supporting document file, I would search for documents containing both the ticker symbol and the customer name or account number.  Each document that resulted from the search was then reviewed to determine if it was the supporting document file for the

specific SAR.

d.   If a support document could not be found after conducting steps b and c, the document was marked electronically to indicate that the supporting file could not be found.

e.   On behalf of the SEC, I communicated with counsel for Alpine about, among other things, Alpine's response to the Subpoena.  On or around August 8, 2016 I sent Alpine a list of SARs for which no supporting document could be found, or for which the supporting documents appeared to be incomplete (for example, when only a cover page, or a cover email was produced, but not the entire file).  Table E reflects a combined list of the SARs that I identified to Alpine's counsel on August 8, 2016.

f.   Alpine purportedly produced the requested supporting documents on or around October 25, 2016.

g.   Between October 25 and November 10, 2016, I began conducting the searches outlined in steps b and c within the documents produced on or around October 25, 2016, but was unable to locate supporting files for many of the documents.

h.   On November 10, 2016, I wrote to Alpine's counsel explaining the basis for my belief that Alpine had failed to produce all of the requested supporting documents, describing the searches outlined in step g, listing certain SARs for which I was unable to find supporting documents, and asking Alpine to identify by Bates number where within its productions

the support files could be located.

8.      Counsel for Alpine responded to my November 10, 2016, email during a telephone conversation on November 15, 2016. During this conversation, counsel for Alpine explained that some missing support documents "simply don't exist" and that Alpine was trying to gather and organize others.  Alpine's counsel did not identify by Bates number where within its production any of the support files could be located.

9.      After March 30, 2018, I conducted an additional search of documents received by the SEC from Alpine prior to the filing of the Complaint in this matter, including the documents produced on October 25, 2016. The search consisted of the following steps:

    a.  For each SAR listed on Table E, I searched through all documents produced by Alpine in the relevant time period to determine if there was a SAR supporting document that could be identified using a "Filing Name" search as set forth above.

    b.  My search identified approximately 496 SARs for which no SAR supporting document could be found.  A table reflecting these SARs is attached as Exhibit 17.

    c.  Although the SARs listed on Table E were placed on the table because there were indications that the support file was missing or incomplete—as set forth above—for purposes of preparing a final list of documents for which no support file was produced, my analysis gave Alpine credit for those SARs for which at least some support document was produced, even when the support document contained obvious omissions (for example, when the support document consisted only of a spreadsheet, with no

information relating to the customer, the issuer, or the like).  This resulted in the list of SARs on Exhibit 17 being shorter than the list on Table E.

10.     I did not find evidence that Alpine produced supporting documents for the SARs listed in Exhibit 17 to the Motion prior to the filing of the Complaint.

11.     The SEC requested the supporting documents for SARs listed in Table E in 2016, and, to the best of my knowledge, Alpine did not produce the supporting documents for SARs listed in Exhibit 17 in 2016.

12.     On October 18, 2016, I requested from Alpine's counsel via email "Alpine's trade blotter for the May 2011 through December 2015 time period."  I further stated: "We can issue an additional subpoena if necessary, but I am hoping you can give this request priority as it should be routine to gather and produce."  Alpine's counsel replied on October 20, 2016, stating: "We are inquiring with our client regarding your request.  I agree that we do not need to issue another subpoena.  I will get this moving along in short order."

13.     Alpine produced two trade blotters on or around November 18, 2016, Bates numbered ALPINE_SUPP_PROD_SEC 00038251 and ALPINE_SUPP_PROD_SEC 00038252.

14.     I am familiar with the spreadsheet disclosed by the Commission in this action on September 29, 2017, referred to as "Table B."  The liquidations reflected on Table B were determined by undertaking the following steps:

   a.   First, I—and individuals working under my directions and supervision—compiled a list of all SARs Alpine filed (amongst those produced to us) that described the transaction only as a deposit (as opposed to liquidation or other activity) of a security by a customer.

   b.   I then reviewed all of the remaining SARs produced to us by Alpine to

determine if Alpine had filed a SAR relating to the same customer and security that described any transaction other than a deposit.

c. Because Alpine produced SARs based on the customer name or security name, if Alpine had filed a SAR on any activity involving that customer or security, it should have been produced and the absence of such a SAR therefore indicated that no such SAR was ever filed.

d. If Alpine had ever filed a SAR that described a transaction other than a deposit by that customer of that security, I removed all SARs relating to that customer and security from the list of deposit-only SARs for this analysis.  The remaining list reflected deposits for which Alpine had filed a SAR only on the deposit, and not on any other related activity.

e. This list of deposit-only SARs was then compared to the trade blotters to determine if the customer sold shares of the listed security after the date of the deposit.

f. A list of the liquidations that were identified as occurring after the date of the deposit was then compiled, and was reviewed to exclude any liquidation that was less than $5,000 in value.  The remaining list of liquidations over $5,000 for which a SAR was filed on the deposit, but for which no SAR was filed on the liquidation, is reflected on Table B.

I declare under the penalty of perjury that the foregoing is true and correct.

Dated:  July 13, 2018

/s/ L. James Lyman
L. James Lyman

- 6 -