| EXCERPT | EXHIBIT 18 |
|---|---|

# In The Matter Of:

*U.S. Securities and Exchange Commission v.*
*Alpine Securities Corporation*

*Erin Green*
*March 14, 2018*

*Behmke Reporting and Video Services, Inc.*
*160 Spear Street, Suite 300*
*San Francisco, California 94105*
*(415) 597-5600*

Original File 33077Green.txt
**Min-U-Script® with Word Index**

Page 1

```
 1              UNITED STATES DISTRICT COURT
 2              SOUTHERN DISTRICT OF NEW YORK
 3
 4   - - - - - - - - - - - - - - -
 5   UNITED STATES SECURITIES    )
 6   AND EXCHANGE COMMISSION,    )
 7         Plaintiff,            )   CASE NO.
 8   vs.                         )   17-cv-4179-DLC
 9   ALPINE SECURITIES           )
10   CORPORATION,                )
11         Defendant.            )
12   - - - - - - - - - - - - - - -
13
14
15         VIDEOTAPED DEPOSITION OF ERIN GREEN
16              WEDNESDAY, MARCH 14, 2018
17
18
19
20        BEHMKE REPORTING AND VIDEO SERVICES, INC.
21            BY:  TERI HANSEN CRONENWETT, CRR, RMR
22                   UTAH LICENSE NO. 91-109812-7801
23                      160 SPEAR STREET, SUITE 300
24                   SAN FRANCISCO, CALIFORNIA 94105
25                                   (415) 597-5600
```

Page 2

```
 1
 2
 3
 4
 5
 6
 7      Videotaped Deposition of ERIN GREEN, taken on
 8  behalf of the PLAINTIFFS, at the offices of Clyde,
 9  Snow & Sessions, One Utah Center, 201 South Main
10  Street, Suite 1300, Salt Lake City, Utah, 84101,
11  commencing at 9:03 A.M., MARCH 14, 2018, before
12  Teri Hansen Cronenwett, Certified Realtime Reporter,
13  Registered Merit Reporter, and Utah CSR License No.
14  91-109812-7801, pursuant to Notice of Taking
15  Deposition.
```

Page 3

```
 1  APPEARANCES OF COUNSEL:
 2  FOR PLAINTIFF:
 3      U.S. SECURITIES AND EXCHANGE COMMISSION
 4      BY:  TERRY R. MILLER, ATTORNEY AT LAW
 5           ZACHARY T. CARLYLE, ATTORNEY AT LAW
 6      1961 Stout Street, 17th Floor
 7      Denver, Colorado  80294
 8      Telephone: (303) 844-1000
 9      Email:  millerte@sec.gov
10              carlylez@sec.gov
11
12  FOR DEFENDNAT ALPINE SECURITIES:
13      THOMPSON HINE
14      BY: MARANDA E. FRITZ, ATTORNEY AT LAW
15      335 Madison Avenue, 12th Floor
16      New York, New York 10017
17      Telephone: (212) 344-5680
18      Email: maranda.fritz@thompsonhine.com
19
20      NUMMI & ASSOCIATES PA
21      BY: RICHARD NUMMI, ATTORNEY AT LAW
22      213 49th Avenue North
23      St. Petersburg, Florida 33703
24      Telephone: (813) 727-3673
25      Email:  rnummi@mac.com
```

Page 4

```
 1  APPEARANCES OF COUNSEL - (CONTINUED):
 2  FOR DEFENDNAT ALPINE SECURITIES AND THE WITNESS:
 3      CLYDE SNOW & SESSIONS
 4      BY: BRENT R. BAKER, ATTORNEY AT LAW
 5          AARON D. LEBENTA, ATTORNEY AT LAW
 6      One Utah Center, 13th Floor
 7      201 South Main Street
 8      Salt Lake City, Utah 84111
 9      Telephone: (801) 322-2516
10      Email: brb@clydesnow.com
11             adl@clydesnow.com
12
13  ALSO PRESENT:
14      LANCE HARRISON, LEGAL VIDEOGRAPHER
```

Page 5

```
                        INDEX
WEDNESDAY, MARCH 14, 2018
ERIN GREEN                                          PAGE
    Examination by MR. CARLYLE                         8
P.M. SESSION                                          94
    Examination resumed by MR. CARLYLE                94
    Examination by MR. LEBENTA                       144
    Further Examination by MR. CARLYLE               146

                        -0O0-


        QUESTIONS WITNESS INSTRUCTED NOT TO ANSWER:
                    PAGE        LINE
                    105         22-23
                    106         10-11
                    147         11-14
```

Page 6

```
                    CONFIDENTIAL EXHIBITS
                        ERIN GREEN
Number              Description                     Page
Exhibit 32    E-mail, 8-10-12, from Leia Farmer
              to Erin Zipprich and others
              - 2 pages                               71

Exhibit 33    E-mail, 7-27-12, from Leia Farmer
              to Mandee Jacob and others
              - 3 pages                               81

Exhibit 34    E-mail, 6-21-12, from Leia Farmer
              to Erin Zipprich, and SAR SOP
              - 4 pages                               84

Exhibit 35    E-mail, 5-23-14, from Erin
              Zipprich to Chelsea Bond and others
              - 26 pages                              94

Exhibit 36    Declaration of Erin Zipprich
              - 8 pages                               97
```

Page 7

WEDNESDAY MARCH 14, 2018; 9:03 A.M.

P R O C E E D I N G S

THE VIDEOGRAPHER: Okay. We're on record. Here begins DVD No. 1 in the deposition of Erin Green in the matter of Security and Exchange Commission versus Alpine Securities Corporation, in the United States District Court, Southern District of New York, Case No. 17-CV-4179-DLC. Today's date is March 14th. The time is 9:03 a.m.

My name is Lance Harrison. I'm the videographer contracted by Behmke Reporting. Today's deposition is being held at the offices at 201 South Main, Suite 1300. Deposition was noticed by Zachary Carlyle, from Esquire Security and Exchange Commission.

Counsel, will you please identify yourselves and the court reporter will swear in the witness.

MR. CARLYLE: Sure, Zachary Carlyle for the Securities and Exchange Commission.

MR. MILLER: Terry Miller for the Securities and Exchange Commission.

MR. LEBENTA: Aaron Lebenta with Clyde Snow and Sessions for the witness and for the defendant Alpine Securities Corporation.

MS. FRITZ: Maranda Fritz for Alpine.

MR. NUMMI: Richard Nummi for Alpine.

Page 8

ERIN GREEN, called as a witness at the instance of the plaintiff, having been first duly sworn, was examined testified as follows:

EXAMINATION

BY MR. CARLYLE:

Q. Good morning, Ms. Green.

A. Good morning.

Q. As we just mentioned, my name's Zach Carlyle, and I'm one of the attorneys representing the Securities and Exchange Commission in this matter against Alpine Securities Corporation. Do you understand that you are under oath today?

A. I do.

Q. Okay. And to testify today is the same exactly as if you were testifying in court?

A. I do, yeah.

Q. And do you also understand that you are being videotaped today and your testimony is being transcribed, and that that may be shown at a later time to the court to a jury?

A. Yes.

Q. Okay. Have you given a deposition before?

A. Yes. Not -- not on the record, I believe. But I did about two years ago, in relation to -- was

Page 137

1  the SEC?
2  A.  No.
3     MR. LEBENTA: No, you personally?
4  A.  Not personally, no.
5     MR. LEBENTA: Thank you.
6  Q.  (By Mr. Carlyle) Okay. Did you personally
7  give them to someone else who you understood would
8  produce them to the SEC?
9  A.  Yes. I -- I personally saved them into the
10 location where I was instructed, at what point they
11 would be taken and, you know, passed on.
12 Q.  Okay. Who did you understand would -- would
13 take them and pass them on?
14 A.  I -- I don't think I was -- I was ever told.
15 I wasn't -- I mean, it was limited to give, you know,
16 pull this information and save it into this file.
17 Q.  Okay. Do you have any personal knowledge of
18 whether the documents that you copied in early 2016 were
19 produced to the SEC?
20 A.  No.
21 Q.  Have you -- strike the question. If that was
22 even a question.
23    Paragraph 44, the declaration, you say, "I
24 believe that these files have been previously produced
25 to SEC." What's the basis for that statement?

Page 138

1  A.  The fact that I was involved both times in --
2  in -- in pulling them, and we received two spreadsheets
3  requesting basically all the same information.
4  Q.  Okay. When you say you received spreadsheets,
5  were those additional requests for the same information
6  that you had copied in early 2016?
7  A.  Yes.
8  Q.  And was -- was there something about receiving
9  additional requests for the same documents that had to
10 do with your statement in paragraph 44, leading you to
11 believe that they had been previously produced?
12 A.  Can you repeat that?
13 Q.  Sure. Let me come at it this way. Is it --
14 in your declaration, are you saying that you -- you
15 copied the documents in early 2016, and that Alpine
16 received subsequent requests for those documents on
17 later dates?
18 A.  Yes.
19 Q.  Okay. And then you -- you copied the
20 documents again?
21 A.  Yes.
22 Q.  Okay. And when you copied the documents
23 again, did you personally provide them to anyone from
24 the SEC?
25 A.  No.

Page 139

1  Q.  Do you know whether anyone else produced those
2  documents to the SEC?
3  A.  For -- for which production? What are you
4  referring to?
5  Q.  Okay. We went through the -- the first time
6  that you copied them. Now I am asking about the second
7  time. Do you know whether the second time you copied
8  the documents those documents were provided to the SEC?
9  A.  Do I know whether they were? No, not
10 personally.
11 Q.  And just to make sure I understand, in -- in
12 your declaration then are you saying that there was a
13 third time that you copied the documents?
14 A.  Um --
15    MR. LEBENTA: Read your declaration.
16 A.  Well --
17    MR. LEBENTA: I guess objection. The document
18 speaks for itself.
19 A.  We -- we -- we provided the documentation for
20 the exam in 2016, or 2015, the AML-focused exam. Then
21 we provided it again, which is referred to here, and
22 then provided it in response to -- to the most recent
23 SEC action.
24 Q.  (By Mr. Carlyle) Okay. Do you have any
25 personal knowledge that the documents you copied and

Page 140

1  saved were provided to the SEC at any point in time?
2  A.  Not personal knowledge.
3  Q.  Do you know who John Hurry is?
4  A.  Yes.
5  Q.  Beginning with when you started at Alpine,
6  what was his role at the company?
7  A.  I don't know what it was when I started. Not
8  sure. It was my understanding that he was the owner.
9  Q.  Well, what was your understanding of his role
10 at Alpine, and did that understanding change at any
11 time?
12    MR. LEBENTA: Objection, compound.
13    MS. FRITZ: Did he have --
14    MR. LEBENTA: And objection, compound and
15 asked and answered.
16 Q.  (By Mr. Carlyle) Fair enough. Did Mr. Hurry
17 have a role at Alpine?
18 A.  In what context?
19 Q.  Maybe let's back up. You -- you said that you
20 are aware of who John Hurry is; is that correct?
21 A.  Yes.
22 Q.  Who is John Hurry?
23    MR. LEBENTA: Objection to form.
24 A.  He's the, you know, owner of Alpine. I -- I
25 don't know what his current title is -- was. I don't

Page 145

1   A. Because I pulled them or download, saved them,
2   with the understanding that they would be produced to
3   the SEC by legal counsel.
4   Q. Okay. Now, and Alpine maintains these SAR
5   support files -- or does Alpine maintain these SAR
6   support files in the regular course of business?
7   A. Yes.
8   Q. So you pulled -- when you pulled the SAR
9   support files in response to the investigative subpoena,
10  did you pull them from files that Alpine maintains?
11  A. Yes.
12  Q. Thank you. Okay. While you have worked at
13  Alpine, have you ever -- are you aware of John Hurry
14  having anything to do with the preparation of a SAR?
15  A. No.
16  Q. While you were working at Alpine, are you
17  aware of John Hurry having anything to do with the
18  filing of a SAR?
19  A. No.
20  Q. While you were working at Alpine, are you
21  aware of John Hurry having anything to do at all with a
22  SAR decision?
23  A. No.
24  Q. Okay. While you were working at Alpine, are
25  you aware of John Hurry having anything to do with AML

Page 146

1   at all?
2   A. No.
3       MR. LEBENTA: I think I have no further
4   questions.
5       MR. CARLYLE: Again, just a couple of
6   questions.
7       FURTHER EXAMINATION
8   BY MR. CARLYLE:
9   Q. I believe that you answered -- answered in
10  response to a question from counsel that it was your
11  understanding that the documents you pulled would be
12  produced to the SEC; is that correct?
13  A. Yes.
14  Q. And was it your understanding that legal
15  counsel would produce those documents?
16  A. Yes.
17  Q. Which legal counsel?
18  A. For the -- this investigative 2016, Sidley
19  Austin.
20  Q. Okay. Did -- did you ever receive any
21  information indicating that Sidley Austin produced those
22  documents to the SEC?
23  A. Not personally.
24  Q. You said "not personally." Is there any --
25  any way otherwise that you received information showing

Page 147

1   that Sidley Austin produced those documents?
2   A. No. I helped produce them, save them, and
3   then --
4       MR. LEBENTA: I was just, when you help
5   produce them, did --
6   A. Or when I -- I produce them. I mean, I
7   downloaded them and saved them like I -- like I said
8   before.
9   Q. (By Mr. Carlyle) Like you described?
10  A. Yeah.
11  Q. All right. When you -- during -- during the
12  preparation of this declaration, and prior to signing
13  it, did you ask Sidley Austin whether they had produced
14  the documents to the SEC?
15      MR. LEBENTA: Objection to the extent it calls
16  for attorney/client privilege or disclosure of
17  attorney/client privilege. I don't know what the
18  relationship was personally between Alpine and Sidley at
19  the time, or even currently. So, and I -- I'm just not
20  competent to let her answer that question because there
21  could still be an existing privilege. I don't know the
22  answer to that.
23  Q. (By Mr. Carlyle) That's right. So I guess
24  without divulging this -- this -- the content of any
25  communication with Sidley Austin, was there -- did any

Page 148

1   communication occur related to whether they produced
2   documents to the SEC?
3       MS. FRITZ: Between them and the witness?
4       MR. CARLYLE: Yes.
5       MS. FRITZ: Okay.
6   A. In preparation of the declaration?
7   Q. (By Mr. Carlyle) Yeah.
8   A. No.
9       MR. CARLYLE: All right. I have no further
10  questions.
11      MR. LEBENTA: Nor do we. We're good. Done.
12      MS. FRITZ: For the record that --
13      THE REPORTER: Do you want her to read and
14  sign?
15      MR. LEBENTA: Yes.
16      THE VIDEOGRAPHER: This concludes the
17  deposition. The time is 3:35.
18      (At 3:35 p.m. the deposition concluded.)
19
20
21
22      _____
23              ERIN GREEN
24
25

Case 1:17-cv-04179-DLC   Document 148-18   Filed 07/13/18   Page 6 of 6

U.S. Securities and Exchange Commission v.
Alpine Securities Corporation

Erin Green
March 14, 2018

Page 149

```
 1  STATE OF UTAH          )
 2  COUNTY OF SALT LAKE    )
 3      I hereby certify that the witness in the foregoing
 4  deposition, ERIN GREEN, was by me duly sworn to testify
 5  to the truth, the whole truth, and nothing but the
 6  truth, in the within-entitled cause; that said
 7  deposition was taken at the time and place herein named;
 8  and that the deposition is a true record of the
 9  witness's testimony as reported by me, a duly certified
10  shorthand reporter and a disinterested person, and was
11  thereafter transcribed into typewriting by computer.
12         I further certify that I am not interested in
13  the outcome of the said action, nor connected with nor
14  related to any of the parties in said action, nor to
15  their respective counsel.
16         IN WITNESS WHEREOF, I have hereunto set my
17  hand this 19th day of March, 2018.
18  Reading and Signing was:
19  _X__ requested  ___ waived   ___ not requested
20
21                    [signature: Teri Hansen Cronenwett]
22
23            Teri Hansen Cronenwett, CRR, RMR
24            LICENSE NO. 91-109812-7801
25
```