# Exhibit 67

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>         Plaintiff,<br><br>v.<br><br>ALPINE SECURITIES CORPORATION,<br><br>         Defendant. | Civil No. 1:17-CV-04179-DLC<br><br>Honorable Judge Denise L. Cote<br>Magistrate Judge Ronald L. Ellis |

**SUPPLEMENTAL DECLARATION OF RANDALL D. JONES**

I, Randall D. Jones, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury under the laws of the United States of America that the following statements are true and correct:

1. My name is Randall D. Jones and I am a resident of the State of Maine, am over 18 years of age, and make the statements herein based on my personal knowledge.

2. I am currently employed at Alpine Securities Corporation ("Alpine"), the Defendant in the above-entitled matter.

3. Initially, I was hired to work at Alpine in the compliance department around April of 2011.

4. Later, I was employed at Alpine as the anti-money laundering ("AML") officer from March 2012 until around July of 2012.

5. I am currently employed as the Sales and Trading Manager at Alpine.

6. I am familiar with the above-entitled action and the Securities and Exchange Commission's ("SEC") allegations against Alpine regarding Alpine's AML program, including its AML policies and procedures regarding record keeping and reporting requirements in

1

compliance with the Bank Secrecy Act ("BSA").

7. I have previously provided and declaration and deposition testimony in the above-entitled action and I supplement that testimony with this Declaration.

8. Currently, I manage the Sales and Trading Team at Alpine. Our team consists of myself, the Firm's Head Trader and President as well as 3 other Registered Representatives. We interact with clients and contra firms on a daily basis. As is relates to the clients, our Team works with prospective clients to obtain all new account paperwork and background information. Once the required items are received our Team conducts due diligence on the account such as: Client Identification Program (CIP), Know Your Customer (KYC), Suitability and review of any potential red flags during the account opening process. If the Firm is comfortable with the prospect and establishes an account the Team will work with the account for any stock deposits, money movements, trading and other related account items. At all times during the life of an account the Team is always vigilant and on the lookout for any red flags. As a manager, I encourage all Team members to raise any concerns they have. To this end, our Team has a constant open dialogue with our Compliance and AML departments and if needs be, immediately raise our concerns to the appropriate parties. As it relates to stock deposits our Team works with the client to obtain all applicable documentation and information. The Team carefully reviews these items for such things as: applicable resale exemptions, red flags, completeness of forms, that the information presented makes sense and other administrative concerns.

9. Every deposit of an Over-the-Counter ("OTC") and NMS securities are reviewed to determine whether there is a free-trading basis for the customer to sell the stock in the market place.

10. The types of deposits include physical certificates, electronic transfers from the

transfer agent ("DTC") and electronic transfers from other broker-dealers who may have already cleared the security for sale ("ACAT Transfers").

11. This due diligence review stems from the Section 5 of the 1933 Securities Act which requires that every sale of a security requires registration under the Act, unless an exemption from registration is available.

12. Alpine reviews registered securities to ensure the purchase and sale by the customer meet the requirements of the registered offering.

13. For non-registered security deposits, sometimes referred to as restricted stock, Alpine relies primarily on three exemptions: Rule 144, Sec. 4(a)(1), and Sec. 3(a)(10).

14. Of the three, Rule 144 is the most predominant exception relied upon by Alpine and its customers.

15. Each exemption has its own requirements and Alpine ensures these requirements are met by reviewing transaction documents, issuer public filings, internet research, transfer agent records, customer legal opinions, issuer and customer attestations and anything Alpine can gleam from the daily interactions from the customer and its business practices. Employees at Alpine, including myself, are in constant communication with Alpine's Legal Review department regarding any Section 5 related questions about any customer, transaction or deposit.

16. Also, registered offerings have requirements Alpine reviews for Section 5 analysis. Alpine reviews these deposits with exactly the same process and scrutiny as unregistered deposits.

17. In each due diligence packet from the client, a "Deposited Securities Checklist" ("Checklist") is included and filled out by the client. Among other things, the primary elements outlined in the Checklist applicable to all free trading reviews include the following information

with multiple questions in each section: (1) Affiliate / Control Person; (2) Holding Period / Transaction History; (3) Issuer Reporting / Shell Status; (4) Current Information Available; and (5) Disciplinary Background.

18. The Checklist is accompanied with a multitude of documentation such as: purchase/consulting agreements or the documentation showing why the shares were issued, letters from the issuer and client attesting to affiliate and shell status, issuance resolutions, issuance letters to the Transfer Agent, acknowledgments from the Transfer Agent regarding issuance and free trading/no holds and if needed coverage of a registration statement, a conversion tracker if a repeat conversion and essentially, any and all paperwork regarding the share history/issuance. The information is then supplemented by the Team with due diligence on the issuer, client and deal itself. Much of this is obtained in public documents, Lexus Nexus and any other available source. All of the documentation is carefully reviewed by members of the Team and then Alpine Legal.

19. Affiliate status includes the affiliate status of the customer and each party in the relevant chain of the transaction. The relevancy of affiliate status of the customer and relevant parties in the chain of transactions (also referred to as prior holders/sellers) depends on the free trading basis. For instance, if a customer is the President (a control person and hence an affiliate) and deposits stock that is the subject of an S-1 registration statement, he can freely sell that stock in accordance with Rule 144 as it relates to affiliate sales (1% every 90 days). Alpine will have inquired and verified affiliate status both with the client and using public information. Alpine will verify the S-1, when it became effective, ensure it has not expired, that the stock actually received is covered by the S-1 through TA records, and that the sales are made in accordance with the S-1.

20.     Also, for Rule 144, affiliate status is a critical issue.  If a customer is claiming the exemption as a nonaffiliated person, Alpine will verify his/her non-affiliate status for each prior seller whose holding period is relied upon (i.e., tacking) by reviewing issuer filings going back one year or more, new account documentation, third party background reports, internet searches and other information, including but not limited, depending on the circumstances, issuer representations, legal opinions, third party representations and CIP.

21.     For Holding Period / Transaction History, the Checklist describes the history of stock – sometimes from original issuance by the issuer through each intermediary, prior holder, to the customer.

22.     The Issuer Reporting / Shell Status section includes whether the issuer is SEC reporting or alternative reporting through OTC Markets, the availability of current information regarding management, operations, financial information, and shell status.

23.     Again, the relevancy and materiality of this information depends on the free trading basis.  Under Rule 144, if the issuer is SEC reporting and has current information, the holding period is six months. If non-SEC reporting or no current information is available, the holding period is one year.  Rule 144 is not available for shells or prior shell companies who have not cured their prior shell status in the manner prescribed in the rule. See OTC Procedures and Internal 144 Legal Procedures for discussion.

24.     The disciplinary background section shows search results and findings of any of the parties to the transaction, including issuer, prior holders, customer, and includes any legal opinions. Other information may include stock promotions, trading history, deposit history and regulatory inquiries on any of the foregoing.  This information may have no bearing on the free trading basis but may be considered along with other risk factors for red flag reviews.

25. A Section 5 review of a deposit of stock can potentially take up to a number of days to weeks depending on the facts and circumstances of the matter, workflow at Alpine, and time necessary for additional research.

26. Similarly, based on my time as the AML Officer, the AML review of a stock deposit could take up to a number of days to weeks to determine whether a SAR should or should not be filed, depending on the AML issues present, the facts and circumstances of the deposit, the timeframe and availability of personnel in the legal department or the AML Officer for escalation of issues, and general workflow issues of completing work.

27. In addition to performing Section 5 review and analysis, in my past role as an AML Officer I performed reviews of trading activity along with other employees at Alpine. In particular, Alpine employs a Market Surveillance Analyst in the compliance department that reviews trades and patterns in order to monitor improper trading activities or manipulations.

28. When reviewing trades, Alpine's employee in the market surveillance and trading departments look for any sudden spikes in share prices or volume of a stock. In addition, Alpine looks for any signs of wash trades, match trades, or coordinated sales and give referrals to the current AML Officer regarding any suspicion that we might have.

WHEREFORE, I declare under penalty of perjury that the foregoing is true and correct.

DATED this 13th day of August, 2018.

/s / *Randall D. Jones*
Randall D. Jones
*[electronically signed with permission]*