# Exhibit 246

I3UTSECC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

           Plaintiff,

     v.                                    17 CV 4179 (DLC)

ALPINE SECURITIES CORPORATION,

           Defendant.

------------------------------x
                                 New York, N.Y.
                                 March 30, 2018
                                 2:00 p.m.

Before:

                    HON. DENISE L. COTE,

                               District Judge

              APPEARANCES (Telephonic)

SECURITIES AND EXCHANGE COMMISSION
    Attorneys for Plaintiff
BY: TERRY MILLER
    ZACHARY CARYLE

CLYDE, SNOW & SESSIONS
    Attorneys for Defendant
BY: BRENT BAKER
    JONATHAN BLETZACKER

THOMPSON HINE
    Attorneys for Defendant
BY: MARANDA FRITZ

1        (In chambers)

2        THE COURT:  I have you on the speaker phone because my

3   law clerk is with me and a court reporter.  We'll quickly take

4   appearances.  For the SEC?

5        MR. MILLER:  Good afternoon, your Honor, Terry Miller

6   and Zachary Caryle for the SEC.

7        THE COURT:  And for Alpine?

8        MS. FRITZ:  Maranda Fritz of Thompson Hine.

9        MR. BAKER:  Brent Baker and John Bletzacker of Clyde

10  Snow, also for Alpine.

11       THE COURT:  Thank you.

12       I have letters of March 23rd and March 27 in this

13  case.  I want to remind counsel that letters to the Court with

14  respect to discovery disputes may not exceed two pages.  If I

15  don't find the letters sufficient, I get folks on the phone.

16  So I don't want letters in the future longer than two pages

17  with respect to any discovery disputes.  Thanks so much.

18       So we have a dispute here with respect to a request by

19  Alpine with respect to a 30(b)(6) deposition of the SEC, and I

20  have as an attachment to the SEC's letter the deposition

21  notice.  And I'm wondering if we should approach this by going

22  through the categories or -- well, let's see if we can proceed

23  that way, and we'll start with category one.  And it concerns

24  all matters and issues discussed and asserted in the SEC's

25  declaration of a Mr. Lyman, and I have a copy of Mr. Lyman's

1    declaration in front of me and have reviewed it.

2             And so let me turn first to you, Mr. Miller.

3             MR. MILLER:  Sure.  With respect to this topic, it

4    runs into a couple of problems as to the gist of the letter,

5    trying to avoid the cost or burden of preparing a witness to

6    talk about things that are either protected by work product or

7    not helpful or relevant to the case.  This one is not relevant

8    to the case.  The things that Mr. Lyman talked about in his

9    declaration that are then carried over into the notice are what

10   he thought witnesses would likely testify to.

11            Obviously, Mr. Lyman is not going to get up on the

12   stand at trial and talk about what he thinks people will

13   testify to, it was relevant only to the venue motion that was

14   filed by Alpine, and all of the statements that Alpine is

15   interested in obtaining on this topic are I think more readily

16   available from the folks who made the statements in the first

17   place, many of whom are current or former Alpine employees.

18            So with respect to this topic, it's just something

19   that gets into a lot of relevance grounds, and it's just not

20   the most effective way for Alpine to get -- if they need

21   something, it's not most effective way to get it.

22            THE COURT:  Mr. Baker or Ms. Fritz, who is responding

23   on this conference call for Alpine?

24            MS. FRITZ:  With respect to what was discussed in

25   Mr. Lyman's declaration, he really does lay out not just the

1   fact of these interviews, he also lays out in his paragraph
2   four very specific information regarding how the interviews
3   were conducted, who was present, and who possessed certain
4   notes.
5         Since then we have learned, as we dealt with these
6   various issues, that these interviews are being presented as
7   the way in which these witnesses are going to be challenged.
8   And as the Court notes, we have already been going through
9   depositions.
10         So we're understanding already that what Mr. -- that
11   what Mr. Lyman has put forth in this declaration, including how
12   it was done, what was done, and what records or documents exist
13   with respect to those interviews, that those are going to be
14   very important, because they're key to the SEC challenging each
15   of those witnesses.
16         THE COURT:  Okay.  So the declaration is from an
17   attorney for the SEC.  He's an attorney with the Division of
18   Enforcement in the Denver Regional Office.  He put in a
19   declaration, as SEC counsel indicated, in connection with a
20   venue motion.
21         Paragraph four merely recites his understanding of the
22   way in which interviews were conducted of a series of
23   witnesses, nine witnesses, and identifies where the agents who
24   were involved with those interviews of the nine agents lives
25   and works.  In each case, the agents, the Homeland Security

1   agents who were involved in the investigation and prepared the
2   only notes of the interviews, as reported in paragraph four,
3   indicate that each of those agents lives and works in the New
4   York area.
5           So your request to take a 30(b)(6) deposition of the
6   SEC, because of paragraph four in the Lyman declaration, is
7   denied, and the motion to quash is granted.
8           Let's turn to paragraph two.  It reads:  The SEC's
9   communications with FinCEN, FINRA, and any other third parties,
10  including former employees of Alpine or their counsel,
11  regarding the allegations in and the filing of the complaint.
12          Mr. Miller.
13          MR. MILLER:  Your Honor, these communications, to the
14  extent they are regarding the allegations in our complaint, if
15  they exist, these communications would be covered by the law
16  enforcement privilege, at least with FinCEN and FINRA.
17          Then with respect to other third parties, I don't know
18  how -- exactly who they're thinking of.  Perhaps Alpine was
19  thinking of, again, the witnesses that were interviewed that
20  have been identified, and Alpine has the same access to them
21  that the SEC does.
22          So number two is a good illustration of what happens
23  in preparation, which is a designated witness from the SEC
24  would have go through different divisions and parts of the
25  agency to track down all of the both written and oral

1    communications with these folks, spend the time to take the
2    organizational knowledge and put the knowledge into one person
3    and then show up at a deposition and be instructed not to
4    answer any of the questions.
5            So again, the request is for protection from that
6    burden and expense of preparing for something that is going to
7    be fraught with privilege and objections and instructions to
8    not answer.
9            THE COURT:  Perhaps before I turn to you, Ms. Fritz, I
10   should just state, because this is going to drive my rulings
11   here, what I understand this case to be about.
12           Alpine is a broker-dealer.  It is required to file
13   SARs for suspicious transactions.  The SEC has alleged in this
14   lawsuit that the SARs that were filed with respect to thousands
15   of transactions were deficient in a variety of ways, that they
16   did not disclose information about the transactions that the
17   regulations required the SARs to include and report.  And in
18   additional instances, the SEC is indicating or alleging that
19   Alpine had a duty to file a SAR and did not.
20           So at the trial, the SEC will have the burden to show
21   that a SAR had to be filed, and if it was, that it was
22   deficient in omitting certain information that the law required
23   it to include.  The SEC will carry this burden, as I understand
24   it, to the extent it's able to, by looking at the information
25   that is contained in Alpine's own files and by presenting

testimony from Alpine witnesses, either current or former employees, and potentially, I know that you folks aren't there yet, through the development of expert testimony.

Have I correctly summarized the case in like a 10,000-foot level of summary, Mr. Miller?

MR. MILLER:  Yes, your Honor.

THE COURT:  Okay.

MR. MILLER:  It was a good summary.  Thank you.

THE COURT:  So the issue is, to defend against this allegation, what discovery does Alpine need?  And in connection with this application addressed in today's phone call, does it need any discovery in the nature of a 30(b)(6) witness from the SEC?

The most critical information in this case is what information is in Alpine's own files, and the documentary record will drive most of the analysis in this case; that, and the law's requirements.  The SEC is or is not able to carry its burden with respect to a particular SAR, but it will have to march through it SAR by SAR, or transaction by transaction if no SAR was filed, to maintain its case.

So necessarily taking the deposition of the SEC doesn't seem very pertinent here, and so I need to understand in particular with respect to any paragraph why the defendants need this in order to prepare their defense at trial.

So let's turn to item number two, Ms. Fritz.

1       MS. FRITZ: Absolutely. And I appreciate that. I
2  would note, first of all, that the SEC in its letter did not
3  object to items number two, three or nine, their 17 and 18 is
4  incorrect, and I think they misread four and 13. So two is one
5  of the ones that the SEC does not identify in their letter as
6  being improper.
7       Having said that, I think what your Honor just
8  described is a perfectly good description of the way that the
9  SEC is presenting this case, but it's a far cry from what the
10 defense is going to be presenting, and it disregards some very
11 critical aspects of the complaint. And here's why I say that:
12      In this instance, the SEC stands as essentially the
13 complaining witness in the case. It puts forth its own
14 interpretations of the rules and guidance that it claims in its
15 complaint were presented to Alpine over the course of years.
16 It presents itself as a critical witness on the issue of
17 notice. It says that in 2015 it was the entity that came in
18 and examined and interacted. And so that, according to the
19 SEC, becomes the critical component of notice.
20      But then it goes the next step, not only is it the
21 witness, not only is it the notice, it's also the purported
22 victim. In other words, throughout the complaint, it says that
23 Alpine's conduct misled it as it received the SARs. So instead
24 of a normal securities fraud case where you have something
25 that's being directed out to investors or that deals with third

1   parties, the SEC is, in every aspect of the case, the witness
2   against us.
3             That's why we have put together these things, to try
4   to cover each of those topics that I just mentioned.  We start,
5   for example, back in 2015, because according to the SEC's
6   complaint, the SEC came in in 2015 and made certain assertions
7   that, according to the SEC, put us on notice, and are therefore
8   part of their complaint and certainly part of their claim going
9   forward that there's any sort of willfulness in connection with
10  these -- with their allegations.
11            The SEC also says that when it came in in 2015 it took
12  certain positions with respect to the SAR requirements and what
13  needed to be in there.  In 2015 the general counsel for Alpine
14  and others responded, and there were dialogues that went back
15  and forth with the SEC.  So it was these precise issues.  It
16  was not a one-way street.  And heaven knows, if your Honor has
17  seen the papers at this point, a critical issue here is are the
18  requirements that the SEC is propounding, the sort of automatic
19  requirements, do these even exist?
20            So these issues go back to the 2012 examination, back
21  to the 2015 examination where Alpine has been interacting with
22  its regulators.  In each instance, those are issues of fact
23  that the SEC has embedded in its complaint that it fully
24  intends to prove as components of the case against Alpine.  And
25  that's before we ever get to these two SEC attorneys on the

1  phone who are not trying to depose, who do not have anything to
2  do with all of the background that is going to be used against
3  us. And all we are looking for is the opportunity to simply
4  depose the plaintiff, who stands as complainant, victim, and
5  almost in the sense that you have a contract, for example, they
6  are the ones that are putting forth interpretations that they
7  want to impose on us. All of these are factual issues that we
8  are entitled to explore.
9          And I will tell you, your Honor, we asked for things
10 like the training manuals for the examiners who came in to
11 examine us. And the reason is this: The SEC is going to come
12 in and say these are automatic requirements that Alpine didn't
13 do.
14         And we are going to be able to demonstrate that they
15 are not automatic requirements. This is not what the examiners
16 were looking for. This is not the material that the examiners
17 had. These were not the examiners' marching orders, and these
18 are not the communications that we received when we were
19 examined. Because if anybody ever told us these are automatic
20 requirements and you have to do them, we would have done them.
21         All of that is what the SEC is really going to be
22 presenting as the case against us. There's no other witness
23 against us except the SEC.
24         THE COURT: Well, thank you, Ms. Fritz, that's very,
25 very helpful. I have a few questions for the SEC, but let me

1     make a few preliminary observations.

2             The law gives notice to a broker-dealer of what it is
3     required to do.  If there had been no communication with the
4     SEC in 2015 or at any other date, this lawsuit could still be
5     filed if there were a violation of the law.  Well, it could be
6     filed with an allegation there was a violation of law and there
7     could be a verdict against Alpine for a violation of the law.
8     So you did not need any personal notice as a broker-dealer, and
9     you were required to comply with the law.

10            Secondly, there is no victim here other than the
11    American public and the law.  There's no reliance element.
12    It's a strict liability statute.  There's no knowledge or
13    willfulness component.  Well, there's a knowledge component,
14    obviously, but no willfulness component.  So whether the SEC
15    was misled or not in a communication or by a particular SAR is
16    not an element of 17(a)(8) claims.

17            With respect to whether the requirements under the law
18    exist, that isn't a fact issue, that's a legal issue.  The
19    parties have what I will call a preliminary summary judgment
20    motion before me, and I will be laying out what I understand
21    the law is and was at the relevant period of time.  And I
22    expect the parties will read what I file with care, and to the
23    extent that they have further authority to provide to me on
24    these issues, they'll feel free to do so, but you did not need
25    a personal visit -- Alpine, a broker-dealer, did not need a

1   personal visit from any regulator to advise them of what the
2   requirements of the law was.  And a personal visit couldn't
3   change the requirements of the law.  The law is what it is.
4           So let me inquire of the SEC, are you planning to rely
5   at trial, Mr. Miller, on the SEC's interaction with Alpine, as
6   I understand it here from Ms. Fritz's comment, in 2015?
7           Mr. Miller, are you there?
8           MR. MILLER:  Yes, your Honor, I'm sorry.
9           Yes, the SEC does intend to use notices that Alpine
10  received from both FINRA and SEC, but in a very limited way,
11  and not in the way that Alpine has asserted.  And it really is
12  going to be consistent with the way that you just -- what your
13  Honor just explained, the way that notice works.  The law is
14  what your Honor said the law is.
15          And if it turns out that the SEC is -- for example,
16  the 2015 letter that was the final determination of the
17  examination that Ms. Fritz referenced, if the legal positions
18  in that letter are consistent with what your Honor says the law
19  is, we would use that letter only to show that Alpine in fact
20  did have even more notice than the law generally provides in
21  the absence of the letter.
22          And we would use the letter for FINRA the same way,
23  those are the two letters referenced in the complaint, and
24  reality is that with both those letters, the analysis behind it
25  and the work that was done to generate the letters is not

1    relevant to what the law is, it really is going to be relevant

2    to the issue in the SAR rule about what Alpine had reason to

3    suspect was considered a suspicious transaction under the SAR

4    rule.

5            And we have letters explaining what their deficiencies

6    were under those grounds, and if it turns out the letters are

7    not consistent with the law, as your Honor lays out, I don't

8    think they would be helpful or even relevant.  And to the

9    extent they are relevant, it's only for notice.  We wouldn't

10   put those letters up and tell the jury that the SEC is

11   determining in these letter what the law is, we would obviously

12   defer to the Court for instructions on what the law is.

13           THE COURT:  Well, that's interesting with respect to

14   admissibility issues.  Obviously, anything we discuss today

15   isn't a decision about admissibility.  And there's also an

16   issue with respect to, I suppose, to some extent, a potential

17   bifurcation issue on willfulness, which I don't want to think

18   about either, because you don't need to have willfulness to

19   have a violation of 17(a)(8).

20           As I understand it, and I haven't looked at care yet

21   with this aspect of the law, it may be that willfulness and a

22   finding of willfulness will dictate a level of sanctions should

23   there be a violation of 17(a)(8).  And who that is for, whether

24   it's for a jury or a court, I certainly haven't thought about.

25           But with respect then to these 2015 communications,

1  Mr. Miller, what is the SEC's position with respect to the
2  amount of discovery Alpine is entitled to with respect to those
3  communications?  Were there SEC examiners on site at Alpine?
4        MR. MILLER:  Yes, your Honor.  And our position on
5  discovery about those communications is that they're not --
6  those communications and any work that the SEC did leading up
7  to its final determination is not relevant to the issue of
8  notice.  I think everyone understands that the SEC's official
9  position was contained in the letter itself, and I think it
10 would be -- again, we would run into the same sort of problems
11 here with preparing a witness for a 30(b)(6) deposition by
12 taking the time and going through and talking to all the SEC
13 examiners, depositing all of the organizational knowledge into
14 one person, then showing up at a deposition.  And to the extent
15 these are communications among the SEC examiners themselves,
16 those would be protected by the deliberative process privilege
17 because they're pre-decisional communications.  And to the
18 extent they were communications with Alpine, then Alpine -- the
19 much more efficient way to do it if is Alpine could talk to its
20 own employees.  You don't even need discovery for that.
21       So I think there is, again, a very high burden for
22 very minimal benefit of any deposition that would get into
23 communications and discussions that led to the final work
24 product of the SEC's 2015 letter.
25       THE COURT:  Well, this is not the end of the

1  discussion, but I have a few more questions here.
2           Mr. Miller, is the SEC planning to call an SEC witness
3  about the examination?
4           MR. MILLER:  No, your Honor.  If it is admissible, the
5  way it would come in is we would simply ask an Alpine witness:
6  Is it in fact true that Alpine received this letter?
7           And perhaps there would be follow-up questions about
8  what was done in response to that letter, but again, the only
9  relevance of that letter is what Alpine did in response to it
10 and what Alpine understood from it.
11          THE COURT:  Okay.
12          MR. MILLER:  So there's no need for an SEC witness to
13 explain really any letter or any of the work that went into the
14 letter.
15          THE COURT:  And Ms. Fritz, has Alpine taken any
16 depositions of the SEC examiners, or sought to?
17          MS. FRITZ:  We have not yet noticed the deposition of
18 the examiner.  We had sought instead to do it through the
19 30(b)(6).
20          THE COURT:  And what do you want on this topic of the
21 2015 letter?
22          MS. FRITZ:  What do we want?
23          THE COURT:  Yes, from the SEC.
24          MS. FRITZ:  Here's what we're looking for:  Your Honor
25 has expressed the view that the law on this issue is clear.

1    The view that we have taken, and we think we have established

2    it, is that the law is what is stated in the PSA, and nobody is

3    questioning whether we violated the PSA.  We filed the

4    purported transactions that were suspicious.  This case is

5    unusual for the fact that except in the instance of certain

6    liquidations, we're not even alleged to have failed to file

7    SARs.

8              So the issue isn't did we follow the term of the PSA.

9    The SEC's complaint and its case -- and if you go through the

10   complaint section by section, what they try to do in the

11   complaint is to establish that there are these other kinds of

12   guidance that should be viewed as being so dispositive that to

13   fail to adhere to those kinds of industry publications should

14   be viewed as a violation of the PSA.  Obviously, our position

15   is very different, and we want to be able to establish that so

16   was the SEC's.

17             And so that's why through the request, for example,

18   for their examination modules that lay out what the examiner is

19   supposed to look at and look for, and then through the way that

20   they examine and through the way that they report, we will be

21   able to establish that this red flag concept that is being used

22   in this case does not exist, that the SEC, when it conducted

23   its examination, was looking for the basic filings regarding

24   suspicious transactions, and at times said that we needed to

25   include more information in there, but these, again, are not

1    the kind of red flag claims that are being made in this case.
2               THE COURT:  Okay.  I think that's very helpful,
3    Ms. Fritz.  I think very, very helpful.
4               So what I'm going to do is put this conversation on
5    hold and let everyone go and enjoy this lovely weekend.  I hope
6    everybody has good plans with family and friends.  And I'm not
7    going to give you a final ruling.  I think when you have my
8    ruling on the preliminary summary judgment motion it will help
9    enormously to crystallize these issues and make it easier for
10   us to talk about each of these issues.
11              MS. FRITZ:  Your Honor, we had very much hoped that we
12   would have an opportunity to argue on that.
13              THE COURT:  Yes, I understand that, and here's my
14   practice with respect to oral argument:  If there is any issue
15   at all that I think argument from the parties would be of
16   assistance to me, I will identify that for you and give you an
17   opportunity to not only address that issue but anything else
18   you would like to say.
19              I have not located such a need yet, but I'm not
20   finished with my review of your motion.  And so I appreciate
21   very much, counsel's willingness and desire and ability to
22   address these issues on oral argument, but I am going to
23   reserve decision as to whether or not we'll have oral argument.
24              Let us talk a little bit about mediation.  I know you
25   were referred for mediation in February.  This case is still

1  active.  I think you perhaps had a session in late February.
2  I'm thinking that it might be helpful, after you get my opinion
3  on the summary judgment motion, to go before a mediator once
4  more.  I know that's a little hard for you to tell, but I would
5  like to understand, Ms. Fritz, what the defendant's current
6  position is with respect to the subject matter of mediation
7  generally.
8       MS. FRITZ:  It's funny you should say that, because
9  when we were wrapping up the mediation -- it was productive to
10 a point, but as we wrapped it up, I think all of us agree that
11 we wanted to learn more from the Court in terms of what was
12 going to happen on the motions, and that we all agreed that we
13 thought another session would be productive after that.
14      So you don't have any argument from us.  I think we're
15 all -- we all agree that would be helpful.
16      THE COURT:  Great.  And let me ask, I don't know the
17 identity of your mediator, I don't want to know the identity of
18 your mediator, but was that a good forum for discussions or
19 would you like to go to a different forum?
20      Ms. Fritz?
21      MS. FRITZ:  I think we enjoyed working with him.
22      THE COURT:  Great.
23      MR. MILLER:  Yes.
24      THE COURT:  Good.  Thank you so much.
25      And again, enjoy this weekend, and we'll be in touch

I3UTSECC

1  shortly.  Thank you very much.
2           MS. FRITZ:  Thank you.
3           MR. MILLER:  Thank you.
4                            o0o