ZACHARY T. CARLYLE
carlylez@sec.gov
TERRY R. MILLER
millerte@sec.gov
SECURITIES AND EXCHANGE COMMISSION
1961 Stout Street, 17th Floor
Denver, Colorado 80294
(303) 844-1000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | **17-cv-4179-DLC** |
| Plaintiff, | |
| - against - | **ECF CASE** |
| ALPINE SECURITIES CORPORATION, | |
| Defendant. | |

**PLAINTIFF UNITED STATES SECURITIES AND EXCHANGE
COMMISSION'S REPLY MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT ON LIABILITY**

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................1

ARGUMENT ...............................................................................................................2

    I.       ALPINE DOES NOT CREATE A DISPUTE OF FACT THAT THE
           DEFICIENT SARS WERE MANDATORY OR OMITTED REQUIRED
           INFORMATION.............................................................................................2

        A.    Alpine Creates no Genuine Dispute as to any Material Fact in the Response
            to the Motion's Demonstration that the Deficient SARs were Mandatory.....3

            1.    Alpine's arguments about the reason to suspect test are not consistent
                 with the SAR rule or the Court's Order .................................................4

            2.    Alpine's arguments about the Commission's application of the reason
                 to suspect test do not create a genuine dispute as to any material fact ..7

                a.    Alpine's challenge to large deposits of low-priced securities
                     in isolation ...............................................................................7

                b.    Alpine's challenge to other indicia of suspicious activity
                     in isolation .............................................................................10

        B.    The Opposition Fails to Create a Genuine Dispute as to Any Material Fact
            in Response to the Motion's Demonstration that the Deficient SARs Omit
            Required Information..................................................................................14

            1.    Alpine's Arguments About the Commission's Summary Charts And
                 Expert are Unfounded .......................................................................14

            2.    The Deficient SARs set forth in the Motion followed guidance from
                 the Court.............................................................................................18

            3.    The Order contains no "materiality" requirement ..............................19

            4.    Alpine fails to identify specific defects in the Motion's analysis .......19

    II.     ALPINE OFFERS NO EVIDENCE TO CREATE A DISPUTE OF FACT
           MATERIAL TO THE STANDARD SET FORTH BY THE COURT ON
           LIABILITY FOR FAILURE TO REPORT LIQUIDATIONS ...........................30

    III.    ALPINE PRESENTED NO EVIDENCE TO DISPUTE THE LATE-FILED
           SARS.........................................................................................................33

IV.    ALPINE POINTS TO NO EVIDENCE THAT IT PRODUCED THE
MISSING SUPPORTING DOCUMENTS WHEN REQUESTED IN 2016 ........34

CONCLUSION ...........................................................................................................................35

TABLE OF AUTHORITIES

**Federal Court Opinions**

Curtis v. Cenlar FSB, No. 13-CV-3007-DLC, 2014 WL 5778046 (S.D.N.Y. Nov. 6, 2014) ..... 12

United States v. Citron, 783 F.2d 307 (2d Cir. 1986) ................................................................ 14

Washington v. Vogel, 880 F. Supp. 1545 (M.D. Fla. 1995) ....................................................... 17

**Rules**

31 C.F.R. § 1023.320 ......................................................................................................... *passim*

Fed. R. Evid. 1006 .................................................................................................. 14, 16, 30, 31

Plaintiff United States Securities and Exchange Commission (the "Commission") submits this Reply Memorandum of Law in Support of its Motion for Summary Judgment on Liability ("Motion") and in response to Alpine Securities Corporation's ("Alpine") opposition to the motion (Doc. No. 158, "Opposition" or "Opp.").

## INTRODUCTION

The Court's Order on the Commission's Motion for Partial Summary Judgment ("Order") imposes a modest burden for each of the four types of claims asserted in the Motion. For the SARs that omitted required information, the "Deficient SARs," the burden to show that the SARs were mandatory filings is not "an onerous task," Order at 46, and the burden to demonstrate omitted information from SAR narratives required only a comparison of Alpine's files because no other transaction-specific evidence exists. For the unreported liquidations, the Commission's burden was to prove the existence of transactions forming deposit-and-liquidation patterns like those discussed in the Order. *Id.* at 66. The Court granted summary judgment on the sample late-filed SARs and, as a result, the Commission's burden in the Motion was to present similar SARs that were untimely on their face. *Id.* at 74-75. For the missing support files, the Commission's burden was to show that the files were not contained in documents produced by Alpine prior to this litigation. *Id.* at 77. The magnitude of these burdens was no accident. The driving purpose of the Order was to establish guideposts for a more efficient discovery process and resolution of this case, and the Motion presented a straightforward application of Alpine's files to the legal standards set forth in the Order.

Alpine's Opposition is a firehose. But nowhere in the many pages of materials submitted with the Opposition does Alpine squarely confront the evidence presented in the Motion under

the legal standards set forth in the Order. For instance, Alpine argues (many times) that all of its SARs were voluntary and argues (many times) that the Court should review Alpine's overall program rather than individual SAR decisions. These arguments have already been denied. When addressing the Deficient SARs, Alpine artificially isolates discrete parts of the formulation used in the Motion and argues that each part, by itself, is not sufficient. All of these arguments aim at something other than the Motion and Order.

The Opposition also asserts many times that the evidence in the Motion does not adequately present the information in Alpine's files, but only identifies a handful of inaccuracies. And most of the alleged inaccuracies are, in reality, correct depictions of Alpine's own errors, such as the inclusion of duplicate SARs where Alpine filed more than one SAR on the same transaction. Most of Alpine's objections to evidence are actually challenges to legal standards in the Court's Order and do not create a dispute of material fact or show that the Commission is not entitled to relief as a matter of law. In sum, the Order achieved its intended purpose to simplify this matter and the Opposition provides no basis to defeat summary judgment. The Motion should be granted.

## ARGUMENT

### I.   ALPINE DOES NOT CREATE A DISPUTE OF FACT THAT THE DEFICIENT SARS WERE MANDATORY OR OMITTED REQUIRED INFORMATION.

The Motion explained why the Deficient SARs in SEC Ex. 10 are mandatory and omitted required information identified in the Order.. Alpine's response creates no genuine dispute because it misstates the legal standard for mandatory SAR filings and its analysis of individual SARs confirms that no facts extrinsic to Alpine's records is material and no jury trial is needed

2

to determine the contents of those records. The Commission is entitled to summary judgment on the Deficient SARs for the same reasons set forth in the Order.

###### A.   Alpine Creates no Genuine Dispute as to any Material Fact in Response to the Motion's Demonstration that the Deficient SARs were Mandatory.

Alpine has never conceded that any of its SARs were mandatory. According to Alpine, it filed SARs that existed in an uncertain state like Schrödinger's cat and revealed their "voluntary" nature only upon examination. Alpine's assertion that all of its SARs were voluntary may have some bearing on the question of whether Alpine held an actual subjective suspicion—an inference undermined by the pattern of repeat filings on suspicious accounts, Order at 45 n.20—but even if true Alpine's subjective suspicion does not create a dispute of fact under the objective reason to suspect test. *See* Order at 43-44. The Court explained that establishing that Alpine had a reason to suspect transactions were reportable will "not be an onerous task" where Alpine's files reflected both (1) a large deposit of penny stock shares, and (2) other indicia of suspicious activity. Order at 46.

The Motion followed the Court's guidance.[1] The Motion shows that the Deficient SARs were mandatory by citing evidence in Alpine's records that reflects two things for each transaction: (1) a large deposit of penny stock shares, and (2) other indicia of suspicious activity. Motion at 9-12. The "other indicia" of suspicious activity included the presence of one or more of six subcategories of red flags identified by the Order (at 11) or the fact that Alpine frequently reported transactions ordered by the same customers. Most Deficient SARs involved both. Motion. at 11-12. The Motion explained the practices of broker-dealers like Alpine and common

---

[1] While there are many other ways to show that a firm had a reason to suspect that a transaction is reportable under the SAR rule, the Motion follows the path set forth in the Order to satisfy the reason to suspect test on summary judgment.

abuses of penny stocks as context, *id.* at 3-7, and presented expert testimony that a reasonable broker-dealer faced with circumstances similar to each transaction would have suspected criminal activity involving the customer depositing the stock. *Id.* at 12; *see also* Order at 46 n.21.

Alpine tries to bend the Motion away from the Order through two basic arguments. First, although styled as a critique of the Motion, Alpine argues (again) for a subjective standard different from the objective standard discussed in the Order. Alpine also attacks the Motion's application of Alpine's files to the objective standard by isolating elements of the two-part formulation advanced in the Motion and arguing that each element, by itself, is not sufficient to show a mandatory filing. These arguments do not confront the analysis and evidence actually set forth in Motion. Alpine presents no testimony from witnesses who reviewed the Deficient SARs to determine whether a reasonable broker dealer would have suspected that the transactions described in the Deficient SARs were reportable. Accordingly, there is no need for a trial on the issue of whether the Deficient SARs were reportable under the reason to suspect standard.

### 1.  Alpine's arguments about the reason to suspect test are not consistent with the SAR rule or the Court's Order.

The reason to suspect test cited in the Order comes from the text of Section 1023.320(a)(2), which requires firms like Alpine to report transactions over $5,000 if the firm has reason to suspect that the transaction fits within one of four categories. *See* Order at 43-44. The reason to suspect test is objective—Alpine's actual belief is not the focus. This objective test means that, "on the facts existing at the time, a reasonable broker-dealer in similar circumstances would have suspected the transaction was subject to SAR reporting." 67 Fed. Reg. at 44,053. This objective test defeats Alpine's argument that "summary judgment is not warranted because

4

the SEC has not offered evidence that Alpine knew or suspected that the transaction at issue was criminal." Order at 43-44.

Alpine seeks a different legal standard for mandatory reports. Alpine first repeats its argument that the Court has no ability to review individual SAR decisions but, as before, the authorities cited by Alpine do not prohibit the Court's review of Alpine's individual SAR decisions. Opp. at 17-18. It is true that Alpine's AML program is also subject to review for compliance with AML rules, but programmatic review does not negate the plain language of the SAR rule that applies to individual transactions. *See* Order at 43-44. Even the authorities cited by Alpine confirm that the review of an AML program is not a substitute for review of individual SAR decisions. *See, e.g.*, 67 Fed. Reg. 44,048, 44,053 (cited by Opp. at 18) ("[R]eview of the adequacy of a broker-dealer's anti-money laundering compliance program is not a substitute for, although it could be relevant to, an inquiry into the failure of a broker-dealer to report a particular suspicious transaction."); *In re Sterne, Agee & Leach, Inc.*, No. E052005007501 at 32 ("*Sterne Agee*," cited in Opp. at 18) ("This is not to say that the failure to file a SAR cannot be questioned, and FINRA has settled matters involving the failure to file SARs.").

Alpine's continued reliance on the *Sterne Agee* matter also is misplaced. Opp. at 18-19. To determine whether the respondent's AML program was reasonable under FINRA rules, the panel relied on evidence that the respondent conducted an investigation that culminated in a "reasonable conclusion that there was a reasonable business explanation for the activity in the accounts." *Sterne Agee* at 33. That decision does not help Alpine because the issue in *Sterne Agee* was whether the firm complied with FINRA's programmatic rules—not Section 1023.320 that governs here. Moreover, the firm in *Sterne Agee* documented the reasons supporting its

decision not to file a SAR. Here, in contrast, Alpine filed thousands of SARs and claims, without documentation supporting its decisions or testimony about specific decisions for specific transactions. The *Sterne Agee* decision is not inconsistent with this Court's Order and Alpine's many citations to this decision and deposition testimony about the decision do not change the requirements of Section 1023.320. Opp. at 18-19.

Later in the Opposition Alpine seems to acknowledge that the Commission asserts that the Deficient SARs were mandatory filings under the reason to suspect test. Opp. at 23-24. However, Alpine then assumes without citation or analysis that the reason to suspect test is equivalent to the reasonable suspicion test applied to claims asserted under the Fourth Amendment. Opp. at 24. The Court should not implant the Fourth Amendment test and case law onto the reason to suspect standard in Section 1023.320. FinCEN provided a clear explanation of the reason to suspect test. "The reason-to-suspect standard means that, on the facts existing at the time, a reasonable broker-dealer in similar circumstances would have suspected the transaction was subject to SAR reporting." 67 Fed. Reg. at 44,053. This explanation provides sufficient guidance and is grounded in the text of the rule. To the extent Alpine asserts that the Fourth Amendment's reasonable suspicion test merely restates the substance of FinCEN's explanation, the argument does not aid the Court's analysis here. But if Alpine asserts that the Fourth Amendment's reasonable suspicion test imposes a higher burden than FinCEN's articulation, that argument should be rejected as inconsistent with the text of Section 1023.320. Either way, the Fourth Amendment test does not advance the analysis here. Importing the reasonable suspicion standard would also have consequences not intended by the SAR Rule. For example, the SAR Rule provides a safe harbor for firms that file SARs, including where the firm can show that it

actually suspected that the transaction is reportable. 31 C.F.R. § 1023.320(f). Nothing in the SAR Rule suggests that the firm would need to show that its actual suspicion was also reasonable under Fourth Amendment case law. While information required in a SAR is sometimes used in combination with other information by law enforcement to develop reasonable suspicion and probable cause, the BSA did not deputize broker-dealers as law enforcement required to conduct government searches or seizures that would require the type of justification demanded by the Fourth Amendment.

In short, nothing in the Opposition warrants departure from the Court's Order or defeats the Motion's contention that the Commission can establish a mandatory report by using Alpine's own files to show a large deposit of low priced securities coupled with other indicia of suspicious activity, including the presence of red flags and frequently reported customers.

### 2. Alpine's arguments about the Commission's application of the reason to suspect test do not create a genuine dispute as to any material fact.

The Motion applied Alpine's files to the reason to suspect test with tables summarizing Alpine's files, which showed (1) a large deposit of low priced securities; and (2) other indicia of suspicious activity in the form of red flags and/or frequently reported customers. Motion at 11. Alpine's response improperly isolates these two elements and incorrectly describes the Motion's evidence.

### a. Alpine's challenge to large deposits of low-priced securities in isolation.

Alpine first argues that the Commission applied an "automatic" rule to each SAR because, Alpine asserts, the mere existence of a red flag does not trigger a filing obligation. Opp. at 18-19, *see also id.* at 25. But the Commission does not argue that the "mere existence of red

flags" establishes a mandatory report. Opp. at 18. The Commission seeks summary judgment on SARs that reported large deposits of penny stock shares **and** contained other specific red flags. Motion at 11 ("In addition to large deposits of low-priced securities, each of the transactions reported in the Deficient SARs involved one or more indicia of suspicious activity.") (quoting Order at 46).

Alpine's citations to the Commission's expert deposition and reports for the proposition that red flags alone do not trigger mandatory reports frequently take testimony out-of-context and in any event are beside the point here because the Commission never argued that red flags alone establish mandatory reports. *See* Opp. at 18-20. For example, Alpine notes correctly that the Commission's expert does not claim that a large deposit of low-priced securities by itself triggers a mandatory report, and then argues that the Commission's expert does not fully support the isolated argument that Alpine wishes the Commission made. Opp. at 26-28. This entire argument attacks a straw man. The Court, the Motion, and the Commission's expert have all articulated a formulation for mandatory reports that involves two elements. Alpine cannot defeat summary judgment by insisting that the first element by itself is not sufficient.

Alpine's argument that the Commission ignored evidence extrinsic to Alpine's files also fails because Alpine has never produced transaction-specific evidence extrinsic to its files. Opp. at 18. The Commission has requested any extrinsic evidence relevant to any of the underlying transactions many times and Alpine has identified none. Alpine's corporate designee, charged with Alpine's knowledge about the SARs presented to him during his deposition,[2] could not

---

[2] Alpine's Rule 30(b)(6) deposition notice identified as matters for examination the subjective reasons for filing the SARs discussed at the deposition and Alpine's subjective reasons behind the content in the SARs. Alpine Deposition Notice at p. 6, Items 17-18 & Table A-1, attached as

offer any facts specific to any of these transactions. SEC SOF 23. The Motion also challenged Alpine to present evidence about the underlying transactions. Motion at 10; *see also* SEC Ex. 1 ¶ 35 ("Together with the red flags, patterns of routine suspicious transactions from similar introducing brokers and similar accounts, and the absence of documented investigations … the large deposits of low-priced securities gave Alpine a reason to suspect…."). But Alpine presented no transaction specific evidence extrinsic to its files in response to the Motion.

To be sure, Alpine touts generalized testimony about its AML program many times, including the claim that it developed an adequate procedure to monitor Section 5 violations. This testimony about a general program (even if credible) is not material because it has nothing to do with whether the specific Deficient SARs were mandatory. Opp. at 22-23. This is because nothing in Section 1023.320(a)(2) suggests that an adequate procedure to monitor for one type of suspicious activity discharges or excuses SAR filing requirements.

Alpine also misses the point by presenting an example SAR peppered with indicia of suspicious activity. Opp. at 20-21. The Motion showed that this SAR was mandatory because (1) it reported a large deposit of low-priced securities and (2) Alpine's files showed that the deposit was at least 300% of the average trading volume. Alpine responded by quoting the SAR narrative, which also indicates that the transaction (a) involved foreign parties; (b) potentially involved unregistered broker-dealers; (c) involved "a lot of promotional activity", and (d) involved parties with criminal and regulatory history." Opp. at 20-21. Rather than show that a deposit 300% of the average trading volume is not an indicator of suspicious activity (it is),

---

Exhibit 1; *see also* Excerpts of Deposition of Christopher Frankel at 14[9]-15[9], attached as Exhibit 2.

Alpine's example instead shows how flawed and extreme its position on voluntary SARs actually is—Alpine will not even concede that this transaction triggered a mandatory filing.

Similarly, Alpine's reliance on the fact that the Commission does not seek summary judgment on a portion of SARs identified in the Commission's initial disclosures is misplaced. Opp. at 21-22. To the extent relevant, the differences show that the Commission's expert engaged in a careful and independent analysis. The fact that the Commission's expert segregated transactions involving less than $5,000 does not mean that the SARs reporting these transactions were voluntary. The Commission reserves the right to pursue these deficient SARs as mandatory reports of patterns of transactions that involved more than $5,000 if this case proceeds to a jury trial. Alpine should take little comfort in the fact that the Motion does not seek summary judgment on even more SAR filings—and that fact certainly creates no dispute of fact material to what Alpine's records contain.

> **b.      Alpine's challenge to other indicia of suspicious activity in isolation.**

Alpine takes a familiar approach to the second element of the Motion's formulation by arguing that the presence of red flags, by themselves, are not sufficient to trigger mandatory filings. Opp. at 28-29. Again, these arguments do not confront the Motion's argument that these red flags give a reasonable broker dealer reason to suspect criminal activity <u>when coupled</u> with a large deposit of low priced securities. Moreover, Alpine does not dispute the fact that Alpine repeatedly filed SARs on transactions for the same customers. *See* Motion at 11-12. Nor does Alpine dispute that repeated SARs filed on the same customers constitute an additional indicator of suspicious activity. Motion at 11-12.

Where Alpine does address specific red flags in connection with the issue of mandatory filings, these arguments do not defeat summary judgment for the following reasons:

Criminal and regulatory history. Alpine argues that one of the accounts with known criminal or regulatory history dating back to at least 2010 is not an indicator of suspicious activity because Alpine received a statement attributed to an attorney from its introducing broker dated August 4, 2014, delivered in support of a request for an exception to Alpine's policy that limits sales of OTC securities to a certain percentage of an issuer's float. Opp. at 29; *see also* Alpine Ex. 133. This letter (1) confirms that Alpine knew that the customer had regulatory history involving allegations of "material misrepresentations to investors and misused investor funds;" (2) postdates many Deficient SARs dating back to 2011; and (3) contains an attorney's statement that, for whatever it is worth, opines only that the regulatory history should not "negatively impact" business with the customer. It does not defuse suspicion.

Alpine's own SARs show that this letter did not defuse suspicion. This customer is the same customer described in the SAR quoted in the Opposition, Opp. at 20-21, which is dated nearly a year after August 2014. *Id.*; *see also* Alpine Ex. 178. Alpine's corporate representative also agreed that the SEC investigation was "a reason. Not the reason, but a reason" Alpine filed a separate SAR. Exhibit 2 at 151[16]-153[21]. Even with the assistance of leading questions, Alpine could not explain why one SAR would include the regulatory history but others did not. *Id.* at 159[3] ("I don't know why it's not in there.").

Notwithstanding the SARs in which Alpine states that the regulatory history is suspicious, Alpine also argues without citation that a reasonable broker dealer would not consider this regulatory history suspicious. Opp. at 29. This is not evidence. Alpine presents no

evidence of a lay or expert witness who reviewed any of the Deficient SARs and related Alpine files to determine whether a reasonable broker dealer would suspect the transactions reportable. Accordingly, these arguments create no issue of what a reasonable broker-dealer would suspect. *Curtis v. Cenlar FSB*, No. 13-CV-3007-DLC, 2014 WL 5778046, at *3 (S.D.N.Y. Nov. 6, 2014) ("[C]onclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment.").

Low Trading Volume. The Motion identified as a red flag of penny stock abuse instances where the deposit met or exceeded 300% of the average daily trading volume. SEC Ex. 1 ¶ 50. In response, Alpine's expert states that low trading volume is not a red flag because many deposits cleared by Alpine involve low trading volume and a SAR would be required on the majority of microcap transactions under her view of the analysis set forth in the Order and Motion. Opp. at 29-30; Alpine Ex. 5 ¶ 233. This is another straw man argument. The Commission's theory on low trading volume employed a threshold for this very reason, and the fact that the Motion did not sweep the "majority of microcap transactions" cleared by Alpine into the subcategory of low trading volume shows that Alpine's expert is aiming at something other than the Motion. She addresses the use of 300% to identify suspicious activity once by merely stating that the Commission's expert cites no authority for that threshold. Alpine Ex. 5 ¶ 234. This is wrong, it is not evidence, and is not an "expert" opinion (nearly all of her declaration is the same legal argument asserted by Alpine's counsel). The foundation for the threshold used in the Motion is the experience and judgment of the Commission's expert set forth in her report and declaration, which Alpine's expert does not challenge. Alpine's expert also offers no higher threshold that, in her view, would be more appropriate to capture suspicious activity and she did not review the

Deficient SARs to understand what a reasonable broker-dealer would suspect under similar circumstances.

<u>Shell Companies</u>. With respect to transactions involving shell companies, Alpine repeats its common argument that the mere presence of this red flag is not "automatically suspicious." Opp. at 30. This argument fails for the same reasons above: this red flag triggers a SAR filing obligation when connected to a large deposit of low-priced securities.

<u>Stock Promotion</u>. Alpine does not dispute the Motion's premise that stock promotion coupled with a large deposit of low priced securities triggers a SAR filing obligation. Opp. at 30-31. Instead, Alpine argues that the stock promotion evidence contained in its own files was not actually suspicious. Opp. at 30-31. This argument, which is really another challenge to the Order styled as an attack on the evidence attached to the Motion, is addressed below.

* * * *

There is no need for trial on the issue of whether the Deficient SARs were mandatory. The Motion presented evidence of information contained in Alpine's files, which will be admissible at trial and shows that each of the underlying transactions involved a large deposit of low priced securities and other indicia of suspicious activity. The Motion also contains evidence that a reasonable broker-dealer under similar circumstances would have suspected the transaction was subject to SAR reporting, but Alpine presented no evidence from a lay or expert witnesses who reviewed the SARs and supporting files that could create a dispute of fact. Accordingly, summary judgment is appropriate on the issue of whether the Deficient SARs are mandatory.

**B.** **The Opposition Fails to Create a Genuine Dispute as to Any Material Fact in Response to the Motion's Demonstration that the Deficient SARs Omit Required Information.**

      **1.** **Alpine's Arguments About the Commission's Summary Charts and Expert are Unfounded.**

Assuming the exemplar SARs discussed in the Order were mandatory, the Court ruled that Alpine had a duty to include seven subcategories of information in SARs. Order at 65. The Motion presented evidence prepared by the Commission's retained expert that summarized Alpine's voluminous records showing that the Deficient SARs (which are mandatory for the reasons above) omitted the same information identified in the Order's seven subcategories.[3]

The Commission submitted these summary exhibits pursuant to Fed. R. Evid. 1006 to "prove the content" of thousands of SARs and voluminous support files. *See* SEC Ex. 1, ¶¶ 27-28; SEC Exs. 3-12, 17 (collectively the "Summary Exhibits"). For the Summary Exhibits to be admissible under Rule 1006, the underlying documents must (1) be "voluminous" and not "conveniently examined in Court" and (2) made "available for examination or copying by other parties at a reasonable time and place." F.R.E. 1006. Alpine does not dispute that both elements were satisfied with respect to the Summary Exhibits, nor does it dispute the admissibility of the underlying business records.[4] Opp. at 32-37. The Summary charts satisfy Rule 1006 because they "fairly represent and summarize the evidence upon which they are based." *United States v. Citron*, 783 F.2d 307, 316 (2d Cir. 1986) (citation omitted).

---

[3] The Commission's expert also created summaries of evidence related to other categories of violations ruled on by the Court, such as "Unreported Liquidations" and "Untimely SARs."

[4] Alpine argues that the exhibits "contain the expert's conclusions" and are therefore "subject to the same standards for admission of expert testimony." *See* Opp. at 33, fn. 17. The Commission addresses this argument below.

Alpine challenges the admissibility of the charts based in part on erroneous claims of purported "inaccuracies" and repeated arguments about the legal consequences of the information accurately summarized by the charts. For example:

- Alpine erroneously claims that Ex. 10 is inaccurate because "there are 17 instances of SARs that are listed on the SEC's Ex. 10 twice, as two separate violations." Opp. at 35. This no error because, according to Alpine's files, these are not "duplicate" SARs. All of the purported duplicates were produced as separate SARs by Alpine, have different Bates numbers, and 13 of the 17 supposed pairs of duplicates show that they were filed on *different dates*. *See* Opp. at 35; Alpine Ex. 242; SEC Ex. 10. The error, if any, lies with Alpine's records not the accuracy of SEC Ex. 10.

- Alpine argues that the inclusion on SEC Ex. 5 of SARs of transactions where the issuer is a "former shell" demonstrates that the exhibit is inaccurate, but the Court found as a matter of law that former shell status was required to be disclosed in a SAR in its Order, Order at 51, and Alpine admits that the chart specifically identifies transactions as involving "former shell" companies. *See, e.g.*, Opp. at 36; Alpine Add'l SOF 271 ("Table A-3 includes 104 SAR where the alleged omission is a "former" shell company without any regard to…the support file showing that the company is no longer a shell.").

- Alpine claims that SEC Ex. 6 contains "error or irregularity" because it summarizes information in Alpine's files regarding stock promotion activity that is not "ongoing," another red flag on which the Court rendered summary judgment, Order at 55, but Alpine does not dispute that the summary exhibit accurately reflects information about stock promotion contained in Alpine's files. *See* Alpine Add'l SOF 203, 273; s*ee also*, Alpine Add'l SOF 266, 277 (claiming that inclusion of information about "3rd part[ies]" on SEC Ex. 4 is an "error or irregularity" but not challenging that the exhibit accurately reflected that information in Alpine's files relates to "3rd part[ies].")

- Alpine claims that SEC Ex. 10 erroneously includes SARs that failed to meet the basic elements of the "5 Ws" but were not included in any of the other six subcategories. Opp. at 36. This is not an error. SARs were included in SEC Ex. 10 if they omitted information from the other six categories **or** were suspicious because they were filed on repeat customers (or both). Motion at 11-12.

In response to the relatively few instances Alpine has demonstrated an error in the thousands of entries on the Summary Exhibits, the Commission makes the following corrections:

- SEC Ex. 5: three "shell" company entries changed to "former shell," and two entries added to indicate whether Alpine's files indicate "shell" or "former shell." *See* Exhibit 3, Addendum to SEC Ex. 5, attached hereto.

- SEC Ex. 7: six "Unverified Issuer" SARs removed. *See* Exhibit 4, Addendum to SEC Ex. 7, attached hereto.

- SEC Ex. 8: seven "Low Volume" SARs removed. *See* Exhibit 5, Addendum to SEC Ex. 8, attached hereto.

The few inaccuracies cited by Alpine confirm the charts are accurate and that there is no factual dispute a jury needs to decide. *See* Order at 65. The Court's ability to request the summarized documents is another safeguard built into Rule 1006. A jury trial is not necessary to decide what information is contained in Alpine's records.

Alpine's argument that the Summary Exhibits are not admissible under Rule 1006 because they "contain the expert's conclusions" is unfounded. *See* Opp. at 33 n.17. The Commission's expert reached opinions *about* the information in the exhibits; the exhibits do not summarize those opinions. The expert's declaration contains expert opinions. The exhibits contain facts on which those conclusions were built.

Even if the Summary Exhibits were not admissible under Rule 1006, the exhibits, along with the opinions of the Commission's expert, are admissible under Rule 702 and 703. Alpine asserts that the methodology employed by the Commission's expert was deficient based on the format of the Summary Exhibits submitted with her declaration and the fact that her staff assisted in the review of documents and preparation of the exhibits. Opp. at 34. Neither of these arguments hold water. Alpine appears to conflate the format or "presentation" of summary charts prepared by the Commission's expert and her staff with the "methodology" that was employed in reaching her opinions. *Id.* The Commission's expert reached her opinions based on her review of

16

Alpine's SARs and support files, with the assistance of professional staff she directed and supervised,[5] and application of her extensive experience and expertise in the field (which Alpine doesn't challenge). *See* SEC Ex. 1, ¶¶ 1-8, Opp. at 32-37. Alpine does not point to any authority to suggest this methodology is unreliable or any other methodology that is an "established, appropriate or reliable way to determine a violation of the BSA." Opp. at 34.

Alpine also claims that, because it is possible that every red flag is not "automatically" required to be included in a SAR, the Summary Exhibits are inconsistent with the Commission's expert's view of SAR narrative requirements. Opp. at 34. Alpine's effort to isolate elements of the formulation contained in the Order and Motion fail for the reasons above. The Commission's expert opined that when faced with a large deposit of penny stock securities **and** other indicia of suspicious activity present in Alpine's files, a reasonable broker-dealer would suspect the transactions were reportable. *See* SEC Ex. 1 ¶ 32. Alpine's stubborn arguments about an "automatic" test that does not appear in the Motion or Order does not defeat summary judgment.

Alpine argues that if any SAR included on the Summary Exhibits does not have the precise characteristics of the handful of SARs the Court found insufficient as a matter of law in its Order, the "process" was "at odds" with the Court's Order. Opp. at 34-35. The Order was "intended to provide guidance to the parties," and the Court repeatedly explained not only why the specific SARs it ruled on were deficient, but the broader principles behind its decisions. *See*

---

[5] The Commission's expert controlled the methodology of the review and verified the work of her staff by reviewing samples of SARs in each category. *See* SEC Ex. 1, ¶¶ 27-30, Alpine Ex. 10 at 138-140. Alpine's citation to *Washington v. Vogel*, 880 F. Supp. 1545 (M.D. Fla. 1995), is inapposite. Opp. at 34. In *Washington*, the issue was reliance by the expert on a New Jersey traffic study conducted by an unrelated third party that the expert did not "independently verify" and "was unable to justify application of [to traffic in Florida]." The court did not, as Alpine suggests, exclude testimony of an expert because professional staff that he or she directed and supervised assisted with document review.

Order at 45, fn. 19; *see also, e.g.*, *id.* at 49-64. Consistent with the Court's Order, the Commission's expert rendered her own independent opinions regarding many hundreds of SARs based on omitted information about underlying transactions and grouped them into categories that correspond with the Court's Order. Alpine does not offer any explanation of why this would make the expert's process unreliable or inconsistent with the Order. Opp. at 35.

Finally, Alpine challenges the Commission's expert's opinions by asserting that they are "legal opinions" and claims the Summary Exhibits contain "embedded legal argument." Opp. at 36-37. The Commission's expert has decades of experience working with broker-dealer BSA and AML compliance as a regulator, consultant, and interim leader of BSA/AML compliance at financial institutions where she had responsibility for groups that identified, investigated, and reported suspicious transactions and filed SARs where appropriate. *See* SEC Ex. 1, ¶¶ 1-9, 32. The Commission's expert is clear that her opinions, including her opinions that certain information would "give a broker dealer a reason to suspect" that a transaction involved using Alpine to facilitate criminal activity, are based on her extensive "experience and knowledge" of the broker-dealer industry and suspicious activity reporting, not the law. *See* id. The Commission's expert reached opinions by applying facts against a standard of care she is qualified to measure. Those opinions are not legal opinions.

> **2.    The Deficient SARs set forth in the Motion followed guidance from the Court.**

As explained above, the Motion followed the examples set forth in the Order to develop the tables of Deficient SARs presented in the Motion. Alpine argues that the Motion failed to track the guidance in the Order again because its SARs were voluntary. Opp. at 38. This argument is incorrect for the reasons above, and the argument that the Commission seeks

summary judgment on transactions involving less than $5,000 is not correct—at other parts of the Opposition Alpine actually relies on this fact to manufacture a perceived inconsistency. *Id.*

Alpine also argues that the Motion does not track the Order based on several types of information the tables do not contain. First, Alpine argues that the Commission's expert affirmatively stated that the "5 Ws" are satisfied if a SAR was not included in SEC Ex. 3. This is not correct—that table collected SARs where it was apparent on the face of the SAR that it failed to satisfy the 5 Ws. SEC Ex. 1, ¶ 35. Where the face of a SAR appears to satisfy the 5 Ws but omits a red flag contained in the support file, it was not an error or inconsistency to include the SAR in other tables but not SEC Ex. 3.

### 3.      The Order contains no "materiality" requirement.

In conclusory fashion and for the first time, Alpine asserts that a "reasonable investor" based materiality standard applies to BSA violations alleged here. *See* Opp. at 39-40 (citing cases addressing the materiality of disclosures to investors under the federal securities laws). To the extent this materiality concept alters the guidance provided in the Order, this argument should be denied under the law of the case. To the extent the concept merely restates the guidance in the Order, this argument does not advance the analysis here. It should be disregarded.

### 4.      Alpine fails to identify specific defects in the Motion's analysis.

<u>Criminal or Regulatory History.</u>  The Commission "easily carried its burden of showing" that each of exemplar SARs D, E, and F "was deficient as a matter of law for its omission of the criminal or regulatory history of a related party" contained in Alpine's support files because Alpine had a duty to describe the kind of criminal and regulatory history contained in these examples. Order at 48-49. The Commission followed this guidance in the Motion by submitting

19

evidence of 675 Alpine SARs that, like the SARs in the Order, omitted information about customers and related parties contained in Alpine's files. *See* SEC Ex. 4; SEC Ex. 10.

In Response, Alpine does not raise a material dispute about the accuracy of SEC Ex. 4. Although Alpine asserts the conclusory claim that SEC Ex. 4 is "full of errors and contradictions," Alpine identifies only 3 out of 675 SARs on Ex. 4 that it contends were erroneously included in the exhibit. *See* Opp. at 43; Alpine Add'l SOF 186(c)-(e). And the supposed "error" is subtle. The charts accurately reflect the name of an individual contained in the support files' checklists, which appeared in multiple support files. Alpine argues that the middle initial of the name listed in Alpine's files as associated with the transactions was incorrect, and the individual actually associated with the transactions did not have a prior charge for an accounting violation. SEC Ex. 4 therefore accurately reflected Alpine's files.[6] *See id.*; Alpine Add'l SOF 186(c)-(e). The fact that Alpine identified only these three SARs as potential inaccuracies, if anything, bolsters the reliability of the exhibit.

Substantively, Alpine challenges inclusion of 98 SARs in SEC Ex. 4 because they omit information about a "third party," but Alpine only attempts to rebut the SEC's evidence that 10 SARs omitted information required under the Court's Order. However, the 10 SARs actually challenged by Alpine demonstrate why information about "third parties" is suspicious under the

---

[6] Each SAR support file cited by Alpine contains a Deposited Securities Checklist in the supporting file that shows *Alpine itself* checked a box indicating that the "client or issuer control persons [has a] prior or pending regulatory action" and, under the description, identifies the individual "charged for accounting violations by SEC." *See* Alpine Ex. 112 at pg. 4; Alpine Ex. 115, at pg. 3; Alpine Ex. 117 at pg. 3. There is no indication on the checklists that Alpine determined that this was a different individual than the one involved in the transactions and the tables accurately reflect the information in Alpine's files. *See id.*

Court's Order.[7] The support files for 8 of the 10 SARs identify the "third party" as the CEO or CFO of the issuer, 6 of the SARs omitted information about prior SEC enforcement or criminal actions, and 4 of the SARs omitted information about civil actions alleging securities fraud or other securities related violations. *See* Alpine Add'l SOF 186. Alpine does not, because it cannot, point to any law or guidance establishing that criminal or regulatory history of "third parties" involved in the transaction, or even "civil actions" alleging securities fraud, are not suspicious or required information under the Court's Order. Although Alpine styles this argument as an issue of evidence, this is a legal dispute about whether it was required to disclose the information in its files in these 10 SARs, which is appropriate for the Court to decide on summary judgment just as it did in the Order. Alpine has failed to put forth any evidence to dispute the SEC's evidence in SEC Ex. 4 showing that the other "third party" SARs omitted required information. Opp. at 41-45; Alpine Add'l SOF 186.

With respect to the SARs that omitted information about the customers (as opposed to "third parties"), Alpine does not offer any evidence to dispute that it omitted criminal or regulatory information about the customers in its files from the SAR narratives. Opp. 40-45; Alpine Add'l SOF 179-188. Testimony cited by Alpine suggesting that it may have knowingly done so at times, for unidentified SARs, does not create a material factual dispute with respect to the omission of information from any of the specific SARs at issue in this case and, if anything,

---

[7] Alpine attempts to support its argument by pointing to one SAR ("Violation 701", Opp. at 43-44; Alpine Add'l SOF 186(h)) that actually shows why it is wrong. Alpine incorrectly states that it is "another third-party, non-regulatory private action" inappropriately included on SEC Ex. 4. Opp. at 44. Alpine discloses in its Statement of Facts that the support file actually states that the individual was charged with a "bribery kickback scheme." Alpine Add'l SOF 186(g)(emphasis added). That the CEO of the microcap issuer had been "charged with a bribery kickback scheme" is a reason "why" the transaction was suspicious and should have been included in the SAR narrative.

shows a willful omission of required information from SARs. Opp. at 43. Similarly, Alpine's

admission that it was aware that a handful of customers that relate to the vast majority of

offenses had regulatory histories, and at times received letters confirming this information and

stating an attorney's opinion that it should not "negatively impact" business with the customer,

does not create a factual dispute regarding omission of the information from the SARs. Opp. at

42-43; Alpine Add'l SOF 177-180.

As Alpine has acknowledged, the majority of the SARs summarized in SEC Ex. 4 relate

to three customers. *See* Alpine Add'l SOF 187-188. Alpine does not dispute that it was aware of

their criminal or regulatory history information as evidenced by its support files, or that it

omitted this information from SAR narratives. Accordingly, it is particularly clear that there is no

factual dispute regarding these SARs and that they are ripe for summary judgment.

This is especially the case with Customer E. Alpine omitted regulatory background

information from hundreds of SARs related to Customer E, *see* SEC Ex.1 at 23; SEC Exs. 4, 10,

and Alpine does not dispute that it knew about an SEC enforcement action and failed to disclose

it in SARs. Instead Alpine argues that there is a "factual" dispute over whether it was required to

do so. Alpine Add'l SOF 188(a). There is not. The Court held that the SEC had "easily carried its

burden of showing" that a SAR filed by Alpine "was deficient as a matter of law for its omission

of the [Customer E and CEO] criminal or regulatory history…" Order at 48 (discussion of SAR

D).[8] For the Court's convenience, the SEC has attached Exhibit 6, Addendum to SEC Ex. 4-

Customer E. This addendum lists SARs contained in SEC Ex. 4 that omitted information about

---

[8]  Alpine's argument that it was not required to report the SEC action because it was an "ongoing
regulatory action," is inconsistent with the Order which ruled that Alpine was required to
disclose the action while it was pending. Alpine Add'l SOF 188(a); Order at 48.

the SEC action against Customer E. The Court should grant summary judgment on these SARs

for the same reasons it granted summary judgment on Sample SAR D.

     <u>Shell Company Involvement or Derogatory History of Stock</u>. The Court granted

summary judgment based on Alpine's omission of information from SAR narratives regarding

the shell status of securities issuers: "Alpine's file for SAR A indicates that the issuer of the

deposited stock was a shell company, and the file for SAR C indicates that the issuer had been a

shell company within the last year" and held that "[t]he SEC has shown that Alpine's failure to

disclose…the above described information about the issuer…was a violation of the law." Order

at 51. The SEC moved in its Motion for summary judgment on the deficiency of SARs that, like

SARs A and C, omitted shell company information contained in Alpine's files. *See* SEC Ex. 5.

     In response, Alpine makes two legal arguments premised on misstatements of the Court's

prior holdings. First, Alpine erroneously claims that the Motion deviates from the Order because

the Court held that only the shell status of a "customer" (not the issuer) need be disclosed in SAR

narratives. Opp. at 45. In fact, SARs A and C in the Order involved transactions where the issuer,

not the customer, were current or former shells and the Court ruled that Alpine's failure to

include this information in the SAR narratives "was a violation of law." Order at 51. Next,

Alpine challenges SARs that involve issuers that were "former shells" but, again, ignores the

Court's holding that SAR C was deficient as a matter of law because it omitted information

about the former shell status of the issuer. Opp. at 46; Order at 51. Consistent with the Order, the

Motion includes SARs that omitted both "shell" and "former shell" status.

     Alpine also tries to frame its argument about "former shells" as a factual dispute. But

there is no material dispute of fact. Alpine has not directed the Court to any evidence to rebut the

evidence summarized in SEC Ex. 5 demonstrating that the underlying issuers were current or former shells at the time of the transactions, a fact that was not disclosed in Alpine's SARs.[9] *See* Opp. at 45-47; Alpine Add'l SOF 198. That some support files indicate that "a former shell was 'cured'" simply confirms that the issuer was a former shell, and Alpine does not argue otherwise. *See* Opp. at 46. A jury trial on the content of Alpine's files is not necessary.

Alpine is correct that Ex. 5 also summarizes evidence of SARs that omitted derogatory information about issuers, such as frequent name changes, and "Caveat Emptor" designations. Opp. at 46-47. However, Alpine is wrong that there is a "genuine issue of material fact" regarding these SARs. *Id.* Alpine proffered no evidence to rebut the evidence that the SARs omitted the information as reflected on Ex. 5. *See* Alpine Add'l SOF 198. Instead, Alpine argues that it was not required to disclose derogatory information in the SARs, notwithstanding that it often identified the information as suspicious. *See, e.g.*, Alpine Ex. 178 (the issuer "has undergone multiple name changes since its inception…This raises red flags regarding the legitimacy of the company."); Alpine Ex. 176 ("Alpine is also filing this SAR because [the issuer] is currently listed as a "stop sign" on www.otcmarkets.com... For this reason this deposit may also be potentially suspicious."). Alpine was required to disclose derogatory information about the issuer, such as a "stop order" or "no website," when it filed a SAR on the transaction because it was "at the very least responsive to the Five Essential Elements." Order at 53. For the same reasons that the Court granted summary judgment on the deficiency of SAR G, the Court should grant summary judgment as to the SARs summarized by SEC Ex. 5.

---

[9] In some cases, SEC Ex. 5 listed what appear to have been "former shells" as "shells" and two entries on the exhibit reflected a Bates number but did not identify whether it was a "shell" or "former shell." The SEC has attached Exhibit 3, Addendum to SEC Ex. 5, to amend these entries.

Stock Promotion. The SEC "carried its burden to show that Alpine was required to add to the SAR narrative the evidence of stock promotion activity that appeared in Alpine's files" for SARs G, H, and J. Order at 55. According to Alpine's support files, SAR G was promoted more than a month before the transaction, SAR H was promoted a little less than a month before the transaction, and SAR J was last promoted nearly two months before the transaction. *See* SEC Mot. Part. S.J. Exs. 27-31. The SEC has moved for summary judgment on the deficiency of SARs listed on SEC Ex. 6 that omit information about promotional activity related to the deposited security contained in Alpine's files.

Alpine's argument that the SEC was required to show that the securities underlying each of the SARs were part of an "ongoing" promotional campaign is contrary to the Court's prior rulings establishing that Alpine was required to disclose promotional activities that occurred weeks or months prior to the deposits. Opp. at 47-48; Order at 55-57. Like the transactions underlying SARs G, H, and J, Alpine knew that the deposits were of millions of shares of penny stocks that had histories of promotion and failed to disclose the information in its SARs.

Alpine's claim that there is a "factual" dispute based on Alpine's purported subjective consideration of customer involvement with the promotion fares no better. Opp. at 47-48. This is yet another legal argument cloaked as a factual dispute, and the Court previously ruled that SAR H was deficient as a matter of law because it omitted information about promotional activity even though, as the SEC noted to the Court, the support file states that the stock promotion "does not appear to be related to client." SEC Mot. Part. S.J. SOF  at 7-8; SEC Mot. Part. S.J. Exs. 28, 29; Order at 55. Alpine has not submitted evidence disputing that Alpine omitted information in the SARs listed on SEC Ex. 6 about promotional activities contained in

its files. *See* Opp. at 47-48; Alpine Add'l SOF 203. Accordingly, the Court should grant summary judgment on the deficiency of these SARs for the same reasons it ruled SARs G, H, and J are deficient as a matter of law.

        <u>Unverified Issuers.</u> The Court previously held that because "an Alpine employee was unable to locate basic information about the issuer whose stock was deposited" it was "required by law to include in its SAR the fact that it could not locate such information concerning an issuer." Order at 57. Sample SARs G, K, and L were deficient as a matter of law because they omitted that Alpine could not locate a company website for the issuer or that the issuer's corporate registration was in default. Order at 57. The Commission moved for summary judgment regarding SARs that each reported a large deposit of penny stock but failed to disclose that it knew the issuer's business registration was in default, website was not working, or that it had no current information available. *See* SEC Ex. 7. Alpine ignores the Order and argues that dead websites and expired business licenses are a "made up red flag." Opp. at 48. The Court did not make up this red flag. As the Court explained in its Order, "when a SAR is filed, it must include information about each of the Five Essential Elements of the suspicious activity, which includes 'what' is involved in the transaction" and "FinCEN guidance identifies unregistered and unlicensed businesses as indicative of suspicious transactions." Order at 56.

        Alpine's assertion that "it has established the existence of factual disputes as to each SAR" on SEC Ex. 7 is not backed up by evidence. Alpine repeatedly cites to documents in SAR support files, such as financial filings and opinion letters, that in no way refute the evidence in SEC Ex. 7 that the issuer's "website [is] not working" or "business registration [is] in default." *See, e.g.*, Alpine Add'l SOF 207; SEC Ex. 7. Alpine points to only a handful of specific SARs

and support files for which it asserts there is evidence to dispute the Commission's claim. *See* Opp. 49; Alpine Add'l SOF 206. For the purpose of this summary judgment motion, the SEC has removed 6 SARs from SEC Ex. 7. *See* Ex. 4, Addendum to SEC Ex. 7. For the same reasons that the Court found that SARs G, K, and L were deficient as a matter of law, it should rule that the SARs summarized on SEC Ex. 7 are deficient as a matter of law.

 <u>Low Trading Volume.</u> The Court noted in its Order that one element of a transaction that is suspicious and should be reported is a "[s]ubstantial deposit, transfer or journal of very low-priced and thinly traded securities.'" Order at 58. The Court ruled that "[a]ccordingly, three elements for such events must be reported: the substantial deposit of a security, the low price of the security, and the low trading volume in the security." Order at 58. The Court further ruled that "the SEC has demonstrated its entitlement to summary judgment as to SARs M, N, and P" because "[t]he sizable deposits, when combined with the low trading volume of a low-priced security, constitute red flags" and "Alpine had a duty to disclose in the SAR the reasons that made the filing necessary" but "did not do so." Order at 59. The Commission moved for summary judgment on the SARs Alpine filed for transactions that involved a substantial deposit of low priced securities and, according to the support file provided by Alpine, was approximately 300% or greater than the average daily trading volume of the security for the three months preceding the deposit. SEC Ex. 1 at ¶ 50. SEC Ex. 8 identifies the volume and stated value of each deposit, and cites to the pertinent supporting documents reflecting the information about

low trading volume relative to the size of the deposit in Alpine's support files that was omitted from Alpine's SAR filings.[10]

Contrary to the Order, Alpine claims that, "low trading volume is not a red flag," and that if it were, "one would expect that regulators would have provided clarity about what quantity of trading volume would qualify as sufficiently 'low' to require reporting." Opp. at 50. Alpine further claims that low trading volume information is not important because "information about trading volumes is publicly available." *Id*. As explained above in connection with the issue of mandatory filings, Alpine's arguments about the role of low trading volume fail to defeat summary judgment. "[S]*izable deposits, when combined with the low trading volume* of a low-priced security, constitute red flags." Order at 59 (emphasis added). The Motion presented evidence of SARs for large deposits of microcap securities that are orders of magnitude greater than the average daily trading volume of the securities, yet fail to report information about the low trading volume of the securities contained in Alpine's own files. Alpine does not dispute that a deposit of 300% of average daily trading volume is "sizeable" in relation to the low trading volume of the securities. And, as the Court recognized in its Order, Alpine's argument that it omitted information from SAR narratives that is publicly available is irrelevant. Order at 49-50.[11] Accordingly, the Court should grant summary judgment on the these SARs for the same reasons it granted summary judgement on SARs M, N, and P.

---

[10] The volume of the deposits, typically millions or tens of millions of shares, coupled with the relatively low stated value of the deposits, establishes that each transaction involved a large deposit of low priced securities.

[11]   For Purposes of the Motion, the Commission has removed from SEC Ex. 8 the seven SARs Alpine contends adequately discussed trading volume. *See* Exhibit 5 attached hereto.

Foreign Involvement. The SEC "carried its burden of showing that" Alpine "was required to include in the narrative sections" for SARs A, C, and H "the information about foreign connections to the transactions that it had in its files." Order at 61-62. The SEC moved for summary judgment on SARs that also omitted from their narratives information about foreign parties involved in the transaction that was in Alpine's files. *See* SEC Ex. 9. In response, Alpine asserts two primary arguments, both of which are inconsistent with the Order.

Alpine first argues that Exhibit 9  is overbroad because it includes SARs that omitted information in their narratives about connections to foreign jurisdictions that are not "high-risk." Opp. at 51. Nothing in guidance or the Order limits this requirement to "high risk" foreign jurisdictions. Order at 60-64. Alpine did not submit any evidence to support its statement or even identify which SARs or foreign jurisdictions fall into this category. Next, Alpine asserts that information about the foreign location of "customers" is in "data fields." Opp. at 51-52. The Court previously considered and rejected this specific argument. Order at 61-62.

Alpine also argues that "many" SARs listed on SEC Ex. 9 adequately disclose in their narratives information about foreign parties, but then provides evidence related to only three SARs. *See* Response at 52; Alpine Add'l SOF 215 (a-c). Each of these SARs shows that, like SAR C, the foreign location of the customer was included in one part of the SAR, but not the narrative. *See* Alpine Add'l SOF 215 (a-c). Finally, Alpine asserts, without providing evidence, that each SAR on SEC Ex. 9 omits information about a particular foreign jurisdiction in the narrative discloses an address in that jurisdiction in a different part of the SAR. *See* Alpine Add'l SOF 215(d) (Alpine does not contend disclosed in the narrative). For the same reasons discussed above, Alpine was required to disclose the information about foreign connections in the SAR

narrative. Accordingly, the Court should grant summary judgment on the deficiency of each SAR listed on SEC Ex. 9.

## II.    ALPINE OFFERS NO EVIDENCE TO CREATE A DISPUTE OF FACT MATERIAL TO THE STANDARD SET FORTH BY THE COURT ON LIABILITY FOR FAILURE TO REPORT LIQUIDATIONS.

The Commission presented examples of suspicious deposit-and-liquidation patterns in which Alpine filed SARs on deposits but did not report related liquidations. Order at 66. In response, Alpine argued that sales were not suspicious and that, in any event, the Commission improperly supported its motion with charts without disclosing what data was used. Order at 66-68. The Court rejected Alpine's arguments that the liquidations were not suspicious, and ruled that the Commission is entitled to summary judgment on Alpine's failure to file SARs on liquidations "conditioned upon its ability to demonstrate to Alpine, and if necessary to this Court, that is charts are accurate." Order at 68-69 (quoting Fed. R. Civ. P. 1006).

In the Motion, the Commission followed the Court's guidance by submitting charts showing the same type of deposit-and-liquidation patterns, as well as evidence explaining the data used to create the charts, namely Alpine's own SAR filings and trade blotter information produced by Alpine. Motion at 15-16. Alpine does not dispute the accuracy of the charts and does not dispute that the transactions described in SEC Ex. 11 actually occurred.[12] This should

---

[12] Although Alpine does not claim that a single transaction described in SEC Ex. 11 did not occur as described, and Alpine does not dispute that it provided trade blotter information to the Commission, Alpine still objects to a declaration submitted to authenticate the data used to create SEC Ex. 11, a summary chart offered pursuant to Fed. R. Evid. 1006, because Alpine claims that the declarant was not listed in the Commission's Rule 26(a)(1) disclosures. This argument is a red herring. There is no need to depose the declarant because the information contained in SEC Ex. 11 will be admissible at trial because there is no dispute that the information is derived from Alpine's business records. Alpine could easily test any of the summarized transactions by referencing its own files but identified no flaws in its Opposition. Alpine also cannot be surprised

be the end of the analysis under the standard set forth in the Court's Order. There is no need for a trial to prove that the transactions described in SEC Ex. 11 actually occurred. Order at 68-69.

In any event, the arguments in the Opposition on these claims are incorrect. *First*, Alpine argues that a sale of stock following a deposit, by itself, is not suspicious. Opp. at 53. This argument fails to defeat summary judgment because the Commission never asserted otherwise. In addition to the fact that a sale followed a deposit, additional indicia of suspicious activity includes the facts that the deposits involved large volumes of penny stocks and the fact that Alpine reported the deposits as suspicious. Motion at 15-16. The Court has already ruled that this set of facts triggers a supplemental reporting obligation as a matter of law. Order at 68.

*Second*, Alpine's argument about the policy of requiring supplemental reporting has no support in the SAR rule and does not acknowledge different methods of reporting available to Alpine. Opp. at 53-54. Failing to report liquidations in suspicious deposit-and-liquidation patterns deprives law enforcement of the source of funds coming into potentially manipulative schemes and the destination of shares. Nothing in the SAR rule suggests that this information becomes undesirable if a firm routinely clears many suspicious transactions. Alpine could reduce the number of SAR filings (if this were actually a problem) by reporting multiple transactions in a single report. Alpine offers no reason to second-guess the plain requirements of the SAR rule, which does not excuse a firm from filing requirements because the firm routinely clears suspicious transactions.

---

by the identity of the declarant because (1) he was previously identified numerous times in this case; (2) he communicated routinely with Alpine during the investigation leading to this case; and (3) in the Commission's Rule 26(a)(1) disclosures served on September 22, 2017, the Commission identified "[s]ummary witness(es) pursuant to Fed. R. Evid. 1006" and "[a]ny witness necessary to identify or authenticate documents" as individuals likely to have discoverable information. *See* Exhibit 7 attached hereto.

*Third*, Alpine's argument that it had a policy to review sales is not supported by the evidence and beside the point because Alpine clearly did not actually follow that policy. Opp. at 54-55. Even if such a policy did exist and were followed, it does not defeat summary judgment because there is no scienter requirement here. The only issue is whether the suspicious deposit-and-liquidation patterns described in the chart attached to the Motion actually occurred.

*Fourth*, Alpine's arguments about the content of the manner in which the transactions on SEC Ex. 11 are grouped do not defeat summary judgment. The argument that a group should consist of all deposits and sales of the same stock by the same customer overlooks that discrete time periods were used to group the transactions into patterns because, as the Court acknowledged, sales close in time to deposits indicate market manipulation. Order at 68. The argument that the amount of shares deposited does not always equal the amount of shares sold does not help because (1) penny stock abuse does not require an equivalent amount of shares deposited and sold; and (2) the chart only captures sales over $5,000 and deposits reported by Alpine—it is entirely possible that additional transactions could be added to the groups.

*Finally*, Alpine confuses the relationship between patterns or "groups," on the one hand, and the number of violations, on the other hand. Opp. at 54-55. The demonstration of a suspicious pattern means that each of the transactions in the pattern must be reported. The number of violations counts the number of unreported transactions that required supplemental reporting. The number of violations will necessarily be higher than the number of patterns.

In short, the information contained in SEC Ex. 11 satisfies the standard for summary judgment set forth in the Order, and Alpine has offered no evidence to create a genuine dispute of material fact under this standard.

**III.    ALPINE PRESENTED NO EVIDENCE TO DISPUTE THE LATE-FILED SARS.**

The Court ruled that the SEC is entitled to summary judgment on SARs where no other evidence suggested that the 30-day time period for filing should begin to run at some date other than the date of the transaction. Order at 74 ("The information that triggered the duty to file a SAR was available to Alpine at the very time that the five transactions reported in these SARs occurred."). The Motion presented 252 similar late-filed SARs for which no other evidence suggested a different time for the 30-day time period to run. Motion at 17-18. In response, Alpine does not present any evidence for any specific transaction that the date to begin the 30-day time period could be anything other than the date of the transaction. This failure is fatal under the standard set forth in the Order.

Instead, Alpine argues that the late-filed SARs were voluntary. This argument is defeated by Alpine's own admission that it filed the SARs because FINRA notified Alpine that they should be filed, *i.e.* Alpine had a reason to suspect that the transactions were reportable. Opp. at 60. This argument also is defeated by the testimony of Alpine's employee that, for the SARs with a date range used to describe the date of the transaction, the end date of the range was actually the date on which he determined that the transaction was suspicious. SEC Ex. 13 at 44[17-25] ("Q: I want to understand which part of the deposit took place on May 4th ... A: […]The deposit came into Alpine on 12-8-2011. I filed the SAR on 5-25-2012. I would have found it suspicious on 5-4-2012." (emphasis added)). For the SARs without a date range, the employee testified that he must have determined that the transaction was suspicious within 30 days of filing the SAR. SEC Ex. 13 at 51[5-11] ("The date I found it suspicious would have been

the date that I filed the SAR, or 30 days prior to that." (emphasis added)). In other words, he

subjectively believed the transactions were suspicious.

Because Alpine presented no evidence about a specific transaction reported in the SARs

listed in SEC Ex. 12 that could create an issue of fact material to whether Alpine timely filed the

SARs, the Commission is entitled to summary judgment on these SARs for the same reasons set

forth in the Order.

## IV.    ALPINE POINTS TO NO EVIDENCE THAT IT PRODUCED THE MISSING SUPPORTING DOCUMENTS WHEN REQUESTED IN 2016.

Pursuant to the Order, the Commission is entitled to summary judgment on its claim for

failure to maintain and produce supporting documents if it presents evidence of a search of the

2016 documents produced that fails to locate the supporting documents. Order at 76. The Order

noted that Alpine can respond to this evidence "by identifying supporting documents for those

SARs that it produced to the SEC in 2016. To the extent that Alpine seeks to avoid liability on

this claim by relying on a more recent production of supporting files in the course of discovery,

that effort is futile." Order at 76-77

The Motion presents two sources of evidence that Alpine failed to produce supporting

files for the SARs listed in SEC Ex. 17: (1) a search conducted by Commission counsel of the

documents actually produced in 2016; and (2) Alpine's inability to identify documents produced

in 2016 by bates number or otherwise, including cover letters. Motion at 19-20. The Opposition

points to no cover letter or other evidence to identify documents produced in 2016 and, therefore,

creates no genuine dispute of fact material to Alpine's violation of Section 1023.320(d).

Contrary to Alpine's vague statements about production, Opp. at 64 & Alpine's Response

to SOF 60, Alpine's own discovery responses confirm the documents were not produced until

2018 in the course of discovery. Interrogatory No. 10 asks Alpine to identify the date or dates on which supporting files were produced. Ex. 19 at p. 4. Alpine refused to identify a date, but cited documents labeled Alpine_Lit000001 – 167366 as the supporting files. *Id.* at p. 5. Request for Production No. 5 asks Alpine for all records, including cover letters, that relate to any production of these documents "to the Commission prior to January 18, 2018." *Id.* at p. 6. Alpine produced none. *Id.* Although Alpine refused to admit when it produced these documents, its own correspondence shows that the documents labeled Alpine_Lit000001 – 167366 were produced on January 18, 2018. Cover Letter Dated January 18, 2018, attached as Exhibit 8.

Alpine's reliance on the difference in the number of SARs in SEC Ex. 17 and the table produced by the Commission with its initial disclosures is overstated because Alpine produced no evidence that it actually produced the files referenced in SEC Ex. 17. The Commission's election not to pursue certain violations on summary judgment is not evidence that could defeat summary judgment on the violations pursued in SEC Ex. 17. Finally, Alpine's argument about the scope of the Commission's claim (Opp. at 65-67) is squarely defeated by the Order, which ruled that Alpine cannot defeat these claims with evidence that it produced files during the course of discovery. Order at 77.

## <u>CONCLUSION</u>

For the reasons above, and those stated and in the Motion, there is no need for a trial on the violations presented in the Motion based on Alpine's own records. The Court should grant the Motion.

Respectfully submitted this 14th day of September, 2018.


*/s/ Terry R. Miller*
Zachary T. Carlyle (*pro hac*)
Terry R. Miller (*pro hac*)
Attorneys for Plaintiff
UNITED STATES SECURITIES AND
EXCHANGE COMMISSION

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 14, 2018, a copy of the foregoing document was served by

ECF upon the following:

Brent R. Baker
Aaron D. Lebenta
Jonathan D. Bletzacker
CLYDE SNOW & SESSIONS
One Utah Center, 13th Floor
201 South Main Street
Salt Lake City, Utah 84111-2216

Maranda E. Fritz
Thompson Hine LLP (NYC)
335 Madison Avenue, 12th Floor
New York, NY 10017

*Counsel for Alpine Securities Corporation*

*/s/ Scott Wesley*
Contract Paralegal