UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

ALPINE SECURITIES CORPORATION,

    Defendant.

Civil No. 1:17-CV-04179(DLC)(RLE)

**[REDACTED VERSION]**

---

## ALPINE SECURITIES CORPORATION'S MEMORANDUM REGARDING OBJECTIONS PERTAINING TO CERTAIN SARs



335 Madison Avenue, 12th Floor
New York, New York 10017
(212) 344-5680



One Utah Center
201 South Main Street, Suite 1300
Salt Lake City, Utah 84111-2216
(801) 322-2516

*Attorneys for Alpine Securities Corp.*

Alpine Securities Corporation ("Alpine"), by and through its undersigned counsel, pursuant to the Court's Order dated March 15, 2019, hereby submits this Memorandum addressing the Suspicious Activity Reports ("SARs") subject to the Court's December 11, 2018 Opinion on Summary Judgment (the "Opinion"). Pursuant to the Court's March 15, 2019 Order, the parties submitted to the Court, as Exhibit A to the letter dated March 20, 2019, a schedule listing those SARs that the parties agree are within the scope of the Court's ruling on summary judgment ("Exhibit A"). The Court also directed the parties to confer and "provide the Court with a table which lists those SARs as to which the parties disagree whether the December 11 Opinion granted summary judgment, with columns that briefly refer to Alpine's objection and the SEC's response ("Objection Table")," and agreed that the table would be submitted on April 4, 2019. (Order, March 15, 2019). Finally, the parties were invited to submit memoranda with the Objection Table to further explain the basis for and responses to Alpine's objections.

As reflected in the Objection Table, Alpine has objected to the entry of judgment in relation to 387 SARs.[1] Those objections fall into four categories each of which is discussed below.

### 1. The Opinion did not make any findings or rulings regarding 178 SARs in the "related" litigation category.

In support of summary judgment, the SEC submitted a table (Table 2) identifying 675 SARs that the SEC alleged failed to include "criminal or regulatory history" in the SAR narrative. *See* SEC 56.1 Statement, Dkt. 148-4. The Court discussed the SARs relating to Customers A, D, and E (Opinion at 58-63) and individually reviewed 10 specific SARs (*Id.* at

---

[1] In preparing the Objection Table with the SEC, Alpine agreed to remove its objection to low-trading volume on SAR No. 1771 and agreed to allow the SEC to reinsert its low-trading volume designation on SAR No. 1712.

1

63-66). Based on that discussion, the Court granted summary judgment with respect to 490 SARs relating to Customers A, D, and E, and three of the separately reviewed SARs.

The Court failed to address the remaining 178 SARs in the Opinion. Of those 178 SARs, Alpine objects to the inclusion of 172 SARs that did not involve Customers A, D, or E, and an additional six SARs from Customer E that do not fit within the scope of the Opinion because they each involve a "third-party" claim.[2]

In terms of its analysis of this issue, the Court held that the "SEC is thus entitled to summary judgment to the extent it shows that there is no question of fact as to the (1) presence of information about the litigation in the SAR support file, and (2) a connection between the litigation and the reported transaction." The Court then defined relatedness not as pertaining to the reported transaction but as including litigation that concerns "either the issuer of the securities in the transaction or the customer engaged in the transaction." (Opinion at 54-55). The Court also confirmed that, certain litigations, even if they exist, could be "unrelated" or so remote as to not require inclusion in the SAR narrative. *See id.*, at 65-66. The Opinion therefore concludes that the SEC is entitled to judgment as to any SAR where it established the existence in the support file of information concerning a litigation, that the litigation involved the "issuer" or the "customer," and that the litigation is "related." *Id*. at 54-55.

---

[2] As set forth on Alpine's Objection Table, the 172 SARs not from Customers A, D, or E, and not addressed in the Opinion, are as follows: 6, 9, 193, 202, 228, 232, 234-236, 238, 239, 241, 242, 244-248, 252, 254-257, 259, 260, 262, 269, 270, 273, 274, 276, 279-281, 286, 291-295, 298-301, 303-305, 307-316, 330, 334, 337, 345, 347, 350, 356-360, 362, 364, 368-372, 376, 1585, 1586, 1591, 1599, 1601, 1611, 1613, 1618, 1619, 1621, 1627, 1633, 1635, 1639, 1652, 1653, 1660, 1664, 1674, 1700, 1705, 1714, 1717, 1723, 1724, 1746, 1750-1752, 1758, 1759, 1762, 1769, 1776, 1780-1783, 1786, 1790, 1796, 1798, 1816, 1817, 1822, 1880-1883, 1887, 1893-1895, 1897-1904, 1910, 1912-1915, 1921-1923, 1925-1931, 1940, 1944, 1946, 1947, 1956, 1960-1969, 1972, 1974, 1976, 1977, 1991, 1999.

The Court considered the evidence regarding the litigation cited in relation to Customers A, D, and E (the vast majority of the SARs in this category) and the ten additional SARs.[3] However, in relation to the 172 SARs not involving Customers A, D, or E, neither the record not the Court's Opinion includes any reference to evidence that the litigation involved the "issuer" or "customer" or that it was sufficiently related. The SEC did not put into the record any evidence of the nature of the litigation. It only provided a Bates number in a support file, without any description of the litigation, its claims or participants, its timing, or its relation to the transaction, and did not provide the support file to the Court. Nor did the SEC put forth any argument to the Court regarding these 172 non-Customer A, D, and E SARs. The SEC has therefore failed to establish its entitlement to summary judgment in relation to those SARs.

In addition to Alpine's objection to the inclusion of 172 SARs that did not involve Customers A, D, or E, Alpine objects to the inclusion of the following six SARs from Customer E because the SEC's evidence, Table 2, includes a designation of "3rd party" as the allegation: SAR Nos. 699, 778, 794, 818, 1847, 1869. The evidentiary record before the Court is devoid of undisputed evidence concerning the identity of the third party, the context or content of the litigation, or any relation between the alleged third party litigation and the issuer, customer or

---

[3] Alpine notes that the Court also granted summary judgment as to a substantial quantity of 2011 and 2012 SARs based on the finding that a regulatory action *from 2013* was not included in the 2011 and 2012 narratives. (*See* Opinion at 60 and 87 discussing "related" litigation with Customer "A" regarding a 2013 SEC action and granting summary judgment on the basis that the 2013 action was not disclosed as an "essential element" in 2011 and 2012 narratives).

As a result of this ruling and the elimination of many red flags, including the vast majority of the low-trading category, the number of SARs where the five essential elements is the *only* identified omitted red flag has actually increased from 295 to 509 SARs.

Of the 509 SARs where the five essential elements is the only omitted red flag, 495 SARs involve Customer "A" and were filed *prior* to the SEC action in 2013. Because the Court's ruling on those particular SARs was clear, Alpine has not included among its objections the fact that the omitted event was subsequent to the SAR filing date, and will have to address that issue in subsequent proceedings.

3


transaction. Therefore, the Court's grant of summary judgment did not include SAR Nos. 699, 778, 794, 818, 1847, 1869.

### 2. Three SARs are outside the Court's ruling on disclosure of shell companies.

The Court ruled that, if a company was a shell company "within one year preceding the transaction," Alpine was required to include that information in the narrative. (Opinion at 67-71). In addition, the Court ruled that Alpine had a duty to include "derogatory information about the customer or issuer" in the SAR narrative, including whether a company website was not working, whether the company's SEC filings were not current, or an issuer's "frequent" name changes. (*Id*.).

First, with respect to SAR No. 197, the SEC failed to allege on its Table any deficiency involving shell status or some type of derogatory history. The SEC only referenced a Bates number – no more. Accordingly, the SEC failed to put before the Court on summary judgment a claim, allegation, or argument to which Alpine could respond, or to carry its burden on summary judgment to demonstrate that SAR No. 197 was deficient as a matter of law in any capacity. Thus, SAR No. 197 was not included in the Court's grant.

With respect to SAR Nos. 1712 and 1907, the SEC alleged on its Table that those transactions involved a shell company. However, the record is devoid of undisputed evidence that the issuer is or was a shell company within one year of the transaction. In fact, the support file for SAR No. 1712 has a box checked "no" for the question, "To Owner's best knowledge, was the issuer ever a shell company" and also states in handwriting, "free trading from Cede & Co per TA" and "Hold Shell / n/a shares came from Cede & Co per TA." *See* Alpine's Add'l SOF, ¶ 198, at No. 1712 [Dkt. 154]. Similarly, the support file for SAR No. 1907 references

multiple form 10-Qs and 10-Ks stating that the company is "not a shell." While the SEC points to a form 10-Q/A in the support file that refers to the company is a shell, inconsistent with the prior and the subsequent Form 10-Qs and 10-Ks. (*See* Alpine00250039). The inconsistency in these forms at the least creates an issue of fact as to whether the company was actually a shell within one year of the transaction, particularly given the SEC's failure even to address the repeated confirmation in the file that the company was not a shell. Because all inferences are required to be drawn in Alpine's favor on summary judgment, and the SEC has failed to provide undisputed evidence, SAR Nos. 1712 and 1907 are not within the scope of the Court's grant on summary judgment.

### 3. The Opinion did not address nine sets of duplicate SARs.

Alpine argued in its opposition to the SEC's Motion for Summary Judgment that the SEC's Exhibit 10 included 17 duplicate pairs of SARs as two separate violations.[4] *See* Alpine's Mem. in Opp., at p. 41 [Dkt. 158]; Alpine's Add'l Statement of Fact, ¶ 260, p. 273 [Dkt. 154], and duplicate chart attached thereto as Exhibit 242. The SEC, in response, argued that the purported duplicate SARs have "different Bates numbers" and "they were filed on *different dates*" but did not dispute that the subject matter of the SARs are the same and that they report the same transaction. *See* SEC's Reply to Mot. for Summary Judgment, at p. 19 [Dkt. 167] (emphasis in the original).

---

[4] Of the original 17 alleged duplicate SARs, the following nine duplicate SARs remain at issue: (1585 and 1663); (1595 and 1698); (1617 and 1658); (1625 and 1659); (1682 and 1727); (1826 and 1827); (1934 and 1612); (1936 and 1728); (1735 and 1607). SAR No. 1728 was included on the parties agreed upon SAR table. Thus, SAR No. 1936 (duplicate to No. 1728) is objected to on duplication grounds. As to the other eight sets, the duplicates still exist in the SEC's listing of violations.

5

The SEC's argument that the duplicates bear different filing dates is of no consequence. The SARs are identical in every other respect, including their narratives, describing the same transaction, same transaction date and same support file, but appear to have been filed twice. The Bank Secrecy Act and applicable regulations thereunder require the filing of SARs pertaining to a particular *transaction.  See* 17 CFR § 1023.320(a)(1)(2) (stating that every broker or dealer shall file with FinCEN "a report of any *suspicious transaction* relevant to a possible violation of law or regulation" and "[a] *transaction requires reporting* under the terms of this section if the transaction meets the specified criteria) (emphasis added).  There exists no basis in law or logic to find duplicate violations in relation to the reporting of one transaction.

In addition, the Court did not address this issue and so failed to rule that more than one violation can occur in relation to the reporting of a single transaction.[5]

**4.     The Opinion states that there may be remaining questions of fact regarding Alpine's post-2012 SAR narratives.**

Presented by the SEC only with examples of template narratives, which were employed at Alpine prior to the 2012 FINRA Cycle Exam, the Court repeatedly predicated its March 30, 2018 and December 11, 2018 grants of summary judgment on the "thinness" or "opacity" of those narratives.  *See e.g.* March 30, 2011 Opinion, at 48 (regarding criminal and regulatory history, the Court states that "the narratives for each of these SARs contain minimal

---

[5] The issue of whether there can be more than one violation in relation to a single transaction also applies to the SEC's claims of omissions of multiple "red flags" in relation to one SAR.  As will be set forth in more detail in Alpine's briefing on penalties, the number of violations could not exceed the total number of SARs.  Similarly, to the extent that a single SAR forms the basis for both a deficient narrative claim and a deposit/liquidation claim, and only one violation per transaction would exist.  Finally, with respect to the support files, only one violation, at most, may be assessed for a failure to timely produce in response to a document subpoena because it is undisputed that Alpine maintained and produced such files in this action; in fact, those files were relied upon and used by the SEC in adding additional information to its expert's chart on inadequate narratives.

information"); *id*. at 51 (regarding shell companies, the Court states that "[g]iven the paucity of information in the SAR narratives," shell information was required); *id*. at 56 (regarding unverified issuers, the Court states, "[t]he three SARs reported very little additional information" and had "no information about the issuer"); *id*. at 62 (regarding foreign involvement, the Court states that the SARs contained "a very opaque discussion in the narrative section of the SAR of the reasons for filing the SAR."). The Court further stated in its December 11 Opinion, in the section entitled "Red Flags Omitted From SAR Narratives," that "a fulsome SAR narrative could present a question of fact as to whether the narrative was deficient," suggesting that where a firm provides a more substantial narrative, the omission of a supposed "red flag" would not subject them to liability – at least not on summary judgment. (*Id*. at 53-54).

Similarly, the Court stated, in its March 30 ruling, that "if a SAR had had a fulsome disclosure of the Five Essential Elements and other information pertinent to the transaction that the law requires a broker-dealer to disclose, then the omission of repetitive or cumulative information found in the broker-dealer's files might raise a question of fact regarding an alleged violation of Rule 17a-8." *Id*. at 65.

Alpine has established a marked change in its practices in the wake of the FINRA 2012 cycle exam. *See* Opinion at 35 ("It is true that approximately two-thirds of the SARs at issue in the SEC's motion predate the FINRA Report").[6] Until 2012, Alpine filed SARs in which the narrative consisted of a description of the transaction at issue, *e.g*., that a certain amount of stock of a particular issuer was deposited on a particular day. From at least 2013 on – for at least the

---

[6] In fact, roughly 68% of the SARs at issue in this case were filed between May of 2011 through September of 2012 (date of the FINRA Examination). Thus, 68% of the SARs were filed during the first 16 months of the four and one-half year review period of this case – May of 2011 through December of 2015. *See* Alpine's Add'l SOF, ¶ 93 [Dkt. 154].

7

last *six* years – Alpine ceased using that format and instead provided lengthier descriptions of the transactions and the reasons for the filing of the SAR, in accordance with FINRA's comments. This is vividly illustrated by the fact that, of the 1,015 SARs which the SEC's expert claims were insufficient on their face for failing to include the so-called "5Ws," only twenty (20) were alleged to take place after Alpine received FINRA's examination report in September of 2012. *See* Opinion at 14; Alpine's Add'l SOF No. 96 [Dkt. 154] (citing SEC's Expert's Table A-1, Ex. 64; Navigant Report, at 52, SEC's Ex. 2).  The SEC's expert confirmed during her deposition that roughly 1000 of the "deposit SARs" are dated from May of 2011 to August of 2012. *Id.* (citing Angotti Dep., at 297, Ex. 10).

With respect to those SARs that were filed after 2012, the expanse and detail of those narratives precisely implicates the Court's repeated confirmation that an omitted red flag may not render an entire SAR a violation of the BSA.  Here, Alpine has specifically identified 282 "fulsome" SAR narratives and objects to a grant of summary judgment relating to these SARs.[7] In each of these fulsome SAR narratives, an alleged "red flag" has been omitted; however, the SAR narrative discusses in detail one or more other red flags or reasons for suspicion that

---

[7] As shown on the Objection Table, many of the fulsome SAR narratives include additional objections addressed in this Memorandum. The more expansive SAR narratives for each of the following 282 SARs are included in the Objection Table: 4, 6, 7, 9, 73, 80, 86, 87, 89, 93, 94, 100, 108, 109, 110, 114, 119, 121, 124, 143, 144, 145, 150, 160, 163, 164, 168, 169, 170, 172, 178, 180, 182, 185, 188, 202, 204, 206, 218, 220, 228, 232, 234, 241, 244, 246, 247, 255, 274, 279, 280, 288, 294, 299, 300, 301, 303, 304, 305, 308, 309, 311, 313, 314, 315, 318, 322, 323, 324, 325, 326, 327, 328, 330, 332, 334, 336, 338, 340, 341, 342, 343, 348, 349, 350, 355, 356, 357, 358, 359, 362, 363, 364, 366, 368, 369, 370, 371, 372, 387, 394, 429, 430, 453, 463, 470, 480, 498, 500, 506, 515, 526, 531, 548, 553, 565, 574, 580, 584, 586, 588, 589, 612, 616, 629, 633, 647, 654, 664, 666, 668, 674, 691, 696, 699, 701, 703, 717, 755, 760, 772, 778, 785, 794, 809, 810, 813, 814, 818, 828, 834, 835, 838, 839, 846, 849, 851, 852, 855, 856, 857, 858, 860, 861, 862, 864, 866, 867, 868, 869, 870, 872, 874, 878, 883, 884, 1605, 1606, 1610, 1618, 1619, 1622, 1627, 1630, 1633, 1639, 1674, 1717, 1751, 1752, 1757, 1762, 1763, 1764, 1766, 1768, 1769, 1771, 1773, 1774, 1777, 1781, 1782, 1783, 1784, 1785, 1788, 1790, 1791, 1792, 1793, 1796, 1799, 1804, 1805, 1809, 1814, 1819, 1825, 1830, 1847, 1858, 1869, 1872, 1879, 1881, 1882, 1886, 1887, 1891, 1894, 1895, 1897, 1898, 1900, 1901, 1902, 1904, 1906, 1908, 1911, 1912, 1915, 1921, 1922, 1923, 1925, 1926, 1927, 1928, 1930, 1931, 1938, 1939, 1940, 1941, 1942, 1943, 1947, 1948, 1952, 1953, 1955, 1959, 1960,, 1967, 1968, 1969, 1970, 1971, 1981, 1982, 1985, 1987, 1988, 1991, 1992, 1994, 1996, 1999, 2001, 2005.

triggered the filing of the SAR.  For example, the SEC alleges that SAR No. 778 omitted regulatory history regarding a "third-party" from the SAR narrative.  Alpine has objected to the inclusion of this SAR because the Opinion did not address this "third-party" allegation (Section 1 above).  Alpine further objects on the grounds that the SAR narrative is fulsome and outlines Alpine's reasoning for filing the SAR, including related regulatory history, as follows:



Based on the Court's ruling, there remains a question of fact as to whether the SAR constitutes a violation of the BSA as a matter of law on account of an omitted red flag when the

salient aspects of the transaction and the firm's view of suspiciousness were addressed.   None of those 282 SARs that contain a more extensive SAR narrative should be included within the Court's grant of summary judgment.

The SEC responds to Alpine's Objection by arguing that it is "untimely" and akin to a motion to reconsider because it asks the Court to consider new argument and evidence.  The SEC is incorrect.  As detailed above, the Court consistently held that a "fulsome narrative" could present an issue of fact, notwithstanding the omission of an alleged red flag.  At no time did the Court rule on the sufficiency of these narratives and so there was no basis for Alpine to object to or seek reconsideration of such a ruling.

Further, as Alpine argued in its opposition to summary judgment, despite asking the Court to rule that Alpine's SAR narratives were deficient as a matter of law, the SEC did not submit a single SAR in support of summary judgment for the Court to review to carry its burden of demonstrating that the absence of any issue of material fact.  *See* Fed. R. Civ. P. 56(a), (e).  Instead, the SEC relied on its omitted red flag theory, removed from the context of the transaction and the content of the narrative.  The Court, while stating that summary judgment would be available where the narrative was inadequate, also made clear that an omitted red flag could be insufficient to support summary judgment where there was a more expansive description.  Because the Court has now sought to identify those SARs that would be encompassed by its decisions, this is the point at which the issue is properly presented, and summary judgment should not be granted where the narrative contains a "fulsome" description of the transaction and the reason for the filing.

DATED this 4th day of April, 2019.

/s/ *Maranda E. Fritz*
Maranda E. Fritz
**THOMPSON HINE**
335 Madison Avenue, 12th Floor
New York, New York 10017-4611
Tel. 212.344.5680
Fax 212.344.6101
Email: Maranda.Fritz@thompsonhine.com

Brent R. Baker (BB 8285)
Aaron D. Lebenta (*Pro Hac Vice*)
Jonathan D. Bletzacker (*Pro Hac Vice*)
**CLYDE SNOW & SESSIONS**
One Utah Center
201 South Main Street, Suite 1300
Salt Lake City, Utah 84111-2216
Telephone 801.322.2516
Facsimile 801.521.6280
Email: brb@clydesnow.com
         adl@clydesnow.com
         jdb@clydesnow.com

*Attorneys for Defendant Alpine Securities Corporation*