J4C8SECC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

                    Plaintiff,

          v.                            17 Cv. 4179 (DLC)

ALPINE SECURITIES CORPORATION,

                    Defendant.

------------------------------x

                                    April 12, 2019
                                    2:30 p.m.

Before:

                    HON. DENISE L. COTE,

                                        District Judge

                         APPEARANCES

U.S. SECURITIES AND EXCHANGE COMMISSION
BY:  ZACHARY T. CARLYLE
     TERRY R. MILLER

CLYDE SNOW & SESSIONS
     Attorneys for Defendant
BY:  AARON D. LEBENTA
     JONATHAN D. BLETZACKER
          -and-
THOMPSON HINE LLP
BY:  MARANDA E. FRITZ

J4C8SECC

```
1              (In chambers; phone conference)
2              THE COURT:  Good afternoon, counsel.
3              I have you on the speakerphone because my law clerk
4    and a court reporter are with me.
5              We will take appearances for the record.
6              For the SEC.
7              MR. MILLER:  Terry Miller and Zachary Carlyle.
8              THE COURT:  For the defendant Alpine.
9              MS. FRITZ:  Maranda Fritz from Thompson Hine.
10             MR. BLETZACKER:  John Bletzacker and Aaron Lebenta
11   from Clyde Snow.
12             THE COURT:  Thank you so much.
13             Counsel, I remind you, please, since we are on a
14   conference call, not to interrupt each other or me.  I will
15   give everyone an opportunity to be heard, and we will just take
16   this one step at a time.
17             I want to thank counsel very much for the work you
18   have done to try to identify where disputes remain with respect
19   to the summary judgment motion that the SEC made and that I
20   ruled on in December, on December 11.  And I have received your
21   briefs of April 4 and the charts, two of which are important to
22   this discussion.  One chart lists those SARs as to which the
23   parties agree my summary judgment opinion granted summary
24   judgment.  The second chart, which is large and has many
25   columns, identifies areas of dispute between the parties as to
```

1    whether or not the issue with respect to those SARs was

2    actually decided by my December opinion.

3           So I have worked with your briefs and a little bit

4    with your charts, and I think I have some rulings for you and

5    some questions for you.  So I think we will just go through

6    this step by step, and where I have questions, hopefully

7    counsel can help me understand better what the dispute is.  I

8    used as my method for organizing this analysis the Alpine brief

9    of April 4.  So we start with the issue of related litigation.

10          With respect to the summary judgment opinion, I

11   granted summary judgment on 668 SARs and denied it as to seven

12   SARs.  Alpine makes three separate arguments in this section of

13   its brief.  The third argument is in a footnote, and may not

14   really apply to this section of its brief, but we will get

15   there in a moment.

16          The first argument that Alpine makes is, in essence,

17   as I understand it, that the SEC was required to more

18   completely describe the related litigation in the table or in a

19   brief.

20          Do I understand that argument correctly?  And who

21   should I be addressing on behalf of Alpine?

22          MS. FRITZ:  It's Maranda Fritz.  And I will certainly

23   take it in the first instance.

24          I think that certainly is part of the argument.  I

25   think the way that we would describe it is, in our view, the

J4C8SECC

1    record is devoid of evidence to establish as a matter of law,

2    for purposes of summary judgment, that summary judgment would

3    be appropriate.

4              THE COURT:  OK.  Thank you.

5              So let me give you my ruling with respect to this

6    first argument.

7              Alpine contends that the SEC table did not adequately

8    identify the related litigation at issue for 172 SARs in

9    connection with transactions conducted by customers other than

10   Customers A, D, and E.  These 172 SARs were among the 668 on

11   which I granted summary judgment.  Alpine is not disputing that

12   the SEC table identified the deficiency as the failure to

13   disclose related litigation and that the table cited to the

14   correct page in the Alpine support files that described the

15   related litigation.

16             The argument it makes here was specifically rejected

17   in the December opinion in its discussion of the admissibility

18   of the summary tables.  Alpine had an opportunity in opposition

19   to the summary judgment motion to raise a factual dispute

20   regarding whether the litigation identified by the SEC in these

21   172 instances constituted related litigation.  It did not

22   present any factual dispute or evidence supporting any factual

23   dispute.  So this objection is denied.

24             Let's turn to the second argument.  And this is an

25   argument that I have some questions about.

J4C8SECC

1      Is this the argument that Alpine is next making, that

2  the words "third party" were used on the table when, instead,

3  the SEC should have used something else on the table to

4  identify the related litigation, such as "SEC" litigation?  Is

5  that the argument, Ms. Fritz?

6      MS. FRITZ:  No.  We were focusing there on the fact

7  that there appears to remain a requirement that, in order to

8  constitute related litigation, that there has to be a

9  sufficient connection to the issuer or the customer.  And our

10 position on this, similar to what I said before, is that the

11 record that the SEC is presenting, what is before the Court by

12 virtue of their presentation, is insufficient to satisfy the

13 basic sort of definitional analysis the Court did of what would

14 constitute related litigation; that there simply is not enough

15 information that's ever been presented by the SEC to entitle it

16 to summary judgment on those additional SARs.

17     THE COURT:  OK.  Thank you for that clarification.

18     So that objection is denied for the same reasons I

19 just gave a moment ago.  This second argument applies to six

20 SARs, and as I understand it, the related litigation at issue

21 with respect to those six SARs was a 2010 lawsuit brought by

22 the SEC against Customer E.  These six SARs were among the 668

23 on which I granted summary judgment.

24     Let me just confirm that number from my notes.  Hold

25 on one minute, counsel.  Yes, 668.

J4C8SECC

1              So I think we can move on then to the third point.

2              Maybe I should just add again, where Alpine raised an

3    issue of fact in opposition to the summary judgment motion, I

4    reviewed it.  Sometimes I ruled in Alpine's favor.  Sometimes I

5    did not.  It was sufficient for the SEC to support this prong

6    of its motion to point to the specific page in the support

7    files that contained the description of the related litigation.

8              OK.  So let's turn to the footnote.  The footnote

9    appears --

10             MS. FRITZ:  Your Honor --

11             THE COURT:  -- on page 3, footnote 3.

12             It is a bit confusing to me.  I think fundamentally

13   this is not so much about related litigation as it is about

14   deficiencies in the SAR narrative that everyone agrees

15   exists -- that is, the failure to include the five essential

16   elements in the narrative.

17             As I understand it, the defendant is saying that when

18   you work through my constellation of rulings, for this category

19   of SARs, where in the motion it was identified that there were

20   295 SARs, there are now, as Alpine counts it, 509 SARs.  And

21   Alpine contends that 495 of these 509 SARs were filed in

22   connection with transactions for Customer A.  And it contends

23   that the reason these SARs had to be filed, based on the

24   analysis presented in the December opinion, was that Customer A

25   had related litigation that was important to be disclosed as of

J4C8SECC

1    November 2013.  Again, I am just trying to understand the

2    defendant's argument, but for some portion of those, the SARs

3    were filed before November of 2013, so there is no ruling for

4    me in connection with the summary judgment opinion that these

5    SARs had to be filed.

6              Do I understand that argument correctly, Ms. Fritz?

7              MS. FRITZ:  A couple of points.  A moment ago your

8    Honor indicated or said that everyone agrees that there is a

9    deficiency associated with the failure to address each of the

10   five Ws, and I do just want the record to reflect that

11   certainly Alpine doesn't agree with that.  We have submitted a

12   report from the expert saying that these do include the

13   information that would be required that these would be

14   sufficient.  So certainly we think that we have put forth

15   evidence even with respect to template SARs, actually.

16             THE COURT:  Even with respect to what SARs?

17             MS. FRITZ:  Template, the template SARs, the more

18   terse SARs.

19             THE COURT:  Thank you.

20             MS. FRITZ:  So we do believe that we put forth

21   evidence that would have made this issue of whether it rises to

22   a level of a violation of BSA a disputed issue.  So I just

23   wanted to put that aside.

24             THE COURT:  OK.  Excuse me.  Let's just pin that down.

25   I am at the Westlaw version of my opinion, at page 439, in

1    which I say:  It is undisputed that these SARs -- the five

2    essential element section -- omitted the basic customer

3    information in the SAR narrative, which FinCEN refers to as the

4    Five Essential Elements.  Alpine contends that it had no duty

5    to file these SARs and therefore the deficiencies in their

6    filed SARs do not violate SAR regulations.

7             MS. FRITZ:  From Alpine's point of view, that didn't

8    actually capture Alpine's position.  We really did go to some

9    length to have the expert confirm in the report and in

10   depositions that even those template SARs, that were very, very

11   limited, in terms of simply identifying the date, participants,

12   nature of a transaction, we would argue were sufficient since a

13   SAR was filed and included those salient points.

14            THE COURT:  Well, the time for a motion for

15   reconsideration has long passed.  So I ruled.  There was no

16   motion for reconsideration.

17            So next point.

18            MS. FRITZ:  OK.  With respect to these 495 SARs, as we

19   were looking at the opinion that really arose from the

20   discussion of the five Ws, it was our understanding that the

21   Court did then incorporate this number of SARs, and that the

22   Court did so based on the conclusion that it omitted related

23   litigation regarding Customer A, period.  When we then went

24   back to look at the related litigation regarding Customer A

25   that had been the issue that was discussed in the case, yes, it

J4C8SECC

certainly appeared to us that that was relating to the action
in November 2013.  When you then compare that to the date of
the SARs, 495 of them predated that event.  So that's what we
tried to incorporate here.

       Now, at the same time, we acknowledge in that footnote
that the Court was unequivocal in its ruling, and you're right,
we did not come back again with a motion for reconsideration.
We did do that earlier.  We did not do that this time.  So what
we are saying in the footnote is, we are not putting these on
our objection chart.  There's 495 of them.  They are not
included in the objection chart because in our view the ruling
was clear.

       THE COURT:  So Ms. Fritz, a couple of points there.
The ruling -- and again, I am looking at the Westlaw version at
page 439 -- was about 295 SARs.  There was no motion with
respect to 495 SARs on this issue.  So there is no way I could
have ruled on 495 SARs or, as you say in the footnote, 509
SARs, 495 of which relate to Customer A.

       So I think, as I understand your argument, it's really
a chain of inferences in building blocks.  I think you're
saying largely that the way my ruling about low-trading volume
played out meant that more SARs ended up in this category of
five essential elements.  The ruling I made was that no trial
was needed; summary judgment was appropriate where a ratio with
respect to low-trading volume was 20 to 1, that is, where a

J4C8SECC

1  deposit was 20 times larger than the average trading volume

2  over three months prior to the deposit.

3       As I understand your argument, when that ruling is

4  applied to various SARs, it meant that the SEC could no longer

5  rely on the low-trading volume red flag for as many SARs as it

6  did.  And that meant that for more SARs than the SEC had

7  originally moved for summary judgment on, the only violation

8  was the failure to include the five essential elements.

9       Am I right so far, Ms. Fritz?

10      MS. FRITZ:  That's very close.  I would just clarify

11  this way.  Yes, the low-trading volume went from something like

12  700 violations down to something like a dozen.  So, yes, it

13  significantly impacted the analysis.  That then left a much

14  greater number, your Honor is right, where the only issue was

15  the five Ws.

16      The only thing I would clarify is, with respect to

17  many of those, they hadn't been previously identified by the

18  SEC as a violation in terms of regulatory background.  So even

19  though they had not previously been identified that way, the

20  Court looked at them and said, well, wait a second, hundreds of

21  these are still Customer A, and I have already found that there

22  was a failure to disclose related litigation, so those also

23  continued to or also remain a violation, notwithstanding the

24  fact that there is no other red flag.

25      So let me just clarify.  Aaron and Jonathan, did I say

J4C8SECC

1    that correctly?

2            MR. BLETZACKER:  That's correct.

3            THE COURT:  OK.  Thank you, Ms. Fritz.

4            That, actually, I don't think can be correct because

5    my ruling, one, was only with respect to 295 SARs on table 1,

6    and therefore it couldn't have been about 509 SARs; two, you

7    did not make an argument to me, with respect to the five

8    essential elements and the Customer A SARs, that these SARs

9    included SARs filed before November of 2013.  So I never had an

10   opportunity to rule on the argument you're making now.

11           I think this issue is a little different.  I think it

12   is one of notice.  And the SEC filed the summary judgment

13   motion.  It had the burden to give the defendant notice of what

14   SARs it was seeking summary judgment on and on what ground it

15   was seeking summary judgment.  If it did not give you fair

16   notice, you did not have an opportunity to object and to argue

17   there was an issue of fact in dispute that prevented summary

18   judgment from being granted.

19           So, Mr. Miller, have you followed our conversation so

20   far?

21           MR. MILLER:  Yes, your Honor.

22           THE COURT:  Let me pose a hypothetical to you.

23           If a Customer A SAR was not listed on table 1 as

24   having the deficiency -- let me start again.

25           Do you agree that there are now more SARs that have

J4C8SECC

1    the single deficiency associated with them, from the SEC's

2    point of view, of simply the failure to disclose in the SAR

3    narrative the five essential elements?

4            MR. MILLER:  Your Honor, the short answer is yes, I

5    think the number has increased, because some of the citations

6    we had in the tables and that summarized all of the violations,

7    a number of them have dropped out so that the last remaining

8    violation for some of these SARs is just what we call the five

9    Ws.  But that said, there is no way for us to confirm the

10   numbers that Alpine put in the footnote.  That's the first time

11   we have seen this objection.

12           I will note another complication that the way this

13   argument is presented is it's not correct to say that the vast

14   majority of low-trading volume violations have fallen away.

15   The reason the citations -- I think we made this clear a number

16   of times, but the reason why many of the citations are not in

17   our final papers is that the calculation to get to the ratio,

18   the actual ratio, because of the way we prepared the tables

19   before, it had to be done again to see what the ratio was.  I

20   can explain why.  Before, I think our experts were just

21   calculating to get to three, because that was the ratio that

22   they identified for summary judgment, and for whatever reason

23   we weren't able to track exactly what the calculations were.

24           So for this exercise, we only calculated the ratios

25   for SARs where the last remaining violation was the low-trading

J4C8SECC

1    volume.  So I think the right way to do this, if this is still

2    an issue that is timely -- I'm not sure that it is -- is for

3    Alpine to identify exactly which SARs they think are no longer

4    in.  And then I think we would have a better chance to respond

5    about why we think they are in, and perhaps we agree on some.

6           Sorry if that's a long answer, but I think yes, the

7    number of SARs where the only violation is the five essential

8    elements have gone up.  But there is no way we can either

9    confirm or deny the rest of the argument in that footnote.

10          THE COURT:  So let me pursue this one step further,

11   Mr. Miller.  If there is a Customer A SAR for which the only

12   remaining deficiency, according to the SEC, is the failure to

13   disclose the five essential elements in the narrative, and that

14   SAR was filed before the November 2013 -- I just want to

15   confirm one second that I have the date right on the

16   litigation -- yes, November 2013 related litigation, is the SEC

17   contending that it is entitled to summary judgment on that SAR

18   filed, again, before November of 2013, based on my rulings?

19          MR. MILLER:  Based on the Court's ruling, I think the

20   answer is no.  I think the answer is, if in fact the only

21   reason why a SAR should have been filed is the mandatory filing

22   was litigation in 2013, then I think the SARs before that date

23   there would be a disputed fact as to whether they are

24   mandatory.  And the only reason I am hedging right now is I am

25   not confident that that 2013 litigation was the sole basis for

J4C8SECC

1   finding customary SARs suspicious.

2           THE COURT:  Yes.  My hypothetical said that we are

3   down to no red flags, just a failure to disclose the five

4   essential elements; that was built into my hypothetical.

5           So Ms. Fritz, I actually don't think there is any

6   dispute here, and I don't understand how there could be one,

7   because the SEC tables had to disclose the violation type and

8   cite to the page in the Alpine support files for the SAR, and

9   so they would have had to cite to the page referring to the

10  November 2013 litigation, which if it hadn't happened yet, it

11  couldn't have cited to.

12          MS. FRITZ:  That's correct.

13          THE COURT:  First of all, clearly, the numbers you use

14  in the footnote bear no relationship whatsoever to what I ruled

15  upon at page 439 of the Westlaw version, which was just 295

16  SARs from table 1.  I didn't rule on 509 SARs or 495 SARs.

17          So I am going to ask counsel to consult with each

18  other and try to narrow this dispute, but I think we have

19  agreement as to what could plausibly be found to have been

20  controlled by my opinion.

21          So let's move on to the next category.  Shell

22  companies.

23          Give me just one second here.

24          Alpine disagrees that summary judgment should be

25  entered for three SARs in connection with their failure to

J4C8SECC

disclose that an issuer was a shell company within one year

preceding the transaction.  For one of those SARs, SAR 197, I

believe Alpine's argument is that the SEC table did not

identify any such deficiency.

          Do I understand that correctly, Ms. Fritz?

          MS. FRITZ:  Yes.  Same argument, that they failed to

satisfy their burden of demonstrating that there was an event

that required reporting and that the mere reference -- it

really ended up being the only thing that was in the record was

not sufficient.

          THE COURT:  Oh, OK.  Ms. Fritz, I misunderstood the

argument.  If it is the general argument that use of the tables

was inadequate, your objection is denied.  If you're saying the

table did not cite to the page, or that the table for

derogatory history of stock and shell companies did not list

this SAR, that's a different issue.  Which is it?

          MS. FRITZ:  It is that it's cited to impinge, but

there was nowhere in the record that the Court had any other

information with respect to what that page reference meant,

what it referred, whether it was timely, whether it was stale,

whether it was significant or insignificant, because it was

neither identified in the table nor otherwise described.

          THE COURT:  OK.  Well, it was identified in the table

in the way I describe in my opinion, which is different tables

for different kinds of inadequacies and a summary table for

1    everything.  You're not suggesting it wasn't listed on the

2    right table?

3           MS. FRITZ:  No.  What I am suggesting is the mere

4    overarching category of, for example, some derogatory

5    information, that that would not have given the Court enough

6    information to say every single thing that the SEC put into

7    there, by definition, they are entitled to summary judgment, no

8    matter what it was, no matter what the underlying issue was.

9    Each of them had related litigation, some were stale, some were

10   remote, some were irrelevant.  All of them had their own

11   characteristics.  And so the mere reference to a page number

12   did not establish sufficiently for this Court that that was a

13   violation of the Bank Secrecy Act.

14           THE COURT:  So that is simply a repetition of the same

15   argument I have rejected moments ago, and the argument that was

16   made in opposition to summary judgment and that I have rejected

17   in the summary judgment opinion in connection with the

18   discussion of Rule 1006.  I note that the defendant, again, had

19   fair notice of the SEC's grounds for moving for summary

20   judgment, an opportunity to argue with respect to any one SAR

21   and any one ground that summary judgment should not be granted.

22           Good.  So this objection is denied.

23           So summary judgment is granted on SAR 197.

24           Now, with respect to the other two SARs, SARs 1712 and

25   1907, as I understand it, this is a dispute about how to

J4C8SECC

1     interpret the information in the support file and whether or

2     not that information is fairly read to indicate that the issuer

3     was a shell company within one year of the transaction.

4          Do I understand that correctly, Ms. Fritz?

5          MS. FRITZ:  No, your Honor.  Because, again, we do

6     view the burden as being on the SEC.  The SEC was really

7     pointing to some random sheets of paper that were contained in

8     the file, some notes for example.  So the issue from our

9     vantage point is, does that really constitute sufficient and

10    undisputed evidence that would entitle them to summary

11    judgment?

12         Here, what we are pointing out is, putting aside

13    whether reliance on those kinds of documents would be

14    sufficient, here the evidence was just flat out inconsistent.

15    There is a piece of paper that says yes; there is a piece of

16    paper that says no.  And so it seems to us, by definition,

17    there is a dispute.

18         THE COURT:  OK.  Good.  Let's talk about this from a

19    couple of points of view.

20         Some background.  With respect to the section of the

21    opinion that dealt with shell companies and the derogatory

22    history of stock -- and that begins in the Westlaw version at

23    page 431 -- I address various arguments that are made, and

24    ultimately ruled with respect to one of those arguments that

25    summary judgment should be granted as to the SARs in table 3

18

J4C8SECC

1    where the issuer was a shell company when the transaction

2    occurred, or had been a shell company within one year preceding

3    the transaction.

4          Now, there could be an argument that Alpine argued in

5    opposition to summary judgment that I shouldn't grant summary

6    judgment on these two SARs, 1712 and 1907, because they were

7    remote or it was ambiguous.  So I will take any evidence that

8    Alpine wishes to send me that I overlooked that argument in

9    connection with its opposition to the summary judgment motion.

10   I would also like, in connection with that presentation, copies

11   of the pages from the support files for these two SARs, and

12   copies of the two SARs themselves that are relevant to the

13   argument that Alpine is now making.

14         MS. FRITZ:  Understood.

15         THE COURT:  Ms. Fritz, are you able to get that to me

16   within a week?

17         MS. FRITZ:  Yes.

18         THE COURT:  Great.

19         MR. MILLER:  I think this might save some time.  I

20   will give it a try.  Both of these SARs that we are talking

21   about, numbers 1712 and 1907, have other violations in them.

22   And one of our responses to these objections in this last table

23   was that one ground to deny the objection is that they are

24   moot, because what we are operating on is the idea that, if

25   there is at least one or more deficiencies in the SARs, it's

J4C8SECC

1   only going to count as one violation.

2           So, for example, SAR 1712 has a deposit to trading

3   volume ratio of 330, and would be deficient for that reason

4   alone.  And for the other one, 1907, that also cleared the

5   summary judgment hurdle in the foreign involvement category and

6   would be deficient for that reason alone.

7           So I think if there are factual disputes about the

8   deficiencies describing shell or derogatory history of the

9   stock, I think that objection is moot at this point, and I just

10  suggest that maybe the presentation of evidence on that might

11  be unnecessary.

12          THE COURT:  That's right, Mr. Miller.  If it's moot,

13  it's moot, and I don't need to engage with this anymore.

14          So Ms. Fritz, you don't have to send me that material.

15          MS. FRITZ:  I will need to double-check to see whether

16  there was another position that we took.  And your Honor will

17  be getting to this in a moment, there were some where we

18  objected on the grounds of the expansiveness of the narrative,

19  which we think really would address one or perhaps more than

20  one claimed violation, depending on how material it was.

21          THE COURT:  Thank you.

22          So the next issue is duplicate SARs.  Alpine contends

23  that there were or are 17 duplicate SARs, which are identical

24  in every respect except for having different filing dates.

25          So, Mr. Miller, I think we should handle this by

J4C8SECC

1    agreeing that for summary judgment purposes, summary judgment

2    is entered on one SAR for each pair.  Do you understand?

3            MR. MILLER:  I understand.  And for summary judgment

4    purposes I agree that that's efficient, and we will agree to

5    that.

6            THE COURT:  Great.

7            So that takes us to the last issue, the fulsome

8    narratives issue.  And this applies to SARs filed at some point

9    after 2012.

10           Alpine opposes entry of summary judgment as to 282

11   SARs filed after 2012.  These SARs omitted a description of one

12   or more red flags, but in Alpine's view otherwise contained

13   fulsome descriptions of Alpine's reasons for filing the SAR,

14   including descriptions of one or more other red flags.

15           Do I understand that correctly, Ms. Fritz?

16           MS. FRITZ:  In some instances, for example, there are

17   ones where the deficiency is that the narrative didn't repeat a

18   foreign connection that was otherwise reflected in the SAR.  So

19   I do think there's instances where that factor, called a red

20   flag or whatever, we would argue was contained in the SAR, and

21   the allegation is that it had to be repeated in the narrative.

22   So I think there are some instances where that occurred.

23           But otherwise, yes, what we are saying is where the

24   firm communicated what it viewed as suspicious, and identified

25   in some instances at great length aspects of the transaction

J4C8SECC

1    that it felt should be brought to the attention of FinCEN, that

2    a failure to omit that it was a shell a year prior, something

3    like that, would not be material and would not rise to the

4    level of a violation of BSA.  And we are really relying very

5    much on what seemed to be a concept that was repeated

6    throughout the opinion, which is that summary judgment wouldn't

7    be available if there really is an expansive SAR and there is a

8    failure to identify perhaps one of these red flags in the

9    narrative.

10            THE COURT:  Thank you.

11            With respect to the foreign involvement issue, I

12    direct your attention to page 438 and following of the summary

13    judgment opinion in which I explicitly rejected the argument

14    that you're now making, that if there was identification of a

15    foreign connection in a different part of the SAR, you did not

16    need to repeat it in the SAR narrative section.  So that

17    argument which has just been made to me now orally was

18    addressed and rejected.

19            With respect to --

20            MS. FRITZ:  I understand --

21            THE COURT:  Ms. Fritz, do not interrupt me.

22            With respect to the rest of the argument, I reject

23    that as well.  The summary judgment motion was premised in part

24    on 1,593 SARs filed with deficient narratives.  About one third

25    of those was filed after September 28, 2012.  And indeed, the

J4C8SECC

1    opinion focused on one 2013 SAR reciting at length its

2    narrative so that the reader could understand the difference in

3    the kind of description provided after September 28, 2012 by

4    Alpine in its SAR narratives.

5         The opinion's reasoning rested on largely, almost

6    exclusively, on the SAR form instructions, which required red

7    flags to be reported, at least those red flags on which the SEC

8    relied in bringing its motion for summary judgment.  If there

9    was a question of fact for Alpine to raise, for instance, that

10   its narratives were so extensive and addressed so many red

11   flags that there was a question of fact as to the adequacy of

12   the narrative that prevented summary judgment from being

13   entered, even though the narrative omitted mention of a

14   particular red flag, then the time to raise that issue and make

15   that argument was in opposition to summary judgment.  Where it

16   did, I addressed it.  It is too late now to make that argument.

17        Moreover, in connection with the discussion in the

18   summary judgment opinion about related litigation, I noted that

19   Alpine had provided no testimony and pointed to no recorded

20   analysis of red flags in its support files that caused it to

21   determine that it did not need to include disclosure of the red

22   flags in the narratives.

23        At page 426, I rejected the Alpine argument that the

24   red flag triggered a duty to investigate and report, but not

25   necessarily a duty to disclose the red flag in the SEC

J4C8SECC

1    narrative.  While I observed at that page that a fulsome SAR

2    narrative could present a question of fact as to whether the

3    narrative was deficient, I noted as well, except in rare

4    instances, Alpine has not shown that its SAR narratives

5    contained sufficient information to create a question of fact.

6    Again, it's too late to do so now.

7            And in connection with the discussion of unverified

8    issuers, which is at page 436 of the opinion, I noted that a

9    filer had a duty to disclose, not simply to weigh and balance

10   competing inferences.

11           So in opposition to summary judgment, Alpine did not

12   argue with respect to these 282 SARs that summary judgment was

13   not warranted because the SAR narrative was fulsome and that by

14   itself excused the omission of the disclosure of a red flag.

15   So this objection is denied.  Alpine had an opportunity to

16   present a question of fact as to any individual SAR in

17   opposition to the summary judgment, and where it did, I

18   considered it and ruled.

19           So I think that means that the parties should be able

20   now to figure out how many SARs I have granted summary judgment

21   on and to move forward with this litigation.

22           What is the next step, Mr. Miller, in your view,

23   procedurally?

24           MR. MILLER:  I think it would be helpful for us to

25   confer with Alpine on issues raised in the footnote in the

J4C8SECC

1    brief that I think need some time to clarify.  Then after that,

2    I think the SEC is happy to put together a final table of SARs

3    that were granted summary judgment on, and we are happy to put

4    as much detail in that as Alpine and the Court thinks is

5    necessary, or just a list of SARs, or even just a number.  But

6    we are happy to sort of come to a final summation as to the

7    number of violations on the deficient SAR category.

8              THE COURT:  I think you should follow the format you

9    used in the chart that you gave me for this application.

10             MR. MILLER:  Yes.  It resembles table 10 that is

11   attached to our motion.  I think that's a great idea from our

12   side.  So we agree.

13             THE COURT:  But when that is done, then what is the

14   next step?  Do you want a trial on the other SARs or should I

15   just enter judgment and we go to the damages phase?

16             MR. MILLER:  We are prepared definitely to just go to

17   the remedies phase.  While we recognize there's disputes of

18   fact on many of these, we think it's sufficient to just go to

19   remedies phase and forgo a trial.

20             THE COURT:  So let's figure out a schedule for this.

21   I will assume that -- excuse me one second.

22             Let's assume you are going to talk about the footnote

23   3 issue next week.  How long to get a revised table together

24   then, Mr. Miller?

25             MR. MILLER:  The first step in that, I think Alpine

J4C8SECC

1    needs to tell us exactly which SARs they think are no longer in

2    the summary judgment basket.  Once they do that, I don't think

3    there is a lot of time that we need from our side to put

4    something together.  So as long as we have a few days, I will

5    propose a week.

6          THE COURT:  OK.  I am going to suggest, counsel, that

7    by April 26 I get the parties' positions with respect to that

8    final chart.  That's two weeks from now.

9          How long then to file the motion with respect to

10   remedies, Mr. Miller?

11         MR. MILLER:  Even just a week after that would be fine

12   for the SEC.

13         THE COURT:  So that will be May 3rd.

14         Ms. Fritz, how long to respond?

15         MS. FRITZ:  We do need more time than Mr. Miller feels

16   that they need.  So we would ask for May 24.

17         THE COURT:  That's fine.

18         I will give the SEC then until June 7 for a reply.

19         Now, with respect to settlement discussions, where

20   have you been for settlement discussions?  Remind me.

21         MS. FRITZ:  Your Honor, we conducted another mediation

22   recently at your Honor's direction, and there was still, shall

23   we say, an enormous chasm between the parties.  Quite honestly,

24   the firm just doesn't have the ability to do what the SEC is

25   asking.  So there was nowhere to go with it.

J4C8SECC

| | |
|---|---|
| 1 | THE COURT:  Mr. Miller, I think after the SEC files |
| 2 | its brief seeking remedies, that there should be one final |
| 3 | effort to mediate and for the SEC to enter into those |
| 4 | negotiations in good faith.  Do you agree? |
| 5 | MR. MILLER:  Yes, your Honor.  I don't disagree with |
| 6 | what Ms. Fritz said about the last mediation, but I agree that |
| 7 | it's definitely worth a try. |
| 8 | THE COURT:  Do you?  Will there be sufficient |
| 9 | flexibility on the SEC's part that another mediation session |
| 10 | might make sense or not? |
| 11 | MR. MILLER:  Well, candidly, your Honor, I don't know |
| 12 | that it would actually be productive.  I think if the Court |
| 13 | wants us to try, of course we are willing to.  Like I said, I |
| 14 | agree with Ms. Fritz, how she characterized our last try, and I |
| 15 | think, at least from us, I'm not sure our position would change |
| 16 | much between now and the time that we submit our brief. |
| 17 | MS. FRITZ:  I think there was an understanding in |
| 18 | terms of what the firm's revenues and capabilities are and the |
| 19 | SEC's number being many, many, many multiples of that.  So I |
| 20 | think Mr. Miller certainly has an understanding of what those |
| 21 | numbers look like, and what I am hearing is that's not |
| 22 | something that they would be willing to consider. |
| 23 | THE COURT:  So let's talk about the remedies motion a |
| 24 | bit.  What kind of remedies are you going to seek here in terms |
| 25 | of remedies that might require a trial for additional |

J4C8SECC

1    fact-finding to occur, Mr. Miller?

2              MR. MILLER:  From the SEC's point of view, I think

3    this is something we are going to present that could be

4    determined on the papers in our view.  Obviously, if the Court

5    wishes, we are happy to show up at a hearing.  I am not sure

6    that there is any evidence that we would present affirmatively

7    in support of the remedies motion.  That said, I think it could

8    be done on the papers or a hearing, and unless there is

9    something that we would need to rebut in terms of evidence, I

10   don't see the need for us to put on any affirmative evidence.

11             THE COURT:  Well, Ms. Fritz, until you see the motion

12   it's hard for you to know whether or not there are disputed

13   issues of fact, I expect.  Am I right?

14             MS. FRITZ:  I would make two points, which is if they

15   are seeking more than tier one penalties, then we certainly

16   know that there are issues concerning all of this conduct, why

17   it happened, how it happened.  So we certainly think in that

18   instance there's a whole raft of issues.  I don't know whether

19   at this point the SEC is willing to say whether that's the case

20   or not.

21             THE COURT:  Are you seeking more than tier one

22   penalties, Mr. Miller?

23             MR. MILLER:  No, your Honor.  The penalties we would

24   be seeking are tier one penalties.

25             MS. FRITZ:  In that case, your Honor, under the

J4C8SECC

1   factors that would be relevant, certainly there remains an

2   issue with respect to degree of egregiousness, scienter, all of

3   that.  So certainly we want to present the Court with a robust

4   presentation that really walks through how this happened and

5   why it happened.  So we will be presenting that.  I am not sure

6   if the Court would feel then that a hearing is necessary, but

7   that's the kind of thing that we intend to present.

8           THE COURT:  OK.  I am not going to assume at this

9   point that I can do this on the papers without a hearing.  We

10  will just see what the papers look like.  And Ms. Fritz, if you

11  request a hearing, or it appears to me reading the papers that

12  a hearing would be necessary, that will impact the next phase.

13          I am also not going to order you to return to

14  mediation because I don't want to waste your time further if

15  there is no flexibility.  But it does sound to me, Ms. Fritz,

16  that you did not yet know whether or not it was just going to

17  be a request for tier one violations or penalties or more than

18  that.

19          So, Mr. Miller, does that suggest that there might be

20  more room for flexibility on the SEC's part?

21          MR. MILLER:  I don't think that changes the analysis

22  enough, your Honor.  I think it was maybe not as specific as I

23  just said their penalties were, but I think Ms. Fritz

24  understands what we are going to be asking for.

25          MS. FRITZ:  I think given the number of violations,

J4C8SECC

1   that still gives the SEC, even at a tier one level, the ability

2   to go into what I refer to as the stratosphere, the 20, 30, 40

3   million range, even with a tier one.

4          THE COURT:  OK.  Thank you for your guidance everyone.

5   We will get out a scheduling order.  If anyone comes to believe

6   that another round of mediation would be appropriate or helpful

7   or have any chance of succeeding at all, please talk to your

8   adversary and feel free to make a request for a referral to me.

9          Thank you very much, counsel, for your assistance

10   today.

11          MR. BLETZACKER:  Your Honor, may I ask one quick

12   point?

13          THE COURT:  Yes.

14          MR. BLETZACKER:  On the Clyde Snow side, we have a

15   little bit of a conflict on May 24, and actually, the revised

16   schedule is tightening up a little bit more than the schedule

17   we had before.  So if we could move our response date to May

18   31, the next week, we would greatly appreciate that.

19          THE COURT:  That's no problem.  So that would be June

20   14.

21          May 31 for opposition.  June 14 for a reply.

22          Thank you, all.

23          (Adjourned)

24

25