ZACHARY T. CARLYLE
carlylez@sec.gov
TERRY R. MILLER
millerte@sec.gov
SECURITIES AND EXCHANGE COMMISSION
1961 Stout Street, 17th Floor
Denver, Colorado 80294
(303) 844-1000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>                              Plaintiff,<br><br>- against -<br><br>ALPINE SECURITIES CORPORATION,<br><br>                              Defendant. | 17-cv-4179-DLC<br><br>**MEMORANDUM IN SUPPORT OF THE SEC'S SUBMISSION OF A FINAL CHART LISTING DEFICIENT SARS AS TO WHICH SUMMARY JUDGMENT WAS GRANTED**<br><br>ECF CASE |

Pursuant to the Court's Order dated April 15, 2019 (Doc. No. 190) and after consultation with Alpine Securities Corporation ("Alpine"), Plaintiff United States Securities and Exchange Commission ("SEC") submits a revised table ("Revised Table") identifying the deficient-narrative SARs on which summary judgment was granted. This memorandum explains the Revised Table and responds to an argument raised by Alpine for the first time in its April 4, 2019, "Memorandum Regarding Objections Pertaining to Certain SARs" (Doc. No. 188 "Objection Memo").

1

I.  **Revised Table of SARs**

The Revised Table is the latest iteration of a list of SARs the SEC initially presented to Alpine on December 20, 2018. *See* Doc. No. 183 at 1. On February 15, 2019, the SEC submitted a list containing 1,514 SARs on which, the SEC contends, the Court granted summary judgment. Doc. No. 183-1. On the same day Alpine submitted what ultimately became a list by SAR number of 1,127 SARs in the table to which Alpine agreed that the Court granted summary judgment, Doc. No. 186 at Ex. A p. 10 ("Alpine's Stipulation"), and also asserted an array of objections. Doc. Nos. 183 at 2-4 and 183-3 to 183-10. Alpine later clarified its objections to 387 specific SARs, Objection Memo at 1, the Court denied these objections, and the SEC agreed to remove 9 of these SARs. The remaining 1,505 SARs are listed in the Revised Table.

As explained below, the Revised Table is organized to address Alpine's new argument concerning 495 SARs which Alpine identified to the SEC on April 15, 2019. These 495 SARs are located at the end of the list and have the "X-Cust. A" citation in the "5Ws" column.

II.  **Alpine's new argument about Customer A SARs should be denied.**

Alpine's new argument about the 495 "Customer A" SARs raises the issue whether these SARs were mandatory. *See SEC v. Alpine Sec. Corp.*, 354 F. Supp. 3d 396, 423 (S.D.N.Y. 2018) ("*Alpine II*") ("For the remaining SARs, the SEC relies on an alleged pattern of suspicious trading, specifically, that Alpine filed a large number of SARs for the same customer."). On summary judgment, the SEC argued that a significant number of SARs filed between 2011 and 2015 were mandatory because they involved a large deposit of low-priced securities and were made for the account of Customer A. SEC's Memorandum of Law in Support of Motion for Summary Judgment at 11-12 (Doc. No. 147 ("SEC MSJ")). These SARs were deficient because they failed to describe basic customer information (sometimes referred to as the "5Ws") but did

not otherwise involve one of the six red flags covered in the SEC MSJ.[1] Two facts made the involvement of Customer A an indicator of suspiciousness sufficient to trigger a duty to file SARs on large deposits of low priced securities: the frequency and high volume of large deposits of low priced securities in this this account and the fact that Customer A was tightly connected to an individual with regulatory history. *Id.*

The SEC's argument that large deposits of low-priced securities by Customer A triggered a duty to file treated all SARs during the relevant time period the same. Alpine never argued that the date of filing was material. The Court then found that all of these SARs were mandatory without regard to the date of filing. *Alpine II*, 354 F. Supp. 3d at 439-440. Alpine now argues that the MSJ Order was wrong and the 495 SARs are not mandatory because Alpine filed these SARs prior to the November 2013 announcement of a settled action involving unregistered securities and Customer A's affiliate. *See id.* at 429 & n.54.

The SEC responds to the argument here because Alpine raised this issue for the first time in its Objection Memo on April 4 and identified these 495 SARs for the first time on April 15, 2019. The argument should be denied for at least three reasons.

A. **Alpine's new argument is untimely.**

Alpine had notice to assert this new argument on summary judgment. The SEC argued that all of Customer A's large deposits of low priced securities made during the relevant time period triggered a duty to file, including transactions that did not involve one or more of the six

---

[1] At times Alpine appears to confuse the issue of whether these SARs are mandatory with the issue of whether these SARs were deficient because they omitted related criminal or regulatory history. The SEC does not claim that these SARs are deficient because they omitted related criminal or regulatory history. With the exception of 20 SARs discussed below in Section II.C, the SARs identified by Alpine for this new argument are mandatory because they involve large deposits of low-priced securities by Customer A. They are deficient because they do not adequately explain basic customer information (the narratives are copy-and-paste jobs of the same basic template). *Alpine II*, 354 F. Supp. 3d at 439-440.

red flags. SEC MSJ at 11-12; *Alpine II*, 354 F. Supp. 3d at 423 ("For the remaining SARs, the SEC relies on an alleged pattern of suspicious trading, specifically, that Alpine filed a large number of SARs for the same customer."). This is why the Court addressed the 295 SARs in MSJ Order at pages 439-440. *Alpine II*, 354 F. Supp. 3d at 439-440 ("[T]he SEC seeks summary judgment as to approximately 295 SARs listed on Table 1 filed by Alpine in connection with large deposits of LPS made by three customers.").

Indeed, 270 of the SARs cited by Alpine for this new argument appeared only in Table 1 attached to the SEC MSJ: these 270 SARs involved large deposits of low-priced securities by Customer A with SAR filing dates before November 2013 and omitted none of the six red flags.[2] These SARs gave Alpine notice to assert this new argument and Alpine could have argued on summary judgment, as it now does, that involvement of Customer A was not a sufficient indicator of suspicious activity prior to November 2013. Instead, Alpine made a strategic decision to insist that the SAR filing rules contained no objective standard and that all of Alpine's SARs were "voluntary" simply because Alpine said so. Alpine did not even raise this issue in the objections asserted on February 15. Doc. Nos. 183 at 2-4 and 183-3 to 183-10.

The only change in circumstances since Alpine's response to the SEC MSJ is not material here. It is true that the number of SARs subject to this new argument is larger now than it would have been during summary judgment due to the Court's rulings on certain red flags. But this argument absolutely applied to a large group of SARs attached to the SEC MSJ and could have been asserted in Alpine's response. *See also* Alpine Objection Memo at 3 n.3 ("the number of

---

[2] Examples of the 270 Customer A SARs that appeared only on Table 1 (i.e. the only claimed deficiency was omission of basic customer information) and the list of 495 SARs identified by Alpine for its new Customer A argument include the following: Item Nos. 208-209, 213-214, 373-378, 887, 890-892, 894-895, 897-898, 901-903, 910-912, 915-918, 920, 922, 924-925, 928-930, 933, 936, 940-941, 944-955, 963, 973, 975, 976-977, 980-981, 984, 987, 991, 993, 995, 997, and 1000.

4

SARs where the five essential elements is the *only* identified omitted red flag has actually increased from 295 to 509 SARs"). Accordingly, Alpine's new argument based on the SAR filing date should be overruled as waived and untimely. *See, e.g.*, Transcript of April 12, 2019 Conference at 4 ("Alpine had an opportunity in opposition to the summary judgment motion to raise a factual dispute whether litigation identified by the SEC in 172 instances constituted related litigation. It did not present any factual dispute or evidence supporting any factual dispute. So this objection is overruled.").

   **B.**  **Alpine's new argument is wrong.**

  Alpine's new argument that Customer A SARs filed before November 2013 are voluntary is wrong on the merits because it is based on two incorrect premises that: (1) the announcement of regulatory action in November 2013 is the only reason why Customer A transactions were suspicious; and (2) the November 2013 announcement was not relevant to Alpine's duty to report suspicious activity that occurred prior to November 2013.

  Alpine cleared a high volume of large deposits of low-priced securities executed by Customer A during the time period relevant to this case. Alpine filed SARs on what seems like each deposit and had a stated policy of filing SARs on each deposit: "It is the policy of Alpine to file a SARs [sic] related to each deposit of securities into accounts of this nature." *See, e.g.*, Exhibit 30 ("SAR J") to the SEC's Motion for Partial Summary Judgment (Doc. No. 74).[3] Alpine filed SARs on, at least, 702 deposits executed by Customer A during the relevant period, many of which the Court has ruled were mandatory filings due to the presence of one or more red flags. The 495 SARs cited by Alpine were filed between May 27, 2011 and August 22, 2012—more than one SAR per day on the same customer using the same template. None of the

---

[3] This is the same template found in "SAR C" discussed in the order on Motion for Partial Summary Judgment. *See SEC v. Alpine*, 308 F.Supp.3d 775, 784 (S.D.N.Y 2018) (*Alpine I*).

5

SARs indicate that Alpine viewed the filings as "voluntary" and Alpine presented no transaction-specific evidence that it actually made that determination. *See Alpine II*, 354 F. Supp. 3d at 423. In addition, in November 2013 the SEC announced a regulatory action involving violations of securities laws by an entity tightly connected to Customer A. In its new argument, Alpine does not contend that these facts are insufficient under the MSJ Order to trigger a duty to file on large deposits of low-priced securities by Customer A made <u>after</u> November 2013.

These facts also are sufficient to trigger a duty to file on large deposits made <u>before</u> November 2013. The volume and pattern of deposits, together with Alpine's policy to file SARs on each deposit without qualification, is sufficient. And, even if this undisputed evidence were not sufficient, the announcement of the regulatory action in November 2013 is still relevant to Alpine's duty to file SARs on suspicious transactions at its firm. The announcement taught Alpine that an entity affiliated with Customer A engaged in securities laws violations involving microcap stock based on conduct that occurred prior to the hundreds of transactions at issue here. *Alpine II*, 345 F. Supp. 3d at 429 & n.54. [4]

Accordingly, by November 2013, Alpine knew that Customer A had made the hundreds of large deposits of low-priced securities between May 2011 and August 2012 after completion by its affiliate of the misconduct underlying securities violations involving microcap stock. Even if Alpine did not have a reason to suspect these deposits were suspicious at the time it filed the SARs (why else did it file so many?), it certainly acquired a duty to file one "no later than 30 calendar days after the date of the initial detection by [Alpine] of facts that may constitute a basis

---

[4] The conduct underlying the charges in the regulatory action described at page 429 of the MSJ Order, including the dates of the conduct, is described in a settled order publicly available on the SEC's website. The SEC is not submitting a copy of the settled order with this submission in order to maintain the generalized anonymity of Customer A used in the summary judgment papers and MSJ Order, but can provide a copy upon request.

for filing a SAR….," 31 C.F.R. § 1023.320(b)(3), namely, no later than 30 days after Alpine learned of the regulatory action. It is immaterial here that the regulatory action was announced after these deposits because "[b]roker-dealers have an ongoing duty to scrutinize all transactions they conduct." *Alpine I*, 308 F.Supp.3d at 809.

In short, Alpine had an obligation to report these deposits adequately, that obligation arose no later than November 2013, and Alpine violated that obligation in each instance with deficient SARs that obscured suspicious activity and made a mockery of the SAR filing system. Accordingly, the MSJ Order correctly ruled that Alpine had an obligation to file SARs on Customer A's large deposits of low-priced securities made during the entire time period relevant to the Complaint.

      **C.**      **20 of the 495 SARs are mandatory filings for the independent reason that they omitted low trading volume.**

At a minimum, Alpine's new argument should be denied as moot with respect to 20 SARs.[5] Each of these SARs was listed in Table A-6 (low trading volume) attached to the SEC MSJ, and the Court granted summary judgment on each of them because the underlying transactions involved a deposit-to-trading-volume ratio exceeding 20. *See Alpine II*, 354 F.Supp.3d at 437-38. Because the high ratio of deposit to trading volume is an independent basis for the determination that these SARs were mandatory, the new argument about whether these SARs are mandatory based on their filing dates is moot.

When the SEC submitted its table on February 15, it had not calculated the ratio for these SARs because the SEC asserted that they were mandatory on other grounds and Alpine included these SARs in Alpine's Stipulation. Doc. No. 183 at 2 ("In the final table, all citations in the low

---

[5] These SARs are Item Nos. 899, 900, 926, 978, 926, 978, 979, 1004, 1012, 1023, 1075, 1083, 1113, 1115, 1191, 1298, 1322, 1329, 1417, 1496, 1558, and 1578.

7

trading volume have been removed except for SARs where the only deficiency is low trading volume **and** the ratio exceeds the threshold. It is possible that SARs on the table due to other deficiencies also involve deposit-to-trading volume ratios that exceed the threshold, but it is not necessary to compute them.").[6] The first time Alpine objected to these specific SARs was on April 15, 2019, which is when the SEC computed ratios for SARs identified by Alpine that that were also on Table A-6.

During consultation on this issue, Alpine's counsel did not disagree that the SARs were identified in Table A-6 and have ratios that exceed 20. Instead, even though Alpine admits that it is trying to walk back SARs listed in Alpine's Stipulation, Alpine counsel stated that it is now too late for the SEC to rely on these red flags. It is fair and consistent with the MSJ Order for the SEC to rely on the omitted red flags for these 20 SARs, and it is especially fair because the only reason the SEC relies on these red flags at this stage is because Alpine is asking the Court for leave to walk back violations from Alpine's Stipulation.

* * * *

The SARs listed in the Revised Table are organized so that the Court can easily determine the final list of SARs on which summary judgment is granted after resolving Alpine's new argument: (1) The 1,010 SARs that are not subject to this new argument are listed in the Revised Table first; (2) the next 20 SARs, highlighted in blue on pages 69-71, are included in Alpine's new argument but are mandatory for independent reasons due to omission of low trading volume; and (3) the last 475, highlighted in green on pages 71-93, are the remaining

---

[6] This is why the heading for the low trading volume in Doc. No. 183-1 indicates that it includes a "partial list." Alpine asserted many objections to this table but never complained that this was only a partial list.

SARs subject to Alpine's new argument. The 495 SARs can also be identified by the "X-Cust. A" citation in the "5Ws" column.

This organization allows the Court to determine the final set of SARs on which summary judgment is granted, as follows:

1. If the Court denies Alpine's new argument in its entirety, each of the 1,505 SARs listed in the Revised Table are the SARs on which summary judgment is granted;

2. If the Court agrees with Alpine's new argument on Customer A SARs but agrees with the SEC that the 20 low trading volume SARs are mandatory for independent reasons, each of the first 1,030 SARs listed in the Revised Table are the SARs on which summary judgment is granted.

3. If the Court agrees with Alpine's new argument on Customer A SARs but disagrees with the SEC that the 20 low trading volume SARs are mandatory for independent reasons, each of the first 1,010 SARs listed in the Revised Table are the SARs on which summary judgment is granted.

Respectfully submitted this 26th day of April, 2019.

/s/ Terry R. Miller
Zachary T. Carlyle (*pro hac*)
Terry R. Miller (*pro hac*)
Attorneys for Plaintiff
UNITED STATES SECURITIES AND
EXCHANGE COMMISSION
1961 Stout Street, 17th Floor
Denver, Colorado 80294
(303) 844-1000

## **CERTIFICATE OF SERVICE**

I certify that on April 26, 2019, a copy of the foregoing document was served via ECF upon the following:

Brent R. Baker
Aaron D. Lebenta
Jonathan D. Bletzacker
CLYDE SNOW & SESSIONS
One Utah Center, 13th Floor
201 South Main Street
Salt Lake City, Utah 84111-2216

Maranda E. Fritz
Thompson Hine LLP (NYC)
335 Madison Avenue, 12th Floor
New York, NY 10017

*Counsel for Alpine Securities Corporation*

                                                /s/   *Elinor E. Blomgren*
                                                Elinor E. Blomgren