UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>      Plaintiff,<br><br>v.<br><br>ALPINE SECURITIES CORPORATION,<br><br>      Defendant. | Civil No. 1:17-CV-04179-DLC<br><br>Honorable Judge Denise L. Cote<br>Magistrate Judge Ronald L. Ellis |

**ALPINE SECURITIES CORPORATION'S OBJECTION TO THE SEC'S FINAL CHART LISTING DEFICIENT SARS AS TO WHICH SUMMARY JUDGMENT WAS GRANTED**

Alpine Securities Corporation ("Alpine") hereby submits this Objection to the SEC's Final Chart Listing Deficient SARs as to which Summary Judgment was Granted, and its Memorandum in Support, filed April 26, 2019, Dkt. 193 ("Memo. in Support of Final Chart").

## INTRODUCTION

During a telephonic conference held on April 12, 2019, the Court addressed Alpine's assertion that the SEC's presentation to the Court listing SAR violations had included a total of 495 SARs as to which no violation existed. The 495 SARs at issue derived from the fact that the Court had addressed in its Opinion the issue of whether the sole deficiency of the "5Ws" constituted a violation and then stated, as to SARs involving Customer A, that those SARs constituted violations because of the failure to disclose the criminal or regulatory history relating to that Customer – a November 2013 settlement involving Customer A's "affiliate." *Id.* at 439-40.  Thus, according to the Opinion, the failure to disclose the regulatory history was the

1

"qualifying" event that made these SARs deficient. The Court directed the parties to confer regarding these SARs and submit a final chart showing the SARs and violations subject to the Court's ruling on summary judgment.

The SEC agrees that the Customer A SARs at issue pre-date the regulatory event, but nonetheless has submitted a final chart which includes the 495 SARs at issue. The SEC has also submitted a Memorandum in support of that chart that claims Alpine's objection is untimely and rehashes arguments made in its moving papers on summary judgment (and, incredibly, even raises new arguments) to try to establish that these SARs are nonetheless violations. As discussed below, Alpine's objection was not untimely, and the SEC ignores the fact that the Court did not accept the SEC's arguments when they were made on summary judgment. The issue presented by these 495 SARs is limited to whether, as stated in the Court's opinion, these SARs omitted regulatory history. The SEC has now confirmed that, as Alpine asserted, the regulatory event relating to Customer A occurred **after** the date of the SARs, and so these SARs should not be included in the grant of summary judgment. The SEC's effort to construct other bases for their inclusion as violations, based on prior arguments never accepted by the Court or a belated return to the issue of low trading volume, should be rejected.

## ARGUMENT

### I. ALPINE'S ARGUMENT IS NOT UNTIMELY.

The SEC's argument that Alpine's contention regarding the 495 SARs is "new" or somehow waived is truly specious. First, from the outset of this case and throughout the briefing, Alpine has maintained that the SEC failed to demonstrate that, as a matter of law, the SARs were mandatory, while Alpine presented evidence to support the fact that the bulk of the

SARs at issue, including what have been referred to as the "template" SARs, are voluntary, filed based on the firm's discussions with regulatory officials and the resultant policy to file on large deposits, and not based on any determination of "suspiciousness."

Second, the particular contention regarding these 495 SARs was not made by Alpine earlier *because the SEC had never contended that the SARs were deficient for failure to include regulatory or criminal history.* The SEC admits as much in its supporting Memorandum: "The SEC does not claim that these SARs are deficient because they omitted related criminal or regulatory history." SEC's Mem. In Support of Final Chart, at 3, n. 1.[1] That assertion was made by the SEC, for the first time, only as a result of the Court's ruling that SARs that were designated as 5W, filed on behalf of Customer A, constituted violations because of the failure to include that customer's criminal or regulatory history.  Because the SEC had never previously identified those SARs as lacking a description of criminal or regulatory history, Alpine had never had occasion to respond to that claim.   When the SEC then included those SARs based on the Court's ruling regarding a regulatory issue, and even though no such regulatory issue existed at the time of the filing of the SARs, Alpine pointed out the error.

In fact, this bears further emphasis.  The SEC, upon receiving the Court's Opinion, must have, or at least should have, noticed that for a substantial block of Customer A SARs, the Court relied upon a regulatory action that had not yet occurred, and for which there was no other red flag identified and relied upon by the Court.  The SEC certainly must have noticed this in the exercise of applying the Court's summary judgment rulings to prepare the tables because *the SEC did not identify an omitted criminal or regulatory history for nearly 500 Customer A SARs*

---

[1] Indeed, this is confirmed by a quick review of the SEC's Summary Judgment Exhibit 10.

3

*in its tables.* By not checking the criminal or regulatory history box for these SARs, the SEC knew the Court had made a mistake. Yet, rather than bring this issue to Alpine's or the Court's attention, or remove these SARs from consideration, the SEC attempted to capitalize on the error and simply try to push them through to judgment. More unbelievably, the SEC is still attempting to get judgment on these SARs through the instant Memorandum, by arguing Alpine's position is untimely or through a disguised motion for reconsideration, as discussed below. This cannot be permitted.

**II.    BECAUSE THE REGULATORY HISTORY OCCURRED AFTER THE FILING OF THE 495 SARS, THERE ARE NO DEFICIENCIES OR QUALIFYING RED FLAGS THAT SUPPORT A GRANT OF SUMMARY JUDGEMENT BASED ON THE COURT'S OPINION.**

The Court, in the telephonic conference on April 12, 2019, directed the parties to review the 495 SARs at issue and determine whether Alpine was correct that they pre-dated the regulatory event, had not been identified by the SEC in its February submission as having any other red flag, and so were not within the scope of the grant of summary judgment.

The SEC's submitted Memorandum does not dispute that there was not a regulatory issue that was omitted from these SARs. Instead, the SEC devotes itself almost entirely to an apparent request for reconsideration of arguments it put forth in its summary judgment briefing, wherein it "relie[d] on an alleged pattern of suspicious trading, specifically, that Alpine filed a large number of SARs for the same customer." *See SEC v. Alpine,* 354 F.Supp.3d at 423 (describing the SEC's argument for, *inter alia,* the Customer A SARs at issue); *see also* SEC Mem. in Support of Final Chart, at 5-6 (stating, "[t]he 495 SARs cited by Alpine were filed between May 27, 2011 and August 22, 2012 – more than one SAR per day on the same customer . . . .").

This Court already considered and rejected this argument in the Opinion. After describing the SEC's argument that a SAR in the 5W category constitutes a violation where there were repetitive transactions involving a single customer, the Court declined to accept that contention and instead articulated the requirement of a red flag. The Court stated: "Accordingly, the SEC has shown that Alpine had a duty to file each of these 1,593 SARs [which includes those at issue here related to Customer A] so long as it also shows, as discussed below, that Alpine's support files for the SARs contained information about a qualifying red flag." *SEC v. Alpine,* 354 F.Supp.3d at 423-24.

With respect to the 495 SARs at issue, the Court relied solely, albeit incorrectly, on the failure to disclose Customer A's regulatory history.[2] *Id.* at 439-40. The failure to disclose the regulatory history was the "qualifying" event that made these SARs deficient, not a pattern of suspicious trading. The SEC's argument regarding repeated SAR filings was not relied upon by the Court, it was rejected.

At this point in the proceedings, the SEC should not be allowed to seek reconsideration of that issue and ask the Court to instead base its ruling on a different ground. Such a change would cascade throughout the whole Opinion and the Court's approach in finding "that Alpine's support files for the SARs contained information about a qualifying red flag." *SEC v. Alpine,* 354 F.Supp.3d at 423-24. In fact, the SEC's attempts at re-argument here are particularly improper and ironic, given that the SEC has successfully claimed that certain of Alpine's objections, also contained throughout the motion filings, constituted untimely requests for

---

[2] Alpine notes that none of the tables submitted by the SEC in support of summary judgment identified "large number of SARs for the same customer" as an omitted red flag.

reconsideration.  Having blocked Alpine's ability to raise issues that had been previously presented, the SEC should likewise be prevented from reviving an argument that was plainly not adopted by the Court.[3]

The SEC's current argument also ignores the direction of the Court, and its counsel's own statements, during the April 12, 2019 telephone conference.  During the telephonic conference, the Court confirmed with the SEC that it did not actually contend that it was entitled to summary judgment for a SAR that was filed in relation to Customer A, prior to November 2013, where the only remaining deficiency was the "5Ws." Mr. Miller responded:

> **Based on the Court's ruling, I think the answer is no.** I think the answer is, if in fact the only reason why a SAR should have been filed is the mandatory filing was litigation in 2013, **then I think the SARs before that date there would be a disputed fact as to whether they are mandatory**. And the only reason I am hedging right now is I am not confident that that 2013 litigation was the sole basis for finding customary SARs suspicious.

*See* Transcript [Dkt. 191, at 13-14] (emphasis added).

The Court continued to question the number of SARs that fit that description, and ultimately requested that the parties "consult with each other and try to narrow this dispute, but I think we have agreement as to what could plausibly be found to have been controlled by my opinion." *Id*. at 14.  The question posed by the Court to the parties was whether these 495 Customer A SARs were filed prior to 2013 or not.  Since the conference, the parties have answered that question, confirming Alpine's assertion that there were in fact 495 Customer A SARs filed prior to 2013 that, according to the analysis and tables submitted by the SEC

---

[3] In fact, the doctrine of judicial estoppel prevents such an attempt. *See, e.g., Intellivision v. Microsoft Corp*., 484 F. App'x 616, 619 (2d Cir. 2012) (stating, with respect to judicial estoppel, that "'[C]ourts have uniformly recognized' that the purpose of the doctrine is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment . . . ." (citation omitted)).

pursuant to the Court's February 12, 2019 order, contained no other red flags and thus fell outside the scope of the Court's summary judgment ruling.   The Court did not open the door for the SEC to essentially rehash their arguments put forth in the summary judgment briefs.

Moreover, the SEC does not limit itself to simply rehashing rejected arguments.  Rather, the SEC goes several steps further by now adding a brand new argument, one that is at once meritless and illogical, i.e., that it "is immaterial here that the regulatory action was announced after these deposits."  SEC Memo. in Support of Final Chart, at 7.  Although difficult to parse, it appears the SEC claims that "[e]ven if Alpine did not have a reason to suspect these deposits were suspicious at the time it filed the SARs" at issue, Alpine still somehow had a duty to file them, after it learned of the regulatory event one to two years later, because of a purported "ongoing duty to scrutinize all transactions they conduct." *Id.* at 6-7.  This argument is completely contrary to law and logic. Subsequent events have no bearing on whether Alpine had a duty to file the SARs, or whether the SARs were deficient, at the time they were filed. However, the Court need not endeavor to try to unscramble the SEC's point, because the argument suffers from a more fundamental problem:  it was not a basis relied upon by the Court for its decision on these SARs and is not properly now before the Court.

The Court should thus reject the SEC's effort to introduce new issues into the case at this late date in a misguided attempt to convince the Court to change its ruling.

### III. THE SEC SHOULD NOT BE ALLOWED TO BELATEDLY ADD ADDITIONAL RED FLAGS TO 20 OF THE 495 SARS AT ISSUE.

The SEC is also attempting to revise the table that was previously submitted to the Court in response to the Court's February Order.  In that order, the Court directed the "parties [to]

submit a table listing the deficient-narrative SARs as to which summary judgment was granted." Order, Feb. 12, 2019 [Dkt. 182]. In accordance with the directive, the parties each considered and applied the Court's rulings and filed a joint list of SARs that they agreed were within the scope of the grant of summary judgment [Dkt. 186], and a joint table wherein Alpine stated its objections to certain SARs [Dkt. 188-1].

In that submission, the SEC reduced its listing of low-trading volume from a total of more than 700 to less than 20. Thus, as the various components of the Court's decision were applied by the parties, including the Court's definition of low trading volume, the number of SARs as to which "5W" was the only identified defect grew. The previous 295 SARs in that specific category increased to 509 SARs as a result of the Opinion. *See* Alpine's Mem., [Dkt. 188, at 4, n. 3]. Of the 509 five "5W only" SARs, 495 SARs involve Customer A, and each of those SARs was filed ***prior*** to the 2013 Settlement.

Although there was in fact no regulatory issue that existed in 2011 and 2012 as to those Customer A SARs currently at issue, the SEC's analysis included those Customer A SARs in its listing of violations based on the Court's ruling in the prior tables submitted to the Court following summary judgment, identifying no other deficiency. Alpine did not object to their inclusion because the Court's ruling appeared clear and the parties were tasked with application of the ruling, but it did highlight the issue in its Memorandum regarding Objections submitted to the Court. *See* Alpine's Mem., [Dkt. 188, at 4, n. 3].

In light of the Court's directive that the parties address that issue of those "5W only" SARs, and the fact that Alpine's assertion was correct, the SEC decided to go back and revise its earlier position as to the violations that fell within the scope of the Court's summary judgment

8

rulings. The SEC seeks to justify its revisions by claiming that it eliminated hundreds of SARs from the low-trading volume category without ever performing the calculation called for by the Court's ruling on the issue of low trading volume. Having failed to apply the Court's ruling on that point, the SEC then presented to the Court and counsel its listing of alleged violations without identifying those SARs as having that deficiency. Now, in an effort to retain at least some of the 495 SARs as violations, the SEC has belatedly performed the low-trading volume calculation, and revised the position it took regarding application of the summary judgment ruling. On that basis, the SEC now adds low-trading volume as a deficiency to 20 of 495 Customer A SARs. Alpine objects to that revisionist approach.

## CONCLUSION

For the foregoing reasons, and those set forth in Alpine's submissions on April 4, 2019 and at the April 12, 2019 telephonic conference, Alpine respectfully requests that the Court (1) deny the SEC's arguments set forth in its Memorandum in Support of Final Chart, and (2) direct the SEC to submit a new chart that removes the 495 SARs at issue with respect to Customer A, which have the designation "X-Cust. A."

DATED this 26th day of April, 2019.

/s/ *Aaron D. Lebenta*
Brent B. Baker (BB 8285)
Aaron D. Lebenta (*Pro Hac Vice*)
Jonathan D. Bletzacker (*Pro Hac Vice*)
**CLYDE SNOW & SESSIONS**
One Utah Center
201 South Main Street, Suite 1300
Salt Lake City, Utah 84111-2216
Telephone 801.322.2516
Facsimile 801.521.6280

Email: brb@clydesnow.com
adl@clydesnow.com
jdb@clydesnow.com

Maranda E. Fritz
**THOMPSON HINE**
335 Madison Avenue, 12th Floor
New York, New York 10017-4611
Tel. 212.344.5680
Fax 212.344.6101
Email:  Maranda.Fritz@thompsonhine.com

*Attorneys for Defendant Alpine Securities Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2019 a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ *Aaron D. Lebenta*