ZACHARY T. CARLYLE
carlylez@sec.gov
TERRY R. MILLER
millerte@sec.gov
SECURIITES AND EXCHANGE COMMISSION
1961 Stout Street, 17th Floor
Denver, Colorado 80294
(303) 844-1000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>                              Plaintiff,<br><br>            - against -<br><br>ALPINE SECURITIES CORPORATION,<br><br>                              Defendant. | 17-cv-4179-DLC<br><br>ECF CASE |

**PLAINTIFF UNITED STATES SECURITIES AND
EXCHANGE COMMISSION'S MEMORANDUM OF LAW
IN OPPOSITION TO ALPINE SECURITIES CORPORATION'S MOTION FOR
RECONSIDERATION IN LIGHT OF *KISOR***

Alpine's motion for reconsideration based on *Kisor v. Wilkie*, No. 18-15, __ S. Ct.__, 2019 WL 2605554, at *3 (June 26, 2019)—a Supreme Court decision that reaffirms existing precedent—is meritless for three reasons.  First, *Kisor* addresses only the continued viability of *Auer* deference and did not change the law regarding that doctrine.  Second, *Kisor* is irrelevant to most of what Alpine is complaining about because the court did not rely on *Auer* deference to conclude that the Commission has the authority to bring this action. Third, the court also did not defer to the Commission regarding the required contents of suspicious activity reports (SARs). To the extent that the court accorded *Auer* deference to FinCEN guidance on that topic, Alpine fails to explain how *Kisor* warrants reconsideration.

**I.**  The standard for granting a motion for reconsideration is "strict."  *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012).  As Alpine acknowledges (Mot. 2), "reconsideration should be granted only when the [movant] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013).  Alpine premises its reconsideration motion entirely on *Kisor*.  Mot. 1-2.  But *Kisor* does not constitute a "change of controlling law."

As the court knows, "*Auer* deference" refers to the practice of "defer[ring] to agencies' reasonable readings of genuinely ambiguous regulations."  *Kisor*, 2019 WL 2605554, at *3.  The "only question presented" to the Supreme Court in *Kisor* was "whether [it] should overrule" *Auer*, "discarding the deference [it] give[s] to agencies."  *Id*.  And the Court "answered that question no."  *Id*.  The Court also "reinforce[d] [*Auer*'s] limits," *id*., based on "longstanding" precedent, *id*. at *10, instructing the public that it could view the recitation of those limits "as 'just background' because we have made many of its points in prior decisions," *id*. at *4; *see also id*. at *7-10 (explaining *Auer*'s scope based on existing precedent).[1]

Because *Kisor* reaffirms and reinforces existing precedent, it provides no basis for a reconsideration of this court's summary judgment decisions.  The court should deny Alpine's motion for that reason alone.

**II.**  Even if *Kisor* could be read to have changed *Auer* doctrine in some way, it is irrelevant to the court's conclusion that the Commission has the authority to bring this action pursuant to Exchange Act Section 17(a) and Rule 17a-8—the issue to which Alpine devotes most

---

[1] Alpine's reliance on "[t]he concurring opinion of Justice Gorsuch," Mot. 3, is misplaced because, as the Court majority noted, "[t]he proper understanding of the scope and limits of the *Auer* doctrine is, of course, not set out in any of the opinions that concur in the judgment."  *Kisor*, 2019 WL 2605554, at *8 n.4.

2

of its motion. *See* Mot. 7-16. Far from being "imbued with the concept of deference" (Mot. 8), the court's decision on that issue did not even turn on an application of *Chevron* deference—a "distinct" doctrine that *Kisor* does not address, 2019 WL 2605554, at *15 (Roberts, C.J., concurring in part)—let alone *Auer* deference.

The court first determined that Section 17(a) unambiguously "commits to the SEC the discretion to determine which reports are 'necessary or appropriate' to further the goals of the Exchange Act and empowers the SEC to promulgate rules defining recordkeeping and reporting obligations of broker-dealers." *SEC v. Alpine Securities Corp.*, 308 F. Supp. 3d 775, 796 (S.D.N.Y. 2018) ("*Alpine I*"). It therefore concluded that the Commission had the authority to promulgate Rule 17a-8 "under *Chevron* step one." *Id.*; *see also id.* at 788. Although Alpine disagrees with the court's assessment of what Section 17(a) unambiguously authorizes (Mot. 9-11), those arguments have nothing to do with deference in general or *Auer* deference in particular. *See Kisor*, 2019 WL 2605554, at *7 ("[T]he possibility of deference can arise only if" there is "genuine[ ] ambigu[ity].").

Having concluded that Section 17(a) is unambiguous, the court went on to state that "even if it were necessary to proceed to *Chevron*'s step two"—where deference to an agency's statutory interpretation comes into play, *Alpine I*, 308 F. Supp. 3d at 788-89—"the SEC has easily shown that Rule 17a-8 … is a reasonable interpretation of Section 17(a)." *Id.* at 796. But the court expressly did not rest its decision on that "step two" analysis—an analysis that *Kisor* in any event does not speak to or call into question. *See Hyland v. Navient Corp.*, No. 18-cv-9031, 2019 WL 2918238, at *7 (S.D.N.Y. July 8, 2019) ("*Auer* deference has no application where, as here, the agency is interpreting a federal statute rather than its own regulation.").

The court likewise did not rely on *Auer* deference to decide that Rule 17a-8 "encompasses the suspicious reporting obligation of [31 C.F.R. § 1023.320]." *Alpine I*, 308 F. Supp. 3d at 797. The Commission has never argued that Rule 17a-8 is ambiguous and, as Alpine concedes (Mot. 12), the court did not conclude that it is. Instead, the court determined that Rule 17a-8 "unambiguously" encompasses the SAR regulation because "[t]he text of the rule simply incorporates the entirety of 'chapter X of title 31 of the Code of Federal Regulations.'" *Id.* (quoting 17 C.F.R. § 240.17a-8).[2]

Whether Rule 17a-8 "validly" encompasses the SAR regulation is a separate question—one that the court answered in the affirmative. *Id.* at 796-97. While Alpine continues to assert (Mot. 11-16) that the Commission did not properly promulgate Rule 17a-8 and cannot require broker-dealers to comply with the SAR regulation, there can be no dispute that that is what Rule 17a-8, by its plain terms, does. Alpine's invocation (Mot. 13 n.11) of the cross-reference canon does not demonstrate otherwise because, as the Supreme Court has recognized, "[r]esort … to canons of constructions"—like the application of deference—is only necessary where there is "sufficient ambiguity to warrant … seeking such aid." *Hasset v. Welch*, 303 U.S. 303, 313-14 (1938); *see United States v. Head*, 552 F.3d 640, 645-48 (7th Cir. 2009), *superseded by statute on other grounds, as recognized in United States v. Anderson*, 583 F.3d 504 (7th Cir. 2009).[3]

---

[2] The court also noted that "in a formal adjudication the SEC has announced its view that Rule 17a-8 encompasses the post-2002 BSA regulations." *Id.* That does not mean that the court found Rule 17a-8 ambiguous or was deferring to the Commission's interpretation of it. Rather, as the court explained in its subsequent summary judgment decision, "agencies may announce rules by rulemaking or through a formal adjudication," so there are "two bases for concluding that the SEC may bring this action under Rule 17a-8"—the unambiguous text of the Rule itself and the Commission's decision in a formal adjudication. *SEC v. Alpine Securities Corp.*, 354 F. Supp. 3d 396, 417 n.34 (S.D.N.Y. 2018) ("*Alpine II*").

[3] Alpine also fails to acknowledge that the Commission amended Rule 17a-8 in 2011 "to update the reference to the BSA implementing regulations." *Technical Amendments to Rule 17a-8:*

4

Regardless, even if Alpine's attempt to recast its validity arguments as matters of textual interpretation had any merit—and it does not—challenges to the court's assessment of what Rule 17a-8 unambiguously requires, again, have nothing to do with deference. Because the court's rulings on the meaning and validity of Rule 17a-8 did not involve the application of *Auer* deference, *Kisor* does not warrant reconsideration of them.

**III.** Alpine premises the remainder of its motion on a similar misunderstanding of the court's application of deference (or lack thereof). Alpine mistakenly asserts (Mot. 16-19) that the court "deferred" to the Commission's arguments regarding the information that must be included in SARs. It did not. Rather, "[t]o interpret the scope of Section 1023.320," the court "principally relie[d] on the instructions on the 2002 SAR Form, the 2012 SAR Instructions, and the SAR Narrative Guidance issued [by FinCEN] in 2003." *Alpine II*, 354 F. Supp. 3d at 414. As the court stated—and Alpine does not dispute—the SAR form and its instructions independently "have the force of law, having been issued as FinCEN regulations following a notice and comment period." *Id*. at 417. The court also determined that "FinCEN guidance interpreting Section 1023.320"—which "explains that certain fact patterns are typical of suspicious activity and should be reported by SAR filers," *id*. at 418—"is entitled to deference." *Id*. at 414; *see also id*. at 417-18; *Alpine I*, 308 F. Supp. 3d at 791.

Alpine devotes only a single paragraph of its 19-page motion (Mot. 18-19) to the court's discussion of that guidance. And it fails to explain how that discussion runs afoul of *Kisor* or requires reconsideration of the court's summary judgment decisions. To the contrary, Alpine acknowledges (Mot. 17) that "'[a]uthoritative statements of FinCEN … fit within *Kisor*'s definition of pronouncements that could be entitled to deference." And it "does not argue that

---

*Financial Recordkeeping and Reporting of Currency and Foreign Transactions*, 76 Fed. Reg. 11,327, 11,328 (March 2, 2011).

Section 1023.320, including its injunction that a broker-dealer report suspicious transactions, is unambiguous …. [n]or does [it] argue that FinCEN guidance unreasonably interprets either Section 1023.320 or the SAR Form." *Alpine II*, 354 F. Supp. 3d at 418.

Alpine asserts (Mot. 18) that portions of "the 'Tips and Trends' publications" the court cited "were not drafted by FinCEN" itself.  But as the court stated, "[t]he principal source of guidance cited here is the 2003 SAR Narrative Guidance." *Alpine II*, 354 F. Supp. 3d at 418. And as the court noted, that Guidance "directs filers" to look to "'editions of The SAR Activity Review – Trends, Tips & Issues'" for "'other examples of suspicious activity.'" *Alpine II*, 354 F. Supp. 3d at 415 n.27 (quoting SAR Narrative Guidance at 6 n.5).  Alpine's only complaint (Mot. 18-19) about the court's consultation of the 2003 Narrative Guidance is that that document "does not purport to create binding content rules" and "describes the '5 Ws' in permissive terms."  But Alpine "d[id] not argue that it was not required to include information on the SARs regarding the Five Essential Elements." *Alpine I*, 308 F. Supp. 3d at 798.

In any event, as the court explained, "while FinCEN guidance is informative and useful, its role in this action can be overstated." *Alpine II*, 354 F. Supp. 3d at 417.  "The violations that the SEC asserts occurred here arose from Alpine's failure to comply with Section 1023.320's mandates and the SAR Form's instructions, including the requirement that it provide in its SARs' narratives a 'clear, complete and chronological description [of] what is unusual, irregular or suspicious about the transaction(s).'" *Id*. (quoting 2002 SAR Form at 3).  And as the court found, Alpine's failures in that regard "were stark." *Id*. at 419.

\*     \*     \*     \*

Because *Kisor* did not change the law regarding *Auer* deference, and because the court's summary judgment decisions did not turn on an application of *Auer* deference, the court should deny Alpine's motion for reconsideration.

Respectfully submitted this 26th day of July, 2019.

*/s/ Zachary T. Carlyle*
Zachary T. Carlyle (*pro hac*)
Terry R. Miller (*pro hac*)
Attorneys for Plaintiff
UNITED STATES SECURITIES AND
EXCHANGE COMMISSION
1961 Stout Street, 17th Floor
Denver, Colorado 80294
(303) 844-1000

**CERTIFICATE OF SERVICE**

I certify that on July 26, 2019, a copy of the foregoing document was served via ECF upon the following:

Brent R. Baker
Aaron D. Lebenta
Jonathan D. Bletzacker
CLYDE SNOW & SESSIONS
One Utah Center, 13th Floor
201 South Main Street
Salt Lake City, Utah 84111-2216

Maranda E. Fritz
Thompson Hine LLP (NYC)
335 Madison Avenue, 12th Floor
New York, NY 10017

*Counsel for Alpine Securities Corporation*

/s/ *Zachary T. Carlyle*
Zachary T. Carlyle