ZACHARY T. CARLYLE
carlylez@sec.gov
TERRY R. MILLER
millerte@sec.gov
SECURITIES AND EXCHANGE COMMISSION
1961 Stout Street, 17th Floor
Denver, Colorado 80294
(303) 844-1000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>- against -<br><br>ALPINE SECURITIES CORPORATION,<br><br>Defendant. | 17-cv-4179-DLC<br><br>ECF CASE |

**MEMORANDUM OF LAW IN OPPOSITION TO ALPINE'S
MOTION TO STRIKE OR FOR LEAVE TO FILE SUR-REPLY**

Plaintiff United States Securities and Exchange Commission ("SEC") submits this memorandum of law in opposition to Alpine Securities Corporation's ("Alpine") Motion to Strike or for Leave to File a Sur-Reply and memorandum in support (Doc. Nos. 217 & 218, "Motion").[1]

## INTRODUCTION

Alpine responded to the SEC's request for penalties in part by arguing that Alpine's financial condition warrants a reduced penalty. To the extent that factor deserves any weight here, Alpine had the burden to show why its financial condition warrants a reduced penalty. To that end Alpine provided some information about its financial condition in its opposition papers, but that information was focused on Alpine's current balance sheet and was incomplete. The SEC replied with evidence that should be considered when determining whether to give weight to Alpine's balance sheet in assessing an appropriate penalty: the fact that Alpine regularly and systematically transferred millions of dollars to its ownership. After omitting this evidence from its opposition papers Alpine now asks the Court to strike it from the Reply. Motion at 5-16.

The Motion should be denied. The argument in the SEC's Reply about Alpine's financial condition addressed a penalty factor raised in the motion and specifically addressed Alpine's response about its financial condition set forth in its opposition papers. The Reply thus "properly address[ed] new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party." *Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 226–27 (2d Cir. 2000). Indeed, the only purpose served by the SEC's argument about Alpine's financial condition in the Reply was to rebut Alpine's opposition papers because the SEC's

---

[1] Citations to "Motion" in this opposition refer to the memorandum of law in support of the Motion, Doc. No. 218.

position, set forth in the Motion and the Reply, is that Alpine's financial condition should be given no weight in assessing remedies.

The similar argument in the Motion about Alpine's past settlement offers is an attempt to create conflict where there is none. The Court should not consider settlement discussions in assessing remedies and, contrary to the Motion, the SEC never asked the Court to do so.

Finally, the request to file a sur-reply should be denied for the additional reason that the Motion already contains Alpine's sur-reply about its financial condition. The Motion spends eight pages to contend (incorrectly) that the SEC's argument in its Reply about Alpine's ownership is "unsupported, irrelevant, and meritless." Motion at 8-16.[2] That is what a sur-reply is, and there is no useful purpose for what would be in effect a further reply; even more so if Alpine continues to address the merits in its reply in support of the Motion. Additional argument by Alpine (it has already submitted close to 80 pages of briefing) is not necessary because the Court is capable of rendering a fair decision on remedies by giving the relevant factors the weight each one deserves.

## ARGUMENT

I. **THE REPLY'S DISCUSSION OF ALPINE'S FINANCIAL CONDITION ADDRESSED ALPINE'S OPPOSITION PAPERS.**

The SEC's argument about Alpine's financial condition set forth in its Reply did not raise new issues. The Reply properly addressed Alpine's failure in its opposition papers to meet its burden to show that a lower penalty is warranted by its financial condition:

---

[2] Alpine initially cites the rule that sur-replies should not be attached to a motion for leave to file a sur-reply, Motion at 2 n.1, but promptly defeats the purpose of that rule by inserting the substance of a would-be sur-reply directly into its motion requesting a sur-reply. *See Travelers Ins. Co. v. Buffalo Reinsurance Co.*, 735 F. Supp. 492, 495 (S.D.N.Y. 1990) ("To permit the ... papers to accompany the request … is to enable the requesting party to accomplish its goal of placing the papers before the court, thereby reducing the question of whether the papers should be accepted for filing to relative unimportance.") (quotation omitted).

- First, the SEC described the factors relevant to remedies in its Motion, including Alpine's financial condition. It was not the SEC's burden to show that the requested penalties fit Alpine's budget. *See, e.g.*, *SEC v. Integrity Fin. AZ, LLC*, No. 1:10 CV 782, 2012 WL 176228, at *10 (N.D. Ohio Jan. 20, 2012) ("The burden rests with the defendant to demonstrate his inability to pay.");[3]

- Then, Alpine attempted to show that the penalty amount should fit its current budget with evidence of its balance sheet and appeals to notions of fairness and leniency; and

- Last, the SEC showed that the information provided by Alpine about its financial condition was not complete and that, in fairness, the Court should consider the fact that the routine and substantial transfers to ownership contributed to the current amount of assets in Alpine's balance sheet. Reply at 19-20.

Alpine does not confront the connection between what it argued in its opposition papers and the SEC's Reply. Instead, it tries to make the issue of transfers to its ownership appear "new" by misquoting the Reply. Motion at 6. The partial (and misleading) quote Alpine uses to make this argument appears in this full sentence: "<u>Alpine is appealing to fairness and equity when asking for a penalty that fits its financial condition and, in fairness</u>, the Court should consider the financial condition of Alpine's ownership, not just Alpine's balance sheet, to the extent the Court gives any weight to this factor." Reply at 19-20 (emphasis added to show text omitted by Alpine). The omitted text explains exactly which part of the opposition is addressed by the distributions to

---

[3] *See also SEC v. Amerindo Inv. Advisors, Inc.*, No. 05 Civ. 5231(RJS), 2014 WL 2112032, at *13 (S.D.N.Y. May 6, 2014) ("the defendant normally bears the burden of demonstrating that her or his financial condition justifies a reduced fine."); *SEC v. Robinson*, No. 00 CIV.7452 RMB AJP, 2002 WL 1552049, at *12 (S.D.N.Y. July 16, 2002), *supplemented,* No. 00CIV7452RMBAJP, 2002 WL 1729559 (S.D.N.Y. July 23, 2002) ("the mere statement that he has no money is not sufficient to support his burden on this issue") (quotation omitted).

3

Alpine's ownership addresses. The issue is not "new" because it "properly address[ed] new material issues raised in the opposition papers[.]" *Bayway Ref.*, 215 F.3d at 226–27.

The Reply's argument that Alpine's beneficial owner refused to appear at a deposition is related to the same point: for Alpine to appeal to fairness persuasively it should be transparent about its financial relationship with its ownership. John Hurry was and is a managing agent of the firm within the meaning of Fed. R. Civ. P. 32(a)(3) & 37(d)(1)(A)(i), was properly served, and his failure to appear to discuss the firm's financial condition, *see* Doc. No. 214-7, tends to show that Alpine is not presenting evidence of its financial condition transparently or in good faith.

Moreover, Alpine's argument that it was "sandbagged" is not credible. The argument that Alpine provided incomplete information in its opposition papers was a natural and foreseeable consequence of Alpine's reliance on its financial condition to ask for a lower penalty. Alpine should have expected this issue because courts obviously consider a defendant's failure to provide complete information about their financial condition when assessing the appropriate weight given to the defendant's claimed inability to pay. *See, e.g.*, *SEC v. Alternative Green Techs., Inc.*, No. 11 CIV. 9056 SAS, 2014 WL 7146032, at *4 & *6 (S.D.N.Y. Dec. 15, 2014) (finding that the defendant "failed to demonstrate his current…inability to pay" because the defendant submitted evidence that "lacks critical information that casts doubt on the accuracy of [the evidence] as a whole"); *SEC v. Forest Res. Mgmt. Corp.*, No. 09 CIV. 0903 (JSR), 2010 WL 2077202, at *2 (S.D.N.Y. May 18, 2010) ("claims of financial hardship-presented only in affidavits from defendants themselves, and not considering future earing capability—are insufficient to outweigh the appropriateness of a penalty.").

The rules cited by Alpine that prohibit moving parties from raising new issues in reply papers are not a shield that gives Alpine free reign to omit evidence in opposition papers. The issue

4

of Alpine's financial condition was referenced in the Motion and discussed at length in Alpine's opposition papers. Alpine's objection to the Reply on this issue therefore "misconstrues the very purpose of reply papers" and should be denied. *Buffalo Reinsurance Co.*, 735 F. Supp. at 495-496; *see also Bayway Ref.*, 215 F.3d at 226-227.

## II. THE ILLUSTRATION OF ALPINE'S REFUSAL TO ACCEPT RESPONSIBILITY IN THE REPLY DID NOT COMMENT ON SETTLEMENT DISCUSSIONS.

Alpine again manufactures conflict where there is none in arguing that the SEC discussed its prior settlement positions. Motion at 16-18. It did not. The Reply made no comment on prior settlement discussions. The full context of the text cited in the Motion argued that Alpine's request for a negligible penalty coupled with future undertakings was not adequate and illustrated Alpine's continued refusal to accept responsibility for its serious misconduct:

> The evidence has demonstrated and the Court has found that Alpine was a serial violator of the securities laws. Alpine has wholly failed to take responsibility for that massive failing. Indeed, Alpine has failed to take reasonable steps to remedy its systematic failures and only offers now to agree to certain affirmative undertakings, if it is combined with the lightest of monetary slaps on the wrists; a penalty as low as $24 per violation calculated to accommodate its balance sheet after Alpine's ownership systematically withdrew millions of profits.

Reply at 1-2. The language selectively quoted and emphasized in the Motion (at 17), "only offers now," meant that Alpine's proposal of undertakings together with a negligible penalty (*i.e.* what Alpine "offers now"), would "only" amount to "the lightest of monetary slaps on the wrist." Alpine's contingent proposal, which does not include a permanent injunction or significant civil penalties, further demonstrates that it continues to refuse to take responsibility for or address its serious and systematic violations. This argument has nothing to do with Alpine's prior settlement positions—the point is the same regardless of whether Alpine previously proposed undertakings in unsuccessful settlement offers.

5

Lest there be any doubt, the SEC's position is that settlement discussions are irrelevant and confidential. The Court should not consider them. Alpine's Motion already violates the confidentiality rules of mediation by describing purported statements made in mediation;[4] and the Court should decline Alpine's request to violate those rules again.

### III.   ALPINE'S FINANCIAL CONDITION SHOWS THAT THE COURT SHOULD GIVE LITTLE WEIGHT TO THIS FACTOR.

Although Alpine asks for permission to respond to the SEC's Reply on the merits, Alpine nevertheless provides its response on the merits in the Motion by arguing that the SEC's contention in the Reply on this issue is "unsupported, irrelevant and meritless." Motion at 8-16. To the extent relevant to the Motion, the following shows why Alpine's arguments on the merits are not correct.

#### A.   Alpine's Equity Transfers are Relevant to its Financial Condition because they Contributed to Alpine's Current Financial Condition.

Alpine's arguments about relevance and merit are wrong because Alpine again mischaracterizes the SEC's position. To be clear: The SEC contends that if the Court considers Alpine's current financial condition it should also consider the fact that multi-million dollar distributions to its ownership had a direct impact on the amount of assets in the balance sheet cited by Alpine. It cannot be the law that a defendant can render itself judgment proof and then point to its poverty to avoid a meaningful penalty.

Accordingly, Alpine's argument that the SEC seeks a judgment against Alpine's ownership is simply wrong. Motion at 9. The SEC does not seek a judgment against any person or entity other than Alpine. Likewise, Alpine's argument about limited liability misses the point because the SEC is not asking the Court to pierce a corporate veil or claw back distributions. Motion at 10-11. The

---

[4] Consistent with the Reply, the SEC makes no comment in this paper on the content of any communications made during mediation sessions.

SEC is asking the Court to give no or little weight to the financial condition of Alpine in part because its financial condition is artificially diminished by massive distributions of its assets to ownership. The SEC takes no position in this lawsuit on whether these transfers were proper or authorized. The point is that Alpine should not be able to hide the fact that the amount of its current assets resulted from lucrative transfers to its ownership at the same time it asks the Court to consider a lower penalty based on the amount of those remaining assets.

Among other things, these transfers are relevant to Alpine's claimed inability to pay because courts are far less sympathetic to a claim of poverty after a defendant transfers or spends his money. *SEC v. Inorganic Recycling Corp.*, No. 99 CIV. 10159 (GEL), 2002 WL 1968341, at *4 (S.D.N.Y. Aug. 23, 2002) ("But to withhold the remedy of disgorgement or penalty simply because a swindler claims that she has already spent all the loot and cannot pay would not serve the purposes of the securities laws."). The amount of these transfers also helps to show a clearer picture of Alpine's profitability in the past, which should be considered when assessing the likelihood that Alpine's fortunes will improve one day. *SEC v. Kane*, No. 97 CIV. 2931 (CBM), 2003 WL 1741293, at *4 (S.D.N.Y. Apr. 1, 2003) ("[T]he court agrees with the Commission that it should not ignore the possibility that a defendant's fortunes will improve, and that one day the SEC will be able to collect on even a severe judgment.").

None of the cases cited by Alpine hold that consideration of a defendant's current and future ability to pay should be restricted to the four corners of its balance sheet. In *SEC v. Haligiannis* (Motion at 9), the court did not even consider the financial condition of the defendants. 470 F. Supp. 2d 373, 386 (S.D.N.Y. 2007). The issue in *United States v. Bestfoods* (Motion at 10) was when a parent corporation may be charged with derivative CERCLA liability for its subsidiary's actions, which is not relevant here because the SEC is not seeking to charge Alpine's owner with derivative

7

liability. 524 U.S. 51, 61 (1998). Consideration of transfers of Alpine's assets when assessing Alpine's current and future ability to pay is far different from holding ownership derivatively liable. The issue in *Orlob v. Wasatch Mgmt.* (Motion at 10) was whether a party who signed a contract in his individual capacity has an interest in the contract. 33 P.3d at 1078, 1082 (Utah Ct. App. 2001). The issue in *White Rosebay Shipping S.A. v. HNA Grp. Co.* (Motion at 11) was whether a parent corporation's refusal to fund a subsidiary abused the corporate form, which is not relevant here because the SEC does not need to show that Alpine's owners abused its corporate form by withdrawing money from the firm—the SEC is only arguing that the Court should consider the transfers when assessing Alpine's ability to pay a penalty. No. CA C-12-096, 2012 WL 6858239, at *7 (S.D. Tex. Dec. 5, 2012).

In *United States v. Dico, Inc.* (Motion at 11-12) the court declined to consider assets of a parent, but that is not the point here because the SEC is not just asking the court to look at the net worth of Alpine's ownership, but it is specifically asking the Court to consider transfers made to help make Alpine judgment proof. 4 F. Supp. 3d 1047, 1065 (S.D. Iowa 2014), *aff'd in part, rev'd in part,* 808 F.3d 342 (8th Cir. 2015). In any event, immediately preceding the text from *United States v. Dico, Inc.* quoted by Alpine, the court acknowledged that some courts do consider the assets of the defendant's parent's company when assessing a penalty. *Id.* at 1065 n.43. The citations to cases involving punitive damages are unhelpful for the same reasons. Motion at 12.

Accordingly, Alpine's argument that transfers to ownership are not relevant to its financial condition is incorrect.

### B. The SEC did not "Misstate" Facts about Alpine's Financial Condition.

Alpine argues that the SEC misidentified Alpine's owner as John Hurry because, Alpine claims in the Motion, Alpine is owned by SCA Clearing, LLC. Motion at 13. But the SEC did not simply identify Mr. Hurry as the owner; it argued in the Reply that "[d]uring the relevant time

period, Alpine has been a private company owned and controlled by John Hurry and his family through various entities" and cited Mr. Hurry's own description of Alpine's ownership. Reply at 20 & n.2 (emphasis added).

Alpine's objection to the way the SEC characterized the withdrawals again misreads the Reply. Motion at 13-14. The SEC did not claim that the withdrawals should be clawed back as unlawful proceeds from a violation. Contrary to the Motion, a penalty amount that gives little weight to Alpine's claim of inability to pay would not force Alpine's owners to invest any money or return any withdrawals.

Alpine next accuses the SEC of a "deliberate distortion" by suggesting the withdrawals were made because of this case. But, again, that is not what the SEC said in the Reply. The SEC presented information about withdrawals during the relevant time period to show a track record of profitability not reflected in Alpine's current balance sheet. Reply at 19-22.

Alpine then accuses the SEC of "failing to inform the Court" about FINRA's role in the withdrawals and argues that FINRA "reviewed and approved Alpine's capital distributions in accordance" with FINRA Rule 4110(c)(2). Motion at 14-15.[5] This is at best incomplete. Since the SEC filed its Reply, FINRA filed a complaint against Alpine with claims for Unauthorized Capital Withdrawals in violation of Rule 4110(c)(2), alleging that since early 2019 Alpine "has been looting the Firm":

> Specifically, Alpine effected six capital withdrawals, totaling approximately $2.8 million, **without FINRA's approval**, in violation of FINRA Rules 4110(c) and 2010. Alpine effected these withdrawals in the guise of two types of sham "expense" payments to affiliates. First, in February 2019, Alpine amended its pre-existing loan agreement with its affiliate lender, Alpine Securities Holding Corporation ("Alpine Holding"),

---

[5] The SEC assumes the citation in the Motion to "FINRA Rule 4110**(a)(2)**" refers to FINRA Rule 4110**(c)(2)**. There are no subparts to Rule 4110**(a)**, and the text of the rule quoted in the motion appears in Rule 4110**(c)(2)**. Motion at 14 n.8.

9

> to dramatically increase its payments to Alpine Holding for its line of credit. During March 2019, Alpine began paying Alpine Holding a $400,000 "monthly fee," and 120% interest on amounts borrowed, for the same line of credit for which it previously paid only $75,000 per month, a $500,000 annual fee, and 36% annual interest on amounts borrowed. Second, in April 2019, Alpine paid its affiliate landlord, SCAP 9, LLC ("SCAP"), over $600,000 in response to SCAP's purported request for payment of so-called "common area maintenance" ("CAMs") charges, in addition to Alpine's usual monthly rent of approximately $50,000 and monthly CAMs and insurance expenses of approximately $5,000.

Complaint ¶ 6, Dept. of Enforcement v. Alpine Securities Corporation, FINRA Disciplinary Proceeding No. 2019061232601, attached as **Exhibit A** (emphasis added); *see also id.* ¶¶ 142-154. To the extent FINRA's position on Alpine's capital withdrawals is relevant here, FINRA's complaint for unauthorized withdrawals is a more credible statement of FINRA's position than what Alpine attributes to FINRA in the Motion. And even if FINRA approved some distributions the point is still the same because the SEC is not arguing in this case that the distributions were improper or violated a FINRA rule. Again, the SEC is arguing that the withdrawals should be considered when determining what weight to give Alpine's current amount of assets.

In sum, Alpine's argument on the merits fails. The Court should consider the entirety of Alpine's financial condition, including equity withdrawals, and Alpine's financial condition should ultimately be given little or no weight in assessing appropriate civil penalties.

## CONCLUSION

The Motion should be denied in its entirety.

Respectfully submitted this 5th day of August, 2019.

*/s/ Terry R. Miller*
Zachary T. Carlyle (*pro hac*)
Terry R. Miller (*pro hac*)

## CERTIFICATE OF SERVICE

I certify that on August 5, 2019, a copy of the foregoing document was served via ECF upon the following:

Brent R. Baker
Aaron D. Lebenta
Jonathan D. Bletzacker
CLYDE SNOW & SESSIONS
One Utah Center, 13th Floor
201 South Main Street
Salt Lake City, Utah 84111-2216

Maranda E. Fritz
Thompson Hine LLP (NYC)
335 Madison Avenue, 12th Floor
New York, NY 10017

*Counsel for Alpine Securities Corporation*

                                    *s/ Scott Wesley*
                                    Scott Wesley, Contract Paralegal