UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>  Plaintiff,<br><br>v.<br><br>ALPINE SECURITIES CORPORATION,<br><br>  Defendant. | Civil No. 1:17-CV-04179-DLC<br><br><br>Honorable Judge Denise L. Cote<br>Magistrate Judge Ronald L. Ellis<br><br>ECF CASE |

**DEFENDANT ALPINE SECURITIES CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION IN LIGHT OF THE SUPREME COURT DECISION IN *KISOR v. WILKIE***



335 Madison Avenue, 12th Floor
New York, New York 10017
(212) 344-5680



One Utah Center
201 South Main Street, Suite 1300
Salt Lake City, Utah 84111-2216
(801) 322-2516

*Attorneys for Alpine Securities Corp.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................ii

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................... 2

    I.    THE KISOR DECISION REDEFINED THE SCOPE AND APPLICABILITY OF AGENCY DEFERENCE. .................................................. 2

    II.    THE PRINCIPLES ESPOUSED IN KISOR DEFEAT THE SEC'S CLAIM THAT SECTION 17(A) AND RULE 17A-8 EMPOWER THE SEC TO ENFORCE THE SAR PROVISIONS OF THE BSA. ............................ 3

        A.    Kisor Requires Application of Principles of Statutory Construction Prior to Employment of Agency Deference ................................................ 3

        B.    This Court Impermissibly Deferred to the SEC on the Scope of its Authority. ........................................................................................................ 5

    III.    THE COURT'S EMPLOYMENT OF KISOR DEFERENCE TO CREATE BRIGHT-LINE SAR RULES CONTRAVENES THE SPECIFIC RULINGS IN KISOR. .......................................................................... 8

CONCLUSION ............................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Braeburn Inc. v. United States FDA*,
 No. 19-cv-982 (BAH), 2019 WL 3290790 (D.D.C. July 22, 2019) ....................................... 4, 5

*Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*,
 467 U.S. 837 (1984) ................................................................................................... 3, 4, 5, 6

*E. Bay Sanctuary Covenant v. Barr*,
 No. 19-cv-04073-JST, 2019 WL 3323095 (N.D. Cal. July 24, 2019) ....................................... 4

*Kisor v. Wilkie*,
 139 S. Ct. 2400 (2019) ................................................................................................. passim

*Nutritional Health Alliance v. FDA*,
 318 F.3d 92 (2d Cir. 2003) ........................................................................................... 5, 6, 7

*Pereira v. Sessions*,
 138 S. Ct. 2105 (2018) (J. Kennedy concurring) ..................................................................... 4

*Perez v. Mortg. Bankers Ass'n*,
 135 S. Ct. 1199 (2015) ............................................................................................................ 7

*SEC v. Alpine*,
 308 F. Supp. 3d 775 (S.D.N.Y. 2018) ............................................................................. passim

*SEC v. Alpine Secs. Corp.*,
 354 F. Supp. 3d 396 (S.D.N.Y. 2018) ............................................................................. passim

## INTRODUCTION

As its primary argument, the SEC invites this Court to conclude that *Kisor* "did not change the law" and deny reconsideration on that basis. As its support, the SEC offers a one paragraph description of *Kisor* that is a travesty. It is not merely facile, it is an affront to the sophisticated and detailed analysis and conclusions of the Supreme Court and to this Court's obligation to adhere to the Supreme Court's plain recasting of the doctrine. The Supreme Court in *Kisor* reversed the lower court precisely because that court, like this Court, applied agency deference without "emptying the legal toolkit" of statutory construction and deferred to materials not worthy of or appropriate for deference. To avoid reversal on those same grounds, it is now incumbent on this Court to adhere to the Supreme Court's directives concerning proper statutory construction, consider and apply the critical authorities that demonstrate that the SEC's jurisdiction under the Exchange Act is by definition limited by the exclusive jurisdictional grant to Treasury contained in the BSA, and reconsider its interpretation of BSA provisions.

Equally plain is that this Court's decisions are based on applications of deference that contravene *Kisor's* specific holdings. First, the Court acceded to each component of the SEC's argument but failed to address or even acknowledge the relevant and established precepts of statutory construction discussed by Alpine. The Court then applied deference in a manner contrary to *Kisor's* holding that only certain "deliberative" and "authoritative" statements of an agency imbued with interpretive authority are entitled to deference. While this Court rejected some of the materials that the SEC propounded as relevant "guidance," the Court ultimately relied on *the SEC's* interpretation of materials that are not authoritative guidance. As the *Kisor* decision confirmed, deference to an agency *not* entrusted by Congress with an interpretive role, or to materials that are not the deliberative pronouncements of the correct agency, constitutes error.

## ARGUMENT

**I.    THE *KISOR* DECISION REDEFINED THE SCOPE AND APPLICABILITY OF AGENCY DEFERENCE.**

The SEC insists that Alpine's motion should be rejected because *Kisor* "did not change the law" regarding the *Auer* doctrine, SEC Opp. at 1, and assures this Court that the Supreme Court's careful reasoning and comprehensive analysis is entirely superfluous and can be ignored by this Court. The *Kisor* decision itself, extensive commentary, and decisions since *Kisor* all demonstrate that the SEC is wrong; Kisor cannot and should not be ignored.

As discussed by Alpine in its opening brief, both the majority and the concurrences in *Kisor* made clear that the Supreme Court "remodeled" and "revised" the concept of *Auer* deference to "cabin[]" its scope in varied and critical ways." *See* Alpine's Opening Mem., at 3. To ensure that courts would no longer "afford *Auer* deference mechanically," the majority established a multifaceted test that courts must apply before deference can be given, carefully detailing both the bases and the parameters for each step of the test. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2414-18 (2019). Whereas before *Kisor,* courts following Supreme Court precedent may have "applied *Auer* deference without significant analysis," without first "exhaust[ing] all the 'traditional tools' of construction . . . in all the ways it would if it had no agency to fall back on," *id.* at 2414-15, it is now clear that to do so is reversible error.[1]

The SEC essentially ignores the Supreme Court's own detailed discussion and declines to acknowledge extensive commentary confirming that *Kisor* redefined the scope of the *Auer* doctrine to correct its own prior statements and to prevent "reflexive" application of deference by lower courts.[2]

---

[1] *See id.*, at 2423-24 (reversing D.C. Circuit for "jump[ing] the gun" in declaring regulation ambiguous without first "bring[ing] all its interpretive tools to bear" and for "assum[ing] too fast" that "the [agency] interpretation is of the sort Congress would want to receive deference" – i.e., one that "reflects the considered judgment of the agency as a whole").

[2] Numerous scholarly articles have recognized that *Kisor* changed the concept of *Auer* deference. *See, e.g.,* Notice & Comment, a Blog from the Yale Journal of Regulation and the ABA Section of Administrative Law & Regulatory Practice, *"What Kisor Means for the Future of Auer Deference: The New Five-Step Kisor Deference Doctrine,"* Chris Walker, June 26, 2019, found at https://yalejreg.com/nc/what-kisor-means-for-the-future-of-auer-deference-the-new-five-step-kisor-deference-doctrine/; Law360, *"Justice Stevens' Chevron legacy Under Attack,"* July 17, 2019, found at https://www.law360.com/articles/1179279/justice-stevens-chevron-legacy-under-attack   Cato Institute, *"The Auer Doctrine*

2

*Kisor* clearly constitutes a development and clarification of the law that is precisely applicable to this case.[3]

## II. THE PRINCIPLES ESPOUSED IN *KISOR* DEFEAT THE SEC'S CLAIM THAT SECTION 17(A) AND RULE 17A-8 EMPOWER THE SEC TO ENFORCE THE SAR PROVISIONS OF THE BSA.

This Court, like the lower court that was reversed in *Kisor*, appears to have fallen prey to the Supreme Court's "mixed messages" in its application of deference, even quoting the "classic formulation" of the *Auer* doctrine – whether an agency's construction is "plainly erroneous or inconsistent with the regulation"[4] – that the majority in *Kisor* described as a "caricature of the doctrine." *Kisor,* S. Ct. at 2415 (internal quotations and citation omitted).  This Court did not "exhaust all the 'traditional tools'" of statutory construction before deferring to the SEC's position that Section 17(a) and Rule 17a-8 could be interpreted to empower the SEC to assert enforcement authority over the SAR provisions of the BSA. The "serious application of those [interpretive] tools" mandated by *Kisor* requires that this Court scrutinize the text, structure, purpose and history of not just the Exchange Act and Rule 17a-8, but also the BSA, the regulations promulgated by Treasury thereunder, the APA, and the regulations of the Office of the Federal Register.  The Court addressed none of these.

### A. *Kisor* Requires Application of Principles of Statutory Construction Prior to Employment of Agency Deference.

The SEC suggests that *Kisor's* reasoning is inapplicable to this Court's ruling on Section 17(a) because the Court analyzed these issues under *Chevron*.  Relying on a statement from the concurring opinion of Chief Justice Roberts, the SEC argues that *Chevron* is a "'distinct' doctrine that *Kisor* does

---

*Suffers Pyrrhic Victory in Kisor v. Wilkie,"* June 27, 2019, found at https://www.cato.org/blog/auer-doctrine-suffers-pyrrhic-victory-kisor-v-wilkie.

[3] The SEC argues that this Court should ignore the concurrences, seizing upon a footnote in the majority opinion that the "'[t]he proper understanding of the scope and limits of the *Auer* doctrine is, of course, not set out in any of the opinions that concur in the judgment.'" SEC Opp., at 2 n.1 (citing *Kisor,* 139 S.Ct. at 2415 n.4.)  But that footnote addresses a different issue, *i.e*., that it is the majority's opinion that sets forth the law regarding the new scope and limits of *Auer*.  The majority is not and would not suggest, nor should the SEC, that the concurrences' discussion of the new scope and limits of *Auer* is of no significance.

[4] *See SEC v. Alpine,* 308 F. Supp. 3d 775, 789 (S.D.N.Y. 2018) ("March Opinion").

3

not address." SEC Mem., at 3.  The SEC misinterprets the Chief Justice's statement: the remarks of the Chief Justice in *Kisor* referred only to the question whether, just because *Auer* was not overruled, the *Chevron* doctrine would also survive.[5]  Justice Kavanaugh makes this point more directly in his concurrence.[6]

Contrary to the SEC's claim that *Kisor* does not impact a *Chevron* analysis, a critical aspect of the *Kisor* decision is squarely applicable to and a prerequisite to agency deference, whether *Chevron* or *Auer,* i.e., that a court is required to engage in an "exhaustive" process of statutory construction *before* applying deference.  The *Kisor* majority cites *Chevron* liberally to create each step of the new *Auer* rule, including the "first and foremost" step:  the requirement to "exhaust all the 'traditional tools' of construction" before deferring to an agency's interpretation.  *See id.* at 2415 (citing *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc*., 467 U.S. 837, 843, n. 9 (1984)). The majority also cited to *Chevron* to support its explanation of the requirement that an "agency's reading must still be reasonable," emphasizing that "[u]nder *Auer,* as under *Chevron,* the agency's reading must fall 'within the bounds of reasonable interpretation,'" (*id.* at 2415-16); and that "deference is unwarranted" when "an interpretation does not reflect an agency's authoritative, expertise-based, 'fair[, or] considered judgment.'" *Id.* at 2414 (citation omitted).  Moreover, in just the short period of time since the *Kisor* decision was issued, two courts have cited *Kisor* and applied its principles in a *Chevron* analysis.[7]

---

[5] The SEC is either unaware of or declines to acknowledge that the majority of justices of the Supreme Court have made clear their hostility toward both *Chevron* and *Auer,* the "troubling" problem of "reflexive deference" to agency views these doctrines have created, and the derogation by lower courts of their obligation properly to construe pertinent provisions and to consider whether Congress intended employment of deference. *Compare Kisor,* 139 S. Ct. at 2414-15 (*supra,* discussing the need to alter the doctrine to cure "reflexive" deference) *with Pereira v. Sessions*, 138 S. Ct. 2105, 2120–21 (2018) (J. Kennedy concurring)  ("The type of reflexive deference exhibited in some of these cases [under *Chevron*]  is troubling. And when deference is applied to other questions of statutory interpretation, such as an agency's interpretation of the statutory provisions that concern the scope of its own authority, it is more troubling still. . . .").

[6] *See Kisor*, 139 S. Ct. at 2449 ("Like the Chief Justice, 'I do not regard the Court's decision' not to **formally overrule** *Auer* 'to touch upon the latter question'" of whether to overrule "judicial deference to agency interpretations of statutes enacted by Congress.") (emphasis added)).

[7] *See Braeburn Inc. v. United States FDA*, No. 19-cv-982 (BAH), 2019 WL 3290790, at *12 (D.D.C. July 22, 2019); *E. Bay Sanctuary Covenant v. Barr*, No. 19-cv-04073-JST, 2019 WL 3323095, at *9 (N.D. Cal. July 24, 2019).  As the *Braeburn* court noted, "Although *Kisor v. Wilkie* related to judicial review of an agency's interpretation of its own regulation, the

4

This Court relied on both *Chevron* and *Auer* principles in combination to accede to the SEC's position that it has the authority to pursue enforcement actions for violations of the SAR regulations of the BSA. *See* March Opinion, at 795-97; *SEC v. Alpine Secs. Corp.*, 354 F. Supp. 3d 396, 416-17 (S.D.N.Y. 2018) ("December Opinion"). Because this Court failed to exhaust and apply a series of clear and applicable principles of statutory construction before employing that deference, it should reconsider its decisions.

### B.   This Court Impermissibly Deferred to the SEC on the Scope of its Authority.

The SEC argued that the Court's opinion supporting its authority to enforce the BSA "did not turn on an application of *Chevron* deference . . . let alone *Auer* deference." SEC Mem. at 3. According to the SEC, this Court determined that "Section 17(a) **unambiguously** 'commits to the SEC the discretion to determine which reports are necessary and appropriate to further the goals of the Exchange Act.'" *Id.* (emphasis added) (citing March Opinion, at 796). But this Court never stated that Section 17(a) "unambiguously" grants the SEC the authority to promulgate a regulation that would allow it to enforce provisions of the BSA.[8] Nor could it. Congress put no such express authorization into Section 17(a); indeed, the BSA did not exist when Congress passed Section 17(a). Rather, the plain language of Section 17(a) shows that Congress unambiguously *failed to* delegate authority to the SEC to enforce the BSA.[9]

Further, the SEC's argument is belied by the plain language of this Court's decision.[10] Contrary to the SEC's assertion, this Court expressly deferred to the SEC's position as to the scope of Section

---

Supreme Court compared the governing standards to those that structure judicial review of an agency's interpretation of a statute it administers." 2019 WL 3290790, at *12 n.8.

[8] The Court actually stated that it relied on what it termed the "broad authority Congress conferred on the SEC" in Section 17(a). *See* December Opinion, at 417.

[9] S*ee Nutritional Health Alliance v. FDA,* 318 F.3d 92, 98, 101 (2d Cir. 2003) (holding the FDC Act "unambiguously fail[ed] to delegate to the FDA authority" to regulate poison prevention packaging, even though the "FDC Act provides the FDA with broad authority to regulate" products).

[10] *See* March Opinion, at 788 ("An agency to which Congress has delegated authority to administer a statute is entitled to judicial deference to its views of the statute it administers . . . [A] court reviews the regulation under the two-part framework established in [*Chevron*]."); *see also id.* at 796 ("The validity of an agency's regulation **interpreting a statute** is judged by the familiar two-part test derived from *Chevron*." (emphasis added)).

17(a) and Rule 17a-8 repeatedly. The Court first made clear that it was deferring to the SEC's interpretation of Section 17(a) by applying *Chevron* step two to determine that "Rule 17a-8, which requires compliance with certain BSA regulations, is a reasonable interpretation of Section 17(a)." March Opinion, at 796. However, the Court failed to undertake much less "exhaust all the 'traditional tools' of construction" to discern Congress' intent. *Kisor,* 139 S. Ct. at 2415. Most directly, the Court failed to consider Congress's clear and unambiguous delegation of authority *to Treasury* for administration and enforcement of the BSA. *See* 31 U.S.C. §§ 5318, 5321. As confirmed by the Second Circuit decision in *Nutritional Health*, "'the implications of a statute [here Section 17(a)] may be altered by the implications of a later statute [here, the BSA] . . . particularly . . . where the scope of the earlier statute is broad but the subsequent statutes more specifically address the topic at hand.'" 318 F.3d at 102 (citation omitted). Thus, the "specific policy" set forth by Congress in the BSA "controls" and circumscribes any authority the SEC would have had under the Exchange Act to grant itself the power to enforce the SAR provisions of the BSA. *Id.* at 98, 102-04. By not considering these controlling principles of construction, which required review of the BSA and the regulations thereunder, the Court failed to conduct the analysis required by *Kisor*.

Notably, the SEC entirely ignored these principles of construction. The SEC even goes a step further, asserting that a court should "resort to" "'canons of construction" only "where there is 'sufficient ambiguity to warrant . . . seeking such aid.'" SEC Mem. at 4 (citation omitted). That assertion is flatly counter to *Kisor*. Emptying the "legal toolkit" must come first, *before* a court can conclude a rule is ambiguous or defer to the agency's interpretation. *Kisor,* 139 S. Ct. at 2415.

Likewise, the Court applied deference to the SEC in construing the scope of Rule 17a-8. The Court deferred to "the SEC's interpretation of Rule 17a-8 as encompassing the duty to file a SAR and otherwise comply with Section 1023.320," relying on settled SEC actions and a "formal adjudication" to reject Alpine's argument that the SEC never properly complied with the notice and comment

requirements of the APA.[11]  Every component of that conclusion contravenes *Kisor*.  First, it is contrary to settled principles of administrative law for the SEC to empower itself to enforce a separate statutory scheme, entrusted to a different agency, without an express delegation of authority to do so.  *See Nutritional Health,* 318 F.3d at 98, 102-04.  Second, this Court's conclusion that Rule 17a-8 could "evolve over time" is contrary to the APA, the OFR regulations and settled case law.  As detailed in Alpine's opening memorandum and earlier briefs, for the SEC to try to dynamically incorporate another agency's presently non-existent regulations, so that they automatically accrue new substantive obligations without the need to undertake the burdensome rulemaking procedures of the APA, violates *both* applicable rules of construction *and* the APA.  This Court never addressed the impact of these controlling principles of law in construing the validity and scope of Rule 17a-8 now required by *Kisor*.

Finally, this Court stated that the SEC had "announced" a rule in the *Bloomfield* adjudication that Rule 17a-8 encompassed SAR reporting, and then employed that adjudication to support deference to the agency's argument.  *See* December Opinion, at 417 n.34.  But, in *Kisor,* Justice Gorsuch made clear that an "interpretation" announced in "a formal adjudication" is not a valid means to amend a regulation passed through notice and comment:

> [T]he premise on which [this argument] proceed[s]—that the APA permits agencies to issue "controlling" amendments to their regulations in adjudicative proceedings—is not correct. Once an agency issues a substantive rule through notice and comment, it can amend that rule only by following the same notice-and-comment procedures.

*Kisor*, 139 S. Ct. at 2435 (J. Gorsuch concurring) (citing *Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, at 1203-04 (2015)). This principle under the APA, together with the OFR regulations imposing required procedures for incorporation by reference, and Congress's grant of BSA enforcement authority only to Treasury, precludes the SEC's interpretation of Rule 17a-8 here.

---

[11] *See* December Opinion, at 417 n.34 (describing this as the second "bas[is] for concluding that the SEC may bring this action under Rule 17a-8"); March Opinion, at 797.

7

## III. THE COURT'S EMPLOYMENT OF *KISOR* DEFERENCE TO CREATE BRIGHT-LINE SAR RULES CONTRAVENES THE SPECIFIC RULINGS IN *KISOR*.

The SEC's argument that this Court's correctly applied *Auer* deference to the SAR filing rules fails because the Court did not engage in the process that is a critical component of the *Kisor* decision: the "independent inquiry into whether the character and context of the agency interpretation entitles it to controlling weight." *Kisor*, 139 S. Ct. at 2405-06. As *Kisor* explained at length, deference to an agency interpretation is appropriate only in specific circumstances. The interpretation must "implicate its substantive expertise" and its "fair and considered judgment," and "must be one actually made by the agency" – its "authoritative" or "official position" -- that "at the least emanate[s] from ***those actors, using those vehicles,*** understood to make authoritative policy in the relevant context." *Id.* at 2416-17 (emphasis added). This Court's use of guidance to fashion rules relating to SARs is not consistent with these *Kisor* principles.

Most problematic is that this Court impermissibly deferred to ***the SEC's*** contentions regarding the SAR filing requirements and guidance.[12] Under *Kisor,* deference regarding interpretation of a particular provision is to be afforded only to the particular agency to which "*Congress has delegated rulemaking power"* 139 S. Ct. at 2416. (emphasis added). Further, "[t]o decide whose reasonable interpretation of a rule control[s]," courts are to "presume[] Congress intended to invest interpretive power in whichever actor [is] best position[ed] to develop expertise about the given problem." *Id.* at 2417 (internal quotations and citation omitted). Here, *Treasury* is "the agency" whose views matter on this issue because enforcement of the SAR provisions "falls within the scope of . . . [Treasury's] authority." *See id.* But FinCEN, the only agency entitled to deference, is not before this Court asserting

---

[12] By way of example, the Court adopted the SEC's claims concerning red flags listed in items of guidance to craft a rule that a SAR must be filed on all large deposits of low-priced securities and one or more other red flags (*See* December Opinion, at 424-25). The Court deferred to the SEC's view of guidance to support its ruling that a SAR narrative that does not include the "Five Ws" or one or more red flags that the SEC culled from guidance is insufficient as a matter of law (*id.* at 414-16, 425-40). The Court deferred to the SEC's view of guidance to conclude that failing to "report[] a customer's sales of stock after the customer had made a substantial deposit of LPS [low-priced security] in a thinly traded market" is a violation (December Opinion, at 440-441).

any of the filing requirements.  Even with respect to guidance issued by FinCEN, this Court was deferring not to authoritative statements of FinCEN but rather to the SEC's skewed interpretation of that guidance, even referring to the SAR filing rule it adopted as "[t]he *SEC's* proposed test." December Opinion, at 425 (emphasis added).  None of the FinCEN guidance cited by the Court described the SAR filing or narrative content requirements pressed by the SEC and adopted by the Court.

This Court also applied deference in ways that are directly counter to *Kisor's* articulation of the requirement that deference be shown only to an agency's "authoritative" or "official position," not to an "ad hoc statement not reflecting the agency's views." *Id.* at 2416.  As detailed in Alpine's opening brief, the "Tips, Trends and Issues" and "Narrative Guidance" contain specific disclaimers that the contents are not authorized guidance and do not create binding rules. Alpine Mem. at 17-19 and n.16. The interpretation given to the guidance that a BSA violations occurs if a SAR narrative fails to discuss a red flag that did not cause the filing is itself at odds with the instructions to the SAR Forms,[13] as well as the consistent and authoritative statements of FinCEN officials that SAR filing decisions are subjective.[14]

This Court also impermissibly relied on the SEC's *post hoc* litigation position.  *Kisor* emphasized "that *a court should decline to defer* to a 'convenient litigating position,'" including, as a "general rule," "agency interpretations advanced for the first time in legal briefs."  *Id.* at 2417 *and* n.6 (emphasis added).  Further, a court "may not defer to a new interpretation, whether or not introduced in litigation, that creates 'unfair surprise' to regulated parties." *Id.* at 2417.  This Court, contrary to those teachings, explicitly stated that deference is required even if "the interpretation of its regulation was not promulgated through formal procedures … but, for example, is advanced in a legal brief."  March Opinion, at 789.

---

[13] *See* SAR Form 111, at p. 110 (directing filers to provide "clear, complete and concise description *of the activity*, including what was unusual or irregular *that caused suspicion*.") (emphasis added).
[14] *See* samples at pages 17-18 and footnotes 14-15 of Alpine's opening memorandum and also Alpine's Add'l SOF, ¶¶ 11-21 [Dkt 88].

9

Finally, the Court failed to apply *Kisor's* new standard in its interpretation of the SAR Form and checklist. Although ostensibly grounding its analysis in the language of the SAR form, the Court immediately turned to the guidance documents to identify red flags that must be included to make a SAR narrative complete. December Opinion, at 431, 433, 435, 437, 438. This is not the analysis mandated by *Kisor*. Before turning to guidance, the Court needed to identify some ambiguity in the SAR Form, try to resolve it using all tools of construction, and determine that the pertinent agency's interpretation was a reasonable resolution of the ambiguity identified. This is particularly apparent for the "foreign involvement" flag, as there is no uncertainty in the language of the checklist to disclose the involvement of "foreign currency" or "funds," if they are involved – and the Court identified none – that would permit an expanded reading of these requirements. And none of the portions of the guidance the Court cited contained an authoritative statement by FinCEN that the BSA is violated if a SAR narrative failed to discuss those red flags – unless those red flags were what initiated the SAR filing.

## CONCLUSION

For the foregoing reasons, and those set forth in Alpine's opening memorandum, the Court should grant Alpine's Motion for Reconsideration.

DATED this 9th day of August, 2019.

/s/ *Maranda E. Fritz*
Maranda E. Fritz
**THOMPSON HINE**
335 Madison Avenue, 12th Floor
New York, New York 10017-4611
Tel. 212.344.5680
Fax 212.344.6101
Email: Maranda.Fritz@thompsonhine.com

Brent B. Baker (BB 8285)
Aaron D. Lebenta (*Pro Hac Vice*)
Jonathan D. Bletzacker (*Pro Hac Vice*)
**CLYDE SNOW & SESSIONS**
One Utah Center
201 South Main Street, Suite 1300

>Salt Lake City, Utah 84111-2216
>Telephone 801.322.2516
>Facsimile 801.521.6280
>Email: brb@clydesnow.com
>  adl@clydesnow.com
>  jdb@clydesnow.com

>*Attorneys for Defendant Alpine Securities Corporation*

11