UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>ALPINE SECURITIES CORPORATION,<br><br>    Defendant. | Civil No. 1:17-CV-04179-DLC<br><br>Honorable Judge Denise L. Cote<br>Magistrate Judge Ronald L. Ellis<br><br>ECF CASE |

**DEFENDANT'S OBJECTIONS TO THE FORM OF PROPOSED PERMANENT INJUNCTION AND FINAL JUDGMENT SUBMITTED BY PLAINTIFF**

THOMPSON HINE

335 Madison Avenue, 12th Floor
New York, New York 10017
(212) 344-5680

ClydeSnow
ATTORNEYS AT LAW

One Utah Center
201 South Main Street, Suite 1300
Salt Lake City, Utah 84111-2216
(801) 322-2516

*Attorneys for Alpine Securities Corp.*

Defendant Alpine Securities Corporation ("Alpine") hereby submits this the following Objections to the form of the Proposed Permanent Injunction and Final Judgment Against Alpine ("Proposed Judgment") submitted by Plaintiff Securities and Exchange Commission ("SEC") on September 27, 2019.

## INTRODUCTION

Alpine objects to the form of the Proposed Judgment on three grounds.  First, the Proposed Judgment is not a "final judgment" within the meaning of the Federal Rules of Civil Procedure because the SEC failed to include language dismissing or otherwise resolving alleged violations on which the SEC did not obtain summary judgment.  Second, Section I of the proposed permanent injunction in the Proposed Judgment is fatally overbroad and vague in that it purports to permanently restrain and enjoin Alpine violating any rule the SEC "prescribes" under Section 17(a) of the Exchange Act, including rules that are not at issue in this case and any rule the Commission may promulgate in the future.  Third, the Proposed Judgment purports to require Alpine to pay the $12 million civil penalty in full within 30 days from entry of final judgment.  However, with respect to Alpine's ability to pay a civil penalty, the Court did not find that Alpine had a present ability to pay this amount, but rather that application of three years of Alpine's profits would suffice to pay the penalty.  The form of the Proposed Judgment should reflect this finding by providing Alpine three years to pay the civil money penalty.[1]

---

[1]  By objecting to the form of the Proposed Judgment, Alpine does not waive and expressly reserves for the purposes of appeal any and all rights, objections and assignments of error with respect to the underlying rulings giving rise to any final judgment.

**ARGUMENT**

**1.      The Proposed Judgment is Not a Final Judgment**

The Court directed the SEC to submit a "proposed permanent injunction and final judgment." Order, Dkt. No. 228. A "judgment" is an order or decree "from which an appeal lies." F.R.C.P. 54(a). "A judgment is considered final when the trial court has conclusively adjudicated all the issues before it and there remains nothing left for it to do but execute the judgment." *Petereit v. S.B. Thomas, Inc.,* 63 F.3d 1169, 1175 (2d Cir. 1995); *accord Andrews v. United States*, 373 U.S. 334, 340, (1963) ("[T]he rule as to finality 'requires that the judgment to be appealable should be final not only as to all the parties, but as to the whole subject-matter and as to all the causes of action involved.'" (citation omitted)). A "category of 'non-final ruling' includes 'an order granting or denying summary judgment that only partially adjudicates the claim.'" *Information Resources, Inc. v. Dun & Bradstreet Corp.,* 294 F.3d 447, 452 (2d Cir. 2002) (citations omitted).

The Proposed Judgment submitted by the SEC is not a final judgment because it contains no language resolving or dismissing those violations alleged by the SEC but on which it did not receive summary judgment. Although the SEC brought only one claim for relief, it broke this claim into four categories of alleged violations and alleged a number of distinct violations within each of the four categories. For example, the SEC initially alleged that there were: (1) 2,013 SARs with deficient narratives; (2) 3,607 unreported liquidations; (3) 252 late filed SARs, and (4) 1,249 missing support files. *See* SEC's Expert Report, at Dkt. 148, Ex. 2, pp. 6-7. The SEC then sought summary judgment by claiming there were: (1) 1,594 SARs with deficient narratives; (2) 3,568 unreported liquidations; (3) 251 late filed SARs; and (4) 496 SARs with

missing support files.  *See* SEC Notice of Motion for Summary Judgment on Liability, Dkt. No. 146.

The Court did not grant summary judgment in favor of the SEC on many of the violations originally alleged, or on which the SEC sought summary judgment.  Instead, the Court found Alpine liable for 2,720 total violations, or (1) 1,010 SARs with deficient narratives; (2) 1,214 unreported liquidations; and (3) 496 missing support files.  The Court also denied summary judgment for the SEC on all of the alleged late filed SARs.  *See SEC v. Alpine Sec. Corp.*, 354 F. Supp. 3d 396, 422-45 (S.D.N.Y. 2018); Order, Doc. No. 195.

The alleged violations on which the SEC did not receive summary judgment are technically still pending, even though the SEC has elected not to pursue these further at trial. The Proposed Judgment cannot be a "final judgment," however, unless and until language is added therein that formally dismisses all alleged violations on which the SEC has not received summary judgment.  *Information Resources,* 294 F.3d at 452.

      **2.**      **Section I of the Proposed Permanent Injunction Lacks the Specificity Required by Rule 65(d) of the Federal Rules of Civil Procedure.**

Articulating the standard of specificity that every injunction must satisfy, Rule 65(d), Federal Rules of Civil Procedure, states that "[e]very order granting an injunction ... "must describe in reasonable detail—and not by referring to the complaint or other document—the act or acts sought to be restrained or required . . . ."  F.R.C.P. 65(d)(1).  The specificity requirement "prevent[s] uncertainty and confusion on the part of those faced with injunctive orders and ... avoid[s] the possible founding of a contempt citation on a decree too vague to be understood."  *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) (finding that because "an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed.").  "The normal standard of specificity is

that the party enjoined must be able to ascertain from the four corners of the order precisely what acts are forbidden." *Sanders v. Air Line Pilots Ass'n, Int'l,* 473 F.2d 244, 247 (2d Cir. 1972); *SEC v. Smyth,* 420 F.3d 1225, 1233 n. 14 (11th Cir. 2005) (explaining that Rule 65(d) is "no mere technicality" but requires an injunction "framed so that those enjoined know exactly what conduct the court has prohibited and what steps they must take to conform their conduct to the law.").

In accord with the policy of Rule 65(d), the Supreme Court has denounced broad injunctions that merely instruct the enjoined party not to violate a statute. *NLRB v. Express Publ'g Co.*, 312 U.S. 426, 435–36 (1941). Such injunctions increase the likelihood of unwarranted contempt proceedings for acts unlike or unrelated to those originally judged unlawful. *See Express Publ'g Co.*, 312 U.S. at 435–36. Consistent with the Supreme Court's direction, the Second Circuit has confirmed that, "under Rule 65(d), an injunction must be more specific than a simple command that the defendant obey the law." *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 51 (2d Cir. 1996) (citing *Sterling Drug, Inc. v. Bayer AG*, 14 F.3d 733, 748 (2d Cir.1994)); *accord* Hughey v. JMS Dev. Corp., 78 F.3d 1523, 1531 (11th Cir.1996) (cited with approval by Second Circuit in *Peregrine* and holding "appellate courts will not countenance injunctions that merely require someone to 'obey the law.'"). Courts have described "the serious constitutional conflict inherent in a court's enforcing an obey the law injunction":

> After entry of such an injunction, the Commission could return to the court at any time and seek through a basic contempt proceeding to enforce the law based on an alleged violation by the defendant—no matter how distinct the alleged violation (in nature, time, or location) from the violation underlying the injunction. Thus, an obey-the-law injunction permits the Commission to achieve through the mere filing of a motion a result that, absent the injunction, the Commission could achieve only through a full-scale prosecution. The contempt proceeding (while perhaps increasing the ease and efficiency of the government's enforcement of the securities laws) impermissibly bypasses not only the Federal Rules of Civil Procedure but the defendant's rights under the Due Process Clause and Seventh Amendment.

*S.E.C. v. Sky Way Glob.*, LLC, 710 F. Supp. 2d 1274, 1280 (M.D. Fla. 2010); *accord SEC v. Smyth,* 420 F.3d at 1233 n. 14 (same).

In addition, "[a]n injunction is overbroad when it seeks to restrain the defendants from engaging in legal conduct, or ***from engaging in illegal conduct that was not fairly the subject of litigation***." *City of New York v. Mickalis Pawn Shop*, LLC, 645 F.3d 114, 145 (2d Cir.2011) (emphasis added); *accord Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 300 (2d Cir.1999) (vacating injunction that went "beyond the scope of the issues tried in the case"); *Califano v. Yamasaki*, 442 U.S. 682, 702, (1979) ("[T]he scope of injunctive relief is dictated by the extent of the violation established....").

The SEC's proposed permanent injunction in Section I of the Proposed Judgment, which would require Alpine to broadly comply with any rule promulgated or to-be promulgated under Section 17(a), fails to comply with these specificity requirements.  Section I of the Proposed Judgment states, in pertinent part:

> IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Defendant is permanently restrained and enjoined from violating, directly or indirectly, Section 17(a) of the Exchange Act [15 U.S.C. § 78q(a)] by acting as . . . a registered broker or dealer . . . and failing to make or keep for prescribed periods such records, furnish such copies thereof, or make or disseminate such reports as **the [SEC], by rule, prescribes** as necessary or appropriate in the public interest, for the protection of investors, or otherwise in furtherance of the purposes of the Exchange Act.

Proposed Judgment, § 1, p. 1-2 (emphasis added).  This paragraph also purports to bind Alpine's "officers, agents, servants, employees and attorneys" and "other persons in active concert or participation with" Alpine" who receive actual notice of the injunction. *Id.*

This proposed permanent injunction is a quintessential "obey the law" injunction that fails to provide the requisite specificity. *NLRB v. Express Publ'g Co.*, 312 U.S. at 435–36 ("[T]he mere fact that a court has found that a defendant has committed an act in violation of a statute

does not justify an injunction broadly to obey the statute . . . ."); *Pergrine,* 89 F.3d at 51 (discussed *supra*).

The nature of Section 17(a) increases the overbreadth and vagueness in the proposed injunction. Section 17(a), by itself, does not impose any requirements; rather, the statute requires broker-dealers and other identified persons to comply with those recordkeeping and reporting requirements that the SEC "prescribes" "by rule." 15 U.S.C. § 78q(a)(1). The SEC's proposed injunction language, then, purports to incorporate and to *permanently* order Alpine and its agents to comply with, under threat of contempt, every rule the SEC has passed under Section 17(a) (over 20 separate rules) *and* every new rule the SEC may ever promulgate in the future under Section 17(a). This is plainly overbroad. The only rule under Section 17(a) at issue in this case was Rule 17a-8, and the injunction therefore cannot go beyond that rule.[2] *See Starter,* 170 F.3d at 300 (injunction cannot go "beyond the scope of the issues tried in the case"); *Mickalis Pawn Shop*, LLC, 645 at 145 (same); *Express Pub. Co.*, 312 U.S. at 435–36 (injunction is not justified that "subject[s] the defendant to contempt proceedings if he shall at any time in the future commit ***some new violation unlike and unrelated to that with which he was originally charged.***" (emphasis added)).

Furthermore, the proposed injunction also violates the requirement that persons "enjoined must be able to ascertain from the *four corners of the order* precisely what acts are forbidden." *Sanders,* 473 F.2d at 247 (emphasis added). Neither Alpine nor its agents can look to the four corners of the order to determine what the incorporated and extant rules are, let alone to determine what the hypothetical future rules are, to conform their behavior therewith.

---

[2] To this end, Alpine does not object to the form of the injunction in Section II of the Proposed Judgment which is limited to compliance with Rule 17a-8 and includes the language of the provision.

Accordingly, the Court should strike the proposed permanent injunction in Section I from the Proposed Judgment.

**3.     The Court Should Provide for Payment in Three Years.**

The SEC's Proposed Judgment requires Alpine to pay the $12 million civil money penalty in full "within 30 days after entry of this final judgment." Proposed Judgment, § 3, p. 3. The Court made no finding that Alpine could or should pay the $12 million penalty within 30 days. In fact, the Court reviewed Alpine's financial condition in imposing the $12 million civil penalty, and it is clear that Alpine can neither pay this amount within 30 days nor post security to stay this judgment. *See* Amended and Restated Order, Dkt. No. 235 at pp. 26, 28, 34. Further, this 30-day time frame for payment is not consistent with the Court's finding, in imposing the $12 million dollar penalty in relation to Alpine's financial condition, that "application of three years or so of [Alpine's] profits would suffice to pay the penalty the SEC requests." *Id.* at 28. While Alpine maintains that the evidence shows that three years of its *current* profits would not come close to paying the penalty, the judgment should remove the 30 day time period for payment, and reflect the Court's finding in imposing the penalty by providing Alpine with three years to pay the judgment.

## CONCLUSION

For the foregoing reasons, Alpine objects to the form of the Proposed Judgment and respectfully requests that it be modified as set forth herein.

DATED this 4th day of October, 2019.

/s/ *Maranda E. Fritz*
Maranda E. Fritz
**THOMPSON HINE**
335 Madison Avenue, 12th Floor
New York, New York 10017-4611
Tel. 212.344.5680
Fax 212.344.6101
Email: Maranda.Fritz@thompsonhine.com

Brent R. Baker (BB 8285)
Aaron D. Lebenta (*Pro Hac Vice*)
Jonathan D. Bletzacker (*Pro Hac Vice*)
**CLYDE SNOW & SESSIONS**
One Utah Center
201 South Main Street, Suite 1300
Salt Lake City, Utah 84111-2216
Telephone 801.322.2516
Facsimile 801.521.6280
Email: brb@clydesnow.com
          adl@clydesnow.com
          jdb@clydesnow.com

*Attorneys for Defendant Alpine Securities Corporation*