UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>ALPINE SECURITIES CORPORATION,<br><br>    Defendant. | Civil No. 1:17-CV-04179-DLC<br><br>Honorable Judge Denise L. Cote<br>Magistrate Judge Ronald L. Ellis |

**ALPINE SECURITIES CORPORATION'S MEMORANDUM
WITH RESPECT TO THE STAY PENDING APPEAL**



335 Madison Avenue, 12th Floor
New York, New York 10017
(212) 344-5680



One Utah Center
201 South Main Street, Suite 1300
Salt Lake City, Utah 84111-2216
(801) 322-2516

*Attorneys for Alpine Securities Corp.*

1

**Preliminary Statement**

During the course of recent proceedings before the Second Circuit Court of Appeals, both the Defendant and the Securities and Exchange Commission ("SEC") requested that the stay pending appeal include specific provisions to address the parties' concerns. Alpine sought language that would make clear that other agencies could not use the district court's judgment as a basis for adverse action against the firm. The SEC sought a provision regarding distribution of capital to owners and affiliates but, in response to questions from the Court, acknowledged the issues raised by Alpine concerning its need to be able to obtain infusions of capital in order to continue to operate, and explained that it seeks only to ensure transparency in relation to such distributions. The Court of Appeals then referenced its ability to remand the matter for the purpose of that language being resolved. This remand resulted to resolve those issues and ensure the continued operation of Alpine during the pendency of this now expedited appeal..

**BACKGROUND**

During oral argument before the Second Circuit Court of Appeals, each of the parties raised a request for certain language to be included in the stay pending appeal. Alpine sought language that would expressly prevent agencies from trying to use the judgment to take action against Alpine.[1] Specifically, Alpine asked that the court "issue a stay of the judgment in its entirety and *any action by regulators, FINRA, NSCC, SEC, SIPC, predicated on*" the judgment. Transcript of Proceedings before the Second Circuit ("Tr."). at 8: 6-10. A moment later, presiding Chief Justice Denny Chin referred back to Alpine's request for that "particular language" and commented that "we can ask you to talk to each other about agreeing on some

---

[1] It must be emphasized that Alpine views the stay of the judgment as also effecting a stay of any such agency action but, given the number of agencies involved and the possibility of varying interpretations, we seek the additional language to prevent any agency from arguing a contrary position.

language" and "maybe submit something in a letter to us." Tr. at 9: 1-6. The Court granted Alpine's request that the judgment be stayed "in its entirety" but did not include the additional language that was being discussed.

The SEC, in its opposition to Alpine's motion for a stay, had argued that a stay should be accompanied by a limitation on distribution of profits and/or capital. Tr. 4:8-9. Alpine pointed out to the Court that the request was largely redundant of the existing requirement that capital distributions be approved by FINRA. Tr. 4:12-18. Alpine also explained that such a limitation could impact its ability to operate by severely limiting its ability to obtain necessary capital infusions or even pay its rent. Tr. 4:24-5:14.

In its presentation to the Court, and in response to issues raised by Alpine, the SEC clarified its position regarding any limit on distributions, confirming that it has proposed "carve-outs for regular expenditures. such as rental payments." The SEC confirmed also that it "understands they want to receive capital infusions and then be able potentially to return them," and "[a]ll we really want is visibility into that. We want to know what's going on and, you know, have the ability to approve that." Tr. 11:14-21. Asked by the Court whether the SEC had "a proposal in mind," the SEC responded "I think we could work out the language on that, you Honor. I think it would be something to the effect of, you know, a stay of capital distributions without – maybe even just without prior notification to the commission and the ability to object." Tr. 12:10-15. In light of the SEC's remarks, the Court responded "it sounds to me like at least there's a possibility that this could be worked out between you."

## THE COURT SHOULD MODIFY THE STAY TO CONFIRM THAT IT PREVENTS AGENCY ACTION PREDICATED ON THE JUDGMENT, AND EXCLUDE RENTAL PAYMENTS AND RETURN OF CAPITAL FROM ANY LIMIT ON CAPITAL DISTRIBUTIONS

On November 22, 2019 and continuing on November 23, 2019, the parties have engaged in discussions to try to find areas of agreement. While there appear to be some areas of agreements, the parties have not yet been able to come to terms on specific language.

Regarding the SEC's request for a limit on distribution of capital, Alpine reiterated that it opposes that limitation for various practical reasons. Alpine maintains that any limit on capital distributions should exclude, first, payment of rent and the SEC appears to generally agree.

Secondly, it is more likely than not that Alpine will again need a capital infusion over the next few months to continue to operate, and it cannot obtain capital or financing if those funds are captive and cannot be returned. Alpine therefore seeks to exclude from any limitation "*returns of capital* to the extent of capital contributed after entry of the order." The SEC stated before the Court, and in the ongoing discussions, that it understands that concern but still wants to build in an approval process that would then require court intervention. That provision, Alpine maintains, is unnecessary, particular given the fact that the distribution will require FINRA approval, and unduly burdensome because it will involve litigation in the midst of the accelerated briefing schedule.

Alpine also objects to the limitation of capital distributions to the extent that it precludes the release of funds in an amount equal to the corresponding tax liability. Alpine is a pass-through entity, and so any accrual of profit at the firm triggers a corresponding tax liability on the part of the owner. Because of that structure, Alpine should be permitted either to remit or to disburse the amount equal to the tax liability, just as any business would ordinarily be permitted and obligated to pay its taxes. The SEC opposes this request.

During those discussions, the SEC also proposed a limitation that had never previously been sought: a requirement that Alpine disclose and obtain the SEC's approval of payment of ordinary and recurring business expenses. The SEC proposed language confirming that Alpine could pay "recurring" business expenses, but added that Alpine would have to disclose those expenses to the SEC in advance, that the SEC could object, and that the matter would then be decided by the Court. Alpine has objected to that request, first of all, because it is beyond the scope of the remand that related to a limit on capital distributions, not its payment of its business expenses. Secondly, it would enable the SEC to object to and require Court intervention regarding virtually any business expense. That level of oversight, and the potential need to litigate a payment of an expense, would impede and delay Alpine's operations. Any modification of the stay should address only the issue that had actually been presented by the SEC, *i.e.,* **capital distributions**.[2]

The SEC has also proposed a further provision regarding payment of non-recurring expenses, should they arise. Again, the SEC suggests that Alpine would disclose proposed payments to the SEC and, if the SEC objects, the matter would be addressed by the Court. Again, Alpine views that proposal as beyond the scope of the remand and constitutes an undue interference with the business.

Alpine, in turn, requested language expressly stating that the stay extends to agency action predicated on the fact or content of the district court judgment. *See, e.g., United States v. TGR Corp.*, 1998 WL 846746 at *4 (D.Conn. Oct. 20, 1998) (Court stayed judgment and any

---

[2] During these discussions, the SEC also returned at one point to the idea that it wants to pursue "asset discovery." Alpine responded that, given the stay issued by the Second Circuit that is not appropriate, and the request would exceed the scope of the remand. In addition, the parties are now faced with an aggressive briefing schedule and would not be able to also deal with discovery demands being propounded by the SEC. Further, such discovery is unnecessary: Alpine not only files its FOCUS reports with the SEC each month but also now provides daily reports of its financial condition to FINRA. There is already full transparency in terms of Alpine's present financial activities.

action by the Environmental Protection Agency ("EPA"), a non-party, because the EPA was acting on the judgment in a manner that negated that court's decision to issue the stay).  The SEC responded that it was not aware of the discussion of that issue with the Court of Appeals.

Dated:  New York, New York  
       November 23, 2019

Respectfully submitted,

By: /s/ *Maranda E. Fritz*  
Maranda E. Fritz  
THOMPSON HINE LLP  
335 Madison Avenue, 12th Floor  
New York, New York 10017-4611  
Tel. (212) 344-5680  
Fax (212) 344-6101  
Maranda.Fritz@thompsonhine.com