```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

                Plaintiff,              New York, N.Y.

           v.                           17 Civ. 4179(DLC)

ALPINE SECURITIES CORPORATION,

                Defendant.

------------------------------x         Conference

                                        November 26, 2019
                                        11:00 a.m.

Before:

                    HON. DENISE L. COTE,

                                        District Judge



                         APPEARANCES


SECURITIES AND EXCHANGE COMMISSION
     Attorneys for Plaintiff
BY:  ZACHARY T. CARLYLE


THOMPSON HINE LLP
     Attorneys for Defendant
BY:  MARANDA E. FRITZ
```

1        (Case called)
2        THE DEPUTY CLERK:  Counsel for the SEC, please state
3 your name for the record.
4        MR. CARLYLE:  Zachary Carlyle for the Securities and
5 Exchange Commission.
6        THE DEPUTY CLERK:  For the defendant Alpine Securities
7 Corporation.
8        MS. FRITZ:  Maranda Fritz, of Thompson Hine.  Good
9 morning, your Honor.
10        THE COURT:  Welcome, everyone.  Good morning.
11        We are here today to work out the terms of an order
12 that will govern the conduct of the business of Alpine, at
13 least financially, going forward so that the parties can focus
14 on the appeal and let the Circuit do its work with the
15 assistance of the parties.  The Court of Appeals issued an
16 order on November 21, and as a result of that order, I have
17 issued a couple of orders scheduling submissions from the
18 parties, and I will review those.  But the crux of the order
19 issued by the Court of Appeals was that they granted a stay
20 pending appeal of the judgment that I had entered, and I think
21 that the date is October 9 of this year, and it remanded this
22 case to me for a very limited purpose, but, as described, to
23 enter an order that sets forth the appropriate conditions to
24 the stay to ensure that Alpine's assets will not be dissipated
25 during the pendency of the appeal while allowing it to remain

in operation.

I ordered a submission from Alpine first. It didn't really provide much guidance with respect to what it thought the controlled substances should be. It didn't present a proposed order.

I then ordered the parties to speak and ordered SEC to provide its own submission, and it did. I asked the parties to speak again, always optimistic here that we get consent at the end of the day, and I assume you did speak again, and I thank you for that. And then I got a markup from Alpine of the SEC's proposed order. So I have had a chance to review that and the other submissions by the parties, and I want to thank you all for this work.

I should also thank you for giving me copies, Ms. Fritz, of the filings with the Court of Appeals on the stay application which provided additional background.

I should mention that I have, believe it or not, still from the prior litigation before me, the submissions that have some relevance to this of the Alpine focus reports for over a year and the 2018 statement of income from Alpine, all provided in connection with the declaration of David Brant of June 10, 2019. So I know the parties' submissions made some reference to the focus reports. I actually have specific examples in front of me, including, for instance, the focus report from one year ago, November 2018. So if this becomes helpful to the

1    parties for me to turn to any of this and look at it, I'm able
2    to do that pretty expeditiously.  And of course I'm able to
3    look at the audit report that was submitted, which is the
4    annual audit report for Alpine that it submitted to the SEC,
5    including its statement of financial condition for the year
6    ending September 30, 2018, so again, roughly a year ago, and we
7    can go through that as well.
8             It lists, among other things, the origins of various
9    lines of revenue and the amounts of various expenditures, so I
10   know the parties' papers talked about different issues about
11   rent versus common area maintenance, or CAM, etc., and
12   insurance issues, expenses versus a monthly fee.  And I have,
13   again, this material, if it is relevant to your discussion, to
14   turn to.  So I wanted to let you know that.
15            A couple preliminary questions, and then I thought I
16   would give you my preliminary views of how to sort out the
17   remaining disputes between the parties and a few suggestions I
18   have of how this could be resolved going forward.
19            It is my understanding that the focus reports that are
20   provided by Alpine monthly to FINRA and the daily financial
21   statements or financial reports that are provided to FINRA are
22   being provided to FINRA independent of anything FINRA has
23   chosen to do as a result of this judgment.  But if that's not
24   true, I want to be enlightened by the parties.
25            MS. FRITZ:  First, the focus reports are provided to

1   the SEC, so that's a relationship between the firm and the SEC,
2   not FINRA.
3            THE COURT:  Thank you.
4            MS. FRITZ:  Okay.  With respect to the reporting
5   that's being done to FINRA, the reporting that's occurring at
6   this point is very much a direct result of this case.  It is a
7   highly unusual process.  It doesn't exist in terms of normal
8   procedure, and it really is a direct result of the judgment
9   that this Court issued.  It is FINRA's determined effort to
10  monitor, literally every single day, Alpine's financial
11  condition, given what's occurred in this case.
12           THE COURT:  So, Ms. Fritz, again, thank you for
13  shedding light on that, but with a stay, is it your expectation
14  that Alpine will be continuing to provide those daily financial
15  reports to FINRA?
16           MS. FRITZ:  Absolutely.  We provide them actually not
17  only to FINRA.  DTC has also adopted some highly unusual
18  approaches and procedures with respect to Alpine, and so there
19  is daily communication as well.  Again, we can't trade unless
20  NSCC allows us to continue to trade, so they are monitoring,
21  again, every day Alpine's financial condition, again, all as a
22  result of this judgment, and they are very up front about the
23  reason for it, why they feel it is necessary.
24           THE COURT:  But your understanding is that you will be
25  continuing to provide daily financial reports to FINRA and DTC

1  even if -- even though this stay has been entered by the Second
2  Circuit.
3           MS. FRITZ:  Absolutely, and we have offered to provide
4  sets of that, if the SEC isn't communicating directly with
5  FINRA for some reason.
6           THE COURT:  Okay.
7           So Mr. Carlyle, I understand from what Ms. Fritz has
8  just advised me that the focus reports come monthly to the SEC,
9  and I take it that the SEC would be happy to receive the daily
10  financial reports from Alpine that it is providing to FINRA.
11           MR. CARLYLE:  Yes.
12           THE COURT:  Good.  Thank you.
13           So this is a case in which, as I understand it, in
14  2018, Alpine's revenue was roughly $16,300,000.  Its direct
15  distributions to ownership were something just over $3 million.
16  There is argument by the parties about indirect distributions
17  to ownership, and I don't think it is necessary for me to get
18  into that.
19           As I understand it, from the papers that have been
20  submitted to me, that in the first four months of
21  2019, Alpine's revenue was just over $4 million.  So if it
22  remained stable through the year, it would be on track to make
23  roughly $12 million.
24           Is that your understanding still, Ms. Fritz?
25           MS. FRITZ:  Roughly.  I mean, the business has

1  deteriorated even more this year.  We have lost additional
2  counterparties.  By virtue of the most recent issuance from
3  this Court, we lost customers.  We have individuals who are
4  using the case in order to try to draw business away.  And so I
5  think it continues on a decline.
6            THE COURT:  Okay.  But as far as you know, the numbers
7  that I have just given are correct.
8            MS. FRITZ:  It sounds high, but all I can say is --
9  all I can say is the company continues to face enormous
10 challenges.
11           THE COURT:  And through May, Alpine made direct
12 distributions to ownership of over $1,700,000, and there is of
13 course this discussion in the parties' papers of whether or not
14 there were other monies that were sent to ownership beyond that
15 which may be questionable, including what at least some of the
16 papers characterize as an inflated maintenance charge.
17           So all of this leads to the parties' concern about how
18 to effect the Court of Appeals' order to allow the business to
19 continue to function but to protect the SEC's judgment, should
20 it be affirmed on appeal, so that there isn't an improper
21 distribution of assets to the ownership during the period that
22 the Court of Appeals is handling this appeal and it is under
23 advisement.
24           The distributions in the past years to the ownership
25 have been, marching forward from 2014 and just looking at

direct distributions, over $8 million, over $6 million, over $4 million, over $7 million and over $3 million last year, 2018. And those are direct distributions.

So let me tell you where I come out on the four issues that were flagged by Ms. Fritz in her letter of yesterday evening.

The first issue is whether the entire judgment should be stayed; and, yes, I agree it should.

The second issue is whether or not I should act to stay actions by regulators. I don't see any basis for that in anything the Court of Appeals ordered me to do. It would be beyond the scope. I was ordered -- they have in fact stayed the judgment. How regulators act with the stayed judgment is beyond the scope of my remand. And obviously regulators have an independent duty to act, and they will act according to their independent duty as required by law.

With respect to the third issue -- and, again, these are preliminary rulings to give everyone a chance to be heard -- with respect to the third issue, a finding about Alpine's assets likely to be dissipated, I think the record will support such a finding, but I don't see any need to include it in the order. I don't think it is remanded to me to describe that in an order. Obviously I have to be alert to that concern, and that's why I think there was a remand, so I could fashion an order that would appropriately protect the

assets to pay the judgment if the judgment is affirmed but, at the same time, to permit the company to function in the ordinary course of business until a decision is reached.

And finally, with respect to Alpine's objection to discovery, the asset discovery that the SEC seeks, I would like this morning to fashion an order that will make discovery unnecessary. I want the parties to be able to devotes their resource to the merits of the appeal. So that would be my goal, and I expect counsel will be able to assist me in achieving that.

So I have made some minor modifications to the language submitted to me, and my goal is to deal with big picture issues, give the parties an opportunity to review the specific language in the order, to hear any objections you have to specific language, and then finalize the order this morning with your assistance.

So you have my preliminary rulings on these four issues, so let me give the loser on each of the issues a chance to be heard.

So first that's you, Mr. Carlyle, with respect to the stay or the order reflecting that the entire judgment has been stayed. Do you want to be heard further?

MR. CARLYLE: Yes, your Honor. And just to be clear, we are fine with changing the language to reflect the exact language from the Second Circuit on remand, which I believe is

1    stay pending appeal of the entire judgment.  We are fine with
2    that.
3              THE COURT:  Good.  Thank you.
4              And then Ms. Fritz, with respect to the second point
5    you raise, did you wish me to also address this stay to
6    regulators?
7              MS. FRITZ:  For that point, I was relying on I believe
8    it is page 10 and 11 in the transcript.  There was actually a
9    very specific discussion with the Court regarding the
10   communication that had come across from FINRA, where it seemed
11   to be suggesting that the injunctive language could serve as
12   the basis for adverse action against the firm.  That's
13   referenced by the Court of Appeals in the first paragraph,
14   where it talks about the communication that was recently
15   received from FINRA, and the Court then grants my application
16   to put in the supplemental declaration that addresses that
17   point.  It was because of that issue that we then asked the
18   Court to clarify that the entire judgment would be stayed, and
19   the SEC opposed that.  But in that context, Judge Walker and
20   Judge Chin both were inquiring whether there was particular
21   language that I was looking for.  I responded that, yes, there
22   was and it would be consistent with the case that we cited -- I
23   believe it is *TGR* -- and that would say that the stay of the
24   judgment includes a stay of any action by regulatory agencies
25   predicated on the judgment.

The response of Judge Chin was: You can submit that language to me later. I fully believe that that issue would have been addressed in that way but for the fact that the Court elected to simply remand the matter. I do believe that it falls within the scope of the order, because although I agree with your Honor that the stay should prevent adverse action predicated on that judgment, in an abundance of caution, it was my hope that we would get explicit language. That's why I had requested it. I do think that it may ultimately be critical to the continued operation of Alpine if any one of these regulators takes a different view, and that's why I continue to ask for it. I think it is within the scope of the remand and important, if not necessary.

THE COURT: Okay. Well, Ms. Fritz, obviously what the Court of Appeals decided to do was enter a stay of the entire judgment and that will operate by law in whatever way it operates by law on all regulators. I have no idea and am certainly not in a position to grant this application. I think it is beyond the scope of the remand. I don't think you are prevented from coming back, I don't think the SEC is prevented from coming back if the purpose of the remand is not achieved through the order we fashion together today, and I want to thank you again for your assistance. So I'm going to decline that request.

Then the SEC, I think this is, again, your chance to

1   be heard, Mr. Carlyle, as I deny your request to include a
2   finding of dissipation in the order.
3           MR. CARLYLE:  Again, your Honor, we do think that
4   there is a basis for a finding, but defer to the court's
5   judgment, of course, here to not include that language.
6           THE COURT:  Okay.  Good.  So I'm going to omit that.
7           And then again, I'm going to let this last issue about
8   discovery -- I am going to hold back on that.  It is my
9   intention, as I said, not to allow discovery, but assuming we
10  can really pin down with enough precision what's appropriate
11  and not appropriate to provide -- or what transfers are
12  appropriate and not appropriate without notice.  So let's just
13  work through some of those issues together.
14          If you have a copy of either the SEC's order or the
15  red-lined markup by Alpine, I think I could draw your attention
16  to any changes that I have made that I think are of substance.
17          The first paragraph, the first numbered paragraph is
18  about paying ordinary and recurring business expenses to
19  individuals and entities other than Alpine's owners, and it
20  includes a number of listed items, and all I have done there is
21  say that disclosure will be three business days prior to their
22  payment, just to put in a date, but I'm not wedded to that
23  date.  You had included language on consent that there be prior
24  notice.  I just thought it should be specific.  I don't care
25  what the date is, but I just thought clarity would help you.

1   Are the parties happy?  I will let you discuss.  You had prior
2   notice.  I suggest you identify how much notice.  What we want
3   is prior notice that will permit the SEC to let Alpine know
4   promptly, so it won't interfere with Alpine's operations, that
5   that payment is fine.  So I just want you to agree on a
6   schedule that means that Alpine's business won't be interfered
7   with.
8            Good.
9            The second paragraph has to do with the return of
10  capital to someone who has made a capital infusion.  That
11  seemed fine.  I didn't have any changes to suggest there.
12           The third paragraph, I just want to make sure that the
13  parties have an agreement or understanding as to what is
14  encompassed by the reference to rent since there is in these
15  submissions to me about CAM, and I assume the parties agree
16  that is not included in rent.
17           MR. CARLYLE:  That's correct.
18           THE COURT:  Okay.  Thank you.  Good.
19           And then the next paragraph, I again think that it
20  would be helpful to put some time frame in here.  I will tell
21  you what time frame I am going to suggest, but I want you to
22  talk about it with each other, and this paragraph, paragraph 4,
23  has to do with other transfers of assets, and I was -- and how
24  the parties had -- what the parties had proposed is that Alpine
25  would advise the SEC in advance of the amount and purpose, try

Case 1:17-cv-04179-DLC   Document 253   Filed 12/12/19   Page 14 of 20      14
jbq2SECc

1     to reach agreement, and if they fail to reach agreement, come
2     to the Court.
3              So I leave this to Ms. Fritz and the SEC to discuss,
4     but I'm going to throw out a date to just begin those
5     discussions.  I think if Alpine advised the SEC seven business
6     days in advance of the date on which it wanted to make a
7     transfer, that would give the parties a chance both to see if
8     they can reach agreement and come to court if they can't and
9     hopefully not result in any delay, but again I think we should
10    talk about a time frame.
11             And then paragraph five, which would be the last
12    paragraph that would be included in the order, I want to
13    acknowledge that the SEC is providing copies -- I'm sorry,
14    that Alpine is providing copies to the SEC of the monthly focus
15    reports, and I take up Ms. Fritz's offer today that it will
16    also provide to the SEC the daily financial reports it provides
17    to FINRA; and I think, with these clarifications, we don't need
18    ongoing discovery.
19             But, again, what I think we should do is I should get
20    off the bench, you should talk with each other a little bit,
21    I'm going to come back, hear from you, give you a copy of the
22    order which incorporates any changes you want with respect to
23    the timing, and we will hopefully before noon fashion an order.
24             Thank you.  Oh, Ms. Fritz, did you want to ask
25    something?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1     MS. FRITZ:  I just wanted to throw out, and I don't
2  know if Mr. Carlyle would agree, the three-business-day
3  alteration to the first paragraph, seven business days in the
4  subsequent paragraph and the language that the Court just
5  indicated regarding providing focus reports as well as
6  financial reporting going to the SEC, those are all fine with
7  me.  I'm not -- I'm not sure we have a disagreement.
8     THE COURT:  Good.
9     MR. CARLYLE:  My one thing that gives me pause is the
10 three business days on the first category and whether that
11 would be enough time for us to be able to review any expenses
12 that we have questions about and to get more information.
13    THE COURT:  So I'm going to just get off and let you
14 talk.
15    MR. CARLYLE:  Okay.
16    MS. FRITZ:  Sorry.
17    MR. CARLYLE:  Thank you.
18    THE COURT:  I think it will probably be a brief
19 conversation, but I want to give you a chance.
20    MR. CARLYLE:  Thank you.
21    (Recess)
22    THE COURT:  So, counsel, thank you for your
23 suggestions.
24    Just to put on the record what has happened here,
25 counsel have been consulting.  They had a draft of my proposed

order to review. I made two additional changes to it. I added the phrase "at least in advance of three business days" and "in advance of seven business days," so Alpine didn't need to figure out what was the third business day and the seventh business day for notice, but just any notice within that wider time period would be fine.

And the parties made a request to accommodate for paragraph 4 an emergency situation in which, as I understand it, Alpine might receive a call from the NSCC that it would need to respond to in less than seven business days, and so we had to fold in an exception to paragraph 4. It's my understanding that the language that the parties proposed and that I played with is now acceptable, but let me just put that on the record to make sure that I understand. "Alpine may satisfy calls from the NSCC without providing seven business days' advance notice to the SEC in the event such a response is necessary for Alpine to continue its operations, but Alpine must provide notice to the SEC of such calls in its responses without unnecessary delay." I'm not wedded to that language. If counsel thinks some revision would be important to effect their intent, but let's just see if there are any objections to the current form of the order.

Does the SEC have any objections to its current form?

MR. CARLYLE: Your Honor, the language that you just referenced is acceptable to the SEC and as is the other

1    language in the order.
2              There is an issue that relates to the asset discovery
3    that the SEC asked for that I was hoping to address with the
4    Court.
5              THE COURT:  Sure.
6              MR. CARLYLE:  So our intent in just asking for the
7    ability to conduct that asset discovery was really to enable
8    there to be a backstop in the order.  We have these different
9    provisions that require Alpine to give notice to the SEC, but
10   there is not really a mechanism for us to get any information
11   about any expenses, for instance, that we have questions about.
12   So that was the intent of including the ability to conduct
13   asset discovery in there.
14             Am I correct in my understanding that if we do have
15   such questions and we are not able to get a response, that we
16   can seek leave from the Court to get additional documents or
17   information?
18             THE COURT:  Well, perhaps we need to make this more
19   explicit, but I think the whole purpose of the notice
20   provisions is so if the SEC objects to any payment of an
21   expense, even if Alpine characterizes it as one to be made in
22   the ordinary course, or any distribution or transfer of assets
23   if the SEC objects and can't get a satisfactory response, an
24   explanation from Alpine, it means that the SEC can come to
25   court and the parties will be heard, and no transfer or payment

1   is to be made if there is an application to the Court until the
2   application is ruled upon.
3          Now, if that needs to be more explicit, we can craft
4   some language.  But the whole point of notice is so the SEC has
5   to promptly review the proposal by Alpine and, if the informal
6   discussions between the parties don't satisfy the SEC, that the
7   SEC has a chance to come to court.
8          MR. CARLYLE:  Understood.  Thank you, your Honor.
9          THE COURT:  Does that address your concern?
10         MR. CARLYLE:  Yes, that does address my concern.  You
11  know, our intent there was just to bake something into the
12  order where we could take some of those steps without coming
13  back to the Court; but with your explanation and clarification,
14  we are fine with that.
15         THE COURT:  Well, paragraph 4 even puts the burden
16  on Alpine to come to court if you can't get the SEC approval.
17  You know, the SEC doesn't even have to be the applicant on
18  paragraph 4.
19         MR. CARLYLE:  Yes.
20         THE COURT:  It cannot make a transfer of its assets
21  without the parties' agreement unless it comes to court and
22  seeks approval.  Okay.
23         MR. CARLYLE:  Yes.  Thank you, your Honor.
24         THE COURT:  Good.  Good.
25         So, Ms. Fritz, did you have any objections or

questions with respect to the proposed order before I sign it?

MS. FRITZ: No, your Honor. I would only note that I am in large part relying on the good faith of the SEC and the fact that we will work together in order to enable Alpine to simply continue to operate. It is only for the next three months, it sounds like. And I would emphasize that if there is an objection with respect to a payment that is essential to the business, I'm going to hope that the SEC won't use a mechanism of coming to this Court in order to interfere with Alpine's ability to conduct its business. I'm going to assume that we are going to work through these issues; and so, with that said, no, I'm comfortable.

THE COURT: And of course that is one reason I put in "at least." So particularly in these first weeks or first month, more notice as you work through these issues would probably be advisable, so Alpine is never uncertain and can continue without any hesitation to make the expenses it wishes to.

MS. FRITZ: Right.

THE COURT: Good. I remain available to you if there are any problems, and I don't expect there to be any. Good luck and Happy Thanksgiving.

MS. FRITZ: Happy holidays.

MR. CARLYLE: Thank you, your Honor.

THE COURT: And, counsel, if you want to wait, we will

jbq2SECc

1     give you copies of the order I just signed.
2                              oOo
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25